# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONNECTU, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| FACEBOOK, INC., MARK ZUCKERBERG, | ) | |
| EDUARDO SAVERIN, DUSTIN | ) | |
| MOSKOVITZ, ANDREW MCCOLLUM, | ) | |
| CHRISTOPHER HUGHES, AND | ) | |
| THEFACEBOOK LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff ConnectU, Inc., f/k/a ConnectU LLC and/or Harvard Connection (sometimes referred to collectively for convenience as "ConnectU" or "Plaintiff"), by its undersigned attorneys, alleges as follows based on its own knowledge with respect to its own acts, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.      This is a civil action for copyright infringement, breach of actual or implied contract, misappropriation of trade secrets, breach of fiduciary duty, unjust enrichment, unfair business practices, intentional interference with prospective business advantage, breach of duty of good faith and fair dealing, fraud, and breach of confidence.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 17

U.S.C. § 501(b) and 28 U.S.C. § 1331. This Court also has jurisdiction over the subject matter

of this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum or value

of $75,000, exclusive of interest and costs. Jurisdiction over the state and common law claims is

also appropriate under 28 U.S.C. § 1367(a), 1338(a) and (b), and principles of pendent

jurisdiction.

3.      This Court has personal jurisdiction over Defendants and venue is proper in this

District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a). A substantial part of the events or

omissions giving rise to the claims occurred in this District and/or Defendants may be found in

this district.

## THE PARTIES

4.      Plaintiff ConnectU, Inc. is a corporation of the State of Connecticut, with a

principal place of business at 500 West Putnam Avenue, Greenwich, Connecticut 06830.

ConnectU, Inc. is registered to do business in the Commonwealth of Massachusetts.

5.      Defendant Mark Zuckerberg is a citizen of the State of California.

6.      Defendant Eduardo Saverin is a citizen of the State of New York.

7.      Defendant Dustin Moskovitz is a citizen of the State of California

8.      Defendant Andrew McCollum is a citizen of the State of Idaho.

9.      Defendant Christopher Hughes is a citizen of the State of Illinois.

10.     Defendant Facebook, Inc. is a corporation of the State of Delaware with a

principal place of business in the State of California. Facebook, Inc. was formerly known as

"Thefacebook, Inc." Defendants have capitalized Facebook, Inc. and Thefacebook, Inc. in

various forms.  The use of the name "Facebook, Inc." in this Complaint refers to Facebook, Inc. and Thefacebook, Inc., regardless of capitalization.

11.     Defendant Thefacebook LLC is a limited liability company of the State of Florida.  Its sole Member is Facebook, Inc., which is a citizen of Delaware and/or the State of California.

## FACTS

12.     Plaintiff's predecessors, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, were classmates who together attended Harvard University, graduating in June 2004.

13.     In December 2002, the Winklevosses and Narendra began to develop a business plan for a new type of website, originally to be called Harvard Connection and/or harvardconnection.com, and later renamed connectu.com.  This website would allow students and alumni of a college or university to create a social network specific to that institution, and give the students and alumni a place to meet, exchange information, discuss employment prospects, and serve as an on-line directory and dating utility.  Initially, harvardconnection.com was to serve the Harvard University community.  Once established at Harvard, harvardconnection.com would be expanded to other institutions, by Plaintiff's predecessors.

14.     The Harvard Connection business model, which was based on advertising revenue, had a significant chance of financial success because the users, well-educated students and alumni, are an attractive demographic for many advertisers.

15.     Facebook, Inc., Zuckerberg, Moskovitz, McCollum, and Hughes (sometimes referred to collectively as Facebook Defendants") stated in their Pre-Hearing Statement filed on October 23, 2006 in Civil Action No. 1:04-cv-11923 (DPW) in the U.S. District Court for the District of Massachusetts (Dkt. 251 at 2) that "Cameron Winklevoss, Tyler Winklevoss, and

Divya Narendra formed Harvard Connection, later known as ConnectU, to attempt to found a business for profit."

16.     Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra formed Harvard Connection, later known as ConnectU, to attempt to found a business for profit.

17.     In November 2003, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra engaged Mark Zuckerberg to complete the computer program software and database definitions for the Harvard Connection website (the "Harvard Connection Code").

