UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., | Civil Action No. 1:07-CV-10593-DPW |
|         Plaintiff, | |
| v. | |
| FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, LLC, | |
|         Defendants. | |

**MOSKOVITZ, MCCOLLUM AND HUGHES'  MOTION TO DISMISS FOR FAILURE
TO  STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(6)**

OHS West:260218985.3

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.    BACKGROUND FACTS .......................................................................... 2

III.   ARGUMENT............................................................................................... 4

    A.    The State Law Claims for Misappropriation of Trade Secrets, For Unjust Enrichment, And For Intentional Interference With Contractual And Advantageous Business Relations Against the Individual Defendants Are Time-Barred ........................................................................................ 4

        1.    Mass. Gen. Laws Ch. 93, § 42 Is Time Barred as to All Defendants ........ 5

        2.    Acts Of Copyright Infringement Alleged To Have Occurred Earlier Than March 28, 2004 Are Time-Barred ................................................. 6

    B.    The Copyright Act Preempts Three Of ConnectU's State Law Claims ............... 6

        1.    Mass. Gen. Laws 93A is Preempted by Copyright Law .......................... 8

        2.    Plaintiff's Unjust Enrichment Claim is Preempted by Copyright Law ....................................................................................................... 8

        3.    ConnectU's Claim for Relief Based On Defendants' Alleged Intentional Interference with Prospective Contractual and Advantageous Business Relations is Preempted ....................................... 9

    C.    Plaintiff's Claim for Misappropriation of Trade Secrets Pursuant to G.L. ch. 266 section 30(4) and ch. 93 section 42 Fails ................................................. 9

        1.    Mass. Gen. Laws Ch. 266, § 30 Does Not Provide A Private Right Of Action And Thus Must Be Dismissed ............................................... 10

        2.    ConnectU Fails To State A Claim For Trade Secret Misappropriation...................................................................................... 10

            a.    ConnectU's "Information and Procedures" Is Not A Trade Secret ....................................................................................... 11

            b.    ConnectU Does Not Show That It Took Steps To Ensure Secrecy...................................................................................... 12

            c.    ConnectU Does Not Allege That Individual Defendants Knew That the "Information and Procedures" Were Wrongfully Obtained................................................................ 13

    D.    ConnectU's Claim Under Massachusetts G.L. 93A Fails ................................ 13

        1.    ConnectU May not Seek a Claim for Relief under Both §§ 9 and 11 because Those Claims are Mutually Exclusive ................................ 14

# TABLE OF CONTENTS
## (continued)

Page

2.  ConnectU Failed to State a Claim Under Massachusetts G.L. 93A ........ 14

    a.  ConnectU is not a "Consumer" Pursuant to Massachusetts
        G.L. ch. 93A § 9 ....................................................................... 14

    b.  ConnectU Does Not Allege That Any Unfair Or Deceptive
        Act Occurred In The Conduct Of Commerce ............................. 15

3.  Plaintiff's Claim for Unjust Enrichment under Massachusetts
    Common Law Fails because Plaintiff has an Adequate Remedy at
    Law ................................................................................................... 17

4.  Plaintiff's Claim for Intentional Interference with Prospective
    Contractual Advantageous Business Relations Must Fail ..................... 18

IV.   REQUEST FOR ORAL ARGUMENT ...................................................... 19

V.    CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Aaron* v. *Aguirre*, 2007 WL. 959083 (S.D. Cal. 2007) ................................................ 10

*Anderson* v. *Bd. of Trustees*, 77 F.3d 364 (11th Cir. 1996) ...................................... 14

*Armstrong* v. *Rohm and Haas Co. Inc.*, 349 F. Supp. 2d 71 (D. Mass. 2004) ........... 16

*Benoit* v. *Ocwen Financial Corp., Inc.*, 960 F. Supp. 287 (S.D. Fla. 1997) .............. 14

*Briarpatch Ltd., L.P.*, 373 F.3d 296 (2d Cir. 2004) ................................................. 6, 7

*Cambridge Literary Props., Ltd.* v. *W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*,
     448 F. Supp. 2d 244 (D. Mass. 2006) .............................................................. 6, 7

*Continental Ins. Co.* v. *Bahnan*, 216 F.3d 150 (D. Mass. 2000) ............................... 14

*Corliss* v. *City of Fall River*, 397 F. Supp. 2d 260 (D. Mass. 2005) ............................ 4

*Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989) ............... 11

*Data Gen. Corp.* v. *Grumman Sys. Support Corp.*,
     795 F. Supp. 501 (D. Mass. 1992), *aff'd*, 36 F.3d 1147 (1st Cir. 1994) ............... 7

*Data General*, 36 F.3d 1147 (1st Cir. 1994) ............................................................... 9

*Data General* v. *Grumman Sys. Support Corp.*, 825 F. Supp. at 357 ........................ 13

*Diamond* v. *Gillis*, 357 F. Supp. 2d 1003 (E.D. Mich. 2005) ...................................... 7

*Doyle v. Hasbro, Inc.*, 103 F.3d 186 (1st Cir. 1996) ................................................. 11

*Ehat* v. *Tanner*, 780 F.2d 876 (10th Cir. 1985),
     *cert. denied*, 479 U.S. 820, 93 L. Ed. 2d 39, 107 S. Ct. 86 (1986) ....................... 8

*Epstein* v. *C.R. Bard, Inc.*, 2004 WL. 1598912 (D. Mass. July 19, 2004) ............... 4, 5

*Guedes* v. *Martinez*, 131 F. Supp. 2d 272 (D.P.R. 2001) ........................................... 7

*Hare* v. *Family Publications Serv., Inc.*, 342 F. Supp. 678 (D. Md. 1972) ................ 10

## TABLE OF AUTHORITIES
### (continued)

Page

*Harper & Row, Publishers, Inc.*, 501 F. Supp. at 853-54 ........................................................... 9

*Harper & Row, Publishers, Inc.* v. *Nation Enters.*, 723 F.2d 195 (2d Cir. 1983) ........................ 9

*J. T. Healy & Son v. James A. Murphy & Son*, 357 Mass. 728, 736, (1970).............................. 11

*John G. Danielson, Inc.* v. *Winchester-Conant Props., Inc.*,
    186 F. Supp. 2d 1 (D. Mass. 2002)................................................................................... 7, 8

*Kamakazi Music Corp.* v. *Robbins Music Corp.*,
    522 F. Supp. 125 (S.D.N.Y. 1981), *aff'd*, 684 F.2d 228 (2d Cir. 1982) ................................ 9

*Kunycia* v. *Melville Realty Company, Inc.*, , 755 F. Supp. 566 (S.D.N.Y. 1990)......................... 8

*LaChappelle* v. *Berkshire Life Ins. Co.*, 142 F.3d 507 (1st Cir. 1998) ........................................ 4

*Laser Labs, Inc.* v. *TELL Testing Laboratories, Inc.*,
    29 F. Supp. 2d 21 (D. Mass. 1998)...................................................................................... 19

*Leatherman* v. *Tarrant G. Narcotics Intelligence and Coordination Unit*,
    507 U.S. 163 (1993)............................................................................................................. 10

