UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., | Civil Action No. 1:07-CV-10593 -DPW |
| Plaintiff, | |
| v. | |
| FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, LLC, | |
| Defendants. | |

**DEFENDANT MARK ZUCKERBERG'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................ 1

II.    BACKGROUND FACTS ...................................................... 2

III.   ARGUMENT ...................................................................... 4

    A.    Legal Pleading Standard ............................................... 4

        1.    Legal Standard For Motion to Dismiss .................................... 4

        2.    Legal Standard For Claims Premised In Fraud ........................ 4

    B.    Plaintiff's Ninth Claim (Fraud) Against Zuckerberg Fails ................ 5

        1.    Plaintiff Has Not Pled Fraud With Particularity ....................... 5

        2.    Plaintiff Does Not Own The Claims Asserted Herein .............. 7

    C.    Plaintiff's Claim For Breach Of Contract, and Breach of the Implied Covenant of Good Faith and Fair Dealing ................................ 7

        1.    The Claims Are Insufficiently Pled Under Both Rule 8 And Rule 9 ........ 8

            a.    Breach of Contract Claim ............................................ 8

            b.    Breach of Implied Covenant of Good Faith and Fair Dealing Claim ...... 9

        2.    The Claims Are Preempted By The Copyright Act ................. 9

    D.    Plaintiff's Claim For Breach Of Fiduciary Duty Fails ..................... 10

        1.    Breach Of Fiduciary Duty Claims Are Non-Assignable In Massachusetts ........ 10

        2.    Plaintiff's Claim Is Insufficiently Pled ................................. 11

    E.    Plaintiff's Claim Under California Law For "Breach Of Confidence" Must Be Dismissed As A Matter Of Law .............................. 11

        1.    Breach Of Confidence Claims Are Not Assignable ............... 11

        2.    The Claim For Brach of Confidence Is Barred By California's Two Year Statute Of Limitations .............. 12

        3.    The Breach Of Confidence Claim Fails To State A Claim Upon Which Relief May Be Granted .......... 12

        4.    The Breach of Confidence Claim Is Preempted by California's Adoption of the Uniform Trade Secrets Act ..... 13

IV.    REQUEST FOR ORAL ARGUMENT ................................ 15

V.     CONCLUSION .................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Accuimage Diagnostics Corp.* v. *Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................................. 14

*American Movie Classics Co.* v. *Turner Entertainment Co.*,
922 F. Supp. 926 (S.D.N.Y. 1996) ..................................................................... 10

*Armstrong* v. *Rohm & Haas Co.*, 349 F. Supp. 2d 71 (D. Mass. 2004) ......................................... 8

*Bielski* v. *Cabletron Sys. (In re Cabletron Sys.)*, 311 F.3d 11 (1st Cir. 2002).............................. 5

*Blatt* v. *Muse*, 2002 WL. 311675357 (D. Mass. 2002) ................................................................. 5

*Brown* v. *Credit Suisse First Boston LLC*, 431 F.3d 36 (1st Cir. 2005)........................................ 4

*Callaway Golf Co.* v. *Dunlop Slazenger Group Americas, Inc.*,
318 F. Supp. 2d 216 (D. Del. 2004) ................................................................... 14

*Chongris* v. *Board Of Appeals*, 811 F.2d 36 (1st Cir. 1987) ........................................................ 4

*Convolve, Inc.* v. *Compaq Computer Corp.*, 2006 WL. 839022 (S.D.N.Y. Mar. 31, 2006)........ 14

*Cooperman* v. *Individual Inc.*, 171 F.3d 43 (1st Cir. 1999) ........................................................ 4

*Digital Envoy, Inc.* v. *Google, Inc.*, 370 F. Supp. 2d 1025 (N.D. Cal. 2005)........................13, 14

*Doyle* v. *Hasbro, Inc.*, 103 F.3d 186 (1st Cir. 1996)................................................................... 8

*ECI Management Corp.* v. *Scottsdale Ins. Co.*, 23 F.3d 354 (11th Cir. 1994)............................. 7

*Eureka Broadband Corp.* v. *Wentworth Leasing Corp.*, 400 F.3d 62 (1st Cir. 2005) .................. 5

*Gerber* v. *Bowditch*, 2006 U.S. Dist. LEXIS 27552 (D. Mass. May 8, 2006) ...................4, 5, 11

*Goldberg* v. *Cameron*, 2007 WL. 641047 (N.D. Cal. Feb. 27, 2007)........................................ 12

*Greebel* v. *FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999)....................................................... 5

*Haft v. Eastland Financial Corp.,* 755, F. Supp. 1123, 1133 (1st Cir. 1991).............................. 4

*Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir. 1985)................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Kourtis* v. *Cameron*, 419 F.3d 989 (9th Cir. 2005).................................................................... 12

*Mass. Eye & Ear Infirmary* v. *QLT Phototherapeutics, Inc.*, 412 F.3d 215 (1st Cir. 2005) .......... 9

