Case 2:06-mc-00178-RSM    Document 3-1    Filed 11/06/2006    Page 1 of 11

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CONNECTU LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br><br>Defendants. | CASE NO. 2:06-mc-00178-RSM<br><br>**FACEBOOK'S OPPOSITION TO MOTION TO QUASH SUBPOENAS DUCES TECUM SERVED ON NON-PARTIES, JOHN TAVES AND PACIFIC NORTHWEST SOFTWARE**<br><br>**Relating to USDC District of Massachusetts Civil Action No. 1:04-cv-11923 (DPW)** |
| MARK ZUCKERBERG, and FACEBOOK, INC.,<br><br>Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>Additional Counterdefendants. | |

OHS West:260119134.2

FACEBOOK'S OPPOSITION TO MOTION TO QUASH SUBPOENAS DUCES TECUM

The Motion to Quash filed by non-parties Pacific Northwest Software and John Taves (collectively, "PNS") is patently frivolous. PNS promised three times to produce documents responsive to Facebook's subpoenae *duces tecum*. At no time relative to these promises did PNS raise any objections to production. In fact, five days before raising any objections, PNS already had reviewed and collected responsive materials. There is, therefore, no basis now for PNS to claim undue burden in producing what it already agreed to produce.

Moreover, PNS waived any objection to production by failing to object to the subpoenae as required by Rule 45(c)(2)(B). The subpoenae were personally served on September 27, 2006. PNS was to comply by October 11, 2006. PNS did not raise any objections on or before that date. Therefore, PNS did not meet its obligation, and thus waived its objections. Consequently, its motion should be denied.

## I. PROCEDURAL BACKGROUND

### A. The Lawsuit

Facebook, Inc., headquartered in Palo Alto, California, developed and operates one of the most popular online "social networks" on the Internet, www.facebook.com, in which college students and alumni interact with one another based upon existing friendships, collegiate allegiances, and common interests. ConnectU LLC, now a defunct Delaware Limited Liability Company, operates a largely unsuccessful competing website called www.connectu.com. On September 2, 2004, ConnectU filed a complaint based upon diversity jurisdiction in the District of Massachusetts against Facebook and several of its employees, including Mark Zuckerberg, alleging a variety of causes of action predicated upon misappropriation of trade secrets, unfair competition, fraud, and breach of confidentiality under Massachusetts state law. At the time of filing the lawsuit, ConnectU was a limited liability company and its members included Cameron, Tyler, and Howard Winklevoss; and Divya Narendra.

On October 14, 2005, the Facebook Defendants filed a Motion to Dismiss on the ground that, among other things, complete diversity did not exist at the time the original complaint was filed. Since that time, the District Court of Massachusetts has ordered two evidentiary hearings to resolve this issue. Declaration of Theresa A. Sutton in Support of Motion to Compel ("Malakoff

1  Decl."), Ex. A; Decl. of Arissa Peterson in Supp. of Mot. to Quash ("Peterson Decl.")
2  (Attachment 2 to Docket No. 1), Ex. A. The first hearing, which was held on June 22, 2006, was
3  solely to determine the citizenship of Mr. Zuckerberg and Mr. Narendra. The second hearing,
4  which occurred on October 24 and 25, 2006, was for the sole purpose of determining whether
5  Mr. Narendra was a Member of ConnectU LLC at the time the complaint was filed — a fact
6  which, if true, will necessitate the dismissal of the Massachusetts action. It is that dispute that
7  resulted in the subpoenae being served on PNS.

### B. Discovery in the Lawsuit

The motion to dismiss has dictated discovery since Facebook filed it in October 2005. As PNS points out, in March 2005, the Massachusetts court entered a Scheduling Order setting the close of discovery to occur in December 2005. Mot. to Quash, 3:4. In November 2005, however, Magistrate Judge Collings vacated that Order and has yet to set a new deadline for discovery in this action. Sutton Decl., Ex. B, p. 9:12-15 and 10:18-22. The Magistrate Judge did not stay all discovery, as reflected by plaintiff ConnectU's having served at least 10 subpoenae on non-parties in this action since December 2005.

