# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC.,<br><br>         Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, AND THEFACEBOOK, LLC,<br><br>         Defendants. | Civil Action No. 1:07-CV-10593 (DPW)<br><br>Related Action: Civil Action No. 04-CV-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |

## CONNECTU INC.'S CONSOLIDATED OPPOSITION
## TO FACEBOOK DEFENDANTS' MOTIONS TO DISMISS

Dockets.Justia.com

**TABLE OF CONTENTS**

I.     INTRODUCTION ...........................................................................................................1

II.    STATUS OF PROCEEDINGS .....................................................................................2

III.   FACEBOOK DEFENDANTS' MOTIONS ARE NOT TIMELY AND SOLELY
       FOR DELAY ................................................................................................................3

IV.    CONNECTU'S CLAIMS CARRY OVER FROM THE RELATED ACTION ................5

       A.    The Equitable Tolling Doctrine Protects the Five Challenged Claims...................5

             1.    Equitable Tolling Is Appropriate in This Exceptional Situation ................5

             2.    All Applicable Limitations are Subject to Equitable Tolling .....................8

       B.    ConnectU's Three Challenged Massachusetts Claims Are Protected by The
             Massachusetts Renewal Statute, M.G.L. c. 260, § 32................................................9

             1.    Facebook, Inc. Has Been a Defendant for Two and a Half Years ............10

             2.    The Corporate Defendants Were on Notice of the Claims ........................10

             3.    ConnectU's Amended Complaint Related Back to the Filing Date ..........12

             4.    ConnectU LLC Owned All Rights; Thus Renewal Statute Applies..........12

             5.    M.G.L. c. 93, § 42 Is Based on the Same Cause of Action From the
                   Related Action .............................................................................................14

V.     FACEBOOK INC. AND THEFACEBOOK, LLC MUST BE HELD LIABLE FOR
       EACH CLAIM ASSERTED AGAINST THEM............................................................16

       A.    The Corporate Defendants Expressly or Impliedly Assumed Liability.................16

       B.    The Corporate Defendants Were Created by a *de facto* Merger............................17

       C.    The Corporate Defendants are a Mere Continuation .............................................18

VI.    NO CLAIM IS PREEMPTED BY CONNECTU'S COPYRIGHT CLAIM ...................19

       A.    Defendants' Arguments are Baseless and Misleading............................................19

       B.    The Test for Copyright Preemption .......................................................................20

             1.    The First Prong Is Not Met .......................................................................21

             2.    The Second Prong Is Not Met As the Claims Have Extra Elements .........22

VII.   DEFENDANTS' ASSIGNMENT OF CLAIMS ARGUMENT MUST FAIL .................24

VIII.   CONNECTU ADEQUATELY PLEADED ALL CLAIMS..............................................27

     A.    Legal Standard Under Fed. R. Civ. P. 12 (b)(6) Favors ConnectU .....................27

     B.    Rule 8, Not Rule 9, Governs All Claims Except Fraud ........................................28

     C.    ConnectU Adequately Pleaded Trade Secret Misappropriation ..........................30

          1.    Elements of Pleading for Misappropriation of a Trade Secret .................30

          2.    ConnectU Made All Necessary Misappropriation Allegations ................30

          3.    Facebook Defendants' Cases Favor ConnectU...........................................31

     D.    ConnectU Adequately Pleaded Breach of Contract................................................32

     E.    ConnectU Adequately Pleaded Breach of Implied Covenant...............................33

     F.    ConnectU Adequately Pleaded M.G.L. 93A—Unfair Trade Practices ................34

     G.    ConnectU Adequately Pleaded Breach of Fiduciary Duty ...................................36

     H.    ConnectU Adequately Pleaded Unjust Enrichment...............................................36

     I.    ConnectU Adequately Pleaded Its Intentional Interference Claim.......................37

     J.    ConnectU Pleaded Fraud with Sufficient Particularity.........................................37

     K.    ConnectU Satisfied the Requirements of Fed. R. Civ. P. 10(b)............................38

IX.    CONCLUSION.............................................................................................................40

# TABLE OF AUTHORITIES

## Federal Cases

*Anderson v. Bd. of Trustees*,
   77 F.3d 364 (11th Cir. 1996) ................................................................................39

*Burnett v. N.Y. Central R.R. Co.*,
   380 U.S. 424 (1965)..........................................................................................5, 7

*Calderón-Ortiz v. Laboy-Alvarado*,
   300 F.3d 60 (1st Cir. 2002)..................................................................................27

*Chongris v. Board of Appeals of Andover*,
   811 F.2d 36 (1st Cir. 1987)..................................................................................27

*Corliss v. City of Fall River*,
   397 F. Supp. 2d 260 (D. Mass. 2005) ........................................................11, 14, 15

*Court-Appointed Receiver for Lancer Management Group L.L.C. v. Taubman*,
   No. 05-60199, 2007 U.S. Dist. LEXIS (S.D. Fla. March 27, 2007)............................34

*Crane Const. Co. v. Klaus Masonry*,
   114 F. Supp. 2d 1116 (D. Kansas 2000) .................................................................16

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000) ..................................................................................7

*Cyr v. B. Offen & Co.*,
   501 F.2d 1145 (1st Cir. 1974)...............................................................................16

*Data General Corp. v. Grumman Systems Support Corp.*,
   825 F. Supp. 340 (D. Mass. 1993).........................................................................32

*Data General Corp. v. Grumman Systems Support Corp.*,
   795 F. Supp. 501 (D. Mass. 1992) ...................................................................15, 20

*Dialogo, LLC v. Bauza*,
   456 F. Supp. 2d 219 (D. Mass. 2006) ....................................................................22

*Division Records, LLC v. Q Records and QVC, Inc.*,
   No. Civ. A. 99-10828-GAO, 2000 U.S. Dist. LEXIS 1773 (D. Mass. Feb 11, 2000) ...............34

*Donnelli v. Peters Secs. Co., L.P.*,
   No. 02 C 0691, 2002 U.S. Dist. LEXIS (N.D. Ill. Aug. 28, 2002)................................4

*Doyle v. Hasbro, Inc.*,
   103 F.3d 186 (1st Cir. 1996).................................................................................37

*Ecological Fibers, Inc. v. Kappa Graphic Board, B.V.*,
  345 F. Supp. 2d 13 (D. Mass. 2004) ........................................................................... 29

*Fox v. Eaton Corp.*,
  615 F.2d 716 (6th Cir. 1980) ........................................................................................ 6

*Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*
  958 F.2d 15 (1st Cir. 1992) ......................................................................................... 29

*Garrett v. Tandy Corp.*,
  295 F.3d 94 (1st Cir. 2002) ......................................................................................... 28

*Godfrey v. Eastern Gas & Fuel Associates*,
  71 F. Supp. 175 (D. Mass. 1947) ................................................................................ 12

*Henley Drilling Co. v. McGee*,
  36 F.3d 143, 150 (1st Cir. 1994) ............................................................................ 3, 25

*Honda v. Clark*,
  386 U.S. 484 (1967) ...................................................................................................... 8

*Howard v. Cycare Sys., Inc.*,
  128 F.R.D. 159 (D. Mass. 1989) ........................................................................... 37, 38

*Hunter v. Squirrel Hill Assoc.*,
  413 F. Supp.2d 517 (E.D. Pa. 2005) ............................................................................. 8

*In re Hemingway Transp., Inc.*,
  993 F.2d 915 (1st Cir. 1993) ....................................................................................... 34

*John G. Danielson, Inc. v. Winchester-Conant Properties., Inc.*,
  186 F. Supp. 2d 1 (D. Mass. 2002) ............................................................................. 21

*Jon-Don Prods., Inc. v. Malone*,
  No. Civ. 02-429 (D.N.H. April 10, 2003) ................................................................... 29

*Jones-Booker v. U.S.*,
  16 F. Supp. 2d 52 (D. Mass. 1998) ............................................................................... 8

*Kuney Int'l v. DiIanni*,
  746 F. Supp. 234 (D. Mass. 1990) .............................................................................. 38

*Langadinos v. American Airlines, Inc.*,
  199 F.3d 68 (1st Cir. 2000) ......................................................................................... 29

*Leatherman v. Tarrant Cty. Narcotics Intell. and Coordination Unit*,
  507 U.S. 163 (1993) .................................................................................................... 28

*LiButti v. United States*,
  178 F. 3d 114 (2d Cir. 1999) ....................................................................................... 16

*Massachusetts v. Mylan Labs*,
   357 F. Supp.2d 314 (D. Mass 2005) ................................................................. 36-37

*Moore v. Ford Motor Co.*,
   No. 92 C 1130,  1994 U.S. Dist. LEXIS 652 (N.D. Ill. Jan. 26, 1994) ..................... 3, 4

*Moore v. Marty Gilman, Inc.*,
   965 F. Supp. 203 (D. Mass 1997) ............................................................................ 31

*National Gypsum Co. v. Continental Brands Corp*,
   895 F. Supp. 328 (D. Mass. 1995) ........................................................................... 18

*Neverson v. Farquharson*,
   366 F.3d 32 (1st Cir. 2004) ........................................................................................ 6

*Newman v. Burgin*,
   930 F.2d 955 (1st Cir. 1991) ..................................................................................... 10

*Nunley v. Kloehn*,
   158 F.R.D. 614 (D. Wis. 1994) ................................................................................. 14

*Patricia Kennedy & Co. v. Zam-Cul Ent., Inc.*,
   830 F. Supp. 53 (D. Mass. 1993) ............................................................................. 22

*Pearce v. Duchesneau Group, Inc.*,
   392 F. Supp. 2d 63 (D. Mass. 2005) ........................................................................ 29

*Picker Int'l Corp. v. Imaging Equipment Services.*,
   931 F. Supp. 18 (D. Mass 1995) .............................................................................. 31

*Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*,
   614 F.2d 1051 (5th Cir. 1980) .................................................................................... 6

*Portfolioscope, Inc. v. I-Flex Solutions Ltd.*,
   473 F. Supp. 2d 252 (D. Mass. 2007) ...................................................................... 23

*Pramco LLC v. San Juan Bay Marina, Inc.*,
   435 F.3d 51 (1st Cir. 2006) ........................................................................................ 6

*Pullen v. NorthStar Presidio Mgmt. Co.*
   No. 98-771, 1998 U.S. Dist. LEXIS 15938 (D. Conn. Sept. 11, 1998) ...................... 39

*Raytheon Co. v. Continental Cas. Co.*,
   123 F. Supp. 2d 22 (D. Mass. 2000) ........................................................................ 32

*Reynolds v. Logan Charter Servs., Inc.*,
   565 F. Supp. 84 (N.D. Miss. 1983) ............................................................................ 6

*Rodi v. S.  New England School of Law*,
   389 F.3d 5 (1st Cir. 2004) ............................................................................... 9, 10, 14

*Roma Constr. Co. v. aRusso,*
  96 F.3d 566 (1st Cir. 1996) ..................................................................................27

*Rosa v. Park West Bank & Trust Co.,*
  214 F.3d 213 (1st Cir. 2000) ............................................................................27, 28

*Santiago-Marrero v. U.S.,*
  61 Fed. Appx. 718 (1st Cir. 2003) ........................................................................28

*Stoffels v. SBC Communs., Inc.,*
  430 F. Supp. 2d 642 (W.D. Tex. 2006) ..................................................................3, 4

*Swartz v. Schering-Plough Corp.,*
  53 F. Supp. 2d 95 (D. Mass 1999) .........................................................................31

*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002) ........................................................................................28, 35

*Three D Depts., Inc. v. K-Mart Corp.,*
  670 F. Supp. 1404 (N.D. Ill. 1987) ........................................................................39

*Tiller v. Atlantic Coast Line R.R.,*
  323 U.S. 574 (1945) ..............................................................................................12

*Tingley Systems, Inc. v. CSC Consulting, Inc.,*
  152 F. Supp. 2d 95 (D. Mass. 2001) ................................................................20, 21

*U.S. Fidelity & Guaranty Co. v. Jepsen,*
  No. 90 C 6931, 1994 U.S. Dist. LEXIS (N.D. Ill. Nov. 1, 1991) ............................3, 4

*Zerilli v. Evening News Ass'n,*
  628 F.2d 217 (D.C. Cir. 1980) .................................................................................7

## State Cases

*Addison v. State of Cal.,*
  578 P.2d 941 (Cal. 1978) .........................................................................................8

*Baker v. Allen,*
  197 N.E. 521 (Sup. Ct. Mass.  1935) .....................................................................26

*Bethlehem Fabricators v. H.D. Watts Co.,*
  190 N.E. 828 (Sup. Ct. Mass. 1934) ......................................................................26

*Boutiette v. Dickinson,*
  768 N.E.2d 562 (Mass. App. Ct. 2002) .......................................................9, 10, 14, 15

*Cargill, Inc. v. Beaver Coal & Oil Co.,*
  676 N.E.2d 815 (Mass. 1997) ...........................................................................16, 17

