# EXHIBIT A

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, LLC,<br><br>      Defendants. | Civil Action No. 1:07-CV-10593-DPW |

**DEFENDANTS MOSKOVITZ, MCCOLLUM AND HUGHES' REPLY TO CONNECTU'S OPPOSITION TO MOTION TO DISMISS**

OHS West:260232295.1

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................- 1 -

II.     LEGAL ARGUMENT ...........................................................................- 2 -

    A.      The Defendants' Motions Are Not Untimely ................................- 2 -

    B.      ConnectU's Claims Do Not "Carry Over," Thereby Precluding Relief
        Under The Statute Of Limitations ................................................- 3 -

        1.      ConnectU cannot rely upon equitable tolling ......................- 3 -

        2.      The Renewal Statute Does Not Save ConnectU's Claims ...................- 6 -

    C.      ConnectU Does Not Explain How Claims Satisfy Fed.R.Civ.P. 8 .................- 8 -

        1.      Trade Secret Misappropriation ...........................................- 9 -

        2.      Unfair Trade Practices ....................................................- 11 -

        3.      Tortious Interference With Business Relations ................- 12 -

        4.      Unjust Enrichment ........................................................- 12 -

        5.      ConnectU's Fifth, Seventh And Eighth Claims For Relief Are
        Preempted By The Copyright Act ....................................- 13 -

III.    CONCLUSION ...................................................................- 14 –

OHS West:260232295.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Baldwin County Welcome Ctr.* v. *Brown*,
   466 U.S. 147 (1984) ......................................................................................... 3

*Burnett* v. *N.Y. Central R.R. Co.*,
   380 U.S. 424 (1965) ......................................................................................... 4

*Chao* v. *Xanadu Boutique, Inc.*,
   380 F. Supp. 2d 134 (E.D.N.Y.,2005) ............................................................. 4

*Delaney* v. *Matesanz*,
   264 F.3d 7 (1st Cir. 2001) ............................................................................... 3

*Donnelli* v. *Peters Securities Co.*,
   2002 U.S. Dist. LEXIS 16305 (D. Ill. 2002) .................................................. 2

*Gaia Techs., Inc.* v. *Reconversion Techs., Inc.*,
   93 F.3d 774 (Fed. Cir. 1996) .......................................................................... 6

*Irwin* v. *Dep't of Veterans Affairs*, ,
   498 U.S. 89 (1990) .......................................................................................... 3

*JSB Indus.* v. *Nexus Payroll Servs., Inc.*,
   463 F. Supp. 2d 103 (D. Mass. 2006) ............................................................. 9

*Kodadek* v. *MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ...................................................................... 14

*Lujan* v. *Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................... 7

*MHI Shipbuilding LLC* v. *Nat'l Fire Ins. Co.*,
   286 B.R. 16 (D. Mass.2001) ........................................................................... 6

*Mass. Eye & Ear Infirmary* v. *QLT Phototherapeutics, Inc.*,
   412 F.3d 215 (1st Cir. 2005) ......................................................................... 10

*Massachusetts* v. *Mylan Labs*,
   357 F. Supp. 2d 314 (D. Mass. 2005) ........................................................... 12

ii

## TABLE OF AUTHORITIES
### (continued)

*Micromuse, Inc.* v. *Micromuse, PLC*,
  304 F. Supp. 2d 202 (D. Mass. 2004) ................................................................. 12

*Moore* v. *Marty Gilman, Inc.*,
  965 F. Supp. 203 (D. Mass 1996) ........................................................................ 10

*Neverson* v. *Farquharson*,
  366 F.3d 32 (1st Cir. 2004) ............................................................................. 3, 4

*Petricca Dev. Ltd. P'shp* v. *Pioneer Dev. Co.*,
  214 F.3d 216 (1st Cir. 2000) ............................................................................. 11

*Pramco, LLC* v. *San Juan Bay Marina, Inc.*,
  435 F.3d 51 (1st Cir. 2006) ............................................................................. 4, 5

*Precision Instrument Mfg. Co.* v. *Automotive Maint. Mach. Co.*,
  324 U.S. 806 (1945) .......................................................................................... 3

