# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, AND THEFACEBOOK, LLC,<br><br>      Defendants. | Civil Action No. 1:07-CV-10593 (DPW)<br><br>Related Action: Civil Action No. 04-CV-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |

**CONNECTU INC.'S OPPOSITION
TO FACEBOOK DEFENDANTS' MOTION TO STAY THE PROCEEDINGS PENDING
CONNECTU LLC'S APPEAL TO THE FIRST CIRCUIT OF JUDGE WOODLOCK'S
<u>ORDER OF DISMISSAL IN RELATED CASE NO. 1-04-CV-11923-DPW</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................2

II. FACEBOOK DEFENDANTS CANNOT MEET THEIR BURDEN ...............................2

    A. The Law Abhors a Stay............................................................................................2

    B. Facebook Defendants' Arguments for a Stay Ignore the Facts ...............................4

        1. Facebook Defendants' Arguments Rely on Hindsight ...............................5

        2. There Are No Overlapping Issues................................................................7

        3. The Appeal Will Not Affect This Case........................................................8

        4. The Fed. R. Civ. P. 15 Issue Is Different in the Appeal .............................9

III. IT IS UNFAIR TO CONNECTU TO DENY IT JUSTICE ..............................................10

IV. THE APPEAL WAS EFFICIENT AND NECESSARY.....................................................11

    A. ConnectU Has Taken the Most Efficient Course of Action ..................................11

    B. Appealing The Dismissal Was Necessary .............................................................12

V. CONCLUSION....................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**

*Abel v. Miller*,
  904 F.2d 394 (7th Cir. 1990) .................................................................................................. 10

*Am. Life Ins. Co. v. Stewart,*
  300 U.S. 203 (1937).................................................................................................................. 8

*Amersham Int'l. v. Corning Glassworks,*
  108 F.R.D. 71 (D. Mass. 1985)................................................................................................. 4

*An Giang Agric. & Food Imp. Exp. Co. v. United States*,
  350 F. Supp. 2d 1162 (C.I.T. 2004).......................................................................................... 7

*Austin v. Unarco Industries*,
  705 F.2d 1 (1st Cir. 1983)..................................................................................................... 3, 4

*Canal Properties LLC v. Alliant Tax Credit V. Inc.*,
  No. C04-03201 SI, 2005 WL 1562807 (N.D. Cal. June 29, 2005) ..................................... 7, 11

*Caspian Inv., Ltd. v. Viacom Holdings, Ltd.*,
  770 F. Supp. 880 (S.D.N.Y. 1991) ......................................................................................... 13

*Clinton v. Jones*,
  520 U.S. 681 (1997)............................................................................................................ 3, 10

*Commerce Oil Refining Corp. v. Miner*,
  303 F.2d 125 (1st Cir. 1962).................................................................................................... 4

*Cuomo v. United States Nuclear Reg. Commn.*,
  772 F.2d 972 (D.C. Cir. 1985)................................................................................................. 2

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000) .................................................................................................... 7

*Dellinger v. Mitchell*,
  442 F.2d 782 (D.C. Cir. 1978).................................................................................................. 3

*Furminator, Inc. v. Ontel Prods. Corp.*,
  NO. 4:06-CV-1294 CAS, 2006 WL 2711642 (E.D. Mo., Sep 21, 2006).................................. 8

*In re Atl. Pipe Corp.*,
  304 F.3d 135 (1st Cir. 2002).................................................................................................... 2

*Landis v. North American Co.*,
  299 U.S. 248 (1936) .................................................................................................. 2, 4, 10, 11

*Ogden Labs., Inc. v. Clorox Co.*,
  Civ. A. No. 92-3593, 1993 WL 133767 (E.D. La. April 22, 1993) .......................................... 7

*Perez-Guzman v. Gracia*,
  346 F.3d 229 (1st Cir. 2003) ...................................................................................................... 10

*Pramco, LLC v. San Juan Bay Marina, Inc.*,
  435 F.3d 51 (1st Cir. 2006) ......................................................................................................... 6

*Sykes v. U.S.*,
  290 F.2d 555 (9th Cir. 1961) .................................................................................................... 11

*Urbanizadora Villalba, Inc. v. Banco Y Agencia de Financiamiento de la Vivienda*,
  845 F.2d 1 (1st Cir. 1988) ......................................................................................................... 11

