# EXHIBIT 4

Dockets.Justia.com

1  ALLAN STEYER (State Bar No. 100318)
   JEFFREY H. LOWENTHAL (State Bar No. 111763)
2  JILL M. MANNING (State Bar No. 178849)
   LISA MARIE WILLIAMS (State Bar No. 226360)
3  STEYER LOWENTHAL BOODROOKAS
     ALVAREZ & SMITH LLP
4  One California Street, Third Floor
   San Francisco, California 94111
5  Telephone: (415) 421-3400
   Facsimile: (415) 421-2234
6
   Attorneys for Defendant
7  and Cross-Complainant Eduardo Saverin

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SANTA CLARA

10                            UNLIMITED JURISDICTION

11  THEFACEBOOK, INC., a Delaware          )   CASE NO. 105 CV 039867
    Corporation, THEFACEBOOK, LLC,         )
12  a Florida limited liability company, and )   CROSS-COMPLAINT FOR: (1) BREACH
    MARK E. ZUCKERBERG, an individual,     )   OF FIDUCIARY DUTY; (2) FRAUD; (3)
13                                         )   NEGLIGENT MISREPRESENTATION;
                 Plaintiffs,               )   (4) INTERFERENCE WITH
14                                         )   PROSPECTIVE ECONOMIC
          vs.                              )   ADVANTAGE; (5) UNJUST
15                                         )   ENRICHMENT; AND (6)
    EDUARDO SAVERIN, an individual,        )   DECLARATORY RELIEF
16                                         )
                 Defendant.                )   Dept:  8
17  _____  )   Judge: Honorable Joseph Huber
                                           )
18  CROSS-COMPLAINT                        )   Complaint filed: April 21, 2005
                                           )   First Amended Complaint filed: July 20, 2005
19  EDUARDO SAVERIN, an individual,        )   Trial date: TBA
                                           )
20               Cross-Complainant,        )
                                           )
21        vs.                              )
                                           )
22  THEFACEBOOK, INC., AKA                 )
    FACEBOOK, INC., a Delaware             )
23  Corporation; THEFACEBOOK, LLC, a       )
    Florida limited liability company;     )
24  MARK E. ZUCKERBERG, an individual;     )
    and ROES 1-50,                         )
25                                         )
                 Cross-Defendants.         )
26                                         )

27

28                          CROSS-COMPLAINT
                         CASE NO. 105 CV 039867

Cross-Complainant Eduardo Saverin alleges as follows:

## NATURE OF THE CASE

1.  This is an action for declaratory and monetary relief arising out of the creation of facebook.com, an on-line directory for college and high school students. This action is brought by Eduardo Saverin ("Saverin"), a co-founder and shareholder of Facebook, Inc., against 1) Mark E. Zuckerberg ("Zuckerberg"), the other co-founder of Facebook, Inc.; 2) Facebook, Inc., aka TheFacebook, Inc., a Delaware corporation ("the Company" or "Facebook"); and 3) TheFacebook, LLC ("the LLC"). The claims brought herein arise out of Zuckerberg's attempt to force Saverin out of the Company. Specifically, the claims arise out of Zuckerberg's actions in inducing Saverin to enter into certain agreements, breaching fiduciary duties owed to Saverin as a minority shareholder, and improperly causing the Facebook to issue millions of additional common shares to himself and others, thereby increasing their ownership interests and diluting Saverin's ownership interests. Zuckerberg's actions were part of a deliberate scheme to deprive Saverin of his rightful ownership interest in the Facebook, and to improperly benefit himself and his colleagues at the expense of Saverin, all in violation of his agreement with Saverin when they created the Company. In this action, Saverin seeks to have his rights and interests restored to what they would have been but for Zuckerberg's improper and actionable conduct.

## THE PARTIES

2.  Cross-complainant Eduardo Saverin is a legal resident of Florida. He is a co-founder of, and shareholder in, the Facebook. At times relevant to the events described herein, Saverin owned at least 30% of the common shares in the Facebook.

3.  Cross-defendant Mark E. Zuckerberg resides in Menlo Park, California. He is a co-founder of, and shareholder in, the Facebook. At times relevant to the events described herein, Zuckerberg was a member of the LLC and/or the Company's Chief Executive Officer, Director and majority shareholder.

4.  Cross-defendant Facebook, Inc., aka TheFacebook, Inc., is a Delaware corporation with its principle place of business in Palo Alto, California. Facebook operates an on-line

CROSS-COMPLAINT
CASE NO. 105 CV 039867

1

1  directory (www.facebook.com) that connects people through social networks at colleges,

2  universities and high schools throughout the country.

3       5.    Cross-defendant TheFacebook, LLC is a Florida limited liability company.

4       6.    Cross-complainant is unaware of the true names and capacities, whether

5  associations or individuals, of the cross-defendants sued herein as Roes 1 through 50, inclusive,

6  and for that reason has sued cross-defendants by such fictitious names. Cross-complainant prays

7  leave to insert the true names and capacities of said cross-defendants when they are ascertained.

8  Cross-complainant is informed and believes that each of the cross-defendants designated herein

9  as a Roe is legally responsible and liable in some manner for the events, happenings and

10  obligations herein referred to.

