# EXHIBIT 1

Dockets.Justia.com

1

1          UNITED STATES DISTRICT COURT

2          DISTRICT OF MASSACHUSETTS

3   --------------------------------
    CONNECTU, INC., et al,             :    Civil Action
4                        Plaintiff     :    No. 07-10593-DPW
                                       :
5            V.                        :    Courtroom No. 1
                                       :    1 Courthouse Way
6                                      :    Boston, MA 02210
    FACEBOOK, INC., et al,             :    2:30 p.m., Wednesday
7                        Defendant     :    July 25, 2007
    --------------------------------

8
                    Motion Hearing
9


10
    Before:        THE HONORABLE DOUGLAS P. WOODLOCK,
11                    UNITED STATES DISTRICT JUDGE

12


13  APPEARANCES:

14  Finnegan, Henderson, Farabow, Garrett & Dunner, LLP,
      (by John F. Hornick, Esq., Margaret A. Esquenet, Esq.
15      and Meredith Schoenfeld, Esq.)
        901 New York Ave., NW, Washington, DC 2001-4413,
16      on behalf of the Plaintiffs.

17  Griesinger, Tighe & Maffei, LLP,
        (by Scott McConchie, Esq.)
18        176 Federal Street, Boston, MA 02110-2214,
        on behalf of the Plaintiffs.
19
    Holland & Knight LLP, (by Daniel K. Hampton, Esq.),
20      10 St. James Avenue, Boston, MA 02116,
        on behalf of the Defendant, Eduardo Saverin.
21
    Orrick, Herrington & Sutcliffe, LLP, (by I. Neel
22      Chatterjee, Esq. and G. Hopkins Guy, III, Esq.),
        1000 Marsh Road, Menlo Park, CA 94025-1021,
23      on behalf of the Defendants.

24  Heller Ehrman, LLP, (by Annette L. Hurst, Esq.),
        333 Bush St., San Francisco, CA 94104-2878,
25      on behalf of the Defendant, Eduardo Saverin.

1          THE CLERK:  ConnectU, Inc. v. Facebook, Inc.,
07-10593.

2          THE COURT:  Well, let me approach this a little

3   bit differently with the parties.  I guess,

4   Mr. Chatterjee, you're going to speak generally for the

5   defendants?

6          MR. CHATTERJEE:  Your Honor, I'll be speaking for

7   all of the defendants, except Eduardo Saverin, who is

8   represented by Ms. Hurst.

9          THE COURT:  Okay.

10         Let me understand from you what difference this

11  proliferation of claims is going to have before this is in

12  discovery.

13         MR. CHATTERJEE:  Thank you, your Honor.

14         I think there are a couple of differences that

15  this proliferation of claims has, two in particular.

16         The first one is basically this case, I think

17  your Honor correctly noted at the last hearing, has kind

18  of spun in a lot of directions and somewhat out of

19  control.  And, what we see in the current complaint is

20  actually broader than the complaint that was filed by

21  ConnectU, LLC, which is a different entity than the

22  plaintiff here, today, and in this case.

23         THE COURT:  The original complaint, not the

24  amended complaint?

25         MR. CHATTERJEE:  No, the original complaint and

1    things.  That's a legal call.

2              The unjust enrichment claim, obviously, they've

3    pled a lot of causes of action here and there is -- there

4    are adequate remedies along that should not be in the

5    case.

6              As far as, you know --

7              THE COURT:  You mean where there's an adequate

8    remedy you don't have unjust enrichment?

9              MR. CHATTERJEE:  It may be an available damage

10   under other causes of action.  But, for example, a

11   copyright infringement, there's going to be an adequate

12   remedy of law or remedy associated with the copyright

13   infringement for which unjust enrichment shouldn't be

14   available.  Or, to the extent that they think there is

15   something separate, perhaps your Honor's suggestion as to

16   Twombly is correct and they need to provide detailed

17   factual allegations.  I would support that kind of

18   pleading.

19             THE COURT:  All right.

20             Well, let me understand from the plaintiff why

21   these aren't just for consideration.

22             MR. HORNICK:  Well, your Honor, would you like me

23   to address all those points or did you have a paricular

24   question?

25             THE COURT:  Well, this.  This is a -- it's not

1  been a long time to mount every complaint --

2        MR. HORNICK:  Yes.

3        THE COURT:  -- here.

4        In fact, you appeared with this one almost

5  simultaneously with the dismissal of the case.  It remains

6  notice pleading here.

7        Now, tell me what is different with the factor

8  through the prism of copyright preemption.  What's

9  different here?

10       You're using the complaint itself.  Maybe the way

11 to deal with it is just to start with the questions and a

12 contract.  Go over the terms and conditions of the

13 contract.

14       MR. HORNICK:  Well, the contract, your Honor --

15 I'll just turn to my notes here.

16       THE COURT:  What were the terms and conditions of

17 the contract?

18       MR. HORNICK:  The contract was that

19 Mr. Zuckerberg was going to complete the Harvard

20 connection code and he was going to become a member of the

21 Harvard connection team to help finish the website, launch

22 it, help it grow, and profit from the case success.

