# EXHIBIT 2

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


CONNECTU LLC,

        Plaintiff,

v.                          C.A. No. 04-1923(DPW)

MARK ZUCKERBERG, EDUARDO SAVERIN,
DUSTIN MOSKOVITZ, ANDREW McCOLLUM,
CHRISTOPHER HUGHES and THE FACEBOOK,
INC.,

        Defendants.

**CERTIFIED COPY**

---

VOLUME 1

VIDEOTAPED DEPOSITION OF CONNECTU LLC

BY CAMERON H. WINKLEVOSS

Boston, Massachusetts

Tuesday, August 9, 2005

9:44 a.m. to 6:27 p.m.


Reported by:
Jessica L. Williamson, RMR, RPR, CRR
Notary Public, CSR No. 138795

JOB NO. 36599



www.sarnoffcourtreporters.com

46 Corporate Park, Suite 100    445 South Figueroa St., Suite 2950
Irvine, CA  92606             Los Angeles, CA  90071

phone  877.955.3855
fax     949.955.3854

**SARNOFF**
*Court Reporters and*
*Legal Technologies*

1          VIDEOTAPED DEPOSITION OF CONNECTU LLC

2    by CAMERON H. WINKLEVOSS, a witness called

3    on behalf of the Defendant Mark Zuckerberg,

4    Dustin Moskovitz, Andrew McCollum,

5    Christopher Hughes and The Facebook, Inc.,

6    pursuant to Rule 30(b)(6) of the Federal

7    Rules of Civil Procedure, before Jessica L.

8    Williamson, Registered Merit Reporter,

9    Certified Realtime Reporter and Notary

10   Public in and for the Commonwealth of

11   Massachusetts, at the Offices of Proskauer

12   Rose, LLP, One International Place, Boston,

13   Massachusetts, on Tuesday, August 9, 2005,

14   commencing at 9:44 a.m.

15

16   A P P E A R A N C E S

17   FINNEGAN HENDERSON FARABOW GARRETT & DUNNER

18   LLP

19     (By John F. Hornick, Esq.

20      and Troy E. Grabow, Esq.)

21      901 New York Avenue, NW

22      Washington, D.C.  20001-4413

23      (202) 408-4000

24      john.hornick@finnegan.com

25      Counsel for the Plaintiff

```
 1            A P P E A R A N C E S, Continued

 2

 3        ORRICK, HERRINGTON & SUTCLIFFE LLP

 4            (By I. Neel Chatterjee, Esq.

 5            and Joshua H. Walker, Esq.)

 6            1000 Marsh Road

 7            Menlo Park, California   94025

 8            (650) 614-7356

 9            nchatterjee@orrick.com

10            Counsel for the Defendants Mark

11            Zuckerberg, Dustin Moskovitz, Andrew

12            McCollum, Christopher Hughes and The

13            Facebook, Inc.

14

15        HELLER EHRMAN LLP

16            (By Robert B. Hawk, Esq.)

17            275 Middlefield Road

18            Menlo Park, California   94025-3506

19            (650) 324-7000

20            robert.hawk@hellerehrman.com

21            Counsel for the Defendant Eduardo Saverin

22

23        ALSO PRESENT:

24

25            George Dobrentey, Videographer
```

