UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


| | |
|---|---|
| CONNECTU, INC., | Civil Action No.: 1:07-CV-10593-DPW |
| Plaintiff, | Related Action No. 1:04-CV-11923-DPW |
| v. | |
| FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CRISTOPHER HUGHES, and THEFACEBOOK, LLC, | |
| Defendants. | |


# DEFENDANT EDUARDO SAVERIN'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS CONNECTU, INC'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

THE ALLEGATIONS OF CONNECTU'S FIRST AMENDED
COMPLAINT ................................................................................................................... 2

ARGUMENT ..................................................................................................................... 3

I.     LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER
       FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) ......................................... 3

II.    CONNECTU HAS NOT INDICATED WHAT MR. SAVERIN IS
       ALLEGED TO HAVE DONE TO MISAPPROPRIATE ITS
       TRADE SECRETS .................................................................................................. 5

III.   CONNECTU HAS NOT INDICATED IN WHAT UNFAIR OR
       DECEPTIVE ACTS MR. SAVERIN IS ALLEGED TO HAVE
       ENGAGED IN VIOLATION OF MASSACHUSETTS GENERAL
       LAW CH. 93A ........................................................................................................ 8

IV.    CONNECTU HAS NOT PLED FACTS SUPPORTING AN
       UNJUST ENRICHMENT CLAIM ON WHICH RELIEF COULD
       BE GRANTED AGAINST MR. SAVERIN ........................................................... 9

       A.    ConnectU Does Not Allege Facts Indicating the Existence of
             any Relationship Between Mr. Saverin's Enrichment and
             ConnectU's Alleged Loss .............................................................................. 9

       B.    ConnectU Has Alleged No Facts Suggesting that Mr. Saverin
             "Unjustly Retained" any Benefit ................................................................ 11

       C.    ConnectU's Failure to Allege Properly Any Misappropriation
             by Any Defendant Destroys its Derivative Unjust Enrichment
             Claim. ......................................................................................................... 12

# TABLE OF CONTENTS
## (Continued)

**Page**

D.    ConnectU Has Not Alleged Any Predicate to the Imposition of a Constructive Trust on Mr. Saverin's Stake in Facebook, Inc. ........................................................................................................ 12

CONCLUSION ................................................................................................. 14

## TABLE OF AUTHORITIES

**PAGE**

### Federal Cases

*Beets v. Ambrosi,*
    2007 WL 2060056 (D. Mass., July 17, 2007) ..........................................................4

*Bell Atlantic Corp. v. Twombly*
    127 S. Ct. 1955 (2007) ...............................................................................4, 5, 6, 7

*Coelho v. Coelho,*
    2 Mass. App. Ct. 433 (1974) ...............................................................................13

*Conley v. Gibson,*
    355 U.S. 41 (1957) ..................................................................................................4

*Curtis-Wright Corp. v. Edel-Brown Tool & Die Co.,*
    381 Mass. 1 (1980) ..................................................................................................6

*Daley v. Twin Disc, Inc.,*
    440 F. Supp. 2d 48 (D. Mass. 2006)........................................................................8

*Dell, Inc. v. This Old Store, Inc.,*
    2007 WL 1958609 (S.D. Tex., July 2, 2007) ..........................................................4

*Dialogo, LLC v. Bauza,*
    456 F. Supp. 2d 219 (D. Mass. 2006)........................................................9, 10, 11

*Foster v. Hurley,*
    444 Mass. 157 (2005) ............................................................................................13

*Kobayashi v. Orion Ventures, Inc.,*
    42 Mass. App. Ct. 492 (1997) ................................................................................8

*Leatherman v. Tarrant County Narcotics Intelligence. & Coordination Unit,*
    507 U.S. 163 (1993) ................................................................................................4

*Linkage Corp. v. Trustees of Boston Univ.,*
    425 Mass. 1 (1997) ..................................................................................................8

*Marrero-Gutierrez v. Molina,*
    491 F.3d 1 (1st Cir. 2007) ...................................................................................4, 7

