IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA, | Civil Action No. 1:07-CV-10593-DPW |
| Plaintiff, | |
| v. | |
| FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MOSKOVITZ AND MCCOLLUM'S MOTION TO DISMISS**

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND FACTS ..................................................................................... 2

III.    ARGUMENT ....................................................................................................... 4

     A.      Plaintiff Is Required to Plead Particularized Facts Supporting its Claim ............. 4

          1.      ConnectU Fails To Plead Sufficient Facts To Support Copyright Infringement ............................................................................................... 5

          2.      ConnectU's Unjust Enrichment Claim Fails ........................................... 8

              a.      The Unjust Enrichment Claim Is Insufficiently Pled ................... 8

              b.      Plaintiff Has Pled It Has An Adequate Remedy At Law, Precluding The Claim For Unjust Enrichment ............................. 9

          3.      Plaintiff's Claim For Misappropriation Of Trade Secrets Pursuant To G.L. ch. 266 Section 30(4) And ch. 93 Section 42 Fails .................... 9

              a.      Mass. Gen. Laws ch. 266, § 30 Does Not Provide A Private Right Of Action And Thus Must Be Dismissed ........................ 10

              b.      ConnectU Failed to State A Claim Under Mass.G.L. ch. 93, §42 ............................................................................................. 10

                  (1)      ConnectU's Failure To Allege "Continuous" Use Of Its Trade Secret Is Fatal To Its Claim ............................. 10

                  (2)      ConnectU's List Of "Ideas" Is Not A Trade Secret ......... 11

                  (3)      The Complaint Establishes That The Plaintiff Did Not Keep Information Confidential ................................. 13

                  (4)      Plaintiff Does Not Allege "Knowing" Behavior ............. 14

          4.      ConnectU's Claim Under Massachusetts G.L. ch. 93A Fails ................ 15

              a.      ConnectU Must Plead A Dispute Between Two Businesses ....... 16

              b.      McCollum and Moskovitz Were Not A Business ...................... 17

               c.      ConnectU Fails To Allege Any Unfair Or Deceptive Act .......... 17

     B.      ConnectU's Mass.G.L. ch. 93A and Unjust Enrichment Claims Are Preempted by Copyright ..................................................................................... 17

          1.      Mass.G.L. ch. 93A Is Preempted By Copyright Law ............................ 18

          2.      Plaintiff's Unjust Enrichment Claim Is Preempted By Copyright Law .................................................................................................... 18

IV.     CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Armstrong* v. *Rohm & Haas Co.*, 349 F. Supp. 2d 71 (D. Mass. 2004) ...................................... 17

*Atmel v. Informaiton Storage Devices, Inc.*, 1998 WL 775115 (N.D. Cal. 2002) ...................... 13

*ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*,
    No. 05-5132, 2007 WL. 1989336 (2d Cir. Jul. 11, 2007) ....................................................... 4

*Bagheri v. Galligan*, 160 Fed. Appx. 4 (1st Cir. 2005) ......................................................... 4, 7

*Banco Santander de P.R.* v. *Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)*,
    324 F.3d 12 (1st Cir. P.R. 2003) .......................................................................................... 14

*Bay State HMO Mgmt.* v. *Tingley Sys.*,
    152 F. Supp. 2d 95 (D. Mass. 1995), reversed in part on other grounds by *Bay State
    HMO Mgmt., Inc. v. Tingley Sys., Inc.,* 181 F.3d 174 (1st Cir. Mass 1999) ........................ 20

*Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955 (2007) .......................................................4, 5, 9, 15

*Briarpatch Ltd., L.P.* v. *Phoenix Pictures , Inc.*, 373 F.3d 296 (2nd Cir. 2004)......................... 18

*D.B. Riley, Inc.* v. *AB Eng'g Corp.*, 977 F. Supp. 84 (D. Mass. 1997)...................................... 13

*Data Gen. Corp.* v. *Grumman Sys. Support Corp.*,
    36 F.3d 1147 (1st Cir. 1994) ................................................................................................ 20

*Data Gen. Corp.* v. *Grumman Sys. Support Corp.*,
    795 F. Supp. 501, 505 (D. Mass. 1992), *aff'*d, 36 F.3d 1147 (1st Cir. 1994) .................17, 18

*Data Gen. Corp.* v. *Grumman Sys. Support Corp.*, 825 F. Supp. 430 (D. Mass. 1993) .............. 15

*Decarlo* v. *Archie Comic Publications, Inc.*, 2001 WL. 604184 (2d Cir. June 1, 2001) ............. 20

*Dialogo, LLC* v. *Bauza*, 456 F. Supp. 2d 219 (D. Mass. 2006).................................................... 8

*Educadores Puertorriquenos En Accion* v. *Hernandez*,
    367 F.3d 61 (1st Cir. 2004) .................................................................................................... 4

*Ehat* v. *Tanner*, 780 F.2d 876 (10th Cir. 1985) ...................................................................... 19

*Guedes* v. *Martinez*, 131 F. Supp. 2d 272 (D.P.R. 2001).......................................................... 18

# TABLE OF AUTHORITIES
## (Continued)

Page

*Hare* v. *Family Publications Service , Inc., Inc.*,
   342 F. Supp. 678 (D. Md. 1972) .......................................................................... 9

*Hutchins* v. *Zoll Med. Corp.*, 430 F. Supp. 2d 24 (D. Mass. 2006) ............................................ 6

*In re Felt Manufacturing Co., Inc.*, 2007 WL 2177690 (Bktrcy N.H. 2007) .............................. 4

*Iqbal* v. *Hasty*, 2007 U.S. App. LEXIS 13911 (2d Cir.N.Y. 2007) ................................................ 4

*John G. Danielson, Inc.* v. *Winchester-Conant Props., Inc.*,
   186 F. Supp. 2d 1 (D. Mass. 2002) ..................................................................17, 18

*Kodadek* v. *MTV Networks*, 152 F.3d 1209 (9th Cir. 1998) ...................................................... 20

*Kunycia* v. *Melville Realty Co.*, 755 F. Supp. 566 (S.D.N.Y. 1990) ........................................ 19

*LG Elecs. Inc.* v. *Q-Lity Computer, Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002) .............................. 13

*Lotus Dev. Corp.* v. *Borland Int'l*, 49 F.3d 807 (1st Cir. 1995) ............................................ 5, 6

*Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148 (D. Mass. 2003) .......................... 9

*Maddog Software, Inc.* v. *Sklader*, 382 F. Supp. 268 (D. N.H. 2005) ...................................... 6

*Marrero-Gutierrez* v. *Molina*, 491 F.3d 1 (1st Cir. 2007) .......................................................... 5

