# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA, <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, AND THEFACEBOOK LLC, <br><br> Defendants. | CIVIL ACTION NO. 1:07-CV-10593-DPW <br><br> RELATED ACTION NO. 1:04-CV-11923-DPW <br><br> **JURY TRIAL DEMANDED** |

## CONNECTU'S OPPOSITION TO EDUARDO SAVERIN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  PLEADING STANDARD ............................................................................................. 1

III. ARGUMENT .................................................................................................................. 2

    A.   ConnectU Adequately Pled a Claim Based on Saverin's Trade Secret
        Misappropriation ................................................................................................ 2

    B.   ConnectU Adequately Pled a Claim Based on Saverin's Unfair and
        Deceptive Conduct in Violation of Mass. Gen. Laws ch. 93A, §§ 2, 11 ............... 4

    C.   ConnectU Adequately Pled a Claim Based on Saverin's Unjust
        Enrichment ........................................................................................................ 6

        1.   ConnectU Pled a Claim That is Plausible on Its Face .............................. 6

        2.   ConnectU's Unjust Enrichment Claim Against Saverin Cannot Be
            Dismissed as Duplicative ........................................................................ 7

        3.   ConnectU Need Not Plead Saverin's Actual Knowledge ......................... 8

        4.   ConnectU Alleges Sufficient Facts to Support the Imposition of a
            Constructive Trust ................................................................................... 8

IV.  CONCLUSION ............................................................................................................... 9

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ................................................................................................. 1, 2, 8

*Brandt v. Wand Partners*,
   242 F.3d 6 (1st Cir. 2001) ................................................................................................ 6, 8

*DM Research, Inc. v. College of America Pathologists*,
   170 F.3d 53 (1st Cir. 1999) .................................................................................................. 1

*Daley v. Twin Discount, Inc.*,
   440 F. Supp.2d 48 (D. Mass. 2006) ..................................................................................... 6

*Dialogo, LLC v. Bauza*,
   456 F. Supp.2d 219 (D. Mass. 2006) ................................................................................... 7

*Linton v. N.Y. Life Ins. & Annuity Corp.*,
   392 F. Supp.2d 39 (D. Mass. 2005) .................................................................................. 6, 8

*Mass. Eye and Ear Infirmary v. QLT, Inc.*,
   2007 U.S. Dist. LEXIS 50199 (D. Mass. July 10, 2007) .................................................. 5, 6

*Schwartz v. Schering-Plough Corp.*,
   53 F. Supp.2d 95 (D. Mass. 1999) ....................................................................................... 3

*In re Stone & Webster, Inc. Sec. Litig.*,
   414 F.3d 187 (1st Cir. 2005) ................................................................................................ 8

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ............................................................................................................. 2

### STATE CASES

*Coelho v. Coelho*,
   2 Mass.App.Ct. 433 (1974) .................................................................................................. 9

*Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., Inc.*,
   381 Mass. 1 (1980) ........................................................................................................... 3, 4

*Foster v. Hurley*,
   444 Mass. 157 (2005) .......................................................................................................... 9

*Linkage Corp. v. Trustees of Boston U.*,
   425 Mass. 1 (1997) .................................................................................................... 5

*Rodriguez-Ortiz v. Margo Caribe, Inc.*,
   2007 WL 1732883 (1st Cir. June 18, 2007) ............................................................... 2

**DOCKETED CASES**

*Facebook, Inc. v. Eduardo Saverin*,
   No. 105 cv 039867 (Cal. Super. Ct.) ......................................................................... 1

**OTHER**

Restatement of Torts § 757 (1939) ................................................................................... 3

Fed. R. Civ. P. 8 ................................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1

Mass. Gen. Laws ch. 93A, § 2, 11 ................................................................................. 5,6

I.  **INTRODUCTION**

Plaintiff ConnectU, Inc. adequately pled three claims against Defendant Eduardo Saverin ("Saverin") in the First Amended Complaint ("FAC"), namely, trade secret misappropriation, unfair competition and unfair and deceptive trade practices, and unjust enrichment.  The FAC alleges that since at least as early as January 2004, Saverin was working with Defendant Mark Zuckerberg to develop thefacebook.com website based on Cameron Winklevoss's, Tyler Winklevoss's, and Divya Narendra's (the "Founders") ideas, business plans, and code for the Harvard Connection website.  The FAC pleads enough facts—which must be taken as true—to state plausible claims.

