UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CONNECTU, INC., CAMERON
WINKLEVOSS, TYLER WINKLEVOSS,
AND DIVYA NARENDRA,

                    Plaintiffs,

        v.

FACEBOOK, INC., MARK ZUCKERBERG,
EDUARDO SAVERIN, DUSTIN
MOSKOVITZ, ANDREW MCCOLLUM,
AND THEFACEBOOK LLC,

                 Defendants.

1:07-CV-10593 (DPW)

Related Action: Civil Action No. 04-CV-11923 (DPW)

District Judge Douglas P. Woodlock

Magistrate Judge Robert B. Collings

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS, MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT**

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. FACTS ....................................................................................................................2

III. ARGUMENT ON MOTIONS TO DISMISS ........................................................5

  A.  THE FAC SUFFICIENTLY PLEADS ALL CAUSES OF ACTION
      AGAINST ALL DEFENDANTS ................................................................5

      1.  Breach of Contract ..........................................................................7

      2.  Duty of Good Faith and Fair Dealing ...........................................10

      3.  Fraud ..............................................................................................11

      4.  Promissory Estoppel ......................................................................12

      5.  Breach of Fiduciary Duty...............................................................13

      6.  Unjust Enrichment .........................................................................15

      7.  Copyright Infringement .................................................................16

      8.  Trade Secret Misappropriation ......................................................17

      9.  Unfair Trade Practices ...................................................................20

      10. Successor Liability.........................................................................22

          (a)  Plaintiffs' FAC Sufficiently Pleads Successor Liability................22

               (i)    The Facebook Entities Assumed Their
                      Predecessors' Liability.....................................................23

               (ii)   The Facebook Entities Are a Continuation of the *De
                      Facto* Partnership ..............................................................24

               (iii)  *De Facto* Merger...............................................................25

  B.  THE FRAUD AND BREACH OF FIDUCIARY DUTY CLAIMS ARE
      TIMELY .....................................................................................................26

      1.  The Addition of the Individual Plaintiffs is Proper ......................26

  2. The Claims Against the Facebook Entities Relate Back ..........................28

 C. THE COPYRIGHT ACT DOES NOT PREEMPT ANY CLAIMS ....................29

  1. Contract Claims Have The Extra Element of Promise .............................29

  2. Unfair Competition Seeks to Vindicate Rights Different From Copyright. ..................................................................................................30

  3. Unjust Enrichment is Not Limited to the Copying of Source Code ..........30

 D. THE FOUNDERS' CLAIMS ARE PROPERLY ASSIGNED TO CONNECTU.....................................................................................................31

  1. Plaintiffs Adequately Plead That The Founders Assigned Their Partnership Interests to ConnectU ..............................................................32

  2. Plaintiffs Adequately Plead Claims That Were Assignable From The Founders to ConnectU ......................................................................32

IV. ARGUMENT ON MOTION FOR SUMMARY JUDGMENT .......................................34

 A. There is a Disputed Issue of Material Fact Over the Existence of a Partnership Between Zuckerberg and the Founders .................................................34

 B. Defendants' Summary Judgment Arguments on Good Faith and Fair Dealing and Promissory Estoppel Are Contingent on Their Contract Indefiniteness Argument ......................................................................................37

V. ARGUMENT ON MOTION TO STRIKE....................................................................37

 C. Motions to Strike Are Disfavored.........................................................................37

 D. Plaintiffs' Request For Relief Satisfies Fed.R.Civ.P. 8(a)(3) Pleading Requirements ........................................................................................................37

  1. Plaintiffs Adequately Plead a Basis For Imposing a Constructive Trust .........................................................................................................38

  2. Plaintiffs Adequately Plead a Basis For Enjoining The Facebook.com Website .............................................................................39

  3. Plaintiffs Adequately Plead a Basis For Damages....................................39

## TABLE OF AUTHORITIES

**Page**

### CASES

Aetna Cas. Sur. Co. v. P & B Autobody,
     43 F.3d 1546 (1st Cir. 1994) ........................................................................ 16

Aretakis v. Gen. Signal, Inc.,
     Civ. A. No. 05-10257-DPW, 2006 WL 1581781 (D. Mass. June 7, 2006) ..................... 36

Baker v. Allen,
     197 N.E. 521 (Sup. Ct. Mass. 1935) .................................................... 33

Bell Atlantic  Corp. v. Twombly,
     127 S. Ct. 1955 (2007) .................................................................... 5

Billings v. GTFM, LLC,
     449 Mass. 281 (2007) ...................................................................... 32

Boreri v. Fiat, S.P.A.,
     763 F.2d 17 (1st Cir. 1985) ............................................................... 37

Boutiette v. Dickinson,
     768 N.E.2d 562 (Mass. App. 2002) .................................................. 27

Boyer v. Bowles,
     310 Mass. 134 (1941) ........................................................................ 8

Braga v. Genlyte, Inc.,
     57 Fed. Appx. 451 (1st Cir. 2003) ................................................... 22

Brennan v. Employees Liab. Assur. Corp., Ltd.,
     213 Mass. 365, 100 N.E. 633 (1913) ............................................... 10

Burten v. Milton Bradley Co.,
     763 F.2d 461 (1st Cir. 1985) ........................................................... 20

Bushkin Assocs., Inc. v. Raytheon Co.,
     906 F.2d 11 (1st Cir. 1990) .............................................................. 15

Cambridge Plating Co., Inc. v. NAPCO, Inc.,
     876 F. Supp. 326 (D. Mass. 1995) ................................................... 21

Cardullo v. Landau,
     329 Mass. 5 (1952) ........................................................................... 8

Cargill, Inc. v. Beaver Coal & Oil Co.,
     424 Mass. 356 (1997) ...................................................................... 26

*Cataldo Ambulance Serv. v. City of Chelsea*,
    688 N.E.2d 959 (Mass. 1998) ...................................................................................... 13

*Cataldo v. Zuckerman*,
    20 Mass. App. Ct. 731, 482 N.E.2d 849 (1985) ........................................................ 10

*Central Nat'l Gottesman, Inc. v. Rodman & Rodman, P.C.*,
    Civ. A. No. 97-4791, 1998 Mass. Super. LEXIS 542 (Super. Ct. Mass. Sept. 30,
    1998) ............................................................................................................................ 33

*Chongris v. Bd. of Appeals of Andover*,
    811 F.2d 36 (1st Cir. 1987) .......................................................................................... 6

*Christensen v. Kingston School Committee*,
    360 F. Supp. 2d 212 (D. Mass. 2005) ........................................................................ 10

*Conley v. Gibson*,
    355 U.S. 41, 78 S. Ct. 99 (1957) .................................................................................. 7

Corliss v. City of Fall River,
    **397 F. Supp. 2d 260 (D. Mass. 2005)** ............................................................... 27, 28

*Curley v. North American May Boy Love Assoc.*,
    Civ. A. No. 00-10956-GAO, 2003 WL 21696547 (D. Mass. Mar. 31, 2003) ................ 27

*Curtis-Wright Corp. v. Edel-Brown Tool & Die Co.*,
    407 N.E.2d 319 (Mass. 1980) ..................................................................................... 20

*Cygan v. Megathlin*,
    326 Mass. 732, 96 N.E.2d 702 (1951) .......................................................................... 9

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
    795 F. Supp. 501 (D. Mass. 1992) ............................................................................. 29

*Delorafano v. Delorafano*,
    333 Mass. 684, 132 N.E.2d 668 (1956) ................................................................ 10, 36

*Dennison v. Lapointe*,
    Civ. A. No. 06-40100, 2006 U.S. Dist. LEXIS 93883 (D. Mass. Dec. 21, 2006) ........... 37

*Diomed, Inc. v. Vascular Solutions, Inc.*,
    417 F. Supp. 2d 137 (D. Mass. 2006) ........................................................................ 18

*DM Research, Inc. v. College of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) .......................................................................................... 5

*Evans v. Lorillard Tobacco Co.*,
    Civ. A. No. 04-2840A, 2007 WL 796175 (D. Mass. 2007) .......................................... 12

*Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*,
    107 Mich. App. 509, 309 N.W.2d 645 (Mich. App. 1981) ........................................... 14

*Fenton v. Bryan*,
    33 Mass. App. Ct. 688 (1982) ...................................................................................... 8

*Ferris v. Boston & Maine R.R.*,
    291 Mass. 529, 197 N.E. 506 (1935) ................................................................ 10

*Garber's Auto Rental Inc. v. Genoa Packing Co.*,
    2 Mass. App. Ct. 298 (1974) ........................................................................... 34

*Garrett v. Tandy Corp.*,
    295 F.3d 94 (1st Cir. 2002) ................................................................................ 5

*General Elec. Co. v. Chien-Min Sung*,
    843 F. Supp. 776 (D. Mass. 1994) .................................................................. 39

Gens. v. Resolution Trust Corp.,
    112 F.3d 569 (1st Cir. 1997) ........................................................................... 16

*Goldsmith v. City of Atmore*,
    996 F.2d 1155 (11th Cir. 1993) ...................................................................... 37

Greaney v. Heritage Hosp., Inc.,
    Civ. A. No. 952547, 1995 WL 1146185 (Mass. Super. Dec. 28, 1995) .......... 22

*Hanover Ins. Co. v. Sutton*,
    705 N.E.2d 279 (Mass. App. Ct. 1999) .......................................................... 13

*Harris v. Carter*,
    147 Mass. 313, 17 N.E. 649 (1888) .................................................................. 9

*Hastings Assoc., Inc. v. Local 369 Bldg. Fund, Inc.*,
    42 Mass. App. Ct. 162, 675 N.E.2d 403 (1997) ............................................... 9

*Hazen v. Warwick*,
    256 Mass. 302 (1926) ..................................................................................... 32

*Herrick v. Essex Regional Retirement Bd.*,
    68 Mass. App. Ct. 187 (2007) ........................................................................ 29

*Household Retail Serv.., Inc. v. Comm'r of Revenue*,
    448 Mass. 226 (Mass. 2007) .......................................................................... 33

*Howard v. Cycare Systems, Inc.*,
    128 F.R.D. 159 (D. Mass. 1989) ..................................................................... 11

Incase Inc. v. Timex Corp.,
    488 F.3d 46 (1st Cir. 2007) ............................................................................... 9

*Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.*,
    975 F. Supp. 483 (W.D.N.Y. 1997) ................................................................ 22

*J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*,
    260 N.E.2d 723 (Mass. 1970) ........................................................................ 19

*Jessie v. Boynton*,
    361 N.E.2d 1267 (Mass. 1977) ...................................................................... 12

*Jet Spray Cooler, Inc. v. Crampton*,
    377 Mass. 159 (1979) .................................................................................................. 39

*John Alden Transp. Co., Inc. v. Bloom*,
    11 Mass. App. Ct. 920, 415 N.E.2d 250 (1981) ............................................................ 8

*Jordan v. Commissioners of Bristol County*,
    167 N.E. 652 (Mass. 1929) ........................................................................................ 28

*JSB Indus. v. Nexus Payroll Servs., Inc.*,
    463 F. Supp. 2d 103 (D. Mass. 2006) ........................................................................ 24

*Kaufman v. Magid*,
    539 F. Supp. 1088 (D. Mass. 1982) .............................................................................. 6

*Knapp Schenck & Co. Ins. Agency, Inc. v. Lancer Mgmt. Co., Inc.*,
    Civ. A. No. 02-12118-DPW, 2004 WL 57086 (D. Mass. Jan. 13, 2004) ...................... 20

*Larabee v. Potvin Lumber Co.*,
    390 Mass. 636 (1983) .................................................................................................. 33

*Lee v. Mt. Ivy Press*,
    827 N.E.2d 727 (Mass. App. 2005) ............................................................................ 29

*Lewis v. Anderson*,
    477 A.2d 1040 (1984) .................................................................................................. 32

*Lexington Savings Bank v. Linnehan*,
    Civ. A. No. 96-2890, 1998 Mass. Super. LEXIS 348 (Mass. Super. Feb. 9, 1998) ......... 31

