# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC,<br><br>Defendants. | CIVIL ACTION NO. 1:07-cv-10593-DPW |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
DEMANDS IN PRAYER FOR RELIEF**

**REDACTED VERSION FILED SEPTEMBER 21, 2007**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND .............................................................................................................. 1

III. ARGUMENT .................................................................................................................... 3

    A. Plaintiffs Have Failed to Plead A Traceable Trust Res ........................................ 4

    B. Plaintiffs Have Failed to Plead Causation ............................................................ 5

    C. Plaintiffs' Constructive Trust and Equivalent Demands Should Be Stricken Because of Failure to State Any Claim that Can Support Them ............ 8

IV. CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 509 (9th Cir. 2006) .................................... 8

*Bell Atl. Corp., v. Twombly*, 127 S. Ct. 1955, 1967 (2007) ........................................................ 7

*Brokke v. Stauffer Chem. Co.*, 703 F. Supp. 215, 222 (D. Conn. 1988) ..................................... 3

*Brown v. Potter*, 2005 WL. 2090904 (W.D. Mich. 2005) ........................................................... 3

*In re Cox*, 247 B.R. 556, 571 (Bankr. D. Mass. 2000) ................................................................ 5

*General Elec. Co. v. Chien-Min Sung*, 843 F. Supp. 776, 780, 781 (D. Mass. 1994) ................ 6

*Johnson v. Metropolitan Sewer Dist.*, 926 F. Supp. 874, 875 (E.D. Mo. 1996) ......................... 3

*Pino v. Protection Maritime Ins. Co.*, 599 F.2d 10, 16 (1st Cir. 1979) .................................. 4, 8

*Stone v. Williams*, 970 F.2d 1043, 1051 (2d Cir. 1992) ............................................................. 9

*Whiteside Biomechanics v. Sofamor Danek Group*,
    88 F. Supp. 2d 1009, 1018 (E.D. Mo. 2000) ........................................................................ 6

## STATE CASES

*Augat, Inc. v. Aegis, Inc.*, 417 Mass. 484, 488-90 (1994) .......................................................... 6

*Barry v. Covich*, 332 Mass. 338, 342 (1955) .......................................................................... 4, 9

*Boston Safe Deposit & Trust Co. v. Seifert*,
    6 Mass. L. Rep. 410, 1997 WL. 64043 (Mass. Super. Ct. Jan. 29, 1997) ............................. 5

*Conway v. Electro Switch Corp.*, 402 Mass. 385, 388 (1988) ................................................ 4, 8

*Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 180-181 (1979) ....................................... 8

*Jillian's Billiard Club of Am., Inc. v. Beloff Billiards*,
    35 Mass. App. Ct. 372, 376, 619 N.E. 2d 635, 638-639 (1993) ........................................... 4

*Kelly v. Kelly*, 358 Mass. 154, 156 (1970) ................................................................................. 9

## TABLE OF AUTHORITIES

**Page**

*Kurzman* v. *Steir*, 12 Mass. App. Ct. 470, 474 (1981) .......... 5

*USM Corp.* v. *Marson Fastener Corp.*, 392 Mass. 334, 339-40 (1984) .......... 6

*Martin* v. *Heinold Commodities*, 643 N.E.2d 734, 745 (1994) .......... 5

*Meehan* v. *Shaughnessy*, 404 Mass. 419, 445-46 (1989) .......... 6

*Meskell* v. *Meskell*, 355 Mass. 148, 151 (1969) .......... 9

*Mickelson* v. *Barnet*, 390 Mass. 786, 790 (1984) .......... 5

*Middlesex County v. Newton*, 13 Mass. App. Ct. 538, 545 (1982) .......... 4

*Nessralla* v. *Peck*, 403 Mass. 757, 762 (1989) .......... 9

*State Street Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 105 (1967) .......... 5

*Sullivan* v. *Sullivan*, 321 Mass. 156, 158 (1947), *cited in Boston Safe Deposit*, a .......... 6

*Superior Glass Co.* v. *First Bristol County Nat'l Bank*, 380 Mass. 829, 833-34 (1980) .......... 5

