UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC.,<br><br>                              Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CRISTOPHER HUGHES, and THEFACEBOOK, LLC,<br><br>                              Defendants. | Civil Action No.: 1:07-CV-10593-DPW<br><br>Related Action No. 1:04-CV-11923-DPW |

**DEFENDANT EDUARDO SAVERIN'S REPLY
IN SUPPORT OF HIS MOTION TO DISMISS
CONNECTU, INC'S FIRST AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

## INTRODUCTION

The few factual allegations contained in ConnectU's First Amended Complaint are utterly insufficient to support any of the three claims ConnectU has attempted to assert against Mr. Saverin. These factual allegations would establish, at most, that Mr. Saverin had an early stake in the Facebook venture, that he was involved in securing advertising for the thefacebook.com website, and that he at some point became aware of vague and unsubstantiated allegations against Defendant Zuckerberg. The FAC contains *no factual allegations* that Mr. Saverin had any interactions or relationship with the plaintiffs, that he directly engaged in any wrongdoing whatsoever, or even that he had knowledge of any wrongdoing by Mr. Zuckerberg.

ConnectU apparently does not dispute that it has failed to make any such allegations. Instead, it attempts to argue that it is actually not required to do so. In ConnectU's view, Mr. Saverin should be held hostage in this lawsuit based purely on (alleged) guilt by association. Fortunately, no pleading standard permitting this result is supported by the law.

## ARGUMENT

As ConnectU concedes, under *Bell Atlantic Corp. v. Twombly*, the FAC must contain *factual* allegations sufficient to "cross the line between possibility and plausibility of entitlement to relief." Dkt. 110 (ConnectU Opposition) at 1 (quoting *Twombly*, 127 S. Ct. 1955, 1966 (2007)) (internal quotations omitted). Pursuant to the plausibility standard, ConnectU was required to provide more than "speculation," "labels," "conclusions," unsupported inferences, and "formulaic recitation[s] of the elements of . . . cause[s] of action." *Twombly*, 127 S. Ct. at 1964-65; *Marrero-Gutierrez v. Molina*, 491 F. 3d 1, 10 (1st Cir. 2007).

To the extent ConnectU has pled any *facts* at all—as opposed to bald conclusions—those allegations are facially insufficient to support any of the inferences that ConnectU includes in its complaint, or to support any of the three causes of action it asserts against Mr. Saverin.[1] The

---

[1] Tacitly acknowledging the frailty of the FAC, ConnectU also appears to argue at one point in the Introduction to its Opposition that the FAC should survive Mr. Saverin's motion

*(Footnote Continued)*

1

FAC, as asserted against Mr. Saverin, should be dismissed in its entirety.

### A. ConnectU Has Failed to Plead a Claim for Misappropriation of Trade Secrets Against Mr. Saverin.

ConnectU cannot assert a claim against Mr. Saverin for "participation in" Mr. Zuckerberg's alleged trade secrets misappropriation without alleging that Mr. Saverin had some *knowledge* of Mr. Zuckerberg's alleged misappropriation.[2] *See, e.g., Curtis-Wright Corp. v. Edel-Brown Tool & Die Co.*, 381 Mass. 1, 6 (1980). As explained in Mr. Saverin's opening memorandum, the FAC makes no such allegation. *See* Dkt. 88 (Saverin Opening Mem.) at 6-7. ConnectU's trade secret misappropriation claim against Mr. Saverin therefore must fail.

ConnectU does not even attempt to respond to Mr. Saverin's comprehensive demonstration of the FAC's failure to plead *facts* logically supporting any inference that Mr. Saverin was aware of Mr. Zuckerberg's alleged wrongdoing. Instead, ConnectU simply claims conclusorily (and falsely) that it actually alleged that Mr. Saverin "had knowledge" of Mr. Zuckerberg's misappropriation. *See* Dkt. 110 (ConnectU Opp.) at 4, 8, 9. But the single paragraph from the FAC that ConnectU cites in purported support of these claims, paragraph 229, only speculates that Mr. Saverin "must have been aware of Mr. Zuckerberg's wrongdoing." *See id;* FAC, ¶ 229. As explained in Mr. Saverin's opening memorandum, the FAC does not contain *facts* that support even this hedged conclusion. *See* Dkt. 88 at 6-7.

