IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC,<br><br>Defendants. | Civil Action No. 1:07-CV-10593-DPW |

**DEFENDANTS MARK ZUCKERBERG, FACEBOOK, INC., AND THEFACEBOOK LLC'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, AND PROMISSORY ESTOPPEL**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT............................................................................................................. 1

    A. Terms Of The Purported Agreement Were Too Vague To Be Enforceable ......... 2

    B. Plaintiffs' "Evidence" Does Not Create A Triable Issue Of Fact......................... 4

    C. Testimony From Mark Zuckerberg Is Irrelevant ................................................. 7

    D. The Court Should Not Be Required To Draft The Failed Agreement .................. 8

    E. Declarations Contradicting Prior Sworn Testimony Cannot Defeat
Summary Judgment............................................................................................. 11

    F. Summary Judgment Also Is Appropriate With Respect To Plaintiffs'
Claims For Breach Of The Implied Covenant Of Good Faith And Fair
Dealing And Promissory Estoppel ..................................................................... 12

III. CONCLUSION........................................................................................................ 13

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Armstrong* v. *Rohm & Haas Co.*, 349 F. Supp. 2d 71 (D. Mass. 2004) ............................ 1, 4, 6, 13

*Soar* v. *NFL Players Asso.*, 438 F. Supp. 337 (D.R.I. 1975) .......................................................... 6

*Colantuoni* v. *Alfred Calcagni & Sons*, 44 F.3d 1 (1st Cir. 1994) ................................................ 12

*Hutchins* v. *Zoll Medical Corp.*, 430 F. Supp. 2d 24 (D. Mass. 2006) .......................................... 8

*Lederer* v. *John Snow, Inc.*, 411 F. Supp. 2d 25 (D. Mass. 2006) ................................................ 4

*Mason Tenders Dist. Council Pension Fund* v. *Messera*,
    958 F. Supp. 869 (S.D.N.Y. 1997) ............................................................................................ 8

*Rainey* v. *Am. Forest & Paper Assoc., Inc.*, 26 F. Supp. 2d 82 (D.D.C. 1998) ........................... 11

*Torres* v. *E.I. Dupont de Nemours & Co.*, 219 F.3d 13 (1st Cir. 2000) ..................................... 12

### STATE CASES

*Aretakis* v. *Gen. Signal, Inc.*, No. 05-10257, 2006 WL 1581781,
    at *6 (D. Mass. 2006) ............................................................................................................ 4, 12

*Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367 (2005) ....................................................... 12

*Caraustar Indus., Inc.* v. *North Ga. Converting, Inc.*,
    No. 3-4CV187-H 2006 WL. 3751453 (W.D.N.C. 2006) ......................................................... 11

*Chokel* v. *Genzyme Corp.*, 449 Mass. 272 (2007) ...................................................................... 12

*Delorafano* v. *Delafano*, 333 Mass. 684, 132 N.E.2d 668 (1956) ............................................... 9

*Ellis* v. *Safety Ins. Co.*, 41 Mass. App. Ct. 630 (1996) ............................................................... 12

*Hanover Ins. Co.* v. *Leeds*, 42 Mass. App. Ct. 54 (1997) ........................................................... 11

*Held* v. *Zamparelli*, 13 Mass. App. Ct. 957 (1982) ...................................................................... 7

*Lambert* v. *Fleet Nat'l Bank*, 449 Mass. 119, 865 N.E.2d 1091 (2007) ....................... 3, 7, 8, 9, 11

## TABLE OF AUTHORITIES
(continued)

Page

*McMurtrie* v. *Guiler*, 183 Mass. 451, 67 N.E. 358 (1903) ...................................................... 9, 10

*McTernan* v. *Haley & Aldrich, Inc.*,
   No. 945905, 1995 WL. 1146823 (Mass. Super. Ct. 1995) ..................................................... 12

*Mendel Kern, Inc.* v. *Workshop, Inc.*, 400 Mass. 277, 508 N.E.2d 853 (1987) ............................. 1

