IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA, <br><br>     Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC, <br><br>     Defendants. | Civil Action No. 1:07-CV-10593-DPW |

**MARK ZUCKERBERG'S REPLY TO PLAINTIFFS' CONSOLIDATED OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     ARGUMENT.............................................................................................. 2

        A.      Shotgun Complaints May Be Dismissed ........................................... 2

        B.      The FAC Shows Plaintiffs Do Not Own The Rights To The Asserted
                Claims ............................................................................................... 3

                1.      Claims Have Not Been Assigned Under the Operating Agreement.......... 4

                2.      Plaintiffs' "Successor In Interest" Theory Is Without Merit.................... 4

                3.      Numerous Claims Are Nonassignable ..................................... 5

        C.      ConnectU's Breach Of Contract Claim Must Fail ............................. 7

                1.      The Purported Contract Was Too Vague To Be Enforceable ................. 7

                2.      The Court May Not Write The Contract For The Parties ........................ 8

                3.      Plaintiff Failed To Plead The Requisite Elements................................... 9

                4.      The Copyright Act Preempts The Breach Of Contract Claim................ 11

        D.      ConnectU's Claim For the Breach Of The Implied Covenant Of Good
                Faith and Fair Dealing Must Fail ...................................................... 11

        E.      ConnectU Does Not Demonstrate That The FAC Supports Its Promissory
                Estoppel Claim ................................................................................. 12

        F.      Plaintiffs Failed To Plead A Proper Fraud Claim ............................. 13

        G.      Mark Zuckerberg Did Not Owe Plaintiffs A Fiduciary Duty ............ 14

III.    CONCLUSION.......................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Accord Newman v. Commonwealth of Mass.*, 115 F.R.D. 341, 344 (D. Mass. 1987) ................ 2

*Atwood* v. *Humble Oil & Refining Co.*, 243 F.2d 885 (5th Cir. 1957)......................................... 2

*Clorox Co. P.R.* v. *Proctor & Gamble Comm'l Co.*, 228 F.3d 24 (1st Cir. 2000) ........................ 4

*Hutchins* v. *Zoll Medical Corp.*, 430 F. Supp. 2d 24 (D. Mass. 2006) ....................................... 8

*Incase Inc.* v. *Timex Corp.*, 488 F.3d 46 (1st Cir. 2007) ............................................................. 9

*Kuehl* v. *F.D.I.C.*, 8 F.3d 905 (1st Cir. 1993) ............................................................................. 3

*Martin* v. *Hunt*, 29 F.R.D. 14 (D. Mass. 1961)........................................................................... 3

*Mass. Cash Register, Inc.* v. *Comtrex Sys. Corp.*, 901 F. Supp. 404 (D. Mass. 1995) ............... 12

*McCoy* v. *Providence Journal*, 190 F.2d 760 (1st Cir. 1951)....................................................... 2

*McCree v. Pension Benefit Guar. Corp.*, No. 04 11334 (JLT), 2004 U.S. Dist. LEXIS
     26496 (D. Mass. 2004)...........................................................................................................11, 13

*In re Millivision, Inc.*, 328 B.R. 1 (Bankr. D. Mass. 2005) ......................................................... 8

*Moore v. La Z-Boy, Inc.*,
     No.07 CV 10708 (RGS), 2007 U.S. Dist. LEXIS 46304 (D. Mass. June 27, 2007)............... 7

*Neuhoff* v. *Marvin Lumber & Cedar Co.*, 370 F.3d 197 (1st Cir. 2004)...................................... 8

*Nevijel* v. *North Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981) ............................................ 2

*Newman* v. *Commonwealth of Mass.*, 115 F.R.D. 341 (D. Mass. 1987)...................................... 2

*Sherwood Forest* v. *Town of Becket*, 466 F. Supp. 2d 399 (D. Mass. 2006)................................ 3

*Thompson* v. *Ill. Dep't of Prof'l Regulation*, 300 F.3d 750 (7th Cir. 2002)...........................11, 13

## STATE CASES

*Bethlehem Fabricators, Inc.* v. *H.D. Watts Co.*, 286 Mass. 556 (1934) ....................................... 6

## TABLE OF AUTHORITIES
### (continued)

Page

*Brennan* v. *Employerss Liability Assurance Corp.*, 213 Mass. 365 (1913) .................................. 9

*Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Ass'n*, 211 Mass. 398 (1912) ......... 10

*Broomfield* v. *Kosow*, 349 Mass. 749 (1965).............................................................................. 15

*Cataldo Ambulance Serv.* v. *City of Chelsea*, 688 N.E.2d 959 (Mass. 1998) .......................13, 14

*Cataldo* v. *Zuckerman*, 20 Mass. App. Ct. 731 (1985) .................................................................. 9

*Central National-Gottesman, Inc.* v. *Rodman & Rodman, P.C.*,
   1998 WL. 1184176 (Mass. Super. Ct. 1998) .......................................................................... 6

*City of Haverhill* v. *George Brox, Inc.*, 47 Mass. App. Ct. 717 (1999) ........................................ 7

*Cygan* v. *Megathlin*, 326 Mass. 732 (1951)................................................................................... 9

*Delorafano* v. *Delafano*, 333 Mass. 684 (1956) ........................................................................... 9

*Fassihi* v. *Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*,
   107 Mich. App. 509 (1981)................................................................................................... 14

*Ferris* v. *Boston & M. R.R.*, 291 Mass. 529 (1935) ...................................................................... 9

