IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA, | Civil Action No. 1:07-CV-10593-DPW |
| Plaintiffs, | |
| v. | |
| FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC, | |
| Defendants. | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE DEMANDS IN PRAYER FOR RELIEF**

Dockets.Justia.com

## I.    <u>INTRODUCTION</u>

Defendants' motion to strike requests that the Court strike paragraphs H, I(1), and paragraphs 87, 94, 95, 102, 147, 159, 169, 261, 293, and 324 of the First Amended Complaint ("FAC").  The premise of the motion is simple: Plaintiffs' allegations do not identify the *res*, do not plead facts to support causation or traceability, and do not plead any substantive ground for constructive trust.  In response, Plaintiffs still have not identified allegations of a *res* that is connected to the prayer for relief, still do not show causation or tracing, and still do not identify a substantive basis for their demand.  Rather, they appear to rely on the "notice" pleading standard and engage in some sort of argument related to unauthorized use of code when launching Facebook.  In so doing, Plaintiffs ignore their own allegations and the law.  Indeed, Plaintiffs' argument asks the Court to ignore all reasonable inferences and enter the realm of implausibility and extreme speculation.  Such pleading is not appropriate under the Court's order or the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*.

## II.    <u>PLAINTIFFS DO NOT CONTEST THAT PRAYERS FOR UNAVAILABLE RELIEF SHOULD BE STRICKEN</u>

Plaintiffs assert that motions to strike are disfavored motions and should not be granted absent a gross violation of Rule 8.  Plaintiffs' Consolidated Opposition, Dkt. No. 112 ("Consol. Opp'n") at 37.  None of the cases cited by Plaintiffs, however, address prayers for relief that are not tethered in any meaningful way to the claims asserted.  Plaintiffs do not discuss any of the cases demonstrating that inappropriate prayers for relief should be stricken where unavailable as a matter of law.  In any event, the "shotgun" complaint approach taken by Plaintiffs is a violation of Rule 8, as explained in other briefing.

The only case cited by Plaintiffs discussing a prayer for relief is *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1161 (11th Cir. 1993). Consol. Opp'n at 37.  *Goldsmith*, a *pro se* case,

did not address whether striking a prayer for relief unrelated to the claims was appropriate. Rather, it addressed whether, for purposes of equitable tolling, the *pro se* plaintiff's demand constituted a prayer for relief under the requirements of Rule 8. The case is totally irrelevant to the issues presented.

## III.   PLAINTIFFS DO NOT ADEQUATELY PLEAD ANY BASIS FOR A CONSTRUCTIVE TRUST

### A.   Plaintiffs Have Failed to Plead a Trust *Res* or Causation

The FAC does not plead a traceable trust *res* nor causation. Plaintiffs' Opposition papers do not address this failing. In response to the authority establishing the requirements that there be an identifiable *res* for the trust to fasten upon and that the property over which the constructive trust is asserted be traceable to the *res* (*see* Defendants Motion to Strike, Dkt. No. 99 ("Mot. to Strike") at 4-6), Plaintiffs cite a passage from *Barry v. Covich*, 332 Mass. 338 (1955). The language Plaintiffs quote states simply that constructive trusts are available where confidential information has been used for a different purpose than that for which it was confided "to the gain of the one receiving the information and the detriment of the other." Consol. Opp'n at 38, *citing Barry*, 332 Mass. at 342 [*sic*, *see* 343]. Nothing in *Barry* suggests that the *res* requirement or the requirement of traceability does not exist. In *Barry*, there was an identifiable *res* (a parcel of land), and neither traceability nor causation were issues in the case. Moreover, two sentences prior, the Supreme Judicial Court stated the basic definition of a constructive trust as follows:

> A constructive trust may be said to be a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to ***the property*** was obtained by fraud or in violation of a fiduciary relation or where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.

*Id*. at 342 (emphasis added).  Thus, even where confidential information has allegedly been misused, there must be an identifiable *res* that was obtained thereby.  The *res* demanded in the prayer for relief is unconnected to any *res* identified in factual allegations except by a theory of causation that does not even rise to the level of speculation, much less plausibility.

