Connectu, Inc. v. Facebook, Inc. et al Doc. 135 Att. 7

# EXHIBIT 7

Dockets.Justia.com



ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025
*tel* 650-614-7400
*fax* 650-614-7401
WWW.ORRICK.COM

July 2, 2007

I. Neel Chatterjee
(650) 614-7356
nchatterjee@orrick.com

***VIA FACSIMILE AND MAIL***

Margaret Esquenet
Finnegan, Henderson, Farabow, Garrett & Dunner
901 New York Avenue N.W.
Washington, DC 20001

Re: ConnectU v. Facebook, Case No. 07-10593 DPW

Dear Margaret:

This letter seeks to initiate a meet and confer with respect to ConnectU's deficient responses to Facebook's document requests. We hope to avoid needless motions practice and view our effort as an attempt to ensure that the parties are engaging in good faith efforts to resolve their disputes. We also believe that many of these disputes can be resolved if ConnectU agrees to a keyword based search of electronic data, as suggested in prior correspondence. Facebook is currently going through an enormous effort to produce responsive documents. If we cannot agree on the issues set forth herein, Facebook will move to compel. Our hope is that ConnectU will engage in good faith efforts to resolve our discovery disputes without court intervention.

**A.** Supplementation of Document Production

We request that ConnectU supplement its production forthwith with any documents responsive to document requests. Please let us know if ConnectU intends to produce responsive documents or refuses to engage in a search for supplemental documentation. Further, we would like confirmation that *all* electronic data has been searched for responsive information, including but not limited to .doc files, .xls files, .pst files, emails, instant messages, html files, temporary log files, deleted files, and the various forms of electronic media (such as USB drives, remote storage, and disk drives). We expect that, to the extent you have not searched for such information, you do so immediately. From the production of third parties, it is clear that ConnectU has not produced extensive documentation from these sorts of files, as third parties have produced documents that originated from ConnectU but were not produced. We also expect that you will identify the custodians whose materials you searched, as we believe that ConnectU is taking an unreasonably narrow view as to what materials are within its custody or control.

Production of documents responsive to Facebook's Second Set of Requests for Production is warranted. In its General Objection Number 4 to Facebook's Second Set of


Requests for Production, served June 19, 2007, ConnectU objected to producing any documents other than those related to diversity, until the Court ruled on the then-pending Motion to Dismiss. The Court has ruled. ConnectU, Inc. filed a new action after acquiring ConnectU LLC. The objection is moot. ConnectU should supplement as it promised in its responses.

**B.** Boilerplate Objections to Second Set of Requests

ConnectU objected to virtually every Request for Production in the Second Set of Requests on the basis that the request "is overbroad and unduly burdensome as it seeks 'all documents' and fails to identify the requested documents with reasonable particularity." Please confirm that no documents are being withheld on this boilerplate objection, or explain what further "particularity" is necessary for ConnectU to respond to each specific request.

ConnectU also has objected to many of the requests (*e.g.* Nos. 33, 52, 56, 57, 58, 59, 67-69, 72, 75, 78-87, 89, 91, 97-101, 103, 108-114, 117-120, 126-128, 131(a), 131(b), 132-133, 136-141, 142(a), 148, and 150) on the ground that they allegedly seek information that is "not relevant" to the issues in the case and are not reasonably calculated to lead to the discovery of admissible evidence. Ironically, many of these Requests mirror precisely those which ConnectU served on Facebook. If ConnectU is withholding production of documents in response to these requests on the basis of relevance, please specify what documents are being produced, and what documents are not. For withheld documents, we expect a log reflecting as much.

**C.** Specific Requests for Production

1. First Set of Requests for Production

<u>Request Nos. 2, 4, 6</u>

These requests require all versions of the source code, including revisions, in electronic format for the ConnectU website since its inception, as well as all documents relating to database structures for the ConnectU website since it launched. ConnectU agreed to produce the source code. Documentation has been produced recently that suggests that the later versions of the ConnectU source code and database structures that were hosted by iMarc and PNS were not produced, as promised. Please produce all versions of the ConnectU source code, as well as documents pertaining to associated database structures. If any versions are no longer available, please state as much.

