# EXHIBIT 25

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

     CONNECTU, INC.              .   CIVIL ACTION NO. 07-10593-DPW
       Plaintiff                 .
                                 .
     V.                          .   BOSTON, MASSACHUSETTS
                                 .   SEPTEMBER 13, 2007
     FACEBOOK, INC., et al       .
       Defendants                .
     . . . . . . . . . . . . .

                    TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE ROBERT B. COLLINGS
                UNITED STATES MAGISTRATE JUDGE

     APPEARANCES:

     For the plaintiffs:    John F. Hornick, Esquire
                            Meredith H. Schoenfeld, Esquire
                            Finnegan, Henderson, Farabow,
                            Garrett & Dunner, LLP
                            901 New York Avenue, NW
                            Washington, DC  20001
                            202-408-4000
                            john.hornick@finnegan.com

                            Daniel P. Tighe, Esquire
                            Griesinger, Tighe & Maffei, LLP
                            176 Federal Street
                            Boston, MA  02110
                            617-542-9900
                            dtighe@gtmllp.com

     For the defendants:    I. Neel Chatterjee, Esquire
                            Orrick, Herrington & Sutcliffe,
                              LLP
                            1000 Marsh Road
                            Menlo Park, CA  94025
                            650-614-7400
                            nchatterjee@orrick.com
```

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

```
                         Jeremy P. Oczek, Esquire
                         Steven M. Bauer, Esquire
                         Proskauer Rose, LLP
                         One International Place
                         22nd Floor
                         Boston, MA  02110
                         617-526-9700
                         sbauer@proskauer.com

For Edward Saverin:      Nathan E. Shafroth, Esquire
                         Heller Ehrman, LLP
                         333 Bush Street
                         San Francisco, CA  94101-2878
                         Nathan.shafroth@hellerehrman.com

