# EXHIBIT 17

Dockets.Justia.com

```
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF MASSACHUSETTS

     ----------------------------------
     CONNECTU, INC., et al,             :   Civil Action
                    Plaintiff           :   No. 07-10593-DPW
                                        :
              V.                        :   Courtroom No. 1
                                        :   1 Courthouse Way
                                        :   Boston, MA 02210
     FACEBOOK, INC., et al,             :   2:30 p.m., Wednesday
                    Defendant           :   July 25, 2007
     ----------------------------------

                            Motion Hearing


         Before:      THE HONORABLE DOUGLAS P. WOODLOCK,
                         UNITED STATES DISTRICT JUDGE



     APPEARANCES:

     Finnegan, Henderson, Farabow, Garrett & Dunner, LLP,
       (by John F. Hornick, Esq., Margaret A. Esquenet, Esq.
        and Meredith Schoenfeld, Esq.)
        901 New York Ave., NW, Washington, DC 2001-4413,
        on behalf of the Plaintiffs.

     Griesinger, Tighe & Maffei, LLP,
        (by Scott McConchie, Esq.)
        176 Federal Street, Boston, MA 02110-2214,
        on behalf of the Plaintiffs.

     Holland & Knight LLP, (by Daniel K. Hampton, Esq.),
        10 St. James Avenue, Boston, MA 02116,
        on behalf of the Defendant, Eduardo Saverin.

     Orrick, Herrington & Sutcliffe, LLP, (by I. Neel
        Chatterjee, Esq. and G. Hopkins Guy, III, Esq.),
        1000 Marsh Road, Menlo Park, CA 94025-1021,
        on behalf of the Defendants.

     Heller Ehrman, LLP, (by Annette L. Hurst, Esq.),
        333 Bush St., San Francisco, CA 94104-2878,
        on behalf of the Defendant, Eduardo Saverin.
```

```
 1          THE CLERK:  ConnectU, Inc. v. Facebook, Inc.,
    07-10593.
 2          THE COURT:  Well, let me approach this a little
 3  bit differently with the parties.  I guess,
 4  Mr. Chatterjee, you're going to speak generally for the
 5  defendants?
 6          MR. CHATTERJEE:  Your Honor, I'll be speaking for
 7  all of the defendants, except Eduardo Saverin, who is
 8  represented by Ms. Hurst.
 9          THE COURT:  Okay.
10          Let me understand from you what difference this
11  proliferation of claims is going to have before this is in
12  discovery.
13          MR. CHATTERJEE:  Thank you, your Honor.
14          I think there are a couple of differences that
15  this proliferation of claims has, two in particular.
16          The first one is basically this case, I think
17  your Honor correctly noted at the last hearing, has kind
18  of spun in a lot of directions and somewhat out of
19  control.  And, what we see in the current complaint is
20  actually broader than the complaint that was filed by
21  ConnectU, LLC, which is a different entity than the
22  plaintiff here, today, and in this case.
23          THE COURT:  The original complaint, not the
24  amended complaint?
25          MR. CHATTERJEE:  No, the original complaint and
```

1   enormous amounts of discovery disputes.
2           THE COURT:  Well, no, I agree, that you've had
3   disputes.  It says a good deal more about lawyering in
4   this case than it does the nature of the case.  I thought
5   I made that clear last time we were here.
6           MR. CHATTERJEE:  I understand that, your Honor.
7   However, I do think that the complaint frames what
8   discovery should be.
9           And, what we see here -- and I'm focusing on your
10  preemption question -- what we see here is it's utterly
11  unclear as to what these other claims are.
12          To the extent they're talking about code being
13  used, I think that the discovery would be the same.  But,
14  to the extent they argue it's something else, who knows
15  what the discovery could be?
16          The second issue that I think is pretty important
17  here is ConnectU is trying to litigate this case through
18  the press.  And, we believe -- and, they're actively out
19  there talking about it.  They've organized --
20          THE COURT:  Well, what do you want me to do about
21  that?
22          MR. CHATTERJEE:  Well, I think, your Honor -- I
23  think one of the issues here is we need to start carrying
24  out the case to focus on what it's really about.
25          THE COURT:  I know that we had a number pro hac

1  vice lawyers in the case.  They have to file an affidavit
2  saying they've familiarized themselves with the rules of
3  the Court.  And, Rule 83.2D deals with special orders in
4  widely publicized civil cases.
5          Are you asking me for some sort of an order?
6          MR. CHATTERJEE:  Your Honor, I'm not necessarily
7  asking for some sort of order.  But, I do think this is a
8  public forum, people are following the case, and if things
9  need to be pared out of the case, they should be pared out
10 of this case early in order to frame the case and get it
11 ready to --
12         THE COURT:  Well, they're basically themes and
13 variations on copyrighting and unfair trade practices.
