IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC,<br><br>Defendants. | Civil Action No. 1:07-CV-10593-DPW |

**MEMORANDUM IN REPLY TO PLAINTIFFS' OPPOSITION TO THE FACEBOOK DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO IMAGE AND SEARCH THEIR MEMORY DEVICES FOR SOURCE CODE, AND TO COMPLY WITH REQUESTS FOR PRODUCTION NOS 1-2, 67-68, AND 117**

**LEAVE TO FILE GRANTED ON NOVEMBER 19, 2007**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT......................................................................................................................2

    A. Plaintiffs Failed To Perform An Adequate Search.................................................2

        1. Evidence Ignored By Plaintiffs Shows The Harvard Connection Founders Previously Had Possession Of The Missing Code ....................2

        2. The Missing Code Has To Be On Plaintiffs' Computers..........................4

        3. Plaintiffs Admit They Did Not Search All Relevant Computers .............4

    B. Imaging Is Appropriate Under The Circumstances................................................5

        1. Facebook Defendants Made A Particularized Showing That Relevant Code Is Likely To Exist On Plaintiffs' Hard Drives..................5

        2. The Code Is Relevant................................................................................6

            a. Harvard Connection Code ............................................................6

            b. ConnectU Code .............................................................................7

            c. Social Butterfly and Facebook Importer ......................................8

    C. Plaintiffs Will Suffer No Burden Or Prejudice.......................................................9

    D. Plaintiffs' Self-Serving Statements Do Not Defeat This Motion .......................10

III. CONCLUSION................................................................................................................12

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*ConnectU LLC* v. *Zuckerberg, et al*,
   482 F. Supp. 2d 3 (D. Mass. 2007) ............................................................................... 11

*Hall* v. *Wright*,
   240 F.2d 787 (9th Cir. 1957) ......................................................................................... 9

*Skinder-Strauss Assocs.* v. *Massachusetts Continuing Legal Educ.*,
   914 F. Supp. 665 (D. Mass. 1995) ............................................................................ 6, 7

*Urecal Corp.* v. *Masters*,
   413 F. Supp. 873 (D. Ill. 1976) ..................................................................................... 9

*Williams* v. *Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 144 (D. Mass. 2005) ................................................................................... 5

I.  **INTRODUCTION**

Facebook Defendants are entitled to a search for the code that serves as the basis of Plaintiffs' claims. Plaintiffs have not produced the code they claim they provided to Zuckerberg. Without so much as looking for the code on their own computers, Plaintiffs argue that they have produced every available version of the Harvard Connection code. Evidence shows responsive code was on Plaintiffs' computers. Given the evidence and Plaintiffs' limited search, adopting the Stipulated Protocol adopted by this Court is warranted.

Plaintiffs incorrectly argue that the www.connectu.com code, as well as the Social Butterfly and Importer scripts, are irrelevant and need not be produced. The post-2004 versions of www.connectu.com code will allow Facebook Defendants to prove that Plaintiffs' lack of success is attributable to their failure to develop their product, rather than Zuckerberg's alleged theft of their Harvard Connection "idea." This code also will show the substantial differences between the Harvard Connection site and ConnectU. Moreover, the code for the Social Butterfly and Importer scripts will show that Plaintiffs engaged in illegal and improper self-help tactics while this litigation was ongoing. These programs were used to hack into the Facebook website, steal users' email addresses and spam those users. This evidence goes directly to the issues of unclean hands, violations of California Penal Code Section 502(c), and the CAN-SPAM Act, all of which Facebook Defendants anticipate alleging as affirmative defenses in this action.

Plaintiffs also erroneously argue that the Court should reject Facebook Defendants' request for imaging in favor of Plaintiffs' Declarations indicating that no search is necessary. These Declarations should not be taken at face value in light of Plaintiffs' history of taking inconsistent litigation positions, only to recant when they are no longer convenient. Facebook Defendants have made the requisite showing entitling them to the requested imaging. They should be permitted to test Plaintiffs' assertions and perform the necessary search for code –

especially because the proposed process will be performed by Plaintiffs' expert and will be paid for by Facebook Defendants.

