# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>        Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC,<br><br>        Defendants. | Civil Action No. 1:07-CV-10593-DPW |
| CONNECTU LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br><br>        Defendants. | Civil Action No. 1:04-CV-11923 (DPW) |
| MARK ZUCKERBERG, and FACEBOOK, INC.,<br><br>        Counterclaimants,<br><br>v.<br><br>CONNECTU LLC, Counterdefendant, and CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, Additional Counterdefendants. | |

**FACEBOOK, INC. AND MARK ZUCKERBERG'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTION OF NON-DISMISSAL, OR IN THE ALTERNATIVE TO VACATE FINAL JUDGMENT PURSUANT TO F.R.C.P. 60**

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................ 1

II. FACTUAL BACKGROUND ............................................................. 2

    A. Discovery Disputes Persisted Throughout the Litigation ..................... 2

    B. Despite Ongoing Discovery Disputes, The Parties Stay Proceedings ................. 3

    C. This Case Settled ............................................................................ 4

III. ARGUMENT ..................................................................................... 6

    A. Reconsideration of Emergency Motion to Compel Production is Improper ......... 6

        1. Plaintiffs Have No New Evidence to Merit Reconsideration .................. 7

        2. Plaintiffs Cite No Intervening Change in the Law ................... 9

        3. Plaintiffs Have Not Challenged the Court's Order ................... 9

    B. "Non-Dismissal" is not an Appropriate Sanction ................................. 9

    C. Plaintiffs are Estopped from Relitigating the Issues in this Motion ................ 11

    D. Plaintiffs' Request Pursuant to Fed.R.Civ.P. 60(b)(3) Must be Rejected .......... 13

        1. Plaintiffs Have Not Satisfied the Burden Required by Rule 60(b)(3) ................................................................................ 13

            a. Plaintiffs Failed to Establish Fraud ............................. 14

            b. Plaintiffs Have not Established any Other "Misconduct" .......... 15

            c. Plaintiffs Cannot Show Substantial Interference ....................... 16

        2. Plaintiffs Also Failed to Demonstrate Fraud on the Court...................... 17

    E. Plaintiffs' Timeline Should be Stricken .......................................... 18

IV. CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AccuSoft Corp. Palo*,
    237 F.3d 31 (1st Cir. 2001) ................................................................................. 10

*Amax, Inc. v. Dresser Indus., Inc.*,
    No. 92-2230, 1993 U.S. App. LEXIS 1942 (7th Cir. Feb. 4, 1993)................................10, 11

*Anderson v. Cryovac, Inc.*,
    862 F.2d 910 (1st Cir. 1988) ................................................................................. 16

*BankAtlantic v. Blythe Eastman Paine Webber*,
    12 F.3d 1045 (11th Cir 1994) ................................................................................. 15

*Blake Assoc., Inc. v. Omni Spectra, Inc.*,
    118 F.R.D. 283 (D.Mass. 1988) ............................................................................. 9

*Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*,
    771 F.2d 5 (1st Cir. 1985) ..................................................................................... 15

*Broyhill Furniture Indus. v. Craftmaster Furniture Corp.*,
    12 F.3d 1080 (Fed. Cir. 1993) ............................................................................... 18

*Claredi Corp. v. Seebeyond Technology Corp.*,
    No. 4:04CV1304 RWS, 2007 WL 735018 (E.D.Mo. Mar. 08, 2007)................................. 15

*Cresswell v. Sullivan & Cromwell*,
    771 F. Supp. 580 (S.D.N.Y. 1991), *aff'd mem.*, 962 F.2d 2 (2d Cir. 1992) ........................ 11

*Davis v. Lehane*,
    89 F. Supp. 2d 142 (D. Mass. 2000) ...............................................................7, 8, 9

*Feldstein v. New York City Dept. of Consumer Affairs*,
    804 F. Supp. 471 (E.D.N.Y. 1992) ......................................................................... 12

*Froudi v. United States*,
    22 Cl. Ct. 290, 300 (1991) ..................................................................................... 7

*Gonzalez-Pina v. Guillermo Rodriguez*,
    407 F.3d 425 (1st Cir. 2005) ................................................................................. 11

OHS West:260562194.8

*Kennedy v. Ford Motor Co.*,
  80 Fed. Appx. 100, 2003 WL. 22476273 (9th Cir. 2003)................................... 10

*Marquis Theatre Corp. v. Condado Mini Cinema*,
  846 F.2d 86 (1st Cir. 1988) ............................................................................. 15

*Metrokane, Inc. v. Built NY, Inc.*,
  2008 U.S. Dist. LEXIS 69272 (S.D.N.Y. Sept. 3, 2008)................................... 15

*Montana v. United States*,
  440 U.S. 147 (1979).......................................................................................... 12

*Muniz v. Rovira-Martino*,
  453  F.3d 10 (1st Cir. 2006) ........................................................................13, 16

*O'Reilly*,
  747 F.2d at 823 ................................................................................................ 12

*O'Reilly v. Malon*,
  747 F. Supp. 820 (1st Cir. 1984) ................................................................11, 12

*Phoenix Four, Inc. v. Strategic Resources Corp.*,
  No. 05 Civ. 4837(HB), 2006 WL. 1409413 (S.D.N.Y. May 23, 2006) .............. 15

*Palmer v. Champion Mortgage*,
  465 F.3d 24 (1st Cir. 2006) ............................................................................... 7

*Qualcomm Inc. v. Broadcom Corp.*,
  No. 05CV1958-RMB, 2008 WL. 638108 (S.D. Cal. Mar. 05, 2008) .................. 15

*R&R Sails Inc. v. Insurance Co.*,
  251 F.R.D. 520 (S.D. Cal 2008)........................................................................ 15

