# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA, | )<br>)<br>)<br>) CIVIL ACTION NO. 1:07-cv-10593 (DPW)<br>) |
| Plaintiffs, | ) Related Action 1:04-cv-11923 (DPW)<br>) |
| v. | )<br>) |
| FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, AND THEFACEBOOK LLC, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' REPLY TO ZUCKERBERG'S AND FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTION OF NON-DISMISSAL, OR IN THE ALTERNATIVE TO VACATE FINAL JUDGMENT PURSUANT TO F.R.C.P. 60**

**LEAVE TO FILE GRANTED ON DECEMBER 23, 2008**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. DEFENDANTS' DISCOVERY ABUSE MUST BE SANCTIONED ................................. 1

    A. Zuckerberg Offers No Excuse for His Suppression of Evidence .................................1

    B. Facebook Conceded Zuckerberg's and Its Own Suppression........................................2

    C. Zuckerberg and Facebook Ignore the Point of the Motion ............................................2

    D. Facebook Diverts Attention from Zuckerberg's and Its Own Suppression...................3

    E. Zuckerberg and Facebook Are Still Trying to Fool the Court.......................................3

    F. Phoenix Four is on Point................................................................................................4

III. THIS MOTION IS APPROPRIATE ........................................................................ 4

    A. The Contested Settlement Agreement is Not Relevant..................................................4

    B. ConnectU Does Not Seek Reconsideration of Any Previous Motion ..........................5

    C. Non-Dismissal is the Best Available Sanction .............................................................5

    D. If This Court Dismisses, the F.R.C.P. 60(b)(3) Motion is Ripe ...................................8

    E. ConnectU Did Not Refuse to Meet and Confer ............................................................11

    F. ConnectU's Timeline is Not Additional Argument.......................................................11

IV. CONCLUSION.................................................................................................. 11

# TABLE OF AUTHORITIES

## Cases

*AccuSoft Corp. v. Palo*,
   237 F.3d 31 (1st Cir. 2001) .................................................................................... 6

*Amax, Inc. v. Dresser Indus., Inc.*,
   No. 92-2230, 1993 U.S. App. LEXIS
   1942 (7th Cir. Feb. 4, 1993) .................................................................................... 7

*Anderson v. Cryovac*,
   862 F.2d 910 (1st Cir. 1988) ................................................................................. 10

*Barrett Assocs., Inc. v. Aronson*,
   346 Mass. 150, 190 N.E.2d 867 (1963) .................................................................. 9

*Broyhill Furniture Indus. v. Craftmaster Furniture Corp.*,
   12 F.3d 1080 (Fed. Cir. 1993) ............................................................................... 10

*Cresswell v. Sullivan & Cromwell*,
   668 F. Supp. 166 (S.D.N.Y. 1987) .......................................................................... 7

*Cresswell v. Sullivan & Cromwell*,
   771 F. Supp. 580 (S.D.N.Y. 1991) .......................................................................... 8

*Facebook, Inc. v. ConnectU, Inc.*,
   C 07-01389 JW (N.D. Cal. November 21, 2008) .................................................... 1

*Kennedy v. Ford Motor Co.*,
   80 Fed. Appx. 100,
   2003 WL 22476273 (10th Cir. 2003) .................................................................. 6, 7

*Phoenix Four, Inc. v. Strategic Resources Corp.*,
   2006 WL 1409413 (S.D.N.Y. May 23, 2006) ......................................................... 4

*U.S. v. President & Fellows of Harvard College*,
   323 F. Supp.2d 151 (D. Mass. 2004) ...................................................................... 9

## Rules

Fed. R. Civ. P. 34 .............................................................................................................. 9

Fed. R. Civ. P. 60(b)(3) ......................................................................................... 7, 8, 9, 10