18.     Defendants admitted in paragraph 14 of the "Answer of All Defendants to First Amended Complaint, Counterclaims of Mark Zuckerberg and Thefacebook, Inc., and Jury Demand" in Civil Action No. 1:04-cv-11923 (DPW) (Dkt. 14) that "Zuckerberg was given access to the HC [Harvard Connection] website source code as it existed in late 2003."

19.     Zuckerberg was given access to the Harvard Connection Code as it existed in late 2003.

20.     On numerous occasions, both orally and in writing, ConnectU's predecessors stressed to Zuckerberg that the Harvard Connection Code needed to be completed as soon as possible because they wanted to launch the harvardconnection.com website before their June 2004 graduation.  Zuckerberg assured ConnectU's predecessors that he was using his best efforts to complete the project and ready the website for launch, and for market.

21.     In addition to agreeing to complete the Harvard Connection Code, Zuckerberg was involved with website development and business planning, and acted as a member of the Harvard Connection development team.  In that capacity, he was entrusted with the basic idea for the Harvard Connection website, project, and enterprise, the Harvard Connection Code (including database definitions), the website design and screens created to date, and the Harvard

Connection website user interface, as well as information regarding the website's business model and plan, various functionality and content, concepts, and the type of information that would be collected from users. The combination of such ideas, code and database definitions, screens, information, and procedures were proprietary and confidential at the time, and constituted Plaintiff's predecessors' trade secrets (referred to herein as "Information and Procedures"). Zuckerberg understood that such Information and Procedures were proprietary and secret and agreed to keep them confidential. Zuckerberg also had an obligation to keep them confidential. Zuckerberg also understood that it was important to the success of the harvardconnection.com website to make the website operational before the end of the school year and before any competitor did so.

22.     Defendants admitted in paragraph 16 of the "Answer of All Defendants to First Amended Complaint, Counterclaims of Mark Zuckerberg and Thefacebook, Inc., and Jury Demand" in Civil Action No. 1:04-cv-11923 (DPW) (Dkt. 14) that "there may be a first mover advantage with respect to certain websites."

23.     With respect to Internet websites, the first to enter a market has a substantial advantage.

24.     Defendants admitted in paragraph 10 of their Counterclaims contained in their "Answer of All Defendants to First Amended Complaint, Counterclaims of Mark Zuckerberg and Thefacebook, Inc., and Jury Demand" in Civil Action No. 1:04-cv-11923 (DPW) (Dkt. 14) that "the Individual Counterdefendants requested that Zuckerberg participate in the development of the HC website."

25.     Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra requested that Zuckerberg participate in the development of the HC website.

26.    Defendants admitted in paragraph 9 of their Counterclaims contained in their the "Answer of All Defendants to First Amended Complaint, Counterclaims of Mark Zuckerberg and Thefacebook, Inc., and Jury Demand" in Civil Action No. 1:04-cv-11923 (DPW) (Dkt. 14) that Divya Narendra asked Zuckerberg "if he would like to be part of a website that Narendra and his team were assertedly developing."

27.    Divya Narendra asked Zuckerberg if he would like to be part of a website that Narendra and his team were developing.

28.    Zuckerberg agreed to be a member of the harvardconnection.com website development team, along with Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, to develop the Harvard Connection Code, and to help launch, promote, and operate the site and business, in exchange for a beneficial interest in the website, including a monetary interest in any revenue or other proceeds or benefits from the website, as well as the ability to identify and highlight his contribution to fellow students and prospective employers.

29.    Zuckerberg stated in his February 12, 2004 email to C. Winklevoss that "Originally, I was intrigued by the project and was asked to finish the Connect side of the web site. I did this . . ," and that "I worked with the expectation that I would be included in the overall development and control of the project but found that I was being subjected to demands on my time without truly being made a part of the development team . . ."

30.    Zuckerberg's pledges of commitment to Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, his acceptance of the Harvard Connection Code, his agreement to complete such code, his work on such code and the website, his access to and acceptance of the Information and Procedures, his participation as a member of the Harvard Connection development team, his understanding that he would obtain a beneficial interest in the website and

share in the proceeds if and when the website was successful, and his ability to highlight his

work on the site to fellow students and potential employers, created an actual or implied contract,

a duty of good faith and fair dealing, a relationship of trust, a partnership, and a fiduciary

relationship between Zuckerberg and ConnectU's predecessors.