*Lexington Ins. Co.* v. *Abarca Warehouses Corp.*, 337 F. Supp. 902 (D.P.R. 1971)..................... 2

*In re Lupton Mktg. & Sales Practices Lifting.*, 295 F. Supp. 2d 148 (D. Mass 2003) ................. 17

*Massachusetts* v. *Milan Labs*, 357 F. Supp. 2d 314 (D. Mass. 2004)......................................... 17

*Moore* v. *Marty Gilman, Inc.*, 965 F. Supp. 203 (D. Mass. 2006)............................................... 11

*Murray Hill Publ'ns, Inc.* v. *ABC Communications, Inc.*, 264 F.3d 622 (6th Cir. 2001).............. 8

*Newman* v. *Burgin*, 930 F.2d 955 (1st Cir. 1991) ......................................................................... 5

*Panico* v. *Whiting Milk Co.*, 335 F. Supp. 315 (D. Mass. 1971) ................................................... 2

*Petricca Dev. Ltd. Partner.* v. *Pioneer Dev. Co.*, 214 F.3d 216 (1st Cir. 2000) ...................16, 17

*Picker Int'l. Corp. v. Imaging Equip. Servs., Inc.*, 931 F. Supp. 18 (D. Mass. 1995)................. 10

*Portfolioscope, Inc.* v. *I-Flex Solutions Ltd.*,

## TABLE OF AUTHORITIES
### (continued)

Page

2007 U.S. Dist. LEXIS 10300 (D. Mass. 2007) ...................................................... 6

*Prescott* v. *Morton Int'l, Inc.*, 769 F. Supp. 404 (D. Mass 1990) ................................. 5

*Ritchie v. Williams*, 395 F.3d 283 (6th Cir. 2005) ................................. 6, 8

*Rodi* v. *Southern New England School of Law*, 389 F.3d 5 (1st Cir. 2004) ................................. 4

*Rogers* v. *Nstar Elec.*, 389 F. Supp. 2d 100 (D. Mass. 2005)...................................... 18

*Stone* v. *White*, 301 U.S. 532 (1937) ................................. 17

*Swartz* v. *Schering-Plough Corp.*, 53 F. Supp. 2d 95 (D. Mass. 1999) ........................... 10, 11, 12

*Taylor Woodrow Littman Constr. Corp.* v. *Southfield Gardens Co.*,
    534 F. Supp. 340 (D. Mass. 1982)......................................................... 17

*Three D Depts., Inc.* v. *K-Mart Corp.*, 670 F. Supp. 1404 (N.D. Ill. 1987) ................................. 14

*United States* v. *School Dist.*, 400 F. Supp. 1122 (E.D. Mich. 1975) ......................................... 18

*Watterson* v. *Page*, 987 F.2d 1 (1st Cir. 1993) ................................. 2

*Wilson* v. *Mr. Tee's*, 855 F. Supp. 679 (D.N.J. 1994) ................................. 8

### STATE CASES

*Cambridge Internet Solutions* v. *Avicon Group*,
    1999 WL. 959673 (Mass. Super. Ct. Sep. 21, 1999) .......................................... 12

*Jet Spray Cooler, Inc.* v. *Gifford K. Crampton*, 361 Mass. 835 (1972) ...................................... 12

*Campbell* v. *Laurel*, 1990 WL. 605642 (W.D. Mich. 1990) ...................................................... 14

*CoWorx Staffing Services LLC* v. *Coleman*,
    2007 WL. 738913 (Mass. Super. Ct. Feb. 7, 2007)............................................. 16

*Curtis-Wright Corp.* v. *Edel-Brown Tool & Die Co.*, 381 Mass. 1 (1980) ........................... 13, 17

*Di Bartolo* v. *Boston College*, 2001 WL. 920034 (Mass. Super. Ct. May 29, 2001) .................. 19

## TABLE OF AUTHORITIES
### (continued)

Page

*Employers Ins. of Wausau* v. *George*, 673 N.E.2d 572 (Mass. App. Ct. 1996) ......................... 15

*G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262 (1991) .......................................... 18

*Gifford* v. *Spehr*, 358 Mass. 658 (1971) ...................................................................................... 5

*Informex, Inc.* v. *Rennell*, 41 Mass. App. Ct. 161 (Mass. App. 1996) ....................................... 16

*Jordan* v. *Commissioners of Bristol County*, 268 Mass. 329 (1929) .......................................... 5

*Kurker* v. *Hill*, 44 Mass. App. Ct. 184 (1998) ......................................................................... 18

*Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1 (Mass. 1997)...........................15, 16, 17

*Nader* v. *Citron*, 372 Mass. 96 (Mass. 1977)............................................................................ 15

*Nissan Autos. of Marlborough, Inc.* v. *Glick*,
     62  Mass. App. Ct. 302 (Mass. App. Ct. 2004) ................................................................... 15

*Ocean Air, Inc.* v. *Katzman*,
     2002 WL. 532475 (Mass. Super. Ct. Jan. 22, 2002) ......................................................... 16

*Pembroke Country Club* v. *Regency Sav. Bank*, 62 Mass. App. Ct. 34 (2004) ......................... 18

*Slaney* v *Westwood Auto, Inc.*, 366 Mass. 688 (1975) .............................................................. 15

*Stark* v. *Advanced Magnetics, Inc.*, 50 Mass. App. 226 (2000)............................................... 4, 5

*Sumner v. Richmond*, 2005 Mass. Super. LEXIS 311 ................................................................ 10

*Szalla* v. *Locke*, 421 Mass. 448 (1995).................................................................................... 16

*United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811 (1990)............................................... 18

## FEDERAL STATUTES

5 U.S.C. § 8101 *et seq* ................................................................................................................ 2

17 U.S.C. § 507(b)....................................................................................................................... 6

Fed. R. Civ. P. 8 .................................................................................................................2, 13, 18

**TABLE OF AUTHORITIES**
(continued)

Page

Fed. R. Civ. P. 10(a) ................................................................................................. 9

Fed. R. Civ. P. 10(b) ............................................................................................... 14

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ................................................................................. 2, 4, 6, 19

**STATE STATUTES**

Mass. Gen. Laws Ch. 93, § 42 ............................................................................ 5, 9, 10

Mass. Gen. Laws Ch. 260, § 2A .............................................................................. 4

Mass. Gen. Laws Ch. 266, § 30 .............................................................................. 10

Mass. Gen. Laws Ch. 266, § 30(4) ........................................................................... 9

## I.    __INTRODUCTION__

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Dustin Moskovitz, Andrew McCollum, and Christopher Hughes ("Individual Defendants") move to dismiss ConnectU Inc.'s second (trade secret misappropriation), fifth (unfair trade practices), seventh (unjust enrichment), and eighth (intentional interference with prospective contractual and advantageous business relations) claims for relief. The individual defendants also move to partially dismiss Plaintiff's first claim for relief (copyright infringement). Several reasons exist to dismiss these claims.