*Micrel, Inc.* v. *Advanced Monolithic Sys., Inc.*,
    1995 WL. 138569 (N.D. Cal. Mar. 20, 1995) ....................................................................... 12

*Monolith Portland Midwest Co.* v. *Kaiser Aluminum & Chemical Corp*,
    407 F.2d 288 (9th Cir. 1969)............................................................................................... 12

*Pearce* v. *Duchesneau Group, Inc.*, 392 F. Supp. 2d 63 (D. Mass. 2005) ................................ 5, 6

*Prescott* v. *Morton Int'l Inc.*, 769 F. Supp. 404 (D. Mass. 1990) .......................................... 12

*Romani v. Shearson Lehman Hutton,* 929 F.2d 875-878 (1991) ................................................... 8

*Sachs* v. *Sprague*, 401 F. Supp. 2d 159 (D. Mass. 2005) ........................................................ 4

*Santa-Rosa* v. *Combo Records*, 471 F.3d 224 (1st Cir. 2006)..................................................... 9

*Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234, 246 (D. Mass. 1979)............................. 11

*Smith* v. *Weinstein*, 578 F. Supp. 1297 (S.D.N.Y.), *aff'd* 738 F.2d 419 (2nd Cir. 1984) ............. 10

*Stichting Ter Behartiging* v. *Schreiber*, 407 F.3d 34 (2d Cir. 2005)............................................. 7

*United States ex rel. Karvelas* v. *Melrose-Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004)........... 4

*Wolff* v. *Institute of Electrical & Electronic Engineers, Inc.*, 768 F. Supp. 66 .......................... 10

## STATE CASES

*Baker* v. *Allen*, 292 Mass. 169, 197 N.E. 521 (1935).................................................................. 10

*Barrett* v. *Hamel*, 337 Mass. 105, 148 N.E.2d 364 (1958)......................................................... 7

*Bethlehem Fabricators* v. *H.D. Watts Co.*, 286 Mass. 556 (1934) ............................................... 7

*Claire Murray, Inc.* v. *Reed*, 139 N.H. 437, 656 A.2d 822 (1995)........................................ 7, 10

*Danca* v. *Taunton Sav. Bank*, 385 Mass. 1 (1982)...................................................................... 5

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Davies* v. *Krasna*, 14 Cal. 3d 502 (1975) ................................................................. 12

*Ernest Paper Prod., Inc.* v. *Mobil Chem. Co., Inc.*,
    1997 WL. 33483520 (C.D. Cal. Dec. 2, 1997) ...................................................... 14

*Faris* v. *Enberg*, 97 Cal. App. 3d 323 ...................................................................... 12

*Hanover Ins. Co.* v. *Sutton*, 46 Mass. App. Ct. 153 (1994) ...................................... 11

*Held* v. *Zamparelli*, 13 Mass. App. Ct. 957 (1982) ................................................... 8

*National Shawmut Bank* v. *Johnson*, 317 Mass. 485 (1945) ...................................... 7

*Pollock v. New England Tel. & Tel. Co.,* 289 Mass. 255, 258 (1935) ........................ 8

*Rokos* v. *Peck*, 182 Cal. App. 3d 604 (Cal. 2d Dist. 1986) ....................................... 12

*Samsung Elec. Am., Inc.* v. *Bilbruck*, 2006 WL. 3012875 (Cal. Super. Ct. Oct. 19, 2006) ......... 14

*Situation Mgmt. Sys.* v. *Malouf, Inc.*, 430 Mass. 875 (2000) .................................... 8

*Softchoice Corp.* v. *En Pointe Tech., Inc.*,
    2006 WL. 3350798 (Cal. Super. Ct. Nov. 13, 2006) ............................................. 14

*Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004) ........... 9

## FEDERAL STATUTES

Fed.R.Civ.P. 9(b) .................................................................................... 1, 4, 5, 6, 11

Fed.R.Civ.P. 12(b)(6) ........................................................................................ 1, 4

## STATE STATUTES

Uniform Trade Secrets Act ("UTSA"), Cal. Civ. Code § 3426, *et seq* ....................... 13

Fed.R.Civ.P. 8 ................................................................................................... 1, 6

Fed.R.Civ.P. 9 ...................................................................................................... 8

## I.    **INTRODUCTION**

Defendant Mark Zuckerberg moves to dismiss plaintiff ConnectU, Inc.'s second (trade secret misappropriation), third (breach of contract), fourth (breach of implied covenant of good faith and fair dealing), sixth (breach of fiduciary duty), ninth (fraud), and tenth (breach of confidence under California common law) claims for relief under Federal Rules of Civil Procedure 12(b)(6).  As all other claims asserted against Zuckerberg also are brought against Moskowitz, McCollum and Hughes (the "Individual Defendants"), Zuckerberg joins in their motion to dismiss as to those claims.[1]  In addition, for the reasons expressed in the Individual Defendants' motion, all of ConnectU's claims against Zuckerberg are time barred.