In the August 24, 2006, Order, in which the Massachusetts court set the second evidentiary hearing, the court authorized the service of document requests — on an expedited basis — related to the "membership" issue.[1] Peterson Decl., Ex. A, pg. 17. The specified document requests were those permitted pursuant to Rule 34 of the Federal Rules of Civil Procedure, and it was those document requests that were to be served on and by the parties by September 1, 2006. The expedited discovery did not apply to other forms of discovery. In fact, Facebook served approximately 11 subpoenae *duces tecum* on non-parties beginning September 26, 2006. Plaintiff ConnectU raised no objections to the service of such subpoenae and, in fact, represented certain of those non-parties.

---

[1] The Magistrate Judge had to specifically authorize additional document requests because under District of Massachusetts Local Rule 26.1(c), the parties were limited to "two (2) separate requests for production." As of August 24, 2006, both the plaintiff and Facebook already had used their permitted two sets of requests for production.

OHS West:260119134.2       - 3 -

### C. The Subpoenae to PNS

Because they possessed documents and information potentially relevant to the membership dispute, on September 26, 2006, Facebook issued subpoenae *duces tecum* to John Taves and Pacific Northwest Software. Sutton Decl., Ex. C. Both subpoenae were personally served on the witnesses on September 27, 2006. Sutton Decl., Ex. D. The subpoenae called for documents to be produced on October 11, 2006 and set a deposition for October 18, 2006. Sutton Decl., Ex. C.

On October 5, 2006, counsel for PNS contacted counsel for Facebook. During that conversation, PNS' counsel volunteered that Cameron Winklevoss, a principal for plaintiff ConnectU, had contacted Mr. Taves and suggested he call ConnectU's counsel regarding the subpoenae. Counsel also volunteered that Mr. Winklevoss had instructed Mr. Taves not to produce any documents in response to the subpoenae. Counsel for the parties discussed the subpoenae, the issue for the evidentiary hearing, and the types of documents that would be responsive to the subpoenae. PNS' counsel expressed some concern that responsive documents might contain confidential information, and counsel for Facebook explained that a Protective Order is in place to protect against disclosure of such information. Counsel for Facebook also agreed to cancel the deposition in exchange for a production of documents by PNS. In fact, Facebook canceled the depositions based on PNS' representations that documents would be forthcoming.

Counsel for Facebook subsequently sent PNS' counsel a copy of the complaint and answer filed in the action. Counsel for Facebook also explained that, while the Protective Order does not expressly cover third party productions, the plaintiff's counsel had previously agreed to extend the protection to third party materials. On October 9, 2006, PNS' counsel wrote:

> Thank you for sending the complaint and answer. Please let me know what you find out about the stipulation or other form of protective order that would cover Pacific Northwest Software's document production.
>
> I have conferred with Mr. Taves and he is working to retrieve the responsive documents. We should be able to produce them by October 18 or just shortly thereafter. Please confirm that you will be striking the deposition set for October 18.

OHS West:260119134.2                  - 4 -

FACEBOOK'S OPPOSITION TO MOTION TO QUASH SUBPOENAS DUCES TECUM

Sutton Decl., Ex. E.

During an October 10, 2006, meet and confer with counsel for ConnectU, counsel for Facebook asked ConnectU's counsel if it would agree to extend the Protective Order's protection to third party materials. They agreed, and Facebook obtained written confirmation from them. Facebook counsel forwarded the confirmatory email to PNS' counsel, which read:

> Yes, ConnectU agrees that the Stipulated Protective Order entered in this action also will govern materials produced by nonparties, provided that such nonparties comply with its terms, including the marking requirements."