*Central Nat'l Gottesman, Inc. v. Rodman & Rodman*,
   P.C. No. 97-4791, 1998 Mass. Super. LEXIS 542 (Super. Ct. Mass. Sept. 30, 1998)...............25

*Curtis-Wright Corp. v. Edel-Brown Tool & Die Co.*,
   407 N.E.2d 319 (Mass. 1980) ..........................................................................................32

*CWE Enters. v. McGraw-Hill Broadcasting Co., Inc.*,
   Nos. D046282 & D046672, 2006 Cal. App. Unpub. LEXIS 7134 (Cal. Ct. App. Aug. 16, 2006)
   ........................................................................................................................................8

*David J. Tierney Jr. Inc v. T. Wellington Carpets, Inc.*,
   392 N.E.2d 1066 (Mass. App. Ct. 1979) ...........................................................................32

*Duff v. Zonis*,
   99 N.E.2d 47 (Mass. 1951) .........................................................................10, 11, 13, 14

*Gifford v. Spehr*,
   266 N.E.2d 657 (Mass. 1971) ...................................................................................10, 11

*H.J. Baker & Bro., Inc. v. Orgonics, Inc.*
   554 A.2d 196 (R.I. 1989) ................................................................................................18

*J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*,
   260 N.E.2d 723 (Mass. 1970) .........................................................................................31

*Johnson v. White*,
   774 N.E.2d 685 (Mass. App. 2002) ................................................................................15

*Lee v. Mt. Ivy Press, L.P.*,
   827 N.E.2d 727 (Mass. App. Ct. 2005) ...........................................................................24

*Lexington Savings Bank v. Linnehan*,
   No. 96-2890, 1998 Mass. Super. LEXIS 348 (Mass. Super. Feb. 9, 1998)................................26

*Li'l Peach of Massachusetts, Inc. v. Prendergast*,
   No. 95-2855, 1996 Mass. Super. LEXIS 356 (Mass. Super. Ct. Aug. 15, 1996) ......................35

*Loomer v. Dionne*,
   155 N.E.2d 411 (Mass. 1959) ...............................................................................12, 13, 14

*Lovejoy v. Bailey*,
   101 N.E. 63 (Mass. 1913) ...............................................................................................25

*Maltz v. Smith Barney,  Inc.*,
   694 N.E.2d 840 (Mass. 1998) .........................................................................................13

*McCarthy v. Litton Indus. Inc.*,
   570 N.E.2d 1008 (Mass. 1991) .................................................................................18, 19

*Mill-Bern Assocs., Inc. v. Dallas Semiconductor Corp.*,
   No. CA 98-1435, 2002 Mass. Super LEXIS 181 (Mass. Super. Ct. 2002) .................................37

*Piper v. Childs*,
  195 N.E.2d 763 (Mass. 1935) ........................................................................25

*Rendek v. Sheriff of Bristol County*,
  797 N.E.2d 891 (Mass. 2003) .......................................................................25

*Salamon v. Terra*,
  477 N.E.2d 1029 (Mass. 1985) .....................................................................25

*U.S. Funding, Inc. of Am. v. Bank of Boston Corp.*,
  551 N.E.2d 922 (Mass. App. Ct. 1990) ........................................................35

*Warren v. Para Rubber Shoe Co.*,
  44 N.E. 112 (Mass. 1896) .............................................................................25

## Federal Statutes

17 U.S.C. § 301(b) .............................................................................................20

17 U.S.C. § 102(b) .............................................................................................21

## State Statutes

M.G.L. c. 93A ...............................................................................22, 28, 34, 26

M.G.L. c. 93 §42 ..........................................................................14, 15, 30, 31

M.G.L. c. 260 §2A ..............................................................................................8

M.G.L. c. 260 §32 .........................................................................................9, 14

M.G.L. c. 266 §30 ......................................................................................14, 30

## Federal Rules

Fed. R. Civ. P. 7(a) ............................................................................................3

Fed. R. Civ. P. 8 .......................................................................................*passim*

Fed. R. Civ. P. 9 .............................................................................1, 2, 35, 36, 38

Fed. R. Civ. P. 10 ...............................................................................36, 37, 38, 39

Fed. R. Civ. P. 12 (b)(1) .....................................................................................2

Fed. R. Civ. P. 12 (b)(6) ....................................................................2, 15, 30, 34

Fed. R. Civ. P. 12(h)(2) ......................................................................................3

Fed. R. Civ. P. 12(g) ..........................................................................................3

Fed. R. Civ. P. 15 ..........................................................................................1, 13

Fed. R. Civ. P. 30 (b)(6).................................................................................................2

Fed. R. Civ. P. 41(a) ....................................................................................................7

## **State Rules**

Mass. R. Civ. P. 9 ......................................................................................................35

## **Other Authorities**

15 W. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* §7122 (2006)............................16

15 W. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* §7124.20 (2006)......................17

15 W. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* §4316 (2006)............................18

2 James Wm. Moore et al, *Moore's Federal Procedure* § 12:34[1][c] (2006) ..............................28

5C Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1385 (1990)....................4

# I.    INTRODUCTION

Facebook Defendants'[1] constant and consistent tactic is to delay and stonewall this case to avoid, at any cost, the merits of ConnectU's allegations. Their new batch of motions continues this strategy, as their arguments have no legal merit, should have been made a long time ago, and are interposed solely for the purpose of delay.

Immediately after this Court dismissed its original action, ConnectU refiled. Rather than defending their conduct on the merits, Facebook Defendants filed three convoluted and redundant Motions to Dismiss, adopting the arguments of the others, as well as asserting independent arguments (hereinafter, separately, "Corporate, Dkt. 16", "MMH, Dkt. 17," and "Zuckerberg, Dkt. 18").[2] For the Court's convenience, ConnectU opposes Facebook Defendants' three motions in this consolidated opposition.

Facebook Defendants' arguments fall into three categories: First, that Counts 1, 2, 7, and 8 are time barred. This argument is inapplicable under Fed. R. Civ. P. 15, the doctrine of equitable tolling, and the Massachusetts savings statute. Second, that Counts 3, 4, 5, 7, and 8 are preempted by ConnectU's copyright claim. This argument is baseless, as each claim fails to meet the two-pronged preemption test. Third, that Counts 2-9 were not adequately pleaded under Fed. R. Civ. P. 8, 9, and/or 10. These arguments are also meritless, and not a basis for dismissal.

Each of ConnectU's claims is viable and adequately pleaded. ConnectU urges this Court to deny Facebook Defendants' frivolous motions and get to the heart of the matter, namely, their illegal and unethical conduct in the development and maintenance of the facebook.com website.

---

[1] "Facebook Defendants" refers to all Defendants except Eduardo Saverin. Mr. Saverin filed his own Motion to Dismiss on May 3. ConnectU incorporates its concurrently filed Opposition to Mr. Saverin's Motion into this Opposition.

[2] The Facebook entities and Zuckerberg have moved to dismiss all of the claims asserted by ConnectU. *See* Corporate, Dkt. 16 at 1 and Zuckerberg, Dkt. 18 at 1.

## II.    STATUS OF PROCEEDINGS

On September 4, 2004, ConnectU LLC (ConnectU, Inc.'s predecessor)[3] sued the

Individual Defendants, as well as the only Facebook entity known to ConnectU, Facebook.com.[4]

Before Defendants answered, ConnectU filed an Amended Complaint on October 28, 2004,

joining Facebook, Inc. (R.A. Dkt. 13).  Defendants answered on November 18, 2004 (R.A. Dkt.

14), but never moved to assert any deficiencies under Rules 8, 9, 10, or 12(b)(6), or copyright

preemption.

The parties began discovery and filed numerous motions to compel.  Facebook Inc. and its

co-Defendants even took a wide-ranging Fed. R. Civ. P. 30 (b)(6) deposition of ConnectU and

later moved for additional deposition time.  (R.A. Dkt. 90).[5]  Almost a year after they answered,

on October 14, 2005, Defendants filed a Rule 12(b)(1) motion to dismiss.  (R.A. Dkt. 94).

Evaluating and deciding that motion entailed 23 Facebook subpoenas for documents, 17 Facebook

subpoenas for deposition, 10 Facebook depositions, 129 Facebook discovery requests,[6]  21 briefs,

and two evidentiary hearings.  This intense process lasted almost 18 months.  Facebook

Defendants' never hinted of any alleged non-jurisdictional deficiencies in ConnectU's Amended

Complaint, that any claims were preempted, or that any statute of limitation had run during the

Court's jurisdictional evaluation.[7]

---

[3] Facebook Defendants argue that ConnectU, LLC is "now defunct" and that ConnectU, Inc.
cannot maintain this suit (*see* Corporate, Dkt. 16 at 2; MMH, Dkt. 17 at 2).  This is wrong.
ConnectU, LLC was merged into ConnectU, Inc..  In the merger, ConnectU, Inc. acquired all of
ConnectU, LLC's rights, as alleged (Complaint, ¶ 42).

[4] ConnectU, Inc. refers to this related action (Civil Docket No. 04-CV-11923) as the "R.A."

[5] There have been no depositions of Facebook Defendants.  (Esquenet Decl., ¶ 2).  Their
arguments that discovery increased the applicable pleading standard (*see* MMH, Dkt. 17 at 5)
cannot be relevant where, as here, Defendants were never deposed.  Moreover, ConnectU did
incorporate document discovery into the Complaint.  (*See* Complaint ¶¶ 15, 18, 22, 24, 26, 29, 31,
33, 34, 36, and 39).

[6] By contrast, ConnectU served 51 discovery requests and deposed one witness.  (Esquenet Decl.,
¶ 3).

[7] Defendants asserted a preemption defense (R.A. Dkt. 14, Affirmative Defense 14), but never
filed a motion.

On March 2, 2007, Magistrate Collings issued a Report and Recommendation ("R&R") finding ConnectU LLC had no Members on September 4, 2004, and therefore that the Court lacked jurisdiction. Facebook Defendants made no objections to the R&R, even though it did not address many of the arguments in their motion to dismiss, for example, the assignability of the fraud and breach of fiduciary duty claims (discussed *infra*). *See* R.A. Dkt. 100 at 16-17. Failure to object to such omissions waived them. Facebook Defendants may not repeat those arguments now. *See Henley Drilling Co. v. McGee,* 36 F.3d 143, 150-151 (1st Cir. 1994); *see also* § IV, *infra*.

On March 28, 2007, this Court adopted the R&R and dismissed the related action without prejudice. Importantly, this Court held that once refiled, the case would pick up where it left off and proceed promptly to trial. (R.A. March 28, 2006 Order). ConnectU refiled its claims less than four hours after receiving this Court's decision. It could not have done so any earlier.

## III.    FACEBOOK DEFENDANTS' MOTIONS ARE NOT TIMELY AND SOLELY FOR DELAY

Facebook Defendants' motions should be denied under Fed. R. Civ. P. 12(g) as untimely, successive motions to dismiss intended merely to delay these proceedings. In their motions, Facebook Defendants attempt to backtrack by newly objecting to claims they previously found sufficient. (*See* Defendants' Answer, R.A. Dkt. 14). If the related action were still pending, Defendants would be barred from filing an additional motion to dismiss on grounds that were previously available. Defendants should not be permitted to continue their pattern of making this case as prolonged and expensive as possible.

Rule 12(g) contemplates that defendants will advance "**every available Rule 12 defense and objection he may have** that is assertable by motion." *Moore v. Ford Motor Co.*, No. 92 C 1130, 1994 U.S. Dist. LEXIS 652, *5-6 (N.D. Ill. Jan. 26, 1994) (emphasis added); *see also U.S. Fidelity & Guaranty Co. v. Jepsen*, No. 90 C 6931, 1991 U.S. Dist. LEXIS 16818, *6 (N.D. Ill. Nov. 1, 1991) ("The purpose of Rule 12(b)(6) is to prevent litigants from interposing defenses in a piecemeal fashion for purposes of delay."). Rule 12(g) thus bars a party from filing a successive

motion to dismiss to assert a defense or objection he could have raised, but failed to raise, in a previous Rule 12 motion. *Stoffels v. SBC Communs., Inc.*, 430 F. Supp. 2d 642, 647 (W.D. Tex. 2006).[8]  "Generally, courts have denied defendants' attempts to file multiple pre-answer motions to dismiss, finding such motions contravene the purpose of Rule 12(g): to prevent litigants from interposing defenses in a piecemeal fashion and eliminate unnecessary delay at the pleading stage."[9] *Donnelli v. Peters Secs. Co., L.P.*, No. 02 C 0691, 2002 U.S. Dist. LEXIS 16305, *10 (N.D. Ill. Aug. 28, 2002) (citing cases).