*Rumford Pharmacy, Inc.* v. *City of E. Providence*,
  970 F.2d 996 (1st Cir. 1992) ................................................................................ 9

*Stelco Holding Co.* v. *U.S.*,
  42 Fed. Cl. 101 (Fed.Cl. 1998) ............................................................................ 3

*Stone* v. *White*,
  301 U.S. 532 (1937) ........................................................................................ 12

*Swartz* v. *Schering-Plough Corp.*,
  53 F. Supp. 2d 95 (D. Mass. 1999) ....................................................................... 9

*Tucker* v. *Cain*,
  *2000* WL. *177958* (5th Cir. 2000) ....................................................................... 3

### STATE CASES

*Duff* v. *Zonis*,
  99 N.E.2d 47 (Mass. 1951) ................................................................................. 7

*Jet Spray Cooler, Inc.* v. *Crampton*,
  361 Mass. 835 (1972) ....................................................................................... 10

*Jordan* v. *Commissioners of Bristol County*,
  167 N.E. 652 (Mass. 1920) ................................................................................. 7

*Maltz* v. *Smith Barney, Inc.*,

OHS West:260232295.1

**TABLE OF AUTHORITIES**
**(continued)**

694 N.E.2d 840 (Mass. 1998) ............................................................................ 8

*Slaney* v. *Westwood Auto, Inc.*,
366 Mass. 688 (Mass. 1975) ............................................................................ 11

*Vanguard Fin. Serv. Corp.* v. *R.W. Prof'l Leasing Servs. Corp.*,
1998 WL. 774984 (N.D. Ill.)............................................................................ 12

*Woods* v. *Houghton*,
67 Mass. 580 (Mass. 1854) ............................................................................ 7

iv

## I.     <u>INTRODUCTION</u>

The Defendants' motions to dismiss should be granted.  Defendants' motion not only identifies significant failings in plaintiff's complaint, but it also begins to focus this case on the true issues in order to allow for a more expeditious resolution on the merits presuming a stay is not warranted as a result of ConnectU's appeal of *ConnectU LLC v. Zuckerberg, et al.*, Case No. 1:04-cv-11923-DPW ("*ConnectU I*").  Instead of focusing on the merits, ConnectU's opposition centers on an unwarranted accusation of  delay.  To the contrary, without focusing this case, plaintiff's "shotgun" complaint will make this case more complicated, not focus on the true issues in this case, increase expense, and cause undue delays.

ConnectU's procedural and substantive arguments are without merit.  Indeed, in many instances ConnectU fails to respond to arguments raised by Defendants, thereby waiving the arguments entirely.  Below is a summary of the failings of ConnectU's Response:

1. ConnectU incorrectly relies upon, Fed.R.Civ.P 12(g) to suggest that Defendants have waived their right to bring their motions.  Rule 12(g) has no bearing on this case. It applies only to motions to dismiss under Rule 12 in response to a complaint in a single action.  This action is an entirely separate action from *ConnetU I* and is not an amended complaint.

2. ConnectU incorrectly argues that it has adequately pled its complaint.  Following is a list of some of the deficiencies:

    a. <u>Breach of Confidence claim</u>.  ConnectU does not address Defendants' argument that this claim is preempted by California's Trade Secret Act. ConnectU also does not identify any activity that occurred in California;

    b. <u>Trade Secret Claim</u>.  ConnectU does not identify anything in its pleading that demonstrates measures it took to keep information confidential.

    c. <u>Unfair Trade Practices claim</u>. ConnectU does not identify any allegation (nor can it) that ConnectU is a "consumer" for purposes of Mass. G.L. c. 93A, § 9 or that two businesses were involved in any transaction giving rise to a claim under Mass. G.L. c. 93A, § 11.

3. ConnectU incorrectly argues that it is protected by equitable tolling or the Massachusetts savings statute. ConnectU offers no allegation that would establish this fact, when the statute of limitations precludes relief on the face of the pleading. Indeed, such an allegation is impossible because no rights carried over from the earlier action. ConnectU then attempted to transfer the rights and manufactured evidence in the process. He who seeks equity must do equity. ConnectU did not have the rights necessary in the earlier case to initiate a lawsuit and no equitable theory can save ConnectU.