*Williford v. Armstrong World Indus., Inc.*,
  715 F.2d 124 (4th Cir. 1983) ................................................................................................... 10

**FEDERAL RULES**

Fed. R. Civ. P. 1 ................................................................................................................................. 2

Fed. R. Civ. P. 15 ............................................................................................................................... 9

Fed. R. Civ. P. 41(a)(1) ..................................................................................................................... 5

**I.       INTRODUCTION**

"Justice delayed is justice denied."[1] *See In re Atl. Pipe Corp.*, 304 F.3d 135, 147 (1st Cir. 2002) ("Equally as important, it is trite but often true that justice delayed is justice denied."). Fed. R. Civ. P. 1 seeks a "just, speedy, and inexpensive determination of every action." The Constitution of the Commonwealth of Massachusetts mandates that justice be obtained "promptly, and without delay." Mass. Const. art. XI. ConnectU must be afforded this basic right despite Facebook Defendants' continued attempts—through procedural maneuverings—to delay this proceeding and deny justice to ConnectU.

Though it is their burden to demonstrate a clear case of hardship,[2] Facebook Defendants have offered no justification for the extraordinary remedy they seek. *Cuomo v. United States Nuclear Reg. Commn.*, 772 F.2d 972, 978 (D.C. Cir. 1985) ("On a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy."). A stay is inappropriate here because there is no overlap between this action and the appeal in the related action. ConnectU therefore urges this Court to deny yet another frivolous motion by Facebook Defendants and get to the heart of the matter, namely, their illegal and unethical conduct in the development and maintenance of the facebook.com website.

**II.      FACEBOOK DEFENDANTS CANNOT MEET THEIR BURDEN**

   **A.     The Law Abhors a Stay**

To be entitled to a stay, the movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

---

[1] Attributed to William Blackstone.

[2] As discussed further in Section II.A, *infra,* Facebook Defendants have completely misrepresented the case law on this point.

2

The Supreme Court has vigorously re-emphasized this threshold standard, by stating succinctly that "the proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (holding that the President was not entitled to a stay that would delay the litigation).

The First Circuit in *Austin v. Unarco Industries*, 705 F.2d 1 (1st Cir. 1983), also clearly recognized this high bar for stays, and has been particularly careful not to prevent, cavalierly, the advancement of trial, especially where deleterious to the interests of the other party, including its financial interests:

> The Supreme Court has indicated, however, that to be entitled to a stay, a party must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party. (citations omitted). *In this case the damage to the Plaintiff would be the financial hardship of being forced to wait for an undefined but potentially lengthy period before receiving the money to which she may be entitled.*

705 F.2d at 5 (emphasis added). Defendants' delay of this case has been enormously expensive to ConnectU and Facebook Defendants have demonstrated no hardship if a stay is not granted.

The fact that such delays can be so onerous justifies the requirement of showing a real need for the stay, since such motions invariably derail a plaintiff's protected right to pursue its grievance at an actual trial. *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1978) ("Any protracted halting or limitation of the plaintiffs' right to maintain their case would require a showing of 'need' in terms of protecting the other litigation involved, but would also require a balanced finding that such need overrides the injury to the parties being stayed.").

Facebook Defendants inexplicably ignore this requirement, fail to show any hardship entitling them to a stay, and should not be permitted to attempt to do so in reply. Even more egregious than this omission is Facebook Defendants' manipulation of the case law. Facebook Defendants attempt to shift the burden to ConnectU and argue that "[t]o avoid a stay, 'a party

3

must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party.' *Amersham Int'l. v. Corning Glassworks,* 108 F.R.D. 71, 72 (D. Mass. 1985) (quoting *Austin v. Unarco Industries,* 705 F.2d 1, 5 (1st Cir. 1983). *See also Landis*, 299 U.S. at 255. ConnectU cannot meet this standard." (Dkt. 43 at 8-9). In fact, however, *Amersham* plainly states that Facebook Defendants, not ConnectU, must demonstrate hardship, as evidenced by the full quotation from the case:

> Despite these considerations, defendant has failed to overcome the heavy burden required to sustain a stay motion. **To be entitled to a stay**, a party must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party.