11       7.    Cross-complainant is informed and believes and on that basis alleges that each

12  cross-defendant was an agent, employee, and/or representative of each and every other cross-

13  defendant, and that all acts herein alleged were performed within the scope and authority of such

14  agency, employment and representation, and were approved of and ratified by each and every

15  other cross-defendant.

16                 AIDING AND ABETTING AND CONSPIRACY

17       8.    Cross-complainant is informed and believes that each of the cross-defendants

18  aided and abetted and conspired with each of the other cross-defendants in committing each of

19  the wrongful acts herein alleged.

20       9.    Cross-complainant is informed and believes that at all times herein mentioned

21  each of the cross-defendants knowingly and willfully and/or recklessly aided and abetted and

22  provided substantial assistance to each of the other cross-defendants in committing each of the

23  wrongful acts herein alleged.

24       10.    Cross-complainant is informed and believes that at all times herein mentioned

25  each of the cross-defendants knowingly, willfully and/or recklessly agreed among themselves to

26  perpetrate the wrongful acts herein alleged. Cross-complainant is informed and believes that

27

28

1  each of the cross-defendants did each of the acts herein alleged pursuant to and in furtherance of

2  the conspiracy and above-alleged agreements.  Cross-complainant is informed and believes that

3  each of the cross-defendants furthered the conspiracy by cooperation and by lending aid and

4  encouragement to each of the other cross-defendants in carrying out the conspiracy.

5                              FACTUAL BACKGROUND

6        11.     The Facebook was created as an unincorporated joint venture by Saverin and

7  Zuckerberg in or around early January, 2004.  Saverin and Zuckerberg were undergraduate

8  classmates at Harvard University and members of the same fraternity.  They decided to create an

9  on-line directory, beginning at Harvard and then expanding elsewhere, which would give

10 undergraduates the opportunity to create personal, individual profiles with pictures, and to

11 connect and network socially.  They agreed that Zuckerberg would develop the software and

12 maintain the network, and that Saverin would develop and implement a business model to

13 monetize the network.  As joint venturers, Zuckerberg and Saverin agreed to divide ownership of

14 the business as follows: 2/3 to Zuckerberg and 1/3 to Saverin.  They further agreed that each

15 would have equal say in company decisions.  Zuckerberg and Saverin further agreed that the joint

16 venture would own the software and source code, along with any other intellectual property

17 created and any domain names reserved for the business.

18       12.     On or about January 7, 2004, Saverin contributed the Facebook's initial capital –

19 $1,000 – to pay for server and domain name costs to get the business up and running.

20       13.     The Facebook website launched at Harvard on or around February 4, 2004 and

21 was instantly successful.  Within days of its launch, over 65% of the student population had

22 created personal profiles, or had become "members" of the site.  Zuckerberg and Saverin then

23 expanded the business beyond Harvard and launched on-line directories at other colleges and

24 universities across the country.

25       14.     At the end of February, Zuckerberg expressed the need to enlist the help of

26 another computer programmer to deal with the repetitive technical aspects of network expansion.

27

28

1  At Zuckerberg's suggestion, Zuckerberg and Saverin agreed to ask Dustin Moskovitz

2  ("Moskovitz"), their Harvard classmate and Zuckerberg's roommate, to join the business and

3  fulfill that programming role. They offered him a 5% interest in the business in return for his

4  services. Zuckerberg and Saverin agreed to redistribute ownership in the business as follows:

5  Zuckerberg – 65%; Saverin – 30%; and Moskovitz – 5%.

6        15.     On or about March 30, 2004, Saverin contributed $10,000 more in capital to the

7  business to cover the costs of network servers and to sustain and expand the network in the

8  coming months.

9        16.     By the end of March, 2004, the business had sites at approximately 11 colleges

10  and universities, and had over 30,000 members.

11        17.     On or about April 13, 2004, the business was formally organized as TheFacebook,

12  LLC, a Florida limited liability company. The LLC implemented the joint venture agreement

13  between Zuckerberg and Saverin, and the ownership interests were consistent with those earlier

14  agreed upon: Zuckerberg – 65%; Saverin – 30%; and Moskovitz – 5%. Zuckerberg, Saverin and

15  Moskovitz each were listed as members and managers of the LLC in its Articles of Incorporation.

16        18.     In or around the end of May, 2004, the LLC had reached the point where it had no

17  cash to continue to operate. Saverin and Zuckerberg each agreed to contribute $20,000 of

18  personal funds to the LLC as additional capital to cover essential short term costs. Saverin's

19  agreement to make this investment was expressly conditioned on Zuckerberg's willingness to do

20  the same. Both Zuckerberg and Saverin agreed to deposit the funds in a bank account to be

21  opened in the LLC's name by Saverin.

22        19.     On or about June 16, 2004, Saverin opened a Bank of America checking account

23  in the LLC's name and deposited $18,000 of his own personal funds into the account. Saverin

24  sent to Zuckerberg for Zuckerberg's signature the documents necessary to become a signatory on

25  the account, along with five unsigned, blank checks to be used for the business once Zuckerberg

26  had made his promised deposit and had become a signatory on the account. Zuckerberg,

27  however, never made his promised capital contribution. Further, Zuckerberg never signed the

28

1  documents necessary to become a signatory on the account.