23       THE COURT:  Okay.  Now, let's assume that he

24 finished the code and they refused to let him be part of a

25 team.  How would you oppose the contract?

```
 1            MR. HORNICK:  Well, there's no allegation that
 2   they refused to allow him --
 3            THE COURT:  No.  The way we're looking at the
 4   bilateral character of the contract that you just
 5   identified.  And, I want to know what the terms and
 6   conditions are.  You've given me this kind of loose --
 7            MR. HORNICK:  No, your Honor.  I've --
 8            THE COURT:  Just a moment.
 9            You've given me this kind of loose description.
10   I've been through your complaint.  It's gossimer thin on
11   the question of contract, as a contract.  And so, I'm
12   giving you an opportunity to tell me what the contract is
13   and what the terms and conditions of the contract are.
14            MR. HORNICK:  We are, as I was saying, the
15   service that Mr. Zuckerberg was supposed to provide under
16   the contract was to finish the Harvard connection code, to
17   become a member of the team, and wherever that meant, to
18   help get this website launched and --
19            THE COURT:  Now, this is a contract, the object
20   of which is whatever that meant?
21            MR. HORNICK:  No, your Honor.  This is --
22            THE COURT:  I didn't follow you.  That's why I
23   made the statement.
24            MR. HORNICK:  I said it's to become a member of
25   the team.  And, once you become a member of a team who's
```

1  going to launch a website, there are a lot of things that

2  you would do.  But, as a member of the team, you would do

3  anything that is needed to be done to launch that website

4  because you are going to be profiting from it.  So --

5          THE COURT:  What are you going to receive?

6          MR. HORNICK:  What you're going to receive

7  immediately is sweat equity.

8          THE COURT:  Whatever do you mean?  A third?

9          MR. HORNICK:  No.  The parties were thinking

10  about a quarter.

11          THE COURT:  They were thinking about a quarter,

12  but they hadn't said anything --

13          MR. HORNICK:  No, no.

14          THE COURT:  -- about a quarter?

15          MR. HORNICK:  Your Honor, they were thinking

16  about a quarter at the time because there were four people

17  at the time.

18          THE COURT:  Right.

19          And, there was an agreement that there would be a

20  quarter?

21          MR. HORNICK:  That is our position, yes.

22          THE COURT:  Where is that in the complaint?

23          MR. HORNICK:  The complaint does not say how much

24  or what percentage Mr. Zuckerberg --

25          THE COURT:  Isn't that an important term or

1  condition of the contract?

2        MR. HORNICK:  Yes, it is, your Honor.

3        THE COURT:  Okay.

4        MR. HORNICK:  But, I --

5        THE COURT:  But, it's not in the complaint?

6        MR. HORNICK:  That is not in the complaint, no.

7  But, the complaint does say that Mr. Zuckerberg would

8  obtain equity in exchange for --

9        THE COURT:  What does "equity" mean?  You've got

10 to describe it with some degree of particularity.

11       MR. HORNICK:  Well, your Honor --

12       THE COURT:  You're going to have to prove it with

13 some degree of particularity.

14       MR. HORNICK:  Proving it I don't view as a

15 difficulty.  Pleading it, I also don't view as a

16 difficulty.  If necessary, we can amend the complaint.

17       But, at the time, we believed --

18       THE COURT:  It would be your third amendment?

19       MR. HORNICK:  No, your Honor.  I would actually

20 view it as the second and I'll tell you why.

21       There are substantially no differences between --

22 in the facts that are alleged -- between the original

23 complaint, the amended complaint and the complaint filed

24 in this new case --

25       THE COURT:  Is there a new cause of action in

1   this complaint?

2           MR. HORNICK:  There is one new claim.  There are

3   no new causes of action.

4           THE COURT:  May I suggest the use of numbers here

5   because it's a little bit elusive?

6           MR. HORNICK:  Yes.  The tenth -- there were nine

7   -- there were -- I believe there were eight claims, seven

8   claims in the original complaint.  The amended complaint I

9   believe -- I'd have to check, but I believe that added

10  copyright in the 93A claim.

11          The complaint in this case --

12          THE COURT:  That's the second one.  Now, there's

13  a third one.

14          MR. HORNICK:  And, in this case, the new case --

15          THE COURT:  This is the third one.  Right?

16          MR. HORNICK -- the third complaint, yes.  This

17  adds the tenth claim which is the breach of confidence.

18          Now, the reason that I said that amending would

19  only be the second try, really, is because when we served

20  the original complaint, the defendants didn't answer

21  before we amended.  We amended the complaint and added the

22  copyright claim and the 93A claim.  And, then, they

23  answered without any objections to pleading sufficiency.

24          THE COURT:  Do they have to?

25          MR. HORNICK:  They do not have to, no, your

1  Honor.  But, then, what we refiled was essentially the

2  same facts.  We didn't see any reason to beef up the facts

3  because they didn't complain about pleading sufficiency

4  the first time around.  So, we did actually beef up some

5  of the facts.  We added anything that they admitted from

6  the answer to the amended complaint.  We also expanded on

7  some of the other facts.  But, we didn't see a reason to

8  expand them any more because they didn't object the first

9  time.