| | | |
|---|---|---|
| 10:45:28 | 1 | been much of an issue. |
| ):45:29 | 2 | MR. CHATTERJEE: Let me mark this |
| 10:45:30 | 3 | as Defendants' Exhibit 2. |
| 10:45:46 | 4 | (Exhibit No. 2, First Amended |
| 10:45:48 | 5 | Complaint, marked for identification.) |
| 10:45:48 | 6 | Q. I'm going to ask you one question about |
| 10:45:50 | 7 | this -- |
| 10:45:50 | 8 | A. Sure. |
| 10:45:50 | 9 | Q. -- and then we'll take a break. If you'd go |
| 10:45:53 | 10 | to Paragraph 14. |
| 10:45:55 | 11 | MR. HORNICK: I'll object that this |
| 10:45:56 | 12 | is outside the scope. You can answer. It's |
| 10:45:59 | 13 | not 30(b)(6) testimony. |
| ):46:03 | 14 | Q. If you can read that paragraph and let me |
| 10:46:05 | 15 | know when you're done. |
| 10:46:07 | 16 | A. Uh-huh. |
| 10:46:07 | 17 | (Witness reviews document.) |
| 10:46:28 | 18 | A. Uh-huh. |
| 10:46:28 | 19 | Q. Okay. If you look in the second sentence, |
| 10:46:31 | 20 | it says, "After the first programmer hired |
| 10:46:33 | 21 | by Plaintiff graduated," that first |
| 10:46:36 | 22 | programmer was Sanjay Mavinkurve? |
| 10:46:38 | 23 | A. Sanjay Mavinkurve was the first programmer |
| 10:46:40 | 24 | of HarvardConnection or -- yes, yes. |
| 10:46:44 | 25 | MR. CHATTERJEE: Okay. Why don't |

| | |
|---|---|
| 10:46:44 | 1 |
| 0:46:47 | 2 |
| 10:46:48 | 3 |
| 10:46:49 | 4 |
| 10:46:50 | 5 |
| 10:46:53 | 6 |
| 10:46:54 | 7 |
| 10:57:34 | 8 |
| 10:57:39 | 9 |
| 10:57:42 | 10 |
| 10:57:43 | 11 |
| 10:57:43 | 12 |
| 10:57:52 | 13 |
| 0:57:55 | 14 |
| 10:57:57 | 15 |
| 10:58:00 | 16 |
| 10:58:02 | 17 |
| 10:58:03 | 18 |
| 10:58:08 | 19 |
| 10:58:11 | 20 |
| 10:58:13 | 21 |
| 10:58:16 | 22 |
| 10:58:19 | 23 |
| 10:58:21 | 24 |
| 10:58:23 | 25 |

we take a break for a few minutes, like 10 minutes.

      MR. HORNICK:  All right.

      THE VIDEOGRAPHER:  The time is 10:46.  This is the end of Tape 1, and we are off the record.

      (Recess taken.)

      THE VIDEOGRAPHER:  The time is 10:57.  This is the beginning of Tape 2, and we are back on the record.

BY MR. CHATTERJEE:

Q.  Mr. Winklevoss, we're back from a break.  I want to ask a couple follow-up questions from the previous hour.  You had mentioned that Mr. Zuckerberg agreed to be part of a partnership.  Do you remember that testimony?

A.  I believe I said that -- yes, I do remember the testimony where you asked me that, and I said that Mr. Zuckerberg had acknowledged an agreement between the parties where he would -- yes, he acknowledged the agreement.

Q.  Was there any discussion about what share of the partnership he would have?

A.  With respect to dot-com companies, they're

| | |
|---|---|
| 10:58:29 | 1 |
| ):58:32 | 2 |
| 10:58:38 | 3 |
| 10:58:41 | 4 |
| 10:58:43 | 5 |
| 10:58:46 | 6 |
| 10:58:49 | 7 |
| 10:58:52 | 8 |
| 10:58:53 | 9 |
| 10:58:57 | 10 |
| 10:59:00 | 11 |
| 10:59:05 | 12 |
| 10:59:07 | 13 |
| ):59:12 | 14 |
| 10:59:14 | 15 |
| 10:59:17 | 16 |
| 10:59:21 | 17 |
| 10:59:22 | 18 |
| 10:59:24 | 19 |
| 10:59:26 | 20 |
| 10:59:31 | 21 |
| 10:59:33 | 22 |
| 10:59:34 | 23 |
| 10:59:38 | 24 |
| 10:59:41 | 25 |

generally started as projects and sort of a small group of people with an idea, and it's sometimes unclear exactly where, you know, two months from that -- the start point or six months from that start point where exactly the equity will lay.  Mr. Zuckerberg himself has reapportioned equity multiple times.