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Mintel Learning Tech., Inc. v. Beijing Kaidu Educ. & Tech. Dev. Co.*,
   2007 WL 2288329 (N.D. Cal., Aug. 9, 2007)......................................................4, 5

*Papasan v. Allain*,
   478 U.S. 265 (1986) ...............................................................................................4

*Richardson v. Lee Realty Corp.*,
   364 Mass. 632 (1974) ...........................................................................................12

*S.E.C. v. Pinez*,
   989 F. Supp. 325 (D. Mass. 1997)........................................................................12

*Salamon v. Terra*,
   394 Mass. 857 (1985) ...........................................................................................12

*Samuels v. Bureau of Prisons*,
   2007 WL 2153274 (D. Mass., July 27, 2007) .......................................................4

*Swartz v. Schering-Plough Corp.*,
   53 F. Supp. 2d 95 (D. Mass. 1999)........................................................................5

### Federal Statutes

Fed. R. Civ. Proc. 8(a)(2) .............................................................................................4, 5

Rule 12(b)(6) ..................................................................................................................4

Rule 8(a) .........................................................................................................................4

### Cases

Massachusetts General Law chapter 93A..........................................................................8

iv

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Eduardo Saverin moves to dismiss each of the claims asserted against him by ConnectU Inc. ("ConnectU"): the sixth (unjust enrichment), eighth (trade secret misappropriation), and ninth (unfair trade practices) claims of ConnectU's First Amended Complaint.

ConnectU's initial complaint asserted five claims against Mr. Saverin, but contained no factual allegations identifying what role Mr. Saverin was alleged to have played in any wrongdoing. Mr. Saverin therefore moved to dismiss that complaint, and at the hearing on that motion, the Court gave ConnectU the choice either to stand on its original complaint or to amend it. ConnectU chose to amend. ConnectU was on notice, however, that in order for its new First Amended Complaint to survive dismissal, it would have to plead *facts* sufficient to properly assert its claims against Mr. Saverin. Although ConnectU has been ordered to show its cards, its hand is still insufficient to stay in the game. The First Amended Complaint confirms that ConnectU's claims against Mr. Saverin have no basis.

This point is most clear with respect to ConnectU's copyright infringement and intentional interference with contractual and business relations claims—previously asserted against Mr. Saverin—which are no longer pled against Mr. Saverin. Though ConnectU has not yet made the same concession with respect to its remaining three claims against Mr. Saverin— for unjust enrichment, trade secret misappropriation, and unfair trade practices—it is plain from the First Amended Complaint that these claims are no more supported than the abandoned claims.

The few new *factual* allegations ConnectU has made against Mr. Saverin in this complaint would establish, at most, that Mr. Saverin had an early stake in the Facebook venture, that he was involved in securing advertising for the thefacebook.com website, and that he at some point became aware of vague accusations against Mr. Zuckerberg (which eventually expanded to form the basis of this lawsuit). The factual allegations in the First Amended

1

Complaint remain utterly insufficient to state any claim against Mr. Saverin on which relief could plausibly be granted.

## THE ALLEGATIONS OF CONNECTU'S FIRST AMENDED COMPLAINT

ConnectU's original complaint, filed March 28, 2007, contained virtually no factual allegations relating to Mr. Saverin. Instead, for the most part, it simply lumped Mr. Saverin together with the other defendants in this case and recited legal conclusions. *See* Complaint, ¶¶ 45, 55, 68, 82. The one paragraph that alleged *anything* about Mr. Saverin's supposed role in any wrongdoing simply stated that, together with the other individual defendants in this case, Mr. Saverin somehow "used" ConnectU's alleged trade secrets and "engaged in . . . wrongdoing." *Id.* ¶ 38.

ConnectU's new First Amended Complaint ("FAC") contains a few additional references to Mr. Saverin's name, but still lacks any meaningful factual allegations relating to the substance of ConnectU's asserted claims. The FAC, for the most part, simply repeats and rearticulates the same deficient and conclusory allegations as the original complaint. *Compare* FAC ¶¶ 234-38, 289, 292, 329, 333-337 *with* Complaint ¶¶ 55-57, 67-72, 80-86.