*Massachusetts* v. *Mylan Labs.*, 357 F. Supp. 2d 314 (D. Mass. 2005) ...................................... 9

*McKesson HBOC , Inc.* v. *New York State Common Ret. Fund , Inc.*,
   339 F.3d 1087 (9th Cir. 2003) ............................................................................ 9

*Micromuse, Inc.* v. *Micromuse, Plc.*, 304 F. Supp. 2d 202 (D. Mass. 2004) .............................. 9

*Moore* v. *Marty Gilman, Inc.*, 965 F. Supp. 203 (D. Mass. 1997) .......................................... 11

*Murray Hill Publ'ns , Inc.* v. *ABC Communs. , Inc.*,
   264 F.3d 622 (6th Cir. 2001) .............................................................................. 19

*NBA* v. *Motorola , Inc.*, 105 F.3d 841 (2d Cir. 1997) .........................................................19, 20

*Orange County Choppers, Inc.* v. *Olaes Enterprises, Inc.*,
   No. 06 Civ 7211, 2007 WL 2161777 (S.D.N.Y. July 27, 2007) ........................................ 20

# TABLE OF AUTHORITIES
## (Continued)

Page

*Petricca Dev. Ltd. Pshp.* v. *Pioneer Dev. Co.*, 214 F.3d 216 (1st Cir. 2000)........................16, 17

*Picker Int'l Corp.* v. *Imaging Equip. Servs.*, 931 F. Supp. 18 (D. Mass. 1995)..........................10

*Portfolioscope , Inc.* v. *I-Flex Solutions Ltd.*,
    473 F. Supp. 2d 252 (D. Mass. 2007) ................................................................. 10

*In re Relafen Antitrust Litig.,* 221 F.R.D. 260, 279 (D. Mass. 2004)............................................. 8

*Ritchie* v. *Williams*, 395 F.3d 283 (2005) ................................................................. 19

*Rodriguez-Ortiz* v. *Margo Coribe, Inc.*, 2007 WL 1732883 (1st Cir. 2007)............................... 4

*Selby* v. *New Line Cinema Corp.*, 96 F. Supp. 2d 1053 (C.D. Cal. 2000)................................... 19

*Stone* v. *White*, 301 U.S. 532 (1937) ................................................................. 9

*Storage Tech. Corp.* v. *Custom Hardware Eng'g & Consulting, Inc.*,
    421 F.3d 1307 (Fed. Cir. 2005) ................................................................. 11

*Swartz* v. *Schering-Plough Corp.*, 53 F. Supp. 2d 95 (D. Mass. 1999) ...........................10, 11, 13

*Taylor Woodrow Blitman Constr. Corp.* v. *Southfield Gardens Co.*,
    534 F. Supp. 340 (D. Mass. 1982)................................................................. 9

*United States ex rel. Berge* v. *Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997)................. 19

*Wilson* v. *Mr. Tee's*, 855 F. Supp. 679 (D.N.J. 1994) ................................................................. 19

*Wrench LLC* v. *Taco Bell Corp.*,
    1998 U.S. Dist. LEXIS 12710 (W.D. Mich. June 18, 1998) ............................................... 19

## STATE CASES

*Advanced Modular Sputtering, Inc.* v. *Superior Court*,
    132 Cal. App. 4th 826 (Cal. App. 2d Dist. 2005)................................................................. 13

*Begelfer* v. *Najarian*, 381 Mass. 177 (1980) ................................................................. 17

*Cambridge Internet Solutions* v. *Avicon Group*,
    1999 WL 959673 (Mass. Super. Ct. Sep. 21, 1999)................................................................. 13

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*CoWorx Staffing Services LLC* v. *Coleman*,
2007 WL. 738913 (Mass. Super. Ct. Feb. 7, 2007)............................................... 16

*Curtiss-Wright Corp.* v. *Edel-Brown Tool & Die Co.*, 381 Mass. 1 (1980)...........14, 15

*Informix , Inc.* v. *Rennell*, 41 Mass. App. Ct. 161 (1996) ......................... 17

*J. T. Healy & Son , Inc.* v. *James A. Murphy & Son , Inc.*,
357 Mass. 728 (1970) ..................................................................10, 11, 13

*Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1 (1997)....................15, 16, 17

*USM Corp.* v. *Marson Fastener Corp.*, 379 Mass. 90 (1979)....................... 13

*Nissan Autos. of Marlborough, Inc.* v. *Glick*, 62 Mass. App. Ct. 302 (2004) ............. 15

*Ocean Air, Inc.* v. *Katzman*, 2002 WL. 532475 (Mass. Super. Ct. Jan. 22, 2002) ............. 16

*Staffbridge, Inc.* v. *Nelson Assocs., Inc.*, 2004 WL. 1429935 (Mass. Super. June 11,
2004) ................................................................................... 12

*Szalla* v. *Locke*, 421 Mass. 448 (1995)............................................ 16

## FEDERAL STATUTES

17 U.S.C. § 101 *et seq* ............................................................... 3

Fed. R. Civ. P. 12 (b)(6) ............................................................ 1

## STATE STATUTES

Mass. Gen. Laws ch. 93A ............................................................ 1

Mass. Gen. Laws ch. 93A § 1, 2, 9, & 11........................................... 2, 3

Mass. Gen. Laws ch. 93 § 42 ....................................................... 2, 3

Mass. Gen. Laws ch. 266, § 30 ..................................................... 2, 3

## I.    __INTRODUCTION__

Dustin Moskovitz and Andrew McCollum ("Individual Defendants") move to dismiss ConnectU Inc.'s sixth (unjust enrichment), seventh (copyright infringement), eighth (trade secret misappropriation) and ninth (unfair trade practices) claims for relief.[1]  These claims are directed at all parties.  Many of the arguments herein apply with equal force to every defendant. Plaintiffs' First Amended Complaint ("FAC"), filed August 8, 2007, does not cure most, if any, of the defects described in the initial round of briefing. Notwithstanding the uncured previous deficiencies, the FAC presents numerous new issues, new plaintiffs, and new claims that provide additional bases for dismissal.[2]

ConnectU's FAC contains a litany of unrelated facts and legal theories that fail to identify what role the Individual Defendants have played in any wrongdoing or violation of ConnectU's rights.  As set forth in the memorandum filed on behalf of Mark Zuckerberg, such "shotgun" pleadings are inappropriate and warrant dismissal of the FAC in its entirety under the law.

Notwithstanding the voluminous nature of the FAC, the challenged claims do not meet the pleading requirements for copyright infringement, unjust enrichment, misappropriation of trade secrets, or unfair trade practices.  Indeed, many of the allegations disprove the claims asserted.