To the extent that ConnectU cannot plead additional facts at this stage in the litigation, it is because Saverin and his co-defendants actively refused to provide documents and other discovery.  For example, Saverin never produced documents related to his California state court litigation with Facebook.  *See Facebook, Inc. v. Eduardo Saverin*, No. 105 cv 039867 (Cal. Super. Ct.).  ConnectU discovered these proceedings on its own.

Moreover, Saverin convinced this Court at the July 25, 2007 hearing to permit him to provide affidavits stating that he does not have any relevant documents to produce.  (Dkt. 101). The Court so ordered on July 26, 2007.  To date, Saverin has not provided such affidavits, and he has produced no documents since the date of the Order.  Saverin obviously has something to hide, and his motion to dismiss should be denied for this reason alone.

II.  **PLEADING STANDARD**

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the U.S. Supreme Court explained that to survive a motion to dismiss under Rule 12(b)(6), the allegations in a Complaint must cross the line between "possibility and plausibility of 'entitlement to relief.'" *Id.* at 1966 (*citing DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)); *see*

1

*also Rodriguez-Ortiz v. Margo Caribe, Inc.*, 2007 WL 1732883, at *2 (1st Cir. June 18, 2007) (quoting *Bell Atlantic* and stating that "to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief'"). This "plausibility" standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the allegations]." *Bell Atl.*, 127 S. Ct. at 1965.

Thus, even if this Court believes that proof of the facts as alleged is "very remote and unlikely," it should not dismiss. *Id.*; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (*cited approvingly by Bell Atl.*, 127 S. Ct. at 1969). In *Swierkiewicz*, the Supreme Court held that the Second Circuit had impermissibly applied a heightened pleading standard by insisting that the plaintiff allege "specific facts" beyond those necessary to state a claim under Rule 8. 534 U.S. at 508, 514. In approving the *Swierkiewicz* decision, the *Bell Atlantic* Court noted that it also "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1973-74.

As explained in more detail below, ConnectU met this plausibility standard for each claim. ConnectU also exceeded this standard and pled each claim with particularity, as the Court requested.

### III.   ARGUMENT

#### A.   ConnectU Adequately Pled a Claim Based on Saverin's Trade Secret Misappropriation

To plead a claim for trade secret misappropriation, ConnectU is required to allege that it owned a trade secret, that it took reasonable steps to maintain the confidentiality of the trade secret, and that Saverin used improper means or participated in his own or another's breach of the confidential relationship to acquire and use the trade secret. *Schwartz v. Schering-Plough*

2

*Corp.*, 53 F. Supp.2d 95, 100 (D. Mass. 1999). ConnectU's ownership of a trade secret is particularized in at least FAC ¶¶ 266-269 and Ex. 1a of the FAC. The Founders' reasonable steps to maintain the confidentiality of the trade secrets are particularized in at least FAC ¶¶ 270-271.

Contrary to Saverin's arguments, ConnectU has not merely "lumped" Saverin in with all the other Defendants. Saverin's participation in Zuckerberg's breach of the confidential relationship and Saverin's acquisition of ConnectU's trade secrets is particularized in at least FAC ¶¶ 39, 130, 136, 287-289. Specifically, the FAC explains that in January 2004, Zuckerberg emailed Saverin and showed him the "mostly completed website" (FAC ¶ 130); that Saverin was involved in obtaining funding for the project as early as January 2004 (FAC ¶¶ 136, 227); and that Saverin, along with the other co-Defendants, was intimately involved with Zuckerberg in developing thefacebook.com website based on the Founders' misappropriated trade secrets (FAC ¶¶ 289).

Accordingly, contrary to Saverin's arguments, ConnectU adequately pled that Saverin "participated in" Zuckerberg's breach. *See Schwartz*, 53 F. Supp.2d at 100; *see also Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., Inc.*, 381 Mass. 1, 6 & n.4 (1980) (*quoting* Restatement of Torts § 757 (1939) ("Thus, if the actor knows (or should know) that the information proffered to him by one person is the trade secret of another he is put on inquiry as to the former's authority to disclose the information . . . . [T]he notice necessary to make receipt or use of a trade secret tortious need not be actual notice . . . . One has notice of facts . . . if, under the circumstances, a reasonable man would be put on inquiry and an inquiry pursued with reasonable intelligence and diligence would disclose the facts."). Saverin apparently recognizes that knowledge is not required to be liable for trade secret misappropriation based on receipt or

3

use of trade secrets. However, Saverin nonetheless argues that the FAC is deficient because ConnectU failed to plead Saverin's knowledge of the fact that the information obtained by Zuckerberg and used to create thefacebook.com was the Founders' misappropriated trade secrets. (Saverin Dkt. 88 at 6). This argument obviously lacks merit.