Liberace v. Conway,
    31 Mass. App. Ct. 40 (1991) ...................................................................................... 27

*Linkage Corp. v. Trustees of Boston Univ.*,
    425 Mass. 1 (1997) .................................................................................................... 21

Loomer v. Dionee,
    338 Mass. 348 (1959) ................................................................................................ 27

*Lubin & Meyer, P.C. v. Lubin*,
    427 Mass. 304, 693 N.E.2d 136 (1998) ........................................................................ 8

*Mass Cash Register, Inc. v. Comtrex Sys. Corp.*,
    901 F. Supp. 404 (D. Mass. 1995) ................................................................................ 7

*Mass. v. Mylan Labs.*,
    357 F. Supp. 2d 314 (D. Mass. 2005) ........................................................................ 16

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    412 F.3d 215 (1st Cir. 2005) ...................................................................................... 20

*McCarthy v. Litton Indus. Inc.*,
    570 N.E.2d 1008 (Mass. 1991) .................................................................................. 24

McCarthy v. Litton Indus., Inc.,
    410 Mass. 15 (1991) ........................................................................................................ 22

*McMurtrie v. Guiler,*
    183 Mass. 451, 67 N.E. 358 (1903) .............................................................................. 9, 36

*Mid Am. Title Co. v. Kirk,*
    991 F.2d 417 (7th Cir. 1993) ......................................................................................... 16

*Moore v. Marty Gilman, Inc.,*
    965 F. Supp. 203 (D. Mass 1997) .................................................................................. 19

*Nat'l Gypsum Co. v. Continental Brands Corp.,*
    895 F. Supp. 328 (D. Mass. 1995) ................................................................................. 25

*Noble v. Joseph Burnett Co.,*
    208 Mass. 75, 94 N.E. 289 (1911) ............................................................................ 10, 36

*Old Republic Ins. Co. v. Hansa World Cargo Serv.,*
    170 F.R.D. 361 (S.D.N.Y.) ............................................................................................ 22

*One Beacon Ins. Co. v. Electrolux,*
    223 F.R.D. 21 (D. Mass. 2004).......................................................................................28

*Patricia Kennedy & Co., Inc. v. Zam-Cul Enterprises Inc.,*
    830 F. Supp. 53 (D. Mass 1993) .................................................................................... 30

*Picker Int'l Corp. v. Imaging Equip. Serv.,*
    931 F. Supp. 18 (D. Mass 1995) .................................................................................... 19

*Pino v. Protection Maritime Ins. Co., Ltd.,*
    599 F.2d 10 (1st Cir. 1979)............................................................................................ 39

*Pittsfield General Hosp. v. Markus,*
    355 Mass. 519 (1969) .................................................................................................... 24

*Portfolioscope, Inc. v. I-Flex Solutions Ltd.,*
    473 F. Supp.2d 252 (D. Mass. 2007) ............................................................................. 31

*Qestec, Inc. v. Krummenacker,*
    367 F. Supp. 2d 89 (D. Mass. 2005) .............................................................................. 13

*Raytheon Co. v. Cont'l Cas. Co.,*
    123 F. Supp.2d 22 (D. Mass. 2000) ............................................................................... 20

*Rubin v. Brooks/Cole Publishing Co.*, 836 F. Supp. 909 (D. Mass. 1993)................................... 30

*Salamon v. Terra,*
    394 Mass. 857, 477 N.E.2d 1029 (1985) ....................................................................... 15

*Samia v. Central Oil Co. of Worcester,*
    339 Mass. 101 (1959) .................................................................................................... 32

Scott v. Harris,
    127 S. Ct. 1769 (2007) ............................................................................ 34

SEC v. Durgarian,
    477 F. Supp. 2d 342 (D. Mass. 2007) ...................................................... 37

SEC v. Nothern,
    400 F. Supp. 2d 362 (D. Mass 2005) ....................................................... 37

Shain Investment Co., Inc. v. Cohen,
    15 Mass. App. Ct. 4 (1982) ....................................................................... 8

Sibley v. Nason,
    196 Mass. 125 (1907) .............................................................................. 33

Silver v. Graves,
    210 Mass. 26, 95 N.E. 948 (1911) ........................................................... 10

Simons v. Amer. Dry Ginger Ale Co.,
    335 Mass. 521, 140 N.E.2d 649 (1957) ..................................................... 9

Singletary v. Pa. Dep't of Corr.,
    266 F.3d 186 (3d Cir. 2001) .................................................................... 29

Slaney v. Westwood Auto, Inc.,
    322 N.E.2d 768 (Mass. 1975) .................................................................. 11

Standard Fire Ins. Co. v. Crosby Yacht Yard, Inc.,
    Civ. A. No. 04-12244-GAO, 2007 WL 4465152 (D. Mass. Feb. 8, 2007) ...... 27

Swartz v. Schering-Plough Corp.,
    53 F. Supp. 2d 95 (D. Mass 1999) ........................................................... 19

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) .................................................................................. 6

Szalla v. Locke,
    421 Mass. 448 (1995) .............................................................................. 21

Triangle Trading Co. v. Robroy Indus.,
    200 F.3d 1 (1st Cir. 1999) ........................................................................ 34

USM Corp. v. Marson Fastener Corp.,
    379 Mass. 90 (1979) ............................................................................... 20

Van Brode Group, Inc. v. Bowditch & Dewey,
    633 N.E.2d 424 (Mass. 1994) .................................................................. 14

Veranda Beach Club Ltd. Partnership v. Western Sur. Co.,
    936 F.2d 1364 (1st Cir. 1991) .................................................................. 20

Whitcomb v. Converse,
    119 Mass. 38, 1875 WL 9260 (1875) ......................................................... 9

*Winchester v. Glazier,*
    152 Mass. 316, 25 N.E. 728 (1890) ................................................................. 9

*Young v. Lepone,*
    305 F.3d 1 (1st Cir. 2002) ............................................................................... 28

## **<u>STATUTES</u>**

FED. R. CIV. P. 56(c) ............................................................................................ 34

Fed. R. Civ. P. 9(b) ............................................................................................. 11

This memorandum responds to: (a) Zuckerberg's Motions to Dismiss; (b) Facebook, Inc. and TheFacebook LLC's Motion to Dismiss; (c) Moskovitz and McCollum's Motion to Dismiss; (d) Zuckerberg, Facebook, Inc., and TheFacebook LLC's Motion for Summary Judgment; and (e) Defendants' Motion to Strike Demands in Prayer for Relief.

## I.  INTRODUCTION

As alleged in detail in the Amended Complaint ("FAC"), in 2003, three Harvard students (the "Founders") were working as partners on developing Harvard Connection, a unique niche social network website for university students that would change the way students find and interact with each other on the Internet.  With their efforts to develop and launch the website nearing completion and with no competitive websites having been launched or on the horizon, the three partners recruited a fourth student, defendant Zuckerberg, to their team.  Having reached agreement on the essential terms of their relationship, they entrusted their new partner with their creative ideas and business plan and with the substantial amount of code that had been written for the website.  He in turn agreed to work with them for their mutual benefit and to help them to complete and rapidly launch the website into a market that conferred a tangible and substantial "first mover" advantage on the first operative website using the Founders' ideas.

The FAC pleads that defendant Zuckerberg betrayed his partners' trust and stole their brainchild.  While assuring the Founders that he was working on the partnership's website, Zuckerberg was stealing his partners' confidential code, ideas, and plan; recruiting a different team to implement and capitalize on the Founders' ideas and plan; writing code for a competitive website; and establishing the first of a series of entities to capture the economic value of his partners' ideas and plan.  Zuckerberg schemed in secret to preemptively launch – and ultimately did preemptively launch – a website to do exactly what the Founders' website was supposed to

do.  Zuckerberg's preemptive launch of a competitive website prevented the partnership from achieving its objective of launching a website that would have been the first of its kind and producing economic value that the four partners would have shared.  As the Founders had hoped, the competitive website was phenomenally successful; unfortunately, others have wrongfully reaped the enormous financial benefits.

Defendants' motions to dismiss ignore the well-pleaded factual allegations of the FAC and rest on erroneous legal arguments.  The motion to strike ignores plaintiffs' factual allegations and asks the Court to resolve disputed factual issues in defendants' favor – which is plainly inappropriate at the pleading stage.  The summary judgment motion is patently frivolous. All of the pending motions should therefore be denied.

## II.  FACTS

Operating as a partnership from December 2002 onward, the Founders came up with a novel idea for a new type of niche social network website for university students, developed a business plan around that idea, and made substantial progress toward designing and launching their website – including hundreds of hours of development time.  (FAC, ¶¶ 24-27, 267). Zuckerberg, through his counsel, acknowledged in February 2004 that the Founders were operating as a partnership (*e.g.*, *id.*, ¶ 250), and defendants have conceded that they understood that the Founders' efforts were always directed to establishing a for-profit business, starting first at Harvard and then expanding to other schools.  (*Id.*, ¶¶ 301-03; *see id.*, ¶ 25).

In November 2003, at a time when Zuckerberg had not conceived of or done any work on a niche social network website for university students, the Founders offered – and Zuckerberg accepted – the opportunity to become their partner.  (*E.g.*, *id.*, ¶¶ 28-29, 56).  Offered the option of taking an equity stake in the Founders' venture, Zuckerberg did so enthusiastically.  (*Id.*, ¶

177). After doing so, Zuckerberg was afforded complete and unfettered access to the Founders' confidential business information, computer code, and other trade secrets and intellectual property, and he agreed to maintain that confidentiality. (*E.g.*, *id.*, ¶¶ 30-31, 57-58, 177, 248-49, 270-72).

Although the Founders and Zuckerberg did not execute a formal written contract, by their words and conduct, they entered into a partnership with the understanding that they would share in the proceeds if their social network website was successful. (*E.g.*, *id.*, ¶¶ 33, 46, 62-63, 65, 67-68, 77). Zuckerberg acknowledged in writing (through his counsel) that there was an agreement and that he had confidentiality obligations. (*Id.*, ¶¶ 66, 288, Ex. 17).

While assuring the Founders in multiple meetings, calls, and emails that he was working diligently to complete the planned website for their partnership, Zuckerberg had decided to steal the Founders' creative ideas and business plan and to use them in a hastily completed and preemptively launched competitive website with different partners. Toward this end, in mid-December 2003, Zuckerberg and defendants McCollum, Moskovitz, and Saverin founded thefacebook.com and formed their own *de facto* partnership to operate it. (*Id.*, ¶¶ 13, 215, 217, 224). As early as December 22, 2003, Zuckerberg and Moskovitz were writing code for thefacebook.com website. (*Id.*, ¶ 127; Ex. TFB000086). On January 11, 2004, Zuckerberg registered the domain name "thefacebook.com." (FAC, ¶ 129). By January 12, 2004, thefacebook.com website was substantially complete (*id.*, ¶ 130), although Zuckerberg has falsely claimed that he only began writing code for the website after January 14, 2004. (*Id.*, ¶ 256).

Instead of doing the work he had agreed to do with the Founders and sharing it with them, Zuckerberg secretly worked on a competitive website with another group of partners while

misleading the Founders and failing to disclose that he had ceased work on their website and had no intention to deliver the code he had worked on with the Founders. He did this to buy time to usurp the "first mover" advantage that the Founders had told him, and that he understood, was critical to success for a venture of this kind. (*E.g.*, *id.*, ¶¶ 32, 34-35, 37, 71, 74, 77, 79, 118, 124, 126, 128-130, 185, 274, 281-82, 285). Zuckerberg's plan succeeded beyond his wildest expectations.

As Zuckerberg hoped and expected, the Founders reasonably and detrimentally relied on Zuckerberg's material misrepresentations and omissions concerning his work on the partnership's website and his secret work with a different group of partners on a competitive website. (*E.g.*, *id.*, ¶¶ 101-02, 107, 111, 113-14, 153-54).