## FEDERAL STATUTES

Fed. R. Civ. P. 12(f) .......... 1, 3

I. **INTRODUCTION**

Defendants move pursuant to Fed. R. Civ. P. 12(f) for the Court to strike inappropriate requests for relief from the First Amended Complaint ("FAC"). The relief requested is overly broad and not available under the law. In addition to asking for an injunction shutting down the facebook.com website, Plaintiffs have demanded a constructive trust over Facebook, Inc., its website, "and all related assets," as well as damages of at least equal to the value of the Facebook business. The pleadings fail to allege facts to demonstrate that Plaintiffs are entitled to the requested relief. Defendants request an order dismissing with prejudice and striking (i) the allegations that Plaintiffs' "damages at least equal the value of the website facebook.com" in paragraphs 87, 94, 95, 102, 147, 159, 169, 261, 293, 324 of the FAC; (ii) the demand for constructive trust in paragraph H of the Request for Relief (FAC, p 100), and (iii) the demand for an injunction shutting down the facebook.com website or any variation thereof in paragraph I(1) of the Request for Relief.

II. **BACKGROUND**

Facebook is alleged to have been founded by a number of Harvard students, including Mark Zuckerberg. As set forth in the concurrently filed motions to dismiss, the complaint makes no allegation that any of these Harvard students, other than Zuckerberg, ever had a relationship with Divya Narendra, Cameron Winklevoss, or Tyler Winklevoss (collectively, "ConnectU Founders"). Similarly, the complaint makes no allegation that the ConnectU Founders ever purchased the facebook.com domain name, contributed any money to the facebook.com website or business, or performed any services for the facebook.com business. While not entirely clear, Plaintiffs' allegation appears to be that (a) Zuckerberg used an idea that they shared with him, and (b) Zuckerberg did not write code for them that he agreed to write. These alleged actions occurred over three years ago. There is no allegation that the ConnectU Founders have done

-1-
Memo in Support of Motion to Strike

anything related to the Facebook website since the website launched.

Currently, Facebook is a company with over 350 employees who have invested years of their sweat, talent and resources in building an enormously successful business. The company is led by Mark Zuckerberg who took a leave of absence from Harvard to try to build the company. *See* FAC, Ex. 66. The FAC admits that McCollum, Saverin and Moskovitz each did work on building Facebook as well. *Id.* ¶¶ 17, 21, 207-239. Previous complaints have acknowledged that Chris Hughes participated in the development of the Facebook website. *Id.* ¶ 240. The FAC acknowledges that Facebook has received at least [REDACTED] in financing. *Id.* ¶ 189. Facebook is alleged by Plaintiffs to have over 30 million members worldwide, to be the number one website for photographs in the United States, and the seventh most-visited site in the United States, and worth upwards of $6 billion. *Id.* ¶¶186-189.

Facebook has also grown and changed over time. Facebook started for students at Harvard University. *Id.* ¶ 184. It is alleged to have then expanded to other universities. *Id.* ¶ 186. Since that time Facebook expanded to high schools and later became open to all users. *Id.* ¶ 187. Most recently, Facebook has created a software platform to allow users to create new applications for the Facebook communities.

Plaintiffs' counsel previously represented to the Court that that plaintiffs are *not* "trying to shut Facebook down." 7/25/07 Hr'g. Tr. 36:11-16. However, Plaintiffs — who are not alleged to have ever run a successful website or business or written any code — believe that all of this value, created by the hard work, money and ingenuity of many other people over a long period of time, should simply be handed to them. Throughout the FAC, Plaintiffs request damages for the "entire value" of Facebook. Such a large request has never before been made in any previous complaint filed by Plaintiffs. Further, in paragraph H of the prayer, Plaintiffs

request:

> An Order placing Facebook, Inc., TheFacebook LLC, the website facebook.com, and all related assets in constructive trust for Plaintiffs and transferring to Plaintiffs all rights, title and interest in Facebook, Inc., TheFacebook LLC, the website facebook.com, and all related assets, pursuant to such constructive trust.

*Id.*, Request for Relief ¶ H (p.100). Likewise, Paragraph (I)(1) of the prayer seeks an order enjoining Facebook from operating the website facebook.com, or any variation of that website under a different name, domain name, or URL. *Id.* ¶ I(1) (p. 100).