---

*despite* its dearth of factual allegations, on the off-chance that further discovery may yield facts sufficient to state non-frivolous claims. *See* Dkt. 110 at 1 ("Saverin obviously has something to hide, and his motion to dismiss should be denied for this reason alone."). The Federal Rules do not sanction such a "potential pleading" standard. ConnectU was required to make a thorough investigation of the plausibility of its claims against Mr. Saverin (*without* Mr. Saverin's assistance and the attendant costs to him) *before* hailing him into court. Mr. Saverin intends to provide affidavits regarding the lack of responsive information in his possession, but this is entirely beside the point of this motion.

[2] ConnectU does not dispute that it has *not alleged* that Mr. Saverin personally misappropriated ConnectU's trade secrets. *See* Dkt. 110 at 3; *see* Dkt. 88 at 5-6.

Apparently conscious of the vulnerability of its "actual knowledge" argument, ConnectU argues that its allegation that "[Mr.] Saverin was aware that thefacebook.com *was accused* of being the fruits of a poisonous tree" is sufficient to support its trade secret misappropriation claim against Mr. Saverin. FAC ¶ 231 (emphasis added); *see* Dkt. 110 at 4; Dkt. 88 at 6-7. ConnectU bases this argument on a novel (and wrong) theory of inquiry notice. Specifically, ConnectU contends that, upon learning that other Harvard students—the Winklevoss brothers—had accused Mr. Zuckerberg of "misappropriating [their] . . . ideas, thoughts, concepts and research," FAC ¶ 229, Ex. 29a, Mr. Saverin was under a duty to pursue a relentless investigation of these vague and unsubstantiated charges, which would—according to ConnectU—necessarily reveal that some more definite version of these allegations was true. Putting aside the fact that ConnectU's own, highly-motivated, two-year investigation of these claims has failed to yield any such confirmation, this theory is simply illogical and meritless. It "proves" far too much.

Under ConnectU's mistaken theory, pleading trade secret misappropriation against a defendant not personally involved in the original misappropriating conduct requires only two very general allegations: (1) the plaintiff or some other party made some sort—*any* sort—of allegation of wrongdoing against the "primary defendant"; and (2) the "secondary defendant" had some continuing association with the "primary defendant" after such accusation of wrongdoing. If ConnectU were correct, a claim for participation in another's misappropriation of trade secrets could *never* be dismissed at the pleadings stage, no matter how frivolous the allegations, since the mere service of the complaint (or communications of an accusation) would put the participant defendant on "inquiry notice" sufficient to manufacture a cause of action against him. This cannot be, and is not, the law. *See, e.g., Mintel Learning Tech., Inc. v. Beijing Kaidu Educ. Dev. Co.*, 2007 WL 2288329, *6-7 (N.D. Cal., Aug. 9, 2007) (dismissing on the pleadings a trade secret claim against defendants alleged to use trade secrets misappropriated by their co-defendant).

3

### B.   ConnectU Has Failed to Plead a Claim of Unfair and Deceptive Conduct Against Mr. Saverin.

ConnectU has not properly pled a Massachusetts General Law chapter 93A claim against Mr. Saverin.  Specifically, the FAC fails to allege any "unfair or deceptive practices" engaged in by Mr. Saverin.  *See Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 22-23 (1997).  It also fails to allege facts indicating that any such "unfair and deceptive practices" were done "with a level of rascality," or that Mr. Saverin personally engaged in "unethical, immoral, oppressive, or unscrupulous" behavior.  *See Daley v. Twin Disc, Inc.*, 440 F. Supp. 2d 48, 53 (D. Mass. 2006); *Kobayashi v. Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 505 (1997).

ConnectU does not dispute these deficiencies.  Instead, ConnectU argues that it need not even allege facts implicating any wrongdoing by Mr. Saverin.  ConnectU bases this argument on the unsupported proposition that unjust enrichment is a *per se* "unfair or deceptive practice" under chapter 93A.  The case ConnectU cites as purported support of this proposition, *Massachusetts Eye and Ear Infirmary v. QLT, Inc.*, 495 F. Supp. 2d 188 (D. Mass. 2007) ("*MEEI*"), is wholly inapposite, and does not stand for the stated proposition in any case.