*Noble* v. *Joseph Burnett Co.*, 208 Mass. 75, 94 N.E. 289 (1911) ................................................. 10

*O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905 (1993) ................................................. 11

*Phinney* v. *Morgan*, 39 Mass. App. Ct. 202 (1995) ..................................................................... 12

*Rosenblum* v. *Springfield Produce Brokerage Co.*, 137 N.E. 357 (1922) ................................... 10

*Rosenfield* v. *United States Trust Co.*, 195 N.E. 323 (Mass. 1935) ............................................... 4

*Spilios* v. *Cohen*, 38 Mass. App. Ct. 338 (1995) .......................................................................... 11

*Uno Rests., Inc.* v. *Boston Kenmore Realty Corp.*, 441 Mass. 376 (2004) .................................. 12

*Wilder* v. *Manley,* No. CA 924409H, 1994 WL. 902879 (Mass. Super. Ct. 1994) ............ 3, 4, 6, 8

### DOCKETED CASES

*Lieberman* v. *StorageNetworks, Inc.*, No. 02 P 117, 2004 WL. 360489
   (Mass. Ct. App. 2004) ................................................................................................................ 4

I.    **INTRODUCTION**

Defendants Mark Zuckerberg, Facebook, Inc., and TheFacebook, LLC's Motion for Summary Judgment should be granted. Plaintiffs have not proffered any evidence to create a triable issue of material fact whether a contract with definite terms was formed. As ConnectU admitted, the parties never achieved anything more than an "agreement to agree" in which it was "premature to talk about allocation" of equity in the event the Harvard Connection website ever was launched and became profitable. *See* Cooper Decl. Ex. 2, at 68:21-22. Agreements to agree are not enforceable contracts, particularly where the ultimate benefit is left indeterminate.

Nothing in Plaintiffs' proffered evidence warrants a different result. The new declarations Plaintiffs submit do not overcome the purely legal problem that Zuckerberg was never informed how his purported "equal interest" in the amorphous concept of what was "Harvard Connection" would be allocated. Plaintiffs' additional facts serve only to underscore that their purported partnership agreement for development of the website was too vague to constitute an enforceable contract. Simply stated, Plaintiffs failed to provide any evidence to preclude summary judgment in favor of Defendants on the claims for breach of contract, promissory estoppel and breach of the covenant of good faith and fair dealing.

II.   **ARGUMENT**

Defendants' Motion for Summary Judgment, Dkt. No. 106 ("Defendants' Mot. For Summ. Judg."), does not involve a fact question. Rather, "[w]hether an alleged contract is legally enforceable in light of indefinite terms is a question of law." *Armstrong v. Rohm & Haas Co.*, 349 F. Supp. 2d 71, 78 (D. Mass. 2004). Informing this legal determination is the principle that "an intention to do something is not necessarily a promise to do it." *Mendel Kern, Inc. v. Workshop, Inc.*, 400 Mass. 277, 508 N.E.2d 853, 855 (1987). Indeed, it is Hornbook law that "[a] general promise to assist in making a business successful or to help rehabilitate a business or farmland for a few thousand dollars is obviously without sufficient contour to be enforced." 1 *Williston on Contracts* § 4.26 (4th ed. 2007).

Here, the admissions on file and virtually all of Plaintiffs' evidence reflects that the

purported partnership agreement between Zuckerberg and the Harvard Connection Founders to develop the website for some future stake in equity was, as a matter of law, indefinite. The alleged agreement was prospective in nature, and amounted to being no more than a general promise to assist in making Harvard Connection successful, whatever it was supposed to have been. There simply is no triable issue of fact whether an alleged partnership agreement to develop a website in which profits will be divided based on some indeterminate "sweat equity" gives rise to an enforceable contract. Summary judgment in favor of Defendants on Plaintiffs' claims for breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel is proper.