*Harris* v. *Carter*, 147 Mass. 313 (1888) ...................................................................................... 9

*Hastings Assocs.* v. *Local 369 Bldg. Fund*, 42 Mass. App. Ct. 162 (1997) .................................. 9

*Held* v. *Zamparelli*, 13 Mass. App. Ct. 957 (1982)...................................................................... 9

*I & R Mech., Inc.* v. *Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452 (2004).................................... 10

*Jessie* v. *Boynton*, 361 N.E.2d 1267 (Mass. 1977)...................................................................... 14

*Lambert* v. *Fleet Nat'l Bank*, 865 N.E.2d 1091 (2007) .......................................................7, 8, 9

*Lee* v. *Mt. Ivy Press, L.P.*, 63 Mass. App. Ct. 538 (2005).......................................................... 11

*McMurtrie* v. *Guiler*, 183 Mass. 451 (1903) ............................................................................... 9

*Noble* v. *Joseph Burnett Co.*, 208 Mass. 75 (1911)...................................................................... 9

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Reed* v. *A. E. Little Co.*, 256 Mass. 442 (1926)......................................................15, 16

*Rhode Island Hosp. Trust Nat'l Bank* v. *Varadian*, 419 Mass. at 848 ...................12, 13

*Salois* v. *The Dime Savings Bank, No. Civ. A. 95 11967 (PBS)*, 1996 WL. 33370626 (D. Mass. 1996) ...................................................................................................... 15

*Shain Inv. Co.* v. *Cohen*, 15 Mass. App. Ct. 4 (1982)..........................................10, 14

*Silver* v. *Graves*, 210 Mass. 26 (1911) ...................................................................... 9

*Simons* v. *American Dry Ginger Ale Co.*, 335 Mass. 521 (1957)................................. 9

*Situation Mgmt. Sys.* v. *Malouf, Inc.*, 430 Mass. 875 (2000)....................................... 8

*Van Brode Group* v. *Bowditch & Dewey*, 36 Mass. App. Ct. 509 (1994)................... 15

*Whitcomb* v. *Converse*, 119 Mass. 38 (1875) .............................................................. 9

*Wilder* v. *Manley, No. CA924409H*, 1994 WL. 902879 (Mass. Super. Ct. Oct. 7, 1994) ......10, 14

*Winchester* v. *Glazier*, 152 Mass. 316 (1890).............................................................. 9

### DOCKETED CASES

*Lexington Sav. Bank* v. *Linnehan*, No. 96-2890, 1998 Mass. Super LEXIS 348 (Mass. Super. Ct. Feb. 9, 1998) ........................ 5

## I.    INTRODUCTION

This case should be dismissed with prejudice.  Rather than demonstrate that their claims had a sufficient factual basis to focus the case and move it forward, Plaintiffs chose to file a complaint encompassing more legal theories than a law school exam.  The Court and Defendants should not be required to sift through hundreds of pages of allegations and documents to figure out what the theory of this case is.  The Court indicated a desire to cull the complaint down to core theories.  Instead, Plaintiffs added parties, claims, argument, and superfluous "facts."  Plaintiffs offer no justification for their inappropriate shotgun pleading.  Indeed, they do not dispute that their complaint is a shotgun pleading.

Nevertheless, Plaintiffs ignore many of Zuckerberg's arguments demonstrating a pleading failure.  As such, the First, Second, Third, Fourth, Fifth, and Sixth claims for relief must be dismissed.  Plaintiffs concede that the rights were owned by a "partnership" and provide no particularized facts demonstrating a transfer of rights, to the extent rights were transferable.  Plaintiffs have failed to allege an enforceable contract or any of the essential terms for pleading a breach thereof.  If the breach of contract claim fails, so too must Plaintiffs' claims for the breach of the implied covenant of good faith and fair dealing and promissory estoppel.  Each of these claims relies on the existence of an enforceable promise.  Plaintiffs' fraud claim also fails as a matter of law.  Plaintiffs have not alleged facts showing that Zuckerberg made any misstatements, that he owed them a duty, or that they reasonably relied on them.  Indeed, the exhibits attached to the complaint show just the opposite.  Further, Plaintiffs offer no set of facts that could give rise to a special fiduciary relationship between the parties.  Their breach of fiduciary duty claim, therefore, also must fail.[1]

---

[1] Mark Zuckerberg also joins, and incorporates by reference herein, the Replies in support of the Motions to Dismiss brought by Defendants TheFacebook, LLC and Facebook, Inc., and Dustin Moskovitz and Andrew McCollum.

## II.    ARGUMENT

### A.    Shotgun Complaints May Be Dismissed

Plaintiffs have not provided a particularized pleading in support of the claims in this case but rather have chosen to file a shotgun First Amended Complaint ("FAC"). Long ago, the First Circuit authorized District Courts pursuant to Rule 8 to strike a pleading like the FAC that is "argumentative, prolix, redundant, and verbose," and which attaches as exhibits "lengthy letters and affidavits containing evidentiary matter, including purported statements made by some of the defendants," as well as legal argument. *McCoy v. Providence Journal*, 190 F.2d 760, 766 (1st Cir. 1951). *Accord Newman v. Commonwealth of Mass.*, 115 F.R.D. 341, 344 (D. Mass. 1987).