Plaintiffs do not dispute the extensive case law Defendants have cited to establish the requirements of traceability and causation (Motion to Strike at 5-6), but rather, assert that they have adequately pled a relationship between the entire Facebook company and all its assets and the actions of Mark Zuckerberg.  A plaintiff is only entitled to that portion of the defendants' assets that are traceable and causally attributable to what was taken, and no more.  *See Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 557 (1997) ("DSM and Valley are entitled to receive all gains and profits that are attributable to the diversions of corporate assets and opportunities (including additional growth in assets arising from the reinvestment of company profits), but not the portions of the companies valuations of that have a different source");  *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 339-40 (1984) (if use of trade secret were not the sole reason for defendant's profits, then defendant's entire profits from sale of product based on trade secret "would not be a just measure of the restitution owed").  "This is a logical position: the objective in addressing unjust enrichment is to recover simply the amount derived from the wrongdoing."  *Demoulas*, 424 Mass. at 558.  Thus, for instance, "[w]here a corporate opportunity has been wrongfully diverted or a trade secret misappropriated, [Massachusetts Courts] have required the transgressor to repay only net profits, not the gross income from sales."  *Id.*

Plaintiffs can only claim a constructive trust over the Facebook company and all of its assets if they have pled facts which, if proved, would establish that the entire value of Facebook was proximately caused by the wrongdoing alleged in the complaint.  Plaintiff identifies no

allegations, however, that would support such relief. Consol. Opp'n at 38-39. Under Plaintiffs' apparent theory, the computer programming ability of Mark Zuckerberg and others, and the business decisions, marketing efforts, capital investments, hard work, etc., of more than 350 people who have built the company over a period of almost four years have not contributed any part of the value of the company. These elements of growth cannot, as a matter of law, be the source of recovery. *Demoulas*, 424 Mass. at 557. Plaintiffs' prayer does not even rise to the level of speculation, much less plausibility. *See, e.g., Marrero-Gutierrez v. Molina*, 491 F.3d 1 (1st Cir. 2007) (holding that where plaintiff was mocked in the workplace for her political affiliation and then demoted, allegations that her political affiliation motivated the demotion, were "insufficient … to create a causal link" even at the pleading stage, where "such a connection [was] one among a myriad of possible inferences," but remained speculative), *citing Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007).

### B.    Plaintiffs Have Failed to Plead Any Substantive Grounds for Constructive Trust

Plaintiffs' identification of confidential information as the substantive basis for its constructive trust prayer fails under the express terms of *Twombly*. Consol. Opp'n at 38. In all the 300-plus paragraphs of the FAC, there are only four conclusory allegations that Mark Zuckerberg was asked to keep anything confidential, or agreed to do so. Paragraph 31 is representative, and reads as follows:

> The Founders told Zuckerberg that the project and ideas were
> secret, and he agreed to keep them confidential. Zuckerberg also
> had an obligation to keep such ideas and information confidential.

FAC ¶ 31. *See also id.* ¶¶ 56, 158, 270. These allegations do not satisfy ordinary pleading requirements, much less the Court's requirement of particularized pleading. The Supreme Court held that "[a] conclusory allegation of ***agreement*** at some unidentified point does not supply

facts adequate to show illegality." *Twombly*, 127 S. Ct. at 1966 (emphasis added). Plaintiffs'

allegations generally suggest Zuckerberg was somehow told the project or ideas were secret, but

no time, place, means of communication, etc., or any other facts exist at all about what

Zuckerberg did or said – just that he "agreed." The meager allegations incorporate fact-free legal

conclusions ("Zuckerberg had an obligation…"), and do not meet the standard of *Twombly*, let

alone the Court's mandate from the earlier July 27, 2007 hearing of particularized pleading. *See*

7/27/07 Hg. Tr., at 67:8-69:3; 69:13-20. The FAC thus contains no proper allegation of misuse

of confidential information. Therefore, Plaintiffs have pled no substantive basis for a

constructive trust.[1]

## C.    Plaintiffs Failed Adequately to Plead Damages Equal to the Entire Value of Facebook.com

For the same reasons presented regarding causation, Plaintiffs have failed to plead

allegations that could plausibly support a prayer for damages equal to the entire value of

facebook.com. *Conway v. Electro Switch Corp.*, 402 Mass. 385, 388 (1988) ("damages may not

be determined by speculation or guess, must be causally related to the defendant's wrongdoing,

and the plaintiff should not be made more than whole") (citation omitted); *USM Corp.*, 392

Mass. at 339-40. Plaintiffs' have presented no meaningful response to the contrary.