<u>Request Nos. 22-23</u>

This request seeks documents relating to any analyses or views regarding similarities or comparisons between either the ConnectU website and thefacebook website, or the Harvard


ORRICK

Connection website and thefacebook website. ConnectU has never produced such documentation, claiming it is premature and subject to expert testimony. If ConnectU has such information, the documentation is highly relevant and Facebook is entitled to production. If ConnectU has analyzed and/or compared the similarities of the websites, Facebook is entitled to the information and it should be produced immediately. *See also* Request Nos. 142(b), 143(b), 144, 145(a), *infra*.

2. Second Set of Requests for Production

Request Nos. 36-39, 42, 44, 46, 47, 48, 49, 50, 53

ConnectU has lodged a somewhat general objection that many responsive documents are not within the custody or control of ConnectU. Although each of these requests seek information directed to the averments that were specifically referenced in Paragraphs 17, 19, 21, 23, 29, 32, 35, 37, 38, 39, 40, 41, 43, 43-, 44, 45, 51, 59, 61, 65, 67, 69, 71, 76 of ConnectU's Amended Complaint in the earlier action, ConnectU objects in part to each request because it allegedly "calls for documents in the possession, custody or control of third parties unrelated to ConnectU." ConnectU also has an obligation to produce any information within its custody or control. Please confirm that all responsive documentation has been produced. Please identify the third parties being referenced in this response. For instance, what third parties possess relevant information concerning the "agreement" by Zuckerberg to develop the Harvard Connection Code referenced in paragraph 17 of the Amended Complaint, and requested by Request No. 36. If you are referring to anyone who did work for ConnectU, the Winklevoss twins, or Narendra, please so specify. Any such documentation would be within the custody and/or control of ConnectU, and ConnectU has an obligation to obtain such information.

Request Nos. 41, 46, 47, 51, 52, 53, 88

ConnectU has lodged a somewhat general obligation challenging the definitions of certain words. In each of these Requests, ConnectU objects to the extent it calls for a legal conclusion as to what is a "derivative work" or what is a "contract." To the extent that ConnectU is withholding documents on the basis of these objections, please identify the definitions ConnectU employed for "derivative work" and "contract" when responding to the requests.

Request Nos. 44, 73, 87, 88, 92, 93, 101, 118, 150, 151

ConnectU objected to each of these requests on the basis that it is vague as it is uncertain what is meant by the following expressions: "the 'existence' and 'value'" (No. 44); "related to business, financial and marketing planning and budgeting" (No. 73); "correspondence between advertisers" (No. 87); "distribution," "marketing" or "systems" (No. 88); "research and development" (No. 92); "research and development costs" (No. 93); "products" (No. 101); "use


of ... the Facebook website" (No. 118); "by himself" (No. 150); and "citizenship" (No. 151). I note that many of these are the same terms that ConnectU is using in its document requests. Please explain what specifically is vague about the expressions so that Facebook can attempt to further specify the relevant scope of requested information.

Request No. 47

ConnectU objects in part to Request No. 47 on the basis that it is "duplicative of other requests, particularly Request for Production No. 46." Request No. 46 called for all contracts Zuckerberg allegedly entered into that were specifically referenced in Paragraphs 38-45 of the Amended Complaint in the dismissed action. Request No. 47 refers to documents evidencing contract negotiations with Zuckerberg, in addition to contracts, that were specifically referenced in Paragraphs 38-45. Please verify that you searched for and produced all documents relevant to both Requests.

Request No. 55

This requests seeks documents relating to the averments and denials to Facebook's counterclaim. ConnectU objects in part to the request on the basis that it is "compound." This is not a proper objection to a Request for Production. Please verify that no documents are being withheld on the basis of this objection.

Request Nos. 56, 58-59

These requests call for documents "reflecting the present value of ConnectU and connectu.com," as well as the value of investments and loans in, and the identity of owners of, ConnectU. We understand that ConnectU claims to have obtained funding from a hedge fund. No such documents have been produced. Notably, ConnectU objects in part to each of these requests on the basis that they allegedly seek information not relevant to the issues in the case. Given that the requests seek precisely the same information that ConnectU has vigorously sought from Facebook, ostensibly for damages purposes, these objection are without merit. Please verify that all responsive documents are being produced.