                         Daniel K. Hampton, Esquire
                         Holland & Knight, LLP
                         10 St. James Avenue
                         Boston, MA  02116
                         Dan.hampton@hklaw.com
```

Court Reporter:

Proceedings recorded by digital sound recording, transcript produced by transcription service.

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

26

1  we going to be able to find out if they violate some of these
2  things if we don't, if we're not allowed to pre-specify what it
3  is they're looking for.
4        MR. HORNICK:  Your Honor, may I address--
5        THE COURT:  No.  I'm not sure he's done.
6        MR. HORNICK:  Sorry.
7        THE COURT:  Are you done, Mr. Chatterjee?
8        MR. CHATTERJEE:  So those are fundamentally the
9  issues.  I mean, just to point out kind of the key language in
10 paragraph or paragraph 5.  I can talk about them separately but
11 paragraph 5, the two versions really have kind of the key areas
12 in dispute in my mind at least.  About halfway through
13 ConnectU's proposed paragraph five it says, "The search process
14 may included examination of any files or file fragments which
15 are in the form of ASCII text."  That's anything with a letter
16 that's stored on a hard drive.  By letter I don't mean an
17 email, A, B, C, D, those types of letters, "including such
18 files which may be found in archive files, compressed files,
19 source code depositories or databases."  So what that says is
20 they are allowed to look through every email that any of the
21 defendants sent to their lawyers, every document they wrote
22 documenting their interactions with their girlfriend, any
23 financial information that they have, their bank accounts, any
24 of that they're allowed to look through here.  The way we wrote
25 it in paragraph 5 is if you look at the bottom half, we talk

27

1  about how they specify the specific types of code.  They could
2  give us the actual code itself that they're looking for and
3  then they search for it.  If they wanted to search for the
4  keyword Facemash for example in the Facemash program, they
5  could pull out, they could use that as a search string
6  criteria.  But right now the way they've crafted this is it can
7  be a fishing expedition through our hard drives.
8       Your Honor, I'd recommend that you read the *Fennel*
9  case that I cited in our briefs.
10      THE COURT:  I'm very familiar with that.  I just
11 think it's so ironic that you are, you're so insistent that
12 they be restricted in their search for something that you won't
13 even specify with respect to the earlier argument.  It's very
14 ironic and frankly I don't think that it's a meritorious
15 litigable position.
16      Let me, if you want to have the last word,
17 Mr. Hornick, you will, and then I'll take the matter under
18 advisement.
19      MR. HORNICK:  Your Honor, yes, I would like to say a
20 couple of things.  One is that they say that the way we have
21 crafted this, actually this protocol was negotiated over about
22 a month's time between the parties and we came down to these
23 remaining issues.
24      THE COURT:  Right.
25      MR. HORNICK:  I would like to just summarize for the

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

28

1  Court the guarantees that I mentioned--
2          THE COURT: Sure, go ahead.
3          MR. HORNICK: --that are in this document. First I
4  mentioned one that's not in this document and that is that the
5  computer program that will do the searching, that was written
6  by our expert, will return to the expert only code. It will
7  not return emails, letters to girlfriends or anything else. It
8  will return code. It's designed to return only code. But in
9  the document itself, I already mentioned that paragraph 1 says
10 that the experts are found by the stipulated protective order
11 in the protocol.
12         THE COURT: Right.
13         MR. HORNICK: Paragraph 1 also says that the experts
14 access to any privileged information will not waive privilege
15 and that ConnectU cannot challenge privilege of these expert--
16         THE COURT: We're not talking about privilege
17 documents.
18         MR. HORNICK: Well, they're saying there could be
19 privilege information on these devices. So to the extent that
20 there is if our expert sees any of that, that will not waive
21 privilege and ConnectU cannot argue that that has waived
22 privilege.
23         THE COURT: Okay.
24         MR. HORNICK: That's paragraph 1. Paragraph 1 also
25 says that protected material, and that's a defined term, which

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

29

is privilege material or anything else that's subject to some kind of a privilege, cannot be shared with ConnectU at any time, in any way, shape or form.

Paragraph 2 says that the analysis that our expert is going to do is going to be on a non-network computer, which means that nobody else can get to it. It's only on that one computer. Paragraph 2 also says that during the imaging process, which takes place before the analysis, although ConnectU's counsel can be present, they can't see anything on the screen. Then we go into the protections against us ever getting anything after the analysis. And paragraph 3 says that the experts can disclose information to ConnectU only as the protocol permits, and then paragraph 3 also says Facebook's counsel is going to be involved in any communications between us and our expert during this analysis period. So when they talk about policing, any time that we send a communication to our expert during this analysis period, we have to copy them. Any time that they communicate with our expert during that period, they have to involve us. Any time that they want to talk with our expert during this analysis period, we have to do it in their presence, either in physical presence or on the telephone. And then paragraph 3 also says, the experts can discuss with ConnectU only the what's called "Produced Program Code". Now, here's how you get Produced Program Code. Here's how we'll get it.