14 More specifically, forms of trade secret.
15         What difference does it make that someone was
16 sent out to -- what if it were ten separate claims saying
17 essentially the same thing?
18         MR. CHATTERJEE:  Your Honor, frankly, it's
19 because it creates this impression that there's a garbage
20 dump of claims against --
21         THE COURT:  Whatever impressions are made, I'm
22 concerned about now moving this case along in an
23 intelligent fashion.
24         Yes, there is the aroma of the use of publicity
25 about the case to obtain an unfair advantage to perhaps

```
 1  capitalize.  But, I invite you to perhaps refresh your
 2  recollection about one of the rules that you familiarized
 3  yourself with in the pro hac vice process and respond and
 4  you haven't asked for any type of order to deal with that.
 5  So, perhaps, it's not something that I'm going to be
 6  pressing.  Or, at least you're not asking me to address
 7  it, except to express anxious concerns, and I don't rule
 8  on anxious concerns for the most part.
 9            MR. CHATTERJEE:  And, your Honor, it's not as
10  much the anxious concerns as much as to focus on this case
11  on what it's really about.
12            I think your Honor has identified that your
13  impression is -- your Honor's impression is that this is a
14  case about copyright infringement and some unspecified
15  business plan.
16            If that's what it's about, claims such as
17  intentional interference with business relations and
18  intentional interference with contractual relations, where
19  no such business relations or contractual relations are
20  identified, have no business in this case.
21            Unfair trade practices, when they're talking
22  about people who are working together in one place and
23  then one person departs to do something else, that is not
24  what unfair trade practices under Section 9 or Section 11
25  deal with it.
```

```
 1  going to have to satisfy Twombly's directions and not just
 2  for antitrust purposes, but more generally the revival of
 3  something like code pleading that Twombly suggests.  And,
 4  as to each of these claims, it must set forth with
 5  particularity the factual basis for claiming that each
 6  element of the charge or claim is met.
 7         We've talked a bit about the contract.  I think
 8  you understand that I really do expect something more than
 9  a moving target to be alleged here so that the defendants
10  can respond to it.
11         Now, let's turn to the question of preemption.
12  Why is there any thing here that isn't basically
13  copyright?
14         MR. HORNICK:  Well, your Honor, everyone keeps
15  saying that this is a copyright case --
16         THE COURT:  Perhaps that's because that's Count 1
17  of your --
18         MR. HORNICK:  Yes, that's true.  It is Count 1.
19  But, something has to be Count 1, your Honor.  And, the
20  defendants keep saying --
21         THE COURT:  Well, certainly, breach of contract
22  wouldn't do that.
23         MR. HORNICK:  That's Count No. 3, I believe.
24  Count No. 2 is trade secret.
25         The defendants keep saying:  Well, tell us what
```

```
 1  case is valid.  What are your claims?
 2           And, I keep saying, whenever I get a chance, this
 3  is not just a copyright case.  This is not just a trade
 4  secret case.
 5           And, the claims that defendants attacked in the
 6  presentation a few minutes ago focused particularly on 93A
 7  and unjust enrichment.  I think --
 8           THE COURT:  Put that to one side.  I'm dealing
 9  now with the question of whether or not there's really
10  anything here, apart from the trade secret and the
11  contract in the copyright, that isn't copyright
12  infringing.
13           MR. HORNICK:  Well, your Honor, I don't think
14  anything is preempted for a couple of reasons.  One is
15  that with respect to the first prong of the preemption
16  test, the claims are not directed solely to copyright in
17  the subject matter.
18           THE COURT:  It doesn't have to.
19           MR. HORNICK:  Your Honor, respectfully, I--
20           THE COURT:  The touchstone has to be copyright,
21  but it doesn't have to be coincident copyright.
22           So, tell me what it is that isn't within the
23  scope of the copyright laws.  We really have two claims,
24  as far as I can see.  One is misappropriation by
25  Mr. Zuckerberg.  And, the second is something having to do
```

```
 1  with some sort of business plan which I gather is supposed
 2  to be a trade secret.  Whether it's a secret or not seems
 3  somewhat questionable.  But, in any event, that's what's
 4  alleged.
 5           Now, what else is there?
 6           MR. HORNICK:  Well, I see a couple of questions
 7  there, your Honor.  With respect to other claims, there is
 8  a 93A claim.  And, 93A does not require the same showing,
 9  same level, as a trade secret claim would show.
10           There is an unjust enrichment claim --
11           THE COURT:  93A is not trade secret light.
12           MR. HORNICK:  Excuse me, your Honor?
13           THE COURT:  93A is not trade secret light.
14           MR. HORNICK:  I don't have to prove a trade
15  secret claim to win on a 93A claim.
16           THE COURT:  Yeah.  But, you have to prove
17  something.