## II.  ARGUMENT

### A.  Plaintiffs Failed To Perform An Adequate Search

Plaintiffs tip-toe around their failure to search their hard drives for relevant code.[1]  They argue, instead, that they "looked in the 'most likely' places for code," "the unsearched electronic storage devices never housed any relevant code," and that "Defendants' assertions about the potential location of code rely only on speculation."  Opp'n at 4, 10, 5.  The evidence produced in the case reflects that, despite Plaintiffs' averments, their search for missing code was inadequate, and some or all of it should reside electronically on computers that they utilized.

#### 1.  Evidence Ignored By Plaintiffs Shows The Harvard Connection Founders Previously Had Possession Of The Missing Code

Far from speculation, the evidence shows that Plaintiffs had possession of the missing source code, access to various versions of the code, reviewed the code, tested the code, and emailed portions of the code to others.  Cooper Decl., (Doc. No. 135), Ex. 2 at 36:9-37:4; see also *id.* Exs. 22-24.[2]  Plaintiffs ignore virtually all of this evidence, electing instead to argue that they searched what they deemed "the most likely places" where code may have resided, and that is enough.  Opp'n at 4-5.  Plaintiffs' failure to squarely address the actual evidence cited by Defendants underscores that Plaintiffs' electronic storage media in all likelihood contains all or

---

[1] ConnectU shares or shared office space with at least three companies run by Howard Winklevoss.  Sutton Decl., Ex. 26, 14:6-17:12.  It appears that ConnectU and the Winklevoss companies shared resources.  Cooper Decl. (Doc. No. 135), Ex. 4, 40:4-11.  For convenience, references herein to Plaintiffs' hard drives/electronic storage devices include those used at the Winklevoss companies.

[2] Plaintiffs argue that these emails do not show that Plaintiffs "accessed the code itself." Opp'n at 12.  As discussed below, however, once Plaintiffs accessed the site through a web browser, the code was stored on their computers.

portions of the missing code.

      Moreover, in contrast to what Plaintiffs now argue, Cameron Winklevoss previously testified (as ConnectU's 30(b)(6) witness) that he asked for — *and Gao gave him* — "the HarvardConnection code that everybody contributed to without Mark Zuckerberg." Declaration of Theresa A. Sutton in Support Of Reply Memorandum ("Sutton Decl."), Ex. 27, 287:2-15. This code is presumably the mid-February 2004 code to which Plaintiffs refer in their Declarations. Declarations of Tyler Winklevoss, Cameron Winklevoss and Divya Narendra ("Defendants' Decl.") ¶ 11. As Cameron Winklevoss testified, *at some point* Plaintiffs necessarily had possession of the missing code. Sutton Decl., Ex. 27, 287:2-15. Plaintiffs give no explanation for where the code is now located or why this evidence is insufficient to require a review of their systems for code.

      The record also shows that Plaintiffs had possession of the relevant Harvard Connection code just prior to Zuckerberg's access. In an Interrogatory response, Plaintiff ConnectU admitted that "the *Harvard Connection founders* provided Mr. Zuckerberg with the *existing code*, showed Mr. Zuckerberg the existing site, and discussed various functionalities of the website, as well as the business model for the website."[3] *Id.*, Ex. 28 (emphasis added). The "Harvard Connection founders" were the Winklevoss brothers and Divya Narendra – the same three individuals who now disavow ever having had any custody of the Harvard Connection code, let alone the code that was actually given to Zuckerberg. It is precisely the need to recover whatever that "existing code" was that is at the heart of this motion for forensic imaging. ConnectU's interrogatory response, executed before the present motion was filed, at least raises

---

[3] This response was verified under penalty of perjury by Plaintiff Cameron Winklevoss and has never been amended or supplemented.

questions concerning the veracity of the positions the Harvard Connection Founders now take concerning their possession of arguably the most important evidence in the case.