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*,
  490 F.3d 86 (1st Cir. 2007) ............................................................................... 13

*Renfro v. City of Emporia*,
  732 F. Supp. 1116 (D. Kan. 1990), *aff'd*, 948 F.2d 1529 (10th Cir. 1991), *cert.
  dismissed*, 503 U.S. 915 (1992)......................................................................... 7

*Santopadre v. Pelican Homestead & Sav. Ass'n*,

OHS West:260562194.8

937 F.2d 268 (5th Cir. 1991) ............................................................. 12

*Sea-Land Servs. v. Gaudet,*
414 U.S. 573 (U.S. 1974) ................................................................. 12

*US v. One Star Class Sloop Sailboat,*
458 F.3d 16 (1st Cir. 2006) ............................................................. 16

*United States v. President & Fellows of Harvard College,*
323 F. Supp. 2d 151 (D. Mass. 2004) ................................................ 14

*Universal Oil Products Co v. Root Refining Co,*
328 U.S. 575 (1946) ........................................................................ 16

*Viskase Corp. v. Am Nat'l Can Co,*
979 F. Supp. 697 (N.D. Ill. 1997) ..................................................... 15

*Wolters Kluwer Fin. Servs. v. Scivantage,*
525 F. Supp. 2d 448 (S.D.N.Y. 2007) ............................................... 15

## STATE CASES

*Barrett Associates, Inc. v. Aronson,*
346 Mass. 150, 190 N.E.2d 867 (1963) ............................................. 14

*Pina v. McGill Dev. Corp.,*
388 Mass. 159 (1983) ...................................................................... 18

OHS West:260562194.8

# I.    **INTRODUCTION**[1]

Plaintiffs' "sanctions" motion should be denied.  Plaintiffs ask the Court both to reconsider its own June 3, 2008, Order denying the production of documents and to overturn Judge Ware's June 25, 2008, Order enforcing the parties' Settlement Agreement.  This case is settled, and further re-litigation of issues is unnecessary.

Plaintiffs assert here the same arguments regarding the alleged obligation to produce documents that ConnectU presented separately in June to this Court and to the Northern District of California.  Both courts rejected those arguments, resulting in the enforcement of the parties' Settlement Agreement.  Plaintiffs are now estopped from re-litigating this issue.

On the merits, should the Court choose to reach them, Plaintiffs' motion is unavailing.  Plaintiffs identify no sanctionable conduct.  Plaintiffs concede that, at the time they settled this matter, they were aware discovery was incomplete and that thousands of instant messages – including those at the heart of this motion – had yet to be produced.  Not a single order from this Court ever compelled Facebook to produce any of the discovery that Plaintiffs claim necessitates the undoing of their settlement agreement.

As both this Court and Judge Ware found, Plaintiffs were aware of the litigation landscape (including the rolling production of documents) when they voluntarily engaged in mediation, agreed to stay discovery, and executed the Settlement Agreement.  Plaintiffs cannot now undo that settlement under the guise of Rule 60(b)(3) or the Court's inherent powers.

---

[1] This Motion should be denied pursuant to Local Rule 1.3.  Plaintiffs refused to meet and confer as required by Local Rules 7.1(a)(2) and 37.1(a)-(b).  Plaintiffs asked to confer regarding this motion.  Facebook responded within two days and offered to meet five days later.  Plaintiffs rejected the offer and just three days after their request, filed their motion acknowledging in their Rule 7.1(a)(2) certification that they had refused to meet-and-confer with Facebook.  Dkt. 212.

OHS West:260562194.8

## II.   FACTUAL BACKGROUND

### A.   Discovery Disputes Persisted Throughout the Litigation

Prior to settlement, these consolidated cases had an extensive and complicated history of discovery disputes. In the first action, by January 2006, Plaintiffs had filed three motions to compel production, including production of computer hard drive images. *See* Related Case ("RC"), 1:04-cv-11923, Dkts. 37, 68, 126. Facebook filed a motion for protective order. RC Dkt. 43. The Court held two hearings on these issues, granting-in-part one of the motions (Dkt. 37), but denying the others without prejudice "pending the [outcome of then-pending] jurisdictional dispute" raised by Facebook's Motion to Dismiss *See* RC 9/25/06 Dkt. Entry. After the original case was dismissed, (RC Dkt. 289), Plaintiffs filed a new complaint. Dkt. 1. Plaintiffs then re-noticed the motions to compel, asking the Court to resolve them. Dkt. 8 Rather than doing so, the Court instructed the parties to resolve their discovery disputes. Dkt. 61.

In June 2007, the parties met, and Facebook agreed to produce virtually all responsive documents to Plaintiffs' document requests. Dkts. 65, 79. Facebook began a rolling production in August 2007, producing thousands of pages each month leading up to the parties' mediation. Dkt. 200, Chatterjee Decl., Exs. 5-7. Facebook also agreed to allow Plaintiffs to forensically image and analyze Facebook's hard drives. Dkts. 65, 79. In order to protect private and privileged information, however, the parties negotiated a Protocol, pursuant to which Parmet would extract code for production. The Court resolved some disputes about the operation of the Protocol, and then entered it as an order. Dkt. 103. Immediately thereafter, Parmet began his work under the Protocol.

In December 2007, Parmet contacted Facebook about documents he located on the hard drives and believed had not been produced. Dkt. 200, Chatterjee Decl., Ex. 13. This issue was discussed at length at the June 2, 2008, hearing on Plaintiffs' Emergency Motion. 6/2/08 Hr'g

-2-

Trans., generally. The Court also held an *in camera* hearing with Parmet and Facebook. 6/2/08 Clerk's Notes. Nonetheless, the Court declined to grant the relief ConnectU requested and instead referred the matter to Judge Ware. Dkt. 204. This Court decided that "it is for Judge Ware to determine what additional discovery, if any, is necessary to the resolution of any settlement dispute between amply represented parties aware that they had not chosen to complete discovery when executing this "Term Sheet & Settlement Agreement." *Id.* at 4.