**I.      INTRODUCTION**

Although the Opposition to ConnectU's motion for sanctions (Dkt. 224) includes Zuckerberg's name in the title, **nothing** in the body of the Opposition even attempts to explain his suppression—for 2 ½ years—of the instant messages sought by this motion, or Zuckerberg's, Facebook's, and their respective counsel's suppression of such evidence for the crucial 11 weeks preceding the February 22, 2008 mediation. Instead, Zuckerberg hides behind Facebook, and Facebook tries to divert attention from Zuckerberg's and its own wrongdoing to the issue of what ConnectU did in the time immediately preceding the mediation, which is irrelevant here. Zuckerberg, Facebook, and counsel suppressed evidence and should be sanctioned for it. In fact, Facebook even concedes such suppression. ConnectU therefore urges this Court to grant this motion and order the production of the suppressed instant messages and the other relief sought by the motion.[1]

**II.     DEFENDANTS' DISCOVERY ABUSE MUST BE SANCTIONED**

  **A.     Zuckerberg Offers No Excuse for His Suppression of Evidence**

Nowhere in the Opposition does Zuckerberg deny that he suppressed his instant messages. Every argument on every page describes only Facebook's and ConnectU's actions. Zuckerberg provides no explanation—through argument or affidavit—of his role in creating, searching for, providing to counsel, or failing to produce his own instant messages, or for why he falsely claimed that he would and did produce all of his electronic communications 3 ½ years

---

[1] On December 15, 2008, ConnectU, Inc.'s stock transferred to Facebook, as ordered by Judge Ware on November 21, 2008 in *Facebook, Inc. v. ConnectU, Inc.*, C 07-01389 JW (N.D. Cal. November 21, 2008). But this motion was filed by the co-Plaintiffs, Cameron and Tyler Winklevoss and Divya Narendra (also called the "Founders") and ConnectU as it existed before December 15, 2008 ("old ConnectU"). Thus, as used herein, "ConnectU" refers to all of the Plaintiffs. On December 23, 2008, the Finnegan law firm filed a conditional withdrawal of representation of ConnectU as it exists on or after December 15, 2008 ("new ConnectU"), and continues to represent the Founders and any residual interest of old ConnectU in matters before this Court.

ago, but did not (see Motion at 4-5). These were instant messages he sent or received, and that were in his possession and control, but he offers no excuse for why he failed to produce them. Mr. Parmet called these instant messages smoking guns. Zuckerberg has no excuse for suppressing what Mr. Parmet called "smoking guns" for 2 ½ years before the mediation, and should be severely sanctioned for doing so.

### B. Facebook Conceded Zuckerberg's and Its Own Suppression

Page 3 of the Opposition admits that in January or February 2008 "Facebook made a production that included **some** of the instant messages that Parmet identified." (Emphasis added). Facebook's admission raises the obvious questions: why not all of them, and why didn't Zuckerberg produce them 2 ½ years earlier? Neither Zuckerberg nor Facebook attempts to answer these questions. But the answers are obvious. Zuckerberg and possibly Facebook suppressed Zuckerberg's instant messages until Mr. Parmet blew the whistle, then Facebook cherry-picked the instant messages it and Zuckerberg believed were innocuous, produced them, and suppressed the remainder. ConnectU urges the Court to permit discovery regarding the details of Zuckerberg's and Facebook's suppression

### C. Zuckerberg and Facebook Ignore the Point of the Motion

Zuckerberg and Facebook attempt to shift the focus from their suppression of evidence to the fact that discovery was ongoing when the parties agreed to mediate. But this misses the point. Zuckerberg stated 2 ½ years earlier that he would and did produce all of his electronic communications, but he never did so, and he and Facebook continued to suppress them after Mr. Parmet blew the whistle on December 14, 2007.

Moreover, and importantly, Zuckerberg's and Facebook's arguments regarding outstanding discovery during that period rely entirely upon **Facebook's** statements and actions at that time. There is no evidence that Facebook was speaking for Zuckerberg at that time, who

2

was silent. Up until November 30, 2007, both Zuckerberg and Facebook were represented only by the Orrick law firm. But on that date, which was only two weeks before Mr. Parmet blew the whistle on Zuckerberg's suppression, Zuckerberg's own counsel appeared in the case for the first time (Dkt. 164). After Mr. Parmet reported the suppression to Orrick on December 14, 2007, neither Zuckerberg nor Facebook, nor their respective counsel, produced the Zuckerberg instant messages. Instead, Zuckerberg remained silent and Facebook selected only the innocuous ones for production. Such conduct deserves to be sanctioned.