31.     On January 8, 2004, Zuckerberg sent an email to Cameron Winklevoss,

confirming that Zuckerberg would deliver the completed Harvard Connection Code and a

functioning website.  Three days later, January 11, 2004, without providing the promised code,

Zuckerberg registered the domain name "TheFaceBook.com."  Zuckerberg met with Cameron

Winklevoss, Tyler Winklevoss, and Divya Narendra on January 14, 2004, but did not mention

the thefacebook.com website.

32.     On February 4, 2004, using the Information and Procedures, Defendants launched

a directly competitive website, thefacebook.com (now known as "facebook.com").  This launch

usurped Plaintiff's Information and Procedures and valuable business opportunity.  Zuckerberg

stated to the press that he created and launched the facebook.com website in one week.

Defendants used the Harvard Connection Code in connection with the facebook.com website

and/or benefited from their access to it, knowledge of it, and/or use of it.

33.     One or more of Defendants began developing the thefacebook.com website at

least as early as December 22, 2003 (see the "Facebook" folder on the copy of the image from

Device No. 371-09 on the TFB000084 CD ROM).

34.     Defendants admitted in paragraph 2 of their Counterclaims contained in the

"Answer of All Defendants to First Amended Complaint, Counterclaims of Mark Zuckerberg

and Thefacebook, Inc., and Jury Demand" in Civil Action No. 1:04-cv-11923 (DPW) (Dkt. 14)

that Zuckerberg "is the creator of the internet website thefacebook.com, and is the founder of Thefacebook, Inc."

36.     Zuckerberg is the creator of the internet website thefacebook.com, and is the founder of Thefacebook, Inc.

36.     Zuckerberg never told Cameron Winklevoss, Tyler Winklevoss, or Divya Narendra that he stopped working on the Harvard Connection website before he launched the facebook.com website (see FACE002567).

37.     Plaintiff's predecessors were surprised by Zuckerberg's launch of a competing website while working as a member of the Harvard Connection development team. They then hired a programmer/website developer to develop the website's software and launched the connectu.com website on May 21, 2004, almost four months after the launch of thefacebook.com.

38.     Zuckerberg shared the Information and Procedures with Defendants Saverin, Moskovitz, McCollum, and Hughes, who knowingly used them, and continue to use them, to develop, launch, and/or maintain the facebook.com website. Zuckerberg, Saverin, Moskovitz, McCollum, and Hughes engaged in the wrongdoing described in this Complaint and operated the facebook.com website before Thefacebook LLC and/or Facebook, Inc. were formed, and independently thereof, before and after they were formed.

39.     Zuckerberg, Moskovitz, and Saverin formed Defendant Thefacebook.com LLC on or about April 13, 2004. At some unknown point in time, the individual Defendants assigned their rights in the facebook.com website to Thefacebook LLC and/or Thefacebook LLC was or otherwise became the actual or beneficial owner of such individual Defendants' rights in the facebook.com website. Alternatively, at some unknown point in time, the individual Defendants

-8-

assigned their rights in the facebook.com website to Facebook, Inc. and/or Facebook, Inc. was or otherwise became the actual or beneficial owner of such individual Defendants' rights in the facebook.com website. Alternatively, at some unknown point in time, Thefacebook LLC assigned such rights to Facebook, Inc. Alternatively, the individual Defendants did not assign their rights in the facebook.com website to Thefacebook LLC or Facebook, Inc. In any event, Facebook, Inc. and/or Thefacebook LLC have been and are integrally involved in the wrongdoing described in this Complaint.

40.    Defendants' unlawful knowledge and/or use of the Information and Procedures enabled and allowed the facebook.com website to come to market first, thereby obtaining press coverage, users/members, advertisers, and investors that would otherwise have benefited Plaintiff's predecessors.

41.    Defendants' market advantage, directly and proximately resulting from Defendants' wrongdoing described herein, usurped ConnectU's predecessors' potential market and related business opportunities.