The trade secret misappropriation, unjust enrichment, and intentional interference with prospective contractual and advantageous business relations claims all are time barred by applicable three year statutes of limitation. The pleadings establish that these claims are time-barred. Plaintiff may assert that its claims are tolled because of previous litigation. However, his Court previously has found that as of September 2, 2004, ConnectU LLC (an entity alleged to be merged into ConnectU) had no members. In previous litigation, ConnectU LLC also did not own the rights that are at issue in this case as a result of that holding. Furthermore, as to Plaintiff's claim for Copyright Infringement, the claim is premised upon the Individual Defendants' alleged continuing infringement of ConnectU's copyright. The copyright infringement claim is subject to a three year statute of limitation. No savings or renewal statutes exists. Therefore, any acts of alleged infringement prior to March 28, 2004 (the day this complaint was filed) are time barred.

Many of ConnectU's claims are preempted by the "Copyright Act." ConnectU's asserted claims for violation of Massachusetts General Law ch. 93A, Unjust Enrichment, and Intentional Interference with Prospective Contractual and Advantageous Business Relations are not qualitatively different from those rights protected under the Copyright Act. Each of those claims is premised on unauthorized use of software alleged to have been taken from Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss (collectively, "ConnectU Founders). As such, the claims are preempted.

ConnectU's state law claims for Misappropriation of Trade Secrets pursuant to G.L. ch.

266 § 30(4) and ch. 93 § 42, Unfair Trade Practices Act pursuant to G.L. 93A, and Intentional

Interference with Prospective Contractual Advantageous Business Relations also are

insufficiently pled or inapplicable against the Individual Defendants.  The claims conflate

numerous different legal theories and group together defendants with  no specific allegations.

Such a hodge podge of allegations is not allowed, even under the broad pleading requirements of

Rule 8.

Finally, ConnectU's claim for Unjust Enrichment is not actionable because ConnectU has

pled an "adequate remedy at law."

## II.    <u>BACKGROUND FACTS</u>

ConnectU's complaint is premised on the notion that the defendants started

theFacebook.com by taking software from the ConnectU Founders.  The only specific allegations

related to this claim are against Mark Zuckerberg.  At the time of these purported events,

Facebook LLC, Facebook, Inc., ConnectU LLC, and ConnectU Inc. did not exist.  *See* Compl. ¶¶

38-39, 42.

On September 2, 2004, ConnectU, LLC, a now-defunct Delaware Limited Liability

Company, filed a complaint against "TheFacebook.com a/k/a TheFacebook" as an "implied or *de

facto*" Massachusetts partnership, as well as Mark Zuckerberg, Dustin Moskovitz, Andrew

McCollum, Christopher Hughes, and Eduardo Saverin, individually.  *See* Compl. ¶¶ 5-10

(Docket No. 1, Case 1:04-cv-11923-DPW, *ConnectU, LLC v. Zuckerberg, et al.*) ("the 2004

lawsuit").[1]  In the first complaint, ConnectU LLC sought damages for misappropriation of trade

---

[1] Because they are public records for which authenticity is not in dispute, Courts may take
judicial notice of earlier Court proceedings when considering a Motion to Dismiss pursuant to
Fed. R. Civ. P. 12(b)(6), without converting the motion into one for summary judgment.
*Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993);  5C Wright & Miller, *Federal Practice &
Procedure* § 1364, at 138 (2004) ("judicial notice may be taken of prior pleadings and
proceedings" without converting a Rule 12(b)(6) motion into one for summary judgment).
Signficantly, Courts may take judicial notice of earlier proceedings dismissed for lack of
diversity jurisdiction in determining whether to grant a Rule 12(b)(6) motion alleging that a
statute of limitations has run.  *See Lexington Ins. Co. v. Abarca Warehouses Corp.* 337 F. Supp.
902, 904 (D.P.R. 1971).  *See also Panico v. Whiting Milk Co.*, 335 F. Supp. 315, 316 n.1 (D.
Mass. 1971) (Court takes notice of proceedings in earlier closed civil action in same Court in

secrets pursuant to Massachusetts G.L. ch. 266, § 30(4), breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, intentional interference with prospective contractual and advantageous business relations, and fraud. *Id.* ¶¶ 24-64.  ConnectU LLC never alleged or stated in its complaint that it owned the rights necessary to proceed.

On October 14, 2005, the Individual Defendants[2] filed a motion to dismiss pursuant to Rule 12(b)(1).  *See* Mot. to Dismiss (Docket No. 94, Case 1:04-cv-11923-DPW).  That motion was granted on March 28, 2007, and the original complaint and all subsequent pleadings were dismissed for lack of diversity jurisdiction.  *See* Order of Court dated May 28, 2007 (Docket No. 288, Case 1:04-cv-11923-DPW).  Immediately upon dismissal, ConnectU, a Connecticut corporation, filed a new complaint captioned *ConnectU, Inc. v. Facebook, Inc., et al.* Case 1:07-cv-10593-DPW ("the 2007 case").

The new complaint adds four claims for relief that were not originally raised by ConnectU LLC: (1) copyright infringement, (2) misappropriation of trade secrets pursuant to Massachusetts G.L. ch. 93, § 42 (in addition to Massachusetts G.L. ch. 266, § 30(4), (3) breach of Massachusetts Unfair Trade Practices pursuant to Mass. G.L. ch. 93A, §§ 1, 2, 9 & 11, and (4) breach of confidence under California common law.  Compl. ¶¶ 43-57, 87-90 & 98-104 (Docket No. 1).  Two new parties, Facebook, Inc. and Facebook, LLC, also were added.[3]  *Id.* ¶¶ 10, 11.

---

which defendant had been awarded lost wages and costs pursuant to 5 U.S.C. § 8101 *et seq.*, for purposes of determining whether to grant a Rule 12(b)(6) motion brought by the United States to determine if third parties could be indemnified for amounts already paid).

[2] The "Individual Defendants" comprise all defendants other than Eduardo Saverin.

[3] ConnectU LLC filed an Amended Complaint on October 28, 2005 in the original lawsuit between the parties.  First Amended Complaint (Docket No. 13, Case 1:04-cv-11923-DPW). That Amended Complaint purported to add claims for copyright infringement and breach of Massachusetts Unfair Trade Practices pursuant to Mass. G.L. ch. 93A, §§ 1, 2, & 9, and also identified Facebook, Inc. as the Defendant in place of TheFacebook.com a/k/a TheFacebook.  *Id.* ¶¶ 10, 24-29, 46-51 & 66-69.  When the Court dismissed the earlier action, it concluded that the amendment was of no effect because diversity jurisdiction was lacking when the earlier, original complaint was filed.  *See* Rep. & Recommendation on Facebook Defendants' Mot. to Dismiss at 4-10 (Docket No. 283, Case 1:04-cv-11923-DPW), adopted by Order of Court dated May 28, 2007 (Docket No. 288).