ConnectU's complaint against Zuckerberg fails because it has not pled its claims with the particularity of Rule 9(b).  Such a pleading is required for all such claims, as plaintiff's complaint against Zuckerberg appears to be premised on fraud.

Many of the claims, such as the breach of contract claim and claim for breach of the implied covenant of good faith and fair dealing, do not even satisfy the more lenient standard of Rule 8.  Further, to the extent these claims are not based upon fraud, they are preempted by the Copyright Act.

ConnectU also has failed to state a claim for fraud, breach of fiduciary duty, and breach of confidence, as they are nonassignable claims.  ConnectU did not exist when the alleged wrongful acts occurred.  As a result, someone else, if anyone, owns the rights to those three claims.

ConnectU's tenth claim (California breach of confidence) is not viable as plaintiff alleges no acts that occurred in California which would justify a claim brought under California common law.   In any event, a statute of limitations excludes the claim is preempted by California's adoption of the Uniform Trade Secrets Act.

For these reasons, the claims challenged in this motion should be dismissed.

---

[1] Zuckerberg also expects to join in the response to be filed by Defendant Eduardo Saverin.

OHS West:260214726.7

II.    **BACKGROUND FACTS**

This case is about a dispute between several Harvard students for actions taken in 2003 and early 2004 while they were still attending college. None of them were paid. Each of them had different interests and activities. Only one of them had an idea significant enough to build a great company. That one person was Mark Zuckerberg, the founder of the popular website, www.facebook.com.

The complaint alleges as follows: ConnectU had certain predecessors, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra. (collectively, "ConnectU Founders"). Compl. ¶ 12. The ConnectU Founders had an idea to start a for-profit social networking website for Harvard University. *Id.,* ¶¶ 14, 16. The ConnectU Founders asked Zuckerberg to *complete* a computer program for the website. *Id.,* ¶¶ 17, 28-29. The ConnectU founders felt that prompt completion was necessary. *Id.,* ¶ 20.

The ConnectU Founders also involved Zuckerberg in the business planning and website development. *Id.,* ¶ 21. This "website development" included the website design, screens, and the Harvard Connection website user interface. *Id.,* ¶ 22. "Zuckerberg was given access to the Harvard Connection Code as it existed in late 2003" and "assured" the ConnectU Founders that he was using his "best efforts to complete the project." *Id.,* ¶ 19.

Without specifying any details, ConnectU claims that the ConnectU Founders' ideas, code and database definitions, screens, information, and procedures given to Zuckerberg constituted trade secrets. *Id.,* ¶ 21. ConnectU alleges that Zuckerberg "understood" that such information was "proprietary and secret" and "agreed to keep them confidential." *Id.,* ¶ 21. ConnectU provides no details regarding this supposed understanding and agreement.

A number of the claims are based upon the following conclusory allegation:

> Zuckerberg's pledges of commitment to Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, his acceptance of the Harvard Connection Code, his agreement to complete such code, his work on such code and the website, his access to and acceptance of the Information and Procedures, his participation as a member of the Harvard Connection development team, his understanding that he would obtain a beneficial interest in the website and share in the proceeds if and when the website was

- 2 -

> successful, and his ability to highlight his work on the site to
> fellow students and potential employers, created an actual or
> implied contract, a duty of good faith and fair dealing, a
> relationship of trust, a partnership, and a fiduciary relationship
> between Zuckerberg and ConnectU's predecessors.

*Id.*, ¶ 30.

ConnectU also makes a number of general assertions about representations made by Zuckerberg. ConnectU does not allege anywhere in the complaint that the statements identified were false or misleading and does not allege how or why they impacted ConnectU. Rather, ConnectU claims, without specifying any dates or specific statements, that "Zuckerberg assured ConnectU's predecessors that he was using his best efforts to complete the project and ready the website for launch, and for market." *Id.*, ¶ 20. ConnectU claims that Zuckerberg stated on January 8, 2004 that he would deliver a functioning website. *Id.*, ¶ 31. Zuckerberg also is accused of not informing the ConnectU Founders of certain facts, such as registration of the www.thefacebook.com website or that he had stopped working on the ConnectU Founders' website. *Id.* After the first eight claims are alleged, ConnectU adds the following conclusory statement in its fraud claim:

> Zuckerberg knowingly made false statement of intention [sic]
> when he agreed to create, complete, and/or provide source code to
> ConnectU's predecessors for the Harvard Connection website, in
> emails he sent on November 22, 2003, November 30, 2003,
> December 1, 2003, and January 8, 2004, and in meetings he
> attended with Cameron Winklevoss, Tyler Winklevoss, and/or
> Divya Narendra on or about November 25, 2003, December 17,
> 2003, and January 14, 2004. Such statements were false and
> Zuckerberg never intended to provide the code and instead
> intended to breach his promise at the time the promise and
> statements were made, and intended to steal the idea for the
> Harvard Connection website, and in fact he did so.