Sutton Decl., Ex. F (second page of email). In response, PNS' counsel wrote:

> Thank you for sending the protective order. I would like to discuss a few items with respect to the documents that my client will be producing. He has sent them to me electronically and I still need to review them but I would like to discuss some scope and relevance issues with you. Do you have some time to talk tomorrow or Friday about the documents? I am tied up the rest of this afternoon, but I am pretty open Thursday and Friday. Thanks.

*Id.*

On October 12, 2006, during a telephone conference, PNS' counsel again agreed to produce documents in response to the subpoenae. PNS' counsel also confirmed that Mr. Taves had already sent several responsive emails to her and that she would forward them to Facebook after she looked through them but, in any event, no later than October 18, 2006. Facebook counsel did not hear from PNS' counsel again until October 16, 2006. In an email that day, PNS' counsel indicated that PNS would not produce the responsive documents it had located and promised to produce. Sutton Decl., Ex. G.

II. **ARGUMENT**

   A. **The Subpoenae Seek Permissible Discovery**

PNS incorrectly asserts that the subpoenae issued to it seek information beyond the scope of permissible discovery. It bases this assertion on an inaccurate reading of an August 24, 2006, Second Memorandum and Procedural Order ("August 24 Order") issued by the Honorable Magistrate Judge Collings in the Massachusetts action. In that Order, Magistrate Judge Collings wrote, in relevant part,:

OHS West:260119134.2                       - 5 -

> Counsel may take discovery on the issue of Divya Narendra's membership in ConnectU LLC at the time the original Complaint was filed prior to the hearing. Any requests for documents on the issue must be served on or before the close of business on Friday, September 1, 2006. Pursuant to Rule 34(b), Fed. R. Civ. P., the time within which responses/objections to any such requests must be served is SHORTENED to fifteen (vice thirty) calendar days from the date of service.

Peterson Decl., Ex. A, pg. 17.

Pursuant to the August 24 Order, the parties were authorized to serve document requests pursuant to Rule 34 on or before September 1, 2006, the responses to which were required to be made on an expedited basis. The Order authorized additional forms of discovery but did not limit, in any way, such discovery. Facebook noticed four party depositions, and issued approximately 11 non-party subpoenae *duces tecum*. All but two of the non-party subpoenae were issued after September 1, 2006. Had the court intended to cut off the discovery limited to membership on September 1, 2006, the Order would have explicitly done so, and ConnectU certainly would have objected to any of the later-issued discovery. ConnectU did not.

PNS also incorrectly asserts that even if the August 24 Order did not cut off discovery on September 1, 2006, Facebook's subpoenae exceeds the scope of the Order. PNS' position incorrectly assumes, based on a Scheduling Order vacated nearly one year ago, that Facebook is not entitled to take general discovery in this matter. During a November 2005 hearing, Magistrate Judge Collings vacated the discovery deadlines and said that he would not impose a stay on discovery. Sutton Decl., Ex. A, 10:18-22 and 9:12-15. Indeed, discovery in this matter remains open. Nothing, therefore, prohibits Facebook from obtaining discovery on any issue consistent with the Federal discovery rules. In any event, the subpoenae are directed to the membership issue that resulted in the August 24 Order. PNS has not shown otherwise — nor could it. Accordingly, PNS' arguments must fail, and it should be ordered to comply with the subpoenae.

**B.    PNS' Confidential Information will be Protected by an Order Entered in the Massachusetts Action**

PNS argues that the documents sought by the subpoena "concern confidential, sensitive

and proprietary information" and hence the subpoenae should be quashed. Mot. to Quash, 5:4-8. This position is a frivolous. The Massachusetts court has entered a protective order in this action, which governs the use and disclosure of such information. The fact that PNS' responsive documents may include confidential matter does not preclude Facebook from obtaining necessary and relevant discovery. Indeed, the documents sought relate to PNS' work for plaintiff ConnectU. To the extent the documents contain confidential information, that information may belong to ConnectU. In any event, PNS is not entitled to refuse to produce documents simply because they may contain confidential information, especially because the Protective Order entered by the court is designed to ensure the information is not misused.