Rule 12(g) applies in cases where, as here, the motion to dismiss is filed in response to a re-filed or amended Complaint.  For example, the defendant in *U.S. Fidelity*, after initially defaulting, moved to dismiss the plaintiff's amended Complaint under Rule 12(b)(6).  The motion was granted in part and denied in part.  When the plaintiff filed its second amended Complaint, the defendant, after again initially defaulting, filed a motion to dismiss the second amended Complaint under Rule 12(b)(6).  Finding that the second motion to dismiss contained arguments made and considered by the court in the first motion, or that could have been made but were not, the court denied the motion on this basis under Rule 12(g).  The court noted that the purpose of Rule 12(b)(6) is "to prevent litigants from interposing defenses in a piecemeal fashion for purposes of

---

[8]  Fed. R. Civ. P. 12(h)(2) preserves the defense of failure to state a claim only for pleadings under Fed. R. Civ. P. 7(a) or motions for judgment on the pleadings, and does **not** apply to motions to dismiss.  *See U.S. Fidelity,* 1991 U.S. Dist. LEXIS 16818 at *4 n.2 ("Rule 12(h)(2) is inapplicable to motions to dismiss."); *Stoffels*, 430 F. Supp. 2d at 647 ("A review of the relevant authorities confirms that Rule 12(g) normally bars successive pre-answer motions to dismiss.  Professors Wright and Miller state that the ban against successive pre-answer motions extends to the three 'substantial defenses' listed in 12(h)(2), including failure to state a claim upon which relief can be granted under Rule 12(b)(6).  'The right to raise these defenses by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion.'") (*quoting* 5C Wright and Miller, Federal Practice and Procedure § 1385 at pp. 727-729 (1990)).

[9]  *See Moore*, 1994 U.S. Dist. LEXIS 652 at *5-6 ("Clearly, in their first motion to dismiss, the Defendants could have objected on the grounds that Plaintiff's fraud and consumer fraud counts failed to state a claim on which relief could be granted, but for unknown reasons, they did not.  To allow the Defendants to assert, in their second motion to dismiss the same counts, arguments which could and should have been introduced in the first motion to dismiss would contravene the purpose of Rule 12(g).  Accordingly, the Defendants' Motion to Dismiss Counts V and VI is denied.").

delay," and found that the defendant's second motion to dismiss was "simply another delaying tactic" in its pattern of delay.  *U.S. Fidelity,* 1994 U.S. Dist. LEXIS 16818 at *6.

As in *U.S. Fidelity*, Facebook Defendants' motions repeat an argument from their first motion to dismiss[10] and raise several other arguments they could have made in their first motion, but did not.[11]  Clearly, Defendants' motivation is to derail this litigation, contrary to this Court's Order that proceedings should continue where they left off and proceed promptly to trial.  Toward that end, Facebook Defendants would not accept service, unsuccessfully sought an extension to respond to a Complaint that is substantively identical to the Complaint they answered 2 ½ years ago (R.A. Dkt. 13), filed three new motions to dismiss, and have threatened to move to stay in view of ConnectU's appeal of the Court's March 28, 2007 Order adopting the R&R.  (Esquenet Decl., ¶ 3, Ex. A).  Motions to dismiss filed for delay are prohibited.  Defendants simply should not be able to make at this time any arguments they could and should have made 2 ½ years ago, namely, preemption and pleadings deficiencies.  Such parts of their motions should be denied on this basis alone.  This leaves only statutes of limitations and arguments where Defendants did not object to their tacit rejection by the R&R.

## IV.    CONNECTU'S CLAIMS CARRY OVER FROM THE RELATED ACTION

### A.    The Equitable Tolling Doctrine Protects the Five Challenged Claims

#### 1.    *Equitable Tolling Is Appropriate in This Exceptional Situation*

Because of the exceptional circumstances of this case, justice dictates that this Court should equitably toll the limitations period for all of ConnectU's challenged claims.  *Burnett v. N.Y. Central R.R. Co.*, 380 U.S. 424, 434-35 (1965) (statute of limitations for a claim under Federal Employers' Liability Act tolled when plaintiff initially brought claim in improper venue).  In *Burnett*, the U.S. Supreme Court explained that equitable tolling is applied in situations where "a plaintiff has not slept on his rights but, rather, has been prevented from asserting them."  *Id.* at

---

[10] Namely, the assignability of the fraud and breach of fiduciary duty claims (see R.A. Dkt. 100 at 16-17).

[11] Namely, copyright preemption, Rule 12(b)(6) defenses, Rule 10 pleading requirements, and the correct legal names of the Corporate Defendants.

429. The Court stated that the purpose of statutes of limitations is to "assure fairness to defendants . . . by preventing surprises through the revival of claims that have been allowed to slumber" but that this policy is "frequently outweighed . . . where the interests of justice require vindication of the plaintiff's rights." *Id.* at 428. *See also Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir. 2004) (equitable tolling appropriate "when circumstances beyond the petitioner's control have prevented him from filing on time."). Although ConnectU's Complaint in the related action was dismissed for lack of jurisdiction, and the *Burnett* Court addressed dismissal for improper *venue*, the *Burnett* Court's reasoning is equally applicable to the present situation, as equitable tolling can apply where the lack of jurisdiction was unclear at the time of filing.

Equitable tolling cases are fact specific; no clear rules have emerged. *See Fox v. Eaton Corp.*, 615 F.2d 716, 719 (6th Cir. 1980) (equitable tolling saved Title VII Complaint after state court dismissed for lack of subject matter jurisdiction); *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 614 F.2d 1051, 1054-55 (5th Cir. 1980) (equitable tolling permitted plaintiff to refile after dismissal of initial Complaint based on lack of *in rem* jurisdiction); *Reynolds v. Logan Charter Servs., Inc.*, 565 F. Supp. 84, 86 (N.D. Miss. 1983) (equitable tolling allowed plaintiff to proceed with claim after initial Complaint was dismissed for lack of personal jurisdiction). However, common factors are that the plaintiff diligently pursued its claim, defendant would not be prejudiced by refiling, and equitable tolling avoids injustice.

When ConnectU filed its initial Complaint, it was not clear that this Court lacked subject matter jurisdiction. To the contrary, it took more than twenty-one briefs and two evidentiary hearings over the span of 18 months to determine that the Court lacked jurisdiction. Defendants did not even file their first motion to dismiss until a year into the suit. Moreover, *Pramco LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 (1st Cir. 2006), which changed First Circuit law on the citizenship of LLCs, was not decided until 16 months after ConnectU filed its Complaint.

The facts surrounding whether diversity jurisdiction existed at the time of filing also were far from clear. Defendant Zuckerberg's domicile and Facebook, Inc.'s and Thefacebook LLC's existence were unknown to ConnectU. As this Court has determined, ConnectU's Members were

unclear at the time of filing.  These issues, once resolved after more than 2 ½ years, determined whether the Court had jurisdiction.  The Court then ruled it lacked jurisdiction for a reason no party suggested or briefed.  Accordingly, whether this Court had jurisdiction over ConnectU's Complaint was not clear at the time of filing, and therefore this Court should apply the principles of equitable tolling outlined in *Burnett* and hold that none of ConnectU's claims are time barred.

ConnectU also had no choice but to participate in the motion to dismiss process.  It could not have voluntarily dismissed after an answer was filed. Fed. R. Civ. P. 41(a)(1).  It could not have refiled until the motion was decided, regardless of when limitations periods expired.  Refiling would have entailed impermissibly filing a second action with the same claims, with an action already pending.  Plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time. *See, e.g.*, *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000); *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980).  Facebook Defendants would have relied on such case law to dismiss the second action.  ConnectU even suggested that the parties agree to dismiss (as Fed. R. Civ. P. 41(a)(2) requires) and refile, but Facebook Defendants never responded.  (Esquenet Decl., ¶ 5, Ex. B).

The fact that the complex motion proceeding took 18 months, and that the Court did not dismiss until more than three years after facebook.com launched, was entirely outside ConnectU's control.  For this reason alone, equitable tolling should apply.

Facebook Defendants also will not be prejudiced by tolling.  They have been aware of ConnectU's claims since February 2004.  By comparison, ConnectU will suffer extreme prejudice if it cannot vindicate its rights, which it has diligently pursued, having filed its Complaint in the related action well within the limitations periods and only six months after discovering Defendants' theft,[12] pursuing discovery, involving the Court in discovery logjams, and refiling its Complaint within four hours of dismissal. *See Burnett*, 380 U.S. at 436 (noting that plaintiff was diligent in commencing the second action eight days after dismissal of the first).

---

[12] Moreover, during that time, ConnectU attempted to resolve this dispute without litigation.

### 2.    *All Applicable Limitations are Subject to Equitable Tolling*

The limitations period for all three of ConnectU's challenged Massachusetts claims is subject to equitable tolling. *See Burnett*, 380 U.S. at 427-28 (in applying equitable tolling, courts must first determine whether the intent of the legislature was to permit tolling in appropriate circumstances). The statute of limitations applicable to these three challenged Massachusetts claims, M.G.L. c. 260, § 2A, is not a jurisdictional statute, *see, e.g., Jones-Booker v. U.S.*, 16 F. Supp. 2d 52, 63-64 (D. Mass. 1998), and therefore is subject to equitable tolling. *See id.; see also Honda v. Clark*, 386 U.S. 484, 501 (1967) (holding that where consistent with the overall congressional purpose, a traditional equitable tolling principle should be applied to a statutory limitations period).

Although the First Circuit apparently has not addressed the issue of equitable tolling in the context of a copyright claim, another court has described three nonexclusive situations in which equitable tolling of the copyright statute may be appropriate: (1) where the defendant has actively misled the plaintiff regarding the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting its rights; or (3) where the plaintiff has timely asserted its rights in the wrong forum. *Hunter v. Squirrel Hill Assoc.*, 413 F. Supp.2d 517, 521 (E.D. Pa. 2005). As explained above, ConnectU has exercised utmost diligence in pursing this claim, but could not refile until Defendants' motion to dismiss was granted. To limit ConnectU's copyright claim to the 3 years preceding the new Complaint would unfairly penalize ConnectU for participating in a process that ConnectU could not control, shorten, or avoid.

Finally, the equitable tolling doctrine as articulated by California courts provides additional support for holding that ConnectU's breach of confidence claim is timely. Under California law, the three core elements necessary to apply the equitable tolling doctrine are: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim. *Addison v. State of Cal.*, 578 P.2d 941, 943-44 (Cal. 1978) (period for filing was equitably tolled while plaintiff pursued action in Federal Court that

was dismissed for lack of jurisdiction); *see also CWE Enters. v. McGraw-Hill Broadcasting Co., Inc.*, Nos. D046282 & D046672, 2006 Cal. App. Unpub. LEXIS 7134, at *25 (Cal. Ct. App. Aug. 16, 2006) (statute of limitations for slander claim was equitably tolled pending outcome of plaintiff's federal suit that was dismissed for lack of diversity jurisdiction) (unpublished decision under Cal. R. of Ct. 977(a)).

Here, ConnectU filed its Complaint in the related action in September 2004, well within the statute of limitations, and Facebook Defendants will not be prejudiced in gathering evidence to defend against ConnectU's new Complaint because it is based on the same causes of action pleaded in the Complaint and Amended Complaint in the related action.  Facebook Defendants have had over 2 ½ years to gather evidence to defend against ConnectU's claims.  Finally, ConnectU has acted in good faith in filing this Complaint by informing Facebook Defendants and this Court of its intention to refile, and, in fact, refiling within four hours of dismissal of the related action.

**B.    ConnectU's Three Challenged Massachusetts Claims Are Protected by The Massachusetts Renewal Statute, M.G.L. c. 260, § 32**

The Massachusetts Renewal Statue (the "Renewal Statute") reads: "If an action duly commenced within the time limited in this chapter is dismissed. . . for any matter of form . . . the plaintiff or any person claiming under him may commence a new action for the same cause within one year after the dismissal . . . ." M.G.L. c. 260, § 32.  The Renewal Statute "is remedial legislation to be construed liberally to carry out the purpose of the Legislature."  *Duff v. Zonis*, 99 N.E.2d 47, 50 (Mass. 1951).  Federal courts can, and should, apply the Renewal Statute when applicable.  *See, e.g., Rodi v. S. New England School of Law*, 389 F.3d 5, 18 (1st Cir. 2004) ("The savings statute applies, inter alia, to an action originally filed and dismissed in a court of another state or in a federal district court.").  Because ConnectU refiled this action within four hours of dismissal in the related action, the Renewal Statute applies to all of its challenged Massachusetts claims.  *See Boutiette v. Dickinson*, 768 N.E.2d 562, 564 (Mass. App. Ct. 2002) ("It is settled that

dismissal for want of jurisdiction is for a 'matter of form' within the meaning of the [Renewal] statute."). Thus, all of these claims are timely.

### 1.    *Facebook, Inc. Has Been a Defendant for Two and a Half Years*

Defendants Facebook, Inc. and The Facebook, LLC (the "Corporate Defendants") argue that ConnectU's three challenged Massachusetts state law claims are not protected by the Renewal Statute because neither Facebook, Inc. nor TheFacebook, LLC was named in the original Complaint in the related action.  (Corporate, Dkt. 16 at 3).  The Corporate Defendants also argue that naming an improper defendant is a matter of substance, not a matter of form, and therefore ConnectU's state law claims are not saved by the Renewal Statute.  (*Id.* at 4-5).