As Defendants cannot correct these substantial deficiencies and the complaint on its face fails to state a claim, Plaintiff's complaint should be dismissed with prejudice.[1]

## II.    LEGAL ARGUMENT

### A.    The Defendants' Motions Are Not Untimely

ConnectU incorrectly argues that Fed. R. Civ. P. 12(g) prohibits defendants from raising any objections to ConnectU's new complaint. ConnectU's Opp'n, 3-5. Rule 12(g), and every case upon which ConnectU relies, address a defendant's assertion of multiple Rule 12 motions in the same case. Rule 12(g) does not apply to two separate cases such as these.[2] In addition, the Court can consider these motions if the purpose is to narrow and focus the case in order to expedite resolution of the dispute. *See, e.g., Donnelli v. Peters Securities Co.*, 2002 U.S. Dist. LEXIS 16305 (D. Ill. 2002) (granting the motion to dismiss and transfer under forum non conveniens and permitting the subsequent filing of a Rule 12(b)(6) motion, despite the fact it was contrary to the express language of Rule 12(g), because would expedite the matter). As resolution of these motions may expedite and focus this matter, the motions to dismiss should be considered.

---

[1] Defendants Hughes, McCollum and Moskovitz incorporate by reference arguments made in the motions to dismiss filed concurrently herewith by Mr. Zuckerberg, as well as Facebook, Inc. and Thefacebook, LLC.

[2] Rule 12(g) cannot apply to Facebook, Inc. or Thefacebook LLC, in any event, as they were not named in the earlier action.

OHS West:260232295.1

**B.    ConnectU's Claims Do Not "Carry Over," Thereby Precluding Relief Under The Statute Of Limitations**

**1.    ConnectU cannot rely upon equitable tolling**

ConnectU incorrectly contends that equitable tolling is appropriate in this case. ConnectU has not pled a single fact to invoke the protections of this equitable doctrine. Instead, on its face, the Complaint identifies a clear statute of limitations problem. This problem cannot be cured by amendment.

**a.    Equitable Tolling Is An Equitable Doctrine For Which Plaintiff Cannot Seek The Benefit**

Plaintiff's actions have not demonstrated equitable behavior. Equitable tolling is only available to those who do equity. *See, e.g., Tucker v. Cain  2000 WL 177958, *1* (5th Cir. 2000) (where court declined to equitably toll the limitations period because the plaintiff "did not come into court with clean hands") *citing Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814 (1945); *see also Stelco Holding Co. v. U.S.*, 42 Fed.Cl. 101, 117 (Fed.Cl. 1998). In challenging the membership of the LLC, plaintiff engaged in a series of improper acts. These acts were questioned by the Court in the March 2, 2007, Report and Recommendation. *ConnectU I* Docket No. 283, 54.

**b.    Equitable Tolling Is Only Available To A Plaintiff Prevented From Bringing Its Claims Through No Fault Of Its Own**

ConnectU argues that "no clear rules have emerged" to explain when it is appropriate to equitably toll a claim. To the contrary, "equitable tolling is appropriate only when circumstances beyond the [plaintiff's] control have prevented him from filing on time." *Neverson v. Farquharson,* 366 F.3d 32, 42 (1st Cir. 2004). *See also Delaney v. Matesanz*, 264 F.3d 7, 13-14 (1st Cir. 2001); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). It should be invoked only "sparingly" and in "exceptional circumstances." *Irwin v. Dep't of Veterans Affairs*,

498 U.S. 89, 95-96 (1990); *Neverson,* 366 F.3d at 42.

Plaintiff has the burden of establishing the basis for equitable tolling. *Neverson,* 366 F.3d at 41; *see also Chao v. Xanadu Boutique, Inc.*, 380 F. Supp. 2d 134, 136 (E.D.N.Y.,2005) (plaintiff must plead facts in its Complaint justifying application of equitable tolling). ConnectU has not made any allegation to justify equitable tolling, nor can it. To the contrary, as reflected in the R&R, ConnectU tried to *transfer* the rights necessary to pursue its claim after *ConnectU I* was initiated. The actual alleged rights owners could have proceeded in their own name. They chose not to. This situation was uniquely within the control of plaintiff and the alleged rights owners.