*Amersham,* 108 F.R.D. at 72 (emphasis added). Facebook Defendants' devious presentation of *Amersham* to avoid having to show hardship reveals that they are incapable of meeting this high standard, and that a stay in this case would be inappropriate.[3]

### B.   Facebook Defendants' Arguments for a Stay Ignore the Facts

Facebook Defendants argue in conclusory fashion, without explanation, that a stay will promote judicial efficiency, avoid costs, minimize potential for inconsistent rulings (Dkt. 43 at 2, 3, 6), avoid utter confusion (Dkt. 43 at 3), and that the appeal will "bring to life many of the same claims at issue in this case and create multiple lawsuits concerning the same subject matter" (Dkt. 43 at 2-3). They also argue that a stay is warranted when "a related appeal may resolve issues relevant to the later-filed action, since 'resolution of these issues could determine whether [the party bringing the later suit] is precluded, by res judicata or collateral estoppel, from asserting claims' that also are before the District Court." (Dkt. 43 at 7, 8). As discussed further below, none of these arguments has any merit.

---

[3] *Commerce Oil Refining Corp. v. Miner*, 303 F.2d 125 (1st Cir. 1962), cited in the motion (Dkt. 43 at 2), offers no support for Facebook Defendants' position. The court in *Commerce Oil* overturned an injunction issued by a district court to enjoin state court proceedings. *Id.* at 128.

4

Facebook Defendants' motion ignores the fact that the appeal involves only the question of subject matter jurisdiction, an issue not present in the pending action. Although the Complaints in this action and the related action are substantively identical (Dkt. 43 at 5), Facebook Defendants' heavy reliance on this fact is misplaced.[4] The issue relevant to the present motion is whether the issue on appeal and the merits of the claims and underlying causes of actions in the present action are substantively identical. As discussed below, and as is quite obvious, the issues do not overlap.

### 1. Facebook Defendants' Arguments Rely on Hindsight

Facebook Defendants' argument that ConnectU "chose to litigate the jurisdictional question in *ConnectU I* rather than just seeking dismissal and re-filing" (Dkt. 43 at 9) ignores the facts, which are to the contrary. ConnectU could not have voluntarily dismissed after an Answer was filed, and Defendants filed their first motion to dismiss almost a year after answering. Fed. R. Civ. P. 41(a)(1). ConnectU also could not have refiled until the motion was granted, and Facebook Defendants' were unwilling to participate in discussions that could have facilitated dismissal and refiling in a status quo posture. (*See* Dkt. 34 at 7).

Moreover, Facebook Defendants can only make this argument with hindsight. Throughout the pendency of the related action, ConnectU had no reason to believe that the case should or would be dismissed. Facebook Defendants focused their original motion to dismiss in the related action on the states of formation of ConnectU LLC and Facebook, Inc. when the

---

[4] ConnectU also notes the glaring inconsistency of Defendants' arguments. When it suits them, they argue in favor of a stay that the related case and this case are essentially identical (see Dkt. 43 at 1, 2). But to support their statute of limitations argument, they argue that the cases are substantially different (see Dkt. 17 at 3, 5).

5

Complaint was filed. (R.A. Dkt. 100).[5] At the time, ConnectU saw no problem with jurisdiction based on such arguments, and the Court ultimately ignored **ALL** of Defendants' arguments set forth in their opening brief and reply briefs (R.A. Dkt. 100, 110, Att. 1, and 111, Att. 1). After the original motion to dismiss was fully briefed, *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 (1st Cir. 2006), issued. *Pramco* says it is a case of first impression, holding that diversity of citizenship involving a limited liability company is tested by the domicile of its Members.[6] *Id.* at 54. The parties then focused on diversity between Mark Zuckerberg and Divya Narendra. ConnectU still saw no diversity problems at that time, and ultimately the Court agreed that Divya Narendra was not a Member of ConnectU LLC on the filing date. Magistrate Judge Collings recommended dismissal for his own reason, not because of a lack of diversity between Divya Narendra and Mark Zuckerberg, but because ConnectU allegedly lacked any Members on the filing date and therefore was not a citizen of any state. (R.A. Dkt. 283 at 41). No party ever raised this argument or briefed this issue, and all parties argued to the contrary. ConnectU argued that ConnectU LLC had two Members on the filing date, Cameron and Tyler Winklevoss (see R.A. Dkt. 285 at 1, n.1), and Defendants argued that it had three, including Mr. Narendra (see R.A. Dkt. 265 at 3; Dkt. 266 at 11; Dkt. 271 at 11, 2-13). Avoiding hindsight, why would ConnectU have voluntarily sought dismissal, or bowed to Defendants' motion to dismiss, then refiled, based on an argument that no one made and that was contrary to **ALL** parties' positions (i.e., that ConnectU had no Members on the filing date), when ConnectU turned out to be right with respect to all of the arguments the parties **DID** raise (except Mark Zuckerberg's domicile)?