2      20.    At the end of the Harvard academic year, Zuckerberg and Moskovitz went to

3  Silicon Valley to work on the business for the summer. Zuckerberg, Moskovitz and Saverin

4  agreed that Saverin would spend the summer in New York City working to establish and build

5  relationships between the business and potential advertisers and advertising clearing houses, to

6  raise capital for the business, and to define/pursue business development opportunities on the

7  Company's behalf. New York was the logical locale to undertake these efforts because many

8  potential advertising, investors, and business development contacts were located there and on the

9  East Coast.

10      21.    Saverin spent the summer in New York working for the LLC, and succeeded in

11  generating relationships with advertisement representation firms, including Y2M, and with

12  remnant space advertisement networks, and developing a business model and test-run initiatives,

13  including the introduction of sponsored groups or "channels", which are now the primary

14  revenue-generating module for the Company.

15      22.    Saverin received no compensation for his work, notwithstanding the fact that he

16  and Zuckerberg had agreed that they would divide the company profits. Moreover, while in New

17  York, Saverin personally paid all of his own expenses, including the cost of his housing.

18      23.    While Saverin was living and working on the business in New York, Zuckerberg

19  and Moskovitz worked in Silicon Valley as planned. Zuckerberg, however, did not spend all of

20  his time working for the LLC. Instead, he spent significant time writing code for an entirely

21  separate company called "Wirehog", a company in the business of creating file-sharing programs

22  which enable people to share with others, at no cost, music, movies and other types of files which

23  can be downloaded from the internet.

24      24.    Zuckerberg used the funds in the LLC account, including the money deposited by

25  Saverin, to pay for his own living and personal expenses.

26      25.    As the summer of 2004 drew to a close, Zuckerberg decided to remain in Silicon

27  Valley and not to return to Harvard for his junior year. He continued to work on Wirehog.

28

CROSS-COMPLAINT
CASE NO. 105 CV 039867

5

1   documents necessary to become a signatory on the account.

2       20.     At the end of the Harvard academic year, Zuckerberg and Moskovitz went to

3   Silicon Valley to work on the business for the summer. Zuckerberg, Moskovitz and Saverin

4   agreed that Saverin would spend the summer in New York City working to establish and build

5   relationships between the business and potential advertisers and advertising clearing houses, to

6   raise capital for the business, and to define/pursue business development opportunities on the

7   Company's behalf. New York was the logical locale to undertake these efforts because many

8   potential advertising, investors, and business development contacts were located there and on the

9   East Coast.

10      21.     Saverin spent the summer in New York working for the LLC, and succeeded in

11  generating relationships with advertisement representation firms, including Y2M, and with

12  remnant space advertisement networks, and developing a business model and test-run initiatives,

13  including the introduction of sponsored groups or "channels", which are now the primary

14  revenue-generating module for the Company.

15      22.     Saverin received no compensation for his work, notwithstanding the fact that he

16  and Zuckerberg had agreed that they would divide the company profits. Moreover, while in New

17  York, Saverin personally paid all of his own expenses, including the cost of his housing.

18      23.     While Saverin was living and working on the business in New York, Zuckerberg

19  and Moskovitz worked in Silicon Valley as planned. Zuckerberg, however, did not spend all of

20  his time working for the LLC. Instead, he spent significant time writing code for an entirely

21  separate company called "Wirehog", a company in the business of creating file-sharing programs

22  which enable people to share with others, at no cost, music, movies and other types of files which

23  can be downloaded from the internet.

24      24.     Zuckerberg used the funds in the LLC account, including the money deposited by

25  Saverin, to pay for his own living and personal expenses.

26      25.     As the summer of 2004 drew to a close, Zuckerberg decided to remain in Silicon

27  Valley and not to return to Harvard for his junior year. He continued to work on Wirehog.

28
                          CROSS-COMPLAINT
                          CASE NO. 105 CV 039867

                                  5

1    Moskovitz also decided to remain in Silicon Valley and to take a leave of absence from school.

2    Saverin returned to Harvard, intending to take a reduced course load while simultaneously

3    continuing to work for the LLC. He did so with the knowledge and agreement of Zuckerberg and

4    Moskovitz. During this time, based upon information and belief, Moskovitz and/or Zuckerberg

5    continued to draw a salary from the LLC and had some of their living expenses paid for by the

6    LLC. Saverin received no compensation and paid for his own living expenses.

7         26.     Without Saverin's knowledge or consent, Zuckerberg incorporated the Company

8    and created TheFacebook, Inc. on July, 29, 2004. The Bylaws of TheFacebook, Inc. were signed

9    by Zuckerberg as both "Incorporator" and "Secretary". The Bylaws further provided that "the

10    number of directors constituting the entire Board of Directors shall be 1." Upon information and

11    belief, Zuckerberg was the sole Director at that time.

12         27.     On October 19, 2004, counsel for the Company presented Saverin with four

13    documents to be executed: 1) two Common Stock Purchase Agreements, 2) Exchange

14    Agreement, and 3) Holder Voting Agreement (the "October, 2004 Agreements"). Counsel for

15    the Company informed Saverin that if he executed these Agreements, he would own a total of

16    1,328,334 common shares in the Company.