10            So, now, we're being told no, it's not

11  sufficient, you need to plead more facts.  I can plead

12  more facts.  But, I would argue that it's not necessary

13  under the prevailing standards in Bell Atlantic.

14            THE COURT:  Do you want to go forward on your

15  third complaint or not, understanding that this would be

16  without -- with prejudice as to any of the claims?  Or, do

17  you want an opportunity to replead?

18            MR. HORNICK:  You're asking me:  Do I want to

19  stand on the complaint as we filed it?

20            THE COURT:  Yes.

21            MR. HORNICK:  With no prejudice to amend it at

22  any time later on?

23            THE COURT:  Right.

24            MR. HORNICK:  Well --

25            THE COURT:  Without -- with no prejudice --

1    excuse me -- with prejudice in this case, if claims are

2    found to be insufficient as alleged.

3            MR. HORNICK:  Well, faced with that question,

4    your Honor, I think I would have to say that I'd prefer to

5    amend.

6            THE COURT:  M-hm.

7            MR. HORNICK:  I would be crazy not to say that in

8    the face of that question.

9            THE COURT:  And, will this amendment then tell us

10   what the terms and conditions of the contract are?  That

11   is 25 or 24 or 26 or 27?  Or, will it just say that's what

12   we're kind of thinking about?

13           MR. HORNICK:  The amendment will say that at the

14   time Mr. Zuckerberg joined the team, the parties intended

15   that he would obtain 25 percent of the profits if any

16   profits that came --

17           THE COURT:  Not just the parties' intention, the

18   parties' agreement, you alleged a contract.  There was an

19   agreement that he would receive 25 percent.  Is that what

20   you're saying?

21           MR. HORNICK:  Yes, your Honor.  And, an agreement

22   expresses the parties' intent and that's what the contract

23   would say.

24           THE COURT:  No.  An agreement may express the

25   parties' intent and it may not.

```
 1          MR. HORNICK:  If it's a vague contract, yes, I
 2   would agree, that it might not express the parties' intent
 3   --
 4          THE COURT:  It might be no contract at all.
 5          MR. HORNICK:  What we're talking about here is
 6   not a written contract.  We're talking about an oral
 7   contract --
 8          THE COURT:  A written contract or an oral
 9   contract that absolutely included all the relevant and
10   material terms and conditions and understanding that this
11   is an oral contract in which they agreed that there would
12   be a 25 percent allocation among the four individuals
13   involved.
14          MR. HORNICK:  At that time, yes.
15          THE COURT:  Well, that's the time that the
16   contract was --
17          MR. HORNICK:  Yes.
18          But, what Im trying to get at, your Honor, is
19   that that percentage could change depending on whether the
20   parties didn't perform equally.
21          THE COURT:  And --
22          MR. HORNICK:  And, there was other consideration
23   as well.
24          THE COURT:  And, this unfolding contract that
25   we're learning a bit more about now, it changes over a
```

1  period of time?  And, the parties agreed that it would

2  change over a period of time?

3           MR. HORNICK:  Yeah.  I think that's the nature of

4  any oral contract or implied contract.

5           THE COURT:  Oh, not necessarily.  That's the

6  nature of an illusory contract.

7           MR. HORNICK:  No.  The parties could always agree

8  to change their --

9           THE COURT:  They could.  They could.

10          Did they here?

11          MR. HORNICK:  Well, Mr. Zuckerberg left before --

12          THE COURT:  So, they didn't do that?

13          MR. HORNICK:  No.

14          THE COURT:  Okay.

15          So, interesting, that other contracts might do

16  that.  But, this one, as you tell me, does not.

17          Now, what exactly did they agree to do?  They

18  agreed to have Mr. -- from your perspective -- they agreed

19  to have Mr. Zuckerman do the code.  Right?

20          MR. HORNICK:  Yes.

21          THE COURT:  And, he will get 25 percent of the

22  business?  Is that it?

23          MR. HORNICK:  Yes.

24          THE COURT:  Any other terms and conditions of the

25  contract?

1   plaintiff will have -- I will come to rue the day I said

2   this -- additional pages to respond -- reasonable

3   additional pages to respond.  All right?  And,

4   "reasonable" means, I think, 40 pages.

5              All right.  Anything else?

6              MR. CHATTERJEE:  Thank you, your Honor.

7              MR. HORNICK:  No, your Honor.  Thank you.

8              MS. HURST:  Thank you, your Honor.

9              (Whereupon the hearing was concluded.)

10

11

12                        CERTIFICATE

13        I, Marie L. Cloonan, Official Reporter of the

14   United States District Court, do hereby certify that the

15   foregoing transcript, from Page 1 to Page 72, constitutes

16   to the best of my skill and ability a true and accurate

17   transcription of my stenotype notes taken in the matter of

18   Civil Action No. 07-10593-DPW, ConnectU, et al v.

19   Facebook, Inc., et al.

20                     _Marie L. Cloonan_

21   _____

22

23

24

25