So to the extent of talking about equity shares at that point, it was premature.  However, everything was an equal partner.  Everybody did contribute.

Q.    So I want to make sure this is clear.  So was there any discussion about what share of the partnership Mr. Zuckerberg would have?

A.    The specific share, it was premature to speak about that at that time.

Q.    So is the answer to my question no?

A.    The answer is that it was premature to speak about specific shares.  Was it understood by Mr. Zuckerberg that he would get a share?  Yes.

Q.    Okay.  Did you tell Mr. Zuckerberg how much of a share of the partnership he would have?

A.    Well, there is more --

| | | |
|---|---|---|
| 10:59:43 | 1 | Q. Please just answer the question. It's a yes |
| .0:59:47 | 2 | or no. |
| 10:59:47 | 3 | MR. HORNICK: The witness can |
| 10:59:48 | 4 | answer the question however he wants. |
| 10:59:49 | 5 | A. Yeah, I mean, you're -- I'm assuming you're |
| 10:59:53 | 6 | talking about equity share, the multiple |
| 10:59:55 | 7 | benefits to a project, which could include |
| 10:59:57 | 8 | prestige, equity. There's multiple levels. |
| 11:00:01 | 9 | And at that point we had no revenue source, |
| 11:00:03 | 10 | and the product was far from completion. We |
| 11:00:06 | 11 | stressed to him multiple times that one of |
| 11:00:08 | 12 | his major benefits would be a sort of a |
| 11:00:12 | 13 | reinventing of himself in terms of his |
| 1:00:14 | 14 | reputation post the Facemash debacle. In |
| 11:00:20 | 15 | fact, he would be the center point of the |
| 11:00:21 | 16 | launch, not us, even though it was our idea. |
| 11:00:23 | 17 | So we did not have specific talks |
| 11:00:25 | 18 | about equity share, but as I said, he was an |
| 11:00:28 | 19 | equal partner. Whatever you might want to |
| 11:00:33 | 20 | infer from the equal partner, be it a |
| 11:00:35 | 21 | quarter, a quarter, a quarter, that's fine. |
| 11:00:36 | 22 | Q. Did you tell Mr. Zuckerberg that he would be |
| 11:00:38 | 23 | an equal partner? |
| 11:00:39 | 24 | A. I told Mr. Zuckerberg that he was -- we |
| 11:00:42 | 25 | conveyed to Mr. Zuckerberg that he would be |

65

| | | |
|---|---|---|
| 11:00:44 | 1 | a part of the HarvardConnection team -- |
| 1:00:46 | 2 | Q.  And -- |
| 11:00:48 | 3 | A.  -- okay, not a contract programmer. |
| 11:00:50 | 4 | Q.  And did you convey to him what his share of |
| 11:00:53 | 5 | the partnership would be? |
| 11:00:54 | 6 | MR. HORNICK:  Objection, asked and |
| 11:00:55 | 7 | answered. |
| 11:00:55 | 8 | A.  As I said before, we did not speak about |
| 11:00:59 | 9 | specific equity stakes at that point.  It |
| 11:01:01 | 10 | was premature.  If, you know -- I might |
| 11:01:05 | 11 | point out at that time that Mr. Zuckerberg |
| 11:01:10 | 12 | had yet to make a contribution.  So, |
| 11:01:11 | 13 | generally speaking, you know, in any law |
| 1:01:14 | 14 | firm, particularly -- you know, I'm sure |
| 11:01:16 | 15 | your firm works this way -- you work for |
| 11:01:18 | 16 | seven, eight, ten years and then become a |
| 11:01:20 | 17 | partner.  People don't hand out partnership. |
| 11:01:22 | 18 | You know, you don't give out equity. |
| 11:01:25 | 19 | So everybody was aware that they were |
| 11:01:26 | 20 | on a team, they'd make contributions, and |
| 11:01:28 | 21 | that depending on the size of the |
| 11:01:30 | 22 | contribution after a certain time period, |
| 11:01:33 | 23 | they would be given equity. |
| 11:01:34 | 24 | Q.  Was there ever any discussion at any point |
| 11:01:38 | 25 | with Mr. Zuckerberg about what his share of |