The handful of new allegations relating to Mr. Saverin are facially insufficient to support the inferences that ConnectU includes in its new Complaint. Specifically, under a new heading titled "Unjust Enrichment Claim Against Defendant Saverin," ConnectU has included ten new paragraphs which apparently constitute the full factual basis upon which ConnectU filed a lawsuit against Mr. Saverin. *See* FAC ¶¶224-33. The sum total of what we learn from these paragraphs is:

- that Mr. Saverin was once in a fraternity with Mr. Zuckerberg, FAC ¶ 224;

- that Mr. Saverin has filed suit against other defendants to this lawsuit asserting that he is entitled to 30% stake in the Facebook business, FAC ¶ 225;

- that, in January 2004, in connection with an out-of-pocket investment of $1,000, Mr. Saverin retained a 1/3 share in an "informal partnership that later became the facebook," and began "working" in some unspecified capacity on "a project . . .

that was to become thefacebook.com," FAC ¶¶ 225-26;

- that Mr. Saverin "participated in [thefacebook.com's] business issues" and "particularly in securing advertising and financing for the website," FAC ¶ 227;

- that Mr. Saverin corresponded with Mr. Zuckerberg about "ideas for the [thefacebook.com] site," FAC ¶¶ 227-28;

- that, in February 2004, Mr. Saverin became aware that the ConnectU's "founders" had sent Mr. Zuckerberg an email containing unsubstantiated accusations that Mr. Zuckerberg had somehow "misappropriated" its undefined "ideas" and "concepts," FAC ¶ 229; and

- that Mr. Zuckerberg requested that Mr. Saverin keep the founders' accusatory email confidential.  ¶ 230.

**These paragraphs *do not* allege** what Mr. Saverin supposedly did with any of the ConnectU founders' ideas, other than to "use" them, *e.g.,* FAC ¶ 234.  They do not allege that Mr. Saverin ever had any confidential relationship—or any relationship or interactions at all—with ConnectU or its founders.  They do not allege that Mr. Saverin ever took anything directly from ConnectU or its founders.  Nor do they allege facts indicating any relationship between Mr. Saverin's alleged enrichment and ConnectU's alleged loss.

These paragraphs also do not allege as a factual matter that Mr. Saverin knew or believed that the ideas that went into the Facebook project were anyone's other than his own and his co-defendants'.  To be sure, ConnectU does *speculate*, based on Mr. Saverin's awareness of the ConnectU founders' accusations against Mr. Zuckerberg, that he "must have been aware of Zuckerberg's wrongdoing," but this is not a *factual* allegation, and is in no way implied by the factual allegations ConnectU has made.

## ARGUMENT

### I.   LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

In order to adequately state *any* claim upon which relief may be granted, a complaint

must include at least "a short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence. & Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting Fed. R. Civ. Proc. 8(a)(2)).  The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

As the Supreme Court recently reiterated in *Bell Atlantic Corp. v. Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations," it still *must plead facts*, and must do so sufficiently "to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (emphasis added).[1]  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (alteration omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 127 S. Ct. at 1965.[2]

---

[1] Though *Twombly* concerned allegations of an antitrust violation, its discussion of Rules 8(a) and 12(b)(6) was in no way limited to that context.  In the course of its discussion regarding pleading standards, the Supreme Court cited numerous opinions and other sources unrelated to antitrust suits; many of the lower court opinions following *Twombly*'s guidance to dismiss cases at the pleadings stage also have concerned non-antitrust cases, *see, e.g., Marrero-Gutierrez v. Molina*, 491 F.3d 1 (1st Cir. 2007) (§ 1983 claims); *Beets v. Ambrosi*, 2007 WL 2060056 (D. Mass., July 17, 2007) (RICO claims); *Samuels v. Bureau of Prisons*, 2007 WL 2153274 (D. Mass., July 27, 2007) (claims under the Federal Torts Claims Act); *Dell, Inc. v. This Old Store, Inc.*, 2007 WL 1958609 (S.D. Tex., July 2, 2007) (trademark and copyright infringement and unfair competition claims); *Mintel Learning Tech., Inc. v. Beijing Kaidu Educ. & Tech. Dev. Co.*, 2007 WL 2288329 (N.D. Cal., Aug. 9, 2007) (including misappropriation of trade secrets, copyright infringement, and unfair competition claims).