ConnectU's claims for violation of Mass.G.L. ch. 93A and unjust enrichment also are

---

[1] The Individual Defendants also join and incorporate by reference herein the Motions to Dismiss brought by the Defendants Mark Zuckerberg, TheFacebook LLC and Facebook Inc.

[2] Individual Defendants maintain that their argument that the trade secret misappropriation and unjust enrichment claims are all time barred by applicable three year statutes of limitation. However, as stated by this Court on July 25, 2007, this Court may choose to apply equitable tolling.  The Individual Defendants respectfully oppose the application of equitable tolling and incorporate by reference the Individual Defendants' argument that ConnectU cannot rely on equitable tolling because equitable tolling is only available to a plaintiff prevented from bringing a claim through no fault of its own.  *See* Defs. Moskovitz, McCollum and Hughes' Reply to ConnectU's Opp'n to Mot. to Dismiss dated May 14, 2007 at 3-6 (Dkt. No. 40-2).

preempted by the Copyright Act. As best as Defendants can tell, these two claims are premised on unauthorized use of website software alleged be infringed by them. The claim is not qualitatively different from ConnectU's copyright infringement claim.

## II.    BACKGROUND FACTS

The Court is familiar with the complex procedural history of this case. Except where directly relevant to an issue, the procedural history of this case is not restated.

ConnectU's original complaint in the current action added new claims and new parties from the previously dismissed case. ConnectU, Inc. had never been a party to the previous litigation and was formed after the previous litigation began. The earlier case was prosecuted by a different entity, ConnectU LLC, which Plaintiffs claim has merged into ConnectU, Inc. Two new defendants, Facebook, Inc. and Facebook, LLC (collectively, the "Facebook Entities") also were added to the original complaint in this action.[3] Compl. (Dkt. No. 1) ¶¶ 10, 11. The original complaint in the current case also added four claims for relief that were not originally raised by ConnectU LLC in the earlier action: (1) copyright infringement, (2) misappropriation of trade secrets pursuant to Mass.G.L. ch. 93, § 42 (in addition to Mass.G.L. ch. 266, § 30(4), (3) breach of Massachusetts Unfair Trade Practices pursuant to Mass.G.L. ch. 93A, §§ 1, 2, 9 & 11, and (4) breach of confidence under California common law. *Id.* ¶¶ 43-57, 87-90 & 98-104 (Dkt. No. 1). Following briefing on a motion to dismiss, the Court held a hearing and allowed ConnectU to file an amended complaint that particularized the factual basis for the asserted claims with

---

[3] ConnectU LLC filed an amended complaint on October 28, 2004, in the earlier lawsuit between the parties. First Amended Complaint (Dkt. No. 13, Case 1:04-cv-11923-DPW, "*ConnectU I*"). That amended complaint purported to add claims for copyright infringement and breach of Massachusetts Unfair Trade Practices pursuant to Mass.G.L. ch. 93A, §§ 1, 2, & 9, and also identified Facebook, Inc. as the Defendant in place of TheFacebook.com a/k/a TheFacebook. *Id.* ¶¶ 10, 24-29, 46-51 & 66-69. The amendment was of no effect because diversity jurisdiction was lacking when the earlier original complaint was filed. *See* Rep. & Recommendation on Facebook Defs. Mot. to Dismiss at 4-10 (Dkt. No. 283, *ConnectU I*), adopted by Order of Court

encouragement for Plaintiff to focus on the "core of the case" rather than have a "proliferated" complaint. *See* 7/25/07 Hr'g. Tr. at 46:18-22.

ConnectU filed the FAC on August 8, 2007. The FAC comprises 101 pages with 337 paragraphs, as well as numerous unnumbered paragraphs reciting various legal arguments. The FAC appears to assert over twenty alternate theories of relief, using the terms "alternatively" or "in the alternative" 23 times. The FAC attached 85 exhibits comprising nearly 900 pages of documents. The FAC includes random newspaper stories, statements and documents about Mark Zuckerberg's reputation and other peripheral information. More than 10% of the exhibits are not cited in the FAC at all. The FAC added the ConnectU Founders as plaintiffs to certain claims. Cross-referencing dozens of allegations and exhibits, the FAC asserts four claims against Individual Defendants Moskovitz and McCollum: (1) common law unjust enrichment; (2) copyright infringement pursuant to 17 U.S.C. § 101 et seq.; (3) misappropriation of trade secrets pursuant to Mass.G.L. ch. 93, § 42 (in addition to Mass.G.L. ch. 266, § 30(4)); and (4) breach of Massachusetts Unfair Trade Practices pursuant to Mass. G.L. ch. 93A, §§ 1, 2 & 11. An errata filed a week and a half later changed numerous exhibits and makes approximately 85 corrections to the FAC through a seven page pleading. The ConnectU Founders have never before been plaintiffs.

As best as Defendants can tell, the FAC is premised on the notion that thefacebook.com was created by using code from the Harvard Connection website alleged to be owned by the ConnectU Founders. *See* FAC ¶¶ 36, 177, 180, 184. Specifically, the unjust enrichment claim is "based on the immense value of their facebook.com website, gained unjustly at ConnectU's expense." FAC ¶ 2. The copyright infringement claim is "based on Zuckerberg's, Moskovitz's,

---

dated May 28, 2007 (Dkt. No. 289).

and McCollum's copying of Harvard Connection code, or code Zuckerberg said he wrote for Harvard Connection, into thefacebook.com code." *Id.* The trade secret misappropriation claim is "based on Zuckerberg's unauthorized disclosure and use of the Harvard Connection website idea, and his and his co-Defendants' incorporation of the Harvard Connection ideas into their own website." *Id.* The unfair trade practices claim is "based on Zuckerberg's unfair and deceptive words and acts, which furthered his scheme to compete unfairly with ConnectU's predecessors, and the other Defendants' participation in that scheme." *Id.* As is evident from the FAC*, the only substantive allegations related to this claim are certain actions alleged to have been taken by Mark Zuckerberg. *See* FAC ¶¶ 191, 197.