ConnectU has adequately alleged Saverin's involvement with the inauspicious beginnings of thefacebook.com. Under the scenario alleged by ConnectU, a reasonable person in Saverin's position would be put on notice of the existence of a confidential relationship between Zuckerberg and the Founders, and, had Saverin engaged in a reasonable inquiry, he would have discovered their relationship and would have thereby obtained actual knowledge of it.

Moreover, ConnectU has alleged that no later than February 11, 2004, Saverin had knowledge of the confidential relationship between Zuckerberg and the Founders, as well as knowledge that his use or receipt of the Founders' trade secrets was in breach of Zuckerberg's confidential relationship (FAC ¶ 229). Saverin's argument that "*at most*" he was aware that thefacebook.com "*was accused* of being the fruits of the poisonous tree" is unavailing because this is precisely the type of accusation that would put Saverin on notice to inquire further. *Curtiss-Wright*, 381 Mass. at 6 & n.4. Accordingly, ConnectU pled facts regarding Saverin's misappropriation of trade secrets that make the claim against him, at the very least, plausible on its face, and such facts must be taken as true.

**B.     ConnectU Adequately Pled a Claim Based on Saverin's Unfair and Deceptive Conduct in Violation of Mass. Gen. Laws ch. 93A, §§ 2, 11**

To plead a claim for a violation of Mass. Gen. Laws ch. 93A, §§ 2, 11, ConnectU must allege that (1) Saverin engaged in unfair methods of competition or unfair or deceptive acts or practices; (2) in the conduct of trade or commerce; (3) that both ConnectU and Saverin were engaged in trade or commerce; (4) that Saverin's acts occurred primarily and substantially in

4

Massachusetts; and (5) that ConnectU suffered a loss of money or property as a result of Saverin's unfair or deceptive acts. *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 22-28 (1997). Saverin's unfair acts are particularized in at least FAC ¶¶ 13, 36, 39, 130, 136, 180, 184-190, 194, 224-239, 287-289, 292.

Saverin argues that the "only act attributed to Mr. Saverin is that he secured advertising and financing for thefacebook.com." (Saverin Dkt. 88 at 8). This is not true. As detailed in FAC ¶¶ 224-239, ConnectU alleges that Saverin was unjustly enriched by his use and retention of the ideas and business plans that Zuckerberg misappropriated from the Founders. Saverin's unjust enrichment, taken alone, is sufficient to constitute a violation of Mass. Gen. Laws ch. 93A. *See, e.g.*, *Mass. Eye and Ear Infirmary v. QLT, Inc.*, 2007 U.S. Dist. LEXIS 50199, at *72-73 (D. Mass. July 10, 2007) (noting that conduct that falls "within the penumbra" of "an established common-law concept of unfairness," such as unjust enrichment, is actionable under 93A).

Saverin's unfair acts are further detailed in FAC ¶¶ 287-289, where ConnectU alleges that Saverin participated in Zuckerberg's breach of his confidential relationship with the Founders by misappropriating the Founders' trade secrets. Saverin's misappropriation of their trade secrets is within the penumbra of a common law concept of unfairness, and is therefore actionable under 93A. *Id.* Accordingly, ConnectU adequately pled a claim for unfair competition and unfair and deceptive trade practices under Mass. Gen. Laws ch. 93A, §§ 2, 11.

Saverin incorrectly suggests that ConnectU must plead Saverin's knowledge or intent in order to support a 93A claim. (Saverin Dkt. 88 at 8) ("The FAC contains no facts . . . suggesting that [Saverin] knew that it was unfair and deceptive to [use the Harvard Connection ideas].") Willfulness, knowledge, or intent are not pleading requirements for a 93A claim. *See, e.g.*,

5

*Mass. Eye and Ear*, 2007 U.S. Dist. LEXIS 50199, at *72-73. Saverin's citation to *Daley v. Twin Disc, Inc.*, 440 F. Supp.2d 48 (D. Mass. 2006), is misleading and irrelevant. (Saverin Dkt. 88 at 8). *Daley* involved a claim for breach of contract and a claim for violations of 93A. 440 F. Supp.2d at 50. Because a standard breach of contract claim is not within the penumbra of a common law concept of unfairness, the *Daley* court required something more to go forward with plaintiff's 93A claim. *Id.* at 53-54. Here, on the other hand, as explained above, ConnectU adequately pled that Saverin was unjustly enriched and that he misappropriated the Founders' trade secrets. The conduct underlying both of these claims is within the penumbra of common law unfairness and therefore actionable under 93A. *See, e.g.*, *Mass. Eye and Ear*, 2007 U.S. Dist. LEXIS 50199, at *72-73.