In February 2004, with no prior notice to the Founders and without their consent, Zuckerberg and his new, secret partners launched their website, which was directly competitive with the website on which Zuckerberg had agreed to partner with the Founders. (*Id.*, ¶ 36). Defendants' competitive website incorporated the Founders' ideas and business plan, had substantially all the features of the website for which Zuckerberg had agreed to partner with the Founders, incorporated code provided to Zuckerberg by the Founders (or written by Zuckerberg or his co-defendants based thereon or derived therefrom), used additional code that Zuckerberg had purportedly written for the Founders' website under his agreement with them, and usurped the Founders' valuable business opportunity. (*Id.*, ¶¶ 36, 191, 200). After its launch, thefacebook.com grew virally and is currently a very profitable business. (*Id.*, ¶ 38). Its success is directly attributable to the wrongdoing alleged in this case, and it is a fair inference from the FAC that it would not exist but for that wrongdoing. (*E.g.*, *id.*, ¶¶ 36, 40-41, 80, 92, 141, 146, 180, 184, 186-89, 191, 255-58).

As a result of Zuckerberg's deception and failure to deliver a completed website, the Founders were unable to launch their website in the expedited manner they had informed Zuckerberg – and Zuckerberg fully understood – was necessary to ensure a first mover advantage and a strong potential for success. (*Id.*, ¶ 159). In fact, they were unable to launch until May 21, 2004, by which time Zuckerberg's competing website (which would not have existed but for the wrongdoing alleged by plaintiffs) had already preempted the field. (*Id.*, ¶ 38). Zuckerberg prevented the Founders from obtaining the first mover advantage they otherwise would have enjoyed by stealing the Founders' confidential ideas, business plan, and work product; breaking his promises to them; launching his own website incorporating the Founders' ideas and using their business plan and code; and refusing to give them the work product that he had generated as their partner. (*Id.*, ¶¶ 40-41, 159). As a result, the Founders suffered substantial damages. (*Id.*, ¶ 324).

## III.  ARGUMENT ON MOTIONS TO DISMISS

### A.  THE FAC SUFFICIENTLY PLEADS ALL CLAIMS AGAINST ALL DEFENDANTS

Defendants' motions to dismiss should be denied because the FAC alleges facts that show plaintiffs are entitled to relief under each of the claims asserted. The Supreme Court recently explained in *Bell Atlantic  Corp. v. Twombly* that to survive a motion to dismiss under Rule 12(b)(6) the allegations must cross the line between "possibility and plausibility of 'entitle[ment] to relief.'"  127 S. Ct. 1955, 1966 (2007), citing *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). This "plausibility" standard "does not impose a probability requirement; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the allegations]."  127 S. Ct. at 1965; *see also Garrett v. Tandy Corp.*, 295 F.3d 94, 105 (1st Cir. 2002) ("At the Rule 12(b)(6) stage, then, it is enough for the plaintiff to sketch a scenario which, if subsequently fleshed out by means of appropriate

facts, could support an actionable claim.") (internal citations omitted).  In this regard, the facts pleaded in the FAC should be taken as true and construed in the light most favorable to plaintiffs' case.  *Id.*; *Chongris v. Bd. of Appeals of Andover,* 811 F.2d 36, 37 (1st Cir. 1987).

Thus, even if this Court believes that proof of the facts as alleged is "very remote and unlikely," it should not dismiss.  *Bell Atlantic Corp.,* 127 S. Ct. at 1965; *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002).  The standard described in *Bell Atlantic* echoes the long recognized standard in the First Circuit, it does not alter it.  Defendants' argument that *Bell Atlantic* somehow imposes a higher pleading standard is wrong.  In *Swierkiewicz*, which was cited with approval by *Bell Atlantic* (127 S. Ct. at 1969)*,* the Supreme Court held that a court of appeals had impermissibly applied a heightened pleading standard by insisting that the plaintiff allege "specific facts" beyond those necessary to state a claim under Rule 8.  534 U.S. at 514.  In approving *Swierkiewicz*, the *Bell Atlantic* Court noted that it also "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl.,* 127 S. Ct. at 1974.[1]

Defendants spend much of their memoranda on feigned complaints about the structure and detail of the FAC.  They are simply wrong in arguing that the length of a complaint justifies dismissal.  *See Kaufman v. Magid*, 539 F. Supp. 1088, 1092 (D. Mass. 1982) (complaint's complexity, verbosity, and repetition did not, standing alone, justify dismissal).[2]  Moreover, as

---

[1]    Here, the evidence is far from fully developed, which further supports denial of the motions. *Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215 (1st Cir. 2000).  Among other things, Zuckerberg has remained silent and has not been subjected to cross-examination on what are – at bottom – fundamentally issues of credibility.

[2]    *See also Massachusetts Hosp. Ass'n v. Harris*, 500 F. Supp. 1270, 1282 (D. Mass. 1980) (although complaint contained 70 paragraphs, it gave defendants fair notice of claims); *Government Guarantee Fund v. Hyatt Corp.,* 166 F.R.D. 321, 324 (D.V.I. 1996) (while the 98 page complaint was hardly a "paragon of pithiness," it was accepted because it was quite comprehensible); *Atwood v. Humble Oil & Ref. Co.*, 243 F.2d 885, 888 (5th Cir. 1957) (brevity

requested by the Court during the July 25, 2007 hearing, the FAC sets forth the elements of each claim and alleges facts supporting each element of each claim. (*See* Dkt. 80 at 6-8). It is uniquely improper for defendants to argue the FAC should be dismissed for complying with defendants' requests for greater specificity. The FAC is structured to give defendants adequate notice of the claims against them and the facts upon which those claims rest, and that is all that the law requires. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957).

      1.     <u>Breach of Contract</u>

To state a claim for breach of contract, plaintiffs must plead: (1) the existence of an agreement, written or oral; (2) valid consideration; (2) breach; and (3) damages proximately caused by the breach. 17 MASSACHUSETTS PRACTICE SERIES § 2.1 (2007); *Mass Cash Register, Inc. v. Comtrex Sys. Corp.,* 901 F. Supp. 404, 415 (D. Mass. 1995). The FAC adequately pleads the Founders' offer of partnership and potential profit to Zuckerberg in the form of an equal financial interest in the venture (FAC, ¶¶ 28-29, 56); Zuckerberg's acceptance of that offer (*id.*, ¶ 56); the subject matters on which the Founders and Zuckerberg agreed (*id.*, ¶ 34, 46, 62-63, 67-68, 77); consideration (*id.*, ¶¶ 28-29, 56); Zuckerberg's multiple breaches of the agreement (*id.*, ¶¶ 32, 34-35, 37, 71, 74, 77, 79, 118, 124, 126, 128-30, 185, 274, 281-82, 285); and damages proximately caused by the breach (*id.*, ¶ 87). Zuckerberg agreed to enter into a commercial venture with the Founders in exchange for a share of the profits and to perform certain duties as a partner. He breached his agreement. Therefore, plaintiffs have sufficiently pleaded a claim for breach of contract. Defendants' arguments about lack of definiteness must be rejected.

---

does not rank in importance with the right and duty of a litigant to present the claims according to his own notions of their merits); *Niles v. Nelson*, 72 F. Supp. 2d 13, 24 (N.D.N.Y. 1999) (declining to dismiss lengthy, rambling, and repetitive complaint because it adequately notified defendant of plaintiff's claims, and thus enabled defendant to answer and prepare for trial);

Partnership agreements, a subset of contracts, are defined as an association of two or more persons to carry on as co-owners of a business for profit, *Boyer v. Bowles*, 310 Mass. 134, 138 (1941), and may be created through an oral agreement. *See Lubin & Meyer, P.C. v. Lubin*, 427 Mass. 304, 307, 693 N.E.2d 136, 139 (1998) ("The partnership had been created in 1974 by Lubin and Meyer, who maintained at all times an informal, oral agreement to share equally the net income generated from the firm."). A joint venture is, in effect, a partnership for a particular endeavor. *Shain*, 443 N.E.2d at 130. Joint ventures give rise to the same rights and duties as partnerships. *Cardullo v. Landau*, 329 Mass. 5, 8 (1952). Whether or not a partnership exists is a question of intent that must be proved by an express agreement, either written or oral, or be inferred from the acts or conduct of the parties. *See Fenton v. Bryan*, 33 Mass. App. Ct. 688, 691 (1982); *John Alden Transp. Co., Inc. v. Bloom*, 11 Mass. App. Ct. 920, 921, 415 N.E.2d 250 (1981). Intent may be proved through the existence of an agreement to act as partners, a sharing of losses or profits, and/or participation by the parties in the control or management of the enterprise. *Boyer*, 310 Mass. at 138; *Fenton*, 33 Mass. App. Ct at 691*; Shain,* 15 Mass. App. Ct. at 7-10. All of these factors are present and pleaded here, (FAC, ¶¶ 30-31, 57-58, 177, 248-49, 270-72), and therefore the FAC clearly states a claim for breach of contract.

Defendants' principal argument in support of their motion is that the alleged contract is not sufficiently definite to state a claim. In particular, defendants argue that the consideration to Zuckerberg is not pled with sufficient specificity. *See* Section IV, *infra*. The FAC specifically pleads that Zuckerberg was a partner in the venture and that he would receive a share of profits. (FAC, ¶¶ 28-29, 33, 46, 56, 66, 83). No more is required to state a claim.

Massachusetts law clearly enforces contracts such as the one alleged here. As a general

---

*Wolfson v. Lewis*, 68 F.R.D. 530, 534 (E.D. Pa. 1996) (108 pages, more than 600 paragraphs, not

matter, "a contract is not to be held unenforceable 'if, when applied to the transaction and construed in the light of the attending circumstances,' the meaning can be ascertained with reasonable certainty." *Simons v. Amer. Dry Ginger Ale Co.*, 335 Mass. 521, 140 N.E.2d 649 (1957), quoting *Cygan v. Megathlin*, 326 Mass. 732, 734, 96 N.E.2d 702 (1951).   In fact, "reasonable certainty" exists unless "the promise given and relied on was so vague that it can be given no effect." *Hastings Assoc., Inc. v. Local 369 Bldg. Fund, Inc.,* 42 Mass. App. Ct. 162, 170, 675 N.E.2d 403, 411 (1997), quoting *Simons*, 335 Mass. at 524; *see also Incase Inc. v. Timex Corp.*, 488 F.3d 46 (1st Cir. 2007) (holding that a jury could find a contract was formed despite clause putting off final negotiation of a price point until later).

Here, there is nothing vague about the benefit to Zuckerberg from entry into this agreement.   He was specifically promised he would receive a share of the proceeds from the venture.   (FAC, ¶¶ 28-29, 33, 46, 62-63, 65, 67-68, 77).   This alone should end the analysis. However, even if Zuckerberg's share was not specified, it is long-established precedent in Massachusetts courts that partnership agreements silent on the way in which profits shall be split are not indefinite as a matter of law. *McMurtrie v. Guiler*, 183 Mass. 451, 454, 67 N.E. 358 (1903).   "Where the [partnership] contract is silent, equity will adjust the rights of the partners to profits on the basis of what their intention was as shown from all the facts of the case." *Id.*, citing *Whitcomb v. Converse*, 119 Mass. 38, 42, 1875 WL 9260 (1875); *Harris v. Carter*, 147 Mass. 313, 17 N.E. 649 (1888); *Winchester v. Glazier*, 152 Mass. 316, 325, 25 N.E. 728 (1890).

This same result would be reached in a non-partnership context.   For example, Massachusetts courts have long held that a missing or indefinite consideration them is not, in and of itself, fatal to the contract's validity. *See Cygan*, 326 Mass. at 734 (holding that oral

---

considered defective, particularly where defendants had asked for more specificity).

employment contract was not void for indefiniteness despite agreement that plaintiff would receive extra compensation once the defendants "got on their feet"); *Delorafano v. Delorafano*, 333 Mass. 684, 132 N.E.2d 668 (1956) (upholding contract for increased wages should the business "improve"); *Hastings Assoc.*, 42 Mass. App. Ct. at 162 (enforcing contract that left price to be determined by a third party); *Cataldo v. Zuckerman,* 20 Mass. App. Ct. 731, 482 N.E.2d 849 (1985) (finding that formula to determine compensation was sufficiently definite for an enforceable contract).