### III. ARGUMENT

Federal Rule of Civil Procedure 12(f) provides that on a party's motion or its own initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Federal courts have applied this rule to strike "prayer[s] for relief not available under the applicable law, or which assert[] a damage claim in excess of the maximum recovery permitted by law." *Johnson v. Metropolitan Sewer Dist.*, 926 F. Supp. 874, 875 (E.D. Mo. 1996) (striking punitive damage claims not allowed against political subdivision under statutes pled), *citing* MOORE'S FEDERAL PRACTICE, § 12.21[1] (now § 12.37[3]) ("motions to strike requests for certain types of relief, such as punitive or compensatory damages, are generally granted if such relief is not recoverable under the applicable law"); *Brokke v. Stauffer Chem. Co.*, 703 F. Supp. 215, 222 (D. Conn. 1988) (same); *Brown v. Potter*, 2005 WL 2090904, at *5 (W.D. Mich. 2005) (striking claim for monetary damages barred by failure to exhaust administrative remedies).

The allegation that Plaintiffs are entitled to a constructive trust on all (or any part) of Facebook, an injunction, or damages equal to the value of Facebook is without support and legally unsustainable because plaintiffs have failed to: (1) plead a traceable trust *res*, (2) plead causation, and (3) state a claim upon which the requested relief is available.

A.     **Plaintiffs Have Failed to Plead A Traceable Trust *Res***

The constructive trust demand must be dismissed because plaintiffs have failed to properly allege a trust property, or any facts from which even an unalleged trust property could be connected to the Defendants. "A constructive trust does not arise unless there is property on which the constructive trust can be fastened, and such property is held by the person to be charged as constructive trustee." *Rest. Restitution* § 160, comment *i, cited in Middlesex County v. Newton*, 13 Mass. App. Ct. 538, 545 n.10 (1982) (no constructive trust on tax revenues because no "discrete assessment for county taxes which could constitute the necessary *res* of a constructive trust"); *Barry v. Covich*, 332 Mass. 338, 342 (A constructive trust is utilized "to avoid the unjust enrichment of one party at the expense of the other, where legal title to ***the property* [*in issue*]** was obtained" by fraud, breach of fiduciary, or misuse of confidential information) (emphasis added).

In the same way, an injunction request or request for damages must be tethered to the *res*. *See Conway v. Electro Switch Corp.*, 402 Mass. 385, 388 (1988)(stating damages must be related to alleged wrong doing); *Pino v. Protection Maritime Ins. Co.*, 599 F.2d 10, 16 (1st Cir. 1979) (acknowledging that injunctions should be narrowly tailored to the harm pled). *Jillian's Billiard Club v. Beloff Billiards*, 35 Mass. App. Ct. 372, 376, 619 N.E.2d 635, 638-39 (1993) quoting REST. UNFAIR COMPETITION § 44, comment c (emphasis added).

No connection whatsoever exists between the allegedly purloined *res* and the requested relief. The only property that is alleged to be held in constructive trust or enjoined is "Facebook, Inc., TheFacebook LLC, the website facebook.com, and all related assets." FAC, Request for Relief ¶ H. Apart from the obvious vagueness of this description, there is no allegation anywhere in the complaint that this identified *res* was obtained from anyone by fraud, breach of fiduciary duty, or any other basis for a constructive trust. Plaintiffs make no allegation that they

contributed to building the facebook.com business or the facebook.com website.[1] Other things are alleged to have been wrongfully obtained by Mark Zuckerberg — the Harvard Connection Code, for example — but none of these things is alleged to be the *res* and none of them are explained to be connected to the current facebook.com business and website. To the contrary, the pleadings demonstrate substantial investments by third parties, defendants other than Zuckerberg, and work by hundreds of people.

### B. Plaintiffs Have Failed to Plead Causation

Plaintiffs' claim also fails because it does not connect the initial website idea that they allege to be their trade secret to Facebook's tens of millions of members or to the contributions of the successful company with hundreds of employees. Constructive trusts that go beyond a static *res* to the traceable proceeds of the initial *res* cannot be awarded without showing a causal link between the *res* and the property to be placed in trust. REST. RESTITUTION § 9 ("A person who has conferred a benefit upon another because of a mistake, **whether or not the mistake was induced by fraud or misrepresentation**, is entitled to restitution only if the mistake *caused* the conferring of the benefit") (emphasis added);[2] *see also Martin v. Heinold Commodities*, 643 N.E.2d 734, 745 (1994) (defendant's actions must be proximate cause of loss for constructive trust to apply). A constructive trust may also reach the *res* and "its traceable proceeds," *Mickelson v. Barnet*, 390 Mass. 786, 790 (1984); *Boston Safe Deposit & Trust Co. v. Seifert*, 6 Mass. L. Rep. 410, 1997 WL 64043, *7-*8 (Mass. Super. Ct. Jan. 29, 1997); *In re Cox*, 247 B.R.