The Court in *MEEI* reiterated that allegations supporting an unjust enrichment claim "could *potentially* meet the requirements of chapter 93A," only if those allegations described actions that not only (1) fell "within . . . the penumbra of some common-law . . . concept of unfairness," but also (2) were "immoral, unethical, oppressive, or unscrupulous," and (3) "cause[d] substantial injury to . . . competitors."  *MEEI*, 495 F. Supp. 2d at 214 (quoting *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F. 3d 215, 243 (1st Cir. 2005)); *see PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975) (importing these 93A requirements from federal precedent that "if *all three* factors are present, the challenged conduct will surely violate [FTC law]") (emphasis added).  In *MEEI*, all three requirements were met, because the defendant had engaged directly in wrongdoing by inducing the plaintiff to relinquish its patent rights based on a series of false representations.  *See MEEI*, 495 F. Supp. 2d at 215 (in addition to unjust enrichment falling within the penumbra of common

4

law unfairness, "MEEI proved *the additional elements required* to establish a chapter 93A violation") (emphasis added).

*MEEI* is thus a far cry from this case, in which Mr. Saverin is not alleged to have done anything wrong personally, and the claims asserted against him are based entirely on alleged wrongdoing by Mr. Zuckerberg. Thus, even if the derivative unjust enrichment and trade secrets misappropriations claims against Mr. Saverin did fall within the "penumbra of common-law unfairness," the allegations allegedly supporting those claims certainly do not support a claim that Mr. Saverin acted "immorally," or "unscrupulously." *See Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc.*, 420 Mass. 39, 42-43 (1995) ("We focus on the nature of the challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G.L. c. 93A fairness determination.").

It makes perfect sense that a 93A claim cannot be asserted against a defendant who is not alleged to have *done anything* personally to the plaintiff. A claim under section 11 of chapter 93A requires that the plaintiff and defendant have engaged in "a commercial transaction" with each other. *Szalla v. Locke*, 421 Mass. 448, 451-52 (1995); *Linkage Corp.*, 425 Mass. at 22-23 (requiring a commercial "interaction between [the] two parties"). The law on this point could not be more clear:

> It is not enough that a defendant be engaged in trade or commerce and that he employ unfair or deceptive acts or practices on another business person with whom he was not engaged in trade or commerce. Rather, *the unfair or deceptive act or practice must occur in the context of a trade or commerce in which the defendant engages with the plaintiff*.

*Stop & Shop Supermarket Co. v. Loomer*, 65 Mass. App. Ct. 169, 177 (2005).

ConnectU has not alleged that it, or any of its founders, have ever had *any* interactions with Mr. Saverin whatsoever, much less a commercial interaction in which Mr. Saverin acted "immorally" or "inscrupulously." Thus, ConnectU's chapter 93A claim against Mr. Saverin plainly must fail. Moreover, because ConnectU's trade secrets misappropriation and unjust enrichment claims against Mr. Saverin fail for the reasons discussed in these papers, those claims

5

cannot support ConnectU's 93A claim in any case.

### C. ConnectU Fails to Plead a Claim for Unjust Enrichment Against Mr. Saverin.

In order to properly plead a claim of unjust enrichment against Mr. Saverin, ConnectU was required to plead, *inter alia*, a relation between Mr. Saverin's alleged enrichment and ConnectU's supposed impoverishment, and the absence of any justification for Mr. Saverin's alleged enrichment (i.e., that the enrichment is "unjust"). *Dialogo, LLC v. Bauza*, 456 F. Supp. 2d 219, 227 (D. Mass. 2006).[3] As Mr. Saverin demonstrated in his opening memorandum, the FAC does not plead facts supporting either of these required elements of an unjust enrichment claim. ConnectU apparently concedes these points, because it fails to respond directly to any of Mr. Saverin's arguments, choosing instead to attack arguments Mr. Saverin did not make.

#### 1. ConnectU has not alleged facts indicating the existence of any relationship between Mr. Saverin's enrichment and ConnectU's alleged loss.

As shown in Mr. Saverin's opening memorandum, the only *facts* ConnectU has pled regarding Mr. Saverin's alleged enrichment indicate that Mr. Saverin was enriched through his own investments of time, labor, and money. *See* Dkt. 88 at 9-10; FAC ¶¶ 226-27, 232. Again, conclusory and fallacious inferences aside, the FAC contains *no factual allegations whatsoever* indicating any relationship between Mr. Saverin's enrichment and ConnectU's alleged loss.

ConnectU responds that it has pled the required relationship based on the allegations contained in paragraphs 234-237 of the FAC. Dkt. 110 at 7. But these paragraphs do not plead *facts* at all—they simply recite the elements of an unjust enrichment claim, with Defendants'

---

[3] ConnectU contends that Mr. Saverin's "reliance" on *Dialogo* is misplaced because the claim in that case was disposed of on summary judgment. Dkt. 110 at 7. Mr. Saverin only "relied" on this case for its black-letter recitation of the elements of an unjust enrichment claim, which do not change based on the procedural posture of a particular case. *See* Dkt. 88 at 9. To survive Mr. Saverin's motion to dismiss, ConnectU was required to *plead* the same elements that the plaintiff in *Dialogo* was required to *establish*.