### A.  Terms Of The Purported Agreement Were Too Vague To Be Enforceable

Plaintiffs conflate the question of whether they orally offered Zuckerberg the opportunity to become a "partner" in Harvard Connection with the separate question of whether the terms of any alleged partnership agreement were sufficiently definite to be enforceable. *See* Plaintiffs' Consolidated Opposition, Dkt. No. 112 ("Consol. Opp'n") at 8, 35-36. The critical issue is not whether Zuckerberg was actually told he was a "partner" (although ConnectU admitted in its Rule 30(b)(6) deposition that he was not), but whether the alleged offer to be a partner included sufficiently definite terms. No such definite terms were provided.

In that regard, Plaintiffs do not dispute that they have characterized their purported oral partnership agreement with Mark Zuckerberg in an Interrogatory Response[1] as follows:

> They also told Mr. Zuckerberg that he was an *equal-opportunity member* in the project and enterprise, and an *equal-opportunity member* of the Harvard Connection team, *based on the amount of contribution and effort each partner made, to be later determined based on their ongoing participation and contribution to the enterprise.* …

---

[1] Notably, there is no reference to this Interrogatory admission anywhere either in the Plaintiffs' Consolidated Opposition to the Motion for Summary Judgment, or in "Plaintiffs' Opposition to Defendants' 'Undisputed Material Facts' Pursuant to Local Rule 56.1." The omission is significant, because the response was the first undisputed fact cited by Defendants in their Opening Memorandum Brief. *See* Defendants' Mot. For Summ. Judg., at 1.

> Mr. Zuckerberg never asked for any payment. As a partner, Mr. Zuckerberg *would* have monetary compensation in the form of a share in the partnership *if the website launched, became popular, and could be monetized.*

Decl. of Monte M.F. Cooper in Supp. of Mot. for Summ. J. ("Cooper Decl."), Ex. 5 at 29 (emphasis added). As the admission reflects, Plaintiffs themselves concede that they never defined what "contribution and effort" would give Zuckerberg any sense of what his equity stake would be. Further, Plaintiffs do not dispute that ConnectU also has admitted that at the time they contend Zuckerberg became a "partner" it was (a) "premature" to "speak about specific equity stakes" (*id.* Ex 2, at 64:9-11; 64:16-17; 64:19-20; 65:17-19; 66:8-10; 68:16-17; 68:21-22); (b) Zuckerberg himself never agreed to any particular equity stake he was to receive (*id.* at 68:13-17) (c) there was no discussion of "specific percentage ownership" in Harvard Connection (*id.* at 345:1-15); and (d) no one actually ever told Zuckerberg he was a "partner" in Harvard Connection (*id.* at 342:18-343:2; 343:14-20). It further is undisputed that the ConnectU Founders never informed Zuckerberg how long they expected he would need to work on the Harvard Connection site. Cooper Decl., Ex. 5 at 30.

    Given these repeated and unequivocal admissions that equity and ownership were always undefined and subject to later determination, whether or not ConnectU and the Founders intended to enter into an oral partnership with Zuckerberg is irrelevant. Plaintiffs' own characterization of the oral agreement reflects at best "the kind of vague and general discussion" that the Massachusetts Supreme Court recently acknowledged "is common in the preliminary stages of business dealings and does not rise to the level of an enforceable agreement." *Lambert v. Fleet Nat'l Bank*, 449 Mass. 119, 865 N.E.2d 1091, 1096 (2007). Indeed, the inability to identify what were the specific contributions of each of the alleged partners, or what were their expected liabilities, provides an independent basis to enter summary judgment since "[t]he right to share in profits and the duty to contribute toward losses is an *essential element* of a joint venture or a partnership." *Wilder v. Manley*, No. CA 924409H, 1994 WL 902879, at \*4 (Mass.

Super. Ct. 1994) (emphasis added; finding oral partnership agreement too indefinite), *aff'd mem.*, 663 N.E.2d 587 (Mass. App. Ct. 1996).