In their opposition, Plaintiffs do not contest any of the following: the FAC (1) is a shotgun complaint, (2) is verbose to confusing because of the pleading style, (3) purports to assert over 20 alternate theories, (4) required 85 corrections filed in a seven-page Errata, (5) includes over 50 cross references, (6) has numerous un-cited exhibits, (7) includes extensive irrelevant allegations and legal conclusions, and (8) includes 100 pages of over 300 allegations and 900 pages of exhibits. This complaint is pleading by obfuscation to preserve every contingency, and does not provide particularized facts with fair notice of the claims. It is purely speculative, and should be dismissed with prejudice. *McCoy*, 190 F.2d at 766. *See also Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint that fails to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to Rule 41(b)").

Plaintiffs attempt to repackage Zuckerberg's argument as contending the FAC is merely "long." *See* Plaintiffs' Consolidated Opposition, Dkt. No. 112 ("Consol. Opp'n") at 6. None of the cases cited by Plaintiffs addresses a situation such as the present one, and none of them addresses the fundamental problems with the FAC identified in Zuckerberg's opening brief, which are not limited to pleading "length." Indeed, the only appellate court case Plaintiffs cite concludes "[t]here may be cases in which mere verbosity or repetition would justify final dismissal by a trial court." *Atwood v. Humble Oil & Refining Co.*, 243 F. 2d 885, 889 (5th Cir. 1957). Moreover, plaintiffs nowhere address the fact that this Court ordered as part of its case

management powers that that the FAC provide particularized allegations, or risk dismissal. *See* 7/25/07 Hg. Tr., at 67:8-69:3. Failure to abide by such an order particularly warrants dismissal pursuant to Rule 8. *Kuehl v. F.D.I.C.*, 8 F.3d 905, 908 (1st Cir. 1993); *Sherwood Forest v. Town of Becket*, 466 F. Supp. 2d 399, 402 (D. Mass. 2006).

Under the well-established authority from the First, Third, Fifth, Seventh, Eighth, and Ninth Circuits cited in this and the opening brief, the FAC's shotgun pleading warrants dismissal. Plaintiffs do not challenge or even discuss any of this established case law. The FAC's length is only the start of the problem. The complexity, the number of parties, the number of claims, the complex errata, the extensive cross-referencing, the use of cited and un-cited exhibits, the use of irrelevant detail, the overwhelming number of alternate theories, and the failure of the plaintiffs to offer particularized facts in accordance with the Court's prior instructions make the FAC's pleading deficiencies considerably worse than any of the cases Plaintiffs cite. Zuckerberg requests that the Court follow well-established precedent rather than permit Plaintiffs to pursue its free-for-all effort to interfere with the defendants' business and lives through improper and speculative pleading. *Cf. Martin v. Hunt*, 29 F.R.D. 14, 16 (D. Mass. 1961).

**B.     The FAC Shows Plaintiffs Do Not Own The Rights To The Asserted Claims**

Plaintiffs concede "the Founders have alleged that the claims were originally owned by a partnership." Consol. Opp'n at 32. This concession is fatal to their First through Sixth claims, as the "partnership" is not a party to this case, and nothing indicates that any rights were transferred from the partnership to any plaintiff.[2] Claims asserted by ConnectU and the individuals "personally" should be dismissed on this basis. Further, Zuckerberg argued that (1) the challenged claims are not assigned under the 2005 Operating Agreement (the controlling allegation of assignment) and (2) certain claims are not assignable as a matter of law. Defendant Zuckerberg's Motion to Dismiss, Dkt. No. 107 ("Mot. to Dismiss") at 8-9. Plaintiffs provide

---

[2] Indeed, this concession may be fatal to all of Plaintiffs' claims.

essentially no response.

### 1.    Claims Have Not Been Assigned Under the Operating Agreement

The only allegation concerning transfer of any rights refers to the 2005 Operating Agreement as the source of the alleged claims.  FAC ¶ 5 and Ex. 1. As an exhibit to the FAC, it governs over the factual allegations.  *Clorox Co. P.R. v. Proctor & Gamble Comm'l Co.*, 228 F.3d 24, 33 (1st Cir. 2000).  In his moving papers, Zuckerberg described how the express language of the Operating Agreement limited what assets were assigned to ConnectU and identified who was transferring the rights.  *See* Mot. to Dismiss at 8-9.

The Operating Agreement makes no mention of a transfer from a partnership.  Instead, the Operating Agreement only purports to transfer from individuals and an unspecified "unincorporated proprietorship."  FAC, Ex. 1 at 21 § 13.5.  Plaintiffs identify no other instrument alleged to show a transfer from a partnership.  Even assuming a "partnership" transfer occurred, Zuckerberg's opening brief explained how the Operating Agreement set forth a very limited transfer of intellectual property under section 13.5.  Mot. to Dismiss at 8-9.  The asserted claims do not fall under the scope of this section 13.5.  Plaintiffs fail to explain how their Operating Agreement is different than what Zuckerberg described.  Indeed, in opposing Zuckerberg's motion, Plaintiffs do not ever refer to the Operating Agreement attached to the FAC, even though it controls allegations of assignment.  Such silence amounts to a concession that the Operating Agreement did not transfer the rights associated with these challenged claims.

### 2.    Plaintiffs' "Successor In Interest" Theory Is Without Merit

Instead of providing an explanation of the Operating Agreement, Plaintiffs offer an incorrect argument regarding "partnership reorganization," a concept not mentioned anywhere in the FAC.  Consol. Opp'n at 32.  The Operating Agreement provides for a limited asset transfer by its very terms.  FAC Ex. 1, § 13.5.  No allegation indicates that a "partnership reorganization" occurred.  Indeed, the Operating Agreement shows that the transfer was not the result of a reorganization but rather was simply a transfer of certain assets. *Id*. It is simply incorrect to suggest that ConnectU is a successor-in-interest to the so-called "partnership."