## D.    Plaintiffs Have Admitted That an Injunction Shutting Down the Facebook Website Is Inappropriate and Have Failed to Adequately Plead that They Are Entitled to Such an Injunction

Plaintiffs provide no explanation as to why a request for an injunction shutting down

Facebook is appropriate. They merely state, in conclusory form, that they have pled sufficient

facts. Yet, just two weeks before they filed the FAC, Plaintiffs admitted an injunction was

---

[1] Although confidential information is the only basis for a constructive trust identified in the Opposition, it should be noted that, as set forth in the separate motion to dismiss papers, no fraud or fiduciary relation is alleged either. *See Barry*, 332 Mass. at 342.

unwarranted, assuring this Court they were *not* "trying to shut Facebook down." 7/25/07 Hrg. Tr. at 36:11-16, cited in Mot. to Strike at 2.  Nonetheless, Plaintiffs not only sought such an injunction in the FAC, but have defended that prayer in opposition to this motion.  Consol. Opp'n at 39.

As set forth in the opening brief, the FAC cannot support an injunction shutting down the Facebook website.  First, the demand for injunctive relief of that scope suffers from the same causation problems as the prayers for constructive trust and the entire value of Facebook. Second, injunctive relief is barred after the trade secret has become public knowledge —a point made in the opening brief and unanswered by Plaintiffs.  Mot. to Strike at 3, *citing B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 509 (9th Cir. 2006).  Plaintiffs disclosed their alleged trade secret by launching the ConnectU website in May 2004, three and a half years ago.  FAC ¶ 38.  Third, even if an injunction were warranted — it is not and never was — it could not have been permanent but would have been limited to three and a half months, the maximum amount of time it could have taken Defendants to independently develop the alleged trade secret, given that Plaintiffs launched the ConnectU website three and a half months after facebook.com came online.  FAC ¶ 38; *see General Elec. Co. v. Sung*, 843 F. Supp. 776, 780 (D. Mass. 1994).  The language Plaintiffs quote from *General Electric* on the policies behind trade secret injunctions does not contradict this holding, but rather underlines that this Court considers the duration limit as a means to achieve the goals of trade secret protection. Consol. Opp'n at 39. Plaintiffs' attempt to distinguish *Pino v. Protection Maritime Ins. Co., Ltd.*, 599 F.2d 10, 16 (1st Cir. 1979) suffers from the same defect.  Accordingly, Plaintiffs' demand for a preliminary and permanent injunction shutting down the facebook.com website is unavailable based on the allegations in the complaint and should be stricken.

IV.    **CONCLUSION**

For the reasons stated herein and in Defendants' opening Memorandum of Points and Authorities, Defendants' Motion to Strike Demands in Prayer for Relief should be granted.


Dated:  October 5, 2007.                    Respectfully submitted,


                                             /s/ I. Neel Chatterjee /s/
                                            _____
                                            G. Hopkins Guy, III*
                                            I. Neel Chatterjee*
                                            Monte Cooper*
                                            Theresa A. Sutton*
                                            ORRICK, HERRINGTON & SUTCLIFFE LLP
                                            1000 Marsh Road
                                            Menlo Park, California  94025
                                            Telephone:    (650) 614-7400
                                            Facsimile:     (650) 614-7401
                                            hopguy@orrick.com
                                            nchatterjee@orrick.com
                                            mcooper@orrick.com
                                            tsutton@orrick.com

                                            Steven M. Bauer
                                            Jeremy P. Oczek
                                            PROSKAUER ROSE, LLP
                                            One International Plaza, 14th Floor
                                            Boston, MA 02110-2600
                                            Telephone:    (617) 526-9600
                                            Facsimile:     (617) 526-9899
                                            sbauer@proskauer.com
                                            joczek@proskauer.com

                                            * Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 5, 2007.

Dated:  October 5, 2007.                    Respectfully submitted,

                                        /s/ I. Neel Chatterjee /s/
                                        _____
                                        I. Neel Chatterjee