Request No. 57

This request seeks information related to communications between members and representatives of ConnectU and John Cassidy, the author of the May 17, 2006 *New Yorker* article "Me Media." Although members of ConnectU are quoted in the article concerning Facebook, ConnectU refuses to produce documents. ConnectU argues the information is not relevant to issues in the case and is not reasonably calculated to lead to the discovery of admissible evidence. To the


extent that ConnectU members made documented statements concerning Facebook or the lawsuit, or others made documented statements on their behalf, the information is relevant and should be produced. Moreover, ConnectU indicated previously that it would produce documents responsive to Facebook's Request No. 26, which called for documents relating to any communications to any media regarding HarvardConnection, ConnectU, TheFacebook, or this lawsuit.

Request Nos. 60-64

ConnectU objects in part to these requests, which seek for the period August, 2003 through the present each of the following: (1) the identity of each college at which Harvard Connection or ConnectU has been operational or available; (2) the number of persons registered to use the Harvard Connection and ConnectU sites; (3) the number of hits per day at those sites; and (4) the fixed and variable costs of ConnectU. ConnectU claims the information is irrelevant because the requests seek "documents prior to the launch of connectu.com." It is unclear why any of the requests would be objectionable simply because the range of dates includes dates prior to May, 2004. Please verify that no documents are being withheld on the basis of this objection, or clarify why statistical and cost information concerning ConnectU/Harvard Connection prior to May, 2004 somehow is "irrelevant." Once again, we note that ConnectU has asked for the same information from Facebook.

Request No. 65

This Request seeks information relating to or reflecting contributions to ConnectU by any entity associated with members of ConnectU, including (for instance) the Winklevoss Group, Winklevoss & Associates, Winklevoss Consultants, etc. ConnectU refuses to produce any such information. Inasmuch as discovery associated with the jurisdictional issues in the case revealed an account to pay for ConnectU expenses is set up at RowAmerica LLC, and many communications on behalf of ConnectU occur on Winklevoss Consultants letterhead, Facebook believes documents associated with this Request must be produced.

Request No. 66

This request seeks documents reflecting what damages each "Defendant" has suffered, and all documents that reflect mitigation of damages. Citing the reference to "Defendants," ConnectU refuses to produce, claiming the information is in the possession of the Facebook and its founders. However, the reference to mitigation of damages "by you" can only be understood to be referring to ConnectU, such that "Defendants" refers to counterclaim defendants – e.g., ConnectU and its members. Please supplement your responses.


Request Nos. 67-68, 119-120

These requests demand all documents, including the software, for the programs "Social Butterfly", "Importer" and "Facebook Importer." We are aware that some of this information recently has been produced in the California action by Pacific Northwest Software. However, executable copies of the software have not been produced by any party, nor have the logs reflecting imports and numbers of solicitations been produced. Such documentation is relevant to damages in the Massachusetts action, insofar as it shows how many Facebook users, hi5 users, Friendster users, and myspace users were invited to join ConnectU, but nonetheless did not elect to shift allegiances – presumably due to the inferiority of the site. The information also is relevant to Facebook's unclean hands defense, and Facebook's arguments that it has been copied by ConnectU, rather than the other way around. Supplementation is required.

Request No. 72

This request seeks all documents relating to disclosures by Divya Narendra prior to February 28, 2004 of the subject of the development of Harvard Connection. It identifies specific individuals who ConnectU already conceded were told of Harvard Connection. However, ConnectU objects in part to the Request as "not reasonably calculated to lead to the discovery of admissible evidence, particularly in the fact that it seeks documents relating to communications with persons not at all involved with this case." Since the communications involve the alleged "trade secrets" of ConnectU and may or may not specify whether such information is confidential, they are among the most highly relevant documents. If ConnectU is withholding any documents in response to this Request, please identify them with specificity.