30

1    THE COURT:  I'm sorry, this is paragraph 3?

2    MR. HORNICK:  That was paragraph 3, that's right.

3    THE COURT:  All right.  Let me just find it.  So in
4 other words, Produce Program Code is the only thing from the
5 computer that they're able to give over to you?

6    MR. HORNICK:  That's right.

7    THE COURT:  And where is Produced Program Code
8 defined?

9    MR. HORNICK:  In paragraph 3, Your Honor.  I think
10 it's paragraph 3.

11    MR. CHATTERJEE:  Your Honor, before we go through the
12 details--

13    THE COURT:  Please, I'm asking him where that is
14 defined.

15 (Pause)

16    MR. HORNICK:  I'm having trouble finding it at the
17 moment, Your Honor.

18    MR. CHATTERJEE:  I think it's paragraph 7.

19    THE COURT:  7, okay.

20    MR. HORNICK:  Yes, well, that's true.  It's defined
21 in paragraph 7, Produce Program Code is--

22    THE COURT:  Collected Computer--

23    MR. HORNICK:  --Collected Computer Code that gets
24 through the process that I was about to explain.  After
25 searching the experts will include in Collected Computer

31

1  Program Code only the code, only the relevant code database
2  definitions in metadata.  That's in paragraph 4 and 5.  So in
3  other words, after the expert does that search he can include
4  in Collected Program Code only the relevant code database
5  definitions and metadata.
6         THE COURT:  Okay.
7         MR. HORNICK:  And then in paragraph 4 it also says
8  that he's got to be guided by his professional judgment and the
9  restrictions of the protocol.  And it also says in paragraph 4
10 that ConnectU won't be present during any of the search
11 analysis and that we can't control the search process, and then
12 in paragraph 6, and this is what's really important--
13        THE COURT:  I see, okay.
14        MR. HORNICK:  --in paragraph 6, anything that the
15 expert has identified as Collected Computer Code, they have to
16 send that to the Facebook and the Facebook then looks at it and
17 anything that they don't want us to see they object to and then
18 he, the expert, can only produce to us the stuff that they
19 don't object to.  Now, with the stuff that they do object to
20 the next step is that they say to the expert we object to this
21 stuff and here's why, and he says, well, I think it should be
22 in Collected Computer Code.  If they agree, they agree, then it
23 gets produced to us.  If they don't agree, then the dispute is
24 submitted to the Court and it will not be given to us until the
25 Court decides.  So there's plenty, and there's some other

32

1  protections here as well, but there are plenty of protections
2  in here so that any of these letters to girlfriends and emails
3  and anything except code will never get to ConnectU.
4          THE COURT: Okay.
5          MR. HORNICK: And in addition to that, Your Honor,
6  this code, they say, they say they want us to, you know, we
7  could be searching in anything. We could be searching an
8  email. Well, one, the search will look at emails but it will
9  only return code. But it's important that we look everywhere
10 because the code one, could be anywhere. Two, during the meet
11 and confer in Dallas the defendants told us that Mark
12 Zuckerberg often wrote code in text files, and text files could
13 be like a Word document on your computer, so we have to be able
14 to look in those files as well. And also what we're dealing
15 with here today, Your Honor, is attorney argument versus what
16 the experts say. I'm telling you what our experts say. It
17 will restrict their search. Defendants are just giving you
18 their argument but our expert is available by telephone today
19 to discuss this if the Court wants to do that.
20         THE COURT: No, I don't need to talk to the expert.
21         MR. CHATTERJEE: Your Honor, frankly, this could all
22 be put to bed. Today was the first I heard of this.
23         THE COURT: Oh, it's going to be put to bed within
24 the next two days, I guarantee you.
25         MR. CHATTERJEE: No--

33

1    THE COURT: I'm not going to spend a lot on this.

2    MR. CHATTERJEE: I understand, Your Honor. This is
3 the first I've heard about a software program that they're
4 going to be having doing this search as opposed to manual.
5 That could actually resolve these other issues if we have a
6 little bit more understanding of what that is. And I think
7 that frankly would resolve this protocol issue. The issue is
8 not policing during the time of the protocol. It's what
9 happens afterwards because after the protocol they don't have
10 to email us with everything that these experts are saying.
11 They can do, they can have discussions with them. There are
12 some restrictions in here as to what they can or cannot--

13    THE COURT: I thought they can't turn over, according
14 to what Mr. Hornick said, turn anything over that they found on
15 these computers unless they give you the chance to object?

16    MR. CHATTERJEE: That's true, Your Honor. They
17 might--

18    THE COURT: Then what other protections do you
19 possibly need?

20    MR. CHATTERJEE: They only issue is that if they see
21 things that we don't want them talking about, we need to be
22 able to have a vehicle to police them.

23    THE COURT: You're going to know what they've seen
24 because under the order, before they show it to ConnectU
25 they're going to show it to you and you're going to have the

35

1    CERTIFICATION

2       I, Maryann V. Young, court approved transcriber, certify

3    that the foregoing is a correct transcript from the official

4    digital sound recording of the proceedings in the

5    above-entitled matter.

6

7    /s/ Maryann V. Young                              October 9, 2007

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**