18           MR. HORNICK:  Yes.  That's right.
19           THE COURT:  Okay.
20           So, now --
21           MR. HORNICK:  But, basically --
22           THE COURT:  -- let's go back to the that are
23  likely to have been preempted or they allege are preempted
24  here.  What else is there?  What's the interference with
25  the advantageous advantage?
```

```
 1            MR. HORNICK:  Well, they argue --
 2            THE COURT:  Taking advantage of the code.  Right?
 3            MR. HORNICK:  Not just the code, no, your Honor.
 4            THE COURT:  What else?
 5            MR. HORNICK:  The idea -- the idea here is what
 6   is most important.  It is more important than the code.
 7   The basic idea that was taken and the idea is not
 8   copyrightable.
 9            In addition to that, there is the overall --
10            THE COURT:  So, that's a trade secret.  What
11   steps were taken to protect that secret?
12            MR. HORNICK:  Well, your Honor, we outline them
13   in response to an interrogatory.  I can try to recall some
14   of them now.  But, the -- our clients maintained them in a
15   secret fashion in a sense that they didn't disclose them
16   to the world as a whole.
17            They told Mr. Zuckerberg it was supposed to be
18   confidential.  They told the programmers who preceded
19   Mr. Zuckerberg, who worked on the code, that it was
20   confidential.  There were a couple of other disclosures to
21   trusted friends to get their opinion about the website.
22   And, whenever they met, they met in private places so that
23   other people couldn't hear.
24            The code was kept in a secure location on a
25   server --
```

```
 1              THE COURT:  Oh, that's code.  Code is copyright.
 2              MR. HORNICK:  Well, that -- your Honor, that's
 3   part of it.
 4              THE COURT:  Why do you keep saying it's part of
 5   it and you keep introducing --
 6              MR. HORNICK:  That's part of it.
 7              THE COURT:  Just a moment.
 8         You keep introducing it as if that's at the core.
 9   And, that's the relation that I'm having with this.  I
10   don't -- you know, in the largest possible sense I don't
11   understand why you're pleading all these things.  It
12   really is as if someone were to assign issue spotting and
13   sent off into a library to come up with as many possible
14   causes of action as they could reasonably do in, say, ten
15   days, where the core of the case is copyright and trade
16   secret, that's what it's about.
17         And, you haven't told me anything other than
18   there's something else out there.
19              MR. HORNICK:  Well, your Honor, the core of the
20   case, in terms of -- I would not say the core of the case
21   is copyright or trade secret.  I would say that that is
22   part of the case.  Because, there are other ways in which
23   Mr. Zuckerberg could have wronged our clients other than
24   trade secret misappropriation and copyright infringement.
25              THE COURT:  What?
```

```
 1            MR. HORNICK:  Unjust enrichment, for example, is
 2   there in case we cannot prove the contracts.  It is the
 3   flip side of the contract claim with respect to
 4   Mr. Zuckerberg and, the contract claim only applies to
 5   Mr. Zuckerberg.  The unjust enrichment claim applies to
 6   all of the defendants.  That claim is --
 7            THE COURT:  You just told me that unjust
 8   enrichment is the flip side of contract.  And so, you hook
 9   the other defendants on a contract-type theme, but without
10   having a contract.
11            MR. HORNICK:  Your Honor, that's not exactly what
12   I said.  What I said is that it is a -- the flip side of
13   the contract claim, for Mr. Zuckerberg -- but unjust
14   enrichment, it can be viewed as quasi contracts and it can
15   also be viewed as a remedy in situations where a contract
16   is implied in law.
17            THE COURT:  Which is it here?
18            MR. HORNICK:  It's both here.  Because --
19            THE COURT:  Quasi contract against people who
20   didn't enter into a contract?
21            MR. HORNICK:  Unjust enrichment against the
22   people who do not enter into the contract.  They were
23   unjustly enriched by what they gained from Mr. Zuckerberg.
24            THE COURT:  Okay.
25            You're really going to have to do this with
```

```
 1  plaintiff will have -- I will come to rue the day I said
 2  this -- additional pages to respond -- reasonable
 3  additional pages to respond.  All right?  And,
 4  "reasonable" means, I think, 40 pages.
 5          All right.  Anything else?
 6          MR. CHATTERJEE:  Thank you, your Honor.
 7          MR. HORNICK:  No, your Honor.  Thank you.
 8          MS. HURST:  Thank you, your Honor.
 9          (Whereupon the hearing was concluded.)
10
11
12                      CERTIFICATE
13          I, Marie L. Cloonan, Official Reporter of the
14  United States District Court, do hereby certify that the
15  foregoing transcript, from Page 1 to Page 72, constitutes
16  to the best of my skill and ability a true and accurate
17  transcription of my stenotype notes taken in the matter of
18  Civil Action No. 07-10593-DPW, ConnectU, et al v.
19  Facebook, Inc., et al.
20
21                      _____
                            Marie L. Cloonan
22
23
24
25
```