### 2. The Missing Code Has To Be On Plaintiffs' Computers

In attempting to forestall forensic imaging, Plaintiffs misleadingly contend they never "downloaded" the missing code to their computers. They admit, however, that they "viewed the Harvard Connection and ConnectU.com websites through a web browser." Defendants' Decl., ¶ 16. Having accessed the website through a web browser, which requires the use of a computer, the html code was necessarily stored on Plaintiffs' computers, and may still be resident on those systems. Sutton Decl., Ex. 29 at 2 ("ESI includes emails, *webpages*, word processing files, and databases *stored in the memory of computers*, magnetic disks …"); *see also id.* Ex. 30 (http://en.wikipedia.org/wiki/Temporary_Internet_Files; http://support.microsoft.com/kb/263070/EN-US/; and http://office.microsoft.com/en-us/help/HA011906921033.aspx). Plaintiffs outright avoid acknowledging this function of the technology. The proposed forensic analysis will enable Facebook Defendants to perform the search Plaintiffs refused to do.

### 3. Plaintiffs Admit They Did Not Search All Relevant Computers

Plaintiffs also argue that they have "*never accessed the code from their personal computers.*" Opp'n at 11-12 (emphasis in original). Plaintiffs appear to draw a distinction between their "personal computers" and the location from which they accessed data – a distinction that is irrelevant to this motion. Opp'n at 3 (compare Plaintiffs reference to "personal" electronic storage devices and Howard Winklevoss' references to both "personal" and "business" devices). To the extent Plaintiffs also have "business" computers or used someone else's computers (such as those belonging to the Winklevoss companies), those, too, should have

-4-

been searched.[4] Plaintiffs should be required to turn over to their expert all electronic storage devices in their possession, custody or control for imaging and analysis. Plaintiffs should not be permitted to pretend they never had possession of or access to the relevant code when their sworn testimony and the record show otherwise.

> B.  **Imaging Is Appropriate Under The Circumstances**
>
>> 1.  **Facebook Defendants Made A Particularized Showing That Relevant Code Is Likely To Exist On Plaintiffs' Hard Drives**

Plaintiffs do not dispute that Facebook Defendants have met their burden to show "a particularized likelihood of finding discoverable material" on Plaintiffs' electronic memory devices. Instead, Plaintiffs seek to impose a new standard and argue that, in spite of the Facebook Defendants' showing, Defendants also must prove that Plaintiffs are lying about their representations. For this proposition, they rely on *Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass. 2005). *Williams* is inapposite. The *Williams* court held that where – unlike here – the nonmoving party has already undertaken the requested search, the movant must go beyond the requisite "particularized likelihood" and show that the nonmoving party is misrepresenting what it found. *Id.* Plaintiffs do not contend they have actually undertaken the sought-after search and that their search was fruitless. They only argue that such a search is unnecessary. These self-serving arguments are belied by the evidence and are unsupported by the law. In any event, the documentary evidence Defendants have cited in support of their motion, including ConnectU's own prior admissions, more than satisfies even the unwarranted "heightened" burden that Plaintiffs seek to have imposed before electronic imaging may occur.

---

[4] Plaintiffs' declarations also leave open the possibility that Plaintiffs stored code on other media, such as DVDs or removable storage devices. If true, those items must be searched, as well.

-5-

### 2. The Code Is Relevant

#### a. Harvard Connection Code

The Harvard Connection code to which Plaintiffs gave Zuckerberg access in November 2003, is the only code that matters to Plaintiffs' claims. Plaintiffs will need it to prove the defendants' alleged infringement. *Skinder-Strauss Assocs. v. Massachusetts Continuing Legal Educ.*, 914 F.Supp. 665, 672 (D. Mass. 1995) (plaintiff must show access and substantial similarity to the registered work). Moreover, it also is the most efficient way for Zuckerberg to show conclusively that he did not steal either the code or the alleged trade secrets. That is, if Zuckerberg can show that the code base for www.thefacebook.com at or around the time of its launch was not substantially similar to the Harvard Connection code to which he had access (and which Plaintiffs claim was later copyrighted), defendants will prevail. Plaintiffs have not produced this "pre-Zuckerberg" code, and they contend, without performing a full and exhaustive search, that it does not exist. The *only* place, however, that has not been searched is Plaintiffs' hard drives.