### B. Despite Ongoing Discovery Disputes, The Parties Stay Proceedings

One month prior to settlement, in January 2008, the district court in the Northern District of California set a trial date and ordered the parties to mediate that action by April 2008. Sutton Decl., Ex. C. The court declined to order a global mediation to include this case, and ConnectU initially rejected the notion as well. *Id.*, Ex. D. In early February, Plaintiffs nonetheless unilaterally agreed to mediate all cases, and proposed a February mediation date. Dkt. 200, Chatterjee Decl., Ex. 10. The parties then stipulated to a stay of discovery and motion practice. *Id.*, Ex. 11.

Prior to this standstill agreement, the parties had been discussing their respective outstanding discovery obligations. *Id.*, Exs. 5-9. Facebook apprised Plaintiffs of the status of its ongoing production and, to the extent delays occurred, the reason for the delays. *Id.* Facebook specifically stated that it hoped to produce all responsive documents, recovered from hard drives subject to the Protocol, by mid-February. *Id.*, Ex. 7. During this time, Facebook made a production that included some of the instant messages that Parmet identified. Dkt. 200 at 4.

ConnectU knew that these and other relevant documents existed and were part of the rolling production. It also knew discovery was incomplete. *Id.*, Chatterjee Decl., Exs. 5-7. In fact, less than two weeks before the parties settled this case, ConnectU filed a Renewed 56(f) Application (Dkt. 181) in which it discussed the outstanding discovery:

> Facebook has indicated in various communications between the parties since January 25, 2008 that it has an indefinite amount of further documents to produce, including thousands of pages of instant messages. Plaintiffs are currently unaware of when to expect these documents.
>
> …
>
> Defendants have stated since producing the first batch of instant message [sic] on January 25, 2008 that further instant message productions will occur on a rolling basis over the next several weeks and/or months.

Wolfson Decl., ¶¶ 10-12.

> The late production of these instant messages – with thousands more to follow – places Plaintiffs at a severe and unfair disadvantage. [citation omitted.] Defendants should not be permitted to press these motions when they are withholding important relevant documents that Plaintiffs have been fighting to obtain, at great expense, for almost three years.

Dkt. 181 at 7. ConnectU's production, like Facebook's production, was ongoing at the time of mediation. Facebook had three motions to compel discovery from ConnectU pending, one of which sought to compel compliance with a court order for the production of highly material documents in the California action. In addition, two days before mediation, this Court granted Facebook's motion to compel imaging of ConnectU's hard drives. 2/20/08 Elec. Order. The parties also had numerous disputes with respect to ConnectU's discovery. Dkt. 200, Chatterjee Decl., Ex. 7. None of the data Facebook sought was produced by ConnectU before settlement.

Despite its expectation that Facebook would produce "thousands more" instant messages and an "indefinite amount of documents," three days after filing its Rule 56(f) motion ConnectU agreed with Facebook to stay activity in this matter until after mediation. *Id.*, Exs. 11, 33. As a result, Facebook stopped producing documents. ConnectU, too, halted its discovery obligations.

OHS West:260562194.8

## C.     This Case Settled

On February 22-23, 2008, the parties voluntarily engaged in mediation to resolve this case, the then pending-First Circuit appeal, and a related case pending in the Northern District of California. Plaintiffs were represented by six attorneys from two prominent law firms. The parties reached a resolution that settled all disputes between the parties and dismissed all cases with prejudice. Dkt. 200, Chatterjee Decl., Ex. 1, ¶¶ 1, 2. The parties also agreed that the Settlement Agreement could be submitted into evidence for enforcement purposes, and that the Northern District of California had jurisdiction to do so. *Id.* ¶¶ 4, 5. The ConnectU founders expressly represented that they had no further rights or claims to assert against Facebook. *Id.* ¶ 6.

Two months after execution of the Settlement Agreement, however, Plaintiffs refused to perform. Facebook filed a motion to enforce the Settlement Agreement, which ConnectU opposed. *See* Dkt. 191. Shortly thereafter, ConnectU filed in this Court an "emergency motion" to compel production of documents, which it argued would affect the settlement. Dkt. 195.

ConnectU claimed that its expert, Jeff Parmet, discovered the existence of several instant messages located on Mark Zuckerberg's hard drive. *Id.* Parmet, a non-lawyer, considered these documents to be relevant to the litigation but believed they had not been produced by Facebook. *Id.* ConnectU, therefore, asked the Court to review the documents and require their production. *Id.* ConnectU argued that Facebook was obligated to produce them and that its alleged failure to do so should void the Settlement Agreement. 6/2/08 Hr'g Trans. at 7:18-19, 59:3-11.

The Court declined to review the documents or order their production. Dkt. 204. Instead, the Court referred the matter to Judge Ware concluding that "… if being aware of the universe of potential disputes between the parties, Judge Ware, nevertheless, chooses to enforce the settlement term agreement, that will be the end of the two cases pending before me." 6/2/08 Hr'g Trans. at 93:7-12. Following the hearing, the Court issued a Memorandum and Order in

which it found:

> From all that appears, the parties were prepared to settle their
> disputes then, despite the fact that aspects of discovery in this case
> - most pertinently for present purposes, document production - had
> not been completed and unresolved discovery issues remained
> outstanding.