**D.** **Facebook Diverts Attention from Zuckerberg's and Its Own Suppression**

Facebook notes that it began a rolling production of documents in August 2007 (Opp. at 2), but neither Zuckerberg nor Facebook explains why **Zuckerberg** did not produce his instant messages between April 2005 (when ConnectU first requested them) and August 2007, when Facebook's rolling production began. ConnectU objected to Facebook's rolling production (see Declaration of Margaret A. Esquenet, Ex. A, August 22, 2007 email between counsel), but this is beside the point. There was no reason why Zuckerberg and/or Facebook could not and should not have produced Zuckerberg's instant messages in Summer, Fall, or Winter 2007, especially in the weeks between the time Mr. Parmet blew the whistle and the late February 2008 mediation. When attention is focused on Zuckerberg's and Facebook's conduct, the need for a sanction is clear.

**E.** **Zuckerberg and Facebook Are Still Trying to Fool the Court**

As the Court knows, Mr. Parmet found Zuckerberg's instant messages on the 371-01 device. Relying on their September 2005 discovery responses, Zuckerberg and Facebook now argue that Zuckerberg had another hard drive that is still missing. (Opp. at 19). Zuckerberg and Facebook are obviously trying to divert the Court's attention from their suppression of the 371-01 device (see Motion at 5-6) by suggesting that their actions concerning 371-01 should be

3

ignored because another important hard drive allegedly is still missing. This diversionary tactic is directly contrary to Zuckerberg's and Facebook's counsel's January 7, 2006 cover letter for the CD-ROM containing a copy of the 371-01 device. That letter admits that 371-01 is **the** hard drive used by Zuckerberg at Harvard. (See Esquenet Decl., Ex. B; copy of face of TFB084, which shows that it contains 371-01, and related cover letter). This was later confirmed by Mr. Parmet's discovery of Zuckerberg's instant messages on that device (see Ex. 14 to Chatterjee Declaration in support of opposition to ConnectU's emergency motion (Dkt. 200). As ConnectU showed in its motion, as Zuckerberg ignored, and as Facebook tried to obscure, Zuckerberg and Facebook suppressed the 371-01 device.

### F. *Phoenix Four* is on Point

Zuckerberg's and Facebook's attempt to distinguish *Phoenix Four, Inc. v. Strategic Resources Corp.*, 2006 WL 1409413 (S.D.N.Y. May 23, 2006), actually proves ConnectU's point. Contrary to their claim, ConnectU does not argue that the defendants in *Phoenix Four* were "sanctioned for producing electronic data from his [sic] computer after the close of discovery." Opp. at 15 n.4. Rather, ConnectU emphasized that the *Phoenix Four* defendants were not sanctioned precisely because they produced the relevant documents **immediately** upon discovery. 2006 WL 1409413, at *7 ("a severe sanction is not warranted here where the [defendants] have come forward with the evidence"). By contrast, a severe sanction is warranted here because Zuckerberg and Facebook willfully withheld highly relevant documents long after discovering them.

## III. THIS MOTION IS APPROPRIATE

### A. The Contested Settlement Agreement is Not Relevant

As stated in the motion, ConnectU does not ask this Court to rule on the enforceability of the parties' alleged settlement, to interpret the terms of the Term Sheet, or to interfere with any

actions taken by Judge Ware or the Ninth Circuit. Whether or not the Ninth Circuit affirms the enforceability of the Term Sheet, this Court can and should act independently to punish Zuckerberg's and Facebook's discovery misconduct. Although granting ConnectU's motion would have the effect of keeping this case alive, this Court has the power to keep this case open as a sanction for Zuckerberg's and Facebook's serious discovery misconduct.

Zuckerberg and Facebook also argue that ConnectU is estopped from making this motion because these issues are being litigated in California. (Opp. at 11-13) This is simply wrong. This motion asks that Zuckerberg and Facebook be sanctioned for discovery misconduct that occurred before this Court. Their suppression of evidence in this litigation has not been litigated anywhere. Moreover, Judge Ware has never addressed Zuckerberg's and Facebook's discovery abuses described in the Motion, and has far less information about this matter to evaluate those abuses in the context of the underlying action than does this Court.