42.    Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra intended that ConnectU LLC would own all of their rights, title, interests, and claims relating to Harvard Connection, the harvardconnection.com website, and the connectu.com website, including without limitation the Information and Procedures and all intellectual property rights and other rights and claims, and all rights to sue third parties (including Defendants) with respect to such rights and claims and to recover damages for past, present, and future violations thereof. Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra assigned all such rights, title, interests, and claims to ConnectU LLC, and ConnectU LLC owned such rights when the original

Complaint was filed in Civil Action No. 1:04-cv-11923 (DPW).  ConnectU LLC was merged

into ConnectU, Inc. and ConnectU, Inc. now owns all such rights, title, interests, and claims.

### FIRST CLAIM FOR RELIEF
### Copyright Infringement
### 17 U.S.C. § 101 et seq.
### Asserted Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

44.     Plaintiff owns all rights, title, and interests in all copyrights covering the Harvard

Connection Code.

45.     Without Plaintiff's predecessors' permission, Defendants copied copyrighted

subject matter of the Harvard Connection Code, and created a derivative work thereof.  This

unauthorized derivative work is or was copied and used by Defendants in connection with the

facebook.com website.  Defendants may have infringed Plaintiff's copyrights in additional ways.

46.     Defendants' actions as described above constitute copyright infringement of the

Harvard Connection Code.  A true and correct copy of the certificate of copyright registration for

such software is attached hereto as **Ex. A**.  This registration is *prima facie* evidence of the

validity of the copyright and of the facts stated in the certificate.  The Harvard Connection Code

constitutes copyrightable subject matter.

47.     Zuckerberg made no copyrightable contributions to the Harvard Connection

Code.

48.     The actions of Defendants described above have at all times relevant to this action

been willful and/or knowing.

49.     As a direct and proximate result of Defendants' actions alleged above,

ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably

injured, and have suffered monetary damages in an as yet undetermined amount.

## SECOND CLAIM FOR RELIEF
### Misappropriation of Trade Secrets
### Massachusetts G.L. ch. 266, § 30 (4) and ch. 93 § 42
### Asserted Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

51.     Plaintiff's predecessors took appropriate steps to maintain the secrecy of the

Information and Procedures.

52.     Plaintiff's Information and Procedures were valuable to Plaintiff's predecessors

and to Defendants.

53.     Plaintiff's predecessors expended significant effort in both time and money to

develop the Information and Procedures.

54.     The Information and Procedures were not easily acquired or duplicated by others.

55.     Defendants' actions as described above constitute misappropriation of Plaintiff's

predecessors' and Plaintiff's trade secrets, namely, the Information and Procedures.

56.     Defendants' actions described above have at all times relevant to this action been

willful and/or knowing.

57.     As a direct and proximate result of Defendants' actions alleged above,

ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably

injured, and have suffered monetary damages in an as yet undetermined amount.

## THIRD CLAIM FOR RELIEF
### Breach of Contract Under Massachusetts Common Law
### Asserted Against Zuckerberg

58.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

59.     Zuckerberg's actions as described above constitute breach of actual or implied contract under Massachusetts law.

60.     Zuckerberg's actions described above have at all times relevant to this action been willful and/or knowing.

61.     As a direct and proximate result of Zuckerberg's actions alleged above, ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably injured, and have suffered monetary damages in an as yet undetermined amount.

### FOURTH CLAIM FOR RELIEF
### Breach of Implied Covenant of
### Good Faith and Fair Dealing Under Massachusetts Common Law
### Asserted Against Zuckerberg

62.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

63.     The actual or implied contract between Zuckerberg and ConnectU's predecessors contained an implied covenant of good faith and fair dealing under Massachusetts law. Zuckerberg breached that covenant.

64.     Zuckerberg's actions described above have at all times relevant to this action been willful and/or knowing.

65.     As a direct and proximate result of Zuckerberg's actions alleged above, ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably injured, and have suffered monetary damages in an as yet undetermined amount.

### FIFTH CLAIM FOR RELIEF
### Breach of Massachusetts Unfair Trade Practices Statute
### Mass. G.L. ch. 93A

**Asserted Against All Defendants**

66.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

67.    At all relevant times, Defendants were engaged in trade or commerce within the meaning of M.G.L. ch. 93A, § 1.

68.    Defendants' actions described above constitute unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of, and in violation of, M.G.L. ch. 93A, §§ 2, 9, and/or 11.

69.    Defendants' actions described above occurred primarily and/or substantially within the Commonwealth of Massachusetts.