OHS West:260218985.3

III.    **ARGUMENT**

A.    **The State Law Claims for Misappropriation of Trade Secrets, For Unjust Enrichment, And For Intentional Interference With Contractual And Advantageous Business Relations Against the Individual Defendants Are Time-Barred**

Granting a motion to dismiss based on a limitations defense is appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred. *LaChappelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998). Here, the pleadings reflect that ConnectU's claims against the Individual Defendants for misappropriation of trade secrets, for unjust enrichment, and for intentional interference with prospective contractual and advantageous business relations are time-barred. All three of these claims asserted against the individual defendants are subject to a three year statute of limitations. *See* Mass. Gen. Laws ch. 260, § 2A; *Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. 226, 232 (2000) (tortious interference with contractual relations and misappropriation of trade secrets); *Epstein v. C.R. Bard, Inc.*, 2004 WL 1598912, at *3 (D. Mass. July 19, 2004) (misappropriation of trade secrets and unjust enrichment). The latest "wrongful" act specifically alleged by Plaintiff is the launch of www.thehfacebook.com on February 4, 2004. Under the statute of limitations, the time for ConnectU to proceed on these claims expired on February 4, 2007, and they all must therefore be dismissed with prejudice pursuant to Rule 12(b)(6).

A claim for which the statute of limitations has run can only be saved by the Massachusetts "renewal" statute. See Mass. G.L. ch. 260, § 32. The renewal statute applies only where the new litigation involves the same parties, same operative facts, and same cause(s) of action as an earlier action that was "duly commenced" within the limitations period. *Corliss v. City of Fall River*, 397 F. Supp. 2d 260, 267 (D. Mass. 2005) citing *Rodi v. Southern New England School of Law*, 389 F.3d 5, 18 (1st Cir. 2004). The "renewal" statute does not apply here for the reasons set forth below. The "renewal" statute also does not apply because, despite ConnectU's assertion that is has acquired all rights, title and interest to the ConnectU Founders' claims, (Compl. ¶ 42), ConnectU did not own the rights when the earlier case was filed. Indeed, the complaint does not say when such rights were acquired. As this Court concluded when it

dismissed the earlier action, ConnectU LLC had no members.  *See* Rep. & Recommendation on Facebook Defendants' Mot. to Dismiss at 51, 55 (Docket No. 283, Case 1:04-cv-11923-DPW), adopted by Order of Court dated May 28, 2007 (Docket No. 288).  It follows that if ConnectU had no members, then there had not been a transfer of rights and title to ConnectU as of September 2, 2004, when the original Complaint was filed.  See *id*. at 30, 36-37, 51-55.  No new allegation exists in the Complaint that establishes ConnectU had the rights on or before September 2, 2004, and hence the admitted lack of ownership by ConnectU is fatal to any reliance on the renewal statute.  It never had the right to bring the claims in the first place (*i.e.*, the action was not duly commenced).  Accordingly, the time-barred claims cannot be saved and must be dismissed with prejudice.

### 1.    Mass. Gen. Laws Ch. 93, § 42 Is Time Barred as to All Defendants

An additional reason exists why ConnectU's new claim for misappropriation of trade secrets that is predicated on Mass. G.L. ch. 93, § 42 is time barred.  This claim was never asserted in the earlier litigation.

Under the applicable three year statute of limitations. ConnectU was required to assert any misappropriation of trade secrets claim predicated on Mass. G.L. ch. 93, § 42 on or before February 4, 2007.  *Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. at 232;  *Epstein v. C.R. Bard, Inc.*, 2004 WL 1598912, at *3.  The present Complaint was not filed until March 28, 2007.  Under Massachusetts law, a claim for trade secret misappropriation is not a continuing tort and the statute of limitation runs from the time of the first act of misappropriation.  *Prescott v. Morton Int'l, Inc.* 769 F.Supp. 404, 406-407 (D. Mass 1990).

ConnectU may again incorrectly assert it is protected under of the Massachusetts "renewal" statute, Mass. G.L. ch. 260, § 32.  Yet, ConnectU did not assert a violation of Ch. 93, § 42 in its earlier complaint.  Consequently, no claim for violation of the statute was "duly commenced" against any Defendant in the prior case.  *See Jordan v. Commissioners of Bristol County*, 268 Mass. 329, 332 (1929);  *Newman v. Burgin*, 930 F.2d 955, 964 (1st Cir. 1991);  *Gifford v. Spehr*, 358 Mass. 658, 662-664 (1971).  The renewal statute again is inapplicable, and

the misappropriation claim must be dismissed pursuant to Rule 12(b)(6) as to all Defendants.

> **2.    Acts Of Copyright Infringement Alleged To Have Occurred Earlier Than March 28, 2004 Are Time-Barred**

"Civil actions seeking copyright remedies are barred unless 'commenced within three years after the claim accrued." 17 U.S.C. § 507(b).   In the case of a continuing infringement, an action may be brought only for acts that accrued within the three year limitations period. *Portfolioscope, Inc. v. I-Flex Solutions Ltd.*, 2007 U.S. Dist. LEXIS 10300, **2 (D. Mass. 2007) ("claims for copyright infringement are barred only for events falling outside the three-year limitations period").

ConnectU alleges that the defendants launched the Facebook website on February 4, 2004 using ConnectU's copyrighted work.  Compl. ¶¶ 32, 38.   ConnectU further alleges that the defendants continue to use its copyrighted work "to develop, launch, and/or maintain the facebook.com website." *Id.*, ¶¶38, 46.  Because the Copyright Act bars relief on claims older than three years, ConnectU's "continuing infringement" theory will only give rise to relief for those acts that are alleged to have occurred within the limitations period.  The three year statute of limitations must be calculated back from March 28, 2007, the date this matter was filed.  Thus, relief sought for any infringement alleged to have occurred prior to March 28, 2004, is barred by the statute of limitations.

> **B.    The Copyright Act Preempts Three Of ConnectU's State Law Claims**

Section 301 of the Copyright Act broadly preempts state law claims," and "converts all state common or statutory law 'within the general scope of copyright' into federal law to be uniformly applied throughout the nation." *Ritchie v. Williams*, 395 F.3d 283, 285-86 (6th Cir. 2005) (quoting 17 U.S.C. § 301(a)). *See also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (Copyright Act "both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action."), *cert. denied*, 544 U.S. 949 (2005); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 448 F. Supp. 2d 244, 253 (D. Mass. 2006).  State law claims are preempted if the subject

OHS West:260218985.3

matter involved may be protected by the Copyright Act and "the state created right" is "equivalent to one of the exclusive rights created by the Copyright Act." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 501, 505 (D. Mass. 1992), *aff'd*, 36 F.3d 1147 (1st Cir. 1994); *see also, John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 186 F. Supp. 2d 1, 27-28 (D. Mass. 2002). "The crux of the inquiry is whether the claimed state created right is qualitatively similar enough to the right protected by federal law to be termed 'equivalent' to, and thus preempted by, the federal law." *Data General,* 795 F. Supp. at 505.