*Id.*, ¶ 92. The details of these so-called communications are not identified anywhere in the complaint.

ConnectU's complaint then alleges that it possesses all rights because the ConnectU Founders assigned all rights to ConnectU LLC, which was later merged into ConnectU, Inc. *Id.*, ¶ 42 .

- 3 -

III.    **ARGUMENT**

    A.    **Legal Pleading Standard**

        1.    **Legal Standard For Motion to Dismiss**

When considering a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), a court must take well-pled factual allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff. *Brown v. Credit Suisse First Boston LLC,* 431 F.3d 36, 45 (1st Cir. 2005); *see* Fed.R.Civ.P. 12(b)(6). The court, however, need not credit "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" *Chongris v. Board Of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987). Dismissal under Rule 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery. *Cooperman v. Individual Inc.,* 171 F.3d 43, 46 (1st Cir. 1999).

        2.    **Legal Standard For Claims Premised In Fraud**

Within the First Circuit, claims resting on an assertion of fraud, such as fraudulent misrepresentation, breach of contract, and breach of fiduciary duty, must satisfy the more rigorous standard of Federal Rules of Civil Procedure 9(b). *Gerber v. Bowditch,* No. 05-10782-DPW, 2006 U.S. Dist. LEXIS 27552, *41-*42 (D. Mass. May 8, 2006) (Rule 9(b) imposes a "heightened pleading standard for claims based on fraud" and "[t]his rule extends to all claims of fraud, 'whatever may be the theory of legal duty statutory, tort, contractual, or fiduciary'") (citation omitted); *Sachs v. Sprague,* 401 F. Supp. 2d 159, 170 n.15 (D. Mass. 2005) ("claims alleging intentional breaches of fiduciary duties are subject to the heightened pleading requirements of Rule 9(b)") (citation omitted); *see also United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226-227 (1st Cir. 2004) (applying Rule 9(b) to the False Claims Act). It is the assertion of fraud and not the title of the claim that brings the policy concerns underlying Rule 9(b) to the forefront. *Haft v. Eastland Financial Corp.,* 755, F. Supp. 1123, 1133 (1st Cir. 1991) (particularity requirement applies when fraud lies at the core of the action).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Pleading standards under Rule 9(b) are strict. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 188 (1st Cir. 1999) (stating that fraud-based pleadings are subject to "rigorous requirements"). In the end, under Rule 9(b), a plaintiff must specify each allegedly misleading statement or omission, and additionally, "the plaintiff must not only allege the time, place, and content of the alleged misrepresentations with specificity, but also the 'factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the offering, and were known and deliberately or recklessly disregarded by defendants.'" *Id.* at 193-94 (quoting *Romani v. Shearson Lehman Hutton,* 929 F.2d 875-878 (1991)). "Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint. And this holds true even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Id.* at 193 (quoting *Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir. 1985)). When a party has had an opportunity to engage in discovery, such as the case here, the standard should be applied even more stringently. *Bielski v. Cabletron Sys. (In re Cabletron Sys.),* 311 F.3d 11, 33 (1st Cir. 2002) (scrutinizing post-discovery motions to dismiss more stringently than pre-discovery motions).

### B.    Plaintiff's Ninth Claim (Fraud) Against Zuckerberg Fails

#### 1.    Plaintiff Has Not Pled Fraud With Particularity

ConnectU has not alleged fraud with particularity. In Massachusetts, to sufficiently allege common law fraud, a plaintiff must allege that defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage. *Pearce v. Duchesneau Group, Inc.*, 392 F. Supp. 2d 63, 72-73 (D. Mass. 2005), (quoting *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005)); *see Gerber*, 2006 U.S. Dist. Lexis at n.9 (listing elements of common law fraud); *Danca v. Taunton Sav. Bank*, 385 Mass. 1 (1982). The claim of fraud is decided on a statement by statement basis. *Blatt v. Muse*, 2002 WL 311675357 (D. Mass. 2002) (applying the Private

Securities Litigation Reform Act), *see Pearce*, 392 F. Supp. at 73-75 (analyzing each statement separately in common law fraud claim). Under Rule 9(b), "only malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

In this case, ConnectU must specifically allege the time, place, and content of the misleading statements, the reliance upon such misrepresentations, materiality, and injury with particularity. Because it is only the "intent to deceive" element that can be pled generally, plaintiff's complaint comes nowhere close to meeting this standard.

ConnectU fails to identify any a misleading statement with particularity. Plaintiff's attempt to describe a so-called misleading statement as fraud:

> Zuckerberg knowingly made false statement of intention [sic] when he agreed to create, complete, and/or provide source code to ConnectU's predecessors for the Harvard Connection website, in emails he sent on November 22, 2003, November 30, 2003, December 1, 2003, and January 8, 2004, and in meetings he attended with Cameron Winklevoss, Tyler Winklevoss, and/or Divya Narendra on or about November 25, 2003, December 17, 2003, and January 14, 2004. Such statements were false and Zuckerberg never intended to provide the code and instead intended to breach his promise at the time the promise and statements were made, and intended to steal the idea for the Harvard Connection website, and in fact he did so.