### C.   PNS' Objections are Untimely and, Thus, Have Been Waived

Federal Rule 45(c)(2)(B) required PNS to serve written objections to the subpoena "within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service ... ." The subpoenae were personally served on PNS on September 27, 2006. Production of documents in response thereto was to occur on October 11, 2006. PNS did not provide any form of written objection until October 16, 2006 — well beyond the "14 days after service" and after the time specified for compliance. Notably, PNS' untimely objections, which were made in an email, were made after it had agreed — three times — to produce responsive documents. Accordingly, PNS' objections are waived, and it should be required to produce documents responsive to the subpoenae.

PNS' Motion to Quash also is untimely and should not be permitted. Notably, PNS admits that its motion is untimely, but asks the Court to ignore its failure to timely object or move. Its request should be denied. The entire motion is premised on PNS' mischaracterization of the proceedings before the court in the District of Massachusetts. None of its arguments is based on accurate information. Facebook is entitled to seek discovery, even from nonparties such as PNS. PNS provides no support for its refusal to produce documents responsive to validly issued and properly served subpoenae — especially in light of its having repeatedly promised to produce such documents. Indeed, as PNS admits, it originally raised its motion to quash before the Massachusetts court. In denying that motion, the Massachusetts court never suggested the

1  subpoenae were untimely served or beyond the scope of the court's August 24 Order. Moreover,
2  the court also did not consider the document requests moot.
3  Recognizing the weakness of its position, PNS relies on *American Elec. Power Co. v.*
4  *United States*, 191 F.R.D. 132, 137 (D. Ohio 1999), to support the notion that even if filed
5  untimely, a motion to quash may be granted. The *American Elec. Power Co.* court found that the
6  "failure to serve written objections to a subpoena within the time specified by Rule 45 typically
7  constitutes a waiver of such objections." *Id.* at 136. It is only in "unusual circumstances and for
8  good cause," that "the failure to act timely will not bar consideration of objections." *Id.* So-
9  called "unusual circumstances" include

> where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena.

*Id.* at 137. (citations omitted). The facts in *American Elec. Power Co.* are strikingly different from those in the present matter, rendering the case inapposite. Critically, the nonparty in *American Elec. Power Co.* already had produced documents when it moved to quash a subsequent subpoena. As the court noted, the nonparty in *American Elec. Power Co.*:

> ... produced over 100,000 documents responding to 110 IRS document requests and two previous subpoenas issued by the Government. Moreover, the Government knew that Newport had only a small staff available to respond to the document requests and that it was having difficulty finding the requested documents within the time allotted by the Government. Although counsel for Newport and the Government did not discuss Newport's objections to the January 20 subpoena prior to March 1, Newport had made similar objections to the first three subpoenas and counsel had discussed these objections. Also, counsel for Newport repeatedly expressed Newport's concern that the Government was requesting documents it had already provided, and counsel notified the Government that the document requests were taking hundreds of man-hours to complete.

Here, PNS' argument that the subpoenae are overbroad is based on a misunderstanding of the proceedings in the Massachusetts action. The subpoenae are directed to the membership issue and as a result, the subpoenae are not overbroad. In addition, PNS admitted that some of the

OHS West:260119134.2                              - 8 -

Case 2:06-mc-00178-RSM   Document 3-1   Filed 11/06/2006   Page 9 of 11

responsive documents in its possession are internal communications not available to Facebook through any other means. With regard to PNS' "good faith," Facebook has reason to believe that PNS is acting in bad faith. In reliance on PNS' repeated promises to produce documents in exchange for the cancellation of Mr. Taves' and a 30(b)(6) deposition, Facebook cancelled the depositions. Facebook would have gone forward with these depositions if it knew that PNS would not honor its promises. Moreover, based on conversations between counsel, it appears that the plaintiff in the Massachusetts action has instructed PNS not to comply with the subpoenae, and PNS appears to be taking instruction from plaintiff. Finally, though counsel were in contact regarding PNS' production, PNS never said or even intimated that it would not produce the documents it had collected and reviewed. Instead, counsel only spoke about the documents that would be produced and the logistics for doing so. Accordingly, *American Elec. Power Co.* does not support PNS' position that its untimely motion to quash should be granted. Instead, the facts of this case, in light of *American Elec. Power Co.*, demand a completely opposite result.