They base these arguments on the premise that neither company "was named in the original Complaint."  (*Id.*)  The original Complaint named "The Facebook.com a/k/a TheFacebook," not Facebook, Inc., which was unknown to ConnectU at that time.  On October 28, 2004, ConnectU amended the Complaint to join Facebook, Inc. (R.A. Dkt. 13).  Even before ConnectU filed the Amended Complaint, Facebook, Inc. treated itself as a Defendant by filing a Corporate Disclosure Statement (R.A. Dkt. 8), moving for an extension of time to Answer or otherwise plead (R.A. Dkt. 7), and filing appearances by counsel (R.A. Dkt. 9, 28, 29).  Never did it complain it was not a properly named party.  Moreover, in its first motion to dismiss, Facebook, Inc. argued that it was the proper party in interest and should have been named instead of TheFacebook.com a/k/a TheFacebook.  (R.A. Dkt. 100 at 2).  As discussed *infra* and *supra*, Facebook, Inc. appeared, answered, asserted counterclaims, participated in a joint L.R. 16 Report, and responded to, objected to, and filed discovery motions, all as a party Defendant, beginning on the original filing date.

### 2.    *The Corporate Defendants Were on Notice of the Claims*

The Corporate Defendants cite cases allegedly supporting their argument that "the naming of a wrong defendant has been recognized to be one of the situations where the renewal statute is inapplicable."  (Corporate, Dkt. 16 at 4.)  Such cases, however, focus on the **lack of proper notice** to the defendants as the reason that the Renewal Statute did not apply, not the mere mislabeling of

a defendant.  *See Newman v. Burgin*, 930 F.2d 955, 964 (1st Cir. 1991) (quoting *Gifford v. Spehr*,

266 N.E.2d 657, 661 (Mass. 1971)) ("when plaintiff filed a case against the wrong defendant, or

failed to serve the defendant properly with process—thus, in principle, **failing** to 'notif[y] the

defendant about the case—the SJC has said the dismissal did **not** involve a 'matter of form' and

that the statute, therefore, did **not** save the action.")) (emphasis in original).  Indeed, it is the lack

of notice that makes a dismissal a matter of substance, rather than a matter of form, and thereby

prevents applicability of the Renewal Statute.  *See Corliss v. City of Fall River*, 397 F. Supp. 2d

260, 266 (D. Mass. 2005) ("Case law has also framed the 'matter of form' question as involving

the distinguishable inquiry of whether the defendant had actual notice that a court action had been

initiated against him within the original statute of limitations period."); *see also Gifford*, 266

N.E.2d at 661 ("It will be noted that in the *Loomer* case, the defendant knew promptly about the

proceeding in the wrong court.  There is no indication, however, that [defendant] in the present

case knew anything about action no. 1 until August, 1968, shortly before action no. 2 was

commenced.").

      As discussed above, Facebook, Inc. has been aware of —and involved as a Defendant in—

all of the proceedings since the Complaint was filed.  Similarly, TheFacebook LLC has been on

notice of ConnectU's claims, as its original Members were Defendants Zuckerberg, Moskovitz,

and Saverin and its sole current Member is Facebook, Inc.  (R.A. Dkt. 182, Ex. 3).[13]  In its June

12, 2006 Supplemental Brief, ConnectU apprised the Court of Facebook, Inc.'s failure to disclose

TheFacebook LLC's existence in response to ConnectU's argument, in its October 28, 2005

opposition to the first motion to dismiss, that more than one Facebook legal entity may have

existed on the September 4, 2004 filing date. (R.A. Dkt. 282, p. 2-4).

      From the beginning, ConnectU intended to sue the parties that caused it harm.  Such

parties, including the Corporate Defendants, had notice of the claims against them regardless of

---

[13] Since Defendants Zuckerberg, Moskovitz, and Saverin were Thefacebook LLC's Members on
September 2, 2004, Thefacebook LLC was on notice through them because each was properly
served.

whether or not ConnectU knew their names.  *See Duff*, 99 N.E.2d 47, 49-50 (plaintiff could sue "the person or persons, natural or artificial, by whatever form of organization they might be associated together" and applying the Renewal Statute when the plaintiff, in his initial Complaint, named the defendant as a corporation known as the Zonis Manufacturing Company when in actuality the defendant was a partnership of three individuals by the same name).  Accordingly, ConnectU's misnaming of the Corporate Defendants in the initial Complaint does not bar applicability of the Renewal Statute.

### 3.    ConnectU's Amended Complaint Related Back to the Filing Date

ConnectU's naming of TheFacebook.com a/k/a TheFacebook instead of Facebook, Inc. and TheFacebook, LLC in the initial Complaint in the related action is irrelevant because ConnectU amended its Complaint in the related action on October 28, 2004.  Under Fed. R. Civ. P. 15(c), the Amended Complaint relates back to the filing of the initial Complaint.  *See Godfrey v. Eastern Gas & Fuel Associates*, 71 F. Supp. 175, 177 (D. Mass. 1947) (amended Complaint related back to the filing of the initial Complaint where the plaintiff amended the name of the defendant and the defendant was at all times put on notice regarding the action); *see also Tiller v. Atlantic Coast Line R.R.,* 323 U.S. 574, 581 (1945) (amendment relates back when the original Complaint provided notification to defendant).  Accordingly, ConnectU's Amended Complaint relates back to the initial filing, and the fact that the Facebook, Inc. and TheFacebook, LLC were not named in the initial Complaint does not bar application of the Renewal Statute.[14]

### 4.    ConnectU LLC Owned All Rights; Thus Renewal Statute Applies

Facebook Defendants argue, without citing any authority, that ConnectU did not own the rights asserted on the original filing date and cannot now rely on the Renewal Statute because the action was not "duly commenced."  (*See, e.g.*, MMH, Dkt. 17 at 4).  Again, Facebook Defendants argued ConnectU's lack of rights in its first motion to dismiss (R.A. Dkt. 100 at 12), the R&R

---

[14] Facebook Defendants may reply that the R&R says Rule 15(c) does not apply.  (Dkt. 283 at 9, n.3).  Even if, *arguendo*, Rule 15(c) did not allow the Amended Complaint to reach back to cure jurisdiction, there is no reason that it would not have its normal effects.

does not address the argument, Facebook Defendants failed to object, and therefore they cannot raise it again now. (See § II, VII, *infra/supra*).

Even assuming that ConnectU did not own the rights at the time of filing, it does not follow that the action was not duly commenced as that term is used in the Renewal Statute. "Duly commenced" means "an action declared upon in a proper writ returnable according to law." *Loomer v. Dionne*, 155 N.E.2d 411, 413 (Mass. 1959) (plaintiff's action was saved by Renewal Statute after mistakenly bringing suit in Superior Court rather than District Court). To "duly" commence an action, under the terms of the Renewal Statute, a plaintiff need only commence the action within the applicable statute of limitations. *See Maltz v. Smith Barney*, *Inc.*, 694 N.E.2d 840, 842 (Mass. 1998) ("An action has been 'duly commenced' if it has been commenced within the time allowed by the applicable statute of limitations."). An incorrect nominal title for one of the parties does not prevent a case from being duly commenced for purposes of the Renewal Statute. *See Duff*, 99 N.E.2d 47, 49-50. Here, ConnectU filed suit within all applicable periods of limitation and the related action was therefore "duly commenced" as that term is used in the Renewal Statute.

Moreover, the pages of the R&R Defendants cite do not support their position that ConnectU LLC did not own the rights at the time of filing for purposes of applying the Renewal Statute. (*See* MMH, Dkt. 17 at 5). The R&R recognizes that the Operating Agreement could be retroactive for issues other than diversity, and in fact the pages Facebook Defendants cite support this point. (*See* Dkt. 283 at 36-37). Also, the Operating Agreement and its assignment of rights, is retroactive to formation, and Defendants argued repeatedly that the retroactivity provision in the Operating Agreement applied for all purposes. (*See, e.g.*, R.A. Dkt. 266 at 7). Thus, the retroactivity provision applies and the action was duly commenced, even if ConnectU LLC did not have Members at the time of filing in the related action.

In addition, Facebook Defendants falsely assert that ConnectU has not pleaded that ConnectU LLC had rights as of September 2, 2004. (*See* MMH, Dkt. 17 at 5). In fact, the Complaint expressly states that "Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra

13

[the "Founders"] intended that ConnectU LLC would own all of their rights, title, interests, and claims relating to Harvard Connection." (Complaint ¶ 42). Also, Facebook Defendants argued in their October 2006 pre-hearing statement that the Founders assigned their rights to ConnectU before the filing date of the related action, in exchange for membership in ConnectU LLC. (R.A. Dkt. 251 at 3). This is not inconsistent with the R&R's finding, with which ConnectU respectfully disagrees, that Members were not "admitted" until the Operating Agreement was signed. Even if Members were not admitted until August 2005, the Founders—as pleaded—could have intended that ConnectU own their rights before filing, they could have orally assigned the rights before filing, and the Operating Agreement makes the August 2005 written assignment retroactive to formation. Thus, ConnectU properly pleaded ownership of the rights.

Thus, Defendants' unsupported contention that ConnectU cannot rely on the Renewal Statute because it did not own the rights on the filing date is barred for failure to object to the R&R and is without merit. This Court should apply the Renewal Statute to ConnectU's three challenged Massachusetts claims.

### 5.     *M.G.L. c. 93, § 42 Is Based on the Same Cause of Action From the Related Action*

ConnectU's misappropriation of trade secrets claim is subject to the Renewal Statute, which permits a party whose initial action was dismissed for a matter of form to "commence a new action for the same cause within one year after dismissal." M.G.L. c. 260, § 32. The two suits must involve the same parties, the same events, the same nucleus of operative facts, and the same causes of action. *Corliss*, 397 F. Supp. 2d at 269; *Rodi*, 389 F.3d at 18; *Boutiette*, 768 N.E.2d at 564.[15]

---

[15] The Complaint contains one new claim, breach of confidence, but ConnectU's causes of action arising from Defendants' wrongdoing has not changed. *See Nunley v. Kloehn*, 158 F.R.D. 614, 617 (D. Wis. 1994) ("the sequence of factual occurrences gives rise to a single cause of action which, in turn, is comprised of several claims, or legal theories of recovery. A cause of action, then, may contain numerous claims.")

In the original Complaint, ConnectU pleaded its trade secret cause of action as a common law misappropriation claim and referenced M.G.L. c. 266, § 30. Although § 30 is the criminal trade secret misappropriation statute, it contains the definition of a "trade secret" used in civil actions.[16] In the new Complaint, ConnectU added a reference in the heading for Count Two to M.G.L. c.93, § 42. Otherwise, the trade secret claims are substantively identical in the two Complaints. If it was an error to mention § 30 in the original Complaint (or now), or not to mention § 42 before, it was not fatal because Defendants obviously understood the claim and had notice of it, as they did not object under Rule 12(b)(6) to the sufficiency of ConnectU's earlier claim. *See Johnson v. White*, 774 N.E.2d 685 (Mass. App. 2002) (unpublished opinion) (although plaintiff brought claim under incorrect statute, the claim did not fail because it put defendant on notice of cause of action). As part of its motion to amend, ConnectU also sought to add a reference to § 42. (R.A. 163 at 6-7).

Section 42 is merely a codification of the common law of misappropriation of trade secrets that ConnectU pled in its Complaint in the related case. *See Data General Corp. v. Grumman Systems Support Corp.*, 795 F. Supp. 501, 506-07 (D. Mass. 1992) ("Count I alleges common law misappropriation of trade secrets and confidential information, and Count II a violation of M.G.L c. 93, § 42, the Massachusetts codification of this tort."). Thus, adding a reference to the statute in the Count's heading in the new Complaint does not change the fundamental nature of the trade secret cause of action, and therefore the Renewal Statute applies. *See Boutiette*, 768 N.E.2d at 564; *cf. Corliss*, 397 F. Supp. 2d at 269 (Renewal Statute did not apply where plaintiff in first action sought damages for conversion and then in second action sought damages based upon civil rights violations). ConnectU's claim for trade secret misappropriation under the Massachusetts codification of the common law therefore is saved by the Renewal Statute.

---

[16] "The term 'trade secret' as used in this section shall have the same meaning as is set forth in section thirty of chapter two hundred and sixty-six." M.G.L. c. 93 § 42.

## V.    FACEBOOK INC. AND THEFACEBOOK, LLC MUST BE HELD LIABLE FOR EACH CLAIM ASSERTED AGAINST THEM

The Corporate Defendants try to escape liability because "every alleged 'bad' act of the Complaint predates the admitted formation of the Facebook Entities" (Corporate, Dkt. 16 at 5), and because they are not responsible for their employees' pre-formation acts.  (*Id*. at 7).  Such arguments on the merits are inappropriate at this stage.  ConnectU has pleaded successor liability (Compliant, ¶39).  Moreover, Facebook Defendants could have made this argument long ago.

Courts may impose liability on successor companies where: (1) the successor expressly or impliedly assumes liability of the predecessor; (2) the transaction is a *de facto* merger or consolidation; (3) the successor is a mere continuation of the predecessor; **or** (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor.  *Cargill, Inc. v. Beaver Coal & Oil Co.,* 676 N.E.2d 815, 818 (Mass. 1997); 15 W. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 7122 (2006).