ConnectU cites *Burnett v. N.Y. Central R.R. Co.,* 380 U.S. 424, 429 (1965) to argue that equitable tolling should apply. *Burnett*, a case about improper venue and not about improper jurisdiction, is inapplicable. Defects in venue are waivable; lack of diversity jurisdiction is not. Further, *Burnett* did not have facts where one set of alleged rights owners tried to transfer rights to the plaintiff in order to try to preserve a claim. Nevertheless, unlike *Burnett*, ConnectU did not plead facts showing that the doctrine of equitable tolling should apply in this case.

### c.     The Jurisdictional Defects of *ConnectU I* Were Substantial

ConnectU claims that its incorrect legal position allows it to indefinitely continue this case through equitable tolling. *See* ConnectU's Opp'n, 6. Specifically, ConnectU incorrectly argues that *Pramco, LLC v. San Juan Bay Marina, Inc.,* 435 F.3d 51 (1st Cir. 2006), changed the law in the First Circuit. ConnectU's Opp'n, 6. In reality, *Pramco* endorsed well-recognized law. *Pramco* acknowledged that "every circuit to consider this issue [prior to *Pramco*] has held that the citizenship of a limited liability company is determined by the citizenship of all of its

- 4 -

members." *Id.* at 54.[3]

To the extent that ConnectU can claim that *Pramco* did create any new law, the defendants' filing of its Notice of New Authority Re *Pramco* in April 2006 put ConnectU on notice. At that time, the challenged claims still were within the statutory limitations period. ConnectU could have sought dismissal without prejudice under Rule 41(a)(2) or not opposed Defendants' motion. Indeed, ConnectU repeatedly said in the earlier proceedings that it would simply refile, yet it waited nearly 18 months after the issues first arose. Dismissal was not outside ConnectU's control. ConnectU's decision to risk the statute of limitations was its own doing.

ConnectU also tries to justify equitable tolling on the basis that it did not know Zuckerberg's and Facebook, Inc.'s domiciles. ConnectU's Opp'n, 6. This is untrue, as demonstrated by its ability to properly plead their domicile in its Complaint and amended complaint, respectively. As noted in the R&R, stating that being unaware of a domicile of an entity is patently absurd when seeking to invoke the diversity powers of the Court. Docket No. 283 at 12, n. 5.

> d.    **Defendants Will Suffer Prejudice If The Court Agrees To Toll The Statutes**

ConnectU incorrectly argues that Defendants will not be prejudiced if the Court permits ConnectU to circumvent the statutory limitations periods because the cases "are the same." Despite ConnectU's insistence that this case is the same as *ConnectU I*, it is not. ConnectU has added new parties and new claims. ConnectU did not have any rights when it filed *ConnectU I* Moreover, as *ConnectU I* progressed, ConnectU cast a cloud over Facebook and the young entrepreneurs associated with it. ConnectU has shown a desire to persist in this behavior, as

---

[3] Indeed, ConnectU's amended complaint in *ConnectU I* changed the jurisdictional assertion, tacitly recognizing the

OHS West:260232295.1

demonstrated by its dogged efforts to subpoena and harass Facebook's investors.  Further,

ConnectU has, by refusing to seek dismissal of *ConnectU I* of its own accord, subjected the

Defendants to needless expense and burden.  The continued prosecution of these stale claims is

prejudice.  It is absurd for ConnectU to argue otherwise.

### 2.    The Renewal Statute Does Not Save ConnectU's Claims

In its opposition, ConnectU identifies no factual allegation in its Complaint that would

justify the protection of the Massachusetts renewal statute.  As such, the pleading is defective.

Indeed, no factual allegation could be made in the facts of this case.