---

[5] ConnectU, Inc. refers Civil Docket No. 04-CV-11923, the related action, as the "R.A."

[6] Indeed, in Facebook Defendants' motion to dismiss, they agreed with ConnectU's assertion that it was a "Delaware limited liability company" for the purposes of diversity jurisdiction. (Dkt. 100 at 2). This statement is contrary to the later holding of *Pramco*.

In other words, ConnectU reasonably expected the motion to dismiss to be denied. ConnectU was correct in its reasoning about diversity jurisdiction as set forth in the motion papers, and Defendants were wrong. There was no way to have reasonably anticipated the Court's reason for dismissal. Thus, it is illogical to argue with hindsight that ConnectU should have sought dismissal or not opposed the motion to dismiss.

### 2. There Are No Overlapping Issues

When they argue that the appeal and this case overlap, Facebook Defendants are comparing apples to oranges. Their arguments and cited case law are all directed to situations involving substantial duplication of issues and two cases being tried on the merits. (Dkt. 43 at 7). For example, in both *Ogden Labs., Inc. v. Clorox Co.*, Civ. A. No. 92-3593, 1993 WL 133767 (E.D. La. April 22, 1993), and *Canal Properties LLC v. Alliant Tax Credit V. Inc.*, No. C04-03201 SI, 2005 WL 1562807 (N.D. Cal. June 29, 2005), the cases were already tried before a jury on the merits, and appeals followed. Prior to resolution of the appeals, a second litigation on the merits was filed. Thus, the second litigation would truly be a parallel litigation and "it would be a waste of resources to proceed to a disposition on the merits in [the second case] at the same time the [appeal court] is considering [the same] issues." See *Ogden* 1993 WL 133767 at *3. In *An Giang Agric. & Food Imp. Exp. Co. v. United States*, the stay was only ordered in favor of a more advanced litigation after it was determined that the outcome would clearly effect the second litigation and there would be no evidence of hardship to the other party. 350 F. Supp. 2d 1162, 1163 (C.I.T. 2004).[7]

---

[7] In *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000) also cited by Facebook Defendants (Dkt. 43 at 7), there was no stay, or even a motion for a stay.

7

The common thread in all of these cases, which is absent here, is the similarity and repetition of the issues. See *Am. Life Ins. Co. v. Stewart,* 300 U.S. 203, 215 (1937) (case for stay is clearest when the issues are the same in the two cases). Here, the issues are not the same, or even intertwined, and Facebook Defendants' have pointed only to out-of-context statements by ConnectU to allege that they are. (Dkt. 43 at 2). The appeal deals solely with a question of subject matter jurisdiction and is obviously limited to the March 2, 2007 Report & Recommendation ("R&R", R.A. Dkt. 283), not the merits of the claims or the underlying causes of action. Thus, ConnectU is not maintaining "two actions on the same subject in the same court, against the same defendant at the same time" (Dkt. 43 at 2) and the factors supporting a stay are entirely absent. *Furminator, Inc. v. Ontel Prods. Corp.*, NO. 4:06-CV-1294 CAS, 2006 WL 2711642, *2 (E.D. Mo., Sep 21, 2006) (stay not appropriate where issue before the district court was not the central issue of the appeal).[8]

### 3.    The Appeal Will Not Affect This Case

The appeal in the related action will have no substantive effect on the present case. If the appeal is unsuccessful, this case moves forward without conflict, based on whatever decisions the Court makes on the motions to dismiss. If the appeal is successful, the related case and this case can and should be consolidated, or this case may be dismissed in favor of the related case, which would then pick up where that case and this case leave off. Facebook Defendants admit as much when they conclude exactly the same thing. (Dkt. 43 at 3, stating that "if successful on

---

[8] Because there is no overlap, there is also no inefficiency. If the case is not stayed, the costs of the appeal and of this case, as well as judicial resources, are incurred at the same time. If the case is stayed, the cost and court time of the substantive case are simply delayed until after the appeal. Because the combined costs and court time are the same, a delay only serves to harm ConnectU and prevent it from obtaining justice.