17         28.     On or about October 30, 2004, Zuckerberg provided Saverin a schedule which

18    showed what the ownership interests would be in the new Company. The schedule reflected the

19    following interests: Zuckerberg – 51.01 % (1,969,724 shares); Saverin – 34.4% (1,328,334

20    shares); and Moskovitz – 6.81% (263,056 shares). In addition, a fourth individual, Sean Parker

21    ("Parker"), who had joined the business sometime earlier without Saverin's knowledge, was to

22    receive 6.47% (250,000 shares). The law firm retained by Zuckerberg to represent the Company

23    was to receive 1.29%.

24         29.     Zuckerberg told Saverin that the Company and its ownership structure was

25    consistent with, and implemented and continued the ownership structure they had agreed upon as

26    joint venturers in January, 2004, slightly modified to take into consideration the addition of

27    Moskovitz and then Parker to the business. Zuckerberg further told Saverin that Saverin would

28

1   receive 34% of the Company, and not 30% as the two had agreed originally when forming the

2   LLC, because the business had found an investor and Saverin's 34% interest would be diluted, on

3   a *pro rata* basis along with the others, to the original 30% amount shortly thereafter by the

4   anticipated investor.  Zuckerberg also assured Saverin that, going forward, the shares of

5   Zuckerberg, Saverin, Moskovitz and others would be similarly diluted and on a *pro rata* basis.

6       30.    Relying upon Zuckerberg's representations that Saverin would have the same

7   ownership interest in the Company as he did in the LLC – 30% – , Saverin executed the October,

8   2004 Agreements.

9       31.    When Saverin executed the October, 2004 Agreements, he was unaware that

10  Zuckerberg would have the power to, and indeed planned to, dilute Saverin's ownership interest

11  in the Company just three months later by causing the Company to issue millions of additional

12  shares to himself and his colleagues.

13      32.    In order to induce Saverin to execute the October, 2004 Agreements, Zuckerberg

14  and his counsel led Saverin to believe that the Common Stock Purchase Agreements he was to

15  sign were substantively identical (other than the amounts of stock issued) to those signed by

16  Zuckerberg and Moskovitz.  They failed to inform and concealed from Saverin that the Common

17  Stock Purchase Agreements, in fact, differed in material respects.  Among other differences,

18  Saverin's Common Stock Purchase Agreements provided that he would receive vested shares,

19  whereas the Agreements signed by Zuckerberg and Moskovitz provided for the purchase of both

20  vested and unvested shares.  This fact was intentionally concealed from Saverin.

21      33.    The Common Stock Purchase Agreements signed by Zuckerberg and Moskovitz

22  differed from the one signed by Saverin in another significant respect.  Saverin's version

23  contained a general release of all claims against the Company and Zuckerberg that existed as of

24  the date the contracts were executed.  The versions signed by Zuckerberg and Moskovitz

25  contained no release.

26      34.    After Saverin executed the October, 2004 Agreements, he continued to work on

27  generating revenue for the Company.  He communicated with the Company regarding his efforts

28

CROSS-COMPLAINT
CASE NO. 105 CV 039867

7

1    to coordinate advertisement sales and placements, manage remnant space advertising, and other
2    business development and capital raising efforts. During the period February, 2004 to January,
3    2005, a significant amount of the revenues earned by the Company were the direct result of
4    Saverin's efforts.

5        35.     Zuckerberg, Parker and others at the Company continued to ask Saverin to
6    perform specific tasks, which he did. Saverin was invited by Zuckerberg to travel to California at
7    the expense of the Company to attend a party in December 2004 to celebrate the Company's one
8    millionth member.

9        36.     At no time before the present dispute arose in April, 2005, did Zuckerberg or any
10   one else from the Facebook express to Saverin that they were dissatisfied with his work
11   performance or with the fact that he was not physically located in California. Nor did
12   Zuckerberg or anyone else from the Facebook ask Saverin to cease his efforts on behalf of the
13   Company.

14       37.     By March, 2005, the Facebook had been contacted by venture capital firms and
15   other investors interested in investing in the Company. Zuckerberg advised Saverin in an e-mail
16   that he (and possibly Moskovitz and Parker) were intending to sell over $2 million worth of their
17   own shares. Zuckerberg said Saverin would be able to sell shares of his stock as well.

18       38.     In early April, 2005, Zuckerberg asked Saverin to come to California to attend a
19   business meeting and to train a new hire. When Saverin arrived, he was presented with a series
20   of documents to sign.

21       39.     The documents presented to Saverin on April 4, 2005, included: (1) a January 14,
22   2005 Action by Written Consent of the Stockholders of TheFacebook, Inc.; (2) a March 28, 2005
23   Action by Written Consent of the Stockholders of TheFacebook, Inc.; (3) an April 4, 2005
24   Action by Written Consent of the Stockholders of TheFacebook, Inc.; and (4) a September 4,
25   2004 Consulting Agreement. This was the first time Saverin had seen the documents.