| | | |
|---|---|---|
| 11:01:42 | 1 | the partnership would be? |
| 1:01:43 | 2 | A. Other than the fact that he was an equal |
| 11:01:46 | 3 | partner on ConnectU and given full creative |
| 11:01:49 | 4 | control and full input into what the product |
| 11:01:52 | 5 | could and should be, there was not a |
| 11:01:55 | 6 | specific discussion about specific amounts |
| 11:01:57 | 7 | of equity at that time. |
| 11:01:59 | 8 | Q. Was there ever discussions stating that he |
| 11:02:01 | 9 | was an equal partner? |
| 11:02:02 | 10 | A. As I said, we invited him to be part of the |
| 11:02:07 | 11 | team. We invited him to contribute. He |
| 11:02:09 | 12 | agreed to contribute, end of story. |
| 11:02:12 | 13 | Q. And where I'm focusing now is the word |
| 1:02:15 | 14 | "equal." |
| 11:02:16 | 15 | A. Uh-huh. |
| 11:02:17 | 16 | Q. So did you ever tell Mr. Zuckerberg he would |
| 11:02:19 | 17 | be an equal partner? |
| 11:02:20 | 18 | A. Well, I think the fact that we gave him our |
| 11:02:24 | 19 | whole source code, gave him creative |
| 11:02:27 | 20 | control, gave him full, you know -- asked |
| 11:02:30 | 21 | him for multiple input would certainly lend |
| 11:02:33 | 22 | to the word "equal." There was no one-way |
| 11:02:35 | 23 | dialogue. In fact, if anything, it was |
| 11:02:37 | 24 | skewed in his favor. And so he had more |
| 11:02:40 | 25 | than enough reason to believe that it was |

|          |    |                                                      |
|----------|----|------------------------------------------------------|
| 11:02:42 | 1  | going to be on equal terms, his terms, and           |
| 1:02:46  | 2  | that's as far as really I can comment on             |
| 11:02:49 | 3  | that.                                                |
| 11:02:49 | 4  | Q.  Did he ever tell you that he wanted to be an     |
| 11:02:51 | 5  | equal partner?                                       |
| 11:02:52 | 6  | A.  He never asked for monetary compensation,        |
| 11:02:56 | 7  | and all -- I can't -- what he essentially            |
| 11:03:00 | 8  | agreed to was to contribute to the coding            |
| 11:03:04 | 9  | that he said he would contribute to.                 |
| 11:03:06 | 10 | Q.  Did he ever agree to take some equity?           |
| 11:03:10 | 11 | A.  Again, he agreed to complete a portion of        |
| 11:03:14 | 12 | the website and become part of the team.             |
| 11:03:16 | 13 | Q.  And -- but my question is, did he ever agree     |
| 1:03:19  | 14 | to any specific allocation of equity in the          |
| 11:03:21 | 15 | partnership?                                         |
| 11:03:21 | 16 | A.  He did not say, "I need X amount of equity       |
| 11:03:28 | 17 | or amount," no, he didn't say that.                  |
| 11:03:30 | 18 | Q.  And were there any discussions about             |
| 11:03:31 | 19 | allocation of equity during your                     |
| 11:03:33 | 20 | relationship with Mr. Zuckerberg?                    |
| 11:03:34 | 21 | A.  As I said before, it was premature to talk       |
| 11:03:37 | 22 | about allocation.  This was a contribution           |
| 11:03:38 | 23 | basis where, you know, you join a team, you          |
| 11:03:40 | 24 | contribute, and you can reallocate                   |
| 11:03:43 | 25 | partnerships.  With myself and Tyler and             |