[2] As the discussion in *Twombly* makes clear, that case did not purport to adopt a "heightened pleading standard," *cf. Leatherman*, 507 U.S. at 168, but rather stated the standard *required* by Rules 8(a) and 12(b)(6).  *See Twombly*, 127 S. Ct. at 1974 ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim of relief that is plausible on its face").

Stated positively, the "threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to show that the pleader is entitled to relief" requires that the Complaint contain "allegations plausibly suggesting (not merely consistent with)" liability under the claims asserted. *Id.* at 1966. And in order for allegations to rise to "enter the realm of plausible liability," they must cross the lines "between the conclusory and the factual," and "between the facially neutral and the factually suggestive." *Id.* at 1966 n.5.

As demonstrated below, the FAC's allegations concerning Mr. Saverin—to the extent they are not mere legal conclusions—fail to plausibly imply that Mr. Saverin may be liable for any of the three claims ConnectU asserts against him.[3]

## II. CONNECTU HAS NOT INDICATED WHAT MR. SAVERIN IS ALLEGED TO HAVE DONE TO MISAPPROPRIATE ITS TRADE SECRETS.[4]

ConnectU's trade secret misappropriation claim against Mr. Saverin fails for exactly the same reasons it failed in the original complaint. ConnectU cannot establish a claim for misappropriation of trade secrets against Mr. Saverin unless it satisfactorily alleges, *inter alia*, that he "utilized improper means, or participated in [his] own or another's breach of a confidential relationship, to acquire and use [ConnectU's] trade secret." *Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 100 (D. Mass. 1999). But the only defendant whom ConnectU has even attempted to allege was a party to, or breached, a confidential relationship with ConnectU's predecessors is Mr. Zuckerberg. *Cf. Mintel Learning Tech., Inc. v. Beijing Kaidu Educ. & Tech. Dev. Co.*, 2007 WL 2288329, *6-7 (N.D. Cal., Aug. 9, 2007) (dismissing trade

---

[3] Additionally, as argued in Defendant Zuckerberg's separate motion to dismiss, the FAC fails to comply with this Court's instructions given at the hearing on motions to dismiss the original complaint. The FAC therefore should also be dismissed in accordance with this Court's case management powers.

[4] Although the trade secret misappropriation claim follows the unjust enrichment claim in the FAC, Defendant Saverin addresses it first in this motion since it is the only independent legal claim asserted against him.

secret claim against certain defendants under *Twombly* where the only fact pled against such defendants was that they had agreed to "use" trade secrets allegedly misappropriated by their co-defendant).

To the extent ConnectU wished to allege that Mr. Saverin "participated in" Mr. Zuckerberg's alleged breach, it was required to plead facts establishing that Mr. Saverin had some *knowledge* of Mr. Zuckerberg's alleged misappropriation. Specifically, ConnectU had to allege facts establishing that Mr. Saverin *knew or should have known* (a) that the facebook.com website was based on ConnectU's alleged trade secrets (b) that the alleged trade secrets were ConnectU's predecessors' secret information, and (c) that Mr. Zuckerberg's disclosure of the alleged trade secrets constituted a breach of some duty Mr. Zuckerberg owed to ConnectU's predecessors. *See Curtis-Wright Corp. v. Edel-Brown Tool & Die Co.*, 381 Mass. 1, 6 (1980); Restatement (First) of Restitution, § 1 and comment *c.*; *id.*, § 13.

The FAC *still* alleges none of these things. ConnectU alleges no facts suggesting that Mr. Saverin knew that the ideas being put into the facebook.com enterprise, to the extent they were not Mr. Saverin's own contributions, were anything other than the ideas of Mr. Zuckerberg. Instead, ConnectU alleges that "Saverin *surely* knew," FAC ¶227 (emphasis added), and "*must have been* aware" of Zuckerberg's wrongdoing, FAC ¶¶229-30 (emphasis added). But ConnectU has not pled facts that would support even these hedged conclusions.