## III.    <u>ARGUMENT</u>

### A.    <u>Plaintiff Is Required to Plead Particularized Facts Supporting its Claim</u>

This Court instructed ConnectU to provide a particularized complaint setting forth the specific facts supporting each claim asserted. To merely comply with Rule 8, the allegations must have "some further factual enhancement" to push the claim over the "line between possibility and plausibility of 'entitlement to relief.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007). *Bell Atlantic* has been held to apply to all civil disputes, including disputes in the First Circuit. *See Iqbal v. Hasty*, 2007 U.S. App. LEXIS 13911, at *35 n. 7 (2d Cir.N.Y. 2007); *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, No. 05-5132, 2007 WL 1989336, at *3 n. 2 (2d Cir. Jul. 11, 2007); *Rodriguez-Ortiz v. Margo Coribe, Inc.*, 2007 WL 1732883 at *2 (1st Cir. 2007). See also *In re Felt Manufacturing Co., Inc.*, 2007 WL 2177690 at *3 (Bktrcy N.H. 2007) (analyzing First Circuit pleading standards following *Bell Atlantic*). As part of this standard, the complaint must clearly set forth why each defendant is accused of violating each cause of action asserted. *Educadores Puertorriquenos En Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004); *Bagheri v. Galligan*, 160 Fed. Appx. 4, 5 (1st Cir. 2005). Moreover, a mere

"conclusory allegation ... does not supply facts adequate to show illegality," and is inadequate to support a plausible claim for relief. *Bell Atl. Corp.,* at 1966. Without some "factual enhancement" weighing toward wrongful intent or actions, a defendant's behavior "stays in neutral territory" between theories of culpability and innocence. *Id.* at 1966; *see id.* at 1964 (alleged behavior equally consistent "with a wide swath of rational competitive business strategy"); *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 10 (1st Cir. 2007) (inference of wrongdoing from the "range of possibilities" would be "speculative").

The Court's approach from the July 25, 2007, hearing and Rule 8 are case management tools to weed out groundless claims that lack "a plausible entitlement to relief," *Bell Atl. Corp.,* at 1967. The potential for abuse in discovery even "when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint," creates an "*in terrorem* increment of the settlement value" in every complex litigation. *Id.* at 1966-67.

As set forth below, each of ConnectU's claims against the Individual Defendants should be dismissed because they lack sufficient factual allegations to satisfy Rule 8 and the more rigorous standard requested by the Court at the July 25, 2007, hearing.

## 1.   ConnectU Fails To Plead Sufficient Facts To Support Copyright Infringement

ConnectU's claims for copyright infringement fail because it has (a) not alleged particularized facts showing substantial similarity of protectible expression, and (b) has not alleged any particularized facts demonstrating a violation of a copyright by Moskovitz and McCollum.

ConnectU has not identified any expression that has been copied. Copyright protects expression. Indeed, the FAC does not plead particularized facts establishing substantial similarity of expressive elements, a prerequisite to a claim for copyright infringement. *Lotus*

*Dev. Corp. v. Borland Int'l*, 49 F.3d 807, 813 (1st Cir. 1995); *Hutchins v. Zoll Med. Corp.*, 430 F. Supp. 2d 24 (D. Mass. 2006); *Maddog Software, Inc. v. Sklader*, 382 F. Supp. 2d 268, 279 (D. N.H. 2005). The complaint offers no explanation of the expressive elements that Plaintiff seeks to protect. It identifies no expressive components of the code or expressive components of the website created by the code. Rather, it merely cites back to the functional descriptions of Exhibit 1A. FAC ¶¶ 255-256. Function is not protected by copyright. The failure to identify the expressive elements of the code is fatal.

The complaint also fails to provide particularized facts of substantial similarity, warranting dismissal against all defendants. The complaint shows no actual comparison of code, no comparison of expressive features of graphical user interfaces, or any protected expression between the Harvard Connection and Facebook websites. *See Lotus Dev. Corp.*, 49 F.3d at 813. The entirety of the pleadings related to the copyright infringement claim is: (1) ConnectU has registered for a copyright for code written by three people (FAC ¶¶ 243-245), (2) ConnectU has obtained an assignment to the Harvard Connection Code (*id.* ¶ 246), and (3) Zuckerberg had access to the Harvard Connection Code (*id.* ¶ 248).[4] Plaintiff also states in conclusory form that thefacebook.com website was substantially similar to the so-called trade secret identification in Exhibit 1A and that Zuckerberg wrote thefacebook.com code quickly. *Id.* ¶¶ 255-256. Rather than providing particularized evidence of copying of expression, the FAC makes an improper assertion of "destruction" theory, admitting an absence of evidence.[5] Plaintiff also asserts

---

[4]  The FAC does not specify if Zuckerberg had access to the exact code for which ConnectU has sought a copyright registration.

[5]  It appears that Plaintiffs cannot cure this defect, as they have lost their own code according to correspondence. Specifically, Plaintiffs, in a letter dated August 13, 2007, stated:

> As the Amended Complaint explains, Mr. Zuckerberg was given access to the Harvard Connection code on the server where it was stored when he became a Harvard Connection development team partner. That server was maintained by

willfulness with no particularized facts.  In short, no particularized facts are given and no expressive components are identified .

These facts pled specifically against Moskovitz and McCollum serve to disprove copying.  *Id.* ¶¶ 257, 258.  No particularized facts are alleged that Moskovitz or McCollum had access to the Harvard Connection website or code.  Indeed, the only "[i]nvolvement in the [i]nfringement" alleged by ConnectU is Moskovitz's coding for thefacebook.com website, and McCollum's involvement with the graphic design of thefacebook.com.  *Id.* ¶¶ 252, 253.  The inferences from such allegations lead to a conclusion of independent development.

The remaining pleadings related to Moskovitz and McCollum are pure speculation. Namely, ConnectU's conclusion that "their close association with Zuckerberg and their work on thefacebook.com code at the same time," gave Moskovitz and McCollum access to Zuckerberg's copy of the Harvard Connection Code is pure speculation with no factual support.  *Id.* ¶ 254. ConnectU's so-called "strong evidence that Zuckerberg, Moskovitz and/or McCollum copied" is entirely speculation relying on a comparison of after-the-fact claimed features (which are not specifically linked with facebook.com) and the speed of development.  *Id.* ¶¶ 255-256.  Without more specific allegations of wrongdoing by these particular defendants, the copyright infringement claim should be dismissed.  *Bagheri v. Galligan*, 160 Fed. Appx. 4, 5 (1st Cir. 2005) (complaint that "fail[s] to state clearly which defendant or defendants committed each of the alleged wrongful acts" violates Rule 8(a)).

---

Hurricane Electric….Hurricane Electric has informed us that they scrubbed the server on which the Harvard Connection code was stored at that time.  However, the best and only chance of recovering the pre-Zuckerberg version of the Harvard Connection code is from devices within Facebook Defendants' possession, custody or control.

Exhibit A, attached hereto.  The Hurricane Electric server was paid for and operated by the ConnectU Founders.  FAC, Ex. 82 at C006956.