    **C.**    <u>**ConnectU Adequately Pled a Claim Based on Saverin's Unjust Enrichment**</u>

              **1.**    *ConnectU Pled a Claim That is Plausible on Its Face*

To plead unjust enrichment under Massachusetts law, a plaintiff must allege that (1) a benefit or enrichment was conferred upon the defendant; (2) the retention of the benefit or enrichment by the defendant resulted in a detriment to the plaintiff; and (3) there are circumstances which make the retention of that benefit unjust. *Brandt v. Wand Partners*, 242 F.3d 6, 16 (1st Cir. 2001); *Linton v. N.Y. Life Ins. & Annuity Corp.*, 392 F. Supp.2d 39, 42 (D. Mass. 2005). Saverin's unjust enrichment is particularized in FAC ¶¶ 224-239. Specifically, through Zuckerberg, Saverin retained a benefit conferred by the Founders, the retention of the benefit has caused a detriment to ConnectU, and the retention is unjust. Saverin, along with his co-Defendants, based thefacebook.com website, and Facebook, Inc., on the Harvard Connection ideas and business plan. Taken as true, such facts plead a claim of unjust enrichment against Saverin that is plausible on its face. As the Court requested, ConnectU also pled with

6

particularity the unjust circumstances surrounding Saverin's retention of the ideas and business plans for the Harvard Connection website (FAC ¶¶ 180-197, 224-239).

Saverin's citation to and reliance upon *Dialogo, LLC v. Bauza*, 456 F. Supp.2d 219 (D. Mass. 2006), a case decided at summary judgment, is misleading and inapplicable here. (Saverin Dkt. 88 at 9). Saverin quotes *Dialogo* for what he argues is the pleading standard for a claim of unjust enrichment. (*Id.*). In actuality, the *Dialogo* court did not state the pleading standard, but rather stated what a plaintiff must "show" to "satisfy the elements of unjust enrichment." 456 F. Supp.2d at 227.

Even under the *Dialogo* court's summary judgment standard for unjust enrichment, the FAC alleged facts sufficient to make Saverin's unjust enrichment plausible on its face. Contrary to Saverin's arguments, ConnectU pled a relationship between Saverin's enrichment and ConnectU's loss. Specifically, ConnectU alleges that Saverin was enriched through his use of the ideas and business plans unjustly appropriated by the Facebook Defendants (FAC ¶¶ 234-237). Because Saverin and the remaining Defendants gained the "first-user advantage" due to the use of the Founders' ideas and business plans, thus preventing the Founders from doing so, the Founders, and, in turn, ConnectU, were impoverished. (*Id.*). Thus, contrary to Saverin's arguments, ConnectU has alleged a relationship between Saverin's enrichment and the Founders' impoverishment.

        **2.**     ***ConnectU's Unjust Enrichment Claim Against Saverin Cannot Be Dismissed as Duplicative***

Saverin's argument that ConnectU's unjust enrichment claim is duplicative of the unjust enrichment claim against the Facebook Defendants is irrelevant at the pleading stage. ConnectU is entitled to plead in the alternative that it can recover Saverin's interest in Facebook, Inc. either directly from the corporate entity or from Saverin. *See In re Stone & Webster, Inc. Sec. Litig.*,

414 F.3d 187, 200 n.8 (1st Cir. 2005) ("A plaintiff has the right to plead in the alternative, and the plaintiff's doing so does not undermine the validity of the complaint."). In any event, ConnectU alleges that Saverin has been unjustly enriched in his own right (FAC ¶ 232).