The courts have long made it a point to fill in missing terms in contracts with such language as: (i) "a fair and equitable share of the profits," *Noble v. Joseph Burnett Co*., 208 Mass. 75, 94 N.E. 289 (1911); (ii) a sum which would be "right and satisfactory," *Silver v. Graves*, 210 Mass. 26, 95 N.E. 948 (1911); and (iii) additional compensation to make or treat an injured employee "right," *Brennan v. Employees Liab. Assur. Corp., Ltd*., 213 Mass. 365, 100 N.E. 633 (1913); *Ferris v. Boston & Maine R.R.*, 291 Mass. 529, 197 N.E. 506 (1935).

Thus the FAC states a claim for breach of contract. Defendants concede as much by making a frivolous summary judgment motion attacking the same issue. *See* Section IV, *infra*.

    2.    <u>Duty of Good Faith and Fair Dealing</u>

A claim for breach of the covenant of good faith and fair dealing requires: (1) a contract; and (2) that the breaching party's conduct was in bad faith "either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." *Christensen v. Kingston School Comm.,* 360 F. Supp. 2d 212, 227 (D. Mass. 2005). The FAC pleads that there was a contract between Zuckerberg and the Founders (FAC, ¶ 33, 46, 62-63, 65, 67-68, 77, discussed *supra,* section A.2); Zuckerberg breached the contract by not performing his duties and by misusing the confidential information he received

under the contract (*id.*, ¶¶ 32, 34-35, 37, 71, 74, 77, 79, 118, 124, 126, 128-30, 185, 274, 281-82, 285); Zuckerberg deceived and misled his partners (*id.*; *see also id.*, ¶¶ 101-02, 107, 111, 113-14, 153-54); he did so to obtain greater economic value for himself than he would have been entitled to under the contract (*id.*, ¶ 38); and his conduct damaged plaintiffs (*id.*, ¶ 95). Defendants' only argument against this claim is that there was no contract. As discussed in Section A.2., *supra*, this argument is without merit.

    3.   <u>Fraud</u>

To make out a claim for fraud, plaintiffs must plead (1) a false representation or omission of a material fact, (2) made with knowledge of its falsity for purposes of inducing the plaintiffs to act thereon, and (3) actual reliance. *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975). In addition, fraud must be pleaded with sufficient particularity to provide the defendant with notice of the conduct giving rise to the fraud. FED. R. CIV. P. 9(b); *Howard v. Cycare Sys., Inc.*, 128 F.R.D. 159, 163 (D. Mass. 1989). Defendants posit three arguments regarding plaintiffs' fraud pleadings. First, they allege no fraudulent statement was pleaded, although the basis for this argument is an interpretation of the facts and, thus, improper for a Rule 12(b)(6) motion. Second, defendants allege plaintiffs unreasonably relied upon Zuckerberg's statements, yet fail to explain exactly *why* it was unreasonable to rely upon the statements cited in the Amended Complaint. Finally, defendants assert Zuckerberg had no duty to disclose his work on Facebook to his partners. (Dkt. 80 at 16-18). These arguments are remarkably (though not surprisingly) inconsistent with the reality of the Amended Complaint.

The FAC pleads that Zuckerberg knowingly made both affirmative representations and omissions of material fact regarding the work he was supposedly doing for the partnership and about his activities with his other, secret partners (*e.g.*, FAC, ¶¶ 142-43, 145, 317); the date,

time, place, and manner of the fraudulent misrepresentations and omissions (*id.,* ¶¶ 108-09, 112-18, 120, 122-23, 126, 129, 132-34, 137-38); that Zuckerberg intentionally deceived his partners to gain time to misappropriate the Harvard Connection code and trade secrets and secure the critical first mover market advantage for his competing website (*id.,* ¶¶ 32, 34-35, 37, 71, 74, 77, 79, 118, 124, 126, 128-30, 185, 274, 281-82, 285); that Zuckerberg owed his partners a fiduciary duty which obligated him to disclose material information (*id.*, ¶¶ 165-67; *see Jessie v. Boynton*, 361 N.E.2d 1267, 1273 (Mass. 1977)); that plaintiffs reasonably and actually relied on Zuckerberg's material misrepresentations (FAC, ¶¶ 101-02, 107, 111, 113-14, 153-54; *see Evans v. Lorillard Tobacco Co.*, Civ. A. No. 04-2840A, 2007 WL 796175 (D. Mass. 2007), (holding that it is improper to dismiss claims based on reasonable reliance if the facts, as alleged, demonstrate plaintiffs could prove such reliance); and that plaintiffs suffered financial losses as a result of their reliance (*id.*, ¶ 147). No more is required to plead fraud, even under the more stringent standards of Fed. R. Civ. P. 9(b).

       4.    <u>Promissory Estoppel</u>

A claim for promissory estoppel requires: (1) a representation or conduct amounting to a representation intended to induce a course of conduct by the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and (3) detriment to the person as a consequence. *Mass Cash Register*, 901 F. Supp. at 420. The FAC pleads that Zuckerberg made repeated promises and assurances that he intended to complete the code to launch harvardconnection.com (FAC, ¶¶ 37, 67, 72, 74, 77-78, 152-53); that he made such promises and assurances to induce plaintiffs to believe he was still acting as their partner and in the best interests of the venture (*id.*); that Zuckerberg did not intend to honor his promise (*id.,* ¶¶ 86, 93-

94, 197, 200, 239, 260, 289); and that plaintiffs actually relied on Zuckerberg's material representations to their detriment (*id.,* ¶¶ 101-02, 107, 113-14, 153-54). This states a legally viable promissory estoppel claim, and defendants do not seriously contend otherwise.

Instead, defendants argue that "under this set of facts" plaintiffs' reliance on Zuckerberg cannot be reasonable. (Dkt. 80 at 15). The question whether the Founder's reliance on Zuckerberg's promise was reasonable is a jury question, and is irrelevant to this motion. *Cataldo Ambulance Serv. v. City of Chelsea*, 688 N.E.2d 959, 962 (Mass. 1998). Even if the Court were to consider the merits at this juncture, however, the FAC alleges many assurances by Zuckerberg that he would fulfill his promise (FAC, ¶¶ 67-70, 72-78) and defendants fail to address why reliance on such assurances is unreasonable.

### 5.    Breach of Fiduciary Duty

A claim for breach of fiduciary duty requires: (1) a fiduciary duty arising from a relationship between the parties; (2) breach of that duty; (3) damages; and (4) a causal relationship between the breach and the damages. *Qestec, Inc. v. Krummenacker,* 367 F. Supp. 2d 89, 97 (D. Mass. 2005), citing *Hanover Ins. Co. v. Sutton*, 705 N.E.2d 279, 288-89 (Mass. App. Ct. 1999). Zuckerberg argues that because "fraud is not pled, a breach is not pled." (Dkt. 80 at 18). This makes no sense; fraud and breach of fiduciary duty are different claims. Not only have plaintiffs sufficiently pleaded fraud (*see* Section III.A.3, *supra*), but the FAC also details conduct that constitutes a separate breach of Zuckerberg's fiduciary duty (FAC, ¶¶ 162-69).

Zuckerberg also argues that plaintiffs failed to plead that he entered into a partnership or joint venture which, he implicitly concedes, would give rise to a fiduciary duty. (Dkt. 80 at 19).

The FAC pleads, however, that Zuckerberg entered into such an agreement.[3]  (FAC, ¶¶ 30-31, 57-58, 177, 248-49, 270-72).  This argument must therefore be rejected.

Zuckerberg also disputes whether the special relationship alleged by virtue of his special expertise and special position on the development team gave rise to a duty (Dkt. 80 at 19).  "A fiduciary relationship arises when one reposes faith, confidence, and trust in another's judgment and advice."  *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509, 515, 309 N.W.2d 645, 648 (Mich. App. 1981).  The FAC pleads that Zuckerberg knew he had special expertise in computer programming necessary to the success of the partnership's venture and upon which his partners relied (*id.*, ¶¶ 52-53), and that Zuckerberg maintained sole control over the code, its completion, and whether and when the website would launch (*id.*, ¶ 35).  The special expertise Zuckerberg committed to the project coupled with his assurances that he intended to fulfill his essential role give rise to an actionable duty.  (FAC ¶¶ 49-52, 67-70, 72-78).[4]

Zuckerberg also argues that even if the special relationship creates a fiduciary duty, he must have knowingly accepted that duty.  (Dkt. 80 at 19).  Once again, the FAC specifically alleges that Zuckerberg knowingly undertook his responsibility, (FAC, ¶¶ 30-31, 57-58, 177, 248-49, 270-72); and that he knowingly deceived his partners by making repeated assurances to gain plaintiffs' "faith, confidence and trust" in his abilities as a programmer and his promise to complete the website for a timely launch.  (FAC ¶¶ 49-52, 67-70, 72-78).  *Van Brode Group, Inc. v. Bowditch & Dewey,* 633 N.E.2d 424, 428 (Mass. 1994) (finding the existence of a fiduciary

---

[3]  Defendants mislead the Court by claiming that plaintiffs pleaded that Zuckerberg was a freelance developer, and therefore had no fiduciary duty.  That allegation was expressly pled in the alternative to support plaintiffs' § 93A claim (FAC, ¶¶ 296, 298, 305) and is therefore immaterial to the breach of fiduciary duty claim.

[4]  *Ball v. Harrison,* cited by defendants, is inapplicable to this case.  50 N.E.2d 31, 33 (Mass. 1943).  In *Ball,* the court held that an employer does not have a duty to keep an accounting of profits generated from one employee.  This has no bearing on whether Zuckerberg, who made promises to gain the Founders' "faith, confidence, and trust" owed them a duty.

duty where the defendant knew the plaintiff intended to rely on the services provided).  This being the case, there is no merit to his argument.

6.    Unjust Enrichment

The elements of a claim for unjust enrichment are "'unjust enrichment of one party and unjust detriment to the other party.'"  *Bushkin Assocs., Inc. v. Raytheon Co.*, 906 F.2d 11, 15 (1st Cir. 1990), quoting *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029, 1031 (1985).  The FAC pleads that, after Zuckerberg agreed to complete the harvardconnection.com website and become a member of the Harvard Connection team, Zuckerberg, Moskovitz, Saverin, and McCollum began to develop a competing website using Harvard Connection assets and trade secrets, and operated in secret to usurp the first mover advantage from harvardconnection.com. (FAC, ¶¶ 175-99, 207-23).  The FAC details defendants' launch of facebook.com and the benefits defendants unfairly gained and retained as a result of their deceit.  (*Id.,* ¶¶ 180-97, 207-23).  The unjust nature of defendants' enrichment arises from defendants' deceitful and fraudulent actions and the misappropriation of Harvard Connection assets and trade secrets (*Id.*, ¶¶ 180-83, 192).

Contrary to defendants' argument, unjust enrichment does not require knowledge or appreciation of the benefit conferred.  (Dkt. 93 at 8).  Massachusetts law only requires that the circumstances surrounding the receipt of the benefit are unjust.  *Brandt*, 242 F.3d at 16; *Linton*, 392 F. Supp. 2d at 42.  Nonetheless, the FAC pleads that Moskovitz and McCollum were aware that thefacebook.com was the "fruits of a poisonous tree" (FAC ¶¶ 214, 222), and that Zuckerberg acted with knowledge that the Harvard Connection assets and trade secrets did not belong to him (*id.,* ¶¶ 180-83, 192).