---

[1] Indeed, to the extent plaintiff claims ".edu" address as a limiting access to Facebook by requirement of trade secret, the remedy sought is not available because Facebook became open to everyone (and not just students) approximately 1 year ago. FAC ¶ 187.
[2] Massachusetts case law frequently adverts to the Restatement of Restitution as authority on constructive trust issues, *e.g.*, *Superior Glass v. First Bristol Cty. Nat. Bank*, 380 Mass. 829, 833-34 (1980), *State Street Bank & Trust Co. v. Beale*, 353 Mass. 103, 105 (1967), and this particular section has been cited, e.g., *Kurzman v. Steir*, 12 Mass. App. Ct. 470, 474 (1981) (non-constructive trust context).

556, 571 (Bankr. D. Mass. 2000) ("Under Massachusetts law, in order to establish grounds for the imposition of a constructive trust, the plaintiff must also be able to trace the proceeds or profits of the corpus"); *Sullivan v. Sullivan*, 321 Mass. 156, 158 (1947) (refusing to trace misappropriated funds into commingled property because there was no evidence as to "what proportion of the price of Sullivan's title consisted of the plaintiffs' money"), *cited in Boston Safe Deposit*, at *8 ("constructive trust may be enforced on the mingled property in such proportion as the trust property so mingled bears to the whole of the mingled property").

This requirement of causation limits constructive trusts, whether in the fiduciary or the trade secret context. *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 339-40 (1984) (if use of trade secret were not the sole reason for defendant's profits, then defendant's entire profits from sale of product based on trade secret "would not be a just measure of the restitution owed"); *Whiteside Biomechanics v. Sofamor Danek Group*, 88 F. Supp. 2d 1009, 1018 (E.D. Mo. 2000) (denying reassignment of patents to trade-secret plaintiff because, in addition to trade secret, patents contained "significant inventive elements of defendant's which were not misappropriated from plaintiff"); *Meehan v. Shaughnessy*, 404 Mass. 419, 445-46 (1989) (plaintiffs entitled to constructive trust only over share of usurped client opportunities they would have received under partnership agreement); *see also Augat, Inc. v. Aegis, Inc.*, 417 Mass. 484, 488-90 (1994) (reversing compensatory damages award for wrongful wooing of employees due to faulty analysis of causation of harm to plaintiff company); *General Elec. Co. v. Chien-Min Sung*, 843 F. Supp. 776, 780 (D. Mass. 1994) (appropriate measure for determining the length of trade secret injunction is the time it would have taken defendant to independently develop or reverse engineer the technology).

Here, no facts are alleged to bridge the enormous causal leap from a website concept

allegedly held by three college students who admittedly do not know anything about programming (FAC ¶ 165), to the reality of a large complex business entity built by the programming, business and capital contributions of hundreds of different people over a period of years, operating a website with tens of millions of users. *Id.* ¶¶ 188-189. Indeed, the entirety of plaintiffs' allegations of causation are as follows:

> As later proved by Defendants' improper success, the Founders observed a vacuum in the college/university community for a website utility with Harvard Connection's features. Their plan was to fill that vacuum before anyone else did so. Harvardconnection.com was going to be the first niche social network for university students. Its success and expected viral growth depended on launching before any other similar website, which would guarantee its first-mover advantage. If the niche was already filled, it would have been virtually impossible to gain critical mass to sustain viral growth.
>
> On February 4, 2004, Defendants Zuckerberg, Moskovitz, McCollum, and Saverin launched the thefacebook.com website, which was directly competitive to the Harvard Connection website under development…
>
> …The Founders then hired a programmer/website developer to complete the website, but they were unable to launch the connectu.com website until May 21, 2004, almost four months after the launch of thefacebook.com. By that time, it was too late. By May of 2004 thefacebook.com website counted almost the entire Harvard student body as members, and was rapidly spreading to schools around the country with explosive viral growth.
>
> Defendants' wrongful knowledge and/or use of the Harvard Connection ideas enabled and allowed thefacebook.com website to come to market first, thereby obtaining press coverage, users/members, advertisers, investors, and the viral growth attributable to the network effect (which facebook.com has reaped), that would otherwise have benefited ConnectU's predecessors.
>
> Defendants' market advantage, directly and proximately resulting from Defendants' wrongdoing described herein, usurped ConnectU's predecessors' potential market and related business opportunities.