6

names inserted.  Such "allegations" are insufficient as a matter of law to support a claim against Mr. Saverin.  *Twombly*, 127 S. Ct. at 1965 (instructing that "a formulaic recitation of the elements of a cause of action will not do").

ConnectU's second argument, that the "benefits" Defendants allegedly "took" from ConnectU's founders were secondary gains resulting from a "first-user advantage," simply confirms that an unjust enrichment claim cannot lie against Mr. Saverin.  *See* Opp. at 7.  All of these alleged gains accrued *to Facebook, the enterprise*.  ConnectU cannot reach into Mr. Saverin's pocket in response to Facebook's success.  As explained in Mr. Saverin's opening memorandum, on ConnectU's unsupported and incorrect theory, a company's shareholders would become personally liable for unjust enrichment every time the company committed some wrongdoing that resulted in an increase in share price.  Indeed, as applied to this case, ConnectU's theory apparently would give it causes of action for unjust enrichment against every one of Facebooks's hundreds of employees, since these individuals owe their current salaries (and the existence of their positions) to Facebook's market success—which ConnectU attributes entirely to Mr. Zuckerberg's alleged wrongdoing.

ConnectU's argument that "it is entitled to plead in the alternative" unjust enrichment claims against Mr. Saverin and against Facebook misses the point entirely: Mr. Saverin is simply not a proper defendant for this claim.

### 2. ConnectU has failed to allege that Mr. Saverin's alleged retention of any benefit was "unjust."

In order to properly assert a claim for unjust enrichment claim against Mr. Saverin, ConnectU also was required to plead facts indicating that Mr. Saverin's alleged retention of a benefit was without justification (i.e., was "unjust").  As explained in Mr. Saverin's opening memorandum, however, ConnectU not only has failed to allege such facts, but has actually alleged facts which provide justification for Mr. Saverin's enrichment, as a matter of law.  Specifically, ConnectU has alleged that in January 2004, in connection with an out-of-pocket investment, Mr. Saverin acquired his full stake in the facebook venture without even "inquiry

notice" of any alleged wrongdoing by Mr. Zuckerberg. These allegations thus place Mr. Saverin squarely within the "bona fide purchaser" exclusion from unjust enrichment, and provide a *per se* justification for his retention of the alleged benefit. *See, e.g., Richardson v. Lee Realty Corp.*, 364 Mass. 632, 634-35 (1974); Restatement (First) of Restitution, § 13 and comment *a*.

ConnectU does not even attempt to respond to this point. Rather, it purports to respond to an argument that Mr. Saverin never made—that "a plaintiff is . . . required to plead the defendant's knowledge to state a claim for unjust enrichment." Dkt. 110 at 8. It is true that the FAC does not anywhere allege that Mr. Saverin had knowledge of the alleged "inauspicious beginnings of Facebook." *Cf. id*. But the relevant point is that even if ConnectU *had* alleged that Mr. Saverin acquired such knowledge in "mid-February 2004," *id.*, this would only demonstrate that Mr. Saverin *lacked* such knowledge at the time that he allegedly acquired his full stake in Facebook in connection with an initial out-of-pocket investment. On those alleged facts, Mr. Saverin is a "bona fide purchaser," and his retention of his equity in Facebook is *per se* "just." *Richardson*, 364 Mass. at 634-35.

### 3. ConnectU has failed to allege any predicate to the imposition of a constructive trust on Mr. Saverin's stake in Facebook, Inc.

As explained in Mr. Saverin's opening memorandum, a constructive trust may be imposed to avoid "unjust enrichment" only when the benefit at issue is obtained (a) by fraud, (b) in violation of a fiduciary relationship, or (c) "where information confidentially given or acquired is used to the advantage of the recipient at the expense of the one who disclosed the information." *Coelho v. Coelho*, 2 Mass. App. Ct. 433, 435 (1974). ConnectU has not alleged any of these three predicates with respect to Mr. Saverin.