Because the essential terms of the partnership, particularly division of equity and agreement to share in profits and losses, were left for future negotiation, the oral agreement Plaintiffs now claim was contemplated is too indefinite to be enforced as a matter of law. It was no more than "[a]n agreement to reach an agreement." *Rosenfield v. United States Trust Co.*, 195 N.E. 323, 326 (Mass. 1935). Massachusetts Courts routinely hold such oral agreements to be, as a matter of law, unenforceable. *See, e.g., Wilder v. Manley*, 1994 WL 902879, at *6 ("The record indicates that the parties had failed to agree on material matters regarding the [purported oral partnership] deal, such as the proper amount of Wilder's contribution and the voting scheme."); *Lieberman v. StorageNetworks, Inc.*, No. 02 P 117, 2004 WL 360489, at *2 (Mass. Ct. App. 2004) (unpublished) ("Here, the essential price term of the option contract was apparently left for future negotiation or discussion, and thus the contract is too indefinite to be enforced); *Aretakis v. Gen. Signal, Inc.*, No. 05-10257, 2006 WL 1581781, at *6 (D. Mass. 2006) (uncertainty as to the "strike price and the date of the spin-off and IPO" will make a stock option contract unenforceable); *Armstrong*, 349 F. Supp. 2d at 80 ("What price would be paid for the work? Were there different prices for different types of work? When and how would plaintiffs be paid?"); *Lederer v. John Snow, Inc.*, 411 F. Supp. 2d 25, 31 n.6 (D. Mass. 2006) ("The terms of any long-term agreement were too indefinite to be enforceable since there was no agreement as to duration, duties, work schedule or payments.").

### B. Plaintiffs' "Evidence" Does Not Create A Triable Issue Of Fact

In an attempt to forestall summary judgment, Plaintiffs rely on the declarations of Cameron Winklevoss, Divya Narendra, and Victor Gao, and the absence of testimony from Mark Zuckerberg, to incorrectly argue that there is a triable issue of fact whether there existed a sufficiently definite oral "equal opportunity partnership" agreement between Mark Zuckerberg and the partners, by which Zuckerberg would receive his "fair share" of any later profits in Harvard Connection. *See* Consol. Opp'n, at 34-35. They also direct the Court to excerpts from

ConnectU's 30(b)(6)[2] deposition and the First Amended Complaint ("FAC") to argue that the alleged contract was sufficiently definite.

None of this "evidence" disputes ConnectU's earlier admissions that there never was any discussion of how or when a partnership that included Mr. Zuckerberg actually was going to allocate equity shares in the profits, let alone losses. Instead, when read in context, the excerpts cited by Plaintiffs demonstrate that the ConnectU founders never had an explicit conversation with Mr. Zuckerberg about any material terms related to partnership formation, operation, duties, or compensation. *See, e.g.*, Cooper Decl., Ex. 2, at 66:24-68:17; Cooper Reply Decl., Ex. 6, at 351:7-357:1. Even Plaintiffs' proffered testimony admits that "[i]f contributions six months down the road were unequal, then the partnership, you know, would certainly change in scope." Cooper Reply Decl., Ex. 6, at 356:6-9. Essentially, ConnectU testified that Mr. Zuckerberg was invited to contribute his coding skills to the development of a website, and at some point "down the road" the parties would discuss some form of remuneration – possibly in the form of the "reinvention" of Mr. Zuckerberg's reputation, an equity share in the venture, or some other unknown benefit emanating from developing the site. Cooper Decl., Ex. 2, at 65:5-21. Whatever Mr. Zuckerberg was to receive at some later date was left to some undefined time and reflected an undefined stake in the venture based on indeterminate "contribution" – what ConnectU's counsel has termed "sweat equity." 7/25/07 Hr'g Trans. at 15:6-7. *See also* Cooper Decl., Ex. 5, at 29.