Further, Plaintiffs' argument concerning "reorganization" or "successor liability" is fundamentally the same as the earlier opposition and remains flawed. *Cf.* 5/7/07 Consol. Opp'n (Dkt. 34) at 26 with 9/21/07 Consol. Opp'n (Dkt. 112) at 31-32. Namely, ConnectU incorrectly relies upon *Lexington Sav. Bank v. Linnehan*, No. 96-2890, 1998 Mass. Super LEXIS 348 at *5 (Mass. Super. Ct. Feb. 9, 1998), to claim that ConnectU is a proper successor. In *Lexington*, the successor-in-interest asserted a claim for fraud against the seller bank's manager because it was directly affected by the fraud perpetrated by the manager. The seller's bank manager embezzled money from the seller's vaults and covered it up in the seller's balance sheets. As a direct result of the manager's fraud, the successor was induced to overpay on the purchase price for the acquisition of the seller bank based on the manager's misrepresentations on the seller's balance sheets. *Lexington* was not standing in the shoes of the seller bank to enforce its claim for fraud. Rather, it sued for fraud in its own right. *Lexington* is inapposite, and does not establish that Plaintiffs are entitled to rely on some unstated allegation of "partnership reorganization."

### 3.    Numerous Claims Are Nonassignable

Plaintiffs next incorrectly contend that the breach of contract, fraud, fiduciary duty, and unjust enrichment claims are assignable. Plaintiffs largely restate their previous arguments, which the Court questioned. 7/25/07 Hr'g Tr. at 38:1-2.

The breach of contract claim may not be assignable. Plaintiffs offer a general legal proposition that most contracts are assignable, but do not discuss (and thus concede) that personal services and partnership contracts are not assignable. The nature of the alleged contract is unclear – something Plaintiffs claim is acceptable "notice pleading." However, to the extent the alleged contract is a personal services contract or a partnership contract, neither is assignable.

A central tenet of the FAC is that Zuckerberg agreed to use his skill and expertise to write code for the so-called "partnership." *See* Consol. Opp'n at 14, citing FAC ¶¶ 49-52, 67-70, 72-78. Such an agreement is for personal services. Plaintiffs' only response is that Zuckerberg's position is "inapposite," although Plaintiffs don't state why. *Id.* at 32. In addition, Plaintiffs do not contest Zuckerberg's argument that partnership agreements are not assignable. *See* Mot. to

Dismiss at 9, fn 2.  If the breach of contract claim is premised on a partnership agreement, it should be dismissed because the current Plaintiffs cannot own the right as a matter of law. Rather, it is owned by the nonparty Harvard Connection partnership.

The fraud and breach of fiduciary duty claims also are non-assignable.  The cases upon which ConnectU relies to argue a contrary rule do not apply because they concern survivability, rather than the assignability, of tort claims.[3]  ConnectU's cases apply only in instances pertaining to the survival of a tort claim upon the death of a party to the action so that another can stand in the shoes of the deceased.  Consol. Opp'n at 33-34.  For example, *Central National-Gottesman, Inc. v. Rodman & Rodman, P.C.*, 1998 WL 1184176 (Mass. Super. Ct. 1998) involved "whether a statute partly abrogating the common-law rule against survival of actions, G.L.c. 228, 1, bars claims for negligence, fraud, indemnification triggered by wrongful conduct, and unfair and deceptive acts, G.L.c. 93A."  *Id.* at *1.  Remarkably, the Court found that "an action seeking mere damages for fraud abates upon the death of the party, as does an action for deceit," reflecting fraud claims don't even survive as torts.  *Id.* at *2.  In any event, Plaintiffs do not claim that the original rights holders are deceased or passed their rights on to others due to death. Indeed, all alleged breaches of fiduciary duty and fraud occurred before the formation of ConnectU LLC in April 2004, and are alleged to have existed only by virtue of Zuckerberg's purported relationship with the founders. These individuals are the living plaintiffs in this case. The fraud and breach of contract claims were non-assignable.

Finally, Plaintiffs erroneously argue that their unjust enrichment claim is quasi-contractual.  In fact, Plaintiffs allege that Zuckerberg gained an "unfair and unjust advantage" by "misleading the Founders and therefore ensuring that thefacebook.com was launched first." FAC ¶ 192.  This is not a contract-based theory.  Thus, it is not assignable.

---

[3] Plaintiffs also allege that the tort claims are assignable because they are based on injury to property.  Plaintiffs ignore that they are claiming injury to their business and personal interests. *See, e.g.,* FAC ¶¶ 86, 87, 94, 95, 147, 155, 159, 169.  A cause of action for a tort is assignable only when the damage is *solely* to specific property.  *Bethlehem Fabricators, Inc. v. H.D. Watts Co.*, 286 Mass. 556, 566 (1934).

### C.    ConnectU's Breach Of Contract Claim Must Fail

ConnectU erroneously contends that it adequately pled facts supporting its claim for breach of contract, whether the contract is one for personal services or a partnership/joint venture.[4]  Consol. Opp'n at 7.  In order to do so, however, ConnectU was required to allege "the existence of a contract, plaintiff's compliance with its terms, breach, and damages."  *Moore v. La Z-Boy, Inc.*, No.07 CV 10708 (RGS), 2007 U.S. Dist. LEXIS 46304, 3 (D. Mass. June 27, 2007).  The FAC does not meet this standard, and Plaintiffs' Opposition does not support a different conclusion.