Request No. 79

This request seeks information related to ConnectU's intangible assets and proprietary items. ConnectU states that it only will produce "proprietary items relevant to this case." This statement must be clarified, so that Facebook can understand what proprietary items ConnectU does not deem to be relevant to the case, and why. ConnectU cannot engage in such a selective disclosure. It must clearly specify the types of materials it is producing and what types it is not rather than recite a subjective opinion as to what it deems appropriate.

Request No. 96

ConnectU objects to Request No. 96, which generically refers to all documents concerning market share information, as being "duplicative of other requests, particularly Request for Production No. 95," which concerns ConnectU's evaluations of its own market share. This is an improper objection. The requests are independent of one another. To the extent that there may


be some overlap between the two, that is immaterial to the requirement that the documents be produced. Please confirm that no documents are being withheld on the basis of this objection.

Request No. 103

This Request seeks documents "identifying all [ConnectU] customers." ConnectU refuses to produce any documents ostensibly because the information is irrelevant. However, the information is relevant to damages, and particularly the efforts of ConnectU (if any) to mitigate its damages. Moreover, the information is relevant to identify ConnectU's sales channels, and its contacts in the social network industry. Accordingly, no documents should be withheld.

Request Nos. 108-110

These Requests identify a number of individuals whose connection to ConnectU/Harvard Connection already has been established through other discovery, and ask for all documents between that individual and anyone associated with ConnectU insofar as they relate to or refer to Harvard Connection, www.connectu.com, and/or the Facebook. ConnectU objects in part that the requests seek information not relevant to this issues in the case. Since it is indisputable that the individuals possess relevant knowledge, if there is any individual whose communications and/or documents are being withheld, please identify who and why.

Request Nos. 111-114

These Requests identify a number of individuals whose connection to ConnectU/Harvard Connection already has been established through other discovery, and asks for all documents between that individual and each of Tyler Winklevoss, Cameron Winklevoss, Divya Narendra, and Howard Winklevoss, to the extent the documents relate to the creation, development, functionality, copyright protection of, or confidentiality of features of ConnectU/Harvard Connection. ConnectU objects in part that the requests seek information not relevant to the issues in the case, and because the Requests allegedly are duplicative of others. Since it is indisputable that the individuals possess relevant knowledge, and because the information sought relates specifically to the core of ConnectU's legal claims, if there is any individual whose communications and/or documents are being withheld, please identify who and why. As previously noted, even if the subject matter of requests overlap to a degree, that is not a proper basis to object or withhold information.

Request Nos. 116

Request No. 116 requests all documents in the possession, custody or control of any member of ConnectU (including Cameron, Tyler and Howard Winklevoss, as well as Divya Narendra), "that relates in any way to the subject matter of this lawsuit." ConnectU claims the request is

overbroad and refuses to produce. ConnectU cannot claim it fails to appreciate its own or Defendants' positions in the lawsuit. ConnectU has an affirmative duty to locate and produce all documents responsive to Request No. 116.

Request No. 117

Request No. 117 seeks an electronic image of the computer hard drives used by any member, agent or employee or consultant to ConnectU, "to the extent that computer was used to communicate regarding or reflects the creation or development of the Harvard Connection software and website, or any software reflecting the creation, development and operation of the ConnectU website, the Social Butterfly program, or the Facebook Importer program." ConnectU refuses to produce such information, even though it demands precisely the same mirror imaging from Facebook. Since ConnectU has never produced the Harvard Connection code in electronic or paper form as it was allegedly produced to Mark Zuckerberg (and instead only has produced code that was "re-constructed" after February, 2004), and further given the fact that Winston Williams recently testified that he lost his computer with the Importer/Social Butterfly code following service of this request (despite the fact the information is relevant to damages), Facebook is entitled to the mirror images requested to the same degree that ConnectU believes it is entitled to such imaging. Alternatively, we request that ConnectU engage in the same sort of substantial effort of code recovery that it has demanded of Facebook.