In an effort to direct the Court's attention away from the necessary imaging, Plaintiffs erroneously contend that the only code "truly at issue" is "the code Zuckerberg wrote." Opp'n at 13. Plaintiffs' copyright claim is not based on the code Zuckerberg wrote. Plaintiffs must show that the Facebook code was substantially similar to the Harvard Connection code to which they gave Zuckerberg access and which they can show was later registered with the Copyright Office. *Skinder-Strauss Assocs.*, 914 F.Supp. at 671-72. Notably, ConnectU testified (through Cameron) that "Mark's contribution was nil, okay? [Gao] went onto the server, and there was no contribution." Sutton Decl., Ex. 27, 285:6-8. Cameron further testified that "the code that was

filed with the copyright office did not contain Mark Zuckerberg's code."[5] *Id.*, 282:21-23. In light of the governing legal standard and ConnectU's 30(b)(6) testimony, "the code Zuckerberg wrote" is irrelevant to Plaintiffs' claims.

Imaging under the circumstances is necessary. To the extent Plaintiffs did not "download" a complete version of the Harvard Connection source code, portions of the code that are stored in temporary or other files may be retrievable through the proposed imaging and analysis. Indeed, Plaintiffs made this exact point in earlier motion practice. In addition, to the extent any of the code was deleted, the proposed process is the only means for extracting the relevant data.

### b.    ConnectU Code

The www.connectu.com code also is relevant, but for different reasons. Plaintiffs erroneously argue that only the Harvard Connection code and Facebook code are relevant and that defendants "now have proof of the date by which Plaintiffs possessed a competing website." Opp'n at 8. Plaintiffs ignore that because they seek damages based on Facebook's current value, Facebook Defendants are entitled to show that Plaintiffs' alleged damages are, in whole or in part, due to their failure to actively develop and market their website. For this reason, Facebook is entitled to all versions of the www.connectu.com code to prove Plaintiffs' failures are due to their own mistakes, and also to prove Plaintiffs have not mitigated their alleged damages. Production of all versions of the code will show that Facebook's valuation is based on value other than the value Plaintiffs believe was misappropriated.

---

[5] Notably, the fact that Cameron felt competent to testify he understood exactly what Harvard Connection code Zuckerberg wrote underscores that he must have personal knowledge of what was contained in the missing pre-Zuckerberg Harvard Connection code. This fact again suggests he must have had direct access to that earlier code, notwithstanding his current arguments that he did not.

Plaintiffs also argue that Facebook Defendants mischaracterize Winston Williams' testimony. Opp'n at 12. When read as a whole, Williams' testimony shows that he worked for one of Howard Winklevoss' companies. Cooper Decl. (Doc. No. 135), Ex. 4, 39:24-40:5. During that time, he performed work for ConnectU. *Id.*, 40:9-11. Williams was hired to write source code for www.connectu.com, as well as the Social Butterfly and Importer scripts. Cooper Decl., Ex. 4, 45:9-22; Sutton Decl., Ex. 31, 88:8-10. While Williams was working for Howard Winklevoss and/or ConnectU, Williams used a computer "provided to [him] by Cameron Winklevoss to access the Facebook site." Cooper Decl., (Doc. No. 135), Ex. 4, 67:24-68:2. A necessary part of developing Social Butterfly and Importer was accessing the Facebook website. Sutton Decl., Ex. 31, 98:25-99:9. Thus, some of the www.connectu.com code would be resident on whatever system Williams used while working for Winklevoss/ConnectU. Those systems must be searched for relevant code.

Imaging pursuant to the Protocol will assist Facebook Defendants in locating all versions of the www.connectu.com code. To the extent Plaintiffs viewed the code from their computers, portions of the code – if not all of it – is resident on their computers. In addition, to the extent any of the code was deleted, the proposed process is the only means for extracting the data.