Dkt. 204 at 4. The Court then forwarded its June 3 Memorandum and Order, along with the

hearing transcript, to Judge Ware. 6/11/08 Dkt. Entry. Shortly thereafter, Judge Ware issued an

order enforcing the Settlement Agreement and noted that "the parties elected to proceed with

their settlement negotiations knowing they lacked potentially relevant information." Dkt. 206 at

10-11, *citing* this Court's 6/3/08 Memorandum and Order, 2. Plaintiffs appealed.

Since Plaintiffs appealed, they have sought four stays of execution of the judgment in two

courts. Two of the motions were filed on a purported "emergency" basis. All four were denied.

Sutton Decl., Ex. B.

## III.    ARGUMENT

### A.    Reconsideration of Emergency Motion to Compel Production is Improper

Plaintiffs improperly seek reconsideration of the Court's June 3, 2008, Memorandum and

Order denying ConnectU's motion to compel production of documents. In both that motion and

the present, ConnectU incorrectly contends that Facebook had an obligation to produce

documents prior to mediation and that its failure to do so is a basis to set aside the Settlement

Agreement. 6/2/08 Hr'g Trans. 7:18-19, 45:8-46:23, 59:3-11; Mot. for Sanction ("Mot.") at 6-11

& 15-16. The Court rejected that argument at the June 2, 2008 hearing:

> Well, see, the problem with that – and it really goes back, I guess,
> to Exhibit 7, which is: You knew, at the time that you entered into
> the agreement, the settlement term agreement, that it wasn't
> complete.
> …
> The short of it is that -- at least, the argument, I think, can fairly be
> made that -- you knew it was incomplete, you knew there was a

> dispute, and, yet, you entered into the settlement term agreement.
> Now, somebody may say: Well, there is still some sort of
> obligation to provide exculpatory evidence before the negotiations
> take place; and, maybe, that's true somewhere. I'm not aware of it.

6/2/08 Hr'g Trans. 45:98-11, 46:20-47:2. The Court then rejected ConnectU's interpretation of the exact same case law ConnectU again cites relating to disclosure obligations in the context of mediation. *Compare id.* 47:3-51:24 *with* Mot. at 15-16.

"The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006); *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000) *citing Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991) (motion for reconsideration not vehicle for giving unhappy litigant additional chance to sway the judge); *Renfro v. City of Emporia*, 732 F. Supp. 1116, 1117 (D. Kan. 1990) ("A party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend."), *aff'd*, 948 F.2d 1529 (10th Cir. 1991), *cert. dismissed*, 503 U.S. 915 (1992). ConnectU offers no newly discovered facts or an intervening change in the law to support this renewed motion. Reconsideration is unwarranted; ConnectU's motion must be denied. *Davis*, 89 F. Supp. 2d at 147 (citing requisite showing for reconsideration).

### 1. Plaintiffs Have No New Evidence to Merit Reconsideration

In May, ConnectU filed its Emergency Motion asking the Court to compel production of documents identified by Parmet while searching for code on Facebook's computers. Dkt. No. 195. ConnectU argued that, at the time of the parties' mediation, it was unaware of the documents, though it acknowledged that document production was incomplete. 6/2/08 Hr'g Trans. 7:6-11. ConnectU further argued that Facebook had an affirmative obligation to produce these documents. 6/2/08 Hr'g Trans. 7:18-19, 45:8-46:23. ConnectU believed that the

OHS West:260562194.8

documents might be relevant to establishing a fraud claim which, it argued, would set aside the Settlement Agreement. 6/2/08 Hr'g Trans. 59:3-11; *see also* Dkt. 195 at 14.

In the present motion, Plaintiffs re-assert these arguments based on the notion that Facebook suppressed "critically important evidence." Mot. at 1. Plaintiffs argue that they "believed they had all of Zuckerberg's electronic communications" based on his "repeated representations" and the production of computer code on July 29, 2005.[2] *Id.*, 5. Plaintiffs acknowledge, as they did in June, that they "settled the case knowing that there was some outstanding discovery." *Id.*, 1.

In its June 3, 2008, Order, the Court declined to grant ConnectU the relief it sought. Dkt. 204. Instead, the Court referred the matter to Judge Ware, where the parties agreed to litigate the Settlement Agreement, and noted that if Judge Ware "chooses to enforce the settlement agreement," even in light of these allegations, "that will be the end of the two cases pending before" this Court. 6/3/08 Order 4. On June 25, 2008, Judge Ware issued an order enforcing the parties' Settlement Agreement.

With the exception of Judge Ware's rejection of ConnectU's arguments and enforcement of the Settlement Agreement, nothing has changed since June. All of the alleged incidents of misconduct were known to ConnectU *before* the Court denied ConnectU's Emergency Motion. Dkt. 204. Although this motion has a new title, it seeks nothing more than production of the same documents ConnectU sought in June in an effort to unwind the Settlement Agreement. Plaintiffs are not entitled to a "do over" simply because they are dissatisfied with this Court's, and Judge Ware's, prior adverse rulings. *Davis*, 89 F. Supp. 2d at 147. Further, Plaintiffs should not be permitted to challenge Judge Ware's enforcement order in this Court. Reconsideration of

---

[2] Plaintiffs contend that this production included electronic communications. In fact, the July

the courts' orders is inappropriate under the circumstances.

### 2.      Plaintiffs Cite No Intervening Change in the Law

Plaintiffs also have not satisfied their burden for reconsideration because they have not identified any intervening change in the law. *Davis*, 89 F. Supp. 2d at 147. Plaintiffs provide one case citation that ConnectU did not offer previously: *Blake Assoc., Inc. v. Omni Spectra, Inc.*, 118 F.R.D. 283, 292-93 (D.Mass. 1988). Mot. at 16. *Blake* is inapposite for two reasons. First, it does not reflect an intervening change in the law, having issued in 1988. Second, the *Blake* court sanctioned a party for violating court orders. Facebook did not violate any Court orders, nor do Plaintiffs argue they did. As a result, *Blake* is does not support Plaintiffs' argument.