### B. ConnectU Does Not Seek Reconsideration of Any Previous Motion

Zuckerberg and Facebook argue that this motion is an improper request for reconsideration. (Opp. at 6-9) Again they are wrong. In May/June 2008, ConnectU sought the Court's guidance regarding Magistrate Judge Collings's Order that allowed forensic expert Parmet to copy and evaluate Defendants' electronic memory devices. The current motion seeks to sanction Zuckerberg and Facebook, based on facts and case law that were not previously presented to the Court.

### C. Non-Dismissal is the Best Available Sanction

The Opposition argues that non-dismissal is not an appropriate sanction. As detailed in the motion and not contradicted by Zuckerberg or Facebook, the Court always has the authority to police matters before it, including discovery misconduct, even after settlement. Moreover, as explained above (and in the Motion), ConnectU does not seek to overturn the alleged

5

agreement—the federal courts in California are dealing with that issue. Rather, ConnectU is urging this Court to sanction Zuckerberg and Facebook for the discovery abuse they committed in **this** litigation. To ensure that ConnectU is not further prejudiced by Zuckerberg's and Facebook's misconduct, the best solution is to maintain the case and allow ConnectU access to the suppressed evidence.

Facebook's cases are inapposite. *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001), addressed whether conduct that occurred during the negotiation of a settlement agreement violated the duty of good faith and fair dealing, 237 F.3d at 44-45, but did not address whether non-dismissal is appropriate where repeated discovery abuses occurred throughout the litigation. Contrary to Zuckerberg's and Facebook's suggestion, ConnectU is not asking this Court to "void" the settlement agreement. But even if ConnectU had requested such relief, *AccuSoft* does not help Zuckerberg's and Facebook. The defendant in that case did not request that the court "void the agreement," but instead argued that it was owed licensing revenue based on an agreement executed by the plaintiff and a third party while the parties were engaged in settlement negotiations. *Id.* at 44.

*Kennedy v. Ford Motor Co.*, 80 Fed. Appx. 100, 102-3, 2003 WL 22476273, at *2 (10th Cir. 2003), an unpublished decision from the Tenth Circuit decided under Oklahoma law, also provides no assistance. First, *Kennedy* held that discovery of a party's attempts to perjur expert testimony several years after the parties executed a settlement agreement did not allow the plaintiff to file a Second Amended Complaint based on fraud. 80 Fed.Appx. at 102-3. Here, ConnectU objected immediately after discovering Zuckerberg's and Facebook's sanctionable conduct. Second, the *Kennedy* court interpreted Oklahoma law regarding release provisions in settlement agreements to determine whether the plaintiff's fraud suit was barred by the

6

settlement agreement.  Here, contrary to Zuckerberg's and Facebook's contentions, ConnectU asks for non-dismissal based on previously hidden discovery abuses, but does not ask this Court to void the alleged settlement agreement.

The Seventh Circuit's unpublished order in *Amax, Inc. v. Dresser Indus., Inc.*, No. 92-2230, 1993 U.S. App. LEXIS 1942 (7th Cir. Feb. 4, 1993), is similarly inapposite.  In refusing to set aside a settlement agreement based on discovery abuses, the *Amax* court relied heavily on the plaintiff's knowledge that the defendant had not disclosed certain items relevant to the plaintiff's negligence claims.  1193 U.S. App. LEXIS 1942, at *6-7 (7th Cir. Feb. 4, 1993).  The court acknowledged that the defendant had failed to produce relevant documents throughout the discovery process, but refused to void the agreement because the plaintiff was aware that the defendant was withholding relevant documents.  Here, on the other hand, Zuckerberg represented that he had **already produced** the very documents that it is now clear he and Facebook withheld, which are highly relevant to the claims in suit.

Zuckerberg and Facebook apparently are confused about *Cresswell v. Sullivan & Cromwell*, 668 F. Supp. 166, 172 (S.D.N.Y. 1987).  ConnectU cites *Cresswell* for the proposition that, apart from this Court's ability to sanction Zuckerberg and Facebook via Rule 60(b)(3), their fraudulent conduct in negotiating a settlement is independently actionable.  Mot. at 15.