70.    Pursuant to M.G.L. ch. 93A, § 9, Plaintiff's predecessors' counsel sent written demands for relief to each of Defendants Zuckerberg, Moskovitz, McCollum, Saverin, and Hughes.  Copies of these letters are attached hereto as **Ex. B**.  Each letter identified the claimant and reasonably described the unfair and deceptive acts or practices complained of and the injury suffered by Plaintiff's predecessors and Plaintiff.  Defendants Zuckerberg, Moskovitz, McCollum, Saverin, and Hughes failed to respond to Plaintiff's predecessor's written demands with a reasonable settlement offer within 30 days, after which ConnectU filed the First Amended Complaint in Civil Action No. 1:04-cv-11923 (DPW) (Dkt. 13).  Zuckerberg's, Moskovitz's, McCollum's, and Hughes' refusal to grant relief upon demand was made in bad faith with knowledge that the acts and practices complained of violate M.G.L. ch. 93A, § 2.

71.    Defendants' actions described above have at all times relevant to this action been willful and/or knowing.

72.     Pursuant to M.G.L. ch. 93A, § 9 and § 11, as a direct and proximate result of Defendants' actions alleged above, ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably injured, and have suffered monetary damages in an as yet undetermined amount.

## SIXTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty Under Massachusetts Common Law
### Asserted Against Zuckerberg

73.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

74.     Plaintiff's predecessors placed in Zuckerberg, and Zuckerberg knowingly accepted, their trust and confidence regarding the Information and Procedures.  Zuckerberg owed a fiduciary duty to Plaintiff's predecessors.

75.     Plaintiff's predecessors relied on Zuckerberg to act in their best interests and Zuckerberg had full knowledge of such reliance.

76.     Zuckerberg manipulated and breached such trust, confidence, and reliance for his own personal gain and the gain of all of the Defendants.

77.     Zuckerberg's actions amounted to a course of conduct designed to harm ConnectU's predecessors, and that did in fact harm ConnectU's predecessors and ConnectU.

78.     Zuckerberg's actions constitute breach of fiduciary duty.

79.     Zuckerberg's actions described above have at all times relevant to this action been willful and/or knowing.

80.     As a direct and proximate result of Zuckerberg's actions alleged above, ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably injured, and have suffered monetary damages in an as yet undetermined amount.

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment Under Massachusetts Common Law
### Asserted Against All Defendants

81.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

82.     As a result of Defendants' actions as described above, Defendants have been

enriched at the expense of Plaintiff's predecessors and Plaintiff.

83.     As a result of Defendants' actions as described above, Plaintiff's predecessors and

Plaintiff have been deprived of a valuable benefit.

84.     Defendants cannot establish any justification for their unjust enrichment at the

expense of Plaintiff's predecessors and Plaintiff.

85.     Defendants' actions described above have at all times relevant to this action been

willful and/or knowing.

86.     As a direct and proximate result of Defendants' actions alleged above,

ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably

injured, and have suffered monetary damages in an as yet undetermined amount.

## EIGHTH CLAIM FOR RELIEF
### Intentional Interference with Prospective Contractual and
### Advantageous Business Relations Under Massachusetts Common Law
### Asserted Against All Defendants

87.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

88.     Defendants have purposely and wrongfully caused potential website users,

advertisers, and investors to refrain from entering into contracts and other business relations with

ConnectU's predecessors and/or ConnectU and have usurped such business opportunities.

89.     Defendants' actions described above have at all times relevant to this action been willful and/or knowing.

90.     As a direct and proximate result of Defendants' actions alleged above, ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably injured, and have suffered monetary damages in an as yet undetermined amount.

## NINTH CLAIM FOR RELIEF
### Fraud Under Massachusetts Common Law
### Asserted Against Zuckerberg

91.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

92.     Zuckerberg knowingly made false statement of intention when he agreed to create, complete, and/or provide source code to ConnectU's predecessors for the Harvard Connection website, in emails he sent on November 22, 2003, November 30, 2003, December 1, 2003, and January 8, 2004, and in meetings he attended with Cameron Winklevoss, Tyler Winklevoss, and/or Divya Narendra on or about November 25, 2003, December 17, 2003, and January 14, 2004.  Such statements were false and Zuckerberg never intended to provide the code and instead intended to breach his promise at the time the promise and statements were made, and intended to steal the idea for the Harvard Connection website, and in fact he did so.