Preemption can be avoided only if the state law claim contains an "extra element." *Cambridge Literary Props., Ltd.*, 448 F. Supp. 2d at 253-254; *Diamond v. Gillis*, 357 F. Supp. 2d 1003, 1008 (E.D. Mich. 2005). A state law claim will be preempted if the state claim "seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law" and does "not include any extra elements that make it qualitatively different from a copyright infringement claim." *Briarpatch Ltd., L.P.*, 373 F.3d at 305. *See also Guedes v. Martinez*, 131 F. Supp. 2d 272, 279 (D.P.R. 2001) ("To avoid preemption, a cause of action defined by state law must incorporate elements beyond those necessary to prove copyright infringement, and must regulate conduct qualitatively different from the conduct governed by federal copyright law") (internal quotations and citation omitted). Many of the state law claims alleged against the Individual Defendants are premised on the defendants' alleged unauthorized use of the Harvard Connection software:

> On February 4, 2004 … Defendants launched a directly competitive website, thefacebook.com (now known as "facebook.com"). This launch usurped Plaintiff's Information and Procedures [including the Harvard Connection code] and valuable business opportunity…Defendants used the Harvard Connection Code in connection with the facebook.com website and/ or benefited from their access to it, knowledge of it, and/ or use of it.

Compl. ¶ 32 (Docket No. 1). This allegation is the basis for ConnectU's claims for violation of G.L. 93A, unjust enrichment, and intentional interference with prospective contractual and advantageous business relations. All are preempted.

-7-

1.    **Mass. Gen. Laws 93A is Preempted by Copyright Law**

Claims under Section 93A are preempted where the claim is predicated on the use, without permission, of a copyrighted work.  *See John G. Danielson, Inc.*, 186 F. Supp. 2d 1. ConnectU's Section 93A allegations incorporate by reference its claim for relief under the Copyright Act, as well as the description of wrongful use of the Harvard Connection code to launch the Facebook website.  Compl. ¶¶ 32, 66.  ConnectU alleges that by copying its source code and using it "in connection with the facebook.com website" the defendants infringe ConnectU's copyright.  *Id.*, ¶ 45.  ConnectU further alleges without any specificity, that the defendants' use of ConnectU's source code constitutes "unfair or deceptive acts or practices" in violation of Section 93A.  *Id.*, Ex. B.  Because the alleged acts are alleged to constitute copyright infringement (*i.e.*, "usurping" Harvard Connection code), ConnectU's claim for relief pursuant to Section 93A is preempted.  Accordingly, the Court should dismiss ConnectU's Fifth Claim for Relief.

2.    **Plaintiff's Unjust Enrichment Claim is Preempted by Copyright Law**

Well-established law demonstrates that the Copyright Act preempts unjust enrichment claims where the plaintiff alleges that the defendant derived profit from misappropriation and used copyright material.  *See Ritchie*, 395 F.3d 283 at 289.  ConnectU's unjust enrichment claim is premised on the Individual Defendants' alleged use of ConnectU's copyrighted Harvard Connection Code.  Compl. ¶¶ 32-38.  Because ConnectU's unjust enrichment claim amounts to nothing more than a claim for an accounting to ConnectU for its ownership of the Harvard Connection Code, it is preempted by the Copyright Act.  *See Ritchie*, 395 F.3d 283 at 289; *Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 638 (6th Cir. 2001); *Ehat v. Tanner*, 780 F.2d 876, 878 & n. 2 (10th Cir. 1985), *cert. denied*, 479 U.S. 820, 93 L. Ed. 2d 39, 107 S. Ct. 86 (1986) (finding unjust enrichment and unfair competition claims alleging that the defendant derived profit from misappropriation and used copyrighted material stolen from office were preempted); *Wilson v. Mr. Tee's*, 855 F. Supp. 679, 684 (D.N.J. 1994) (unjust enrichment and quantum meruit claims preempted); *Kunycia v. Melville Realty Company, Inc.*,

OHS West:260218985.3

755 F. Supp. 566, 577 (S.D.N.Y. 1990) (unjust enrichment claim alleging reproduction of copyrighted works without compensation to the plaintiff preempted).  The leading treatise on Copyright law is in accord.  *See* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1][g] (2006) ("a state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.")  Accordingly, the Court should dismiss ConnectU's Seventh Claim for relief.

### 3. ConnectU's Claim for Relief Based On Defendants' Alleged Intentional Interference with Prospective Contractual and Advantageous Business Relations is Preempted

ConnectU's Intentional Interference with Prospective Contractual and Advantageous Business Relations under Massachusetts Common Law claim also is preempted by the Copyright Act.  The allegations of the complaint provide no qualitative difference between the asserted right (*i.e.*, unauthorized use of code) and the exclusive right under the Copyright Act.  *Data General*, 36 F.3rd at 1164-1165.  S*ee also Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539, 85 L. Ed. 2d 588, 105 S. Ct. 2218 (1985).  Indeed it is the alleged act of unauthorized use of the Harvard Connection Code and any derivation thereof in www.facebook.com that gives rise to the alleged violation.  ConnectU may argue that its claim has an "additional element," such as intent.  However, the "additional elements" under ConnectU's Eighth Claim do not require qualitatively different conduct by Facebook, "nor [do they establish] a fundamental non-equivalence between the state and federal rights implicated." *Harper & Row, Publishers, Inc.*, 501 F. Supp. at 853-54; *accord*, *Kamakazi Music Corp. v. Robbins Music Corp.*, 522 F. Supp. 125, 137 (S.D.N.Y. 1981), *aff'd*, 684 F.2d 228 (2d Cir. 1982).

### C. Plaintiff's Claim for Misappropriation of Trade Secrets Pursuant to G.L. ch. 266 section 30(4) and ch. 93 section 42 Fails

In its claim for trade secret misappropriation, ConnectU relies upon two entirely different statutes, Ch. 266, § 30(4) and Ch. 93 § 42, which is impermissible under Fed. R. Civ. P. 10(a).

ConnectU also lumps together numerous defendants and only provides specific factual allegations as to Zuckerberg, which is also improper. *Cf. Hare v. Family Publications Serv., Inc.*, 342 F. Supp. 678, 686 (D. Md. 1972) (court required plaintiffs to divide complaint into separate counts, to enable court to understand claims and to determine against which defendant claim was asserted). By failing to identify a single basis for a claim and specific factual allegations as to particular defendants, ConnectU has failed to state a claim. *Cf. Leatherman v. Tarrant G. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993); *Aaron v. Aguirre*, 2007 WL 959083 (S.D. Cal. 2007). Even construing the Complaint liberally, ConnectU has failed to state a claim under the statutes identified.

1.     **Mass. Gen. Laws Ch. 266, § 30 Does Not Provide A Private Right Of Action And Thus Must Be Dismissed**

Mass. Gen Law ch. 266 § 30 is not actionable by ConnectU. Chapter 266, Section 30 is a criminal statute "which prohibits larceny of electronically processed data and data in transit, among other types of property." *Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 105 (D. Mass. 1999). This section does not provide a private remedy. *Sumner v. Richmond*, 2005 Mass. Super. LEXIS 311 (Mass. Super. Ct. 2005); *see also Swartz*, 53 F. Supp. 2d at 105 (where court found "there is not a private right of action" under Ch. 266, § 30). Thus, any claim brought by ConnectU under Ch. 266 § 30 must be dismissed.