Compl. ¶ 92. While plaintiff alleges the dates of certain conversations, it does not identify the contents of those discussions that supposedly constitute misrepresentations. With the exception of a general statement about a January 8, 2004 communication, the factual averments make no mention of any of the communications identified in paragraph 92. No express statement is identified with any particularity whatsoever. ConnectU's allegations would barely pass muster under the broad "notice" pleading standard of Rule 8.

The complaint also includes no particular pleading as to reliance, materiality, or falsity. The only statements made as to reliance is a parroting of the phrase that the ConnectU Founders relied on Zuckerberg's statements. No particularity regarding specific times and/or places is given as to specific statements or omissions made by Zuckerberg. The complaint makes <u>no</u> allegation that any particular statement was material, an allegation which is essential to any fraud

- 6 -

claim.  ConnectU's broad-brush allegations against Zuckerburg are insufficient under the law.

### 2.    Plaintiff Does Not Own The Claims Asserted Herein

In Massachusetts, it has long been then law that fraud claims are not assignable.
*Bethlehem Fabricators v. H.D. Watts Co.*, 286 Mass. 556, 566-67 (1934) ("a mere right to
litigate for a fraud perpetrated upon an individual or a corporation resulting in damage personal
in character or to the general estate does not survive in the case of an individual and is not
assignable").  Plaintiff's complaint rests on allegations related to conduct between Zuckerberg
and the ConnectU Founders, before ConnectU was formed.  Notably, in its factual allegations in
paragraph 12–40, ConnectU is nowhere mentioned.  Rather, paragraph 42 claims that Cameron
Winklevoss, Tyler Winklevoss, and Divya Narendra all intended to "transfer" their rights to
ConnectU LLC, which was later merged into ConnectU.  Unfortunately, the ConnectU Founders
could not, as a matter of law, transfer their claim for fraud to ConnectU.

The question of who owns the state law claims is a matter of state law.  *Stichting Ter
Behartiging v. Schreiber*, 407 F.3d 34, 48-49 (2d Cir. 2005); *ECI Management Corp. v.
Scottsdale Ins. Co.*, 23 F.3d 354, 355 (11th Cir. 1994).  As noted, it is well-established under
Massachusetts law that fraud claims are not assignable at law or in equity.  *Barrett v. Hamel*, 337
Mass. 105, 111, 148 N.E.2d 364 (1958); *National Shawmut Bank v. Johnson*, 317 Mass. 485, 488
(1945); *Bethlehem Fabricators v. H.D. Watts Co.*, 286 Mass. at 566-67.  *See also Claire Murray,
Inc. v. Reed*, 139 N.H. 437, 656 A.2d 822, 824-25 (1995) (confirming that the non-assignability
of fraud and breach of fiduciary claims is the law of Massachusetts and has never been modified
by intervening court decisions, although other types of tort claims have been recognized as
assignable).  Because the ConnectU Founders could not transfer their claims for fraud to
ConnectU, the claims should be dismissed.

### C.    Plaintiff's Claim For Breach Of Contract, and Breach of the Implied Covenant of Good Faith and Fair Dealing

Breach of contract and breach of the covenant of good faith and fair dealing claims are
closely related.  Consequently, those claims will be addressed together.  Both claims are

inadequately pled.

1.    **The Claims Are Insufficiently Pled Under Both Rule 8 And Rule 9**

a.    **Breach of Contract Claim**

ConnectU's breach of contract claim fails to identify an enforceable contract, express or implied, between Zuckerberg and the ConnectU Founders.  The complaint merely concludes "Zuckerberg agreed to be a member of the … team … and to help launch, promote, and operate the site and business in exchange for a beneficial interest in the website, including a monetary interest in any revenue or other proceeds or benefits … ."  Compl. ¶ 28.  The complaint provides no factual allegations that identify the existence of an agreement, the terms of an agreement, or the mutual intent of the parties to be bound by that agreement.  Without such allegations, plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing must fail.

Under Massachusetts law, in order to sustain a breach of contract claim, plaintiff must plead: (1) the existence of an agreement supported by valid consideration; (2) that plaintiff was able to perform; (3) that defendant's breach prevented their performance; and (4) that plaintiff was damaged.  *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996).  ConnectU's allegations for a breach of contract claim must provide "with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof."  *Id.* (citing *Pollock v. New England Tel. & Tel. Co.,* 289 Mass. 255, 258 (1935)).  The alleged agreement must be sufficiently definite so that the nature and extent of the obligations of the parties can be determined.  *Armstrong v. Rohm & Haas Co.,* 349 F. Supp. 2d 71, (D. Mass. 2004); *see Held v. Zamparelli,* 13 Mass. App. Ct. 957, 958-59 (1982) (defendant's oral promise to pay one-fourth of the profits if plaintiff would refrain from exercising her option to purchase was unenforceable because it was silent as to material matters, such as when and how plaintiff's share of the profits was to be calculated and paid and the duration of the agreement); *Situation Mgmt. Sys. v. Malouf, Inc.,* 430 Mass. 875, 878 (2000) (While it is not required that parties specify all terms of an agreement, they must have "progressed beyond the stage of 'imperfect negotiation.'").  ConnectU's allegations for a

breach of an implied contract "requires the same elements as an express contract and differs only in the method of expressing mutual assent." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d 215, 230 (1st Cir. 2005).