PNS' motion should be denied, and PNS should be ordered to produce documents in response to the subpoenae.

### D. PNS Violated at Least Two Local Rules

PNS has failed to abide by this Court's Local Rules. CR 7(b)(1) required PNS to include "the date the motion is to be noted for consideration upon the court's motion calendar." The motion includes no such date. Instead, on November 3, 2006 (eight days after filing their Motion), PNS filed a "Certificate of Service of Noting Date Set for Motion to Quash." In that Certificate, PNS purports to set the Noting date for November 10, 2006 — seven *calendar* days from the date it was filed and a National Court holiday. CR 7(d)(2) requires that the noting date be at least seven *judicial* days after the date of filing. As with the original motion, PNS appears to have placed the Certificate in the U.S. Mail. At the time of writing this Opposition, Facebook still has not received the Certificate by U.S. Mail. Even assuming that, by filing the Certificate, PNS rectified its original error, the filing of the Certificate is still in violation of the Local Rules. Indeed, such a Certificate does not appear to be authorized. Local Rules W.D.Wash. CR 7(b)(1) ("All motions shall include in the caption (immediately below the title of the motion) the date the

OHS West:260119134.2                                - 9 -

FACEBOOK'S OPPOSITION TO MOTION TO QUASH SUBPOENAS DUCES TECUM

1 motion is to be noted for consideration upon the court's motion calendar").

2 CR 7(d)(2) required PNS to "ensure that the motion papers are received by the opposing party on or before the filing date."[2] Not only did Facebook not receive the moving papers prior to their having been filed with this Court, PNS did not inform Facebook of the filing until five days after the motion had been filed and, even then, only after counsel for Facebook contacted counsel for PNS about the subject subpoena. More than 24 hours after Facebook requested a conference to meet and confer regarding the subpoenae, PNS informed Facebook that it had filed the present motion on Friday, October 27, 2006. Sutton Decl., Ex. H. In fact, the motion had been filed one day earlier, on October 26, 2006. Rather than transmit the motion electronically, PNS placed the motion papers in the U.S. Mail. Facebook did not receive the papers until October 31, 2006, five days after PNS filed them with the Court.

These failures by PNS to abide by the Local Rules in and of themselves warrant denial of its motion.

### III. CONCLUSION

For the foregoing reasons, PNS' Motion to Quash should be denied.

///

///

---

[2] PNS may argue that Facebook received a copy of a Motion to Quash when PNS erroneously filed it in the District of Massachusetts (despite having been repeatedly informed that the District of Massachusetts was the improper venue for the motion). While Facebook received a copy of a Motion to Quash in the District of Massachusetts, the current Motion contains new information. Moreover, the fact that Facebook received a copy of a motion in Massachusetts, does not absolve PNS of its obligation to abide by this Court's Local Rules.

OHS West:260119134.2

- 10 -

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ Lewis Malakoff /s/
Lewis Malakoff, Bar No. 30421
719 Second Avenue, Suite 900
Seattle, WA 98104-7097
Telephone: (206) 839-4300
Facsimile: (206) 839-4301

G. Hopkins Guy
I. Neel Chatterjee
Monte Cooper
Theresa A. Sutton
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Attorneys for Defendants
FACEBOOK, INC., MARK ZUCKERBERG,
DUSTIN MOSKOVITZ, ANDREW
MCCOLLUM, CHRISTOPHER HUGHES