These exceptions to successor immunity are not limited to corporations.  *Crane Const. Co. v. Klaus Masonry*, 114 F. Supp. 2d 1116, 1119 (D. Kansas 2000).  Individuals or partnerships that transfer their property into a corporation, or vice-versa, can also be liable for their previous acts. *See Cyr v. B. Offen & Co.*, 501 F.2d 1145, 1153-54 (1st Cir. 1974) (corporation liable for acts of its predecessor sole proprietorship); *accord LiButti v. United States*, 178 F. 3d 114, 124 (2d Cir. 1999) (exceptions to successor immunity apply "regardless of whether the predecessor or successor was a corporation or some other form of business organization") (citation omitted).  The Corporate Defendants are liable under at least three of these exceptions.

### A.    The Corporate Defendants Expressly or Impliedly Assumed Liability

The Corporate Defendants may have expressly assumed liability for any bad acts of the Individual Defendants when they formed.  They do not assert otherwise.  Only appropriate discovery, which has thus far been blocked by Facebook Defendants (as to which a motion to compel is pending), can shed light on the contractual relationship between the Facebook Defendants (as well as Mr. Saverin).  (*See* R.A. Dkt. 69 at 18-19; Dkt. 89 at 14).

16

Even if there was no express transfer of liability, the Individual Defendants surely expected the Corporate Defendants to assume any such liabilities. The Corporate Defendants were formed and are owned by the Individual Defendants, particularly Zuckerberg, to operate the facebook.com website. (*See, e.g,* Complaint ¶¶ 33, 34). Thus, it can be inferred for this motion that the purpose of creating the corporate entities was to transfer liability and shield the Individual Defendants. Affirmative Defense No. 23 says exactly this. (R.A. Dkt. 14). On this basis alone, successor liability may attach, and therefore this argument to dismiss should be rejected.

### B.    The Corporate Defendants Were Created by a *de facto* Merger

Facebook Defendants produced few details regarding the Corporate Defendants' operations or relationship. It is unclear why, how, or even if the entities acquired assets, such as the facebook.com domain name and website. If the Corporate Defendants acquired the Individual Defendants' interest in thefacebook.com URL and website, this transfer should be viewed as a *de facto* merger of the partnership TheFacebook.com a/k/a The Facebook ("TheFacebook.com"), which created and operated the facebook.com website, into the Corporate Defendants. Where the formation of the successor entity is the result of this type of consolidation, it is appropriate to find that the successor entity has assumed its predecessor's liabilities, as discussed below.

In determining whether to characterize an asset purchase as a *de facto* merger, Massachusetts courts consider: "[w]hether (1) there is a continuation of … management, personnel, physical location, assets, and general business operations [of the seller corporation]… whether (2) there is a continuity of shareholders... whether (3) the seller corporation ceases its ordinary business operations…and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations." *Cargill,* 676 N.E.2d at 818. However, "it is not necessary that all these factors be found for there to be a *de facto* merger." *Fletcher Cyclopedia* at § 7124.20. For example, in *Cargill*, the court considered the similarity of employees, location, and equipment between the companies, that the successor company assumed its predecessor's obligations, and that the predecessor ceased operations after its purchase. *Cargill*, 676 N.E.2d at 818-19. All of these

17

factors support a finding that TheFacebook.com partnership (expressly named in the original Complaint) merged into the Corporate Defendants. Thus, the Corporate Defendants are liable for their actions as TheFacebook.com.

> **C.**    **The Corporate Defendants are a Mere Continuation**

Alternatively, this Court can rely on the "mere continuation" theory of corporate successor liability. "[W]hen a business is incorporated and the newly formed corporation is a mere continuation of the predecessor, jurisdiction may be based on acts…of the predecessor." *Fletcher Cyclopedia,* § 4316. To determine whether a new corporate entity is a "mere continuation" of its predecessor, Massachusetts courts consider the "traditional indices of a 'continuation,'" which include "the continuity of directors, officers, and stockholders; and the continued existence of only one corporation after the sale of assets." *McCarthy v. Litton Indus. Inc.,* 570 N.E.2d 1008, 1013 (Mass. 1991).

The "mere continuation" by a successor is often found "where the owners of the selling entity set up the buyer with the specific purpose of continuing their business under a new form." *National Gypsum Co. v. Continental Brands Corp*, 895 F. Supp. 328, 336 (D. Mass. 1995). Under this doctrine, the new corporation is the same entity with a "new hat." Liability imposed on the new entity is justified because "in substance, if not in form" the two entities are identical. *McCarthy,* 570 N.E.2d. at 1012. For example, in *H.J. Baker & Bro., Inc. v. Orgonics, Inc.* 554 A.2d 196, 205 (R.I. 1989), the court found that evidence of a corporation and its successor sole proprietorship having the same officers, selling identical products, and employing mostly the same management and employees, supported the theory that the proprietorship was a "mere continuation."

The Corporate Defendants are a mere continuation of TheFacebook.com partnership. Between December 2003 and at least April 2004, the Individual Defendants operated as TheFacebook.com. During this time, they committed the unlawful acts ConnectU now seeks to rectify. They later formed Facebook, LLC and Facebook, Inc. The Corporate Defendants clearly were intended to continue the operations of their predecessor, TheFacebook.com partnership,

comprised of the Individual Defendants. As TheFacebook.com, the Individual Defendants performed the same services now provided by the Facebook, Inc. and Facebook, LLC. The principal officers and/or employees of Facebook, Inc. at formation were Mark Zuckerberg, Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and Eduardo Saverin, identical to the members of TheFacebook.com partnership. Further discovery will likely reveal that many of the original employees of TheFacebook.com are also employees, or have been employed by, the Corporate Defendants. Perhaps most importantly, TheFacebook.com partnership ceased to exist after its members shielded themselves by companies, thereby executing "a reorganization transforming a single company from one…entity into another." *McCarthy,* 570 N.E.2d. at 1012.

The Individual Defendants' actions satisfy three of the alternative exceptions to the rule of successor corporate liability. Therefore, the Corporate Defendants should be considered the same entity as TheFacebook.com partnership and liable for its actions and the actions of the Individual Defendants. ConnectU has so pleaded. Nothing more is required at this stage.

## VI.   NO CLAIM IS PREEMPTED BY CONNECTU'S COPYRIGHT CLAIM

### A.   <u>Defendants' Arguments are Baseless and Misleading</u>

Facebook Defendants' audacity in asserting preemption by the copyright claim reveals their desire to halt progress of this action by whatever means possible, no matter how feeble. In the pre-filing meet-and-confer, ConnectU warned Facebook Defendants that a preemption argument is frivolous, and that such a motion could only be to harass, delay, or needlessly increase litigation costs. Facebook Defendants responded by boldly asserting that "ample authority" supported their position. (Esquenet Decl., ¶ 6, Ex. A). Such "ample authority" never materialized in their motions. Facebook Defendants cite no authority for preempting any of ConnectU's state claims. In fact, they even admit that the First Circuit has no direct authority for preempting the breach of contract claim (Zuckerberg, Dkt. 18 at 9). Also, they could have made this argument long ago.

Here, Facebook Defendants grossly misstate the basis of ConnectU's claims they wish to preempt, then argue preemption. (MMH, Dkt. 17 at 7-9, Zuckerberg, Dkt. 18 at 9-10). Contrary

to Facebook Defendants' ellipses-filled, out-of-context "quotation," ConnectU did not allege that the entirety of Defendants' theft consisted of the Harvard Connection code (MMH, Dkt. 17 at 7). Tellingly, Facebook Defendants used Complaint ¶¶ 32 and 66 to support this disingenuous argument, even though the broader scope of their misappropriation was described in ¶ 21; ¶ 32 merely refers back to that description. Their citation to ¶ 66, which uses standard language to repeat previous allegations, ignores the whole of the claim contained in ¶¶ 66 - 72.

ConnectU alleges that in addition to copying the code, Facebook Defendants misappropriated and were enriched by "the basic idea for the Harvard Connection website, project, and enterprise, the Harvard Connection Code (including the database definitions), the website design and screens created to date, and the Harvard Connection user interface, as well as information regarding the website's business model and plan, various functionality and content, concepts, and the type of information that would be collected from users." (Complaint ¶ 21). Only some of this information is copyrightable. Because the unfair trade practices, unjust enrichment, and intentional interference with contractual and advantageous business relations claims are grounded in this universe of information stolen by the Facebook Defendants, they cannot be preempted by copyright law. With regard to breach claims, these are grounded in unfulfilled promises made by Zuckerberg, not on his unauthorized use of copyrighted source code. ConnectU therefore urges the Court to reject the preemption argument.

### B.    The Test for Copyright Preemption

The Copyright Act provides a two-prong test to determine if an action under state law is preempted. 17 U.S.C. § 301(b). The first prong requires that "the work of authorship in which rights are claimed must fall within the subject matter of copyright as defined by §§102 and 103 [of the Copyright Act]." *Data General*, 795 F. Supp. at 505. The second prong requires "that the state created right must be equivalent to one of the exclusive rights created by the Copyright Act." *Id.* This "extra elements" test asks whether the elements of a state law claim are equivalent to a copyright claim. In applying this test, courts examine the state claim to determine if it "requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution

20

or display." *Tingley Systems, Inc. v. CSC Consulting, Inc*., 152 F. Supp. 2d 95, 104-105 (D. Mass. 2001) (quoting *Data General Corp. v. Grumman Systems Support Corp*., 36 F.3d 1147, 1164 (1st Cir. 1994). If the court determines that an extra element is required, "then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Id.* To grant a motion to dismiss based on preemption, both prongs must be met. While Facebook Defendants acknowledge this requirement (MMH, Dkt, 17 at 7), they inexplicably address it for only the interference claim.

### 1.    The First Prong Is Not Met

A cursory reading of the Complaint clearly indicates that the state law claims are not directed **solely** to copyrightable subject matter. All of Facebook Defendants' cases deal solely with alleged improper use of copyrightable subject matter, where—unlike here—the first prong was indisputably met. *See, e.g., John G. Danielson, Inc. v. Winchester-Conant Properties., Inc.*, 186 F. Supp. 2d 1, 28 (D. Mass. 2002) (no question that the first prong was met, as architectural drawings are clearly copyrightable) (cited in MMH, Dkt. 17 at 7, 8).

Facebook Defendants attempt to broaden the reach of copyright preemption to noncopyrightable information. ConnectU alleges that Zuckerberg's knowledge and misappropriation of ConnectU's trade secrets included noncopyrightable elements, such as the basic idea for the Harvard Connection website, project, and enterprise, and information regarding the business model and plan. *See* 17 U.S.C. Sec 102(b) (copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery.") Thus, despite Facebook Defendants' selective reading of the Complaint, ConnectU pleads that Facebook Defendants misappropriated a body of knowledge beyond (though including) the Harvard Connection Code. Since that knowledge included proprietary and confidential information outside the scope of copyright protection, but within the scope of trade secret protection, Facebook Defendants failed to meet the first prong.

### 2. The Second Prong Is Not Met As the Claims Have Extra Elements

#### a) Unfair Trade Practices Claim

Under M.G.L. c. 93A, Facebook Defendants' conduct itself may be asserted as the extra element. *See Patricia Kennedy & Co. v. Zam-Cul Ent., Inc.*, 830 F. Supp. 53, 57 (D. Mass. 1993) (Chapter 93A claim charging more than use or copying of a logo was not preempted).

Chapter 93A, § 2 states in relevant part: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Here, Facebook Defendants' conduct, as alleged in the Complaint, is replete with instances of unfairness and deception, which are not elements of a copyright claim.

For instance, ConnectU's predecessors asked Zuckerberg to become involved with the overall enterprise of the Harvard Connection development team, and he agreed to do so. (*See, e.g.*, Complaint ¶¶ 21, 24-28, and 92). As such, he was entrusted with the core concepts of Harvard Connection. The responsibilities entrusted to Zuckerberg included, for example, completing the Harvard Connection code and helping to launch, promote, and operate ConnectU's website and business as a member of the team. (*See, e.g.*, Complaint ¶¶ 22, 30).

Despite this trust, Zuckerberg individually and together with the other Facebook Defendants immediately started secretly developing a competing social networking site, which they eventually launched as their own competing business. (Compliant ¶¶ 32, 33). At the same time, Defendant Zuckerberg continued to meet with ConnectU's predecessors and lead them on, all the while obtaining additional knowledge regarding their business model, enterprise, and plans. (Complaint ¶ 36). Such allegations of unfair and deceptive practices far exceed the elements of a copyright claim, and therefore this claim is not preempted.