### a.    ConnectU Did Not Have The Right To Commence Its Lawsuit And, Thus, Its Claims Cannot Be Saved

ConnectU argues that its ineffective amended complaint in *ConnectU I* retroactively

conferred on ConnectU standing to bring its claims and effected a tolling of the statute of

limitations.  ConnectU's Opp'n, 12.  This issue is presumably the basis for ConnectU's appeal of

*ConnectU I*.  The Court's finding of no jurisdiction in *ConnectU I* is significant here.  As the

Court did not have jurisdiction at the time *ConnectU I* was filed, all subsequent complaints and

orders were made without jurisdiction.  The amended complaint was ineffective.

No allegation can cure the defect of the complaint.  Without specifying a time, ConnectU

alleges that "Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra assigned all such

rights, title and interests, and claims to ConnectU LLC." Compl., ¶ 9.  ConnectU did not have the

rights before it commenced *ConnectU I* and for the same reasons set forth in the R&R, did not

have standing to sue.  *MHI Shipbuilding LLC v. Nat'l Fire Ins. Co.*, 286 B.R. 16, 27-28 (D.

Mass.2001); *Gaia Techs., Inc. v. Reconversion Techs., Inc.,* 93 F.3d 774, 778 (Fed. Cir. 1996)

(dismissed patent and trademark claims for lack of standing, because of plaintiff's "inability to

---

jurisdictional defect in the original complaint.

OHS West:260232295.1

prove that it was the owner of the Intellectual Property *at the time the suit was filed*"), as amended on reh'g on other grounds, 104 F.3d 1296 (Fed. Circ. 1996)(emphasis added); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992) (rejecting argument that post-filing joinder of parties created standing: "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*.") (emphasis in original).[4]

ConnectU cites *Duff v. Zonis*, 99 N.E.2d 47, 49-50 (Mass. 1951) to argue that "[a]n incorrect nominal title for one of the parties does not prevent a case from being duly commenced for purposes of the Renewal Statute." ConnectU's Opp'n, 13. *Duff* dealt with a substantially different issue. In this case, unlike *Duff*, either ConnectU had the rights or its founders did. *See also Jordan v. Commissioners of Bristol County*, 167 N.E. 652, 654 (Mass. 1920) (where court held that "misnomer or misdescription of" the plaintiff is not merely an error in form and, as such, the Renewal Statute could not save the claim). A substitution of parties in this case is more than the "nominal" difference described in *Duff*.

ConnectU claims that its complaint was "duly commenced" and thereby saved by the Renewal Statute. ConnectU is wrong. *ConnectU I* was not duly commenced. The word duly means "[i]n a proper manner; in accordance with legal requirements." Black's Law Dictionary (8th ed. 2004). To be "duly" commenced, the action must be brought "in accordance with legal requirements." *See, e.g., Woods v. Houghton*, 67 Mass. 580, 582 (Mass. 1854) (where the court, after examining the Legislative history, declared that "by an 'action duly commenced,' that section means an action on a claim "actually declared upon in a proper writ returnable according to law"). Thus, if a plaintiff does not have authorization or standing to sue, any lawsuit it brings

---

[4] ConnectU also lacked standing because it had not registered to business in Massachusetts, an issue pretermitted in the R&R.

is not "in accordance with legal requirements."[5]

**b.      ConnectU's Trade Secret Claim Is Not The Same Cause Of Action As It Brought In *ConnectU I***

ConnectU provides no authority for its assertion that the newly added civil trade secret claim is the same as the criminal statute, under which it originally brought its claim. Having been sued under a criminal statute, pursuant to which ConnectU could not assert a private right, no Defendant believed it would be subject to liability to ConnectU for the alleged acts.[6]

**c.      The Copyright Act's Three Year Statute Of Limitations Applies In This Case**

ConnectU argues that it would be unfairly penalized for "participating in a process that ConnectU could not control, shorten, or avoid" if the Court limits its damages in accordance with Section 507 of the Copyright Act. ConnectU's Opp'n, 8. As discussed above, the running of the statute of limitations is of ConnectU's own making. ConnectU's recitation of three situations in which the Eastern District of Pennsylvania might equitably toll a limitations period in a copyright infringement action is unavailing. None of the situations is present here, and ConnectU does not argue that they are. Thus, the three year limitations period must apply to ConnectU's First Claim for relief.