8

appeal, ConnectU will be able to pick up where it left off in *ConnectU I*; if unsuccessful, ConnectU will re-commence at the present stage of this action…").

### 4. The Fed. R. Civ. P. 15 Issue Is Different in the Appeal

Facebook Defendants' attempts to tether the Fed. R. Civ. P. 15 argument in the motions to dismiss to the appeal must fail. The Rule 15 issue in the appeal and the Rule 15 issue in the present motions to dismiss are different. The appeal involves whether Rule 15(c) can reach back to cure subject matter jurisdiction on the filing date. The motions to dismiss address whether or not the Amended Complaint joined Facebook, Inc. in the litigation.[9] Even if, *arguendo*, it is decided on appeal that Rule 15(c) did not allow the Amended Complaint to reach back to cure jurisdiction, there is no reason that Rule 15 would not have its normal effects. In this regard, the Court never said that the Amended Complaint was ineffective, simply that Rule 15(c) did not apply to confer subject matter jurisdiction. (Dkt. 283 at 9, n.3). Therefore, Facebook Defendants' statements to this effect, and their representations regarding the R&R, are inaccurate. (*See* Dkt. 43 at 4, stating that the Court concluded "that the amended Complaint adding the copyright and 93A claims was of no effect because diversity was lacking;" Dkt. 43 at 7, stating that "*ConnectU I* was dismissed because ConnectU LLC had no members at the time of filing . . . and that ConnectU's amended complaint was ineffective.")

Regardless of whether Rule 15(c) saves jurisdiction in the related case, which is an appeal issue but irrelevant here, the Amended Complaint added Facebook, Inc. under Rule 15(a). Therefore the ruling on appeal will be of no consequence to the issues currently before the Court and provides no basis for a stay.

---

[9] The motions to dismiss have been addressed already (Dkt. 34), and ConnectU therefore does not repeat its arguments here.

9

### III. IT IS UNFAIR TO CONNECTU TO DENY IT JUSTICE

Airing grievances in a trial forum and coming to a resolution on the merits is essential to the notion of having one's proverbial 'day in court.' *See Perez-Guzman v. Gracia*, 346 F.3d 229, 238 (1st Cir. 2003) (holding that "[s]o long as we retain our historic tradition that each person is entitled to his own day in court," a party should not be barred from litigating their case). Facebook Defendants' delay tactics should not be permitted to deny ConnectU its opportunity for justice.

Proper use of the Court's authority to stay "calls for the exercise of judgment which must weigh competing interests and maintain an even balance." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (quoting *Landis*, 299 U.S. at 254-55). Any weighing of competing interests must result in a stay not being granted. It would be unfair to reward Facebook Defendants for unduly and unnecessarily stalling this litigation through excessive motions. Such strategies have been decried by the various circuits, ever leery of "[d]efendants [who] may defeat just claims by making suit unbearably expensive or indefinitely putting off the trial . . . so that some will abandon their cases even though they may be entitled to prevail." *Abel v. Miller*, 904 F.2d 394, 396 (7th Cir. 1990); *see also Unarco*, 705 F.2d at 5 (noting that delays cause plaintiffs the hardship of being forced to wait for an undefined period before receiving redress on the merits.).

The reasons for disfavoring unwarranted delays at the trial level are numerous and obvious. In addition to the financial hardship described above, there are also serious evidentiary concerns of allowing a stay to halt litigation, because it naturally "increases the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." *Clinton*, 520 U.S. at 707–08 (holding that

delaying trial until after a sitting President's second term had expired was too long considering evidentiary concerns).

The courts' aversion to delay and defendant-foot-dragging is driven by a preference at law to arrive at a resolution through adjudication on the merits. *Sykes v. U.S.*, 290 F.2d 555, 557 (9th Cir. 1961) ("And the policy of the law is to try cases on their merits."); *see also*, Jack H. Friedenthal, Mary K. Kane and Arthur R. Miller, *Civil Procedure* 470 (3rd ed. 1999) ("[T]he law favors deciding cases on the merits . . . ."). Granting Facebook Defendants' motion to stay would unfairly prolong adjudication on the merits, which would be unfair, unjust, prejudicial, and contrary to basic policies underlying our judicial system.