26       40.     The January 14, 2005 "Action by Written Consent of the Stockholders of
27   TheFacebook, Inc." purported to ratify an "Amended and Restated Certificate of Incorporation of

28

1   the Company" (the "Restated Charter"), which increased the number of shares the Company was

2   authorized to issue up to 19,000,000 common shares. Unbeknownst to Saverin, Zuckerberg had

3   caused the Company to file the Restated Charter in February, 2005. The Restated Charter recites

4   that it was signed by Zuckerberg on January 8, 2005 and duly adopted by the Company's

5   shareholders when, in fact, it had not been.

6           41.    The March 28, 2005 "Action by Written Consent of the Stockholders of

7   TheFacebook, Inc." purported to ratify a "Second Amended and Restated Certificate of

8   Incorporation of the Company" which, among other things, authorized the issuance of up to

9   20,890,000 shares of common stock by the Company.

10          42.    The April 4, 2005 "Action by Written Consent of the Stockholders of

11  TheFacebook, Inc." purported to approve the Company's prior issuance of approximately

12  3,300,000 additional shares of common stock to Zuckerberg; 2,000,000 additional shares to

13  Moskovitz; and over 2,000,000 additional shares to Parker.

14          43.    Prior to seeing these documents on April 4, 2005, Saverin was unaware that the

15  Company secretly had issued these millions of additional shares to Zuckerberg, Moskovitz and

16  Parker.

17          44.    In April, 2005, Saverin also learned for the first time that his purported ownership

18  interest in the Company was significantly less than he was led to believe as a result of the

19  issuance of millions of shares of the Company's stock to Zuckerberg, Parker and Moskovitz.

20          45.    Zuckerberg and attorneys at Orrick, Herrington & Sutcliffe ("Orrick") -- the firm

21  to which the Company's attorney had moved-- continually pressured Saverin to sign the consents

22  in order that the venture capital deal could be finalized.

23          46.    Saverin retained legal counsel in early April, 2005, after his meeting with

24  Zuckerberg and the Orrick attorney. On April 20, 2005, Saverin notified Zuckerberg that the

25  stock issued to Zuckerberg, Moskovitz and Parker was unauthorized and without legal effect and

26  that Saverin retained a 30% interest in the Company.

27          47.    The following day, April 21, 2005, Saverin was informed by the Company that he

28

1   no longer had any role at the Company, was to cease all activities on the Company's behalf, and

2   should no longer communicate with the Company's advertisers. His name was removed

3   immediately from Facebook's home page and he was no longer listed as one of the Company's

4   co-founders. His Facebook e-mail account was frozen.

5       48.    Notwithstanding the fact that Saverin refused to sign the consents, the Facebook

6   closed a venture capital investment with Accel Partners during the end of April, 2005. Upon

7   information and belief, Zuckerberg and others sold over $2 million worth of their shares. Saverin

8   was not afforded the opportunity to sell any of his shares.

9   FIRST CAUSE OF ACTION

10  (Breach of Fiduciary Duty, Against Zuckerberg and Roes 1-10)

11      49.    Saverin repeats and re-alleges the allegations of paragraphs 1-48 of the Cross-

12  Complaint as if fully set forth herein.

13      50.    Saverin and Zuckerberg created Facebook.com as a joint venture. Zuckerberg and

14  Saverin agreed that Saverin would own a 1/3 interest in the Company and Zuckerberg would own

15  a 2/3 interest in the Company.

16      51.    On or about April 13, 2004, the business was formally organized as a Florida

17  limited liability company. The LLC implemented the joint venture agreement between

18  Zuckerberg and Saverin, the ownership interests being consistent with those earlier agreed upon,

19  with the addition of Moskovitz: Zuckerberg – 65%; Saverin – 30%; and Moskovitz – 5%.

20  Zuckerberg, Saverin and Moskovitz each were listed as members and managers of the LLC in its

21  Articles of Incorporation.

22      52.    At all times relevant, Zuckerberg was a member of the LLC, and later CEO,

23  Director and majority shareholder of the Company, and owed a fiduciary duty to Saverin.

24      53.    In his capacities, Zuckerberg owed Saverin, as a member of the LLC and a

25  minority shareholder of the Company, a fiduciary duty not to engage in conduct which would

26  benefit cross-defendants to the detriment of Saverin.

27      54.    By attempting to freeze Saverin out of the business by dramatically diluting

28

CROSS-COMPLAINT<br/>CASE NO. 105 CV 039867

10

1    Saverin's equity interest, by fraudulently inducing Saverin to agree to exchange his shares in the

2    LLC for shares in the Company, to give up his voting rights, and to sign a general release of

3    claims that existed at the time the contracts were signed, and by depriving him of the opportunity

4    to continue to work for and be involved in the business, Zuckerberg breached his fiduciary duty

5    as a co-joint venturer and majority member of the LLC, and as majority shareholder, CEO and

6    Director of the Company.

7         55.    By improperly causing the Company to issue millions of additional shares of

8    common stock to himself and others, which resulted in the dilution of Saverin's interest,

9    Zuckerberg also breached that fiduciary duty.

10        56.    Zuckerberg further breached the fiduciary duty owed to Saverin by, among other

11   things, selling shares of common stock to Accel Partners in connection with Accel's investment,

12   and depriving Saverin of the opportunity to do likewise.