| | | |
|---|---|---|
| 11:03:46 | 1 | Divya Narendra we didn't allocate |
| .1:03:48 | 2 | partnership until later on because it was |
| 11:03:50 | 3 | unclear what our respective contributions |
| 11:03:53 | 4 | would be. |
| 11:03:54 | 5 | Q. So that actually raises another issue. |
| 11:03:56 | 6 | Prior to joining with Mr. Zuckerberg, were |
| 11:04:01 | 7 | there any discussions between Mr. Tyler |
| 11:04:04 | 8 | Winklevoss, you, Divya Narendra about how |
| 11:04:08 | 9 | the equity would be divided? |
| 11:04:10 | 10 | A. We, again, as I said before, were -- we |
| 11:04:15 | 11 | operated on an equality basis, and so we had |
| 11:04:18 | 12 | four individuals with Mark Zuckerberg.  When |
| 11:04:22 | 13 | Mark Zuckerberg decided to -- or effectively |
| 1:04:25 | 14 | launched Thefacebook, there was three |
| 11:04:28 | 15 | individuals.  At that point there's three |
| 11:04:30 | 16 | equal partners in the company.  Over time |
| 11:04:32 | 17 | that has clearly changed in terms of the |
| 11:04:36 | 18 | contributions that individuals have put into |
| 11:04:37 | 19 | the company. |
| 11:04:41 | 20 | Q. And with respect to the other programmers |
| 11:04:43 | 21 | that you had, did you ever discuss giving |
| 11:04:46 | 22 | them any equity? |
| 11:04:46 | 23 | A. So Victor Gao was a contract-based |
| 11:04:51 | 24 | programmer, so he was not interested in |
| 11:04:53 | 25 | equity.  We had offered it.  We had |

69

| | | |
|---|---|---|
| 11:04:55 | 1 | offered -- you know, we said, "What do you |
| 1:04:58 | 2 | need to get this done?"  And he took money. |
| 11:05:01 | 3 | That was his deal. |
| 11:05:02 | 4 | Sanjay was part of the team, as I |
| 11:05:05 | 5 | said.  He contributed, but it became very |
| 11:05:10 | 6 | evident after a while that he could no |
| 11:05:12 | 7 | longer contribute.  He did not ask to become |
| 11:05:13 | 8 | a partner.  And I think that it was very |
| 11:05:16 | 9 | clear from both sides and both people's |
| 11:05:19 | 10 | standpoint that -- we were thankful for the |
| 11:05:22 | 11 | work that he did, but he wasn't a partner at |
| 11:05:25 | 12 | that point. |
| 11:05:25 | 13 | Q.  And both of them had access, both Victor Gao |
| 1:05:29 | 14 | and Sanjay Mavinkurve had access to the |
| 11:05:32 | 15 | source code, right? |
| 11:05:35 | 16 | A.  Yes, they did, but, you know, the term -- as |
| 11:05:38 | 17 | I mentioned before, Victor had access on a |
| 11:05:41 | 18 | contract basis, and Sanjay was on a |
| 11:05:42 | 19 | contributing basis and gracefully bowed out |
| 11:05:46 | 20 | and decided that, you know, he couldn't |
| 11:05:48 | 21 | complete it and that he did not want to be a |
| 11:05:53 | 22 | partner of the situation. |
| 11:05:56 | 23 | MR. CHATTERJEE:  So let's mark this |
| 11:05:57 | 24 | as Exhibit No. 3. |
| 11:06:00 | 25 | |