The *only* facts that ConnectU has alleged that are arguably pertinent to Mr. Saverin's knowledge are: (1) that on February 11, 2004 Mr. Saverin learned that the "Founders" had, in an email, *made accusations* that Mr. Zuckerberg had "misappropriated [their] work product, including [their] ideas, thoughts, concepts and research," FAC ¶ 229, Ex. 29a; and (2) that "[w]ithin the next few days," Mr. Zuckerberg told Mr. Saverin to keep the accusatory email private, FAC ¶ 230.

These facts imply *at most* that "Saverin was aware that thefacebook.com *was accused* of being the fruits of a poisonous tree." FAC ¶ 231. The further allegation that "[t]herefore, Saverin must have been aware of Zuckerberg's wrongdoing," FAC ¶¶ 229-30, in no way follows,

and is pure speculation.  *See Twombly*, 127 S. Ct. at 1965 ("factual allegations must be enough to raise a right to relief above the speculative level").  The fallacy in ConnectU's logic is demonstrated quite dramatically by the facts that all Defendants to this lawsuit continue to vigorously dispute any wrongdoing, and that this Court itself observed the lack of substance in ConnectU's factual allegations more than two years after the alleged misdeeds occurred. Moreover, given that ConnectU's alleged inference of awareness is only "one among a myriad of possible inferences[,] . . . it would be speculative to draw [it] from the range of possibilities." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 10 (1st Cir. 2007) (dismissing § 1983 claims based on such speculative inferences).

Nor does ConnectU's new allegation that "[s]ome of the Harvard Connection ideas involved business issues, which is the area of thefacebook.com website development in which Saverin was involved" support the inference that "Saverin therefore participated in Zuckerberg's misappropriation."  FAC ¶ 289.[5]  ConnectU has only alleged that Mr. Saverin was "instrumental . . . in securing advertising and financing for [thefacebook.com]."  FAC ¶ 227.  ConnectU has not alleged—and could not plausibly assert—that the idea of "securing advertising and financing" for a website was the original and secret idea of its predecessors.  Thus, it simply does not follow from Mr. Saverin's engagement in such business acts that he "therefore" must have participated in the misappropriation of "the Harvard Connection ideas."  *See Twombly*, 127 S. Ct. at 1965; *Marrero-Molino*, 491 F.3d at 10.

For the same reasons, the complaint fails to allege facts suggesting that Mr. Saverin knew or should have known that Mr. Zuckerberg breached any confidence to ConnectU.  In the absence of such allegations, ConnectU has failed state a claim against Mr. Saverin for

---

[5] A review of ConnectU's newly-expanded alleged "trade secret" (the "Harvard Connection Ideas") reveals only one, extremely generic "business issue," namely "the plan to monetize the website after it launched."  Doc. 68-4 at ¶ 11.  The suggestion that planning on making a website profitable was an original and secret idea of ConnectU's predecessors is implausible on its face.

participation in Mr. Zuckerberg's alleged trade secret misappropriation. ConnectU also has not claimed that Mr. Saverin has directly misappropriated its trade secrets. Therefore, ConnectU's trade secret misappropriation claim against Mr. Saverin must be dismissed.

### III.   CONNECTU HAS NOT INDICATED IN WHAT UNFAIR OR DECEPTIVE ACTS MR. SAVERIN IS ALLEGED TO HAVE ENGAGED IN VIOLATION OF MASSACHUSETTS GENERAL LAW CH. 93A.

ConnectU's Massachusetts General Law chapter 93A claim also fails for the same reasons it failed in the original complaint. In order to state a chapter 93A claim against Mr. Saverin, ConnectU was required to identify "unfair or deceptive practices" that Mr. Saverin undertook while engaged in commerce, which resulted in ConnectU's loss of money or property. *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 22-23 (1997). ConnectU was further required to allege facts indicating that any such "unfair and deceptive practices" undertaken by Mr. Saverin were done not only intentionally and with knowledge, but with a "level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Daley v. Twin Disc, Inc.*, 440 F. Supp. 2d 48, 53 (D. Mass. 2006).