2.    **ConnectU's Unjust Enrichment Claim Fails**

a.    **The Unjust Enrichment Claim Is Insufficiently Pled**

None of the factual allegations demonstrates the Individual Defendants' knowledge, appreciation or acceptance of a benefit from ConnectU, as is required to plead unjust enrichment. *See* FAC ¶ 174; *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 279 (D. Mass. 2004), *citing* Restatement (Third) of Restitution and Unjust Enrichment. *See also Dialogo, LLC v. Bauza*, 456 F. Supp. 2d 219, 227 (D. Mass. 2006). Instead, ConnectU bases its unjust enrichment claim on "the immense value of their facebook.com website" at present and the alleged "partnership" of several college students, rather than any wrongful behavior by the Individual Defendants. FAC ¶¶ 2, 13, 20, 21, 180, 194, 210, 234-239, 287. Merely succeeding is not enough to satisfy a claim for unjust enrichment.

Plaintiff's allegations actually lead to an inference <u>against</u> unjust enrichment. The FAC states that McCollum allegedly developed graphics and the user interface for thefacebook.com website, FAC ¶ 209, while Moskovitz fulfilled both programming and management roles. *Id.* ¶¶ 217, 124, 280, 313. These allegations demonstrate that McCollum and Moskovitz were both independently contributing to and developing thefacebook.com website and not simply benefiting at others' expense.

The only allegations related to Moskovitz and McCollum's knowledge of the ConnectU Founders or allegations related to Zuckerberg and the Harvard Connection project is speculation. For example, ConnectU states that the Individual Defendants "*surely knew* [that Zuckerberg was telling the Founders, falsely, that he was completing the Harvard Connection website] and participated in Zuckerberg's wrongdoing" merely because they were developing thefacebook.com code at the same time. *Id.* ¶¶ 209, 218 (emphasis added). After the launch, ConnectU further speculates that the Individual Defendants "*must have been aware* of

Zuckerberg's wrongdoing and the tainted pedigree of thefacebook.com," based upon e-mails circulated around campus. *Id.* ¶¶ 211, 213, 214, 221, 222 (emphasis added). Without further circumstances pointing toward wrongful intent or actions, ConnectU's claim is insufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp.*, at 1965.

### b.   Plaintiff Has Pled It Has An Adequate Remedy At Law, Precluding The Claim For Unjust Enrichment

Plaintiff is not entitled to claim unjust enrichment because it has claimed an adequate remedy at law. ConnectU incorporates by reference the assertion that a valid contract exists. FAC ¶ 172. A plaintiff is not entitled to unjust enrichment where a contract governs the parties' relationship. *Micromuse, Inc. v. Micromuse, Plc.*, 304 F. Supp. 2d 202, 209 n. 8 (D. Mass. 2004); citing *McKesson HBOC , Inc. v. New York State Common Ret. Fund , Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003). Further, Plaintiff offers no particularized pleading explaining why no adequate remedy at law exists. Unjust enrichment is available only to plaintiffs who lack adequate remedies at law. *See, e.g., Stone v. White*, 301 U.S. 532, 534 (1937); *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005); *In re Lupron Mktg. & Sales Practices Litig.,* 295 F. Supp. 2d 148, 182 (D. Mass. 2003); *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982).

### 3.   Plaintiff's Claim For Misappropriation Of Trade Secrets Pursuant To G.L. ch. 266 Section 30(4) And ch. 93 Section 42 Fails

ConnectU erroneously relies upon two entirely different statutes, Mass.G.L. ch. 266, §30(4) and ch. 93, § 42, for its trade secret claim. As argued in the earlier motion to dismiss, ConnectU violated Rule 10 by combining claims. *Hare v. Family Publications Service, Inc.*, 342 F. Supp. 678, 686 (D. Md. 1972). *See* Dkt. No. 17-1, p.9-10. Claims presented under either theory fail.

**a.**   **Mass. Gen. Laws ch. 266, § 30 Does Not Provide A Private Right Of Action And Thus Must Be Dismissed**

ConnectU did not cure the pleading defect that recognizes that Mass.G.L. ch. 266, § 30 is not actionable by ConnectU because it is a criminal statute with no civil right of action. *See Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 105 (D. Mass. 1999). Dkt. Nos. 17-1, p.10 and 40-2, p.9.

**b.**   **ConnectU Failed to State A Claim Under Mass.G.L. ch. 93, §42**

To properly plead a claim for misappropriation of trade secrets under Mass.G.L. ch. 93, § 42, ConnectU must allege that the process or device also (i) is a trade secret, (ii) ConnectU took reasonable steps to preserve the confidentiality of its trade secret, and (iii) the defendants knowingly utilized improper means, or participated in their own or another's breach of a confidential relationship, to acquire and use the trade secret. *Swartz*, 53 F. Supp. 2d at 100, citing *Picker Int'l Corp. v. Imaging Equip. Servs.*, 931 F. Supp. 18, 35 (D. Mass. 1995). ConnectU also must allege that its claimed trade secret is "'a process or device that is in continuous use in the operation of the business.'" *J. T. Healy & Son , Inc. v. James A. Murphy & Son , Inc.*, 357 Mass. 728, 736 (1970) quoting Restatement: Torts, § 757, comment b (emphasis added). ConnectU has not met these basic pleading requirements.

**(1)**   **ConnectU's Failure To Allege "Continuous" Use Of Its Trade Secret Is Fatal To Its Claim**

ConnectU has not alleged that ConnectU has continuously used the trade secret combination it claims. FAC ¶ 266, Ex. 1A. To survive a motion to dismiss, a plaintiff must allege that the trade secrets are still in continuous use by plaintiff and have not been abandoned. *Portfolioscope , Inc. v. I-Flex Solutions Ltd.*, 473 F. Supp. 2d 252, 255 & n.6 (D. Mass. 2007); *J.T. Healy & Son*, 357 Mass. at 736. *See also Swartz*, 53 F. Supp. 2d at 101. This pleading defect warrants dismissal.

The FAC establishes that the "combination" of ideas alleged to be the misappropriated trade secret has not been in continuous use. Many portions of the combination specifically contemplated being abandoned as a trade secret upon the launch of the Harvard Connection website. *See* FAC, Ex. 1A, § 4 (website pre-launch strategy), § 10 (pre-launch idea), § 13 (functions of code available to public). Moreover, ConnectU alleges that the "Harvard Connection Code itself, as well as the functionality of the code," was a critical element of its combination trade secret. *Id.* § 13. Yet, elsewhere in the FAC, ConnectU admits the Harvard Connection site never even launched. FAC ¶ 83. Indeed, ConnectU alleges that the code was given to others, and that it ultimately developed a different website, www.connectu.com. *See id.* ¶ 38.