### 3. *ConnectU Need Not Plead Saverin's Actual Knowledge*

Saverin's argument that ConnectU has not alleged his actual knowledge of the unjust nature of his retention of the Founders' ideas and business plans is incorrect because a plaintiff is not required to plead the defendant's knowledge to state a claim for unjust enrichment. To plead a claim of unjust enrichment, ConnectU must allege that the circumstances surrounding the enrichment were unjust but need not plead any wrongdoing by the defendant. *Brandt*, 242 F.3d at 16; *Linton*, 392 F. Supp.2d at 42.

In any event, ConnectU alleged that since at least as early as mid-February 2004, Saverin had knowledge of the inauspicious beginnings of Facebook (FAC ¶ 229). ConnectU also alleged facts that make it plausible that Saverin possessed this knowledge since at least as early as January 2004, well before Saverin acquired his initial stake in Facebook. At the pleading stage, ConnectU need not prove Saverin's knowledge, but rather need only allege facts that would make Saverin's knowledge of his retention of an unjust benefit, and a claim for unjust enrichment, plausible on its face. *Bell Atl.*, 127 S. Ct. at 1966. ConnectU has met this plausibility standard.

### 4. *ConnectU Alleges Sufficient Facts to Support the Imposition of a Constructive Trust*

Saverin argues that a constructive trust to avoid unjust enrichment may be imposed when the benefit is unjustly obtained "(a) by fraud or (b) in violation of a fiduciary relation; or (c) where information confidentially given or acquired is used to the advantage of the recipient at the expense of the one who disclosed the information." *Coelho v. Coelho*, 2 Mass.App.Ct. 433,

435 (1974) (Saverin Dkt. 88 at 13).  Saverin's caselaw supports ConnectU because ConnectU alleged that Saverin acquired information confidentially given by the Founders to Zuckerberg, and alleged that Saverin used the information to his advantage, at the Founders' expense (FAC ¶¶ 224-234).  Accordingly, ConnectU pled enough facts to support the imposition of a constructive trust based on Saverin's unjust enrichment.

Saverin's citation to *Foster v. Hurley*, 444 Mass. 157 (2005), for the proposition that no constructive trust can be imposed absent Saverin's knowledge of Zuckerberg's wrongdoing, is misplaced.  (Saverin Dkt. 88 at 13).  First, as explained above, ConnectU pled facts that show Saverin knew of Zuckerberg's wrongdoing.  Second, the *Foster* court also explains that "[u]nder Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, **or in other circumstances indicating that he would be unjustly enriched**."  444 Mass. at 167 (emphasis added).  Thus, Saverin's citation to *Foster* is misleading because, although the court refused to find a constructive trust, the court based this refusal not on the defendant's lack of knowledge, but on the lack of evidence of fraud or a fiduciary relationship.  *Id.* at 168 ("In this case, there was neither a fiduciary relationship between [defendant] and [plaintiff] nor any evidence of fraud on the part of [defendant]").  Accordingly, ConnectU adequately pled circumstances to support the imposition of a constructive trust, namely that Saverin retained and used confidential information provided by the Founders, and that this retention and use was at the Founders' expense.

## IV.   CONCLUSION

For the reasons detailed above, ConnectU respectfully urges the Court to deny Saverin's Motion to Dismiss in its entirety.

| | |
|---|---|
| Dated: September 21, 2007 | Respectfully submitted,<br><br>         /s/ Anastasia Fernands         <br><br>Anastasia Fernands (BBO # 633131)<br>Richard I. Werder, Jr. (*pro hac vice pending*)<br>Peter Calamari (*pro hac vice pending*)<br>QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP<br>51 Madison Avenue<br>22nd Floor<br>New York, New York  10010-1601<br>T: (212) 849-7000<br>F: (212) 849-7100<br><br>John F. Hornick (*pro hac vice*)<br>Margaret A. Esquenet (*pro hac vice* )<br>Meredith H. Schoenfeld (*pro hac vice*)<br>Daniel P. Kaufman (BBO # 663535)<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.<br>901 New York Avenue, N.W.<br>Washington, D.C. 20001<br>T: (202) 408-4000<br>F: (202) 408-4400<br><br>Daniel P. Tighe (BBO # 633131)<br>Scott McConchie (BBO # 556583)<br>GRIESINGER, TIGHE, & MAFFEI, L.L.P.<br>176 Federal Street<br>Boston, MA 02110<br>T: (617) 542-9900<br>F: (617) 542-0900<br><br>Attorneys for Plaintiffs<br>ConnectU, Inc., Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra |

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 21, 2007.

/s/ Anastasia Fernands
Anastasia Fernands