Similarly, the proposition that plaintiffs cannot plead both a breach of contract and unjust enrichment claim is unsupportable.  First, the unjust enrichment claim addresses a broader range

of conduct than plaintiffs' breach of contract claim such that plaintiffs may be able to recover for some conduct under a contract theory and for other conduct under an unjust enrichment theory. *See*, *e.g.*, *Mass. v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) ("[A] suit in equity will lie where the remedy at law is not clear or as adequate and complete as that which equity can afford."). Second, the assertion that plaintiffs may not be able to recover under an unjust enrichment theory at a later stage in this case has no bearing on whether plaintiffs may **plead** a claim for unjust enrichment. Pleading in the alternative is squarely permitted by Rule 8(e)(2). *Gens. v. Resolution Trust Corp.*, 112 F.3d 569, 573 & n.4 (1st Cir. 1997). Moreover, alternate theories should not be precluded before discovery is complete. *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1555 (1st Cir. 1994). Therefore, "[c]ourts have been flexible regarding when in the trial they require the plaintiff to choose its avenue of recovery." *Id.*

       7.    Copyright Infringement

Defendants' lead argument for dismissing the copyright claim is that plaintiffs have "not alleged particularized facts." (Dkt. 93 at 5). While a copyright claim normally does not require plaintiff to plead with heightened degree of particularity (5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1237; *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 421-22 (7th Cir. 1993)), here the claim is spelled out in more than sufficient detail to satisfy a higher standard.

Defendants also argue that the allegations of copying are "speculative" and not supported by evidence. (Dkt. 93 at 7). Defendants have apparently forgotten that this is a pleading motion. All plaintiffs need do is *plead* the elements, not prove them.

Defendants next contend that the "entirety" of the copyright infringement claim is that ConnectU registered for a copyright in certain code; ConnectU obtained an assignment; and

Zuckerberg had access. (Dkt. 93 at 6). The FAC does in fact plead that plaintiff has a registered copyright in the Harvard Connection Code (FAC, ¶¶ 243-47), but importantly, the FAC also pleads that defendants *copied* the code (*id.*, ¶¶ 257-58). That is all that need be pleaded. "Access" and "substantial similarity" are means of *proving* copyright infringement, but none of the cases cited in the motion hold that "access" and "substantial similarity" are requisites to *pleading* copyright infringement. Indeed, none of the cases cited by defendants had anything at all to do with pleading.[5]

Finally, defendants assert that the allegations "against Moskovitz and McCollum serve to disprove copying." They contend that allegations of defendants' involvement in the infringing work creates "inferences" that "lead to a conclusion of independent development." (Dkt. 93 at 7). But the FAC alleges that these defendants "copied the copyrightable subject matter of the Harvard Connection Code." (FAC, ¶ 258). Defendants do not explain their logic as to how a simple, plain allegation of copying somehow leaves an "inference" that "leads" to the exact opposite conclusion that no copying occurred.

8.    Trade Secret Misappropriation

To demonstrate misappropriation of a trade secret, plaintiffs must plead: (1) the

---

[5] *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir. 1995) was an appeal after summary judgment. This issue was "only whether the Lotus menu command hierarchy is copyrightable." *Id.* at 813. *Hutchins v. Zoll Medical Corp.*, 430 F. Supp. 2d 24 (D. Mass. 2006) was a ruling on a motion for summary judgment. It had nothing to do with the requirements for pleading copyright infringement. That court found that five short phrases and certain "basic protocol" were not copyrightable. Finally, *Maddog Software, Inc. v. Sklader*, 382 F. Supp. 2d 268 (D.N.H. 2005) was a ruling on a motion for a preliminary injunction. To obtain the injunction the plaintiff had "the burden of *demonstrating* that [the defendant] has copied something original." *Id.* at 279. The failure to address that point was fatal to the preliminary injunction. None of the three cases is even remotely related to the proposition for which defendants cite them *i.e.*, that a complaint must "plead particularized facts establishing substantial similarity." *See* Dkt. 93 at 5. Nor do they support defendants' assertion that the FAC

information in question is a trade secret as defined under M.G.L. Ch. 266, § 30(4); (2) plaintiffs took reasonable steps to preserve the secrecy of that information; and (3) defendants used improper means, in breach of a confidential relationship, to acquire and use that trade secret. *Diomed, Inc. v. Vascular Solutions, Inc.,* 417 F. Supp. 2d. 137, 143-44 (D. Mass. 2006); Mass. G.L. ch. 93, § 42.[6]  The FAC pleads that Harvard Connection's source code, business plan, and marketing plan constitute trade secrets (FAC*, ¶¶* 36, 266-67); that these trade secrets were maintained in secrecy by means of a secure, password-protected server, private meeting sites, and limited disclosure of information (*id., ¶¶* 268, 270-71), and that defendants fraudulently converted such trade secrets for their own benefit in the launch and growth of the facebook.com website (*id., ¶¶* 272, 276-82, 287-91).  The FAC also alleges that defendant Saverin, who was involved in the business management of facebook.com, knowingly executed Harvard Connection's confidential business plan and growth strategy, both pre- and post-launch, which he understood were acquired by Zuckerberg through fraudulent conduct.  (*Id., ¶¶* 289, 292). These allegations sufficiently plead trade secret misappropriation against all defendants.

Nonetheless, defendants advance several meritless arguments based on their version of the facts, not the facts as alleged in the FAC.  Specifically, defendants argue ConnectU's trade secrets are not trade secrets, that plaintiffs did not maintain confidentiality, and that plaintiffs have not offered sufficient pre-discovery facts about what Saverin, Moskovitz, and McCollum knew and when (Dkt. 93 at 9-15).  While these arguments are inappropriate at this juncture,

must include an "actual comparison" of the infringing work to the copyrighted work.  *See id.* at 6.

[6]  It is unclear whether Massachusetts law requires continuous use of a trade secret, *see Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, 2006 U.S. LEXIS 43690, at *34 (D. Mass. June 28, 2006), but, in any event, this is not a pleading requirement.

plaintiffs will briefly address them.[7]

First, defendants debate the existence of any trade secrets here. Contrary to defendant's assertions, however, Massachusetts expressly recognizes unique compilations as trade secrets. M.G.L. ch. 93 § 42; *Picker Int'l Corp. v. Imaging Equip. Serv.*, 931 F. Supp. 18, 38 (D. Mass 1995); *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 260 N.E.2d 723, 729 (Mass. 1970). The case cited by defendants, *Moore v. Marty Gilman, Inc.,* 965 F. Supp. 203, 216 (D. Mass 1997), was merely a fact-specific determination that the "trade secret" at issue was a list of widely known ideas that did not, *when combined*, constitute a novel idea. *Id.* at 216. Plaintiffs assert, and history upholds, the notion that their combination of website features was novel enough to create a billion-dollar business. Even if parts of their idea were not have been overly unique, the combination was, to put it bluntly, a stroke of genius.

Second, defendants dispute plaintiffs' allegations that the trade secrets were kept confidential. Not only is defendants' merits argument inappropriate, but the cases they cite are wholly inapplicable to this case. In *Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 100 (D. Mass 1999), plaintiff alleged that the purportedly secret subject matter "was used over a wide area" before plaintiff engaged in negotiations with defendant. Here, ConnectU does not plead that it widely disseminated its trade secrets, but instead alleges that it maintained confidentiality. (FAC, ¶¶ 30-31, 56-57, 266-67, 270-72, 288).

Likewise, defendants' argument that they never signed a confidentiality agreement ignores the established law of Massachusetts, as recognized by the First Circuit, that written confidentiality agreements are not required and "[a] confidential relationship generally arises by operation of law from the affiliations of the parties and the context in which the disclosures are

---

[7] The Facebook defendants argue that ch. 266, § 30 is inapplicable here (Dkt. 93, at 9), but M.G.L. c. 93, § 42 , the civil trade secret statute, adopts and incorporates the definition of "trade secret" found in § 30 ("The term 'trade secret' as used in this section shall have the same meaning as is set forth in section thirty of chapter two hundred and sixty-six.").

offered." *Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 (1st Cir. 1985); *Knapp Schenck & Co. Ins. Agency, Inc. v. Lancer Mgmt. Co., Inc.*, Civ. A. No. 02-12118-DPW, 2004 WL 57086, at * 9 (D. Mass. Jan. 13, 2004).   The existence of a confidential relationship is a highly factual issue, properly left for a jury.  *Knapp Schenck*, 2004 WL 57086, at *7.  The same is true with respect to whether plaintiffs' efforts of maintain confidentiality were "proper and reasonable" under the circumstances.  *USM Corp. v. Marson Fastener Corp.*, 379 Mass. 90, 97 (1979).  The FAC sufficiently pleads that a confidential relationship existed between Zuckerberg and the Founders that is plausible on its face.  (FAC, ¶¶ 270-271).

Defendants' reliance on *Curtis-Wright Corp. v. Edel-Brown Tool & Die Co.*, 407 N.E.2d 319 (Mass. 1980), is similarly misplaced.  While finding that a defendant must have notice that the information is a trade secret and that the source of the information was not at liberty to disclose it, the court concluded that "notice of the one is also notice of the other."  *Id.* at 323 (internal citations omitted).  "Thus, if the actor knows (or should know) that the information proffered to him by one person is the trade secret of another he is put on inquiry as the former's authority to disclose the information."  *Id.* (internal footnote and citation omitted).  In other words, Zuckerberg's co-defendants had a duty to question him about his use of plaintiffs' trade secrets.  ConnectU also has the right to depose each defendant to find out who knew what, and when.  *See Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp.2d 22, 33 (D. Mass. 2000) (details exceeding the pleading requirement should be obtained through discovery).

9.    Unfair Trade Practices

Misappropriation of trade secrets alone can violate the Massachusetts unfair trade practices statute. M.G.L. ch. 93A, §§ 2, 11.  *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc*., 412 F.3d 215 (1st Cir. 2005), *cert. denied*, 126 S. Ct. 2292 (2006).  Claims of unfair or deceptive acts associated with common-law fraud or breach of contract may also be brought under the statute.  *Veranda Beach Club Ltd. P'ship v. Western Sur. Co*., 936 F.2d 1364 (1st Cir. 1991); *Cambridge Plating Co., Inc. v. NAPCO, Inc.,* 876 F. Supp. 326 (D. Mass.

1995), *aff'd in part and vacated in part*, 85 F.3d 752 (1st Cir. 1996).

The FAC pleads that plaintiffs and defendants were engaged in trade or commerce under the meaning of M.G.L. ch. 93A (FAC, ¶¶ 299-306). Both the Harvard Connection website partnership and Zuckerberg's Facebook endeavor plainly fall within the "broad sweep" of Massachusetts' unfair trade practices law, which applies to "any trade or commerce" that arises in a "business context." *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 24 (1997). Defendants also previously admitted that Facebook, Inc. was engaged in commerce (Counterclaims ¶ 46; FAC, ¶ 302). Plaintiffs also validly pleaded 93A claims against defendants Facebook, Inc., TheFacebook LLC, Moskovitz, McCollum, and Saverin (FAC ¶¶ 327-337) because they were also "person[s]" engaged in "trade or commerce" within the broad scope of M.G.L. ch. 93A, §§ 2, 11; *Linkage*, 425 Mass. at 23. Massachusetts law does not require that parties in trade be "businesses," but merely "persons," which includes "natural persons" as well as corporations. M.G.L. ch. 93A, § 2; *Linkage*, 425 Mass. at 23; *Szalla v. Locke*, 421 Mass. 448, 451 (1995).

Defendants also argue that the relationship between Zuckerberg and the Founders was "a strictly private endeavor" (Dkt. 93 at 16) and thus not subject to 93A because "disputes between parties in the same venture do not fall within the scope of [this statute]." *Szalla*, 421 Mass. at 451. However, in construing Zuckerberg's activity strictly from the perspective of the partnership, defendants entirely disregard Zuckerberg's separate work with Facebook. Zuckerberg's deceptive Facebook work, and Facebook's use of that work, from which the unfair trade practices arise, creates trade or commerce between the parties.

Contrary to defendants' allegation (Dkt. 93 at 17), the FAC also pleads extensive facts that show with particularity defendants' unfair and deceptive trade practices. Defendants

fraudulently obtained and misappropriated Harvard Connection's trade secrets (FAC, ¶¶ 272, 276-82, 287-91); Zuckerberg breached his contractual obligations to his Harvard Connection partners (*id.,* ¶¶ 32, 34, 71, 74, 77, 79, 118, 124, 126, 128-30, 274, 281-82, 285); and Zuckerberg engaged in numerous other unfair and deceptive trade practices designed to harm the Founders and harvardconnection.com's commercial prospects (*id.,* ¶¶ 307-323).