FAC ¶¶ 26, 36, 38, 40, 41. These are conclusory allegations. As the documents attached to the complaint demonstrate, Facebook has grown due to a number of monetary, business, and other strategic reasons unrelated to anything imagined or contributed by the ConnectU Founders. *See, e.g.*, Exs. 56A-56J, 65-67, 78. A plaintiff's allegations must meet the requirements of logic and common sense. *See Bell Atl. v. Twombly*, 127 S. Ct. 1955, 1967 (2007) (plaintiff must state a

plausible, not merely a possible, entitlement to relief). The request for relief, as currently framed, does not meet this standard.

The absence of any kind of causal pleading is equally destructive to the claims for 1) damages equal to the entire value of facebook.com and 2) an injunction shutting down the website. *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 180-81 (1979) (lost profits damages due to trade secret misappropriation were unavailable because not shown with sufficient certainty – unclear whether they resulted from defendants' actions or plaintiffs' inaction); *General Elec.*, 843 Mass. at 780. *See also Conway*, 402 Mass. at 388 (causation required for damages); *Pino*, 599 F.2d at 16 (injunction should be narrow to address the specific harm shown). And, as noted above, the demand for damages "equal to entire value of facebook.com" has never appeared in previous complaints — yet the underlying facts of Plaintiffs' case have not changed since the last complaint.

Finally, the maximum length of any injunction would be the time it would have taken for the trade secret to become public knowledge, *i.e.*, the three to four months it took Plaintiffs' to launch ConnectU. *General Elec.*, 843 Mass. at 781. *See also* FAC ¶ 38. That time has passed. Thus, a permanent injunction shutting down Facebook is unavailable (and never was available, and Plaintiffs' counsel denied even asking for it), and that demand must be struck. In any case, injunctive relief is barred after a trade secret has become public knowledge, as has undisputedly been the case since ConnectU's launch more than three years ago. *E.g., B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 509 (9th Cir. 2006) ("Once a trade secret has been widely disclosed, it is no longer secret and does not merit injunctive relief.")

### C. Plaintiffs' Constructive Trust and Equivalent Demands Should Be Stricken Because of Failure to State Any Claim that Can Support Them

As set forth in the accompanying motions to dismiss, Plaintiffs have failed to state a

claim for any claim which could entitle Plaintiffs to a constructive trust, injunction, or damages at the value of Facebook. A constructive trust is only available in Massachusetts in limited cases. The leading case outlining the circumstances warranting a constructive trust is *Barry v. Covich*, 332 Mass. 338 (1955), which sets forth the standard as follows:

> A constructive trust may be said to be a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by *[i]* fraud or *[ii]* in violation of a fiduciary relation or *[iii]* where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.

*Id.* at 342 (numbering added); *see also Meskell v. Meskell*, 355 Mass. 148, 151 (1969) (same three bases); *Kelly v. Kelly*, 358 Mass. 154, 156 (1970) (same); *Nessralla v. Peck*, 403 Mass. 757, 762 (1989) (mentioning only fraud and fiduciary duty). In addition, a constructive trust is permitted for copyright infringement over the proceeds of the infringing work, *see, e.g., Stone v. Williams*, 970 F.2d 1043, 1051 (2d Cir. 1992). Should the Court find that these claims are insufficiently pled, Plaintiffs' request for a constructive trust should be stricken for that reason as well.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request an order dismissing with prejudice and striking (i) the allegations that Plaintiffs' "damages at least equal the value of the website facebook.com" in paragraphs 87, 94, 95, 102, 147, 159, 169, 261, 293, 324 of the FAC; (ii) the demand for constructive trust in paragraph H of the Request for Relief (FAC, p 100), and (iii) the demand for an injunction shutting down the facebook.com website or any variation thereof in paragraph I(1) of the Request for Relief (FAC, p. 100).

Respectfully submitted,

FACEBOOK, INC., MARK ZUCKERBERG, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC,

/s/ I. Neel Chatterjee /s/
---
G. Hopkins Guy, III*
I. Neel Chatterjee*
Monte Cooper*
Theresa A. Sutton*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
tsutton@orrick.com

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone:  (617) 526-9600
Facsimile:  (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

* Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 29, 2007.

Dated: August 29, 2007.              Respectfully submitted,

                                                       /s/ I. Neel Chatterjee /s/
                                                          I. Neel Chatterjee

OHS West:260293563.9