Nonetheless, ConnectU argues that its bare assertion of an unjust enrichment claim against Mr. Saverin automatically entitles it to pursue a constructive trust remedy against him. This is wrong for at least three reasons. *First*, as the *Coelho* test makes clear, unjust enrichment is simply a necessary condition—not a sufficient condition—for the imposition of a constructive trust. *See id.*; *Carpenter v. Suffolk Franklin Sav. Bank*, 370 Mass. 314, 327 (1976) (though

8

"enrichment of the bank may have been unjust in some sense," a constructive trust nonetheless could not be imposed). *Second*, as shown above, ConnectU has not alleged a viable unjust enrichment claim against Mr. Saverin in any case.

*Third*, under Massachusetts law, a defendant's actions cannot amount to unjust enrichment of the type that may support a constructive trust if the defendant has no knowledge of any wrongdoing. *Foster v. Hurley*, 444 Mass. 157, 727-28 (2005) (reversing the imposition of a constructive trust based on the Supreme Judicial Court's disagreement with the view of the "Appeals Court that Hurley's receipt of the Prudential policy constituted unjust enrichment, notwithstanding the absence of any wrongdoing or knowledge on his part of the deceased's contractual obligations")[4]; *Christian v. Mooney*, 400 Mass. 753, 763-64 (1987) (plaintiffs not entitled to constructive trust where defendant had no knowledge of wrongdoing). Because ConnectU has not alleged facts indicating that Mr. Saverin had any knowledge of Mr. Zuckerberg's alleged wrongdoing, ConnectU cannot pursue a constructive trust against him.

ConnectU also argues that it is entitled to a constructive trust against Mr. Saverin under the third, "confidentially given information" prong of *Coelho*. But the FAC contains no allegations that Mr. Saverin confidentially received anything from ConnectU or its Founders (indeed, ConnectU does not allege ever to have had any relationship with Mr. Saverin at all), or even that Mr. Saverin confidentially received any of ConnectU's information from Mr. Zuckerberg. There is thus no basis on which a constructive trust could be imposed on Mr. Saverin's assets.[5]

---

[4] ConnectU contends that the Court deemed a constructive trust improper in *Foster* solely based on a lack of fraud or a fiduciary relationship. Dkt. 110 at 9. Notwithstanding that this reading of *Foster* is unhelpful to ConnectU (in that the FAC does not assert fraud against Mr. Saverin, or allege that he had a fiduciary relationship with ConnectU or its founders), the language from *Foster* quoted in the parenthetical above belies ConnectU's incorrect reinterpretation of that case.

[5] ConnectU argues that *Coelho* supports a constructive trust against Mr. Saverin based on allegations "that Saverin acquired information confidentially given by the Founders *to*

*(Footnote Continued)*

9

## CONCLUSION

For the foregoing reasons, Defendant Eduardo Saverin respectfully requests that ConnectU's First Amended Complaint as against him be dismissed.

DATED: October 5, 2007

/s/ Nathan E. Shafroth
Annette L. Hurst (*admitted pro hac vice*)
Nathan E. Shafroth (*admitted pro hac vice*)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94110
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
annette.hurst@hellerehrman.com
nathan.shafroth@hellerehrman.com

Robert B. Hawk (*admitted pro hac vice*)
Bhanu K. Sadasivan (*admitted pro hac vice*)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, California 94025
Telephone: (650) 324-7000
Facsimile: (650) 324-0638
robert.hawk@hellerehrman.com
bhanu.sadasivan@hellerehrman.com

Gordon P. Katz (BBO# 261080)

---

*Zuckerberg*." Dkt. 110 at 9 (emphasis added). While constructive trusts based on *Coelho*'s "confidentially given information" prong are exceedingly rare, the two cases Mr. Saverin has found in which a plaintiff was even permitted to proceed on this theory involved defendants who used information to the detriment of the party from whom *they confidentially received it*. *MEEI*, 495 F. Supp. 2d at 210-11; *Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 423 (D. Mass. 1995). This is unsurprising, since the "misuse of confidentially received information" predicate to a constructive trust was merely an extension of the fiduciary breach predicate. *See Barry v. Covich*, 332 Mass. 338, 342 (1955); *Warsofsky v. Sherman*, 326 Mass. 290, 293-95 (1950); *see also Meskell v. Meskell*, 355 Mass. 148, 151-52 (framing the inquiry in terms of whether plaintiffs and defendants were in a "confidential relationship" giving rise to special duties on the part of defendants).

Daniel K. Hampton (BBO# 634195)
HOLLAND & KNIGHT LLP
10 St. James Avenue, 11th Floor
Boston, MA  02116
Telephone:  (617) 523-2700
Facsimile:  (617) 523-6850
gordon.katz@hklaw.com
dan.hampton@hklaw.com

Attorneys for EDUARDO SAVERIN