Plaintiffs contend that there is a factual question as to the intent of the parties to form a partnership. This contention is irrelevant. The purported oral partnership agreement Plaintiffs contend was formed offers no insight into how the parties ultimately would allocate equity, how they would share in the profits and losses, how they would determine what constituted "contribution" sufficient for a particular equity stake, or even when the time of performance

---

[2] Although Plaintiffs cite excerpts from the Rule 30(b)(6) deposition of ConnectU, they fail to attach the additional testimony as a separate exhibit. *See, e.g.*, Contentions 2, 5, 7-11 (Dkt. No. 111). Defendants include the missing testimony within Exhibit 6 to the Reply Declaration of Monte M.F. Cooper ("Cooper Reply Decl.").

would be determined (*i.e.* when the first dollar of profit was received, when one thousand dollars of profits was achieved, or whether compensation would be allocated based on profits at some other moment of time). These are precisely the types of "open" and undefined terms that lead Courts to conclude that alleged oral contracts are unenforceable. *Wilder v. Manley*, 1994 WL 902879, at *4, *6 (allocation of profits, losses, and voting scheme were all missing and essential terms from purported oral partnership agreement); *Armstrong*, 349 F. Supp. 2d at 79-80 (finding contract terms indefinite where it was unclear what volume of work was expected to be performed, what specific work was required, what price was to be paid, and what was the duration of the contract). *Cf. Soar v. NFL Players Asso.*, 438 F. Supp. 337, 343 (D.R.I. 1975) (an alleged oral agreement to provide retroactive pension coverage for former football players in the event a pension plan was established, and if sufficient funds became available, was too indefinite to be enforced since there was no way to allocate when "sufficient" funds were, in fact, available).

      The declarations of Messrs. Winklevoss, Narendra and Gao confirm ConnectU's earlier admission that the critical equity and related terms of the alleged oral partnership agreement were "premature."[3] Mr. Gao writes that when he spoke with Mr. Zuckerberg he offered him the "possibility" of taking an equal stake in the enterprise. Gao Decl., ¶ 8. Mr. Gao does not say that he actually offered Mr. Zuckerberg a particular share in the Harvard Connection venture, or what the benefits of that "share" would be. *Id.* Similarly, Mr. Narendra indicated that Mr. Zuckerberg was to receive "his fair share of any revenues the site generated" "once it became profitable." Narendra Decl., ¶ 9. "Fair share" is wholly indefinite and, importantly, Mr. Narendra has no personal knowledge of the alleged terms of the "agreement," as he was not present at the time of the alleged offer and acceptance. Gao Decl., ¶¶ 6-9, 12; Narendra Decl.,

---

[3] Plaintiffs' remaining "factual" assertions are inapposite. Where Plaintiffs do not rely specifically on deposition testimony or the three belated declarations, their factual assertions are argument and, thus, cannot be used to create a triable issue of fact to defeat the present motion. *See*, *e.g.*, Contention No. 10 (Dkt. No. 111).

¶ 7.  Cameron Winklevoss' declaration[4] attempts to describe hypothetical allocations of equity (Winklevoss Decl., ¶ 17), and in doing so carefully avoids referring to ConnectU's earlier admissions both that it would have been "premature" to allocate equity, and that the Harvard Connection "team" never actually used the term "partner" when describing Mr. Zuckerberg's role.  Cooper Decl., Ex. 2, at 65:24-66:1.  Indeed, all three declarations appear principally designed to divert attention from the prior admissions of ConnectU that Mr. Zuckerberg was never told what equity he supposedly would receive at some indefinite point in the future – perhaps because ConnectU already admitted in its interrogatory responses that any such reward was "*to be later determined*" based on "ongoing participation and contribution to the enterprise."  Cooper Decl., Ex. 5 at 29 (emphasis added).

Even if the Court were to ignore Defendants' citations to ConnectU's interrogatory responses and binding Rule 30(b)(6) testimony  – indisputable evidence that establishes essential terms of the alleged agreement were never discussed – the new testimony relied upon by Plaintiffs also is interminably vague.  "[N]ot only does the extreme vagueness of the purported 'agreement' make its enforcement impossible, … it indicates that there was no intent to be bound, and thus no agreement, in the first place."  *Lambert v. Fleet Nat'l Bank*, 865 N.E.2d at 1096 (citations omitted)(citing *Held v. Zamparelli*, 13 Mass. App. Ct. 957, 958 (1982)).  Summary judgment is proper.