### 1.    The Purported Contract Was Too Vague To Be Enforceable

ConnectU's allegations do not support the existence of a contract because the terms of the purported agreement were too vague.  *Lambert v. Fleet Nat'l Bank*, 865 N.E.2d 1091, 1096 (2007) (extreme vagueness indicates "no intent to be bound, and thus no agreement… .").  ConnectU erroneously argues that Zuckerberg's challenge to this claim only alleges a failure to adequately identify consideration for the alleged agreement.  Consol. Opp'n at 8.  While such a failure is significant, lack of consideration is only one weakness in ConnectU's claim.  The larger problem is one of formation, *i.e.*, the parties did not mutually assent to the key terms, such as their respective rights and obligations under the alleged agreement.  Such a failing renders the "contract" indefinite.  *City of Haverhill v. George Brox, Inc.*, 47 Mass. App. Ct. 717, 720 (1999) (valid contract includes "terms setting forth the rights and obligations of the parties.").

For instance, the "agreement" does not specify what Zuckerberg was obligated to do, other than to "complete" the website.  As demonstrated by the FAC exhibits and Zuckerberg's Motion to Dismiss, "completion" of the website was a moving target with no end in sight.  *See, e.g.*, FAC, Exs. 18, 20; Mot. to Dismiss at 12.  ConnectU provides no response to this argument.

The so-called agreement also did not specify a time frame.  The FAC provides no facts to indicate whether Zuckerberg was contractually obligated to work on the site until "completion"

---

[4] ConnectU does not address Zuckerberg's argument that the contract alleged appears to be one for personal services.  The arguments herein apply to any potential contract alleged in the FAC.

no matter how long it took or whether it interfered with his schoolwork. Similarly, the purported contract did not specify how long Zuckerberg was required to work on an unsuccessful site before he could avoid breaching for refusing to perform.

The alleged contract does not specify whether Zuckerberg would remain entitled to his "equal interest" if, in fact, the website was not successful, or how such "equal interest" was to be determined. Indeed, the founders told Zuckerberg they had no business model describing how the "project" would generate revenue, and that they did not plan to have one until after the site was up and running. FAC, Ex. 52 at HU000083.

The alleged agreement does not specify whether, upon breach, the founders were obligated to provide notice after which Zuckerberg would have an opportunity to cure the breach. Nor does it indicate in what ways Zuckerberg could enforce the agreement if the founders failed to perform.

Further, as ConnectU points out, the alleged consideration was not adequately defined. Indeed, exhibits to the FAC indicate that Zuckerberg "volunteered to work on the site" and that "his remuneration would be the prestige of being a part of a team."[5] FAC, Ex. 52 at HU000086.

Without these key terms, the alleged agreement is fatally indefinite and cannot be enforced. *Lambert v. Fleet Nat'l Bank*, 865 N.E.2d 1091 (2007). Anything short of agreement on these essential terms suggests only that the parties reached the "imperfect negotiation" regularly eschewed by courts. *Situation Mgmt. Sys. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000).

2.    **The Court May Not Write The Contract For The Parties**

ConnectU argues that the Court may provide the missing contract terms – essentially asking the Court to write the contract for them. "Having failed to identify the terms of this alleged contract, Plaintiff cannot rely on the Court to fill in the blanks." *Hutchins v. Zoll Medical Corp.*, 430 F. Supp. 2d 24, 34 (D. Mass. 2006). Additionally, the cases ConnectU cites

---

[5] "Prestige" is not valid consideration. *In re Millivision, Inc.*, 328 B.R. 1, 9 (Bankr. D. Mass. 2005) ("An agreement under which a party parts with no value is void for failure of consideration."); *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197 (1st Cir. 2004) (the "opportunity" to rehabilitate one's reputation is insufficient to make a promise binding).

are completely irrelevant to this matter as they involved scenarios where 1) an enforceable contract had been made (*Simons v. American Dry Ginger Ale Co.*, 335 Mass. 521 (1957); *Cygan v. Megathlin*, 326 Mass. 732 (1951); *Incase Inc. v. Timex Corp.*, 488 F.3d 46 (1st Cir. 2007); *McMurtrie v. Guiler*, 183 Mass. 451 (1903); *Whitcomb v. Converse*, 119 Mass. 38 (1875); *Delorafano v. Delafano*, 333 Mass. 684 (1956); *Noble v. Joseph Burnett Co.,* 208 Mass. 75 (1911); *Ferris v. Boston & M. R.R.*, 291 Mass. 529 (1935)); 2) one of the parties had performed and equity dictated that the court enforce the agreement (*McMurtrie*, 183 Mass. 451; *Silver v. Graves*, 210 Mass. 26 (1911); *Brennan v. Employerss Liability Assurance Corp.*, 213 Mass. 365 (1913)); 3) the parties had agreed to negotiate a term (usually a financial term) later, using a third party to assist when necessary. *Hastings Assocs. v. Local 369 Bldg. Fund,* 42 Mass. App. Ct. 162 (1997); or 4) a partnership agreement existed and practical construction after several years by partners required enforcement. *Harris v. Carter*, 147 Mass. 313 (1888); *Winchester v. Glazier,* 152 Mass. 316 (1890); *Cataldo v. Zuckerman*, 20 Mass. App. Ct. 731 (1985). These cases stand "for the unremarkable proposition that where a binding agreement has been established, it will not necessarily fail because of the indefiniteness of one or more terms, especially where one party has already performed." *Lambert*, 865 N.E.2d at 1096.