Request No. 118

This request seeks all documents reflecting the use by ConnectU and its members, employees, agents and consultants of the Facebook website, as well attempts to access the Facebook website by the relevant individuals. Such information is highly relevant to damages, and is discoverable to the extent it can help determine what information clearly was not "original" to ConnectU for copyright and/or trade secret purposes. The information also is relevant to Facebook's unclean hands defense, to the extent that ConnectU employed improper "self-help" measures in violation of Facebook's terms of service in order to try and obtain registered users.

Request Nos. 121

This Request seeks all documents tending to support any allegations or claims set forth in the Complaint, Amended Complaint, the Counterclaims, and the Reply to Counterclaims. ConnectU objects in part that the request is overbroad to the extent it seeks documents which support "the factual bases of all claims." ConnectU cannot argue that it fails to appreciate its own or Defendants' positions in the lawsuit. ConnectU has an affirmative duty to locate and produce all documents responsive to Request No. 121.

Request Nos. 123

This Request seeks all documents "relating to the subject matter of this lawsuit," including all documents not previously produced and/or "responsive documents generated since Defendants initially responded." ConnectU objects in part that request is overbroad to the extent the request seeks "all documents relating to the subject matter of this lawsuit." ConnectU cannot argue that it fails to appreciate its own or Defendants' positions in the lawsuit. ConnectU has an affirmative duty to locate and produce all documents responsive to Request No. 123, especially since it demands all relevant documents not previously produced, and/or which were generated after the lawsuit began.

Request No. 126-128

This Request seeks all documents relating to Harvard Connection, the Facebook, and/or www.connectu.com for which any member, agent, employee or consultant received or possesses a copy of the document. ConnectU objects in part that the information is not relevant, "because it requests documents which are outside the scope of this case." Any document relating to Harvard Connection and Facebook to the extent it was generated by ConnectU and/or its members, agents, employees, etc. is relevant to the case, especially for liability, for support of defenses, and for damages. Documents related to ConnectU also fall into that category, and are calculated to lead to the discovery of admissible evidence. Accordingly, if ConnectU is withholding documents responsive to these requests, or has not searched for the documents requested, it must identify what specific types of documents it deems irrelevant, and why ConnectU deems them to be irrelevant.

Request No. 131(a)

This request seeks information related to the operational costs for management of the www.connectu.com website, including documents related to the amount of memory used to operate the site. ConnectU objects in part because it claims the information is irrelevant. However, the information is relevant to damages, and particularly what efforts ConnectU made to mitigate its damages by adequately hosting its site. Accordingly, no documents should be withheld on the basis of relevance.

Request No. 131(b)

This Request seeks documents sufficient to identify each email account used by any member of Harvard Connection or ConnectU from January 1, 2003 through the present. ConnectU objects that personal email addresses are outside scope of this case, and are irrelevant. ConnectU states that it will "limit its response to email addresses that were associated with the business management of ConnectU." However, given that relevant information concerning Mark


ORRICK

Zuckerberg, the Facebook, etc. apparently was exchanged by email from personal email accounts of ConnectU members, and also (for instance) by their private instant messaging services such as AIM, the identity of all email accounts is highly relevant and is calculated to lead to the discovery of admissible evidence. No documents should be withheld. Moreover, ConnectU should not limit its response unless it actually searches the personal email accounts of the members to determine that no relevant information exists from those sources.

Request Nos. 132-133

Request Nos. 132-133 seek documents sufficient to identify each user account that was used by any member of ConnectU to access the Facebook website, or the user accounts of anyone else who was directed by or asked by a ConnectU member to access the Facebook website. ConnectU refuses to produce documents, claiming that the information is irrelevant. However, the information is highly relevant to the issues of to how ConnectU monitored Facebook, what steps it took to compete with Facebook, to what extent ConnectU's website incorporates features that were original to Facebook rather than Harvard Connection, and also to Facebook's unclean hands defense if any of such accesses were in violation of Facebook's terms of service. Therefore, no information responsive to these Requests should be withheld.