### c. Social Butterfly and Facebook Importer

Plaintiffs also argue that the Social Butterfly and Importer scripts are irrelevant to this litigation because they "were written in late 2004 and have nothing to do with the actual claims alleged by Plaintiffs." Opp'n at 6. These programs are related to Facebook's anticipated defenses and counterclaims.

The Social Butterfly and Importer programs were developed in early 2005, after this lawsuit was initiated and well after Zuckerberg was accused of stealing Plaintiffs' "idea." These scripts were used by Plaintiffs to retaliate against Zuckerberg for his alleged theft and to gain an

-8-

advantage on thefacebook.com website without having to expend the necessary effort. Sutton Decl., Ex. 34. Indeed, Plaintiffs used Social Butterfly and Importer (after other, less efficient methods were abandoned) to hack into Facebook's servers, steal Facebook's users' personal information (including email address) and to spam Facebook's users to invite them to join ConnectU.

Plaintiffs are incorrect insofar as they attempt to characterize their retaliation as occurring only after the lawsuit was filed. The evidence actually proves that it began at least by May, 2004, and continued through the summer – *before* they filed suit. Sutton Decl., Exs. 32, 33, 34, 36 at 124:23-125:9. Plaintiffs spent months trying various methods of "self help" in the form of illegal and unauthorized access to Facebook's servers. *Id.* Social Butterfly and Importer were Plaintiffs' final, and most successful, effort to steal from Facebook and Zuckerberg so they did not have to do the work themselves – but they were not the exclusive methods employed. As such, Social Butterfly and Importer are part and parcel of the same factual story that Plaintiffs wish to raise, and hence are by themselves relevant to the case (necessitating their production).

Further, Courts have denied relief, under the unclean hands doctrine, to parties who engage in such "self help" tactics and, as a result, these programs are relevant to Facebook's anticipated unclean hands defense (and counter-claims). *Hall v. Wright*, 240 F.2d 787, 796 (9th Cir. 1957) ("prime consideration" in applying unclean hands doctrine was that parties engaged in self-help *after the lawsuit was initiated*); *see also Urecal Corp. v. Masters*, 413 F.Supp. 873, 875 (D. Ill. 1976) ("By invoking the doctrine, the court acts to protect the consuming public from commercial dishonesty"). This defense clearly is applicable to the present case, making the production of the missing ConnectU code necessary and warranted.

### C. Plaintiffs Will Suffer No Burden Or Prejudice

Plaintiffs complain that the requested imaging is "harassing," "excessive," and

-9-

"unnecessary." Their complaints must be rejected. As Facebook has shown, the imaging is necessary to enable defendants to exhaust all possible sources of relevant code. Plaintiffs have not indicated that they have searched their drives, despite the apparent disappearance of the most relevant code in this case. Instead, they admit to having never looked for it on their computers.

Furthermore, Plaintiffs have shown no burden whatsoever to themselves in the process Facebook Defendants proposed. Facebook Defendants proposed the use of a protocol that has already been stipulated to by the parties (largely in Plaintiffs' favor) and adopted by this Court.[6] The protocol calls for the use of Plaintiffs' experts to perform the imaging and analysis. And, Facebook Defendants have offered to assume the costs of these procedures.

The potential benefit to both parties here significantly outweighs any potential risk to Plaintiffs. The imaging and analysis, as outlined in the September 13, 2007, Stipulated Protocol, should be adopted here, as well.

### D. Plaintiffs' Self-Serving Statements Do Not Defeat This Motion

Plaintiffs filed three substantively identical declarations, in which they claim that they have never downloaded the relevant code to their personal computers. They ask the Court to accept these representations as true and prevent Facebook Defendants from performing a search Plaintiffs chose not to perform. Plaintiffs also complain that imaging is unnecessary when they have submitted declarations to the contrary.