### 3.      Plaintiffs Have Not Challenged the Court's Order

The only basis remaining for the Court to reconsider its previous ruling is one by which Plaintiffs establish that the June 3, 2008 Order was clearly erroneous. Plaintiffs do not directly challenge the Court's Order. Indeed, they cannot. The Court found that "the parties wanted [Judge Ware] to have jurisdiction to enforce the agreement." 6/2/08 Hr'g Trans. 66. For that reason, the Court noted that any review and assessment of the documents found by Parmet, as urged by ConnectU, would be an improper advisory opinion. *Id.* 59. Consequently, in its June 3 Order, the Court found that the matter is best resolved by Judge Ware. Dkt. 204 at 4. Judge Ware determined that no additional discovery was necessary and that Plaintiffs had not established that the alleged production failure in this Court was a basis for refusing to enforce the Settlement Agreement. Dkt. 206 at 10-11.

---

production included nothing but computer code. Sutton Decl., ¶ 8.

## B.    "Non-Dismissal" is not an Appropriate Sanction

Plaintiffs cite to no cases wherein a court set aside a settlement agreement as a sanction for a party's alleged discovery abuse.  *See,* Mot. generally.  The reason is because what limited authority exists, both within and outside the First Circuit, actually supports the notion that such a remedy is wholly inappropriate.  *See, e.g., AccuSoft Corp. Palo*, 237 F.3d 31, 45 (1st Cir. 2001) (holding that silence during settlement negotiation about factual point could not void the agreement on the theory that the silent party had violated the covenant of good faith and fair dealing); *Kennedy v. Ford Motor Co.*, 80 Fed. Appx. 100, 2003 WL 22476273, at *2 (9th Cir. 2003) (holding that plaintiff cannot seek to avoid release by arguing that it had been procured by Ford's fraud having paid an expert to change his testimony because plaintiff, before signing the release, knew of the changed testimony and suspected it to have been procured by payments even though plaintiff did not then have the proof of this that she allegedly later obtained).

A 1993 order in *Amax, Inc. v. Dresser Indus., Inc.,* No. 92-2230, 1993 U.S. App. LEXIS 1942 (7th Cir. Feb. 4, 1993) (unpublished), is particularly instructive as to why "non-dismissal" is inappropriate.  In *Amax*, much like here, the plaintiff believed prior to settlement that the defendant was "stonewalling" discovery.  *Id.* *4.  Further, at the time of settlement, the "evidence was overwhelming that" the defendant failed to comply with the *Amax* plaintiff's discovery requests.  *Id.* at 5.  Nonetheless, the court found that the plaintiff made no inquiry into particular issues, leading the court to conclude that a "reasonable person would have inquired further regarding [this issue], had the person considered [that issue] relevant to the settlement agreement."  *Id.*

Like Plaintiffs here, the *Amax* plaintiff (dissatisfied with the bargain it struck) argued that "the settlement agreement must be set aside as a sanction for the discovery abuse engaged in by" the defendant.  *Id.* *6.  The court found that "the issue is not the wrongfulness of [defendant's]

conduct, but the relevance of that conduct to [plaintiff's] decision to settle the case." *Id.* Because the *Amax* defendant made no representations that it had disclosed everything, and the plaintiff had not reasonably relied on such a representation, whatever new "smoking gun" plaintiff uncovered "did not change the circumstances on which the" settlement agreement was based. *Id.*

The same result is appropriate here. Judge Ware found, as a matter of law, that Facebook did not make any material misrepresentations during the parties' settlement negotiations. Dkt. 206 at 10. The California court also found that "the parties settled their disputes despite knowing that they were not in possession of all relevant information." *Id.* at 10-11. Contrary to ConnectU's misleading reliance on it, *Cresswell v. Sullivan & Cromwell*, 771 F.Supp. 580 (S.D.N.Y. 1991), *aff'd mem.*, 962 F.2d 2 (2d Cir. 1992), supports this view. The complete history of the rulings in the *Cresswell* matter establishes that when a party and its attorneys know document production is incomplete, they cannot use the missing documentation as a basis to vacate a settlement. *Id.* at 587. Notably, Facebook raised this issue in its Opposition to ConnectU's Emergency Motion, but Plaintiffs continue to ignore the ultimate outcome in that case. Mot. at 15-16; *see also* Dkt. 200 at 16-17. Plaintiffs' motion should be denied.

### C.     Plaintiffs are Estopped from Relitigating the Issues in this Motion

Plaintiffs are collaterally estopped from re-litigating the issues in this motion. A party may not re-litigate an issue when (1) the issue to be precluded is the same as that disputed in a prior proceeding, (2) the issue was actually litigated in the earlier proceeding, (3) the issue was determined by a valid and binding final judgment or order, and (4) the determination of the issue in the prior proceeding was essential to the final judgment or order. *Gonzalez-Pina v. Guillermo Rodriguez,* 407 F.3d 425, 430 (1st Cir. 2005). "Collateral estoppel turns on whether or not the parties had a full and fair opportunity to litigate a matter." *O'Reilly v. Malon*, 747 F.Supp. 820,

822-23 (1st Cir. 1984). The doctrine does not require a *final judgment*. *Id.*

**Issues are identical**. The issues raised by the present motion are identical to those raised in the California enforcement proceedings. *See Montana v. United States*, 440 U.S. 147, 155 (1979) ("the issues presented by this litigation are in substance the same" as those raised in the previous proceedings). Specifically, Plaintiffs contend now, as ConnectU did in June, that Facebook was obligated to turn over certain documents and its failure to do so was tantamount to fraud and thus should be punished by setting aside the parties' Settlement Agreement.