Zuckerberg and Facebook cite a later decision in the line of *Cresswell* cases in support of their argument that a settling party's knowledge that document production is incomplete means that a settlement cannot be vacated.  (Opp. at 11, *citing Cresswell v. Sullivan & Cromwell*, 771 F. Supp. 580, 587 (S.D.N.Y. 1991)).  Again, ConnectU does not seek to vacate the alleged settlement.  But even if it did, *Cresswell* does not support Zuckerberg's and Facebook's position.  *Creswell* held that a federal court has equitable powers (apart from Rule 60(b)(3) and its "fraud

7

on the court" powers) to hear an independent claim to set aside judgment, but the plaintiff must show that the grounds for relief were not caused by the plaintiff's own "fault, neglect or carelessness." 771 F. Supp. at 585. Contrary to Zuckerberg's and Facebook's contention, the *Creswell* plaintiff did not merely have general knowledge that document production was incomplete, but rather had specific knowledge that particular documents relevant to its case were in the defendant's possession at the time of settlement. The plaintiff chose not to inquire about the additional documents, and did not press the defendant with document requests and deposition notices. *Id.* at 587 ("[the plaintiff] had adequate knowledge and opportunity to uncover any wrongdoing on [the defendants'] part, and [] his failure to do so constitutes a basis for denying [the plaintiffs] their requested relief.").

Here, on the other hand, Zuckerberg claimed early in the litigation that he had produced all of his electronic communications. Two years then passed, but neither Zuckerberg nor Facebook produced Zuckerberg's instant messages or corrected his statements. Even after Mr. Parmet blew the whistle, Zuckerberg and Facebook, and/or their counsel, continued to suppress the instant messages. ConnectU did not know about Parmet's whistle-blowing, Zuckerberg's counsel was silent, and ConnectU knew only what Facebook's counsel chose to reveal. Unlike the *Creswell* plaintiff, the Founders' and ConnectU's request for relief is directly premised on Zuckerberg's and Facebook's misconduct, not by their own fault, neglect, or carelessness.

Under the circumstances, nondismissal is an appropriate sanction.

### D.     If This Court Dismisses, the F.R.C.P. 60(b)(3) Motion is Ripe

As this Court knows, the Special Master in the California case has filed Motions to Dismiss this case, as ordered by Judge Ware. If the Court enters a judgment dismissing this action, then it should also consider ConnectU's request to set aside such judgment based on Fed. R. Civ. P. 60(b)(3).

Facebook first cites the standard for a motion under Fed. R. Civ. P. 60(b)(3) (essentially, misconduct that forecloses the full an fair preparation of a case) (Opp. at 13) and then argues in the face of all of the facts ConnectU presented that ConnectU has not established fraud. (Opp. at 14) Zuckerberg's and Facebook's citation to *Barrett Assocs., Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867 (1963), is also misleading. While *Barrett* outlined the appropriate standard for a fraud claim under Massachusetts law, the court did not consider fraud in the context of Rule 60(b)(3).

Similarly, *U.S. v. President & Fellows of Harvard College,* 323 F. Supp.2d 151 (D. Mass. 2004), is not relevant because it does not discuss Rule 60(b)(3). Zuckerberg and Facebook cite *Harvard College* for the proposition that their failure to produce documents cannot constitute fraud, absent a duty to produce documents. But they cite a portion of the *Harvard College* that discusses whether the defendants committed fraud by failing to disclose conflicts of interest when contracting with the U.S. government, 323 F. Supp.2d at 200. It does not discuss fraud in the context of Rule 60(b)(3) and/or the duties that parties engaged in discovery owe their adversary and the court. Moreover, Zuckerberg's and Facebook's duty to produce Zuckerberg's instant messages arose because ConnectU requested them under Fed. R. Civ. P. 34, and Zuckerberg conceded that duty when he promised to produce them and represented that he had done so.