93.     Zuckerberg made such false statements with the intent to induce Plaintiff's predecessors to act in reliance on such statements.

94.     Plaintiff's predecessors reasonably relied on Zuckerberg's statements.

95.     Plaintiff's predecessors' reliance resulted in their detriment.

96.     Zuckerberg's actions described above have at all times relevant to this action been willful and/or knowing.

97.     As a direct and proximate result of Defendants' actions alleged above,

ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably

injured, and have suffered monetary damages in an as yet undetermined amount.

**TENTH CLAIM FOR RELIEF**
**Breach of Confidence Under California Common Law**
**Asserted Against Zuckerberg**

98.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

99.     Plaintiff's predecessors conveyed to Zuckerberg the Information and Procedures,

which were confidential and novel.

100.    Zuckerberg knew that the Information and Procedures were disclosed to him in

confidence.

101.    There was an understanding between Plaintiff's predecessors and Zuckerberg that

such confidence should be maintained.

102.    Zuckerberg disclosed and used the Information and Procedures in violation of

such understanding.

103.    Zuckerberg violated such understanding knowingly and willfully.

104.    As a direct and proximate result of Defendants' actions alleged above,

ConnectU's predecessors and ConnectU have no adequate legal remedy, have been irreparably

injured, and have suffered monetary damages in an as yet undetermined amount.

## REQUEST FOR RELIEF

Wherefore, Plaintiff ConnectU requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.     An injunction preliminarily and permanently enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

> (1)     From operating the facebook.com website, or any variation of that website under a different domain name or URL;
>
> (2)     From using the Harvard Connection Code, or any code or software derived therefrom;
>
> (3)     From using the Information and Procedures;

B.     An Order directing Defendants to destroy all computer programs, business plans, and any other materials and things, whether printed or electronic, that consist of, contain, or were derived in any way from the Information and Procedures;

C.     An Order holding Defendants jointly and severally liable for copyright infringement, breach of contract, misappropriation of trade secrets, unfair trade practices, breach of fiduciary duty, unjust enrichment, intentional interference with prospective business advantage, breach of duty of good faith and fair dealing, fraud, and breach of confidence, and directing Defendants to pay Plaintiff damages, including but not limited to direct, consequential, indirect, compensatory, and punitive damages;

D.     An Order holding Defendants jointly and severally liable for the claims set forth herein, and directing Defendants to pay to Plaintiff its actual damages, including Defendants'

profits associated with Defendants' use of Plaintiff's Information and Procedures, and/or Defendants' profits resulting from their wrongdoing, and/or Defendants' value, and multiplying such damages pursuant to Mass. G.L. ch. 93 § 42;

E.      An Order holding Defendants jointly and severally liable for unfair business practices under Mass. G.L. ch. 93A, and directing Defendants to pay Plaintiff its actual damages, including Defendants' profits associated with Defendants' wrongdoing, and/or Defendants' profits resulting from their wrongdoing, and/or Defendants' value, or, at Plaintiff's election, statutory damages, and multiplying such damages pursuant to Mass. G.L. ch. 93A and Mass. G.L. ch. 93 § 42;

F.      An Order directing Defendants to pay Plaintiff's attorneys' fees and costs associated with this action;

G.      An order placing Facebook, Inc., the facebook.com website, and all related assets in constructive trust for Plaintiff and transferring to Plaintiff all rights, title, and interest in Facebook, Inc., the facebook.com website, and all such assets, pursuant to such constructive trust; and

H.      Other relief as the Court may deem appropriate, including increased damages, as available under applicable law.

Dated: 3-28       , 2007

Respectfully submitted,


_____

Daniel P. Tighe (BBO# 556583)
Scott McConchie (BBO# 634127)
GRIESINGER, TIGHE, & MAFFEI, L.L.P.
Boston, MA 02110
Telephone: (617) 452-9900
Facsimile: (617) 452-090
dtighe@gtmllp.com
smcconchie@gtmllp.com

Of Counsel:
John F. Hornick
Margaret A. Esquenet
Meredith H. Schoenfeld
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 408-4000
Fax: (202) 408-4400

Attorneys for Plaintiff
ConnectU, Inc.