2.     **ConnectU Fails To State A Claim For Trade Secret Misappropriation**

In addition to being time-barred (*see supra*), ConnectU's trade secret claim pursuant to Ch. 93 § 42 is not adequately pled and must be dismissed. ConnectU cannot establish a claim for misappropriation of trade secrets unless it alleges facts that (i) its "Information and Procedures" is a trade secret, (ii) ConnectU took reasonable steps to preserve the confidentiality of its "Information and Procedures," and (iii) the Defendants utilized improper means, or participated in their own or another's breach of a confidential relationship, to acquire and use the trade secret. *Swartz*, 53 F. Supp. 2d at 100, *citing Picker Int'l. Corp. v. Imaging Equip. Servs., Inc.*, 931 F. Supp. 18, 35 (D. Mass. 1995). An adequately pled claim for relief must contain more than "'bald

assertions [and] unsupportable conclusions…'" *Swartz*, 53 F. Supp. 2d at 99 (*quoting Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996)).  Indeed, the plaintiff must "'set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery.'"  *Id.* (*quoting Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989)).  ConnectU has not met these basic pleading requirements.

> **a.    ConnectU's "Information and Procedures" Is Not A Trade Secret**

Under Massachusetts law, a trade secret is defined as:

> Any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. … The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.

*Swartz*, 53 F. Supp. 2d at 100, *citing J. T. Healy & Son v. James A. Murphy & Son*, 357 Mass. 728, 736, (1970).  ConnectU alleges that its trade secret is "[t]he combination of such ideas, code and database definitions, screens, information, and procedures … ." Compl. ¶ 21 (Docket No. 1). ConnectU does not allege that any of these items by itself is proprietary or confidential, but rather that the "combination" was proprietary and secret. *Id.*  To the extent any component, such as "the basic idea" for a social networking website, the "user interface," "functionality and content," or "concepts," already was in use in the marketplace, ConnectU cannot claim it as a trade secret.  *Moore v. Marty Gilman, Inc.*, 965 F.Supp. 203, 216 (D. Mass. 2006).  Indeed, attaching the label "combination" to a "self-evident list of items … does not transform the list into a trade secret."  *Id.*, at 217.

Further, nothing in the complaint alleges specific facts demonstrating that such a "combination" would give ConnectU "an opportunity to obtain an advantage over competitors who do not know or use it."  *Swartz,* 53 F.Supp.2d at 100.  ConnectU generally alleges, that "[w]ith respect to Internet websites, the first to enter a market has a substantial advantage." Compl. ¶ 23 (Docket No. 1).  ConnectU does not allege that its "Harvard Connection" website would have been the first to enter the market absent Zuckerberg's alleged wrongful acts.  Nor

-11-

does ConnectU identify the market it sought to enter.  More specific allegations are necessary.

        **b.**      **ConnectU Does Not Show That It Took Steps To Ensure Secrecy**

      In order to state a claim for trade secret misappropriation, ConnectU must allege that "it took the necessary steps to insure the material's confidentiality."  *See Cambridge Internet Solutions v. Avicon Group*, 1999 WL 959673, at *2 (Mass. Super. Ct. Sep. 21, 1999) *citing Jet Spray Cooler, Inc. v. Gifford K. Crampton*, 361 Mass. 835, 841 (1972). "The business must demonstrate that it pursued an 'active course of conduct designed to inform . . . employees that such secrets and information were to remain confidential.'"  Indeed, the "unexpressed intentions of the plaintiff cannot bind the defendant."  *Id.*

      ConnectU's unsupported suggestions of confidentiality are insufficient as a matter of law. *Swartz*, 53 F. Supp. 2d at 99.  ConnectU does not allege that any component of its trade secret was marked confidential or that Zuckerberg signed a confidentiality agreement.  *See Cambridge Internet Solutions,* 1999 WL 959673, at *2 - *3 (where court found that plaintiff had sufficiently pled its claim where it alleged that it had marked "documents confidential and [had] employees and customers sign confidentiality agreements").  Instead, ConnectU alleges, in conclusory form, that "Plaintiff's predecessors took appropriate steps to maintain the secrecy of the Information and Procedures."  Compl. ¶ 51.  ConnectU provides no factual allegations to support its conclusion.  Rather, ConnectU alleges that "Zuckerberg understood that such Information and Procedures were proprietary and secret and agreed to keep them confidential" *Id.* ¶ 22, and that "Zuckerberg also had an obligation to keep them confidential."  *Id.*   Importantly, ConnectU does not allege that it ever told Zuckerberg that the information should be kept confidential, nor does ConnectU specify the basis for Zuckerberg's alleged "understanding" that the "information and procedures" were proprietary and secret.  Such conclusions of confidentiality and a purported agreement or understanding to maintain such confidentiality are insufficient to sustain this claim for relief.

>           c.    **ConnectU Does Not Allege That Individual Defendants Knew That the "Information and Procedures" Were Wrongfully Obtained**

ConnectU also does not sufficiently allege that defendants Moskovitz, McCollum, or Hughes, "utilized improper means, or participated in [Zuckerberg's alleged breach] of a confidential relationship, to acquire and use the trade secret."[4]  Under Massachusetts trade secret law, a third party will only be liable if he *knowingly* benefits from a trade secret which a person in a confidential relationship obtained from the plaintiff.  *See Curtis-Wright Corp. v. Edel-Brown Tool & Die Co.*, 381 Mass. 1, 6 (1980);  *Data General v. Grumman Sys. Support Corp.*, 825 F. Supp. at 357, 360.

Beyond conclusory allegations that Zuckerberg understood the secrecy and confidentiality of the alleged secrets, Plaintiff does not allege facts to show that any other Individual Defendant knew how or why the "Information and Procedures" contained ConnectU's allegedly confidential information, or that they knew they were confidential when Zuckerberg allegedly shared them.  *See* Compl. ¶¶ 21, 30, 32, 38.  ConnectU alleges no facts that suggest any defendant other than Zuckerberg had any relationship to the ConnectU Founders, had any reason to believe that the thefacebook.com website was based on anything other than code written by Zuckerberg, or that Zuckerberg breached any confidence to ConnectU.  Plaintiff merely concludes that the defendants acted "knowingly." Simply stated, there are no facts that provide notice to the Individual Defendants of how they allegedly participated in any misappropriation of trade secrets.

>    D.    **ConnectU's Claim Under Massachusetts G.L. 93A Fails**

Like ConnectU's trade secrets claim, ConnectU lumps together numerous different statutes and all defendants.  No specific allegations are made with respect to specific defendants. Such an approach does not meet the pleading requirement of Rule 8, which requires a complaint to "set forth enough information to outline the elements of a claim or to permit inferences to be

---

[4] This standard applies with equal, if not greater force, to Facebook, Inc. and TheFaceBook LLC, as they were formed *after* the allegedly wrongful acts.

OHS West:260218985.3

drawn that these elements exist." *Campbell v. Laurel*, 1990 WL 605642 (W.D. Mich. 1990). *See also Benoit v. Ocwen Financial Corp., Inc.*, 960 F. Supp. 287, 289 (S.D. Fla. 1997) (dismissing claims where "the complaint was rife with broad, vague, and conclusory statements" of a pattern and practice of age and sex discrimination, and that plaintiff was injured).