In alleging breach of contract, ConnectU does not identify the duration of the agreement, the specific terms of the agreement, or the specific work to be done under the agreement. Indeed, no fact allegations are made in the complaint that support the existence of a valid and definite contract between the parties. A contract missing these essential terms is too vague and indefinite to be enforced, because construction and enforcement of the agreement without such terms would be pointless. Therefore, because ConnectU fails to identify agreed upon terms of the alleged agreement, ConnectU's breach of a contract claim, express and implied, is insufficiently pled.

### b. Breach of Implied Covenant of Good Faith and Fair Dealing Claim

Due to ConnectU's failure to establish the existence of a contract between the parties, ConnectU's breach of implied covenant of good faith and fair dealing claim pursuant to Massachusetts common law also must fail. *See Mass. Eye & Ear Infirmary,* 412 F.3d at 230 (citing *Uno Rests., Inc. v. Boston Kenmore Realty Corp.,* 441 Mass. 376, 385 (2004)). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Id.* Consequently, Zuckerberg's conduct would only be governed by the implied covenant of good faith and fair dealing if ConnectU pled a valid contract. See *id.* Without pleading a contract properly, ConnectU cannot allege a breach of implied covenant of good faith and fair dealing and thus, the claim fails.

### 2. The Claims Are Preempted By The Copyright Act

The First Circuit has not squarely described the question of whether a breach of contract claim is preempted by the Copyright Act. *Santa-Rosa v. Combo Records*, 471 F.3d 224, 226-227 (1st Cir. 2006), *petition for certiorari filed*, No. 06-1623 (Mar. 14, 2007) (finding a claim for rescission of a contract preempted by the Copyright Act). A breach of contract case should

- 9 -

generally be preempted if it is based merely upon the allegation that defendant did something that is reserved by the copyright laws. *American Movie Classics Co. v. Turner Entertainment Co.*, 922 F. Supp. 926, 931 (S.D.N.Y. 1996); *see Wolff v. Institute of Electrical & Electronic Engineers, Inc.,* 768 F. Supp. 66. 69 (S.D.N.Y. 1991); *Smith v. Weinstein,* 578 F. Supp. 1297, 1307 (S.D.N.Y.), *aff'd* 738 F.2d 419 (2nd Cir. 1984).

In this case, ConnectU's claim for breach of contract is unclear, as it does not clearly specify the existence of an agreement or the alleged breach. To the extent ConnectU's breach of contract and breach of the covenant of good faith and fair dealing claim are that Zuckerberg engaged in unauthorized use of software subject to a copyright, ConnectU's claim is preempted.

For the foregoing reasons, ConnectU's breach of contract claim should be dismissed.

### D.   Plaintiff's Claim For Breach Of Fiduciary Duty Fails

#### 1.   Breach Of Fiduciary Duty Claims Are Non-Assignable In Massachusetts

As with fraud, claims for breach of fiduciary duty are not assignable. *Claire Murray, Inc. v. Reed*, *Claire Murray, Inc. v. Reed*, 139 N.H. 437, 656 A.2d at 824 (applying Massachusetts law and noting that "[t]ort claims for fraud and breach of fiduciary duty do not constitute 'damage to specific property' and, therefore, are not assignable"). ConnectU purports to have the right to a breach of fiduciary duty claim as the result of an assignment. Compl. ¶ 42. As a basis for its breach of fiduciary duty claim against Zuckerberg, ConnectU alleges that "Zuckerberg manipulated and breached [ConnectU Founders'] trust, confidence and reliance for his own personal gain" and that "Zuckerberg's actions amounted to a course of conduct designed to harm" ConnectU Founders. *Id.*, ¶ 76. The complaint does not allege that Zuckerberg breached a fiduciary duty owed to ConnectU. Rather, the allegations of fraudulent conduct relate to a breach of a fiduciary duty Zuckerberg supposedly owed to the ConnectU Founders. Notwithstanding its allegations, it is well-settled in Massachusetts that ConnectU cannot be assigned the breach of fiduciary duty claims as a matter of law. *Claire Murray, Inc. v. Reed*, *Claire Murray, Inc. v. Reed*, 139 N.H. 437, 656 A.2d at 824; *Baker v. Allen*, 292 Mass. 169,

- 10 -

197 N.E. 521, 524 (1935). As a result, dismissal of the claim is warranted.

### 2.    Plaintiff's Claim Is Insufficiently Pled

In order to succeed on a claim for breach of fiduciary duty, a plaintiff must prove the existence of such a duty, breach of that duty, causation, and damages. *Hanover Ins. Co. v. Sutton,* 46 Mass. App. Ct. 153, 164 (1994). A claim of breach of fiduciary duty based on fraud is subject to the more rigorous standards of Rule 9(b). *See Gerber*, 2006 U.S. Dist. Lexis at *42 (citing *Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234, 246 (D. Mass. 1979)) (a heightened pleading standard extends to all claims of fraud, "whatever may be the theory of the legal duty statutory, tort, contractual, or fiduciary").