#### b) Unjust Enrichment Claim

The elements of unjust enrichment include: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification; and (5) the absence of a remedy provided by law.'" *Dialogo, LLC v. Bauza*, 456 F. Supp. 2d 219, 227 (D. Mass. 2006). This Court has determined that the Copyright Act does not necessarily preempt an

unjust enrichment claim, even involving computer software. *See Portfolioscope, Inc. v. I-Flex Solutions Ltd.*, 473 F. Supp. 2d 252, 255 (D. Mass. 2007), where plaintiffs alleged that defendant "profit[ed] from publicly selling its FLEXCUBE product which [was] unlawfully derived from" the plaintiff's software. *Id.* The Court viewed this claim as including an element of "passing off" the plaintiff's work as defendant's own and, accordingly, found no preemption. *Id.*

Similarly, ConnectU has alleged that Facebook Defendants' use of the "Information and Procedures" (ConnectU's own work) allowed Facebook Defendants to launch the thefacebook.com website and to obtain, among other benefits that should have accrued to ConnectU, investors and advertisers. (Complaint ¶ 40). Applying the extra elements test to this claim, the element of Facebook Defendants' passing off the work of ConnectU as its own is distinct from the rights available under the Copyright Act. This claim also involves injustice and quasi-contract (see § VII, *infra*), which are not elements of a copyright claim. Thus, the unjust enrichment claim is not preempted.

### c)      Intentional Interference Claim

The elements of this claim are "(1) the existence of a contract from which the plaintiff might benefit; (2) defendant's awareness of the contract; (3) defendant's deliberate interference with the contract for an improper purpose or by improper means; (4) and damage suffered by the plaintiff by that interference." *Dialogo*, 456 F. Supp. at 227. Elements 1-3 are not part of a copyright claim.

Part of the knowledge ConnectU's predecessors shared with Zuckerberg, which he misappropriated for Facebook Defendant's benefit, was their business model. (Complaint ¶ 21, 32). Zuckerberg understood that the revenue driving this model would be derived from advertisers. ConnectU would sell advertising space on the website, emphasizing that the users of the website were the preferred demographic—students and recent college graduates—for many retailers, businesses, and other ventures. (Complaint ¶ 14). When Facebook Defendants misappropriated this business model and launched their competing website, they impeded ConnectU's ability to secure these business relationships with prospective advertisers. Here, the

23

gravamen of the allegations against Facebook Defendants is the tortious activity that prevented ConnectU from securing business relationships.  The Copyright Act does not preempt claims related to interference with such relationships.

### d)    Breach Of Contract And Breach Of Covenant

Facebook Defendants' arguments here are unclear.  They cite no authority.  They also confusingly argue that because the "breach of contract claim and breach of covenant of good faith and fair dealing claim are that Zuckerberg engaged in unauthorized use of software subject to a copyright, ConnectU's claim is preempted" (Zuckerberg, Dkt. 18 at 10), and that "to the extent these claims are not based on fraud, they are preempted." (*Id*. at 1).  These arguments must fail.

Contracts inherently have the additional element of a promise.  A recent Massachusetts case found that in the majority of cases it examined, courts have found that, because breach of contract claims involved breach of a promise, which is an extra element not required to prove a copyright claim, they were not preempted by copyright law.  *Lee v. Mt. Ivy Press, L.P.*, 827 N.E.2d 727, 737 (Mass. App. Ct. 2005).  Here, there is no reason to stray from the norm.  The breach claims are based on unfulfilled promises by Zuckerberg.  (Complaint ¶30).  They are not based on Zuckerberg's unauthorized use of copyrighted software, or on fraud.

## VII.    DEFENDANTS' ASSIGNMENT OF CLAIMS ARGUMENT MUST FAIL

Facebook Defendants attempt to revive, via Zuckerberg's motion, an argument they asserted in the first motion to dismiss (R.A. Dkt. 100), namely, that the fraud and breach of fiduciary duty claims cannot be asserted by ConnectU because they were unassignable by ConnectU's Founders, who were the original victims of Zuckerberg's fraud and breach of fiduciary duty.  (Zuckerberg, Dkt. 18 at 11).  Judge Collings did not address this argument in the R&R and Facebook Defendants failed to object to its exclusion.  Thus, Facebook Defendants should not be permitted to resurrect this argument now.  The R&R states that:

> Any party who objects to these proposed findings and recommendations must file a specific written objection thereto….The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The

24

> parties are further advised that the United States Court of Appeals
> for this Circuit has repeatedly indicated that failure to comply with
> Rule 72(b), Fed. R. Civ. P., shall preclude further appellate
> review."

R.A. Dkt. 283 at 68; *see also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150-151 (1st Cir. 1994) (objections are required to challenge findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings).

Further, Facebook Defendants oversimplify the law on this issue, as they did in the first motion to dismiss. Although stand-alone fraud and fiduciary claims may not be assignable, the claims here do not stand alone. Rather, they arise from and relate to the same actions giving rise to ConnectU's breach of contract and/or quasi-contract (unjust enrichment) claims.[17] These mixed contract-tort claims are assignable. *See Central Nat'l Gottesman, Inc. v. Rodman & Rodman*, *P.C.* No. 97-4791, 1998 Mass. Super. LEXIS 542, *6 (Super. Ct. Mass. Sept. 30, 1998) (in the context of a breach of fiduciary duty or contractual right, a fraud claim can survive, *citing Warren v. Para Rubber Shoe Co.*, 44 N.E. 112, 114 (Mass. 1896) ("where a relation has existed which involved the performance of certain duties for pay, and especially where that relation was of a fiduciary character, and there was a failure to perform those duties, the remedy has been held to survive.")).[18] The Supreme Judicial Court of Massachusetts held that a fraud-related breach of fiduciary duty claim survived the death of a would-be plaintiff, reasoning that "the act complained of is not a mere tort, but is a breach of a quasi contract, the claim being founded on the breach of a fiduciary relation, and the law implying a contract that a man will faithfully perform duties which he has undertaken." *Lovejoy v. Bailey*, 101 N.E. 63, 70 (Mass. 1913); *see also Rendek v. Sheriff of Bristol County*, 797 N.E.2d 891, 892-93 (Mass. 2003) (holding that quasi-contractual claims survive).

---

[17] Unjust enrichment and quasi-contract are the same thing. *Salamon v. Terra,* 477 N.E.2d 1029, 1031 (Mass. 1985) (underlying basis for damages in a quasi-contract case is unjust enrichment).
[18] Assignable claims are generally those that survive the death of the would-be plaintiff. *Piper v. Childs*, 195 N.E.2d 763, 766 (Mass. 1935) (a claim that does not survive is not assignable).

Such claims also may pass to a successor in interest.  *Lexington Savings Bank v. Linnehan*, No. 96-2890, 1998 Mass. Super. LEXIS 348, at *5 (Mass. Super. Feb. 9, 1998) (finding that the successor-in-interest held all of the rights of the former owner, including the right to sue for fraud).  Here, the claims arose in connection with the development of the Harvard Connection website (later renamed ConnectU), when—as the Complaint alleges—Zuckerberg defrauded his Harvard Connection team members, stole their idea, and started facebook.com.  The Founders assigned their IP rights and all claims, including the breach of contract, unjust enrichment, misappropriation, fraud, and breach of fiduciary duty claims, to the LLC they formed, ConnectU LLC, as to which all three of them became Members.  ConnectU LLC later merged into ConnectU, Inc., the shareholders of which are the original three individuals.  ConnectU has so pleaded.  (Complaint ¶ 42).

The cases on which Facebook Defendants rely also distinguish between fraud and fiduciary claims that solely damage persons, which may not be assignable, and fraud and fiduciary claims that cause damage to particular property.  *Bethlehem Fabricators v. H.D. Watts Co.*, 190 N.E. 828, 833-34 (Sup. Ct. Mass. 1934) (principle of nonassignability of fraud claim resulting in personal injury inapplicable where the damage is to specific property, here, rights under a contract).  In such cases, the action is not for the deceit alone, but for the damage caused by the deceit.  *Id*. at 834; *Baker v. Allen*, 197 N.E. 521, 524 (Sup. Ct. Mass. 1935) (fraud claims for damage to property assignable).  If a fraud claim can be valued, it represents damage to specific property.  *See Bethlehem Fabricators*, 190 N.E.2d at 834.[19]

The Complaint describes in detail how Zuckerberg's treachery damaged the harvardconnection.com website, rendering it incomplete and unusable, and how Zuckerberg's own website, facebook.com, destroyed the market for harvardconnection.com.  Such property damage

---

[19] Defendants may reply that some cases require damage solely to property.  Here, Zuckerberg's theft damaged the harvardconnection.com website and the Founders' contractual rights with him.  Such property was the sole reason for their relationship with Zuckerberg, and they assigned all such property to ConnectU.

can be valued "within the ordinary procedures of the court," *id.*, and ConnectU's expert will do so in due course, consistent with Massachusetts law. The Complaint also describes how Zuckerberg damaged the Harvard Connection Founders' contractual or quasi-contractual rights between them and him. Such damage can also be valued, and ConnectU's expert will do so, consistent with Massachusetts law.

For these reasons, even if Facebook Defendants are permitted to argue that the fraud and breach of fiduciary duty claims are not assignable, these arguments are not viable. Harvard Connection's Founders properly assigned the fraud and fiduciary claims to ConnectU, and ConnectU has the right to enforce such claims against Zuckerberg and recover for the property damage he caused.[20]

## VIII.   CONNECTU ADEQUATELY PLEADED ALL CLAIMS

### A.   Legal Standard Under Fed. R. Civ. P. 12 (b)(6) Favors ConnectU

A motion to dismiss under Rule 12(b)(6) is subject to "rigorous standards," and may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215 (1st Cir. 2000). When considering a Rule 12(b)(6) motion, a court "should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir. 1996). The court should accept the well-pleaded facts in the Complaint as true and construe those facts in a light most favorable to the plaintiff's case. *Chongris v. Board of Appeals of Andover*, 811 F.2d 36, 37 (1st Cir. 1987). Moreover, the court must accept as true all well-pleaded factual averments and indulge all reasonable inferences in the plaintiff's favor. If the facts contained in the Complaint, viewed in the most favorable light, justify recovery under any applicable legal theory, the motion to dismiss must be denied. *See Calderón-Ortiz v. Laboy-Alvarado*, 300 F.3d 60, 63 (1st Cir. 2002).

---

[20] Alternatively, the Founders can assert such claims within one year, under the Renewal Statute.

Where the court cannot say that the plaintiff has no viable theory because the evidence is not yet developed and it is not yet clear what facts will emerge, the motion must be denied. *Rosa, 214 F.3d* at 215-16. "The method of Rule 12(b)(6) requires courts . . . to resolve all realistic possibilities in the pleader's favor. At the Rule 12(b)(6) stage, then, it is enough for a plaintiff to sketch a scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim. This sets the bar quite low . . . ." *Garrett v. Tandy Corp.*, 295 F.3d 94, 105 (1st Cir. 2002) (internal citations omitted).

### B.    Rule 8, Not Rule 9, Governs All Claims Except Fraud

Facebook Defendants argue that ConnectU's claims for Trade Secret Misappropriation (Count 2), Breach of Contract (Count 3), Breach of Implied Covenant of Good Faith and Fair Dealing (Count 4) , M.G.L. 93A Unfair Trade Practices (Count 5), Breach of Fiduciary Duty (Count 6), Unjust Enrichment (Count 7), Intentional Interference (Count 8), and Fraud (Count 9) were not sufficiently pleaded. (*See, e.g.,* Corporate, Dkt 16 at 5-7; MMH, Dkt. 17 at 10-18; Zuckerberg, Dkt. 18 at 4-5, 8-9, 11-12). This argument is disingenuous at best. ConnectU pleaded each element of each claim and asserted facts supporting those elements. Defendants had no trouble answering the same claims in October 2005. Moreover, the appropriate remedy for failure to state a claim is not dismissal, but leave to amend. *Santiago-Marrero v. U.S.*, 61 Fed. Appx. 718, 720 (1st Cir. 2003) (unpublished decision); 2 James Wm. Moore et al., *Moore's Federal Procedure*, § 12:34[1][c] at n. 16.4 (2006).

Fed. R. Civ. P. 8(a)(2), which governs all but the fraud claim, states that plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that a complaint does not need detailed facts, only facts sufficient to give a defendant fair notice of the claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Leatherman v. Tarrant Cty. Narcotics Intell. and Coordination Unit*, 507 U.S. 163, 168 (1993).

Facebook Defendants argue that the heightened pleading standard of Fed. R. Civ. P. 9 applies to all of ConnectU's claims because each claim is "resting on an assertion of fraud." (Zuckerberg, Dkt. 18 at 4-5). Though Defendants have never made this argument before, and

assuming this is an accurate statement of the law, they fail to explain how or why ConnectU's claims rest on Zuckerberg's fraud. In fact, they do not. The trade secret, breach of contract, and good faith and fair dealing claims do not rely solely on Defendant Zuckerberg's deception, but also on his theft, dissemination and use of ConnectU's protected "Information and Procedures," intentional failure to perform, bad faith and unfair dealing, and his failure to fulfill a fiduciary duty to ConnectU.