**C.      ConnectU Does Not Explain How Claims Satisfy Fed.R.Civ.P. 8**

ConnectU does not address Defendants' challenge to the requisite pleading requirements. "[Rule 8's] pleading requirements, though 'minimal,' are not 'non-existent.' Modern notions of 'notice pleading' notwithstanding, a plaintiff . . . is nonetheless required to set forth factual

---

[5] ConnectU erroneously relies on *Maltz v. Smith Barney, Inc.*, 694 N.E.2d 840 (Mass. 1998) for the proposition that an action need only be filed within the statutory time period to be "duly commenced." The *Maltz* court did not address whether the action was "duly" commenced, because the issue was whether the plaintiff brought the action within the requisite time. The defendant was not challenging, as the Defendants do here, whether the plaintiff had the right to bring the action in the first place.

[6] This is particularly true for Facebook, Inc. and Thefacebook, LLC, as neither of them was named as a party defendant in *ConnectU I*. At a minimum, this claim must be dismissed as against them.

- 8 -

allegations, either direct or inferential, *respecting each material element necessary to sustain recovery under some actionable legal theory.*" *JSB Indus. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 106-107 (D. Mass. 2006) (emphasis in original) citing *Rumford Pharmacy, Inc. v. City of E. Providence*, 970 F.2d 996, 998 (1st Cir. 1992).

### 1.     Trade Secret Misappropriation

#### a.     ConnectU Concedes § 30 Claim Should Be Dismissed

ConnectU dismisses as "irrelevant" the "detail" that Mass. G. L. c. 266, § 30 does not give rise to a private right of action.  Section 30 does not provide a private right of action.  The fact that ConnectU is not entitled, as a matter of law, to bring an action under this section is not an irrelevant detail.  ConnectU offers no response.

#### b.     ConnectU Does Not Point To Allegations Of Efforts To Maintain Confidentiality

In order to establish a claim for civil trade secret misappropriation, ConnectU must allege that it took reasonable steps to protect its allegedly secret information.  *Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 100 (D. Mass. 1999).  It has not done so.  Instead, ConnectU argues that Paragraph 21 of its Complaint "contains allegations to show that ConnectU took reasonable steps to protect its trade secrets."  ConnectU's Opp'n, 30.  This is untrue.  Paragraph 21 reads:

> In addition to agreeing to complete the Harvard Connection Code, Zuckerberg was involved with website development and business planning, and acted as a member of the Harvard Connection development team.  In that capacity, he was entrusted with the basic idea for the Harvard Connection website, project, and enterprise, the Harvard Connection Code (including database definitions), the website design and screens to date, and the Harvard Connection website user interface, as well as information regarding the website's business model and plan, various functionality and content, concepts, and the type of information that would be collected from users.  The combination of such ideas, code and database definitions, screens, information, and procedures were proprietary and confidential at the time, and

- 9 -

> constituted Plaintiff's predecessors' trade secrets (referred to
> herein as "Information and Procedures"). Zuckerberg understood
> that such Information and Procedures were proprietary and secret
> and agreed to keep them confidential. Zuckerberg also had an
> obligation to keep them confidential. Zuckerberg also understood
> that it was important to the success of the harvardconnection.com
> website to make the website operational before the end of the
> school year and before any competitor did so.

Paragraph 21 says <u>nothing about what steps ConnectU took</u> to protect its alleged secrets; it only alleges what it believes Zuckerberg understood. This defect is fatal to its claim because, not only does the failure demonstrate that ConnectU has not alleged all requisite elements of a trade secret claim as required by Fed.R.Civ.P. 8(a), the failure also defeats any potential allegation that a trade secret even exists. *Moore v. Marty Gilman, Inc.*, 965 F.Supp. 203, 217 (D. Mass 1996) ("To be a secret, information must be kept confidential"); *Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 840-841 (1972) ("[I]f the person entitled to a trade secret wishes to have exclusive use … he must not fail to take all proper and reasonable steps to keep it secret").