## IV. THE APPEAL WAS EFFICIENT AND NECESSARY

### A. ConnectU Has Taken the Most Efficient Course of Action

Facebook Defendants' assertion that this motion is not a delay tactic (Dkt. 43 at 3) cannot possibly be true, especially when viewed in the light of virtually every action they have taken in this and the related case. During the meet and confer preceding this motion, ConnectU also told Facebook Defendants that the cases they identified[10] do not support a stay and that such a motion would be frivolous and interposed for improper purposes, such as delay and harassment, but they filed the motion anyway.

Also, contrary to Facebook Defendants' argument (Dkt. 43 at 3) that refiling this action concurrently with appealing the Court's adoption of the R&R was inefficient and will delay the case, appealing and refiling at the same time was the most expeditious and efficient course of action. In *Urbanizadora Villalba, Inc. v. Banco Y Agencia de Financiamiento de la Vivienda*, 845 F.2d 1, 2 (1st Cir. 1988), the Court noted that refiling the case, rather than appealing the

---

[10] Namely, *Landis* and *Canal Properties*.

11

dismissal, would have been more efficient since the action would have been further along. Here, to avoid delay, ConnectU did both at the same time.

### B. Appealing The Dismissal Was Necessary

While ConnectU would have preferred not to appeal, it was compelled to do so to preserve its rights. For example, if this Court denies Defendants' presently pending motions to dismiss, as ConnectU has urged, the appeal—assuming it is successful—protects against a post-trial appeal of this Court's rejection of Defendants' statute of limitations arguments. Without the appeal, ConnectU could proceed to trial in this case, prevail, and then face an argument on appeal that the Court incorrectly rejected the statutes of limitations arguments in the present motions to dismiss.

The appeal also guards against unforeseen legal developments. In the related action, the motion to dismiss was not filed until almost a year after the Amended Complaint was filed.[11] *Pramco* did not issue until January 19, 2006 and was not brought to the Court's attention until April 14, 2006 (R.A. Dkt. 169). Almost a year later, on March 2, 2007, Magistrate Collings issued the R&R, ruling that the Court lacked jurisdiction for a reason not briefed by either party, but based on *Pramco*. Prior to the Court's dismissal based on its own reason, ConnectU correctly saw no subject matter jurisdiction problem (see § II.B.1 *supra*). Therefore, ConnectU cannot be confident that some future legal development will not create another jurisdictional issue. Because subject matter jurisdiction arguments can be raised at any time, ConnectU had no choice but to appeal the dismissal to guard against future subject matter jurisdiction problems.

---

[11] The Amended Complaint was filed on October 28, **2004**, not October 28, **2005**, as stated by Facebook Defendants. (Dkt. 43 at 4; R.A. 13). Additionally, as previously pointed out in ConnectU's Consolidated Opposition to Facebook Defendants' Motion to Dismiss (Dkt. 34 at 2, n.3), and as Facebook Defendants well know, ConnectU LLC is not defunct and merged into ConnectU, Inc.

ConnectU's need to appeal in no way suggests that a stay should be granted. *Caspian Inv., Ltd. v. Viacom Holdings, Ltd.*, cited by Facebook Defendants for the proposition that ConnectU's decision to appeal "weighs in favor of a stay" (Dkt. 43 at 9), doesn't even involve a case that was appealed. 770 F. Supp. 880, 885 (S.D.N.Y. 1991). Instead, *Caspian* found it appropriate to stay a second-filed case in another jurisdiction. That holding has no bearing on the present action.

## V. CONCLUSION

For these reasons, ConnectU respectfully urges the Court to deny Facebook Defendants' motion to stay and allow this case to proceed on the merits.

Dated: May 29, 2007                                  Respectfully submitted,

/s/ John F. Hornick_____
John F. Hornick, admitted *pro hac vice*
Margaret A. Esquenet, admitted *pro hac vice*
Meredith H. Schoenfeld, admitted *pro hac vice*
Daniel P. Kaufman (BBO#663535)
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 408-4000
Fax: (202) 408-4400

Daniel P. Tighe (BBO# 556583)
Scott McConchie (BBO# 634127)
GRIESINGER, TIGHE, & MAFFEI, L.L.P.
Boston, MA 02110
Telephone: (617) 603-0918
Facsimile: (617) 542-0900
dtighe@gtmllp.com
smcconchie@gtmllp.com

Attorneys for Plaintiff
ConnectU, Inc.

13

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 29, 2007.

/s/ John F. Hornick
John F. Hornick

14