13        57.    Saverin is informed and believes that at the time Zuckerberg misrepresented,

14   failed to disclose, falsely promised, concealed facts and breached the fiduciary duties herein

15   alleged, cross-defendants knew the undisclosed facts were neither known by or readily accessible

16   to Saverin, and that Saverin was relying on, trusting, confiding in and expecting cross-defendants

17   to act in good faith regarding Saverin's interests.

18        58.    Saverin is informed and believes that Zuckerberg's breach of his fiduciary duty to

19   Saverin was done with the intent to defraud and deceive Saverin for the purpose of furthering

20   cross-defendants' own self-interests, and for the purpose of inducing Saverin to act in the manner

21   herein alleged, including entering the October, 2004 Agreements on terms unfavorable to

22   Saverin.

23        59.    As a proximate result of Zuckerberg's breach of fiduciary duty owed to Saverin,

24   Saverin has and will incur damages according to proof in an amount which exceeds the

25   jurisdictional limit of this Court.

26        60.    Saverin is informed and believes that the wrongful acts of Zuckerberg described

27   herein were done willfully, maliciously, oppressively and fraudulently, and Saverin therefore is

28

1  entitled to punitive and exemplary damages in an amount to be obtained according to proof,

2  which is appropriate to punish or set an example of Zuckerberg.

3                              SECOND CAUSE OF ACTION

4        (Fraud, Against Zuckerberg, Facebook, Inc., TheFacebook, LLC and Roes 1-20)

5        61.    Saverin repeats and re-alleges the allegations of paragraphs 1-60 of the Cross-

6  Complaint as if fully set forth herein.

7        62.    To induce Saverin to sign the October, 2004 Agreements, Zuckerberg, as a

8  member of the LLC and later majority shareholder, CEO and Director of the Company,

9  intentionally misrepresented, failed to disclose, falsely promised and actively concealed from

10  Saverin, among other things, that 1) Saverin would maintain the same ownership interest in the

11  Company as he did in the LLC; and 2) the terms of the Common Stock Purchase Agreements to

12  be signed by Saverin, Zuckerberg and Moskovitz were substantively identical.

13        63.    Zuckerberg presented Saverin with a shareholder schedule that showed that the

14  Company's ownership structure was consistent with, and implemented and continued the

15  ownership structure they had agreed upon as joint venturers in January, 2004, slightly modified

16  to take into consideration the addition of Moskovitz and then Parker to the business.  Zuckerberg

17  represented that Saverin would receive 34% of the new Company, and not 30% as the two had

18  agreed initially, because Saverin's 34% would be diluted on a *pro rata* basis in the same manner

19  as the stock of the others, to the original 30% amount.  Zuckerberg also assured Saverin that,

20  going forward, the shares of Zuckerberg, Saverin, Moskovitz and others would be similarly

21  diluted and on a *pro rata* basis.

22        64.    Zuckerberg's misrepresentations and promises were false, and Zuckerberg failed

23  to disclose and actively concealed the truth from Saverin including, but not limited to, the fact

24  that Saverin would not receive the same ownership interest in the Company as he had in the LLC,

25  but rather that the Agreements would allow Zuckerberg to issue millions of additional common

26  shares to himself and others, with the effect of diluting Saverin's interest in the Company,

27  directly contrary to Zuckerberg's representations; and that the Common Stock Purchase

28

CROSS-COMPLAINT
CASE NO. 105 CV 039867

12

1  Agreements were not identical, but rather that Zuckerberg and Moskovitz were to receive both

2  vested and unvested shares (unlike Saverin) and that Saverin's version of the Agreement

3  contained a general release of claims against the Company and Zuckerberg, whereas the

4  Agreement signed by Zuckerberg and Moskovitz contained no release at all.

5      65.    Saverin is informed and believes that cross-defendants, including the Company

6  and the LLC, authorized and ratified Zuckerberg's intentional misrepresentations, false promises,

7  failures to disclose and active concealment described herein.

8      66.    Saverin justifiably relied on Zuckerberg's false representations and promises in

9  signing the October, 2004 Agreements. Saverin's reliance on Zuckerberg's false representations

10  and promises was reasonable because Zuckerberg presented Saverin with a shareholder schedule

11  which showed that Saverin would receive the same ownership interest in the Company as he had

12  in the LLC, because Saverin believed Zuckerberg to be honest, and because Zuckerberg failed to

13  disclose and actively concealed the true facts from Saverin.

14      67.    Saverin, at the time these acts and omissions were made by Zuckerberg, and at the

15  time Saverin signed the October, 2004 Agreements, was ignorant of the falsity of Zuckerberg's

16  representations and promises and believed them to be true and believed that Zuckerberg had

17  disclosed all material facts to Saverin.

18      68.    Saverin is informed and believes that Zuckerberg knew that his misrepresentations

19  and promises were false when he made them and/or made the misrepresentations and promises

20  recklessly and without regard for the truth and with no intent of performing.