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
| 05:23:27 | 1  | And as I said for the other defendants,               |
| 05:23:30 | 2  | based on their involvement in the creation            |
| 05:23:31 | 3  | and the fact that I believe that the                  |
| 05:23:33 | 4  | creation is derivative work, that I believe           |
| 05:23:39 | 5  | he's used copyrighted code.                           |
| 05:23:41 | 6  | Q.  I think I'll go with your counsel's               |
| 05:23:44 | 7  | stipulation that you can't answer the                 |
| 05:23:45 | 8  | question so we'll move on.                            |
| 05:23:47 | 9  | MR. HORNICK:  The witness gave you            |
| 05:23:48 | 10 | the best answer to the best of his ability.           |
| 05:24:03 | 11 | Q.  Now, Mr. Saverin was never a partner of the       |
| 05:24:05 | 12 | HarvardConnection, correct?                           |
| 05:24:06 | 13 | A.  No, he would not have been involved.  No.         |
| 05:24:10 | 14 | Q.  Right.  And neither you nor anyone else at        |
| 05:24:14 | 15 | HarvardConnection ever made the                       |
| 05:24:16 | 16 | HarvardConnection source code available to            |
| 05:24:17 | 17 | Mr. Saverin, correct?                                 |
| 05:24:22 | 18 | A.  We directly did not make it available --          |
| 05:24:22 | 19 | Q.  Right.                                            |
| 05:24:26 | 20 | A.  -- to him, yeah.                                  |
| 05:24:26 | 21 | Q.  And no one, to your knowledge, at ConnectU        |
| 05:24:27 | 22 | ever disclosed any HarvardConnection trade            |
| 05:24:29 | 23 | secrets to Mr. Saverin, correct?                      |
| 05:24:31 | 24 | A.  No, not directly to Mr. Saverin.                  |
| 05:24:48 | 25 | Q.  All right.  And just to clean up a few            |

| | | |
|---|---|---|
| 05:24:49 | 1 | things from this morning, talk about this |
| 05:24:51 | 2 | partnership, this HarvardConnection |
| 05:24:53 | 3 | partnership. |
| 05:24:54 | 4 | A.    Uh-huh. |
| 05:24:55 | 5 | Q.    There was never any written agreement |
| 05:24:57 | 6 | between Mark Zuckerberg and |
| 05:24:59 | 7 | HarvardConnection that Mr. Zuckerberg would |
| 05:25:01 | 8 | be a partner of HarvardConnection, correct? |
| 05:25:03 | 9 | A.    There was no written agreement. |
| 05:25:08 | 10 | Q.    All right.  And there was never any explicit |
| 05:25:09 | 11 | agreement, oral or written, by Mr. |
| 05:25:11 | 12 | Zuckerberg that he was going to be a partner |
| 05:25:15 | 13 | of HarvardConnection, correct? |
| 05:25:17 | 14 | A.    Not correct to the extent that there was -- |
| 05:25:21 | 15 | as I mentioned before, there was explicit |
| 05:25:24 | 16 | talk of contributions to the |
| 05:25:26 | 17 | HarvardConnection team. |
| 05:25:28 | 18 | Q.    Well, let's talk about the word "partner." |
| 05:25:30 | 19 | A.    Okay. |
| 05:25:30 | 20 | Q.    Did Mr. Zuckerberg ever say to you, "I |
| 05:25:33 | 21 | understand I'm a partner in this |
| 05:25:35 | 22 | HarvardConnection venture"?  Did he ever say |
| 05:25:38 | 23 | the word "partner"? |
| 05:25:39 | 24 | A.    No, he did not use the word "partner."  No. |
| 05:25:42 | 25 | Q.    And did you, you personally, ever use the |