ConnectU's complaint fails to make any such allegations. The only act attributed to Mr. Saverin is that he secured advertising and financing for thefacebook.com "despite" learning that other students had made unsubstantiated accusations that Mr. Zuckerberg had misappropriated their undefined "ideas" and "concepts." This alleged act falls *far* short of the level of wrongdoing that must be reached to adequately set forth a 93A claim. *See id.* The FAC contains no facts regarding how Mr. Saverin allegedly used any "Harvard Connection ideas," no facts suggesting that he did so knowingly or intentionally, and no facts suggesting that he knew that it was unfair and deceptive to do so. The FAC certainly contains no facts that would give rise to an inference of "unethical, immoral, oppressive, or unscrupulous" behavior. *Kobayashi v. Orion Ventures, Inc.,* 42 Mass. App. Ct. 492, 505 (1997). Accordingly, ConnectU's Ninth Count, for violation of Massachusetts General Law ch. 93A must be dismissed. *Daley*, 440 F. Supp. 2d at 53 (dismissing 93A claim where the complaint contained no allegations indicating that

defendants had engaged in willful deception or deliberate misrepresentation).

## IV.    CONNECTU HAS NOT PLED FACTS SUPPORTING AN UNJUST ENRICHMENT CLAIM ON WHICH RELIEF COULD BE GRANTED AGAINST MR. SAVERIN.

In order to state a claim for unjust enrichment, ConnectU had to allege: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law." *Dialogo, LLC v. Bauza*, 456 F. Supp. 2d 219, 227 (D. Mass. 2006) (citation omitted). ConnectU has failed to plead any facts which would fulfill the third or fourth elements of this claim with respect to Mr. Saverin.  ConnectU has also failed to allege any wrongdoing that could give rise to the imposition of a constructive trust on Mr. Saverin's assets, the principal relief sought by ConnectU in connection with this claim.  Thus, ConnectU has failed to state an unjust enrichment claim against Mr. Saverin on which relief can be granted, and Count 6 of the FAC must be dismissed.

### A.    ConnectU Does Not Allege Facts Indicating the Existence of any Relationship Between Mr. Saverin's Enrichment and ConnectU's Alleged Loss.

ConnectU nowhere alleges any facts supporting a conclusion that Mr. Saverin's enrichment bears any relationship to ConnectU's alleged impoverishment.  Indeed, the few facts that ConnectU *does* allege regarding Mr. Saverin's enrichment are flatly inconsistent with the notion that his financial gains belong to ConnectU.

ConnectU's only allegation concerning the source of Mr. Saverin's enrichment is in Paragraph 232, in which it alleges that, to the extent Mr. Saverin has been or will be "unjustly enriched," such enrichment stems from "his involvement with facebook.com."  But the only allegations regarding Mr. Saverin's "involvement with facebook.com" that are even arguably factual in nature (as opposed to baldly conclusory) are that (1) Mr. Saverin began investing money in thefacebook.com as early as January 2004, FAC ¶¶ 226-27; and (2) Mr. Saverin was particularly instrumental "in securing advertising and financing for the website," *id.,* ¶ 227.

9

Thus, ConnectU's allegations simply amount to the assertion that Mr. Saverin was enriched through his own investments of time, labor, and money. This assertion is flatly inconsistent with ConnectU's argumentative "allegation" that "ConnectU's entitlement to the damages it seeks in this action is in direct conflict with Saverin's claims to 30% of the value of Facebook, Inc," and fails to support a claim that Mr. Saverin's enrichment was in any way "related" to ConnectU's alleged detriment.

Additionally, although ConnectU locates Mr. Saverin's enrichment in his "ownership interest in Facebook . . . [or] any Facebook entity," FAC ¶ 232, ConnectU does not allege—and could not plausibly assert—that it was "impoverished" by being denied ownership in any Facebook entity, since no such interest was ever due to it. Rather, ConnectU's alleged impoverishment appears to be that—absent some defendant's wrongful act—ConnectU would now be in Facebook's current position. *See* FAC ¶ 237 (alleging irreparable injury based on loss of "first mover advantage"). These allegations result in two consequences, both of which are fatal to ConnectU's unjust enrichment claim against Mr. Saverin.