### (2)    ConnectU's List Of "Ideas" Is Not A Trade Secret

ConnectU's claim also fails because its alleged "combination" of "ideas" contained in Exhibit 1A to the FAC fails to qualify as a trade secret. A trade secret is defined as:

> Any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. … The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.

*Swartz*, 53 F. Supp. 2d at 100, citing *J. T. Healy & Son*, 357 Mass. at 736. Claiming a "combination" of known concepts does not create a trade secret. To the extent any component, such as "the basic idea" for a social networking website, the "user interface," "functionality and content," or "concepts," already was in use in the marketplace, ConnectU cannot claim it as a trade secret. *Moore v. Marty Gilman, Inc.*, 965 F. Supp. 203, 216 (D. Mass. 1997). Attaching the label "compilation" to a "self-evident list of items … does not transform the list into a trade secret." *Id.* at 217. ConnectU does not allege that these individual "ideas" were unknown. *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1319 (Fed.

Cir. 2005) (applying Massachusetts law, and holding that "information that is in the public domain cannot be appropriated by a party as its proprietary trade secret").

No particularized pleading establishes that this combination of "ideas" was developed by or known to ConnectU before the time Zuckerberg is alleged to have worked with the Founders. Namely, none of the correspondence submitted between Zuckerberg and the three ConnectU Founders includes any information that even remotely suggests that the concepts described in Exhibit 1A were part of the Harvard Connection project. The allegations in the FAC are merely argument. Indeed, the documents describing the Harvard Connection work suggest that they had no overlap and were different ideas entirely.

Further, Exhibit 1A is not a trade secret ConnectU can claim and, instead, is a list of "ideas" created for this litigation. FAC ¶ 266, Ex. 1A. This trade secret identification was provided for the first time with this FAC and was never provided in earlier depositions or interrogatory responses related to ConnectU's alleged trade secrets. Indeed, in defending ConnectU's original definition of its "trade secret" (which is different from Exhibit 1A) against charges it failed to meet the Massachusetts requirement of "rigorous and focused particularity," Plaintiffs' counsel informed this Court that the earlier identified combination constituted "what, **_and only what_**," trade secret was allegedly misappropriated – a designation that counsel expressed he would "take to [his] grave." 3/3/06 Hr'g. Tr. (1:04-cv-11923-DPW) at 102:25-103:5. *See also id.* at 98:2-10 ("The law only wants the plaintiff to commit to what its trade secret is, and we did that in our interrogatory answer . . . . ConnectU has now defined its trade secret combination. It has set a base line."); 105:5-7 ("The numbered items that we have listed as our answer to Interrogatory 2 are what we view the trade secret combination to be"). Such a moving target is inappropriate. *See Staffbridge, Inc. v. Nelson Assocs., Inc.*, 2004 WL 1429935,

at *1, *4-*5 (Mass. Super. June 11, 2004); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (Cal. App. 2d Dist. 2005) (noting that California statute requiring identification of trade secrets with "sufficient particularity" "is not itself a pleading but it functions like one in a trade secret case because it limits the scope of discovery in much the same way as the allegations of a complaint limit discovery in other types of civil actions"). *See also LG Elecs. Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002) (holding that case management patent local rules are designed to prevent "shifting sands), citing *Atmel v. Information Storage Devices, Inc.*, 1998 WL 775115 at *2 (N.D. Cal. 1998). As such, the "trade secret" identified in Exhibit 1A cannot and should not be considered appropriate to state a claim.

### (3)    The Complaint Establishes That The Plaintiff Did Not Keep Information Confidential

ConnectU's FAC demonstrates that it has not been vigilant in protecting disclosure of the claimed trade secrets. Anyone asserting a trade secret must exercise "eternal vigilance" to protect its secrecy, including providing "constant warnings to all persons to whom the trade secret has become known and obtaining from each an agreement, preferably in writing, acknowledging its secrecy and promising to respect it." *J.T. Healy & Son,* 357 Mass. at 731. *See also Cambridge Internet Solutions v. Avicon Group*, 1999 WL 959673, at *2 (Mass. Super. Ct. Sep. 21, 1999). A number of factors may be considered by the Court in evaluating the "eternal vigilance." *See D.B. Riley, Inc. v. AB Eng'g Corp.*, 977 F. Supp. 84, 90 (D. Mass. 1997) (quoting *USM Corp. v. Marson Fastener Corp.*, 379 Mass. 90, 98 (1979)).

ConnectU's unsupported suggestions of confidentiality are insufficient as a matter of law. *Swartz*, 53 F. Supp. 2d at 99. ConnectU never alleges that any component of its trade secret was marked confidential or that Zuckerberg signed a confidentiality agreement. Instead, ConnectU alleges, in conclusory form, that "the Founders ensured that there was an agreement or

understanding with each person to whom such information was disclosed that the information was confidential." and that Zuckerberg "was told that the Harvard Connection project was confidential and he agreed to maintain it as such." FAC ¶ 270. Notably, not a single email message or document relied upon by ConnectU says that the correspondence is confidential.

The exhibits attached to the FAC show the information was not protected as a secret. The ConnectU Founders discussed their project extensively with third parties. For example, Exhibit 10 to the FAC establishes that when ConnectU's Founders first contacted Zuckerberg, they did not place any restrictions on his viewing of the Harvard Connection code and indicated that "coding the site" had "actually been a big point of conversation with a lot of recruiters at companies who [ConnectU's Founders had] interviewed with, and they [were] all very intrigued." FAC, Ex. 10. Similarly, in previous proceedings, one ConnectU Founder testified that he had informed "many employers" of Harvard Connection and its operations via his resume and interviews. 10/25/06 Hr'g. Tr. (1:04-cv-11923-DPW) at 66:8-67:1.[6] The ConnectU Founders also were willing to discuss the matters in public areas. Specifically, Exhibits 16, 30 and 32 reflect that the Founders had no reservations about meeting to discuss the Harvard Connection "idea" in a public dining hall, including at peak dining hours like noon (FAC, Ex. 32) or 7:00 P.M. (*id.*, Ex. 16). And the ConnectU Founders freely shared details about their "idea" with third parties, without indicating that such information was confidential. *Id.*, Ex. 82 at C006956-7.

### (4)    Plaintiff Does Not Allege "Knowing" Behavior

ConnectU's attempt to sweep McCollum and Moskovitz into a trade secret claim also fails because Plaintiff has not alleged particularized facts showing "knowing" behavior by the

---

[6] The Court may take judicial notice of this previous testimony and evidence submitted to this Court. *Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324

defendants. *See Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co.*, 381 Mass. 1, 6 (1980);

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. at 357, 360.