10.    Successor Liability

Defendants' argument that plaintiffs have insufficiently pleaded successor liability is inappropriate on motion to dismiss. *Greaney v. Heritage Hosp., Inc.*, No. CA 952547, 1995 WL 1146185 (Mass. Super. Dec. 28, 1995), citing *McCarthy v. Litton Indus., Inc.*, 410 Mass. 15, 21, 23, 570 N.E. 2d 1008, 1013 (1991); *see also Braga v. Genlyte, Inc.*, 57 Fed. Appx. 451, 454 (1st Cir. 2003) (reversing rule dismissal of successor liability claim because issues were "complex and fact bound") (unpublished decision). Furthermore, none of defendants' cases were decided on motion to dismiss. Plaintiffs will address defendants' improper argument so as not to waive their rights to do so, but this Court should follow the well-settled law of Massachusetts that "[s]uccessor liability is a factual issue inappropriate for resolution on a motion to dismiss." *Id.*

(a)    Plaintiffs' FAC Sufficiently Pleads Successor Liability

Plaintiffs have alleged sufficient facts to support their claims against the Facebook Entities on the basis of successor liability. Defendants have cited to no authority, and plaintiffs have found none, that requires the pleading of successor liability with particularity. Rather, notice pleading is all that is required and defendants are required on a motion to dismiss to show that there is no possible claim based on the facts alleged. *See Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.*, 975 F. Supp. 483, 486 (W.D.N.Y. 1997), quoting *Old Republic Ins. Co. v. Hansa World Cargo Serv.*, 170 F.R.D. 361, 376 (S.D.N.Y.) ("Pleadings of successor liability are

subject to the lenient pleading requirements of Rule 8(a), not the more rigorous standards of Rule 9(b)."). Defendants cannot make such a showing.

Moreover, this Court's determination of these relationships necessarily involves the resolution of <u>facts</u> after appropriate discovery. Even so, plaintiffs' allegations suffice to prove each of these bases for holding the Facebook Entities liable for the illicit actions of their founders and managers.

As a preliminary matter, plaintiffs allege that Zuckerberg worked in tandem with Moskovitz and Saverin in an "informal partnership" to develop thefacebook.com, a commercial website (FAC, ¶¶ 13, 209-10, 215, 217-20, 225-28); that these defendants together formed the business corporation, TheFacebook LLC to develop, manage, and operate their website thefacebook.com, and later, facebook.com (*Id.*, ¶¶ 14, 20); that after TheFacebook LLC acquired the individual defendants' interests in the website business "Facebook, Inc. acquired Zuckerberg's and Moskovitz's interest in TheFacebook LLC and thefacebook.com website" (*Id.*, ¶ 20); and that TheFacebook, Inc. was formed by those same parties, as shareholders and managers of TheFacebook LLC "to operate the website facebook.com, and partly to accept the transfer of liability and shield Zuckerberg and Moskovitz." (*Id.*).

(i)    The Facebook Entities Assumed Their Predecessors' Liability

Plaintiffs have sufficiently alleged that the Facebook Entities assumed the liability of the *de facto* partnership formed by Zuckerberg, Moskovitz, and Saverin,[8] and thus are excluded from the general rule that the purchaser of a company does not acquire its liabilities. *JSB Indus. v.*

---

[8]    Defendants' suggestion that the allegations are false (Dkt. 89 at 10), is improper in the context of a motion to dismiss, for which all of plaintiffs' allegations must be accepted as true. *Garrett,* 295 F.3d at 105. Furthermore, defendants' reliance on *Brennan v. Concord EFS, Inc.,* 369 F. Supp. 2d 1127, 1135-37 (N.D. Cal. 2005) is misplaced; *Brennan* is silent on the subject of successor liability or the consequence of such an admission on a motion to dismiss.

*Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 109-111 (D. Mass. 2006). "A corporation succeeding a partnership is liable on the contracts or obligations of the latter where it either assumes them under express agreement or where the facts and circumstances are such as to show an assumption." *Pittsfield Gen'l Hosp. v. Markus*, 355 Mass. 519, 522 (1969).

Plaintiffs alleged that the Facebook Entities expressly and/or impliedly assumed the liabilities of the individual defendants with respect to their role in thefacebook.com. (FAC, ¶¶ 18-19) ("[t]o the extent the individual defendants engaged in any conduct for which the plaintiff might ultimately establish a right to recover, their conduct was undertaken pursuant to his role in TheFacebook, Inc., and ***recovery would lie against TheFacebook*** and not against the individual defendants personally."). On this basis of assumed liability alone, the Facebook Entities can be held liable for the acts committed by Zuckerberg, Moskovitz, and Saverin in the early days of thefacebook.com partnership.

(ii)    The Facebook Entities Are a Continuation of the *De Facto* Partnership

As corporations created and run by the individual defendants to operate and develop their facebook.com website, the Facebook Entities constitute a "mere continuation" of the individuals' prior businesses[9] and thus are liable for the illicit actions thereof. *McCarthy v. Litton Indus. Inc.*, 570 N.E.2d 1008, 1013 (Mass. 1991). When, as here, the "owners of the selling entity set up the buyer with the specific purpose of continuing their business under a new form," the new entity is considered a "mere continuation" of the original entity. *Nat'l Gypsum Co. v. Cont'l Brands*

---

[9]    Defendants' argument that these were not "formal businesses," and thus cannot be involved in a *de facto* merger is baseless. Plaintiffs sufficiently allege that defendants were engaged in a business from the outset. (FAC, ¶¶ 301-03). This is enough. *Crane Constr. Co. v. Klaus Masonry, LLC*, 114, F. Supp.2d 1116, 1119 (D.Kan. 2000) (contrary to defendants' interpretation, does not hold that predecessor must be a formal "business organization," but

*Corp.*, 895 F. Supp. 328, 336 (D. Mass. 1995). When there exists "the continuity of directors, officers and stockholders; and the continued existence of only one corporation after the sale of assets," the newly formed corporate entity is a "mere continuation" of the earlier one. *Id.*

As plaintiffs' allegations indicate, the management, operators, personnel, assets, and general business operations have been consistent through all iterations of the company's reorganization. (*Id., ¶¶* 20-24). TheFacebook founders remain integrally involved in the business. *Id.* The business remains the operation of the social networking site, facebook.com.[10] Plaintiffs also allege continuity of employees and/or principal officers and that TheFacebook.com partnership no longer existed once the individual defendants rolled their business into the corporate entity. (*Id.*). As such, plaintiffs allege that "Facebook, Inc. and TheFacebook LLC should be considered the same entity as TheFacebook.com partnership." (*Id.*, ¶ 22). These allegations are sufficient to at least create an issue of fact for the trier of fact as to whether the new entity is the same as the old, simply in a new form. *McCarthy*, 410 Mass. at 23, 570 N.E.2d at 1012.

<div align="center">(iii) <u>*De Facto* Merger</u></div>

Plaintiffs have also alleged sufficient facts to show that the Facebook Entities should be considered the result of a *de facto* merger with the predecessor business of the individual defendants. To determine if such a merger has occurred, courts look to whether: (1) there is a continuation of management, personnel, physical location, assets, and general business operations; (2) there is a continuity of shareholders; (3) the seller corporation ceases its ordinary

---

rather expressly states that "courts have applied the [*de facto* merger] exception regardless of the fact that one of the entities was not a corporation.").

[10] The change of the name of the website from "thefacebook.com" to "facebook.com" is immaterial. The business has continuously been the same, regardless of the name of the parent company or the executive position of its founders. (FAC, ¶ 20).

business operations; and (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations. *Cargill, Inc. v. Beaver Coal & Oil Co.*, 424 Mass. 356, 359-60 (1997). "[N]o single factor is necessary to establish a de facto merger," nor are all factors required for such a de facto merger to be found. *Id.* Plaintiffs have alleged that TheFacebook.com was the predecessor business of the Facebook Entities, and that the employees, management, business operation, and shareholders are substantially the same, if not identical. (FAC, ¶¶ 20-22). These allegations suffice to create an issue of fact as to whether the Facebook Entities were created by a *de facto* merger with its predecessor thefacebook.com.

Successor liability is therefore properly alleged on at least the three bases detailed above. Both because successor liability is an issue of fact inappropriate for determination by motion to dismiss and because plaintiffs' allegations of successor liability are sufficient to overcome a motion to dismiss, this Court should deny defendants' motion to dismiss.

B.    THE FRAUD AND BREACH OF FIDUCIARY DUTY CLAIMS ARE TIMELY

The fraud and breach of fiduciary duty claims are timely filed as they relate back to the date of the original complaint. Defendants were on notice of the claims asserted by the individual plaintiffs and against the corporate defendants based on the original pleadings on the same operative facts and legal theories. Defendants thus have no basis for disputing the propriety of the addition of these claims in the FAC or their relation back to the original complaint.

1.    The Addition of the Individual Plaintiffs is Proper

The addition of the individual plaintiffs to the fraud and breach of fiduciary duty claims is proper and such claims are timely as they must be held to relate back to the original complaint.

It is well-settled that the savings statute and relation-back doctrine in Massachusetts are clear-cut and liberally construed, *Boutiette v. Dickinson*, 768 N.E.2d 562, 564 (Mass. App. 2002) (finding that the "savings statute" is liberally construed in favor of the plaintiff and "in the interest of determining the parties' rights on the merits."), *Loomer v. Dionee*, 338 Mass. 348, 350-51 (1959); *Liberace v. Conway*, 31 Mass. App. Ct. 40, 42 (1991), and that statutes of limitations are intended to "assure fairness to defendants." *Corliss v. City of Fall River*, 397 F. Supp. 2d 260, 267-68 (D. Mass. 2005). When, as here, the defendant has been placed on notice of the claims against it during the limitations period, the Massachusetts savings statute permits the addition of new plaintiffs for causes of action based on the same operative facts to be brought within one year of the dismissal of an action "for any matter of form." M.G.L. ch. 260 § 32 ("[i]f an action duly commenced within the time limit . . . is dismissed . . . for any matter of form . . . the plaintiff ***or any person claiming under him*** may commence a new action for the same cause of action") (emphasis added); *Curley v. North Am. May Boy Love Assoc.*, Civ. A. No. 00-10956-GAO, 2003 WL 21696547, at *2 (D. Mass. Mar. 31, 2003) (adding new plaintiffs is appropriate under the "liberal relation back rule that permits new parties to be added to an ongoing case even after the expiration of the limitations.").[11]

Such claims relate back to the original complaint when, as here, "the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or contemplated to be set forth in the original pleading." Mass. R. Civ. P. 15(c); *see e.g., Standard Fire Ins. Co. v. Crosby Yacht Yard, Inc.*, Civ. A. No. 04-12244-GAO, 2007 WL 4465152 (D. Mass. Feb. 8, 2007) (permitting relation back of new plaintiff's claims); *One Beacon Ins. Co. v.*

---

[11]   States with savings statutes similar to that of Massachusetts have applied the statute in cases analogous to this one, i.e. when a case brought by a partnership was dismissed for want of

*Electrolux*, 223 F.R.D. 21, 24 (D. Mass. 2004) (same). Moreover, when, as here, the old and new plaintiffs have "identity of interests" such that the defendant was on notice of the possible claims and is not prejudiced by the addition of the new plaintiff,[12] the addition and relation back are permitted. *See*, *e.g.*, *Young v. Lepone*, 305 F.3d 1, 14 (1st Cir. 2002) (finding that the substitution of parties "after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the facts and issues on which the action is based). Defendants' citation to *Jordan v. Comm'rs of Bristol County,* 167 N.E. 652, 654 (Mass. 1929), is irrelevant, as *Jordan* deals with a change in defendants, as opposed to plaintiffs, and therefore implicates different issues. The savings statute is implicated to "preserv[e] the right to renew what is essentially the same cause of action after curing the procedural defect." *Corliss v. City of Fall River*, 397 F. Supp.2d 260, 268 (D. Mass. 2005). Here, the fraud and breach of fiduciary duty claims of the individual plaintiffs are the same claims originally brought by ConnectU, and the savings statute preserves those claims.