        C.      <u>**Testimony From Mark Zuckerberg Is Irrelevant**</u>

Plaintiffs argue that summary judgment should not enter because there is no testimony offered about the alleged contract from Mark Zuckerberg.  *See* Consol. Opp'n at 35.  There is virtually no reason why Zuckerberg should introduce testimony about the indefiniteness of an agreement he denies even existed.  If this argument were even remotely relevant, Plaintiffs would be obligated to seek relief for additional discovery by filing a declaration pursuant to Rule 56(f).  However, Plaintiffs cannot meet the requirements of that Rule because the question of

---

[4] Cameron Winklevoss was ConnectU's designated Rule 30(b)(6) corporate deponent.  *See* Cooper Decl. Ex. 2, at 1-2.

definiteness is one of law, and also because as the parties asserting the existence of a contract, they already are charged with knowledge and evidence of what the agreement was. *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F. Supp. 869, 894-95 (S.D.N.Y. 1997) (denying Rule 56(f) request seeking discovery relating to purported contractual relationship, because the plaintiff should already have evidence of such a contract).

In fact, the only missing testimony that should concern the Court is the omission of a declaration from the founder Tyler Winklevoss. As one of the plaintiffs and purported parties to the underlying oral partnership contract and a principal of ConnectU, it is glaring that he has not produced a declaration reflecting his understanding of what agreement was reached with Zuckerberg. The intention of one party alone cannot create an oral partnership, and Tyler, like the others, would have to identify the missing elements of how equity, profits, losses, and contribution all would be managed in order to show a partnership even was contemplated. *Wilder v. Manley*, 1994 WL 902879, at *4, *6. The absence of any statements of what he understood were the agreed terms concerning this so-called "Harvard Connection" partnership therefore strongly suggests there is no consistent position even among the Plaintiffs.

In any event, the interrogatory and deposition admissions by ConnectU are sufficient by themselves to bind Plaintiffs for purposes of summary judgment. Zuckerberg's testimony cannot change the fact that the purported partnership agreement lacks sufficient clarity as to equity division, contributions or losses as to be enforceable.

### D. The Court Should Not Be Required To Draft The Failed Agreement

Plaintiffs incorrectly suggest that despite the absence of essential terms to form a contract, the Court may enforce the alleged agreement by supplying its own terms. Such a proposition is contrary to Massachusetts law. "Having failed to identify the terms of this alleged contract, Plaintiff cannot rely on the Court to fill in the blanks." *Hutchins v. Zoll Medical Corp.*, 430 F. Supp. 2d 24, 34 (D. Mass. 2006). *See also Lambert*, 865 N.E.2d at 1096.

The Massachusetts Supreme Court recently noted that cases where courts in appropriate circumstances have supplied missing terms "all proceed on the assumption that an enforceable

agreement existed." *Lambert,* at 1096 & n.8.  Plaintiffs rely on *Delorafano v. Delafano*, 333 Mass. 684, 132 N.E.2d 668 (1956), one of the cases that the Massachusetts Supreme Court in *Lambert* specifically distinguished, to suggest the Court supply the essential terms here.  *See* Consol. Opp'n, at 36.   In *Delorafano*, a father and son entered into a contract whereby the son would work in the father's store in exchange for the son ultimately taking over the business – a fact which was confirmed in a discussion between the father and his wife.  *Delorafano*, 132 N.E.2d at 670.  There was no dispute a promise was made.  The father agreed to pay the son a weekly salary of $50.00 and $10.00 in meat as wages, which wages were to increase if business should improve.  *Id.*  In validating the wage and business transfer agreement, the court concluded that "[t]here was nothing so indefinite about" the promise "as to cause the contract to fail," even though the father ultimately failed separately to transfer stock in the company.  *Id.* at 671.  The case is unrelated to the present matter;  indeed, the Court ultimately held that the corporate defendant was not obligated to pay more than what the father agreed to pay by way of wages, because the son's belief he was entitled to stock was a "unilateral mistake."  *Id.* at 671, 672