"In the present case, by contrast, not only does the extreme vagueness of the purported 'agreement' make its enforcement impossible,…it indicates that there was no intent to be bound, and thus no agreement, in the first place." *Lambert*, 865 N.E.2d at 1096, citing *Held v. Zamparelli*, 13 Mass. App. Ct. 957, 958 (1982) (citation in quote omitted). Like *Held* and *Lambert*, the contract at issue here is irretrievably vague.

### 3.     Plaintiff Failed To Plead The Requisite Elements

ConnectU's claim also fails because it did not allege facts supporting the basic elements of a contract. In its Opposition, ConnectU directs the Court to paragraphs 28, 29 and 56 as proof that it adequately pled an offer and consideration.[6] Consol. Opp'n at 2. Paragraphs 28 and 56

---

[6] Paragraph 29 says nothing about an offer or consideration. It simply says Zuckerberg had not yet conceived of a social network or developed a business plan when he volunteered to help the

say, in relevant part, only that the founders offered Zuckerberg "the opportunity to become their partner on the Harvard Connection development team …" (FAC ¶ 28) "which [Cameron] called a team member." FAC ¶ 56. These allegations do not demonstrate an offer of partnership or any other definite contractual relationship. Nor do these allegations evidence bargained-for consideration. Instead, they suggest that the founders offered Zuckerberg a potential opportunity in the future should their plan come to fruition. Such "[e]xpectations and negotiations fall far short of a binding agreement." *Brighton Packing Co. v. Butchers' Slaughtering & Melting Ass'n*, 211 Mass. 398 (1912) (citations omitted). Most telling is ConnectU's allegation that Zuckerberg understood "that he would obtain a beneficial interest in the website and share in the proceeds if and when the website was successful… ." FAC ¶ 33.

ConnectU's paragraphs 28 and 56 also fail to demonstrate that the founders offered Zuckerberg a partnership role. A valid, enforceable agreement requires a meeting of the minds "on the same proposition on the same terms at the same time." *I & R Mech., Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455 (2004). The FAC does not allege facts demonstrating the requisite mutual assent. Moreover, absent allegations that the parties agreed to share profits, losses, or management, a partnership agreement could not exist as a matter of law. *Shain Inv. Co. v. Cohen,* 15 Mass. App. Ct. 4, 8 (1982); *Wilder v. Manley*, No. CA924409H, 1994 WL 902879, at *4 (Mass. Super. Ct. Oct. 7, 1994) (finding oral partnership agreement too indefinite), *aff'd mem.*, 663 N.E.2d 587 (1996).

To support Zuckerberg's alleged acceptance, ConnectU cites to paragraph 56 of the FAC. As noted above, this paragraph only describes that Cameron asked Zuckerberg to be part of the "team," though the FAC is silent on what that term meant. Paragraph 56 fails to describe how Zuckerberg accepted any alleged offer made to him or what he said, if anything, when he allegedly did so.

ConnectU also failed to plead a breach of the contract allegedly made. Zuckerberg's

---

founders. FAC ¶ 29.

breach, under the terms outlined in the FAC, would mean he did not write code. The FAC contains no such facts. ConnectU cites to paragraphs 32, 34, 35, 37, 71, 74, 77, and 79 to support the alleged breach. These paragraphs suggest that Zuckerberg worked on the Facebook website at the same time he was writing code for the founders and did not inform them that he was doing so. The FAC does not allege that Zuckerberg was prohibited, under the purported contract, from working on other projects. He could not, therefore, breach the alleged contract by working on thefacebook.com. As the exhibits demonstrate, Zuckerberg did the work he said he would do. FAC, Exs. 14, 15, 85. ConnectU has not shown that Zuckerberg failed to write code for the website; indeed, the exhibits show he did. Where a plaintiff attaches documents to its complaint, "dismissal is appropriate if the document negates the claim." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (emphasis in original; internal quotes omitted), quoted by *McCree v. Pension Benefit Guar. Corp.*, No. 04 11334 (JLT), 2004 U.S. Dist. LEXIS 26496 at *9 n. 7 (D. Mass. 2004).

> **4.    The Copyright Act Preempts The Breach Of Contract Claim**

ConnectU contends that a breach of contract claim can never be preempted by the Copyright Act because such claims have an "extra element" – an element ConnectU does not identify. This is untrue. *See Lee v. Mt. Ivy Press, L.P.*, 63 Mass. App. Ct. 538, 551 (2005). In the proper circumstances, breach of contract claims are preempted. To the extent that the breach is based on a promise to refrain from taking one of the actions reserved exclusively to a copyright owner, such as the use and reproduction of the Harvard Connection code in a derivative form in facebook.com, the Copyright Act preempts this claim.

> **D.    ConnectU's Claim For the Breach Of The Implied Covenant Of Good Faith and Fair Dealing Must Fail**

Plaintiffs do not dispute that if their breach of contract claim fails, so too must the claims for breach of the implied covenant of good faith and fair dealing. Because there was no enforceable contract between the parties, this claim must be dismissed.