Request Nos. 136-141

Request Nos. 136-141 seeks documents related to efforts by ConnectU to locate all computers in the custody and control of ConnectU, or within the custody and control of ConnectU's agents and its hosting services, that possess either the Harvard Connection or ConnectU source code, whether corrupted or otherwise. The requests also seek documentation associated with ConnectU's efforts to locate and preserve electronic information, including software and all electronic communications. ConnectU refuses to produce documentation responsive to any of these Requests, claiming they are irrelevant. However, no copy of the Harvard Connection code as it supposedly existed when given to Mark Zuckerberg has ever been produced, and the only original Harvard Connection code produced to date that pre-dates December 31, 2003 is that which was produced by Joe Jackson. Meanwhile, it recently was revealed in the California action that both PNS and iMarc possessed copies at different times of ConnectU's code, and Winston Williams also possessed a copy of the ConnectU code on his Sony Vaio computer at the time this request was served. However, Williams' copy was not preserved and the computer was lost. It is not clear if ConnectU has ever produced the code that was hosted by iMarc and/or PNS. Numerous communications from Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, and Howard Winklelvoss concerning ConnectU and Facebook have been produced by third parties, but have never been produced independently by ConnectU. Accordingly, the information sought by Request Nos. 136 and 137 is highly relevant – especially in light of


ORRICK

ConnectU's own arguments concerning document preservation – and hence the documentation should be produced.

Request Nos. 137-138, 142(b)

In the case of Requests Nos. 137-138, and 142(b), ConnectU also objects because the information described "might relate" to the subject matter of the lawsuit. Facebook is surprised that ConnectU has raised this standard as an objection, since it has aggressively argued both to counsel for Facebook and to the Court that if information "might" relate to the subject matter of the lawsuit, it is relevant for purposes of discovery. If ConnectU has now changed its position, Facebook and the Court both are entitled to know this fact.

Request Nos. 142(a), 143(b)

Request Nos. 142(a) and 143(b) require production of all documents reflecting ConnectU's own efforts to make mirror images of and search for any source code or software for Harvard Connection and/or ConnectU. The requests seek precisely the same information ConnectU has demanded from Facebook, and yet ConnectU refuses to produce any responsive documentation, claiming it is irrelevant and is privileged. Given the explanation for the relevance of the documentation responsive to Requests Nos. 136-141, *supra*, Facebook is entitled to this information to the same extent ConnectU claims it is entitled to forensic imaging by Facebook or an independent expert. Moreover, Facebook is entitled to evidence that ConnectU has forensically has searched its own electronic devices for relevant information precisely in the same way it claims in its own pleadings Facebook should search for materials.

Request Nos. 142(b), 143(b), 144, 145(a)

These requests seek documentation reflecting what portions of the Harvard Connection source code ConnectU alleges was copied for purposes of the copyright claim, all documents referring to such copying, and documents reflecting ConnectU actually attempted to compare specific portions of the Harvard Connection code to features of Facebook prior to initiation of the lawsuit (including a good faith investigation of the copyright claim). ConnectU refuses to produce any such information, claiming it is entirely within the custody and control of Facebook, and is privileged. These objections do not warrant the refusal to produce the information. If ConnectU has documents showing the Harvard Connection code has been copied, it must produce them.

Request No. 150

This request seeks documents evidencing all communications by any member of ConnectU to third parties concerning Facebook and/or the subject of the lawsuit. ConnectU objects in part because it claims the information is irrelevant to the extent the communications were made to


family members or friends. However, at the time these requests were served, Facebook had asserted counterclaims for libel/slander. Accordingly, all communications on the subject of Facebook and the lawsuit are relevant, even if made to family members or friends.

I hope we can satisfactorily avoid the need for further Court intervention on these issues. If you have any questions, please do not hesitate to call me.

Very truly yours,

I. Neel Chatterjee

INC/knm

cc: Daniel K. Hampton, Esq.
Robert B. Hawk, Esq.
Annette Hurst, Esq.
Gordon P. Katz, Esq.
Daniel P. Kaufman, Esq.
Daniel P. Tighe, Esq.
Scott McConchie, Esq.
John Hornick, Esq.
Meredith Schoenfeld, Esq.
Steven Bauer, Esq.
Jeremy Oczek, Esq.