These Plaintiffs have a history of submitting sworn testimony in support of their cause

---

[6] Plaintiffs erroneously suggest that the Protocol was put in place by the Court because Facebook had not met its discovery obligations. In fact, after the earlier case was dismissed and Plaintiffs filed the present action, the Court asked the parties to meet and confer in an effort to resolve several outstanding motions to dismiss by Plaintiff ConnectU. Facebook Defendants volunteered to stipulate to the September 13, 2007, Protocol in order to put to rest any questions about the adequacy of their production. The Court's rulings on the Protocol involved provisions related to expert activity. The Court did not rule on any motions or make any judgments about Facebook's production in entering the Stipulated Protocol.

only to recant when such testimony is no longer convenient or helpful.  The Court held a two-day evidentiary hearing a year ago to test Plaintiffs' credibility in light of seemingly contradictory statements made by them.  *ConnectU LLC v. Zuckerberg, et al*, 482 F. Supp. 2d 3, 30 (D. Mass. 2007).  Recently, the Court noted that a declaration submitted by Plaintiff Cameron Winklevoss contradicted sworn 30(b)(6) testimony given in a deposition last year.  Sutton Decl., Ex. 35, 13:1-10.  At the October 17, 2007, hearing on Facebook's motion for summary judgment, the Court admonished Plaintiffs for seeking to change an interrogatory response because it was no longer helpful to them.  *Id.*, 26:11-17.  Even in this proceeding, Plaintiffs are being less than candid.  In their Declarations, Plaintiffs state that they "provided iMarc with the username and password to the Hurricane Electric server, and iMarc downloaded all code as it existed onto their company servers."  Defendants' Decl. ¶ 13.  iMarc recently testified that, in fact, Plaintiffs gave them a CD with the Harvard Connection code on it.  Cooper Decl. (Doc. No. 135), Ex. 2 at 36:9-37:4.  This testimony strongly suggests that Plaintiffs' Declarations may not be entirely accurate.[7]

In addition, in their Declarations Plaintiffs assert that they "only viewed the Harvard Connection and ConnectU.com websites through a web browser by accessing the url of the website."  Defendants' Decl. ¶ 16.  A web browser does not work without a computer, and Plaintiffs fail to explain how they operated the web browser without using their computers.  At some point, Plaintiffs' sworn statements should not be taken at face value.  Facebook should be

---

[7] Howard Winklevoss also submitted a carefully worded Declaration.  Howard (Cameron and Tyler's father) asserts that *he* did not use his personal or company computers to store or work on the code at issue.  This is not surprising, as Howard's role appears only to be that of financier of the operation.  There is no suggestion that Howard actually performed any day-to-day work for Plaintiffs.  Howard also writes that he never authorized any of *his* employees to work on any of the relevant code.  Again, this is unsurprising – and irrelevant – as Plaintiffs, who are not Howard's employees, directed the code development.  The pertinent question is which electronic storage devices in the shared office space were used by anyone to access (for any reason) the relevant code?

permitted to test Plaintiffs' assertions, especially where (as here) the risk to Plaintiffs is minimal, and the prejudice to Defendants' ability to disprove Plaintiffs' claims is significant.

### III.     CONCLUSION

Plaintiffs admit that they have never searched their own computers for relevant code. Instead, they argue such a search is unnecessary. The evidence shows that Plaintiffs had possession of relevant code at various times. Their refusal to search their storage devices makes the proposed imaging necessary. Facebook Defendants' Motion to Compel should be granted, and Plaintiffs should be ordered to comply with the September 13, 2007 Stipulated Protocol.

Dated: November 19, 2007                    Respectfully submitted,

 /s/ Theresa A. Sutton /s/
G. Hopkins Guy, III*
I. Neel Chatterjee*
Monte Cooper*
Theresa A. Sutton*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:   (650) 614-7400
Facsimile:    (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
tsutton@orrick.com

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone:   (617) 526-9600
Facsimile:    (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

* Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 19, 2007.

Dated:  November 19, 2007.                    Respectfully submitted,

                                                      /s/ Theresa A. Sutton /s/
                                                      Theresa A. Sutton