**Actually litigated**. "Actually litigated" means "those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered" in the earlier proceeding. *Sea-Land Servs. v. Gaudet*, 414 U.S. 573, 593 (U.S. 1974); *see also Santopadre v. Pelican Homestead & Sav. Ass'n,* 937 F.2d 268, 274 (5th Cir. 1991) ("If a question of fact is put in issue by the pleadings, and is submitted to the jury or other trier of facts for its determination, and is determined, that question of fact has been 'actually litigated'"). ConnectU raised the present issues in its June Emergency Motion and the subsequent California enforcement proceedings. Dkt. 195; Sutton Decl., Ex. A. The parties presented argument in both forums. At the end of each hearing, the issues were submitted to the court for determination. Judge Ware expressly rejected the arguments raised in both courts re. Dkt. 206 at 10-11. The present issues have been "actually litigated."

**Valid, binding order**. A valid, binding order means "the issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *O'Reilly*, 747 F.2d at 823; *see also Feldstein v. New York City Dept. of Consumer Affairs*, 804 F.Supp. 471, 474 (E.D.N.Y. 1992) ("any judicial decision upon a question of fact or law which is not provisional and subject to change and modification in the future by the same tribunal"). After the June

hearing, Judge Ware issued an order expressly finding that ConnectU was aware that document production was incomplete but chose to settle its disputes with Facebook nonetheless. Dkt. 206 at 10. The court added that "[w]ithout a showing by [ConnectU and its founders] of a material misrepresentation or omission in the negotiations, the Court finds no basis to decline enforcement." *Id.* at 10-11. Judge Ware has upheld his June 25 Order enforcing the Settlement Agreement in four separate rulings. Dkts. 208; 211, Ex. C; 216, Exs. 1, 2.

**Resolution was essential**. An issue is essential if it is distinctly put in issue and directly determined. *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 89 (1st Cir. 2007). The California court was asked to decide the issues presented here. ConnectU argued that Facebook was obligated to produce the documents Parmet located prior to mediation and that its failure to do so should result in unwinding the Settlement Agreement. Judge Ware adopted findings made in this Court after the June hearing and then expressly rejected ConnectU's arguments. Based on the pleadings and arguments related to the Emergency Motion here, as well as those in the California enforcement proceedings, Judge Ware enforced the parties' Settlement Agreement. The court made an express finding that it had no basis to decline enforcement absent a material misrepresentation during the settlement negotiations.

### D. Plaintiffs' Request Pursuant to Fed.R.Civ.P. 60(b)(3) Must be Rejected

Plaintiffs' request to "grant relief from final judgment" is premature. No judgment has been entered in this case. Consequently, Plaintiffs' Fed.R.Civ.P. 60(b)(3) request should be rejected.

#### 1. Plaintiffs Have Not Satisfied the Burden Required by Rule 60(b)(3)

Even if the Court were inclined to entertain this motion, Rule 60(b)(3) requires that Plaintiffs: 1) demonstrate misconduct by clear and convincing evidence; and 2) show that the misconduct foreclosed full and fair preparation of [their] case. *Muniz v. Rovira-Martino*, 453

F.3d 10, 12 (1st Cir. 2006).

### a.    Plaintiffs Failed to Establish Fraud

Plaintiffs have not shown that Facebook acted fraudulently.  To do so, Plaintiffs must demonstrate that Facebook "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." *Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867 (1963).   Plaintiffs inaccurately contend that Facebook made "repeated representations" on which Plaintiffs presumably relied.  Mot. at 5.  Facebook made no such representations.  Compare Mot. at 4A. with Schoenfeld Decl., Ex. B (Response to Request No. 173); and Mot. at 5 ("Zuckerberg agreed in May 2005 to produce documents…") with Schoenfeld Decl., Ex. D at 5-6 (Facebook Response to RFP No. 7).  Plaintiffs point to no misleading statements by Facebook.

Furthermore, in light of ConnectU's recognition in its Rule 56(f) motion that Facebook expected to produce "an infinite amount of further documents … including thousands of pages of instant messages,"(Dkt. 181, Wolfson Decl., ¶ 10), Plaintiffs cannot now reasonably contend that they believed production was complete at the time of mediation.  Indeed, Plaintiffs' complaints early in this case that "there is so much that is being withheld," (RC 3/3/06 Hr'g Trans. II-162), belie their assertion now that they had been repeatedly misled.

To the extent Plaintiffs are suggesting that Facebook's failure to produce the documents Parmet located is a fraudulent omission, this argument also fails.  "[T]here can be no actionable claim of fraud for failure to disclose in the absence of a duty to disclose." *United States v. President & Fellows of Harvard College,* 323 F. Supp. 2d 151, 200 (D. Mass. 2004).  Facebook and Plaintiffs are adversaries in multiple, contentious lawsuits.  Plaintiffs cannot reasonably contend that Facebook owed them any duty throughout the settlement negotiations.  As this

Court recognized, the parties were engaged in an arm's length negotiation. 6/2/08 Hr'g Trans. 51:10-19. No duty existed. Any purported "omission" theory must therefore fail.