Finally, *Broyhill Furniture Indus. v. Craftmaster Furniture Corp.,* 12 F.3d 1080, 1085 (Fed. Cir. 1993) does not help Zuckerberg and Facebook because Zuckerberg and Facebook defrauded this Court. Fed. R. Civ. P. 60(b) requires that motions made under the Rule be filed within one year of judgment. In *Broyhill*, the Court was considering whether the Rule 60 motion made by Craftmaster, submitted four years after the consent judgment at issue in the case, could

9

be considered under a fraud standard, thereby circumventing the one year requirement. The *Broyhill* court held that where there is fraud on the court, the time limitation does not apply. Facebook argues that *Broyhill* stands for the proposition that discovery abuses do not work a fraud on the court under Rule 60(b)(3) because such abuse does not subvert the integrity of the judicial process. (Opp. at 18). This may be accurate where the motion is not timely filed. Here, however, there is no issue that ConnectU filed a timely motion. Facebook further argues that even if it did conceal documents, such abuse may have affected the mediation but did not affect the judicial machinery of the case, and accordingly Rule 60(b)(3) does not apply. (Id.). Facebook and Zuckerberg's suppression of evidence, even after representing to the parties and to the Court that the documents at issue had been produced, constitutes fraud on the court.

Zuckerberg's and Facebook's willful, coordinated, and relentless pattern of discovery abuses—as described in ConnectU's opening brief and the discovery timeline—prejudiced ConnectU, made a mockery of this Court and its rules and processes, and warrant setting aside any judgment dismissing this case. Such conduct subverted the integrity of the Court and its rules and processes. Zuckerberg and Facebook also argue that "[n]othing about the mediation process—a strictly private endeavor—interfered with the integrity of this Court." (Opp. at 18). It was their pattern of discovery abuse throughout this litigation, leading up to the mediation, that interfered with the integrity of this Court.

Moreover, a party does not need to prove fraud to prevail under Fed. R. Civ. P. 60(b)(3). *Anderson v. Cryovac*, 862 F.2d 910 (1st Cir. 1988), makes clear that even an accidental omission may be sufficient to trigger the Rule. Zuckerberg's and Facebook's suppression of evidence severely prejudiced ConnectU, particularly given the timing of their wrongdoing. This Court anticipated that it may need to hold additional hearings in connection with this case, noting that

10

"we'll go step by step." (June 2, 2008 Hr'g Trans. p. 66-67). ConnectU is now taking the steps required to protect its rights, and its motions for sanctions should be granted.

### E. ConnectU Did Not Refuse to Meet and Confer

Contrary to Zuckerberg's and Facebook's argument (Opp. at 1, fn. 1), ConnectU did not refuse to meet and confer. Rather, after ConnectU requested a meet and confer, the parties agreed that such a meeting would be futile. (See Esquenet Decl., Ex. C).

### F. ConnectU's Timeline is Not Additional Argument

ConnectU submitted a timeline of discovery events to aid the Court in understanding the long and complicated history of discovery in this matter. ConnectU supported each of the facts in the timeline with documentary evidence, which Zuckerberg and Facebook did not controvert. The timeline is an appropriate appendix and should stand. Nevertheless, all of the discovery abuses committed by Zuckerberg and Facebook are detailed in the body of the motion, and all of the documentary evidence, are independent exhibits to the Schoenfeld and Hornick declarations.

## IV. CONCLUSION

Zuckerberg and Facebook suppressed evidence, which prejudiced ConnectU's ability to evaluate the case and Zuckerberg's and Facebook's settlement offer. This misconduct warrants sanctions. For the reasons detailed in the motion and this reply, ConnectU urges the Court to grant its motion and the requested relief.

December 23, 2008                              Respectfully submitted,

/s/ John F. Hornick

John F. Hornick (*pro hac vice*)
Thomas H. Jenkins
Margaret A. Esquenet (*pro hac vice*)
Meredith H. Schoenfeld (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Daniel P. Tighe (BBO# 556583)
GREISINGER, TIGHE, and MAFFEI, L.L.P.
176 Federal St., Boston, MA  02110
Telephone:  (617) 452-9900
Facsimile:   (617) 452-0900
dtighe@gtmllp.com

Attorneys for Plaintiffs Cameron
and Tyler Winklevoss, Divya Narendra, and old
ConnectU, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 23, 2008.

/s/ John F. Hornick
John F. Hornick