Moreover, this form of pleading violates Fed. R. Civ. P. 10(b), which specifically requires "[e]ach claim founded upon a separate occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth." One situation where separate counts are required is to avoid "shotgun pleading," so as to enable a defendant to determine what the plaintiff is claiming and to frame a responsive pleading, as well as for the court to administer justice. *Anderson v. Bd. of Trustees*, 77 F.3d 364, 366-67 (11th Cir. 1996). *See also Three D Depts., Inc. v. K-Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill. 1987) (failure to present claims involving agreement and implied duty of good faith in separate counts results in "unclear allegations" and "imprecise memoranda"). By itself, this failure to abide by the Federal Rules warrants dismissal. Nevertheless, the statutes relied upon by ConnectU do not give rise to a claim even under the most liberal treatment of the pleadings.

### 1. ConnectU May not Seek a Claim for Relief under Both §§ 9 and 11 because Those Claims are Mutually Exclusive

ConnectU asserts a "violation of ch. 93A §§ 2, 9, and/or 11." Compl. ¶ 68. ConnectU cannot claim violations of Massachusetts G.L. ch. 93A §§ 9 and 11 simultaneously. By their terms, Massachusetts G.L. ch. 93A § 9 and Massachusetts G.L. ch. 93A § 11 are mutually exclusive and inconsistent with one another. Section 9 protects an aggrieved consumer, while Section 11 is designed to police business-to-business transactions. *Continental Ins. Co. v. Bahnan,* 216 F.3d 150 (D. Mass. 2000). This statute, no matter how it is applied, has no bearing on this case.

### 2. ConnectU Failed to State a Claim Under Massachusetts G.L. 93A

#### a. ConnectU is not a "Consumer" Pursuant to Massachusetts G.L. ch. 93A § 9

In order to state a claim for relief pursuant to Massachusetts G.L. ch. 93A § 9, ConnectU

must plead facts to show (1) a transaction involving the purchase or lease of goods, services, or real or personal property, (2) the transaction was undertaken primarily for personal, family, or household purposes, (3) the defendants used or employed unfair or deceptive acts or practices, and (4) ConnectU's demand letter was sent 30 days prior to commencement of the suit. *Slaney v Westwood Auto, Inc.*, 366 Mass 688, 702-04 (1975).

ConnectU has not alleged any facts that evidence a "transaction involving the purchase or lease of goods, services, or real or personal property," or that any such transaction was "undertaken primarily for personal, family, or household purposes" — nor could it. In order to seek protection from this statute, ConnectU must be an aggrieved consumer. *See Employers Ins. of Wausau v. George*, 673 N.E.2d 572, 579 (Mass. App. Ct. 1996). Neither ConnectU, Narendra, or the Winklevoss brothers are a "consumer" within the scope of Section 9, which is defined "singly as a person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes." *Nader v. Citron*, 372 Mass. 96, 99 (Mass. 1977). Narendra and the Winklevoss brothers alleged that they sought to "found a business for profit" (Compl. ¶ 16). There is no allegation that they sought to purchase anything for "personal, family or household purposes." ConnectU has not alleged any facts demonstrating it is entitled to relief under Massachusetts General Laws Chapter 93A, Section 9. It must be dismissed.

### b.    ConnectU Does Not Allege That Any Unfair Or Deceptive Act Occurred In The Conduct Of Commerce

In order to state a claim pursuant to Mass. G.L.Ch. 93A, Section 11, ConnectU must allege that (1) the claim is brought by one business against another; (2) that the plaintiff is engaged in trade or commerce; (3) there has been a loss of money or property (4) that was caused by the defendant's unfair or deceptive acts or practices. *Linkage Corp. v. Trustees of Boston Univ.,* 425 Mass. 1, 22-23 (Mass. 1997). To "recover under this statute, [ConnectU] must demonstrate that [the defendants] used an 'unfair method of competition or an unfair or deceptive act' in the conduct of commerce." *Nissan Autos. of Marlborough, Inc. v. Glick*, 62

Mass. App. Ct. 302, 312 (Mass. App. Ct. 2004); *see also Linkage Corp.*, 425 Mass. at 22-23.
ConnectU has not established any of these basic requirements.

The relationship between Zuckerberg and the ConnectU Founders described in the
complaint was a strictly private endeavor, to which Section 11 does not apply.[5] *Linkage Corp.*,
425 Mass. at 23-24 (included in this classification are "disputes stemming from an employment
relationship, disputes between individual members of a partnership arising from partnership
business, and transactions and disputes between parties to a joint venture and between fellow
shareholders"); *Informex, Inc. v. Rennell,* 41 Mass. App. Ct. 161, 162-63 (Mass. App. 1996)
(holding that employment contracts are not the type of disputes covered by §11); *Armstrong v.
Rohm and Haas Co. Inc.*, 349 F.Supp.2d 71, 83 (D. Mass. 2004) (holding it is well settled that
chapter 93A does not apply to "employment contract disputes between employers and the
employees at work in the employer's organization, not to dispute between members of that
organization arising out of the employment relationship"); *see also Petricca Dev. Ltd. Partner. v.
Pioneer Dev. Co.*, 214 F.3d 216, 223 (1st Cir. 2000) ("Petricca concedes, as it must, that Ch.93A
generally is applicable only to business dealings 'between discrete, independent business
entities,' not to 'disputes between parties in the same [joint] venture,' as the latter are not
regarded as having arisen in 'trade or commerce'"; quoting *Szalla v. Locke*, 421 Mass. 448
(1995)).

ConnectU's allegations rest precisely on the type of private endeavor not protected by
Section 11. ConnectU alleges that Zuckerberg was "engaged" by ConnectU's predecessors and
"acted as a member of the Harvard Connection development team." Compl. ¶ 21. ConnectU also
alleges that Zuckerberg entered a "partnership" with its predecessors. *Id.* ¶ 29. Because
Zuckerberg was a "member" and a "partner" of the Harvard Connection development team,

---

[5] Notably, section 11 claims cannot be brought against a subsequent employer for issues related
to the employee's prior acts. *See Ocean Air, Inc. v. Katzman*, 2002 WL 532475, at *10- *11
(Mass. Super. Ct. Jan. 22, 2002); *CoWorx Staffing Services LLC v. Coleman*, 2007 WL 738913,
at *3 -*4 (Mass. Super. Ct. Feb. 7, 2007). Accordingly, plaintiff also has failed to state a claim
against Facebook, Inc. and the Facebook LLC.

ConnectU's claim falls outside of the scope of Section 11.

Section 11 also cannot apply to Messrs. Moskovitz, McCollum or Hughes because none of these defendants is a "business" and no deceptive or unfair action is alleged to apply to them. *See Petricca Dev. Ltd. Partner,* 214 F.3d at 223. Indeed, no such allegations can be found in the complaint. To state a claim, ConnectU must plead facts that show Messrs. Moskovitz, McCollum, and Hughes engaged in unfair or deceptive acts as a business and in commerce. *See e.g., Beveller*, 381 Mass. at 190-191; *Petricca Dev. Ltd. Partner*, 214 F.3d at 223-24; and *Linkage Corp.*, 425 Mass. 1. ConnectU has not done so and cannot do so.