ConnectU's breach of fiduciary duty claim is based on the allegations that "Zuckerberg manipulated and breached [ConnectU Founders'] trust, confidence and reliance for his own personal gain" and that "Zuckerberg's actions amounted to a course of conduct designed to harm" ConnectU Founders. Compl. ¶ 76. Notably, Paragraph 92 (which serves as the purported basis for Plaintiff's fraud claim) is not part of this claim.

The conclusory allegations of the complaint fail to provide the particularity required under Rule 9(b). No details regarding the communications that supposedly established the fiduciary duty and the alleged consequent breach are provided. No factual allegations of corruption or damages were made. Rather, the breach of fiduciary duty is based only on general assertions and conclusions. The claim is insufficient under Rule 9(b) and as a result, ConnectU's breach of fiduciary duty fails.

### E.    Plaintiff's Claim Under California Law For "Breach Of Confidence" Must Be Dismissed As A Matter Of Law

ConnectU alleges in its Tenth Claim for Relief that Zuckerberg is liable for breach of confidence under California common law. *See* Compl. ¶¶ 98-104. This claim, must be dismissed for several reasons.

### 1.    Breach Of Confidence Claims Are Not Assignable

Viewing the allegations in the most favorable light to Plaintiff, the only right ConnectU

would have must be related to the relationship between Zuckerberg and the ConnectU Founders. This is because ConnectU is not alleged to have any relationship with Zuckerberg. The claim for breach of confidence cannot be assigned from the ConnectU Founders to ConnectU, however. Under California law claims for breach of confidence are personal in nature and hence are not assignable. *Rokos v. Peck*, 182 Cal. App. 3d 604, 619 (Cal. 2d Dist. 1986). As a result, this claim must be dismissed.

>     **2.**    **The Claim For Brach of Confidence Is Barred By California's Two Year Statute Of Limitations**

ConnectU also is precluded from asserting a claim of breach of confidence under California law because it is time-barred by that state's statute of limitations. Specifically, in California, breach of confidence claims are not deemed continuing torts, and are subject to a two-year limitations period that runs from the initial breach. *Kourtis v. Cameron*, 419 F.3d 989, 1001 (9th Cir. 2005); *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp*, 407 F.2d 288, 292-93 (9th Cir. 1969); *Rokos*, 182 Cal. App. 3d at 619; *Davies v. Krasna*, 14 Cal. 3d 502, 516 (1975); *Goldberg v. Cameron*, 2007 WL 641047, at *10 (N.D. Cal. Fed. 27, 2007). *Cf. Prescott v. Morton Int'l Inc.*, 769 F. Supp. 404, 407 (D. Mass. 1990) (applying same rule in Massachusetts to trade secret claims). Pursuant to this same authority, ConnectU's claim accrued when it first suffered "appreciable and actual harm." *Kourtis,* 419 F.3d at 1001; *Davies*, 14 Cal. 3d at 516; *Goldberg*, 2007 WL 641047, at *10. As the latest alleged wrongful act occurred on February 4, 2004, the statute of limitations ran over one year ago, on February 4, 2006. The claim is barred and should be dismissed.

>     **3.**    **The Breach Of Confidence Claim Fails To State A Claim Upon Which Relief May Be Granted**

A separate fundamental flaw to ConnectU's sole California law claim exists. The complaint asserts no activity in California that would justify imposition of California law. Under California law, "[i]t is the relationship between the parties at the time the secret is disclosed that is protected" for purposes of asserting a claim for breach of confidence. *Monolith Portland Midwest Co.*, 407 F.2d at 292-93. *See also Faris v. Enberg*, 97 Cal. App. 3d 323; *Micrel, Inc. v.*

- 12 -

*Advanced Monolithic Sys., Inc.*, 1995 WL 138569, at *6 (N.D. Cal. Mar. 20, 1995).