ConnectU need not prove facts rising to the level of fraud to prevail on these claims. *See, e.g., Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000) (listing the "few specific categories of cases" to which the heightened pleading requirement applies; *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.* 958 F.2d 15, 17 (1st Cir. 1992) (to plead a **breach of contract** claim, plaintiff need only set forth a generalized statement of facts from which defendant can frame a responsive pleading); *Pearce v. Duchesneau Group, Inc.*, 392 F. Supp. 2d 63, 69 (D. Mass. 2005) (plaintiff sufficiently pled a claim for breach of implied covenant of **good faith and fair dealing** where plaintiff sufficiently pled the existence of the contract); *Ecological Fibers, Inc. v. Kappa Graphic Board, B.V.*, 345 F. Supp. 2d 13, 16 (D. Mass. 2004) (applying liberal generalized pleading standard to find plaintiff sufficiently pled claim for **unfair business practices**); *Jon-Don Prods., Inc. v. Malone*, No. Civ. 02-429, U.S. Dist. 2003 U.S. Dist. LEXIS 5957, *5 (D.N.H. April 10, 2003) (applying liberal pleading standards to find that plaintiff sufficiently pled claim for **trade secret misappropriation**). Facebook Defendants cite no authority to the contrary.

"While defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading." *Langadinos*, 199 F.3d at 72-73. ConnectU's Complaint is not bare bones. In 104 paragraphs, it tells a story that gives Facebook Defendants more than sufficient notice of the claims against them. They had no difficulty answering the Amended Complaint in the related action, which contained virtually identical facts and claims. (*See* Answer, R.A. Dkt. 14). If

anything, ConnectU's new Complaint contains more facts than the Amended Complaint.  (*See* Complaint, ¶¶ 38, 39).

### C.    ConnectU Adequately Pleaded Trade Secret Misappropriation

ConnectU's claim under M.G.L. c. 93 § 42 is well pleaded against all Defendants. Initially, ConnectU notes that it referenced c. 266, § 30, the criminal statute, because Chapter 93, the civil statute, expressly adopts and incorporates the definition of "trade secret" found in § 30. (*See* note 16, *supra*). Thus, Facebook Defendants' argument that § 30 does not provide a private right of action (MMH, Dkt. 17 at 10) is irrelevant.  In fact, ConnectU's citation of § 30 shows that ConnectU more-than-adequately pleaded this claim, as that detail was unnecessary under the notice pleading standard.

#### 1.    Elements of Pleading for Misappropriation of a Trade Secret

Defendants correctly note that to plead a claim for trade secret misappropriation, ConnectU must allege trade secret ownership, reasonable steps to protect that secret, and that Facebook Defendants used improper means to acquire and use it.  (*See* MMH, Dkt. 17 at 10).  Facebook Defendants do not argue that ConnectU failed to allege these elements, but that ConnectU's secret Information and Procedures (Complaint ¶ 21) do not qualify as a trade secret.  (MMH, Dkt. 17 at 11).  This argument on the merits is inappropriate at the pleadings stage.

#### 2.    ConnectU Made All Necessary Misappropriation Allegations

ConnectU made all necessary factual allegations to withstand a Fed. R. Civ. P. 12(b)(6) challenge to its trade secret misappropriation claim.  Specifically, ConnectU described the nature and scope of its trade secret in ¶ 21 of the Complaint.  Facebook Defendants do not even attempt to show why or how this allegation is not sufficient under Fed. R. Civ. p. 8.  At least ¶ 21 contains allegations to show that ConnectU took reasonable steps to protect its trade secret.  At least ¶¶ 21, 32, and 38-41 allege that **all** Facebook Defendants used improper means to acquire and use the trade secret, and/or knew the trade secret was acquired improperly, and benefited from that use. Paragraphs 51-57 summarize and reinforce the detailed allegations, and allege each element of the

trade secret misappropriation claim.  Facebook Defendants cannot fairly argue that they are not on notice of this claim.

### 3.    *Facebook Defendants' Cases Favor ConnectU*

Facebook Defendants' own cases support ConnectU's position.  For example, contrary to Facebook Defendants' citation, the *Moore v. Marty Gilman, Inc.*, 965 F. Supp. 203, 216 (D. Mass 1997), decision did not hold that a "combination" cannot be a trade secret.  The decision did not even use the word "combination."  Rather, on summary judgment, that court was not persuaded that ideas for altering the size and materials for a football were sufficiently original, holding "[a]ttaching the label 'compilation' to **this** self-evident list of items that needed improvement does not transform the list into a trade secret."  *Id.* at 216 (emphasis added, the term emphasized by ConnectU was entirely omitted from Facebook Defendants' citation).  The court did not hold that **no** compilation could constitute a trade secret, nor could it, as Massachusetts expressly recognizes compilations as trade secrets.  M.G.L. c. 93 § 42; *Picker Int'l Corp. v. Imaging Equipment Services.*, 931 F. Supp. 18, 38 (D. Mass 1995); *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 260 N.E.2d 723, 729 (Mass. 1970).  *Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 100 (D. Mass 1999), is similarly unavailing to Facebook Defendants.  There, the plaintiff itself alleged that the purportedly secret trademark "was used over a wide area" before plaintiff engaged in negotiations with defendant.  Accordingly, the court held that plaintiff's later behavior did not restore the trade secret status.  Here, ConnectU has pleaded no allegation that it disseminated its trade secret so that it lost its trade secret status.

Facebook Defendants further show that their motions are a delay tactic by arguing that ConnectU's Complaint fails to allege that its trade secret provided a competitive advantage.  (MMH, Dkt. 17 at 11).  But, as Facebook Defendants know and note, that is not part of the **pleading** requirements.  (*See* MMH, Dkt. 17 at 10).  In any event, ConnectU's allegations in at least ¶¶ 23, 32, and 38-41 detail how the trade secrets gave ConnectU a market advantage, and how Defendants' misappropriation gave Defendants an unfair and illicit advantage.

Facebook Defendants' citation of *Curtis-Wright Corp. v. Edel-Brown Tool & Die* Co., 407 N.E.2d 319 (Mass. 1980), is similarly inapposite. While finding that a defendant must have both notice that the information is a trade secret and that the source of the information was not at liberty to disclose it, the court concluded that "it has been recognized that 'frequently the two facts are mutually dependent and notice of the one is also notice of the other." *Id.* at 323 (internal citations omitted). "Thus, if the actor knows (or should know) that the information proffered to him by one person is the trade secret of another he is put on inquiry as the former's authority to disclose the information." *Id.* (internal footnote and citation omitted). In other words, the co-Defendants had a duty to question Zuckerberg about his use of ConnectU's trade secrets. ConnectU also has the right to depose each of the Facebook Defendants to find out who knew what, and when. *See Raytheon Co. v. Continental Cas. Co.*, 123 F. Supp. 2d 22, 33 (D. Mass. 2000) (details exceeding the pleading requirement should be obtained through discovery).

Finally, Facebook Defendants' reliance on *Data General Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 340, 357, 360 (D. Mass 1993), is puzzling, as the *Data General* court, considering post-trial motions, simply repeated the standard for trade secret misappropriation. In contrast to Facebook Defendants' arguments (MMH, Dkt. 17 at 13), that court said nothing about a Rule 12(b)(6) motion for failure to state a trade secret claim. ConnectU has alleged facts on information and belief regarding all Defendants. Evidence, if any, that any Defendant was not aware of the secret nature of ConnectU's Information and Procedures can be presented at trial.

ConnectU's misappropriation of trade secrets claim was adequately pleaded under Fed. R. Civ. P. 8 and Facebook Defendants' motions should be denied.

### D.    ConnectU Adequately Pleaded Breach of Contract

Zuckerberg argues that the breach of contract claim asserted against him fails to identify an enforceable contract. (Zuckerberg, Dkt. 18 at 8-9). Whether a contract exists is an issue of fact for a jury. *David J. Tierney Jr. Inc v. T. Wellington Carpets, Inc.*, 392 N.E.2d 1066, 1068 (Mass. App. Ct. 1979). On a motion to dismiss, it is only proper to consider whether a plaintiff has made allegations sufficient to allow a jury to make that determination. ConnectU has adequately

pleaded a breach of contract claim against Defendant Zuckerberg in at least ¶¶ 17, 20, 24, 26-31, 36-38, and 41.  All of these detailed factual allegations are summarized and reiterated in ¶¶ 58-61.

ConnectU alleged each element of a breach of contact claim, including: (1) the existence of an agreement supported by valid consideration, detailing how Zuckerberg was asked to and agreed to complete a computer program and explaining how all of the team members would put in sweat equity and be partners in an exciting new company; (2) showing that Zuckerberg was able to perform, and in fact represented that he had performed; (3) Zuckerberg's breach and launch of a new site effectively precluded him from partnering with ConnectU; and (4) the severe damage to ConnectU's ability to launch and gather market strength while school was still in session.  *See Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir. 1996) (detailing the pleading requirements for a breach of contract claim).

Only now Zuckerberg complains that he did not know the duration of the agreement, the terms of the agreement, or the specific work to be done under the agreement.  (Zuckerberg, Dkt. 18 at 9).  At the time the contract was formed, and in ConnectU's Complaint, there is no confusion about Zuckerberg's responsibilities vis-à-vis ConnectU or ConnectU's obligations to Zuckerberg.  As noted in the Complaint, Zuckerberg knew that the Founders needed the website finished long before June 2004 (*see, e.g.*, Complaint ¶ 20), Zuckerberg knew the terms of the agreement (*see, e.g.*, ¶ 28, 29), and Zuckerberg understood and accepted the specific work to be done (*see, e.g.*, ¶ 29 and 31).

ConnectU's breach of contract claim was adequately pleaded under Fed. R. Civ. P. 8, and Facebook Defendants' motions should be denied.

###    E.    ConnectU Adequately Pleaded Breach of Implied Covenant

Zuckerberg argues that if ConnectU cannot establish a contract, ConnectU's claim for breach of implied covenant of good faith and fair dealing will also fail.  (Zuckerberg , Dkt. 18 at 9).  As detailed above (§ VIII.D), ConnectU adequately pleaded the elements of a claim for breach of contract.  Moreover, ConnectU pleaded that Zuckerberg knowingly violated the contract (*see,*

*e.g.*, Complaint ¶¶ 31, 32, 36,37, 63, and 64), and obtained benefits at the expense of ConnectU that damaged ConnectU.  (*See, e.g.*, Complaint ¶¶ 20, 23, 28, 30, 37, 40, 41, and 65).

ConnectU's breach of implied covenant of good faith and fair dealing claim was adequately pleaded under Rule 8 and Facebook Defendants' motions should be denied.

### F.    ConnectU Adequately Pleaded M.G.L. 93A—Unfair Trade Practices

Facebook Defendants contend that ConnectU may not assert M.G. L. c. 93A § 9 and § 11 simultaneously.  (*See, e.g.*, MMH, Dkt. 17 at 14).  This contention directly contravenes Fed. R. Civ. P. 8(e)(2), which allows a party to "state as many separate claims or defenses as a party has regardless of consistency . . . ."  *See also In re Hemingway Transp., Inc.*, 993 F.2d 915, 932 n.22 (1st Cir. 1993) (pleadings should be liberally construed and plaintiffs have the right to plead alternative and seemingly inconsistent claims); *Division Records, LLC v. Q Records and QVC, Inc.*, No. Civ. A. 99-10828-GAO, 2000 U.S. Dist. LEXIS 1773, *23 (D. Mass. Feb 11, 2000) (plaintiff's claims were "an acceptable example of pleading alternative and potentially inconsistent theories of recovery").  Facebook Defendants cite no authority that Rule 8(e)(2) does not apply here.[21]

Facebook Defendants also argue that ConnectU does not qualify as a "consumer," as defined in § 9.  (*See, e.g.*, MMH, Dkt 17 at 14-15).[22]  While ConnectU pleaded that it always has been a for-profit business (Complaint ¶ 16), it also pleaded that Mr. Narendra and Messrs. Winklevoss personally engaged Defendant Zuckerberg's services.  (*See, e.g.*, Complaint ¶ ¶ 17, 24-27).  Under Rule 8, these allegations are sufficient to support, as an alternative legal theory, ConnectU's claim under M.G. L. c. 93A § 9.

---

[21] They also argue that ConnectU cannot assert both trade secret misappropriation under M.G.L. c. 93 and breach of confidence under California law.  (*See e.g.*, Zuckerberg, Dkt. 13 at 13-15).  Under Fed. R. Civ. P. 8(e)(2), ConnectU is free to plead these claims in the alternative.  Moreover, Defendants argue that ConnectU cannot assert the latter claim because the relevant acts occurred in Massachusetts.  (*Id.* at 13).  This is an inappropriate argument on a motion to dismiss.  *Court-Appointed Receiver for Lancer Management Group L.L.C. v. Taubman*, No. 05-60199, 2007 U.S. Dist. LEXIS 21702, *7 (S.D. Fla. March 27, 2007) (on a motion to dismiss, "[i]t is premature to undertake a conflict of laws analysis at this stage of the proceeding.").

[22] Defendants do not argue that ConnectU failed to plead the other M.G.L c. 93A § 9 elements.