### c.    ConnectU Does Not Allege Defendants "Knowingly" Used Alleged Trade Secrets

Defendants asserted in their opening brief that ConnectU did not meet the "knowingly" requirement of trade secret misappropriation. In response, ConnectU argues that the defendants "had a duty to question Zuckerberg about his use of ConnectU's trade secrets." ConnectU's Opp'n 32. No allegations appear in the Complaint or in ConnectU's opposition demonstrating what would have prompted such questions and no legal requirement exists. Rather, Massachusetts law uses the unqualified word "knowledge" in setting forth the prescribed state of a defendants' mind for trade secret misappropriation. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 239 (1st Cir. 2005) (where court noted that "[s]uspicion and knowledge are poles apart on a continuum of understanding," and that where the word "knowledge" is expressly used "actual knowledge" is required).

OHS West:260232295.1

2.     **Unfair Trade Practices**

ConnectU offers no factual allegation that supports its unfair trade practices claim. Amendment will not cure the problem. Neither Section 9 or 11 applies to these parties.

ConnectU's only response with respect to its ch. 93A, § 9 claim is that "Mr. Narendra and Messrs. Winklevoss personally engaged Defendant Zuckerberg's services." ConnectU's Opp'n, 34. Section 9 requires ConnectU to plead a "transaction" that was "undertaken primarily for personal, family, or household purposes." *Slaney v. Westwood Auto, Inc*., 366 Mass. 688, 701(Mass. 1975). The second element requires that the "one who asserts rights under the section must be claiming to be a consumer." *Id.* A plain reading of the complaint shows that the relationship at issue was not for personal, family or household purposes and that neither ConnectU or its predecessors was a "consumer." Specifically, ConnectU's allegation is that Mr. Narendra and the Winklevoss brothers engaged Zuckerberg to enable them to form a business for profit. These defects are fatal.

ConnectU's response with respect to the ch. 93A, § 11 claim also fails. The statute is not concerned with ConnectU's status as a business now, but instead is concerned with the employment of unfair methods of competition or unfair or deceptive acts or practices between businesses at the time the injury arose. *See Petricca Dev. Ltd. P'shp v. Pioneer Dev. Co.,* 214 F.3d 216, 223 (1st Cir. 2000). ConnectU did not exist at the time of the alleged violation. Once again, a plain reading of the Complaint proves the point that this case is about a dispute between several individuals related to services performed.[7] ConnectU cannot allege facts showing that this is a dispute between businesses, as it is required to do, because the facts do not exist to support such a claim.

---

[7] ConnectU contends that it alleges that the Individual Defendants operated as a *de facto* partnership. In fact, ConnectU does not make such an allegation. Section 11 requires businesses to exist on both sides of the dispute. As

3.    **Tortious Interference With Business Relations**

ConnectU concludes, without any reference to its Complaint, that it has adequately pled its tortious interference claim(s).  ConnectU's failure to point to any fact that supports either interference claim demonstrates that it has failed to adequately plead its claim(s).

4.    **Unjust Enrichment**

a.    **ConnectU Is Not Entitled To Seek An Equitable Remedy When It Has An Adequate Remedy At Law**

ConnectU incorrectly argues that "no authority precludes a plaintiff from asserting an unjust enrichment claim along with its other claims for which monetary damages are available." ConnectU's Opp. to Motion to Dismiss, p. 36.  This argument ignores the basic principle that a claim for unjust enrichment is available only to plaintiffs who lack adequate remedies at law. *See e.g., Stone v. White*, 301 U.S. 532, 534-535 (1937); *Massachusetts v. Mylan Labs*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (identifying the fifth element of an unjust enrichment claim which requires plaintiff to show the absence of a remedy provided by law).

A plaintiff is not entitled to plead unjust enrichment in the alternative to its claim that a contract existed between the parties.  *Micromuse, Inc. v. Micromuse, PLC*, 304 F. Supp. 2d 202, 209 (D. Mass. 2004).  ConnectU's Unjust Enrichment claim incorporates by reference all of the allegations in paragraphs one through 80 of the Complaint, including the claim that a valid contract exists.  ConnectU's unjust enrichment claim cannot include allegations of a specific contract governing the parties' relationship.  *Id.* citing *Vanguard Fin. Serv. Corp. v. R.W. Prof'l Leasing Servs. Corp.*, 1998 WL 774984, *4 (N.D. Ill.).