21      69.    In reliance on Zuckerberg's false representations and promises, and the belief that

22  Zuckerberg had disclosed and not concealed all material facts, Saverin was induced to and did,

23  among other things, enter into the October, 2004 Agreements. Had Saverin known the true facts,

24  he would not have signed the Agreements.

25      70.    As a proximate result of Zuckerberg's intentional misrepresentations, false

26  promises, failures to disclose and active concealment, Saverin has and will incur damages

27  according to proof in an amount which exceeds the jurisdictional limit of this Court.

28

CROSS-COMPLAINT
CASE NO. 105 CV 039867

13

71.     Saverin is informed and believes and on that basis alleges that Zuckerberg's intentional misrepresentations, false promises, non-disclosures and active concealment were done willfully, maliciously, fraudulently and oppressively, and were authorized and ratified by the cross-defendants, including the Company and the LLC.  Saverin therefore is entitled to punitive and exemplary damages in an amount to be obtained according to proof, which is appropriate to punish or set an example of cross-defendants.

### THIRD CAUSE OF ACTION

(Negligent Misrepresentation,

Against Zuckerberg, Facebook, Inc., TheFacebook, LLC and Roes 1-30)

72.     Saverin repeats and re-alleges the allegations of paragraphs 1-71 of the Cross-Complaint as if fully set forth herein.

73.     To induce Saverin to sign the October, 2004 Agreements, Zuckerberg negligently misrepresented to Saverin that 1) Saverin would maintain the same 30% ownership interest in the Company as he did in the LLC; and 2) the Common Stock Purchase Agreements to be signed by Saverin, Zuckerberg and Moskovitz were substantively identical.

74.     Zuckerberg presented Saverin with a shareholder schedule that showed that Zuckerberg, Moskovitz and Saverin each would receive common shares representing ownership interests in the Company that were the same as their respective ownership interests in the LLC. Zuckerberg assured Saverin that the new Company and its ownership structure would be consistent with and implemented according to the ownership structure Zuckerberg and Saverin had agreed upon as joint venturers in January, 2004.  Zuckerberg represented that Saverin would receive 34% of the new Company, and not 30% as the two had agreed initially, because Saverin's 34% would be diluted on a *pro rata* basis in the same manner as the stock of the others, to the original 30% amount.

75.     Zuckerberg further negligently omitted to inform Saverin of the differences between the Common Stock Purchase Agreement Saverin was presented to sign, and those signed by himself and Moskovitz.  Specifically, Zuckerberg failed to inform Saverin that

1  Zuckerberg and Moskovitz were to receive both vested and unvested shares (unlike Saverin) and

2  that Saverin's version of the Agreement contained a general release of Facebook, Inc., and of

3  Zuckerberg, whereas the Agreement signed by Zuckerberg and Moskovitz contained no release.

4      76.   Zuckerberg had no reasonable grounds for believing that his representations were

5  true when made.  Specifically, Zuckerberg knew or should have known that the October, 2004

6  Agreements would result in dilution of Saverin's interest in the Company below 30% and in a

7  manner different from the dilution of the shares of Zuckerberg and Moskovitz.  Further,

8  Zuckerberg knew or should have known that the Agreement presented to Saverin differed in

9  material respect from the Agreements to be signed by Zuckerberg and Moskovitz.

10      77.   Zuckerberg intended that Saverin would rely on Zuckerberg's misrepresentations

11  by signing the Agreements.  Indeed, the sole purpose of the misrepresentations was to induce

12  Saverin to sign the Agreements.

13      78.   Saverin justifiably and reasonably relied on Zuckerberg's negligent

14  misrepresentations and omissions in signing the October, 2004 Agreements.  Saverin's reliance

15  on Zuckerberg's negligent misrepresentations and omissions was reasonable because Zuckerberg

16  presented Saverin with a shareholder schedule which showed that Saverin would receive the

17  same ownership interest in the Company as he had in the LLC, because Saverin believed

18  Zuckerberg to be honest, and because Zuckerberg negligently represented and failed to omit the

19  true facts from Saverin.  Had Saverin known the truth, he would not have executed the October,

20  2004 Agreements.

21      79.   As a proximate result of Zuckerberg's misrepresentations, Saverin has and will

22  incur damages according to proof in an amount which exceeds the jurisdictional limit of this

23  Court.

                          **FOURTH CAUSE OF ACTION**

24

25      (Interference with Prospective Economic Advantage, Against Zuckerberg and Roes 1-40)

26      80.   Saverin repeats and re-alleges the allegations of paragraphs 1-79 of the Cross-

27  Complaint as if fully set forth herein.

28                      CROSS-COMPLAINT
                    CASE NO. 105 CV 039867

81.     Saverin at all times herein relevant had a prospective economic advantage, including on-going and future business with the Company and ownership interest in the LLC and the Company, which contained the probability of future economic benefit to Saverin in the form of on-going business contacts with advertisers, increased revenue for the Company and future profits, which all would benefit Saverin as a shareholder of the Company.

82.     Cross-defendants were at all times herein relevant aware of Saverin's prospective economic advantage and interfered with those future economic benefits by, among other things, attempting to force Saverin out of the business by dramatically diluting Saverin's equity interest, by fraudulently inducing Saverin to agree to exchange his shares in the LLC for shares in the Company, to give up his voting rights, to sign a general release of claims that existed at the time the contracts were signed, and by depriving him of the opportunity to continue to work for and be involved in the business.