342

| | | |
|---|---|---|
| 05:25:45 | 1 | word "partner" to Mr. Zuckerberg? |
| 5:25:47 | 2 | A. No, and I don't believe I had to.  I -- |
| 05:25:50 | 3 | Q. But I didn't ask you about what you had to |
| 05:25:52 | 4 | do. |
| 05:25:52 | 5 | MR. HORNICK:  He can give a |
| 05:25:53 | 6 | complete answer. |
| 05:25:53 | 7 | A. I used the word "part," which is part -- |
| 05:25:57 | 8 | which assumes a partner is a part of a slice |
| 05:25:58 | 9 | of the pie, you know, if you want to go down |
| 05:26:02 | 10 | to the semantics level.  But, no, we did not |
| 05:26:05 | 11 | use the word "partner."  We're college |
| 05:26:07 | 12 | students.  You know, we are on a project, |
| 05:26:11 | 13 | and it's a team.  That's what we called it. |
| 5:26:12 | 14 | Q. Okay.  So just to be clear, you never told |
| 05:26:17 | 15 | Mr. Zuckerberg that he was going to be a |
| 05:26:19 | 16 | partner -- |
| 05:26:19 | 17 | A. I never -- |
| 05:26:20 | 18 | Q. -- quote, "partner" in the venture, correct? |
| 05:26:22 | 19 | A. Quote, "partner" -- quote, "partner," no, I |
| 05:26:25 | 20 | did not use the word, quote, "partner." |
| 05:26:27 | 21 | Q. Okay.  Fine.  And just to be clear again, |
| 05:26:29 | 22 | there was never any written -- oral or |
| 05:26:34 | 23 | written agreement with Mr. Zuckerberg that |
| 05:26:35 | 24 | he would have some specific percentage |
| 05:26:38 | 25 | ownership in HarvardConnection, correct? |

| | | |
|---|---|---|
| 05:26:39 | 1 | A.    Specific ownership, yes.    Specific as in |
| 05:26:44 | 2 | specific equity stakes, yes, there was -- |
| 05:26:48 | 3 | that conversation never happened. |
| 05:26:48 | 4 | Q.    Listen to my question again. |
| 05:26:50 | 5 | MR. HORNICK:    Listen to his answer. |
| 05:26:52 | 6 | Did you hear it? |
| 05:26:53 | 7 | MR. CHATTERJEE:    Robert, let's have |
| 05:26:55 | 8 | the court reporter read that answer back. |
| 05:26:56 | 9 | MR. HAWK:    Okay.    Let's have the |
| 05:26:58 | 10 | answer back, question and answer, if you |
| 05:27:00 | 11 | wouldn't mind. |
| 05:27:01 | 12 | (Record read.) |
| 05:27:27 | 13 | A.    So, well, I was -- |
| 05:27:28 | 14 | MR. HORNICK:    Wait, wait.    There's |
| 05:27:29 | 15 | no question pending. |
| 05:27:30 | 16 | Q.    Right.    So let me -- I'm a little unclear, I |
| 05:27:31 | 17 | will say, after the last question and |
| 05:27:33 | 18 | answer, so let me try if I can reask it -- |
| 05:27:33 | 19 | A.    It was supposed to be -- |
| 05:27:36 | 20 | Q.    -- and clear it up. |
| 05:27:37 | 21 | A.    Yeah, I mean, if you want to reask that same |
| 05:27:41 | 22 | question -- |
| 05:27:41 | 23 | Q.    Yeah -- |
| 05:27:41 | 24 | A.    -- sure. |
| 05:27:41 | 25 | Q.    -- let me reask the question, okay? |

| | | |
|---|---|---|
| 05:27:44 | 1 | Isn't it correct that there was never |
| 05:27:45 | 2 | any written or oral agreement with Mr. |
| 05:27:47 | 3 | Zuckerberg that he would have a specific |
| 05:27:49 | 4 | percentage ownership in HarvardConnection? |
| 05:27:53 | 5 | A.  Specific percentage ownership, as I said |
| 05:27:59 | 6 | before, we did not talk about because it was |
| 05:28:01 | 7 | premature -- |
| 05:28:03 | 8 | Q.  Okay.  Fine. |
| 05:28:04 | 9 | A.  -- okay? |
| 05:28:04 | 10 | Q.  All right.  All right.  You never talked |
| 05:28:06 | 11 | about it with Mr. Zuckerberg, correct? |
| 05:28:07 | 12 | A.  Specific percentage ownership.  Outside of |
| 05:28:10 | 13 | what I said earlier, which was that it was |
| 05:28:12 | 14 | an equal -- an equal partnership based on |
| 05:28:18 | 15 | contribution, no. |
| 05:28:19 | 16 | Q.  See, that's the problem I'm having here. |
| 05:28:20 | 17 | A.  Why is that so hard? |
| 05:28:22 | 18 | MR. HORNICK:  Robert, listen.  You |
| 05:28:23 | 19 | don't like his answers, and you keep getting |
| 05:28:24 | 20 | him to try to change them.  He has given you |
| 05:28:26 | 21 | his answer.  He gave it this morning.  He's |
| 05:28:28 | 22 | been consistent all day.  I think you should |
| 05:28:30 | 23 | stop badgering the witness. |
| 05:28:31 | 24 | MR. CHATTERJEE:  Mr. Hornick, what |
| 05:28:33 | 25 | federal rule of evidence are you citing to |