*First*, since there is no connection between Mr. Saverin's enrichment (Facebook equity) and ConnectU's alleged loss (the value of Facebook's "first mover advantage"), ConnectU fails to meet the third required element of an unjust enrichment claim. *Dialogo, LLC*, 456 F. Supp. 2d at 227 (requiring a relationship between the defendant's enrichment and the plaintiff's impoverishment).

*Second*, the fact that ConnectU's alleged loss is the value of the first mover advantage *captured by Facebook* demonstrates that ConnectU has no proper unjust enrichment claim *against Mr. Saverin*. Because any benefit Mr. Saverin may have allegedly gained from Facebook's first mover advantage would be purely derivative of the value captured by Facebook, ConnectU's unjust enrichment claim against Mr. Saverin is both entirely dependent on and duplicative of its direct claims against the corporate defendants. Indeed, the unjust enrichment claim against Mr. Saverin is absurd on its face—on ConnectU's apparent theory were valid, a company's shareholders would become personally liable for unjust enrichment every time the

10

company engaged in any wrongful act (e.g., market fraud or breach of contract) which resulted in an increase in share price.  That is simply not the law.

### B. ConnectU Has Alleged No Facts Suggesting that Mr. Saverin "Unjustly Retained" any Benefit.

Additionally, in order to properly plead that an enrichment was "unjust," the plaintiff must plead facts indicating that the defendant's retention of the benefit at issue was without justification.  *Dialogo, LLC*, 456 F. Supp. 2d at 227.  ConnectU has pled no such facts regarding Mr. Saverin.  Indeed, the few facts ConnectU has alleged would actually establish that even if thefacebook.com was of "tainted pedigree," FAC ¶ 230, Mr. Saverin purchased his stake in the venture without knowledge of any such thing, thus placing him squarely within the "bona fide purchaser" exclusion from unjust enrichment.  *See* Restatement (First) of Restitution, § 13 and comment a ("a person who innocently has acquired the title to something for which he has paid value is under no duty to restore it").

*First*, ConnectU alleges that in January 2004, "Saverin and Zuckerberg reached an oral agreement about the parties' respective ownership rights and Saverin invested $1,000 in the website."  FAC ¶ 226.  ConnectU further alleges that Mr. Saverin's original stake in the facebook venture was a 1/3 share—an amount larger than the 30% stake ConnectU alleges is the outer limit of the amount of Mr. Saverin's unjust enrichment.  FAC ¶ 225.  Thus, ConnectU alleges that by January 2004, Mr. Saverin had acquired more than the full stake to which ConnectU now claims it is entitled, in connection with an out-of-pocket investment.

*Second*, as demonstrated above, ConnectU does not plead any facts indicating that Mr. Saverin had any actual knowledge that any thefacebook.com ideas (other than his own contributions) were the contributions of anyone other than Mr. Zuckerberg.  *See supra*, Part II.  Instead, ConnectU simply draws fallacious inferences that Mr. Saverin "must have known" that Mr. Zuckerberg's contributions were the product of misappropriation.

But even if ConnectU's factual allegations warranted ConnectU's erroneous inference that Mr. Saverin "must have been aware" of Mr. Zuckerberg's alleged wrongdoing (or even that

he *was* aware of such wrongdoing), ConnectU's allegations still would not ascribe any awareness

to Mr. Saverin until *mid-February 2004*, a full month *after* he had allegedly acquired his full

stake in the facebook venture in connection with an initial out-of-pocket investment.

Thus, in its own complaint, ConnectU has alleged facts suggesting that Mr. Saverin

acquired his full stake in the facebook venture, for value, without knowledge of ConnectU's

alleged adverse right to that stake. This is fatal to ConnectU's unjust enrichment claim against

Mr. Saverin, since such circumstances would both (a) provide "justification" for Mr. Saverin's

enrichment, therefore negating a necessary element of ConnectU's *prima facie* case, *cf.*

*Richardson v. Lee Realty Corp.*, 364 Mass. 632, 634-35 (1974), and (b) establish on the face of

the FAC an affirmative "bona fide purchaser" defense rendering any relief unavailable, *S.E.C. v.*

*Pinez*, 989 F. Supp. 325, 339 (D. Mass. 1997).