ConnectU's allegations against McCollum and Moskovitz are based upon nothing more

than speculation.  Beyond conclusory allegations that Zuckerberg understood the secrecy and

confidentiality of the alleged secrets and that defendants incorporated the Harvard Connection

ideas into their website (FAC ¶ 2), Plaintiff does not allege specific facts to show that any other

Individual Defendant knew how or why such ideas contained ConnectU's allegedly confidential

information.  Rather, ConnectU concludes that Individual Defendants "knowingly benefited"

because they "were closely associated with Zuckerberg and collaborated with him to launch

thefacebook.com website."  *Id.* ¶ 289.  Alleging a connection between Zuckerberg and the

Individual Defendants is insufficient to prove that the Individual Defendants "knowingly

benefited" from the alleged trade secret.  Such an inference violates the rule set forth in *Bell

Atlantic*.

### 4.    ConnectU's Claim Under Massachusetts G.L. ch. 93A Fails

Plaintiff asserts a claim under Mass.G.L. ch. 93A, §§ 2 and 11.  To state a claim,

ConnectU must allege that (1) the claim is brought by one business against another; (2) that the

plaintiff is engaged in trade or commerce; (3) there has been a loss of money or property; (4) that

was caused by the defendant's unfair or deceptive acts or practices.  *Linkage Corp. v. Trustees of

Boston Univ.,* 425 Mass. 1, 22-23 (1997).  To "recover under this statute, [ConnectU] must

demonstrate that [the defendants] used an 'unfair method of competition or an unfair or

deceptive act' in the conduct of commerce."  *Nissan Autos. of Marlborough, Inc. v. Glick*, 62

Mass. App. Ct. 302, 312 (2004).  ConnectU has not established any of these requirements.

---

F.3d 12,15-16 (1st Cir. P.R. 2003)

### a.   ConnectU Must Plead A Dispute Between Two Businesses

Section 11 claims are applicable only to business dealings "between discrete, independent business entities," not to "disputes between parties in the same venture," as the latter are not regarded as having arisen in "'trade or commerce.'" *Petricca Dev. Ltd. Pshp. v. Pioneer Dev. Co.*, 214 F.3d 216, 223 (1st Cir. 2000); quoting *Szalla v. Locke*, 421 Mass. 448 (1995)). As set forth in earlier briefing, the relationship between Zuckerberg and the ConnectU Founders described in the amended complaint was a strictly private endeavor, to which Section 11 does not apply.[7]

As best as can be understood, ConnectU's allegations rest precisely on the type of private endeavor not protected by Section 11. ConnectU alleges that Zuckerberg "entered into an actual or implied contract with the Founders to complete work on the Harvard Connection website," the "Founders believed [Zuckerberg] was their partner at the time," and Zuckerberg "was Harvard Connection's only programmer." FAC ¶¶ 307, 310, 321. Furthermore, Zuckerberg was not involved in trade or commerce, regardless of his relationship to the ConnectU Founders. "Trade or commerce" includes "the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security" and "any contract of sale." Mass.G.L. ch. 93A, § 1. ConnectU admits that Zuckerberg volunteered and never received payment.[8] FAC ¶ 34. None of these sorts of allegations is the type of activity protected by the Unfair Trade Practices Act. *Linkage Corp.*, 425 Mass. at 23-24 (included in this classification are "disputes stemming from an employment relationship,

---

[7] Notably, § 11 claims cannot be brought against a subsequent employer (such as Facebook, Inc.) for issues related to the employee's prior acts. *See Ocean Air, Inc. v. Katzman*, 2002 WL 532475, at *10- *11 (Mass. Super. Ct. Jan. 22, 2002); *CoWorx Staffing Services LLC v. Coleman*, 2007 WL 738913, at *3 -*4 (Mass. Super. Ct. Feb. 7, 2007).

[8] ConnectU also alternatively claims that Zuckerberg was a "sole proprietor." No particularized pleadings supporting this allegation are provided. To the contrary, ConnectU's exhibits show he

disputes between individual members of a partnership arising from partnership business, and transactions and disputes between parties to a joint venture and between fellow shareholders"); *Informix , Inc. v. Rennell,* 41 Mass. App. Ct. 161, 162-63 (1996); *Armstrong v. Rohm & Haas Co.*, 349 F. Supp. 2d 71, 83 (D. Mass. 2004).

**b.**  **McCollum and Moskovitz Were Not A Business**

Section 11 also cannot apply to Moskovitz and McCollum because neither of them is a "business."  *See Petricca Dev. Ltd. Partner,* 214 F.3d at 223.  Indeed, to state a claim, ConnectU must plead facts that show Moskovitz and McCollum engaged in unfair or deceptive acts as a business and in commerce.  *See e.g., Begelfer v. Najarian*, 381 Mass. 177, 190-191 (1980); *Petricca Dev. Ltd. Partner*, 214 F.3d  at 223-24; *Linkage Corp.*, 425 Mass. 1.  ConnectU has not done so and cannot do so.

**c.**  **ConnectU Fails To Allege Any Unfair Or Deceptive Act**

ConnectU also contends, in conclusory form, that some action taken by Defendants is "unfair" and/or "deceptive."  FAC ¶¶ 308, 324.  ConnectU offers no specific facts for these allegations and, as such, they do not comply with the Court's requirements for particularity. Plaintiff provides no guidance as to what this allegation means; this claim should be dismissed.

**B.**  **ConnectU's Mass.G.L. ch. 93A and Unjust Enrichment Claims Are Preempted by Copyright**

ConnectU has not cured the previous preemption problem.  State law claims are preempted by copyright if 1) the subject matter involved may be protected by the Copyright Act, and 2) "the state created right" is "equivalent to one of the exclusive rights created by the Copyright Act."  *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 501, 505 (D. Mass. 1992), *aff*'d, 36 F.3d 1147 (1st Cir. 1994); *see also, John G. Danielson, Inc. v.*

---

did the work for free.  FAC ¶ 34.

*Winchester-Conant Props., Inc*., 186 F. Supp. 2d 1, 27-28 (D. Mass. 2002).  "The crux of the inquiry is whether the claimed state created right is qualitatively similar enough to the right protected by federal law to be termed 'equivalent' to, and thus preempted by, the federal law." *Data General,* 795 F. Supp. at 505.  A state law claim will be preempted if the state claim "seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law" and does "not include any extra elements that make it qualitatively different from a copyright infringement claim."  *Briarpatch Ltd., L.P. v. Phoenix Pictures , Inc.*, 373 F.3d 296, 305 (2nd Cir. 2004). *See also Guedes v. Martinez*, 131 F. Supp. 2d 272, 279 (D.P.R. 2001).