2.    The Claims Against the Facebook Entities Relate Back

It is likewise proper to permit the relation back of plaintiffs' claims against the Facebook Entities based on the prior filing of the same claims against the Facebook Entities' constituent parts – its founders, employees, and executives. It is within this Court's discretion to permit

---

necessary parties (i.e. individuals constituting the partnership), then refiled by the individual partners. *Norm v. Harris*, 122 S.W.2d 532 (Ark. 1938).

[12]    There is a sufficient "identity of interest" between ConnectU and the individual plaintiffs such that defendants cannot credibly suggest that the original complaint failed to provide adequate notice that defendants would be required to defend against claims of fraud and breach of fiduciary duty. The "substantial structural and corporate overlap" of the new plaintiffs as founders, owners, and operators of the original corporate plaintiff is sufficient to warrant application of the relation-back doctrine because defendants are "not called upon to defend against new facts and issues," and therefore are not prejudiced by the addition of the new plaintiffs and/or claims. *Young v. Lepone*, 305 F.3d 1, 15 (1st Cir. 2002).

plaintiffs to add new defendants after the statute of limitations tolls, *Herrick v. Essex Regional Retirement Bd.*, 68 Mass. App. Ct. 187 (2007), and defendants would not be prejudiced by the exercise of that discretion.  When, as here, defendants are "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other," relation back of claims against the new defendants is permitted. *Young*, 305 F.3d at 15, citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 197 (3d Cir. 2001). This case embodies the rationale discussed in *Young* as the corporate defendants have long been on notice of the claims against their founders, and have long been party to this suit.  Therefore, defendants would not be prejudiced in the least by this Court's determination that plaintiffs' claims against them should relate back to the original complaint.

C.    THE COPYRIGHT ACT DOES NOT PREEMPT ANY CLAIMS

Defendants argue that the Copyright Act preempts all claims for breach of contract (Dkt. 80 at 14), unfair competition under M.G.L. c. 93A, and unjust enrichment (Dkt. 93 at 17-19). Defendants acknowledge that a claim is preempted under the Copyright Act only when the state law claim is "equivalent to one or more of the exclusive rights provided in the Copyright Act." (Dkt. 93 at 17, citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 501, 505 (D. Mass. 1992)).  What defendants do not mention is that state law claims are *not* equivalent if the state law claim has an "extra element."  As explained in *Lee v. Mt. Ivy Press*, 827 N.E.2d 727, 736 (Mass. App. 2005), where an "extra element renders the claim 'qualitatively different' from a federal copyright claim, the state causes of action survive a preemption challenge." Here, the claims defendants challenge all have the requisite extra element.

1.    Contract Claims Have The Extra Element of Promise

With virtually no analysis, Zuckerberg asserts that breach of contract is preempted.  But

the acts that are the subject of that claim include Zuckerberg's failing to deliver the completed website, using the Founders' confidential ideas and business plans for his own website, revealing the Founders' ideas to third parties, and failing to provide the Founders with his ideas and expertise.  None of these actions is equivalent to a right provided by the Copyright Act.

Even if the breach of contract claim were based on the unauthorized use of code, the Copyright Act would still not preempt because of the "extra element" in breach of contract claims.  As the Appeals Court observed, "[i]n the majority of cases[], courts have found that, because claims of breach of contract involved breach of a promise, an extra element not required to prove a copyright infringement claim, they were not preempted by Federal copyright law."  *Id.* at 737; see also NIMMER ON COPYRIGHT, § 1.01[B][1][a][i] (2007).

> 2.  Unfair Competition Seeks to Vindicate Rights Different From Copyright.

Defendants contend that the unfair competition claim under M.G.L. ch. 93A is preempted because the "unfair and deceptive" acts constitute copyright infringement.  (Dkt. 93 at 18).  This mischaracterizes the Amended Complaint.  The 93A claim is not limited to defendants' reproduction or creation of a derivative work.  It includes Zuckerberg's deceptive conduct, such as fraud, misappropriation of trade secrets, theft of ideas, unethical  business conduct and breach of fiduciary duty.  Moreover, courts have recognized that 93A claims seek to vindicate rights different from those in the Copyright Act, and therefore, such claims are not preempted.  *See Rubin v. Brooks/Cole Publishing Co.*, 836 F. Supp. 909, 924 (D. Mass. 1993); *Patricia Kennedy & Co., Inc. v. Zam-Cul Enter. Inc.*, 830 F. Supp. 53, 57 (D. Mass 1993).

> 3.  Unjust Enrichment is Not Limited to the Copying of Source Code

Defendants argue that the "unjust enrichment claim amounts to nothing more than a claim for an accounting to ConnectU for its ownership of the Harvard Connection Code."  (Dkt.

93 at 19).   Defendants point out that ideas "embodied in a copyrighted work" are subject to copyright preemption.  *Id.*  But the unjust enrichment claim is not based solely on ideas in the code – many of the stolen ideas were only disclosed orally.  They were not fixed in a tangible medium of expression, and accordingly, were not subject to protection of – or preemption by – the Copyright Act.  *See* NIMMER 19D.03[A][2][a] ("Federal pre-emption is inapplicable to 'works of authorship not fixed in any tangible medium of expression.'")

Furthermore, unjust enrichment is not limited to the source code.  Plaintiffs have also alleged that Zuckerberg wrongly maneuvered into first mover position, while holding his partners hostage by stalling and misrepresenting that he was nearing completion of their project.

Finally, when the unjust enrichment claim has an element of "passing off," the Copyright Act does not preempt.  For example, in *Portfolioscope, Inc.*, 473 F. Supp.2d at 255, the plaintiff alleged that the defendants profited from publicly selling its product which was unlawfully derived from the plaintiff's software.  This Court viewed the claim as including an extra element of "passing off" and found no preemption.  Here, plaintiffs have alleged facts to state a claim of passing off: defendants are representing to the public that the thefacebook.com website is their independent creation when in fact they are enriching themselves by passing off plaintiffs' work as their own.

D.    THE FOUNDERS' CLAIMS ARE PROPERLY ASSIGNED TO CONNECTU

As the individual plaintiffs' successor-in-interest, ConnectU has a right to sue for fraud, breach of contract, and breach of fiduciary duty committed against its predecessors-in-interest. *Lexington Sav. Bank v. Linnehan*, No. 96-2890, 1998 Mass. Super. LEXIS 348, at*5 (Mass. Super. Feb. 9, 1998) (finding successor-in-interest holds all rights of former owner, including right to sue for fraud).  Furthermore, even if ConnectU were not the successor-in-interest to the

Founders, the Founders' claims are assignable and thus properly brought by ConnectU.

 1. Plaintiffs Adequately Plead That The Founders Assigned Their Partnership
 Interests to ConnectU

Plaintiffs adequately pled that the claims at issue here are assignable, even though the Founders have alleged that the claims were originally owned by a partnership. While defendants may try to spin plaintiffs' allegations to suit their purposes, they cannot change the reality that the entire basis of this lawsuit is the alleged agreement between the Founders and Zuckerberg to complete the website and to share the proceeds therefrom. Thus, defendants' arguments regarding the assignability of personal services contracts are inapposite. Moreover, a partnership may restructure or reorganize as another form of business entity without such drastic repercussions as envisioned by defendants here. M.G.L. ch. 108A, § 25 does not bar the assignment of any and all rights in a partnership. Rather, that provision deals specifically with the rights of an assignee to the assignor's rights in a partnership, *id.*, and the case law makes clear that when the partners consent, rights and interests in partnership property and assets may be transferred to a successor-in-interest. *See, e.g., Billings v. GTFM, LLC*, 449 Mass. 281, 293 (2007) (permitting plaintiff to continue suit when corporate reorganization "is in reality a reorganization which does not affect [the] plaintiff's ownership of the business enterprise"), quoting *Lewis v. Anderson*, 477 A.2d 1040, 1049 (1984); see also *Hazen v. Warwick*, 256 Mass. 302, 308 (1926) (transfer of right and interest in partnership with consent of co-partners is permissible); *Samia v. Central Oil Co. of Worcester*, 339 Mass. 101, 109 (1959). Therefore, plaintiffs' allegations that the Founders assigned their partnership interests to the corporate entity ConnectU suffices to defeat a motion to dismiss on the issue of assignability.

 2. Plaintiffs Adequately Plead Claims That Were Assignable From The Founders to
 ConnectU

Furthermore, defendants' assertion that plaintiffs' fraud, fiduciary duty, breach of

contract, and unjust enrichment claims are not assignable is likewise unfounded. The unsupported suggestion that these claims "appear to be personal in nature," and thus non-assignable, does not make them so.[13] The bar on assignment of personal injury claims is limited to actions claiming damages in the form of pain and suffering based on injury "to the person," *Sibley v. Nason*, 196 Mass. 125 (1907), which are not at issue here.

Additionally, claims for torts based on property interests <u>are</u> assignable, *Household Retail Serv., Inc. v. Comm'r of Revenue*, 448 Mass. 226, 232 (2007), and plaintiffs' allegations expressly allege injury to their property interest in harvardconnection.com. (FAC, ¶ 99). As such, plaintiffs' fraud and breach of fiduciary duty claims based on such injury to property are assignable. *Baker v. Allen*, 197 N.E. 521, 524 (Sup. Ct. Mass. 1935); *Central Nat'l Gottesman, Inc. v. Rodman & Rodman, P.C.*, Civ. A. No. 97-4791, 1998 Mass. Super. LEXIS 542, *6 (Super. Ct. Mass. Sept. 30, 1998) (fraud claims survive in contest of breach of fiduciary duty or contractual right). As *Central Nat'l* makes clear, mixed contract-tort claims are assignable, and unjust enrichment, is the same as quasi-contract, *Salamon*, 394 Mass. at 859 (the "underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party"), thus making such claims assignable. Plaintiffs have alleged its claims to be mixed contract-tort claims and therefore plaintiffs satisfy the pleading burden. (FAC, ¶ 99).

Breach of contract claims are generally assignable. *Larabee v. Potvin Lumber Co.*, 390 Mass. 636, 640-43 (1983) (contract claims are generally assignable). When the substitution of parties by assignment would not materially change the duty or risk of the obligator, contract

---

[13]    At the least, there is a question of fact as to whether such claims are personal, thus precluding granting defendants' motion to dismiss or motion for summary judgment due to these remaining issues of material fact.

rights are generally assignable. *Garber's Auto Rental Inc. v. Genoa Packing Co.*, 2 Mass. App. Ct. 298, 301-02 (1974). Here, the allegations show that the assignment of claims from the individual plaintiffs to their corporate parent creates no material change in defendants' duty to remedy their foul play, and thus the assignment of claims from the Founders to ConnectU should be permitted.

## IV.  ARGUMENT ON MOTION FOR SUMMARY JUDGMENT

A.    There is a Disputed Issue of Material Fact Over the Existence of a Partnership Between Zuckerberg and the Founders

A party moving for summary judgment must show there is "no genuine issue of material fact." FED. R. CIV. P. 56(c). Here, it is Defendants' burden to demonstrate the evidence presents no material facts that "a reasonable jury, drawing favorable inferences, could resolve" in plaintiffs' favor. *Triangle Trading Co. v. Robroy Indus.*, 200 F.3d 1, 2 (1st Cir. 1999). If there is such a genuine issue, the facts must be viewed in the light most favorable to the nonmoving party; here, the plaintiffs. *Scott v. Harris*, 127 S. Ct. 1769 (2007) (citing FED. R. CIV. P. 56(c)).