  Plaintiffs also incorrectly rely on *McMurtrie v. Guiler,* 183 Mass. 451, 67 N.E. 358 (1903) to argue that the terms of the purported oral partnership agreement are definite.  *See* Consol. Opp'n at 36.  Like the parties in *Delaforano*, the *McMurtrie* parties had actually entered into a binding agreement.  *McMurtrie*, 67 N.E. at 358.  The plaintiff, a mechanical engineer, had threatened to leave for a more lucrative opportunity, and as inducement to make him stay the other partners proposed to admit him as a member of the firm with a guarantee to receive at least $2400, and perhaps more than $5000, from the profits.  *Id.*  The plaintiff's name then appeared on stationary and business cards as a "partner," and one of the other partners in a separate case had admitted the plaintiff was a partner.  *Id.*  A dispute arose after the plaintiff had contributed, causing the plaintiff to leave the partnership while demanding a one-quarter share of the profits.  *Id.*  The principle issue therefore was how his compensation actually was to be determined, given that it was undisputed he had contributed.  *Id.* at 358-359.  Because an agreement to share in the profits of the venture indisputably existed, the court held that silence as to the actual

proportion in which the partners were to share profits did not render that contract fatal. *Id.* at 359. The court found that it would be inequitable to "allow the defendants to hold the result of [plaintiff's] labor and skill for their exclusive benefit" and, therefore, determined "the rights of the partners to profits on the basis of what their intention was as shown from all the facts of the case." *Id.* Because there was an agreement, profits and performance, and because the sole question was not whether plaintiff should receive compensation but rather how much, the facts in *McMurtrie* do not parallel the facts here. Here, there were no profits, plaintiffs admit compensation was contingent on later events, the amount was not fixed by any agreement, and the contribution of all parties was indeterminate. In fact, *McMurtrie* was later distinguished when the Massachusetts Supreme Court noted "[m]ere participation in profits is not enough" to establish a partnership. *Rosenblum v. Springfield Produce Brokerage Co.*, 137 N.E. 357, 361 (1922).

     A similar result was reached in *Noble v. Joseph Burnett Co.*, 208 Mass. 75, 94 N.E. 289 (1911), another case cited by Plaintiffs. In *Noble*, the court found that the parties had already entered into an enforceable *written* partnership agreement which included a provision to pay the plaintiff "a fair and equitable share of the net profits." *Id.* at 289. The plaintiff performed the work he promised as consideration, and "great profits" resulted. *Id.* Significantly, the plaintiff only sought equitable division for those accrued profits, and the Court specifically noted "[t]he plaintiff simply asks that this rule shall be applied *not to future probabilities* but to past facts." *Id.* at 289-90. Under these circumstances the Court agreed it was not "impracticable" to equitably divide the profits in accordance with the parties' agreement. *Id.* at 290. The case is wholly distinguishable due to the existence of a written contract, performance by the plaintiff, accrual of profits, expectation of payment, and the understanding that division was limited solely to existing profits. Here, all the alleged terms of the oral partnership were contingent, there was no performance, profits were virtually never certain, and equity was left for the future. This present situation involves "future probabilities" -- exactly the circumstances the Massachusetts Supreme Court distinguished in *Noble*. *Id.* at 289-90.

The cases cited by Plaintiffs are not unique, but they are entirely distinguishable from the present facts. Here the parties did not form a binding contract, Plaintiffs had not performed, there were no profits, and equity division was left to an uncertain future occurrence. As a result, Plaintiffs' suggestion that the Court fill in the missing terms must be rejected. The vagueness of the essential terms "indicates that there was no intent to be bound, and thus no agreement." *Lambert*, 865 N.E.2d at 1096. Summary judgment is proper.

### E. **Declarations Contradicting Prior Sworn Testimony Cannot Defeat Summary Judgment**

To the extent they contradict any prior admissions by ConnectU, Plaintiffs' new declarations are irrelevant and should not be considered. All three witnesses testify as principals and/or agents of ConnectU, and ConnectU already admitted in sworn testimony that Mr. Zuckerberg's equity stake was never identified and that he was never actually told he was a partner. Cooper Decl., Ex. 2,. at 66:24 - 68:17 Cooper Reply Decl., Ex. 6, at 351:1-352:25, 355:1-356:25. ConnectU also previously repeatedly testified that a discussion about share allocation was premature. Cooper Decl., Ex. 2, at 64:9-11; 64:16-17; 64:19-20; 65:17-19; 66:8-10; 68:16-17; 68:21-22.