E.    **ConnectU Does Not Demonstrate That The FAC Supports Its Promissory Estoppel Claim**

Plaintiff relies on *Mass. Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404 (D. Mass. 1995), for the notion that it adequately pled its claim for promissory estoppel. Consol. Opp'n at 12. Plaintiff does not, however, address the requirement that " '[a]n essential element … is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation.' " *Id. Mass. Cash Register*, 901 F. Supp. at 420, quoting *Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. at 848. Instead, Plaintiff cites to conclusory allegations that underscore there is an absence of facts demonstrating an unambiguous promise (or reasonable reliance). Consol. Opp'n at 12-13.

The only "promise" Plaintiff refers to is Zuckerberg's "promise to complete the website." This statement, if made, is far from unambiguous. No facts suggest that "completion" was defined; the opposite is true. Thus, even if Zuckerberg agreed to "complete" the website, the promise was interminably ambiguous and could not support a claim for promissory estoppel. Plaintiff does not suggest how it could.

Furthermore, any suggestion that Plaintiff relied on the alleged "assurances" by Zuckerberg should be rejected. The "assurances" alleged in the FAC were conditioned by Zuckerberg's reminders to Plaintiffs that he was making his school work and other projects a priority. *E.g.* FAC, Ex. 22, 32, 52 at HU000081. As a result, the FAC is unclear as to what, exactly, Plaintiffs relied on.

Plaintiffs also incorrectly argue that Zuckerberg failed to address why the founders' reliance was unreasonable. The FAC includes the following allegations which, when read together, lead to the conclusion that reliance would have been unreasonable at the time:

- Cameron repeatedly stressed his desire to get the site up and running quickly, but that date continued to change, in large part due to Cameron's requests for additional functionality after the deadline. FAC, Exs. 18, 20, 24, 25, 46.

- At least two programmers hired before Zuckerberg stopped working for ConnectU's founders for various reasons, including that school work took priority. *Id.,* Ex. 52 at HU000076.

- "[A]s a result of the facemash.com debacle, the Harvard [AdBoard] placed Zuckerberg on disciplinary probation for improper social behavior …." *Id.,* ¶¶ 49-51.

- Within weeks of volunteering to help code the website, Zuckerberg began canceling meetings and refusing to meet altogether, because he was busy with school work. *Id.,* Exs. 22, 27, 30, 32, 33, 34, 35, 42, 43, 52 at HU000085-86.

- Zuckerberg told the founders that he had not done much work on the site and, in fact, had given it very little thought. *Id.,* Ex. 22.

- Zuckerberg refused to show the founders his work, despite their requests to see it. *Id.,* ¶ 111.

Plaintiffs' feigned reliance under these circumstances strains credibility. A "post hoc claim of reliance is not determinative, if the … record demonstrates that, at the critical time, [the plaintiff] could not have reasonably relied." *Cataldo Ambulance Serv. v. City of Chelsea*, 688 N.E.2d 959, 962 (Mass. 1998). The promissory estoppel claim fails.

### F.    Plaintiffs Failed To Plead A Proper Fraud Claim

Despite having attached 85 exhibits to the FAC, Plaintiffs fail to refer to a single one in their Opposition to support their fraud allegations – if only to dispute what Zuckerberg argued. As pointed out in Zuckerberg's opening brief, the parties' communications between November 2003 and January 2004 tell a story very different from the FAC. *Thompson*, 300 F.3d at 754; *McCree*, 2004 U.S. Dist. LEXIS 26496 at *9 n. 7.

Plaintiffs simply conclude (with no legal support) that reviewing the exhibits requires an inappropriate factual interpretation. Consol. Opp'n at 11. Notably, Plaintiffs do not disagree with Zuckerberg's contention that the exhibits demonstrate he made no fraudulent misrepresentations. Plaintiffs also do not dispute that Zuckerberg did what he said he would do or that he repeatedly mentioned that he was too busy to work on their project. They ignore these facts because they show that Zuckerberg made no fraudulent statements.

Plaintiffs then incorrectly argue that Zuckerberg did not explain why the founders' alleged reliance was unreasonable. Zuckerberg's opening brief described, in detail, why the

founders' reliance was unreasonable.[7]  Mot. to Dismiss at 15.  The exhibits to the FAC show that

Zuckerberg's description was accurate, and Plaintiffs do not dispute that it was.  As discussed

above, Plaintiffs may not now claim reliance was reasonable when the record shows that, at the

time, the parties could not have reasonably relied on Zuckerberg's statements or actions to their

detriment.  *Cataldo*, 688 N.E.2d at 962.

Plaintiffs also fail to identify any factual allegations that demonstrate Zuckerberg had a

duty to disclose that he was working on the Facebook website.  Plaintiffs simply refer to

paragraphs 165-67 of the FAC.  Consol. Opp'n at 12.  These paragraphs conclude that

Zuckerberg possessed a "special expertise" and the founders relied on him.  These are not facts

establishing that he owed a duty to the founders.  Plaintiffs cite to *Jessie v. Boynton*, 361 N.E.2d

1267 (Mass. 1977), to support this proposition.  *Jessie* involves a finding that directors of a close

corporation owe a fiduciary duty to its shareholders.  Such facts do not exist in this case.

### G.    Mark Zuckerberg Did Not Owe Plaintiffs A Fiduciary Duty

To establish a fiduciary duty, Plaintiffs erroneously contend that they adequately pled a

partnership or joint venture agreement.  Consol. Opp'n at 13-15.  Plaintiffs cite to paragraphs 30-

31, 57-58, 177, 248-49, 270-72 of the FAC.  Not one of these paragraphs evidences a meeting of

the minds.  At best, these allegations show what ConnectU's founders expected or thought.