### b.     <u>Plaintiffs Have not Established any Other "Misconduct"</u>

Plaintiffs erroneously rely on a number of cases involving "discovery abuses." None of these cases parallels the facts here and, thus, must be rejected. Further, not a single case cited by Plaintiffs supports the requested relief of "non-dismissal." In the most egregious cases of discovery abuse cited by Plaintiffs, the sanctioned party had willfully violated court orders – and, in some cases, repeatedly. *See BankAtlantic v. Blythe Eastman Paine Webber*, 12 F.3d 1045 (11th Cir 1994); *Wolters Kluwer Fin. Servs. v. Scivantage,* 525 F. Supp. 2d 448 (S.D.N.Y. 2007)[3]; *Marquis Theatre Corp. v. Condado Mini Cinema*, 846 F.2d 86 (1st Cir. 1988); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5 (1st Cir. 1985).

The remaining cases cited by Plaintiffs involved affirmative misrepresentations to the parties and court (*Claredi Corp. v. Seebeyond Technology Corp.,* No. 4:04CV1304 RWS, 2007 WL 735018 (E.D.Mo. Mar. 08, 2007)); *R&R Sails Inc. v. Insurance Co.*, 251 F.R.D. 520 (S.D. Cal 2008); *Qualcomm Inc. v. Broadcom Corp.,* No. 05CV1958-RMB, 2008 WL 638108 (S.D. Cal. Mar. 05, 2008)), false testimony at trial (*Viskase Corp. v. Am Nat'l Can Co*, 979 F.Supp. 697 (N.D. Ill. 1997)), production after the close of discovery (*Metrokane, Inc. v. Built NY, Inc.,* 2008 U.S. Dist. LEXIS 69272 (S.D.N.Y. Sept. 3, 2008); *Phoenix Four, Inc. v. Strategic Resources Corp.,* No. 05 Civ. 4837(HB), 2006 WL 1409413 (S.D.N.Y. May 23, 2006)[4]),

---

[3] Plaintiffs suggest that this case supports sanctioning parties in a settled case. In *Wolters Kluwer*, the parties had reached a settlement in the case after the plaintiff had moved for sanctions. After settlement, the plaintiff withdrew its motion for sanctions. The court *sua sponte* held a sanctions hearing based on the attorneys' egregious behavior. In the end, the court publicly reprimanded the attorneys but refused to impose monetary or other sanctions, because it believed the parties had incurred enough expense.

[4] Plaintiffs argue that the defendant in *Phoenix Four* was sanctioned for producing electronic data from his computer after the close of discovery. In fact, the court refused to impose

governmental seizure of property without notice (*US v. One Star Class Sloop Sailboat*, 458 F.3d 16 (1st Cir. 2006)), and bribery during trial (*Universal Oil Products Co v. Root Refining Co*, 328 US 575 (1946)).

Unlike this case, the aggrieved parties in the cited cases were placed at a severe disadvantage given the timing of the wrongdoing (*e.g.*, after discovery cutoff or trial) and the nature of the acts. Thus, where sanctions were imposed, the courts sought to compensate the aggrieved party for the prejudice it suffered. Here, Plaintiffs were not disadvantaged. They voluntarily agreed to mediate and settle their disputes with full knowledge that discovery was incomplete. Dkt. 200, Chatterjee Decl., Exs. 5-11; Dkt. 181, Wolfson Decl.

### c. Plaintiffs Cannot Show Substantial Interference

In the absence of fraud or other misconduct, Plaintiffs cannot meet their burden under FRCP 60(b)(3). Plaintiffs have not shown that Facebook Defendants substantially interfered with the "full and fair presentation of [Plaintiffs'] case." *Muniz*, at 12. Plaintiffs erroneously rely on *Anderson* to support their request for "non-dismissal." In *Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988), the plaintiff filed a motion for a new trial because it learned during the pendency of its appeal of the judgment that the defendant had withheld relevant discovery. The First Circuit found that the missing document was not itself judgment altering, but would have permitted the plaintiff to explore other areas in discovery. In addition, the defendant ignored a court order to produce the document and, in fact, "represented that it had 'produced all responsive documents in its possession … ." *Id.* at 928. The *Anderson* court found that based on the defendant's failure to produce, the plaintiff's ability to further develop its case was stymied.

---

sanctions for that late production, but instead sanctioned the defendant for having abandoned vast amounts of relevant evidence when it moved office spaces, which evidence was subsequently discarded by the landlord. Even then, the court rejected the request for non-monetary sanctions.

OHS West:260562194.8

For that reason, the court remanded the matter for rehearing on the 60(b)(3) motion because the district court had not given "appropriate consideration to" the motion to set aside the judgment. No such facts exist in this case.

In fact, before a trial date or discovery deadlines had been set, Plaintiffs voluntarily interrupted these proceedings by agreeing (after first declining) to subject this case to mediation. In January 2008, the California court ordered mediation of the California action by April 2008. Sutton Decl., Ex. C. That court and ConnectU rejected the idea of a global mediation. *Id.*, Ex. D, 11-12. Shortly thereafter, however, Plaintiffs agreed to submit this case to mediation. Dkt. 200, Chatterjee Decl., Ex. 10. Initially the parties negotiated mediation dates in April. *Id.*, Ex. 10 at 2. On February 8, however, Plaintiffs asked Facebook to move the mediation to February 22 or 23 (just days before Facebook's Summary Judgment Motion and motion to compel were to be heard in the California action). *Id.*, Ex. 10, at 1.

Concurrent with the mediation discussion, the parties were negotiating ongoing discovery issues, including Facebook's hope to have all relevant documents extracted from the Facebook hard drives and produced well before the April mediation cutoff. *Id.*, Ex. 7. In light of the impending mediation, however, Plaintiffs agreed to stay discovery and motion practice (including their own). *Id.*, Ex. 11. Notably, Plaintiffs had just filed a 56(f) motion seeking discovery, in which they complained about Facebook's repeated discovery failures. Dkt. 181. Plaintiffs also highlighted newly produced "highly relevant" documents that prompted their renewed 56(f) motion – a motion they expected would produce more highly relevant documents. *Id.*, at 7-8. Despite their grievances, Plaintiffs participated in mediation. Rather than establishing interference, Plaintiffs' conduct demonstrates they willingly settled this case, regardless of what evidence might have otherwise been available. Their motion must be denied.