ConnectU also does not allege that the ConnectU Founders were a business engaged in trade or commerce during the relevant time. Instead, ConnectU asserts only that they came together "to attempt to found a business for profit." Compl. ¶ 16. Indeed, at the time Zuckerberg was "engaged" by ConnectU's predecessors, no company was formed, and each of the individual defendants was a student. *Id.*, ¶¶ 17, 27, 39 (Facebook LLC formed on April 13, 2004; Narendra and the Winklevoss brothers, not ConnectU, asked Zuckerberg to help create the website). Thus, ConnectU has not stated a claim for relief under Mass. G.L.Ch. 93A, Section 11.

### 3.    Plaintiff's Claim for Unjust Enrichment under Massachusetts Common Law Fails because Plaintiff has an Adequate Remedy at Law

Unjust enrichment is an equitable cause of action, which is available only to plaintiffs who lack adequate remedies at law. *See, e.g., Stone v. White*, 301 U.S. 532, 534 (1937); *Massachusetts v. Milan Labs*, 357 F. Supp. 2d 314, 324 (D. Mass. 2004) ("A claim for unjust enrichment requires proof that the defendant was enriched to the plaintiff's detriment without justification or an adequate legal remedy."); *In re Lupton Mktg. & Sales Practices Lifting.,* 295 F. Supp. 2d 148, 182 (D. Mass 2003); *Taylor Woodrow Littman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982). Because ConnectU alleges numerous legal claims for which remedies at law exist, and even requests that the Court order "Defendants to pay Plaintiff damages, including but not limited to direct, consequential, indirect, compensatory, and punitive damages, not to mention "actual damages" and "statutory damages,"

-17-

ConnectU's claim for unjust enrichment should be dismissed.  *See* Compl. ¶¶ C-E.

### 4.    **Plaintiff's Claim for Intentional Interference with Prospective Contractual Advantageous Business Relations Must Fail**

Plaintiff's eighth claim lumps two different causes of action together and makes no specific allegations against any particular defendant.  Once again, plaintiff's allegations fails to meet the requirements of Rules 8 or 10(b) as a result.  *See also United States v. School Dist.*, 400 F. Supp. 1122, 1130-31 (E.D. Mich. 1975) (claims arising from different transactions and seeking distinct remedies must be stated in separate counts to facilitate a clear presentation of the facts and issues), *aff'd in part and remanded in part on other grounds*, 577 F.2d 1339 (6th Cir. Mich. 1978).  While this fact provides sufficient reason for the Court to dismiss, it is clear that even under a liberal construction of the Complaint no cause of action exists as a matter of law against the Individual Defendants for Plaintiff's "claim" of intentional interference with prospective contractual and advantageous business relations.

One possible claim that plaintiff is raising is a claim of intentional interference with prospective contractual business relations.  To properly plead such a claim, a plaintiff must show that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.  *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991), *citing United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 812-17 (1990);  *Pembroke Country Club v. Regency Sav. Bank*, 62 Mass. App. Ct. 34, 38 (2004).  Another potential claim is interference with an advantageous business relationship.  To properly plead a claim under this theory, the plaintiff must show that: (1) it had a business relationship for economic benefit with a third party; (2) the defendant knew of the relationship; (3) the defendant interfered with the relationship through improper motive or means; and (4) the plaintiff suffered a loss of advantage resulting directly from the defendant's conduct.  *See Kurker v. Hill*, 44 Mass. App. Ct. 184, 191 (1998);  *Rogers v. Nstar Elec.*, 389 F. Supp. 2d 100, 109 (D. Mass. 2005).  Plaintiff has failed to plead a claim

under either legal theory.

ConnectU fails to identify or allege any relevant contracts or business relationships, the knowing inducement of the Facebook to break or interfere with any such contracts, any intentional acts of encouragement to establish improper motive or means, or the manner of harm that ConnectU allegedly suffered as a result of any defendant. There simply is no allegation that sets out why the defendants are sued for this claim. *Cf. Di Bartolo v. Boston College*, 2001 WL 920034, at *2 - *3 (Mass. Super. Ct. May 29, 2001) (dismissing claims for interference with prospective contractual relations and interference with prospective business advantage where plaintiff failed to allege any breach of contract or any interference for an improper purpose). Under these circumstances, the claim should be dismissed.

Instead of pleading what is required under the law, ConnectU alleges that by coming to market first, Defendants usurped its opportunities to form a relationship with potential advertisers and investors. Compl. ¶¶ 40, 41, 88. Such an allegation is insufficient for this sort of claim. ConnectU must plead, "more than the mere existence of a potential market for a company's product to create a prospective advantageous relationship with each potential customer in that market." *Laser Labs, Inc. v. TELL Testing Laboratories, Inc.*, 29 F. Supp. 2d 21, 23 (D. Mass. 1998) .

ConnectU also fails to allege any facts that show that, if any relationship existed, any defendant was aware of it. Instead, ConnectU concludes that Defendants' actions were "willful and/or knowing." Compl. ¶ 89. Because no facts exist that establish the existence of a business relationship or contemplated contract of economic benefit, ConnectU cannot plead any facts evidencing any defendants' knowledge of such a relationship. As a result, ConnectU also cannot allege that Defendants interfered with any particular relationship or potential relationship. Thus, its claim fails, and it must be dismissed with prejudice pursuant to Rule 12(b)(6).

## IV.    **REQUEST FOR ORAL ARGUMENT**

The Facebook Defendants believe that oral argument may assist the Court and wish to be heard on the issues presented in this Motion to Dismiss.

-19-

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff's claims must be dismissed.


Dated: April 23, 2007                    /s/ Steve M. Bauer /s/
_____
                                          Steve M. Bauer
                                          Jeremy P. Oczek
                                          PROSKAUER ROSE, LLP
                                          One International Plaza, 14th Floor
                                          Boston, MA 02110-2600
                                          Telephone:    (617) 526-9600
                                          Facsimile:     (617) 526-9899

                                          OF COUNSEL:
                                          G. Hopkins Guy, III
                                          I. Neel Chatterjee
                                          Monte M.F. Cooper
                                          Theresa A. Sutton
                                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                          1000 Marsh Road
                                          Menlo Park, CA  94025
                                          Telephone:  (650) 614-7400
                                          Facsimile:   (650) 614-7401


                                          ATTORNEYS FOR FACEBOOK, INC., MARK
                                          ZUCKERBERG, DUSTIN MOSKOVITZ,
                                          ANDREW MCCOLLUM, CHRISTOPHER
                                          HUGHES, and THEFACEBOOK, LLC

-20-

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 23, 2007.

Dated:  April 23, 2007.           Respectfully submitted,

                                       /s/ Steve M. Bauer /s/
                                       Steve M. Bauer

OHS West:260218985.3