Here, the alleged relationship arising from the purported disclosure of confidential information between ConnectU and Zuckerberg arose while Zuckerberg was a Harvard student. No California actions are identified. [2] Rather, ConnectU alleges that its predecessors engaged Zuckerberg at Harvard in November 2003. Compl. ¶ 17. He was allegedly given access to ConnectU's "Information and Procedures" (*i.e.* the alleged trade secrets) in late 2003 and entrusted with the basic ideas, design, business model, and plans of the www.harvardconnection.com website. *Id.* ¶¶ 18, 21. Zuckerberg then is alleged to have disclosed the Information and Procedures to the other Defendants to launch the website thefacebook.com on February 4, 2004. *Id.* ¶¶ 28-32, 38. All of these events occurred while Zuckerberg and ConnectU's Founders were still attending Harvard, and prior to the formation of ConnectU LLC or ConnectU Inc. *Id.* ¶¶ 37, 42. Without pleading a specific reason to apply California law, Plaintiff's claim should be dismissed.

### 4.    The Breach of Confidence Claim Is Preempted by California's Adoption of the Uniform Trade Secrets Act

ConnectU's breach of confidence claim also is preempted by California's adoption of the Uniform Trade Secrets Act ("UTSA"), Cal. Civ. Code § 3426, *et seq.* The alleged breach of confidence by Zuckerberg relates to disclosure of precisely the same "Information and Procedures" that ConnectU alleges constitutes its trade secrets for purposes of its misappropriation of trade secrets claim. *See* Compl. ¶¶ 21, 50-57, 98-104. However, in California, "all state law claims based on the same nucleus of facts as the trade secrets claim are preempted under California's UTSA." *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1034 (N.D. Cal. 2005).

Applying that rule, Courts have held that a claim for breach of confidence predicated on misappropriation of trade secrets is one specific type of claim that has been preempted by

---

[2] Notably, Plaintiff's unfair trade practices claim, which requires nearly all actions to occur in Massachusetts, is inconsistent with this assertion of a California based claim.

California's adoption of the UTSA. *Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 839022, at *6 - *8 (S.D.N.Y. Mar. 31, 2006) (applying California law, and holding "[t]he California UTSA preempts Convolve's claims for tortious interference with contract/prospective economic advantage, fraud and breach of confidence since those claims arise from the same nucleus of facts as Convolve's misappropriation of trade secrets cause of action"). This conclusion follows from the fact that the UTSA has been interpreted by numerous state and Federal Courts to broadly preempt all forms of California civil actions that are predicated on misappropriation of trade secrets. *See Samsung Elec. Am., Inc. v. Bilbruck*, 2006 WL 3012875, at *1 (Cal. Super. Ct. Oct. 19, 2006) ("any cause of action which continues to be based on information – whether labeled a trade secret or confidential information — if it derives independent economic value and is competitively significant secret information — will be preempted by the UTSA"). *See also Softchoice Corp. v. En Pointe Tech., Inc.*, 2006 WL 3350798, at *1 (Cal. Super. Ct. Nov. 13, 2006); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d at 1033-35; *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-20 (D. Del. 2004); *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003); *Ernest Paper Prod., Inc. v. Mobil Chem. Co., Inc.*, 1997 WL 33483520, at *7 - *9 (C.D. Cal. Dec. 2, 1997).

Inasmuch as ConnectU's complaint states that the basis for the breach of confidence claim under California common law is the disclosure of the same trade secrets (*i.e.* "Information and Disclosures") that form the basis for its misappropriation cause of action (Compl. ¶¶ 21, 50-57, 98-104), ConnectU's breach of confidence claim is as a matter of law preempted by California's adoption of the UTSA. *Cf. Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 839022, at *7 - *8 (where plaintiff "has not offered any evidence that the claims at issue [including for breach of confidence under California common law] can be differentiated from its trade secret claim," the "California UTSA preempts [plaintiff's] claims ... since those claims arise from the same nucleus of facts as [plaintiff's] misappropriation of trade secrets cause of action"). Thus, apart from the many other deficiencies with the tenth cause of action for breach

- 14 -

of confidence by Zuckerberg under California law, it must be dismissed with prejudice since it is preempted by California's adoption of the UTSA.

## IV.    REQUEST FOR ORAL ARGUMENT

Zuckerberg believes that oral argument may assist the Court and wishes to be heard on the issues presented in this Motion to Dismiss.

## V.    CONCLUSION

For the reasons set forth above, ConnectU's claims alleged against Zuckerberg should be dismissed.

Dated:  April 23, 2007

/s/ Steven M. Bauer /s/
Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone:    (617) 526-9600
Facsimile:    (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com


Of Counsel:
G. Hopkins Guy, III
I. Neel Chatterjee
Monte Cooper
Theresa A. Sutton
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:    (650) 614-7400
Facsimile:    (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
tsutton@orrick.com

ATTORNEYS FOR DEFENDANTS
FACEBOOK, INC., MARK ZUCKERBERG,
DUSTIN MOSKOVITZ, CHRISTOPHER
HUGHES, ANDREW MCCOLLUM, AND
THEFACEBOOK, LLC

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on April 23, 2006.


Dated:  April 23, 2007.                    Respectfully submitted,

                                   /s/ Steve M. Bauer /s/
                          _____
                                   Steve M. Bauer