Facebook Defendants next attempt to show that ConnectU did not properly allege facts in support of its § 11 claim. Again, they confuse the pleading standard with the proof required on the merits. (*See, e.g.*, MMH, Dkt. 17 at 15, detailing the requirements to "**recover** under this statute") (emphasis added). At this stage, ConnectU need only give Defendants fair notice of the claims against them. ConnectU has done so by alleging that: (1) the claim was asserted by one business, ConnectU, the successor to Harvard Connection (Complaint ¶ 16), against another business, Facebook, Inc. and Facebook, LLC, the successors to the Thefacebook.com partnership (Complaint ¶¶ 32, 38, 39); (2) ConnectU is and was engaged in trade or commerce (¶ 16); (3) ConnectU has lost money or property (¶¶ 40-42), and (4) Defendants caused such loss by unfair or deceptive acts (¶ 40). Contrary to Facebook Defendants' claim that this is merely a dispute between employees or partners in the same venture (MMH, Dkt. 17 at 18-19), the Complaint alleges that the Individual Defendants operated as a *de facto* partnership, which is responsible for the unfair and deceptive acts. These allegations are sufficient to give Facebook Defendants fair notice of the claims against them, and the motions should be denied.

Finally, Facebook Defendants' contention that ConnectU's Chapter 93A claim is subject to Fed. R. Civ. P. 9(b) is unavailing. (*See, e.g.*, Corporate, Dkt. 16 at 5-7, MMH, Dkt. 17 at 13-14). If a claim is not identified in Fed. R. Civ. P. 9 as one requiring heightened pleading, then notice pleading under Fed. R. Civ. P. 8 is appropriate. *Swierkiewicz,* 543 U.S. at 513.

Importantly, the Massachusetts Appeals Court has held that the "concept of 'unfair or deceptive acts or practices' made actionable by G.L. c. 93A 'goes far beyond the scope of the common law action for fraud and deceit'" (citation omitted) and does not necessarily require the pleading specificity set forth in Fed. R. Civ. P. 9(b) in averments or fraud, mistake, duress or undue influence.[23] *See U.S. Funding, Inc. of Am. v. Bank of Boston Corp.*, 551 N.E.2d 922, 925-26 (Mass. App. Ct. 1990) (reversing dismissal of Complaint); *see also Li'l Peach of Massachusetts, Inc. v. Prendergast*, No. 95-2855, 1996 Mass. Super. LEXIS 356, *5 n.4 (Mass.

---

[23] The language of Mass. R. Civ. P. 9(b) is more inclusive than Fed. R. Civ. P. 9(b).

Super. Ct. Aug. 15, 1996). The claim against Facebook Defendants for violation of Chapter 93A is not predicated solely on allegations of fraud and deceit, and reaches a broader scope of conduct. The Complaint alleges that the Facebook Defendants engaged in a pattern of deceptive conduct over a series of months that led to the misappropriation of valuable ideas and opportunities and tricked the plaintiff's into a costly delay. Much less has supported c. 93A claims.

ConnectU's M.G.L. c. 93A claim was adequately pleaded under Fed. R. Civ. P. 8 and Fed. R. Civ. P. 10(b) (*see* § VIII.K *infra*) and Facebook Defendants' motions should be denied.

### G.    ConnectU Adequately Pleaded Breach of Fiduciary Duty

Contrary to Facebook Defendants' position (Zuckerberg, Dkt. 18 at 11), a claim for breach of fiduciary duty is to be pleaded under Rule 8, not Rule 9, as there are no allegations that ConnectU's fiduciary duty claim is based in fraud. Moreover, ConnectU adequately pleaded the elements of this claim, namely, (1) the existence of a duty (*see, e.g.,* Complaint ¶¶ 17, 19-21, 28-30 , 92); (2) the breach of that duty (*see, e.g.,* ¶¶ 31, 32, 36, 38, 92); (3) and damages from the breach (*see, e.g.,* ¶¶ 23, 37, 40, 41).[24] ConnectU's breach of fiduciary duty claim was adequately pleaded under Fed. R. Civ. P. 8 and Facebook Defendants' motions should be denied.

### H.    ConnectU Adequately Pleaded Unjust Enrichment

Facebook Defendants argue both that unjust enrichment is only available to plaintiffs who lack adequate remedies at law (MMH, Dkt. 17 at 17),  and that the Complaint lacks appropriate factual allegations.  (Corporate, Dkt. 16 at 5).  Regarding the first contention, Facebook Defendants offer no authority that precludes a plaintiff from asserting an unjust enrichment claim along with other claims for which monetary damages are available.  Indeed, ConnectU did plead in connection with its unjust enrichment claim that ConnectU has no adequate remedy at law. (Complaint ¶ 86).  Accordingly, ConnectU's Complaint requests appropriate equitable relief, such as constructive trust.  (*See* Complaint, Request for Relief, p.19, ¶ G).

---

[24] Contrary to Facebook Defendants', Paragraph ¶ 92 of the Complaint is expressly part of this claim via ¶ 73, which "repeats and realleges each and every allegation set forth in this Complaint."

Similarly, ConnectU adequately pleaded each element of its unjust enrichment claim. *Massachusetts v. Mylan Labs*, 357 F. Supp.2d 314, 324 (D. Mass 2005) (identifying elements of claim). Specifically, ConnectU asserted a benefit conferred upon the Facebook Defendants (*see, e.g.*, Complaint ¶¶ 21, 25, 32, 38, 40, and 41), and that Facebook Defendants appreciated, accepted, and retained the benefit (*see, e.g.*, ¶¶ 14, 21, 22, 28, 29, 31, 32, 38-41, and 92). All of these factual allegations are summarized and reinforced in Complaint ¶¶ 81-86. ConnectU's unjust enrichment claim was adequately pleaded under Fed. R. Civ. P. 8 and Fed. R. Civ. P. 10(b) (see § VIII.K, *infra*) and Facebook Defendants' motions should be denied.

## I.    ConnectU Adequately Pleaded Its Intentional Interference Claim

Facebook Defendants argue that ConnectU improperly combined two claims (MMH, Dkt, 17 at 18-19) and allegedly failed to notify them of the particular claims against each Defendant. (Corporate, Dkt. 16 at 6). Facebook Defendants' reading of the Complaint is overly formulistic. Because the tort of intentional interference with prospective contract relations and the tort of intentional interference with advantageous business relations are virtually identical, it is appropriate to plead them together. *See Mill-Bern Assocs., Inc. v. Dallas Semiconductor Corp*., No. CA 98-1435, 2002 Mass. Super. LEXIS 181, *16-17 (Mass. Super. Ct. 2002). This manner of pleading in no way fails to notify Facebook Defendants of the claims against each Defendant. ConnectU's intentional interference with prospective contractual and advantageous business relations claim was adequately pleaded under Fed. R. Civ. P. 8 and Fed. R. Civ. P. 10(b) (see § , VIII.K, *infra*) and Facebook Defendants' Motions should be denied.

## J.    ConnectU Pleaded Fraud with Sufficient Particularity

The primary purpose of Fed. R. Civ. P. 9(b) is to give a defendant adequate notice of a claim of fraud. *See Howard v. Cycare Sys., Inc.*, 128 F.R.D. 159, 163 (D. Mass. 1989) (citation omitted). The facts alleged by ConnectU squarely notify Zuckerberg of the conduct that forms the heart of ConnectU's fraud claim against him, thereby enabling Zuckerberg to prepare his defense. Indeed, Zuckerberg had no difficulty in answering the fraud claim—or any of these claims—in the Amended Complaint. (R.A. Dkt. 14.)

To plead a claim for fraud with sufficient particularity, ConnectU was required to plead the time, place, and content of the fraudulent statements or acts, and ConnectU's reliance upon them. *Howard*, 128 F.R.D. at 162. It did so. ConnectU alleged that the fraudulent statements and acts were made on specific dates in November 2003, December 2003, and January 2004 (*see, e.g.*, Complaint ¶¶ 29, 31, and 92), which is acceptable Fed. R. Civ. P. 9 pleading. *See Kuney Int'l v. DiIanni*, 746 F. Supp. 234, 235-36, 237 (D. Mass. 1990) (complaint stating the month and year of the misrepresentations was sufficient under Fed. R. Civ. P. 9(b)). The Complaint alleges that the place was Harvard University, Cambridge Massachusetts, both in person and via email. (*See, e.g.*, ¶¶ 3, 12, 17, 29, 31, 38, and 92). *See Howard*, 128 F.R.D. at 161, 163 (complaint stating that some misrepresentations were made in Memphis, Tennessee satisfied Fed. R. Civ. P. 9(b)).

ConnectU has provided further details of these events elsewhere. (*E.g.*, R.A. Dkt. 107, 175). As Facebook Defendants argue, courts may take judicial notice of earlier court proceedings when considering a Motion to Dismiss. (Corporate, Dkt. 16 at 1, n. 1).

Zuckerberg's entire Rule 9(b) argument is that "[n]o express statement is identified with any particularity whatsoever." (Zuckerberg, Dkt. 18 at 6). Zuckerberg apparently did not read the Complaint carefully, as there are numerous such allegations. *See, e.g.*, Complaint ¶¶ 17, 20-26, 28-38, 40, 41, and 92. Paragraphs 91-97 summarize and reiterate the allegations of fraud against Zuckerberg.

These and other allegations in the Complaint, taken together, plainly give Zuckerberg sufficient notice under Fed. R. Civ. P. 9(b) of the fraud claim against him and allow him to prepare a defense. Accordingly, Zuckerberg's motion to dismiss Count 9 should be denied.

### K.    ConnectU Satisfied the Requirements of Fed. R. Civ. P. 10(b)

Facebook Defendants argue that ConnectU's claims directed to all Defendants fail to satisfy Fed. R. Civ. P. 10(b) because ConnectU has engaged in "shotgun pleading" and "simply

38

'group pled' conclusory statements against all Defendants." (Corporate, Dkt. 16 at 6). Facebook Defendants' cases are distinguishable, and ConnectU's pleading complied with Rule 10(b).[25]

Rule 10(b) does not forbid, as the Facebook Defendants argue, pleading a claim against multiple defendants, especially where ConnectU alleges that the Facebook Defendants are jointly and severally liable. Indeed, in the two cases they cited, the Rule 10(b) violations were not because the plaintiff alleged claims against multiple defendants. Rather, those cases involved situations where the plaintiff pleaded multiple claims for relief in a single count, when the plaintiff should have separated the claims into distinct counts. *See Anderson v. Bd. of Trustees*, 77 F.3d 364, 366 (11th Cir. 1996) (plaintiff violated Rule 10(b) by including charges that the defendant violated the First, Fourth, Fifth, Thirteenth, and Fourteenth Amendments of the U.S. Constitution in each of the six counts of its Complaint); *Three D Depts., Inc. v. K-Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill. 1987) (plaintiff violated Rule 10(b) by including claim for breach of contract and breach of implied covenant of good faith and fair dealing in same count).

Here, each of ConnectU's five counts asserted against all Facebook Defendants pleads only one claim per count. As such, ConnectU's pleadings satisfy Rule 10(b). Moreover, Rule 10(b) only requires "separate" pleading where "a separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b). All of ConnectU's claims are clearly presented and all Facebook Defendants are aware of the claims asserted against them. *See Pullen v. NorthStar Presidio Mgmt. Co.* No. 98-771, 1998 U.S. Dist. LEXIS 15938, *6 (D. Conn. Sept. 11, 1998) ("given that the Complaint is already sufficiently clear as to whom is being sued, and on what grounds, it would only serve to cause unnecessary delay to require plaintiff to re-plead each count separately as to each defendant.").

---

[25] "Each claim founded on a separate occurrence . . . shall be stated in a separate count." Fed. R. Civ. P. 10(b).

## IX.    CONCLUSION

For these reasons, ConnectU, Inc. respectfully urges the Court to deny Facebook Defendants' motions in their entirety, thereby putting an end to their campaign of delay. However, in the event that the Court is persuaded by any argument made by any Facebook Defendant, ConnectU hereby requests that rather than dismissal, the Court grant ConnectU leave to amend.

Dated: May 7, 2007                           Respectfully submitted,

                                             /s/ John F. Hornick_____

Daniel P. Tighe (BBO# 556583)               John F. Hornick, admitted *pro hac vice*
Scott McConchie (BBO# 634127)               Margaret A. Esquenet, admitted *pro hac vice*
GRIESINGER, TIGHE, &  MAFFEI, L.L.P.        Meredith H. Schoenfeld, admitted *pro hac vice*
Boston, MA  02110                           Daniel P. Kaufman (BBO#663535)
Telephone:  (617) 603-0918                  FINNEGAN, HENDERSON, FARABOW,
Facsimile:  (617) 542-0900                      GARRETT & DUNNER, L.L.P.
dtighe@gtmllp.com                           901 New York Avenue, N.W.
smcconchie@gtmllp.com                       Washington, D.C.  20001
                                            Tel: (202) 408-4000
                                            Fax: (202) 408-4400

                                            Attorneys for Plaintiff
                                            ConnectU, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 7, 2007.

                                            /s/John F. Hornick _____
                                            John F. Hornick