---

ConnectU pointed out, the *founders* of ConnectU allegedly engaged Zuckerberg.  No business entity was involved.

OHS West:260232295.1

**5.      ConnectU's Fifth, Seventh And Eighth Claims For Relief Are Preempted By The Copyright Act**

ConnectU argues that its unfair trade practices, unjust enrichment and tortious interference claims are not preempted by the Copyright Act because the "Information and Procedures" at issue allegedly comprise more than just the Harvard Connection Code. ConnectU's Opp'n, 19-20.  ConnectU's pleading belies this argument, however.

ConnectU incorporates by reference its copyright infringement claim into its Fifth, Seventh and Eighth claims for relief.  Compl, ¶¶ 66, 81, 87.  This incorporation by reference is fatal as it attempts to assert these additional claims based on the same facts as the copyright infringement claim.  To the extent that plaintiff is asserting other things as supporting the claim, the Complaint does not provide adequate notice of what the Defendants are accused of doing.

ConnectU's claims for relief also do not include the requisite "extra element."  For instance, its unfair trade practices claim (which incorporates the copyright claim) says nothing more than the actions were unfair or deceptive and occurred primarily in Massachusetts.  No facts are pled to support this assertion.  And, even if they were, they do not add to or change the nature of the rights granted under the Copyright Act.  Similarly, the unjust enrichment claim (which also incorporates the copyright claim) alleges no more than that the Defendants were enriched at Plaintiff's expense, and the Defendants have no justification for doing so.  These allegations do not add to or change the nature of the rights granted under the Copyright Act.

The same can be said for ConnectU's tortious interference claim, which incorporates by reference ConnectU's copyright infringement claim.  ConnectU contends that Defendants have caused potential website users, advertisers and investors to refrain from entering into contracts with ConnectU and have usurped such business opportunities.  Again, no facts are pled, only conclusions. These allegations do not describe any extra element beyond the mere alleged

OHS West:260232295.1

unauthorized use of Harvard Connection code. *See, e.g., Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 -1213 (9th Cir. 1998) (court found preemption of unfair competition claim where that claim incorporated by reference paragraphs from the copyright infringement claim, and the complaint expressly based the claim on rights granted by the Copyright Act).

## III.    <u>CONCLUSION</u>

ConnectU failed to address many of the concerns raised by the Defendants.  Instead, it chose to argue that this motion (as well as the motions to dismiss by the other defendants) was brought solely to delay this action.  As the Defendants' moving and reply papers show, however, ConnectU's claims are not sufficiently pled and cannot be saved by virtue of ConnectU's having filed an earlier, separate action.  The result of these motions will be to focus this case on the true issues in order to allow for more expeditious resolution on the merits.  For the reasons set forth herein, the Defendants respectfully request that the Court grant their Motion to Dismiss.

OHS West:260232295.1

Dated:  May 14, 2007                    Respectfully submitted,


                                        /s/ I. Neel Chatterjee /s/
                                        _____
                                        G. Hopkins Guy, III (of counsel)
                                        I. Neel Chatterjee (*admitted pro hac vice*)
                                        Monte Cooper (*admitted pro hac vice*)
                                        Theresa A. Sutton (*admitted pro hac vice*)
                                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                                        1000 Marsh Road
                                        Menlo Park, California  94025
                                        Telephone:   (650) 614-7400
                                        Facsimile:    (650) 614-7401

                                        Steven M. Bauer
                                        Jeremy P. Oczek
                                        PROSKAUER ROSE, LLP
                                        One International Plaza, 14th Floor
                                        Boston, MA 02110-2600
                                        Telephone:   (617) 526-9600
                                        Facsimile:    (617) 526-9899

                                        ATTORNEYS FOR DEFENDANTS
                                        FACEBOOK, INC., MARK ZUCKERBERG,
                                        DUSTIN MOSKOVITZ, ANDREW
                                        MCCOLLUM, CHRISTOPHER HUGHES, AND
                                        THEFACEBOOK, LLC.

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 14, 2007.

Dated:  May 14, 2007.                          Respectfully submitted,

/s/ I. Neel Chatterjee/s/
_____
I. Neel Chatterjee

OHS West:260232295.1