83.     Cross-defendants' acts and omissions as herein alleged were done by the cross-defendants with the intent to interfere with Saverin's prospective economic advantage as herein alleged, thereby preventing Saverin from obtaining the benefit of his investment in and work for the Company, and his stock ownership interest in the Company.

84.     As a proximate result of the cross-defendants' interference with Saverin's prospective economic advantage, Saverin has and will suffer damages according to proof in an amount in excess of the jurisdictional limits of this Court.

85.     The wrongful acts of the cross-defendants were done willfully, maliciously, fraudulently and oppressively and Saverin, therefore, is entitled to punitive and exemplary damages in an amount to be obtained according to proof, which is appropriate to punish or set an example of cross-defendants.

FIFTH CAUSE OF ACTION

(Unjust Enrichment, Against Zuckerberg and Roes 1-50)

86.     Saverin repeats and re-alleges the allegations of paragraphs 1-85 of the Cross-Complaint as if fully set forth herein.

87.     By causing the Company to issue himself millions of shares of common stock in or around February, 2005, Zuckerberg unjustly enriched himself at the direct expense of Saverin, the only stockholder whose interests were diluted by Zuckerberg's actions.

88.     As a result, Zuckerberg has been unjustly enriched in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

(Unjust Enrichment, Against Facebook, Inc., TheFacebook, LLC, and Roes 1-50)

89.     Saverin repeats and re-alleges the allegations of paragraphs 1-88 of the Cross-Complaint as if fully set forth herein.

90.     The Company and the LLC accepted and reaped the benefit of Saverin's work and efforts on behalf of the Company and the LLC in securing advertisers, without paying him.

91.     The Company and the LLC benefitted from Saverin's investments of his own personal funds to keep the business running.

92.     The Company and the LLC have been unjustly enriched by Saverin's work and investment of his own personal funds on their behalf in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION

(Declaratory Judgment, Against All Cross-Defendants)

93.     Saverin repeats and re-alleges the allegations of paragraphs 1-92 of the Cross-Complaint as if fully set forth herein

94.     An actual controversy exists between Saverin and the cross-defendants over Saverin's rights and interests in the Company and the LLC.

95.     Saverin seeks a declaration from the Court concerning those rights and interests, including, but not limited to a declaration that: 1) Saverin has a 30% ownership interest in the Company (subject to the dilution on the same basis as the ownership interest of Zuckerberg and Moskovitz); 2) Saverin is entitled to vote the shares he owns; 3) Saverin's ownership interest in the Company cannot be diluted by future issuances by the Company on a basis different from that of Zuckerberg and Moskovitz; and 4) the release contained in the October, 2004 Agreements is

1   void and unenforceable.

2       **WHEREFORE**, Saverin prays that this Court:

3       A.    Enter judgment on all Causes of Action in his favor;

4       B.    For damages according to proof;

5       C.    For punitive damages according to proof;

6       D.    For costs and attorney's fees incurred herein as permitted by law; and

7       E.    For such other relief as the Court deems just and proper.

8

9                     **JURY DEMAND**

10       Cross-Complainant demands a trial by jury.

11

12   Dated: April 24, 2006           STEYER LOWENTHAL BOODROOKAS
                           ALVAREZ & SMITH LLP

13

14                         By:

15                         ALLAN STEYER
                           Attorneys for Cross-Complainant Eduardo
                           Saverin

16

17

18

19

20

21

22

23

24

25

26

27

28

                      CROSS-COMPLAINT
                      CASE NO. 105 CV 039867

1

<u>PROOF OF SERVICE BY HAND DELIVERY</u>

2    I am employed in the County of San Francisco, State of California. I am over the age

3 of eighteen years and not a party to the within action; my business address is One California

4 Street, Third Floor, San Francisco, California 94111.

5    On the date set forth below, I served the following document:

6     **CROSS-COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY;**
      **(2) FRAUD; (3) NEGLIGENT MISREPRESENTATION;**

7    **(4) INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**
      **(5) UNJUST ENRICHMENT; AND (6) DECLARATORY RELIEF**

8

[x]  by sending the true copies thereof as designated below:

9

[x]  by placing [ ] the original [x] a true copy thereof enclosed in a sealed envelope

10    addressed as follows:

11 James E. Burns, Jr.
  Penelope A. Graboys

12 Justin Myer Lichterman
  Justina M. Walukiewicz

13 Orrick, Herrington & Sutcliffe LLP
  The Orrick Building

14 405 Howard Street
  San Francisco, CA 94105-2669

15

16 [x]  BY HAND DELIVERY. I caused such envelope to be delivered by hand to the offices
     of the addressee following ordinary business practices.

17

18    I declare under penalty of perjury under the laws of the State of California that the

19 foregoing is true and correct.

20    Executed on April 24, 2006 at San Francisco, California.

21

22            _Linda Rorem_
            Linda Rorem

23

24

25

26

27

28

S:\Facebook\Proofs\Proof - Hand.wpd