345

| | | |
|---|---|---|
| 05:28:35 | 1 | at this point?  Because badgering with |
| 05:28:36 | 2 | counsel has nothing to do with the |
| 05:28:38 | 3 | deposition. |
| 05:28:38 | 4 |           MR. HORNICK:  He is badgering the |
| 05:28:39 | 5 | witness.  He keeps asking the same question |
| 05:28:43 | 6 | that's been asked all day.  He keeps |
| 05:28:45 | 7 | answering it. |
| 05:28:45 | 8 |           MR. HAWK:  We'll put this record |
| 05:28:47 | 9 | before the Judge, okay? |
| 05:28:47 | 10 |           MR. HORNICK:  You're getting your |
| 05:28:47 | 11 | answers. |
| 05:28:46 | 12 |           MR. HAWK:  We'll put the record -- |
| 05:28:46 | 13 | we'll put the record before the Judge, and |
| 05:28:48 | 14 | we'll -- |
| 05:28:48 | 15 |           MR. HORNICK:  Go ahead.  You're |
| 05:28:49 | 16 | getting your answers. |
| 05:28:50 | 17 |           MR. HAWK:  All right.  Let's turn |
| 05:28:51 | 18 | it down a notch.  We're almost done today. |
| 05:28:54 | 19 | Let me try and put another question.  I was |
| 05:28:55 | 20 | just trying to explain to the witness why I |
| 05:28:58 | 21 | keep going back to the same thing. |
| 05:28:58 | 22 | BY MR. HAWK: |
| 05:29:00 | 23 | Q.   And the reason that I keep going back is |
| 05:29:02 | 24 | because you're giving an argumentative |
| 05:29:05 | 25 | answer. |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

09/14/2005  19:53    4084400    FINNEGAN HENDERSON    PAGE  04

1

2

3

4

5

6

7

8

9          I, CAMERON H. WINKLEVOSS, do hereby declare under

10    penalty of perjury that I have read the foregoing

11    transcript; that I have made any corrections as appear

12    noted, in ink, initialed by me, or attached hereto; that

13    my testimony as contained herein, as corrected, is true

14    and correct.

15          EXECUTED this  12  day of  September ,

16    20 05 , at ___Avogue___ , ___N Y___ .
                        (City)              (State)

17

18

19

20                    _____
                      CAMERON H. WINKLEVOSS

21

22

23

24

25

4C

Page 403

1      In the United States District Court

2      For the District of Massachusetts

3          I, Jessica L. Williamson, Registered,

4      Merit Reporter, Certified Realtime Reporter

5      and Notary Public in and for the

6      Commonwealth of Massachusetts, do hereby

7      certify that CAMERON H. WINKLEVOSS, the

8      witness whose deposition is hereinbefore set

9      forth, was duly sworn by me and that such

10     deposition is a true record of the testimony

11     given by the witness.

12         I further certify that I am neither

13     related to or employed by any of the parties

14     in or counsel to this action, nor am I

15     financially interested in the outcome of

16     this action.

17         In witness whereof, I have hereunto set

18     my hand and seal this 11th day of August,

19     2005.

20

21     _Jessica L. Williamson_

22     _____

23     Jessica L. Williamson, RMR, RPR, CRR

24     Notary Public, CSR No. 138795

25     My commission expires: 12/18/2009

G&M Court Reporters, Ltd.
617-338-0030