### C.    ConnectU's Failure to Allege Properly Any Misappropriation by Any Defendant Destroys its Derivative Unjust Enrichment Claim.

ConnectU's unjust enrichment claim necessarily depends on allegations that some

expected benefit was misappropriated from it; in the absence of such wrongdoing, no defendant's

retention of any alleged benefit could be unjust. *See Salamon v. Terra*, 394 Mass. 857, 859

(1985). ConnectU has directly alleged some form of misappropriation—asserted variously as

fraud, breach of fiduciary duty, copyright infringement, and trade secret misappropriation—

against only Mr. Zuckerberg. Mr. Saverin joins the motions of the other defendants, which

establish that the FAC fails to allege properly any wrongful act by *any* defendant. In the absence

of this predicate, ConnectU's unjust enrichment claim cannot survive.

### D.    ConnectU Has Not Alleged Any Predicate to the Imposition of a Constructive Trust on Mr. Saverin's Stake in Facebook, Inc.

ConnectU has made no allegations which could support the imposition of a constructive

trust on Mr. Saverin's stake in Facebook, Inc., the principal remedy ConnectU seeks in

connection with its unjust enrichment claim.

A constructive trust may only be imposed to avoid "unjust enrichment" when the benefit

at issue is unjustly obtained in one of three ways: "(a) by fraud or (b) in violation of a fiduciary relationship or (c) where information confidentially given or acquired is used to the advantage of the recipient at the expense of the one who disclosed the information." *Coelho v. Coelho*, 2 Mass. App. Ct. 433, 435 (1974).

ConnectU has not alleged any of these predicates with respect to Mr. Saverin. It has not alleged that Mr. Saverin committed fraud (he is not named in Count 3), or violated any fiduciary relationship with ConnectU (he is not named in Count 5). Nor has ConnectU alleged that it gave Mr. Saverin any information directly from ConnectU—much less that he received such information "confidentially." The only defendant about whom ConnectU has even arguably made such allegations is Mr. Zuckerberg. ConnectU has failed to allege any wrongdoing by Mr. Saverin that would allow for the imposition of a constructive trust.

Additionally, because ConnectU has not alleged any direct wrongdoing at all by Mr. Saverin, and has not alleged that he had knowledge of any wrongdoing by Mr. Zuckerberg, a constructive trust could not be imposed on his assets in any event. *Foster v. Hurley*, 444 Mass. 157, 168 (2005) (holding that a constructive trust could not be imposed on assets gained by defendant as a result of a third party's wrongdoing where defendant had no fiduciary relationship with plaintiff, had committed no fraud, and had no knowledge of the third party's wrongdoing).

## CONCLUSION

For the foregoing reasons, Defendant Eduardo Saverin respectfully requests that ConnectU's First Amended Complaint as against him be dismissed.

DATED: August 29, 2007

/s/ Annette L. Hurst
Annette L. Hurst (*admitted pro hac vice*)
Nathan E. Shafroth (*admitted pro hac vice*)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California  94110
Telephone:  (415) 772-6000
Facsimile:  (415) 772-6268
annette.hurst@hellerehrman.com
nathan.shafroth@hellerehrman.com

Robert B. Hawk (*admitted pro hac vice*)
Bhanu K. Sadasivan (*admitted pro hac vice*)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, California 94025
Telephone:  (650) 324-7000
Facsimile:  (650) 324-0638
robert.hawk@hellerehrman.com
bhanu.sadasivan@hellerehrman.com

Gordon P. Katz (BBO# 261080)
Daniel K. Hampton (BBO# 634195)
HOLLAND & KNIGHT LLP
10 St. James Avenue, 11th Floor
Boston, MA  02116
Telephone:  (617) 523-2700
Facsimile:  (617) 523-6850
gordon.katz@hklaw.com
dan.hampton@hklaw.com

Attorneys for EDUARDO SAVERIN