### 1.    Mass.G.L. ch. 93A Is Preempted By Copyright Law

ConnectU's chapter 93A allegations incorporate by reference its claim for relief under the Copyright Act, as well as the description of wrongful use of the Harvard Connection code to launch the Facebook website.  FAC ¶ 296; *see also* ¶¶ 42, 90, 98, 150, 162, 172, 241, 264. ConnectU alleges that by copying the Harvard Connection Code and incorporating it in the thefacebook.com website, the defendants infringe ConnectU's copyright.  *Id.*, ¶¶ 255-258. Because the acts alleged as "deceptive and unfair" also are alleged to constitute copyright infringement (*i.e.*, "usurping" Harvard Connection code), ConnectU's claim for relief pursuant to chapter 93A is preempted.  *See John G. Danielson, Inc*., 186 F. Supp. 2d 1.

### 2.    Plaintiff's Unjust Enrichment Claim Is Preempted By Copyright Law

ConnectU's unjust enrichment claim also is premised on the Individual Defendants' alleged use of ConnectU's copyrighted Harvard Connection Code.  *See* FAC ¶¶ 191 ("Zuckerberg unfairly benefited from full access to everything relating to the Harvard Connection website … the core ideas … the business plan … the incomplete Harvard

Connection website … the Harvard Connection Code … and the code Zuckerberg said he wrote for Harvard Connection …"). ConnectU's unjust enrichment claim amounts to nothing more than a claim for an accounting to ConnectU for its ownership of the Harvard Connection Code (and ideas embodied therein). These assertions are preempted. *See Ritchie v. Williams*, 395 F.3d 283, 289 (6th Cir. 2005); *Murray Hill Publ'ns, Inc. v. ABC Communs., Inc.*, 264 F.3d 622, 638 (6th Cir. 2001); *Ehat v. Tanner*, 780 F.2d 876, 878 & n. 2 (10th Cir. 1985), *cert. denied*, 479 U.S. 820, 93 L. Ed. 2d 39, 107 S. Ct. 86 (1986); *Wilson v. Mr. Tee's*, 855 F. Supp. 679, 684 (D.N.J. 1994); *Kunycia v. Melville Realty Co.*, 755 F. Supp. 566, 577 (S.D.N.Y. 1990). *See also* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1][g] (2006) ("a state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.").

To avoid preemption, ConnectU claims "ideas" comprise more than code. FAC ¶¶ 200, 239. "Ideas" that do not receive copyright protection are "nevertheless within the subject matter of copyright for purposes of preemption." *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1058 (C.D. Cal. 2000); *see also United States ex rel. Berge v. Bd. of Trustees,* 104 F.3d 1453, 1463 (4th Cir. 1997). When ideas are "embodied in a copyrighted work," or "premised upon ideas or concepts fixed in a tangible medium of expression," state law claims for breach of quasi-contract or misappropriation of the underlying ideas fall within the subject matter of copyright for the purpose of preemption. *Id.* at 1058-59, citing *NBA v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997) and *Wrench LLC v. Taco Bell Corp.*, 1998 U.S. Dist. LEXIS 12710, *14 (W.D. Mich. June 18, 1998). As best as Defendants can tell, each of the Harvard Connection "ideas" identified by ConnectU is alleged to be embodied in the website's user interface, functionality and content through the underlying code, which is a copyrighted work. *See* FAC,

Ex. 1A ¶¶ 1, 3, 5, 6, 9, 12 (describing an online community, a utility, or other ideas embodied in or underlying a website); 2, 7, 13 (code and functionality); 8 (user interface); and 4, 10, 11 (business plans). ConnectU's entire pleading describes the Harvard Connection code thefacebook.com as embodying the ideas described in Exhibit 1A. *Id.* ¶¶ 80, 180, 255, 268 289 (thefacebook.com); 200, 239, 311 (Harvard Connection code).

ConnectU also makes a vague references to "injustice," "passing off," and "ownership of code" to avoid preemption. No particularized allegation is given to support these vague comments, warranting dismissal. *See Bay State HMO Mgmt. v. Tingley Sys.,* 152 F. Supp. 2d 95, 109-110 (D. Mass. 1995), reversed in part on other grounds by *Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.,* 181 F.3d 174 (1st Cir. Mass 1999), and adopted by *Tingley Sys. v. CSC Consulting, Inc.,* 152 F. Supp. 2d 95 (D. Mass. 2001) (preemption exists where complaint contains no facts to support claims of "passing off" or "palming off"); *see also Decarlo v. Archie Comic Publications, Inc.,* 2001 WL 604184 (2d Cir. June 1, 2001) (nonprecedential opinion) (dispute over ownership is preempted). These allegations do not describe any extra element beyond the mere alleged unauthorized use of Harvard Connection Code. *See, e.g., Kodadek v. MTV Networks,* 152 F.3d 1209, 1212 -1213 (9th Cir. 1998). Further, so-called injustice arising from commercial immorality or bad faith intent to willfully copy a copyrighted work does not provide the extra element required to defeat copyright preemption. *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 851 (2d Cir. 1997); *Data Gen. Corp. v. Grumman Sys. Support Corp.,* 36 F.3d 1147, 1164-65 (1st Cir. 1994); *Orange County Choppers, Inc. v. Olaes Enterprises, Inc.,* No. 06 Civ. 7211, 2007 WL 2161777 at *10 (S.D.N.Y. July 27, 2007).

## IV.    **CONCLUSION**

Notwithstanding its length, the First Amended Complaint fails to set forth particularized allegations to support a claim for relief. Plaintiffs' claims must be dismissed.

Dated:  August 29, 2007.                          Respectfully submitted,


                                                   /s/ I. Neel Chatterjee /s/
                                                  G. Hopkins Guy, III*
                                                  I. Neel Chatterjee*
                                                  Monte Cooper*
                                                  Theresa A. Sutton*
                                                  ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                  1000 Marsh Road
                                                  Menlo Park, California  94025
                                                  Telephone:   (650) 614-7400
                                                  Facsimile:   (650) 614-7401
                                                  hopguy@orrick.com
                                                  nchatterjee@orrick.com
                                                  mcooper@orrick.com
                                                  tsutton@orrick.com

                                                  Steven M. Bauer
                                                  Jeremy P. Oczek
                                                  PROSKAUER ROSE, LLP
                                                  One International Plaza, 14th Floor
                                                  Boston, MA 02110-2600
                                                  Telephone:    (617) 526-9600
                                                  Facsimile:    (617) 526-9899
                                                  sbauer@proskauer.com
                                                  joczek@proskauer.com

                                                  * Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 29, 2007.

Dated:  August 29, 2007.           Respectfully submitted,

                                    /s/ I. Neel Chatterjee /s/
                                      I. Neel Chatterjee