In the Motion for Summary Judgment, defendants' only argument is that "[n]o specific benefit to Zuckerberg was reached." (Dkt. 81 at 8). The record before this Court – including, but not limited to, documentary evidence cited in the FAC, Cameron Winklevoss' deposition testimony, and Cameron Winklevoss, Victor Gao, and Divya Narendra's Declarations – shows exactly the opposite. For example, plaintiffs have offered factual proof that:

- At their first meeting, and before Zuckerberg began work on the code of the Harvard Connection website, Victor Gao presented Zuckerberg with two potential compensation structures for his work: cash compensation or equity in the Harvard Connection team. (Plaintiffs' Statement of Additional Material Facts Pursuant to Local Rule 56.1 ("56.1 Stmt."), ¶ 7). Zuckerberg, visibly excited by the equity option, turned down cash and accepted an equity position as a member of the Harvard Connection team. (*Id.*, ¶¶ 5, 8). Gao was explicitly authorized to offer partnership to Zuckerberg on behalf of the Founders. (*Id.*, ¶ 7).

- Cameron Winklevoss testified in a Rule 30(b)(6) deposition that Zuckerberg was offered and

accepted a position in "an equal opportunity partnership" and that there was "an equal allocation." (*Id.*, ¶ 9). Zuckerberg was "an equal partner." (*Id.*). The parties embarked on an "equal partnership" in which "[e]verybody was on an equal playing field. (*Id.*).

- Zuckerberg affirmed his role in the partnership by stating that he would begin coding for the website on his Thanksgiving vacation in 2003. (*Id.*, ¶ 10).

- Zuckerberg understood, and acknowledged, that Harvard Connection was a for-profit venture, (*Id.*, ¶ 2), and he and the Founders discussed his "fair" share of the website's eventual profits. (*Id.*, ¶¶ 5, 7-8).

Defendants' argument against these uncontradicted facts rests exclusively on out-of-context excerpts from Cameron Winklevoss' deposition testimony regarding the consideration promised to Zuckerberg as a partner. In actuality, even these citations establish that the benefit to Zuckerberg from this association was clear and definitive. It is incomprehensible how defendants, in good faith, can argue that there is not, in the very least, a triable issue of fact.

Tellingly, defendants have not offered a single word from Zuckerberg in support of this motion. Zuckerberg has not testified that he, rather than the Founders, conceived of the ideas and business plan reflected in his preemptively-launched competitive website. Zuckerberg has not asserted that he was in fact working on any kind of website before he met the Founders and was exposed to their confidential work product, creative ideas, and business plan. Zuckerberg cannot deny that he entered into a partnership with the Founders, nor that, when offered the option of being paid in cash as a contract programmer or receiving an equity stake in the Founders' venture, he chose the latter enthusiastically. Indeed, Zuckerberg – a key witness in this plainly factual dispute – has not yet been deposed. Instead, he has delayed discovery, failed to produce documents, (FAC, ¶¶ 141, 146, 259), spoliated evidence, (*id.*, ¶ 259), and done everything he could to avoid having this case decided on a full record.

The cases upon which defendants rely do not support their position. First, they ignore the authority cited in Section III.A.1, *supra*. *See*, *e.g*, *McMurtrie v. Guiler*, 183 Mass. 451, 67 N.E.

358 (1903) (stating that an equitable share of partnership profits may be determined at law); *Delorafano v. Delorafano*, 333 Mass. 684, 132 N.E.2d 668 (1956) (upholding contract for increased wages should the business "improve"); *Noble v. Joseph Burnett Co*., 208 Mass. 75, 94 N.E. 289 (1911) (enforcing contract with consideration stated as a "a fair and equitable share of the profits"). Second, their cases are distinguishable. Their lead case is *Aretakis v. Gen. Signal, Inc.*, Civil Action No. 05-10257-DPW, 2006 WL 1581781 (D. Mass. June 7, 2006), in which this Court held unenforceable an alleged oral promise to an employee for a stock option equity interest in a spin-off company. In that case, there was an express written contract that did not mention the oral promise. *Id.* at *6. The Court found the so-called promise was not intended to be binding, *id.* at 7, and also held that the allegation of stock option's terms lacked too many essential details and had only reached the state of "imperfect negotiation." *Id.* at 6. Contrast this to the situation here, where there is a completed contract. Its terms are well-defined and are confirmed not only by testimony, but also by the parties' conduct. Zuckerberg was to get an equal share of the profits of the enterprise. There is no contingent uncertainty as there was in *Aretakis*. To the contrary, as previously stated, under Massachusetts law, a partnership agreement which does not specify the specific share of profits is not indefinite as a matter of law. *McMurtrie v. Guiler*, 183 Mass. 451, 67 N.E. 358 (1903).

For all these reasons, the Court should deny defendants' summary judgment motion. Factually, defendants are unable to establish there is an indefinite contract term. Indeed, the record shows that both the individuals whom he wronged *and* uninterested parties are very clear on the nature of Zuckerberg's contract. The one person who could possibly refute such claims – Zuckerberg – is conspicuously silent. Given this uniformity in facts and Massachusetts law bolstering contracts with potentially indefinite consideration terms, defendants have not stated

any argument that provides a basis for summary judgment on this narrow issue.

B.  Defendants' Summary Judgment Arguments on Good Faith and Fair Dealing and Promissory Estoppel Are Contingent on Their Contract Indefiniteness Argument

Defendants allege no facts as to why plaintiffs' claims regarding the implied covenant of good faith and fair dealing and promissory estoppel are worthy of summary judgment. (Dkt. 85 at 8-9). Instead, these arguments rely on the same conclusory assertions regarding the alleged indefiniteness of Zuckerberg's benefit. (*Id.*). Consequently, for the same reason the contract indefiniteness argument fails, so must these sections of defendants' motion.

## V.  ARGUMENT ON MOTION TO STRIKE

A.  Motions to Strike Are Disfavored

This Court should exercise its discretion to deny defendants' motion to strike because such motions are disfavored as draconian remedies often invoked to harass plaintiffs. *See, e.g., Dennison v. Lapointe*, Civ. A. No. 06-40100, 2006 U.S. Dist. LEXIS 93883, *3 (D. Mass. Dec. 21, 2006), citing *Boreri* v. *Fiat, S.P.A.*, 763 F.2d 17, 23 (1st Cir. 1985). Thus, motions to strike typically are not granted absent a showing of a "gross violation" of Rule 8 and prejudice to the moving party. *Dennison*, 2006 U.S. Dist. LEXIS 93883, at *4-5; *SEC v. Nothern*, 400 F. Supp. 2d 362, 364 (D. Mass 2005); *SEC v. Durgarian*, 477 F. Supp. 2d 342, 360 (D. Mass. 2007)

B.  Plaintiffs' Request For Relief Satisfies Fed.R.Civ.P. 8(a)(3) Pleading Requirements

Plaintiffs have sufficiently alleged the "demand for judgment for the relief the [plaintiffs] seek[]," FED. R. CIV. P. 8(a)(3), by giving defendants notice of the <u>type</u> of relief that they seek. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1161 (11th Cir. 1993) ("This requirement is not arduous—'any concise statement identifying the remedies and the parties against whom relief is sought will be sufficient.'") quoting 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1255 at 366 (2d ed. 1990). Plaintiffs have adequately pled their Demand for Relief, and

accordingly, defendants' motion should be denied.

Defendants ask this Court to deny plaintiffs: (i) an injunction shutting down the facebook.com website; (ii) damages at least equal to the value of the Facebook business; and (iii) a constructive trust over Facebook, Inc., its website, and related assets. Defendants fail to offer any valid reason why such relief is unavailable.

1.    Plaintiffs Adequately Plead a Basis For Imposing a Constructive Trust

Plaintiffs adequately allege facts to support imposing a constructive trust over Facebook, Inc. Defendants argue that the Court cannot issue a constructive trust because "[n]o connection whatsoever exists between the allegedly purloined *res* and the requested relief." (Mem. in Support of Motion to Strike, at 4.). However, the standard governing when a constructive trust should be issued is not so limited. Rather, *Barry v. Covich*, a case cited by defendants, states that the equitable remedy of a constructive trust:

> has frequently been employed [. . . ] **where there has been the wrongful use of information confidentially given to one for a particular purpose and where instead it has been employed for an entirely different purpose to the gain of the one receiving the information and the detriment of the other.**

332 Mass. 338, 342 (1955) (emphasis added). Plaintiffs alleged that defendants used plaintiffs' confidential information "for an entirely different purpose" than the one intended, making a constructive trust an appropriate remedy.

Plaintiffs have adequately pleaded causation. "[T]he enormous causal leap" that defendants claim bridges plaintiffs' website plans with defendants' website success is neither enormous nor a leap. As plaintiffs allege in the FAC, the competitive website that defendants launched incorporated the Founders' ideas and business plan, had substantially all of the features of the website for which Zuckerberg had agreed to partner with the Founders, incorporated code provided to Zuckerberg by the Founders (or modified code written by Zuckerberg or his co-

defendants based thereon), and used additional code that Zuckerberg had written for the Founders' website pursuant to his agreement with them.  (FAC, ¶¶ 36, 191, 200).  Defendants' wrongful knowledge and use of this information enabled them to bring their website to market first, and, thus, the success of Facebook, Inc. and the website facebook.com is directly and proximately attributable to defendants' wrongful conduct, (*e.g.,* FAC, ¶¶ 36, 40-41, 80, 92, 141, 146, 180, 184, 186-89, 191, 255-58), making the imposition of a constructive trust proper.

2.    Plaintiffs Adequately Plead a Basis For Enjoining The Facebook.com Website

Plaintiffs adequately pled facts supporting injunctive relief shutting down the Facebook.com website.  Defendants' argument that plaintiffs have failed to plead causation is inaccurate (*see supra* § V.B.1).  Moreover, the case law defendants cite in support of striking plaintiffs' demand for an injunction is unavailing.  In *Pino v. Protection Maritime Ins. Co., Ltd.*, 599 F.2d 10, 16 (1st Cir. 1979), there were two injunctions at issue and one was denied in light of the other's protective power.  In *General Elec. Co. v. Chien-Min Sung*, 843 F. Supp. 776, 780 (D. Mass. 1994), the Court recognized that the scope and duration of an injunction should be determined based on "the policies underlying trade secret protection," including reversing the headstart that defendant achieves at plaintiff's expense, depriving defendant of the advantages of its wrongdoing, and placing plaintiff in the position it would have occupied had defendant not misappropriated its trade secrets.  *Id.* at 778.  Those policies support plaintiffs' requested injunction if they prevail on the merits of their claims, and defendants thus provide no basis for their motion to strike.

3.    Plaintiffs Adequately Plead a Basis For Damages

Finally, defendants' Memorandum provides no basis for striking plaintiffs' damages claim.  In *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 169-70 (1979), the Court

described the extent of damages plaintiffs can claim in a trade secrets misappropriation case as follows: "[T]he plaintiff is entitled to the profit he would have made had his secret not been unlawfully used, but not less than the monetary gain which the defendant reaped from his improper acts." Thus, damages for plaintiffs in an amount not less than the value of the website facebook.com is the appropriate remedy for defendants' wrongful conduct.

## VI. CONCLUSION

For the foregoing reasons, defendants' motions should be denied.

Dated: September 21, 2007

<div style="margin-left:40%;">

Respectfully submitted,


_____/s/ Anastasia Fernands_____

Anastasia Fernands (BBO # 633131)
Richard I. Werder, Jr. (*pro hac vice pending*)
Peter Calamari (*pro hac vice pending*)
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
51 Madison Avenue
22nd Floor
New York, New York  10010-1601
T: (212) 849-7000
F: (212) 849-7100

</div>

John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice* )
Meredith H. Schoenfeld (*pro hac vice*)
Daniel P. Kaufman (BBO # 663535)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
T: (202) 408-4000
F: (202) 408-4400

Daniel P. Tighe (BBO # 633131)
Scott McConchie (BBO # 556583)
GRIESINGER, TIGHE, & MAFFEI, L.L.P.
176 Federal Street
Boston, MA 02110
T: (617) 542-9900
F: (617) 542-0900

Attorneys for Plaintiffs
ConnectU, Inc., Cameron Winklevoss, Tyler
Winklevoss, and Divya Narendra