ConnectU is bound by its prior 30(b)(6) testimony, and may not contradict it with a new affidavit from its corporate designee or other principals in order to support its current litigation agenda. *See Rainey v. Am. Forest & Paper Assoc., Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998) ("[u]nless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the discovery deposition"); *Caraustar Indus., Inc. v. North Ga. Converting, Inc.*, No. 3-4CV187-H 2006 WL 3751453, at *6 - *7 (W.D.N.C. 2006) (same). This restriction is simply an extension of the well-known rule that "a party cannot create a disputed issue of fact [simply] by ... contradicting by affidavit statements previously made under oath at a deposition." *Hanover Ins. Co. v. Leeds*, 42 Mass. App. Ct. 54, 58-59 (1997) (citing *O'Brien v. Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993)); *Spilios v. Cohen*, 38 Mass. App. Ct. 338, 340 n. 2 (1995);

*Phinney v. Morgan*, 39 Mass.App. Ct. 202, 207, (1995); *Ellis v. Safety Ins. Co.*, 41 Mass. App. Ct. 630, 633-634 n. 5 (1996).  As the First Circuit recognizes, "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4-5 (1st Cir. 1994).  See also *Torres v. E.I. Dupont de Nemours & Co.*, 219 F.3d 13, 20-21 (1st Cir. 2000) (affirming District Court's striking of affidavits submitted in opposition to summary judgment motion as conflicting with earlier testimony of the witnesses).

Here, ConnectU's interrogatory responses and repeated deposition statements concerning the premature nature of allocation of equity were "very complete and thorough," so that any subsequent statements to the contrary from the Founders and Gao "will not be considered to create a disputed issue of fact." *McTernan v. Haley & Aldrich, Inc.*, No. 945905, 1995 WL 1146823, at *2 (Mass. Super. Ct. 1995).  ConnectU's Rule 30(b)(6) testimony and interrogatory responses bind ConnectU for purposes of summary judgment, and nothing in Plaintiffs' new Declarations can change that fact.

### F. Summary Judgment Also Is Appropriate With Respect To Plaintiffs' Claims For Breach Of The Implied Covenant Of Good Faith And Fair Dealing And Promissory Estoppel

Plaintiffs do not offer any separate evidence to support their position that their promissory estoppel and breach of the implied covenant claims should survive when no contract existed. In contrast, Defendants have demonstrated that no enforceable agreement existed between the parties.  Thus, these additional claims also must be dismissed. *Chokel v. Genzyme Corp.*, 449 Mass. 272, 276 (2007) (claim for breach of implied covenant of good faith and fair dealing "'is only as broad as the contract that governs the particular relationship,'" "does not supply terms that the parties were free to negotiate, but did not," and does not "'create rights and duties not otherwise provided' for in the contract," quoting *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005) and *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004));  *Aretakis*, 2006 WL 1581781 at *7 (dismissing promissory estoppel claim where

underlying claim for breach of contract was rejected due to the purported oral contract being too indefinite); *Armstrong*, 349 F. Supp. 2d at 82 (same).

### III. CONCLUSION

Plaintiffs have not offered any evidence in support of their position that a "clear and definite" agreement was reached between the parties. As a result, they failed to identify the requisite triable issue of material fact. Defendants' Motion for Summary Judgment must be granted.

Dated: October 5, 2007            Respectfully submitted,

/s/ I. Neel Chatterjee /s/
G. Hopkins Guy, III*
I. Neel Chatterjee*
Monte Cooper*
Theresa A. Sutton*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:   (650) 614-7400
Facsimile:   (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
tsutton@orrick.com

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone:   (617) 526-9600
Facsimile:   (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

* Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 5, 2007.

Dated:  October 5, 2007.                                  Respectfully submitted,

                                                          /s/ I. Neel Chatterjee /s/
                                                            I. Neel Chatterjee