These allegations also do not identify any agreement to share in the losses or profits of the

Harvard Connection endeavor, or that Zuckerberg would share in the management and control of

the enterprise.  These elements are required to establish a valid partnership/joint venture

agreement.  *Shain Inv. Co.*, 15 Mass. App. Ct. at 8; *Wilder*, 1994 WL 902879, at *4.

Plaintiffs also erroneously argue that, regardless of whether such an agreement exists,

Zuckerberg's "special expertise" gave rise to a fiduciary duty.  Consol. Opp'n at 14.  Tellingly,

the only case ConnectU relies on is a 1981 case from the Michigan Court of Appeals.  *See*

---

[7] Because both Fraud and Promissory Estoppel require a showing of reasonable reliance,
Zuckerberg included the argument in full in the promissory estoppel section and referred back to
it for the fraud section.

*Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler*, P.C., 107 Mich. App. 509 (1981).
*Fassihi* is not binding on this Court and, importantly, involves legal malpractice.  Zuckerberg
was a college sophomore at the time of the alleged breach.  He cannot be held to the fiduciary
standard of a licensed attorney in a privileged relationship.

 As Zuckerberg discussed in his opening brief, in order to be considered a fiduciary, he
must have knowingly accepted that duty.  Mot. to Dismiss at 19.  Plaintiffs' reliance on *Van
Brode Group v. Bowditch & Dewey*, 36 Mass. App. Ct. 509 (1994), to suggest otherwise is
inapposite.  *Van Brode Group* involved the duties of a professional architectural engineer – not a
college student. As with Plaintiffs' other arguments, the FAC does not support the proposition
that Zuckerberg knowingly undertook a fiduciary responsibility.[8]   At most, the FAC pleads that
Zuckerberg agreed to be "part of a team."

 Plaintiffs incorrectly argue that "Zuckerberg knew he had a special expertise … upon
which his partners relied."  Consol. Opp'n at 14.  "[T]he plaintiff alone, by reposing trust and
confidence in the defendant, cannot thereby transform a business relationship into one which is
fiduciary in nature."  *Broomfield v. Kosow*, 349 Mass. 749, 755 (1965).  The *Broomfield* court
noted that a fiduciary protects an "intimate relationship." The court further noted that such a
relationship is determined on a case-by-case basis because "the exact limits of the term 'fiduciary
relation' are difficult to ascertain, [and] equity refuses to bind itself by an all inclusive
definition." *Id.* at 756.  In *Broomfield,* like many cases in which courts put great emphasis on the
parties' longstanding dealings, the parties had a "close business relationship and business
friendship."  *Id.* at 757; *see also Reed v. A. E. Little Co.,* 256 Mass. 442 (1926); *cf.  Salois v. The
Dime Savings Bank*, No. Civ. A. 95 11967 (PBS), 1996 WL 33370626 (D. Mass. 1996) (in
absence of longstanding relationship, no fiduciary duty found).  Equally important to such a
finding is that the fiduciary knew he was being relied on and accepted that responsibility. *Id.*

 The facts of this case instruct that Zuckerberg was not a fiduciary.  Unlike the *Broomfield*

---

[8] Even if Zuckerberg volunteered to write code, which is presumably the responsibility he
undertook, he did not also necessarily agree to accept a fiduciary role, as Plaintiff suggests.

and *Reed* parties, Zuckerberg had no prior relationship with the founders and, in fact, barely knew them. Further, despite his having computer programming skills, his skills were not so specialized that the founders could not replace him if necessary. Indeed, at least two previous programmers had written code for Plaintiffs and, when the project no longer suited their needs, they stopped their work. Nothing in the FAC suggests that Zuckerberg should have been treated differently. Further, Plaintiffs do not plead facts showing that Zuckerberg, a 19-year-old college student, agreed to take on such a role.

III.    **CONCLUSION**

The Court and Defendants should not be required to figure out what claims and theories Plaintiffs are alleging, especially when they were given an opportunity to clarify the core claims. The FAC should be dismissed in its entirety. Alternatively, their First through Sixth claims must be dismissed for failure to state a claim on which relief can be granted.

Dated:  October 5, 2007.                    Respectfully submitted,


                                            /s/ I. Neel Chatterjee /s/
                                            _____
                                            G. Hopkins Guy, III*
                                            I. Neel Chatterjee*
                                            Monte Cooper*
                                            Theresa A. Sutton*
                                            ORRICK, HERRINGTON & SUTCLIFFE LLP
                                            1000 Marsh Road
                                            Menlo Park, California  94025
                                            Telephone:   (650) 614-7400
                                            Facsimile:    (650) 614-7401
                                            hopguy@orrick.com
                                            nchatterjee@orrick.com
                                            mcooper@orrick.com
                                            tsutton@orrick.com

                                            Steven M. Bauer
                                            Jeremy P. Oczek
                                            PROSKAUER ROSE, LLP
                                            One International Plaza, 14th Floor
                                            Boston, MA 02110-2600
                                            Telephone:    (617) 526-9600
                                            Facsimile:    (617) 526-9899
                                            sbauer@proskauer.com
                                            joczek@proskauer.com

                                            * Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 5, 2007.

Dated:  October 5, 2007.          Respectfully submitted,

                             /s/ I. Neel Chatterjee /s/
                                I. Neel Chatterjee