OHS West:260562194.8

## 2. Plaintiffs Also Failed to Demonstrate Fraud on the Court

Plaintiffs make a passing reference to Facebook's alleged discovery abuses working a fraud on the Court. Mot. at 2. "'Fraud on the court' is defined in terms of its effect on the judicial process, not in terms of the content of a particular misrepresentation or concealment." 12-60 Moore's Federal Practice - Civil § 60.21. It is limited to fraud that seriously affects the integrity of the normal process of adjudication and defiles the court itself. *Id.*

> [F]raud upon the court should embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

*Broyhill Furniture Indus. v. Craftmaster Furniture Corp.*, 12 F.3d 1080, 1085 (Fed. Cir. 1993); *see also Pina v. McGill Dev. Corp.,* 388 Mass. 159, 165 (1983). Even if Facebook had deliberately concealed important documents, Plaintiffs have not demonstrated how such concealment affected the "judicial machinery" in this case. As Plaintiffs point out, only the parties to the California action were *required* to participate in mediation. Plaintiffs here voluntarily joined the mediation process, unilaterally placing this action in line for resolution. Plaintiffs did so despite knowing that substantial discovery was yet to be had. Plaintiffs now seek to rewrite history because they are unhappy with the deal they struck Nothing about the mediation process – a strictly private endeavor – interfered with the integrity of this Court. Any suggestion that Facebook engaged in fraud on the Court must be rejected.

### E. Plaintiffs' Timeline Should be Stricken

Plaintiffs attach a seven-page, single-spaced "timeline" as Exhibit A to the Declaration of Meredith Schoenfeld. This "timeline" pushes Plaintiffs' brief well beyond the 20-page limit allowed by Local Rule 7.1(b(4). For this reason, it should be stricken. In addition, the "timeline"

is replete with inaccuracies and argument too numerous to address in the limited space available. Two mischaracterizations deserve mention, however:

First, Plaintiffs falsely contend that Magistrate Judge Collings "ordered that ConnectU could conduct forensic discovery of electronic mirror images" of Facebook's hard drives" Mot. at 9. In fact, Judge Collings rejected Plaintiffs' motion for forensic imaging, calling it an "extraordinary remedy," (RC 11/18/05 Hr'g Trans. 25:17-22), and noting that Plaintiffs were not entitled to such an order. *Id.* 40:22-24. Instead, Judge Collings suggested that Plaintiffs first take discovery on what efforts Facebook made to identify and produce computer code. *Id.* 40:2-41:5. Plaintiffs raised the issue again in March 2006, but it went unresolved as a result of the Court's dismissal of the original action. RC 9/25/07 Dkt. Entry.

Second, Plaintiffs erroneously argue that Facebook suppressed Zuckerberg's hard drive in August 2005. Mot. at 8-10. In fact, Zuckerberg had at least two hard drives – one that is still missing and was the subject of early discussion in this case (because it very likely contained the code bases ConnectU doggedly sought). Sutton Decl., Ex. E at 6. Regardless, Plaintiffs learned by at least March 2006 that a Zuckerberg hard drive had been located and computer code produced therefrom. *Id.*, Ex. F. Moreover, until entry of the Court-ordered Protocol in September 2007, Facebook had not been ordered or otherwise required to produce any hard drives or images of them. RC Dkt. 37; Dkt. 61; Dkt. 103.

Facebook is prepared to clarify any issue related to the timeline that the Court deems necessary or appropriate. Facebook remains resolute, however, that clarification is unnecessary. Even if every alleged fact in the timeline were true, Plaintiffs' February 2008 Renewed 56(f) Motion belies any assertion that Plaintiffs were misled into settling these cases. Dkt. 181. The 56(f) motion describes a history of alleged discovery abuses and demonstrates that Plaintiffs

expected a significant amount of additional discovery in short order. They even knew the types of materials to expect, which they described as "highly relevant." Dkt. 181 at 7. Fully aware, Plaintiffs nonetheless agreed to stay discovery and motion practice in all cases in order to engage in mediation. They then signed the Settlement Agreement, which settles all disputes, dismisses all cases with prejudice, and expressly represents that Plaintiffs have no further claims or rights to assert against Facebook. Had Plaintiffs believed that Facebook's alleged discovery failings were so abusive, they could have not volunteered to mediate this case. Nothing in the timeline supports Plaintiffs' request for the unprecedented sanction of "non-dismissal."

## IV.  CONCLUSION

Plaintiffs' knew the status of discovery when they agreed to mediate this case. They are dissatisfied with Judge Ware's ruling enforcing the agreement and both courts' refusal to require production in June. Plaintiffs are appealing Judge Ware's ruling and challenge the June orders by seeking sanctions. The parties settled all disputes in February. Plaintiffs have not offered any evidence of fraud or misconduct giving rise to the relief they seek. Their motion must be denied.

/ / /

/ / /

/ / /

Dated: December 12, 2008.

Respectfully submitted,

/s/ I. Neel Chatterjee /s/
I. Neel Chatterjee (*pro hac vice*)
Monte Cooper (*pro hac vice*)
Theresa A. Sutton (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
nchatterjee@orrick.com
mcooper@orrick.com
tsutton@orrick.com

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

-21-

# CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 12, 2008.

Dated:  December 12, 2008.          Respectfully submitted,

                                        /s/ I. Neel Chatterjee /s/
                                            I. Neel Chatterjee

OHS West:260562194.8