UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br>          Plaintiffs,<br>v.<br>FACEBOOK, INC. MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, AND THEFACEBOOK LLC,<br>          Defendants. | CIVIL ACTION NO. 1:07-cv-10593 (DPW)<br><br>Related Action No. 1:04-cv-11923 (DPW) |

**CONNECTU, INC.'S MEMORANDA IN SUPPORT OF**
**CONNECTU, INC.'S MOTION TO DISQUALIFY COUNSEL**

      ConnectU hereby moves this Court to disqualify the law firms of Boies, Schiller & Flexner LLP ("BSF"), Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan") and Griesinger, Tighe & Maffei, LLP ("GTM") from continuing to represent ConnectU, Inc. ("ConnectU") as well as the founders of ConnectU -- Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra ("ConnectU Founders") -- based on a conflict of interest in violation of the Supreme Judicial Court Rule 3.07, Massachusetts Rules of Professional Conduct 1.7 and 1.9 as adopted per Local Rules of the United States District Court for the District of Massachusetts, Rule 83.6(4)(B).[1] In accordance with Local Rule 7.1, ConnectU hereby submits the following memoranda in support of its Motion to Disqualify Counsel.

## INTRODUCTION

      This case presents the rare circumstance of a transfer in ownership of a corporate party in the middle of litigation. This unusual circumstance is the result of a settlement agreement that

---

[1] ConnectU has also filed a similar motion to disqualify BSF and Finnegan in the related appeal in the Ninth Circuit Court of Appeals, Call Nos. 08-16745, 08-16849, 08-16873 (consolidated).

transferred complete control of ConnectU from the ConnectU Founders to the other party in the litigation -- Facebook.  Although the factual circumstances may be uncommon, the ethical implications for the attorneys who previously represented both ConnectU and the ConnectU Founders are neither complex nor unusual. The present situation compels that the complex relationship between the attorneys and their respective clients be addressed now -- not, as opposing counsel might suggest, as gamesmanship or "harassment" of counsel and their clients[2]----but rather, to ensure the integrity of the process going forward.  Disqualification is a logical and predictable course of action in light of the change in ownership and control of ConnectU.

When attorneys begin representing joint clients and, later, actual adversity develops between these clients, the attorneys are precluded from representing either former joint client against the other in the absence of their consent.  That is precisely what has occurred in this case. BSF, Finnegan, and GTM previously represented joint clients -- ConnectU and the ConnectU Founders.  Yet, when ownership of ConnectU transferred from the ConnectU Founders to Facebook as a result of a court-enforced settlement, a direct and palpable conflict between ConnectU and the ConnectU Founders developed.  Moreover, ConnectU does not consent to BSF, Finnegan, and GTM's further representation of it or the ConnectU Founders in this matter.

Because of that direct conflict, BSF, Finnegan, and GTM are now ethically precluded from continuing to represent the ConnectU Founders.  To allow continued representation would violate those attorneys' duties of loyalty and confidentiality to ConnectU.  ConnectU has demanded that BSF, Finnegan, and GTM withdraw from representing the ConnectU Founders; all three firms declined to do so.  Hence the necessity of this motion and ConnectU's request that the Court order the disqualification of BSF, Finnegan, and GTM from representing the ConnectU Founders.

Finally, ConnectU is entitled by law to delivery of its client files so that it may properly assess the corporation's rights and obligations, including potential litigation, and therefore

---

[2] *See* Exhibit N to the Declaration of James E. Towery, filed concurrently with this motion.

requests that the Court order delivery of those files forthwith.

## FACTUAL BACKGROUND

As this Court is no doubt aware, this action has a long and complex history. For purposes of this motion, the salient facts have less to do with the merits of the underlying case; rather, the pertinent facts for this motion relate mainly to the history of ConnectU and the ConnectU Founders' representation during the course of the instant and two other pending actions.

### A.   Settlement of the Pending Actions

In February 2008, ConnectU, the ConnectU Founders, Facebook, and Mark Zuckerberg agreed to mediate all three of the pending claims between them. At that time, there were three actions pending: *ConnectU LLC v. Zuckerberg*, Appeal No. 07-1796 (1st Cir.); *ConnectU, Inc. v. Facebook, Inc.*, Case No. 1:07-CV-10593-DPW (D. Mass.); and *Facebook, Inc. v. ConnectU, Inc.*, Case No. 5:07-CV-01389(RS) (N.D. Cal.).

At the time of mediation, Finnegan represented ConnectU and the ConnectU Founders in the California action and both Massachusetts actions, including the instant case.[3] GTM was and still remains local counsel for Finnegan in both Massachusetts actions. As for BSF, it became counsel of record for ConnectU in the instant action after the mediation on June 2, 2008. On January 13, 2009, this Court granted BSF's motions for *pro hac vice* admission on behalf of the

---

[3] In the 2004 Massachusetts action, ConnectU, LLC filed its complaint as the sole plaintiff. The ConnectU Founders were brought into the case as counterclaim-defendants. Finnegan represented ConnectU, LLC in the original filing and later, represented the ConnectU Founders on the counterclaims.
   In the 2007 Massachusetts action, Finnegan again represented ConnectU, Inc. when it filed its original Complaint. Although it is not entirely clear as to how and when the ConnectU Founders became plaintiffs in this action, they are represented by Finnegan. Finnegan subsequently filed a conditional withdrawal of its representation of ConnectU on December 23, 2008. See fn. 2.
   Finally, in the 2007 California action, Finnegan has represented both ConnectU and the ConnectU Founders. Finnegan moved to withdraw as counsel for ConnectU on December 28, 2008. Finnegan has remained counsel for the ConnectU Founders on ConnectU's appeal to the 9th Circuit. As noted earlier, ConnectU has filed a similar motion to disqualify BSF, Finnegan, and GTM with the 9th Circuit.

ConnectU Founders. GTM serves as local counsel for BSF as well.[4]

At the conclusion of the mediation, the parties signed a "Term Sheet and Settlement Agreement" ("the Settlement Agreement"), which was binding by its express terms. The Settlement Agreement stated that the parties intended to resolve all of the claims between them in exchange for certain mutual consideration, including the exchange of cash and stock. Specifically, the Settlement Agreement called for the transfer of 100% of the outstanding shares of ConnectU to Facebook and for Facebook to transfer cash and certain shares of Facebook stock to the ConnectU Founders. The Settlement Agreement also specifically stated that the U.S. District Court for the Northern District of California would retain jurisdiction for purposes of enforcing the Settlement Agreement, if necessary.

### B. Facebook's Motion to Enforce the Settlement Agreement

Shortly after the parties signed the Settlement Agreement, the ConnectU Founders refused to comply with the terms of the agreement. On April 23, 2008, Facebook filed a motion to enforce the settlement in the California court. ConnectU opposed the motion to enforce. (The ConnectU Founders did not oppose Facebook's motion.)

After briefing and oral argument, on July 2, 2008, the California court entered an order granting Facebook's motion to enforce the Settlement Agreement. During this time frame, ConnectU and the ConnectU Founders filed notices of appeal relating to the court's ruling on the motion to enforce.

### C. Transfer of Consideration

Following the California court's order granting Facebook's motion to enforce, the court

---

[4] Because the Founders (through their counsel) have refused to turn over ConnectU's files to ConnectU's new ownership, the exact details about the attorney-client relationship(s) between ConnectU, the Founders, and the three firms are unclear. As such, ConnectU is currently unable to advise this Court of the precise dates on which BSF, Finnegan, and GTM began and/or ceased representing ConnectU and/or Founders. However, it is undisputed that at some point all three firms have represented ConnectU and the Founders, as evidenced by their various applications for *pro hac vice* admission.

4

appointed George Fisher as Special Master. As Special Master, Fisher was ordered to conduct various administrative activities identified in the court's July 3, 2008 Judgment Enforcing Settlement Agreement.

Although the California court originally ordered the exchange of consideration to occur on November 24, 2008, the court extended the transfer date to December 15, 2008 in a November 21, 2008 Amended Judgment. The court afforded ConnectU the opportunity to seek a stay from the Ninth Circuit on the exchange of settlement consideration. The Ninth Circuit denied ConnectU's motion to stay on December 12, 2008.

Accordingly, on December 15, 2008, all of ConnectU's outstanding shares were conveyed to Facebook. Since that time, ConnectU has been a wholly owned subsidiary of Facebook.

### D. ConnectU's Counsel Have Thus Far Refused to Follow the Instructions of Their Client

Upon transfer of ConnectU to Facebook, ConnectU appointed a new sole officer and director. ConnectU then made several board resolutions, including the appointment of James E. Towery of the law firm Hoge Fenton Jones & Appel as ConnectU's lead counsel in all matters[5].

As lead counsel in the proceedings in the United States Court of Appeals for the Ninth Circuit, Mr. Towery contacted BSF and Finnegan on December 16, 2008, on behalf of ConnectU and advised counsel that they were no longer authorized to take action on behalf of ConnectU. In this same correspondence, ConnectU requested that its counsel at BSF and Finnegan sign substitutions of counsel. (See Exhibits A and B to the Declaration of James E. Towery.)[6]

---

[5] At this time ConnectU also determined that pursuing an appeal directly adverse to its parent company, Facebook, is not in ConnectU's interest. ConnectU stipulated with Facebook for voluntary dismissal of the appeal, and then moved to voluntarily dismiss the pending appeal in the Ninth Circuit.

[6] Similar correspondence, along with substitutions of counsel, were sent on December 22, 2008 by Mr. Towery to BSF and Finnegan in the Massachusetts litigation. (See Exhibits C and D to the Dec. of James E. Towery.)

ConnectU's lawyers at Finnegan and BSF responded to ConnectU's December 16 request on December 17 and 18 by demanding "proof" of Mr. Towery's authority to act on behalf of ConnectU -- including demanding correspondence directly from the new sole officer and director of ConnectU and copies of ConnectU's most recent board resolutions. (See Exhibits E, F, G and I to the Dec. of James E. Towery.) Although not obligated to provide such documentation, ConnectU did so on December 18, 2008 in order facilitate the transition of ConnectU's representation. (See Exhibits H and J to the Dec. of James E. Towery.) Yet, even after receiving the requested "proof," Finnegan and BSF failed to comply with their client's requests. Instead, ConnectU's lawyers at both Finnegan and BSF took the following extraordinary steps:

1. ConnectU's lawyers at Finnegan and BSF refused to sign a substitution of counsel. Instead of their signing a stipulation for substitution of counsel, BSF informed counsel that ConnectU would need to undergo the time and expense to file a motion for substitution[7]. (See Exhibit G to the Dec. of James E. Towery). Finnegan moved to conditionally withdraw as ConnectU's counsel in the Massachusetts litigation on December 23, 2008. Finnegan still represents the ConnectU Founders and the purported "residual interest[s]" of the "old" ConnectU. (See Exhibit M to the Dec. of James E. Towery);

2. ConnectU's lawyers at BSF took a further, hostile step toward ConnectU, their own client, warning that if ConnectU were to take any action adverse to BSF's other joint client -- the ConnectU Founders -- the ConnectU Founders would hold a fraudulent conveyance claim against ConnectU. (See Exhibit K to the Dec. of James E. Towery); and

---

[7] Having no alternative, ConnectU filed its motion to withdraw and substitute counsel in the Ninth Circuit appeal on December 22, 2008. On January 6, 2009, BSF filed a response to the motion to withdraw and substitute counsel wherein BSF opposed the withdrawal and substitution. Incredibly, BSF would like the Court of Appeals for the Ninth Circuit to allow it to represent a fictitious entity (i.e., the interests of "old" ConnectU). BSF presented no authority to support its right to represent the interests of a non-existent entity, nor did BSF identify who its client would be in that circumstance.

3. BSF and Finnegan refused to provide ConnectU's files to ConnectU, prejudicing ConnectU's ability to assess its pending litigation matters. (See Exhibits L and N to the Dec. of James E. Towery.)

Based on the now adverse relationship between ConnectU and the ConnectU Founders, ConnectU moves to disqualify BSF as counsel for ConnectU and to disqualify BSF, Finnegan, and GTM as counsel for the ConnectU Founders in the instant case and/or any related matter or suit. Given that ConnectU is now a wholly-owned subsidiary of Facebook, the ConnectU Founders' direct adversary, the firms' continued representation of the ConnectU Founders directly conflicts with their continued duty of loyalty and confidentiality to their former client, ConnectU.

## ISSUES ADDRESSED BY MOTION

i. The Actual Conflict Between Joint Clients ConnectU and Its Founders Requires Disqualification of Counsel from Representing Either;

ii. BSF, GTM and Finnegan Owe the Same Duties to ConnectU as to Any Former Client, and Therefore May Not Take Action Adverse to ConnectU in This Litigation; and

iii. ConnectU is Entitled to Its Entire Client Files so It May Properly Evaluate the Corporation's Rights and Obligations, Including Potential Litigation.

## ARGUMENT

A. **Applicable Law**

It is well-settled that courts have the authority to control the conduct of attorneys appearing in matters before it, including the authority to disqualify attorneys who appear before it when circumstances so warrant. *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984). This authority arises from the courts' responsibility "to protect the integrity of the judicial process, enforce its rules against transgressors, and maintain public confidence in the legal profession." *In re Bushkin Associates, Inc.*, 864 F.2d 241, 246 (1st Cir. 1989) (citing *United States v. Agosto*,

675 F.2d 965, 969 (8th Cir.)). *But cf. Adoption of Erica*, 426 Mass. 55, 58 (1997) ("[D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.").

In exercising this authority, the United States District Court for the District of Massachusetts applies Massachusetts state law to motions to disqualify counsel, including the Massachusetts Rules of Professional Conduct (hereinafter the "MRPC"). *Carta ex rel. Estate of Carta v. Lumbermens Mut. Cas. Co.*, 419 F.Supp.2d 23, 28 (D.Mass 2006); Local Rules of the United States District Court for the District of Massachusetts, Rule 83.6(4)(B). The court may also rely upon the ethical considerations found in the ABA Model Rules of Professional Conduct as guidance. *Matter of Fordham*, 423 Mass. 481, 490-491 (1996) ("Although the ethical considerations set forth in the ABA Code of Professional Responsibility and Canons of Judicial Ethics are not binding, they nonetheless serve as a guiding principle."); *cf. In re Lucas*, 317 B.R. 195, 213 fn. 12 (D.Mass.2004) ("Because the Supreme Judicial Court has since replaced the Commonwealth's Code of Professional Responsibility, *[internal citation omitted]* its continued reliance on the ABA's ethical considerations is uncertain.")

In regards to conflicts of interests involving attorneys and both their current and former clients, the court will apply MRPC Rules 1.7 and 1.9, respectively, and the pertinent case law to determine whether disqualification is warranted. Further, part of the court's analysis must be whether BSF, Finnegan, and GTM can maintain their fiduciary duties of loyalty and confidentiality to both ConnectU and the ConnectU Founders. *See Inverness Medical Switzerland GMBH v. Acon Laboratories, Inc.*, 2005 WL 1491233, 7-8 (D.Mass 2005) (quoting MRPC 1.7, Comment 4) ("[T]he focus of the court must be on whether the lawyer's loyalty to the client is threatened…[or whether] 'the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.'"); *Bays v. Theran*, 418 Mass. 685, 691 (1994) ("[T]he attorney's duty ... to preserve his client's confidences and secrets" survives the termination of the attorney-client

8

relationship).

### B. The Actual Conflict Between Joint Clients ConnectU and Its Founders Requires Mandatory Disqualification of BSF, GTM, and Finnegan from Representing Both Clients

ConnectU and the Founders are joint clients of BSF and GTM. Following the change in control of ConnectU in December 15, 2008, BSF refused to withdraw as counsel of record for ConnectU and, thus, remains counsel of record. Finnegan initially refused to withdraw but later, conditionally withdrew its representation of the "new" ConnectU. As presumably local counsel for both Finnegan and BSF, GTM likely still represents the Founders as joint clients. Applying Massachusetts law governing MRPC Rule 1.7 to BSF, Finnegan, and GTM's joint representation of ConnectU and ConnectU Founders, the Court should disqualify these firms from representing both clients in this matter.

A basic tenet of professional responsibility is that an attorney's loyalty to a client precludes that attorney from representing another party directly adverse to that client unless the client consents. *See* MRPC 1.7 Comment 2. Yet, even if the client were to consent, MRPC Rule 1.7 still prohibits representation of joint clients where a disinterested attorney could not "reasonably believe" that his or her representation of one client would not have any adverse effect on the other client; or where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *See Hilti, Inc. v. HML Development Corp.*, 2007 WL 809792, 26 (Mass.Super. 2007) (unless consent is provided, "an attorney may not simultaneously represent differing interests that are adverse to one another.") Thus, BSF, Finnegan, and GTM should be absolutely barred from representing these directly adverse clients unless: (1) both ConnectU and the ConnectU Founders consent to joint representation after appropriate consultation; and (2) counsel from BSF, GTM, and Finnegan reasonably believe that their representation of the ConnectU Founders will not adversely affect or materially limit their representation of ConnectU, and vice versa. BSF, GTM, and Finnegan

9

cannot satisfy either prong of this test.

First, ConnectU, now a wholly-owned subsidiary of Facebook, does not consent to joint representation. In fact, ConnectU has requested these firms' withdrawal altogether as counsel of record for ConnectU. Since the time the potential conflict became actual, BSF and Finnegan have not disclosed the conflict, and ConnectU never consented to waive it. After ConnectU became a wholly owned subsidiary of Facebook, ConnectU also took the precautionary step of revoking any possible prior consent (although its present management is unaware of any such prior consent). Therefore, ConnectU has not consented to BSF and Finnegan's continued representation of the ConnectU Founders.

As for the second prong, BSF, Finnegan, and GTM cannot reasonably believe that their joint representation of either ConnectU or the ConnectU Founders will not have an adverse effect on or materially limit their representation of the other client. With the 100% transfer of its stock to Facebook, ConnectU's interests are now in direct conflict with the Founders' interests. BSF, GTM, and Finnegan would, therefore, clearly be incapable of advocating the interests of one party without adversely affecting the other's interest. The Founders are essentially suing ConnectU, and counsel cannot represent opposing parties to an action. The firms will fail to adequately represent either ConnectU or the founders without breaching their fiduciary duty of loyalty to the other client. *See*, *e.g.*, *Hilti*, *supra*, 2007 WL 809792 at 26-28 (finding that attorney could not act as both receiver for company and counsel for creditor of company in receivership on the grounds that attorney owed different fiduciary duties to company and creditor); *Winter Gardens Condominium Trust v. Winter Gardens Development Corp.*, 2005 WL 1131635, 3-4 (Mass. Super. 2005) (disqualifying plaintiff's attorney where attorney was additionally plaintiff's trustee on the grounds that defendant's allegation of attorney's malfeasance as trustee might cause attorney to act counter to his fiduciary duty of loyalty to plaintiff); *cf. Booth Creek Ski Holdings, Inc. v. Asu International, LLC*, 2003 WL 21246547, 2-4 (Mass.Super. 2003) (conditioning counsel's representation of defendant upon defendant counsel's withdrawal as counsel for subsidiary of plaintiff in two California actions because even

though conflict warranting disqualification existed, no disclosure of confidential information had occurred and the counsel's continued representation would not create the "an appearance of impropriety.").

Moreover, BSF, Finnegan, and GTM cannot solve their ethical dilemma by terminating their representation of ConnectU. "[A] law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing." *El Camino Resources, Ltd. v. Huntington Nat. Bank*, 2007 WL 2710807, 12 (W.D.Mich.2007) (citing *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal.App.4th 1050, 1057 (1992)). "[T]he status of the attorney/client relationship is assessed at the time the conflict arises, not at the time the motion to disqualify is presented to the court." *Id.* (citing *Ehrich v. Binghamton Consol. Sch.*, 210 F.R.D. 17, 25 (N.D.N.Y.2002). "If this were not the case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." *See Unified Sewerage Agency of Washington County, Or. v. Jelco Inc.,* 646 F.2d 1339, 1345, fn. 4 (9th Cir. 1982).

Following the change in control on December 15, ConnectU unambiguously requested BSF and Finnegan withdraw as counsel of record in all pending litigation. Both firms refused.[8] BSF not only refused to withdraw, but attempted to extract an agreement from ConnectU in exchange for BSF's cooperation. Specifically, BSF refused to withdraw unless "Facebook, Inc. and ConnectU, Inc. agree to completely indemnify BSF from any liabilities arising from or relating to such substitution" and that counsel "confirm that ConnectU will not take any actions to interfere with the pending appeal." (See Exhibit K to the Dec. of James E. Towery.)

BSF's conduct amply demonstrates why disqualification is necessary. BSF not only disregarded its own client's direct instructions, but BSF exploited its position as ConnectU's counsel of record to advocate for its other clients, the Founders, to the detriment of ConnectU.

---

[8] As noted *supra*, Finnegan filed a "conditional withdrawal" as counsel in the Massachusetts action *ConnectU et. al v. Facebook et. al* (1:07-cv-10593) on December 23, 2008.

11

Clients should not have the burden of enforcing their counsel's ethical obligations. Under MRPC Rule 1.7, attorneys have the obligation to avoid the representation of adverse interests. *See* MRPC 1.7, Comment 1 ("The lawyer should adopt reasonable procedures…to determine in both litigation and non-litigation matters the parties and issues involved and to determine whether there are actual or potential conflicts of interest.") As soon as the conflict between ConnectU and the ConnectU Founders came into existence, BSF and Finnegan should have withdrawn *sua sponte*. Having failed to do so, BSF and Finnegan certainly should have acceded to the request of their client, ConnectU, to withdraw. This Court should grant the instant motion, and thereby disqualify BSF, Finnegan, and their local counsel, GTM, from their untenable position of representing directly adverse parties in this action.

C. **BSF, Finnegan and GTM Owe the Same Duty of Confidentiality to ConnectU as to Any Former Client, and Therefore May Not Act Adverse to ConnectU in this Litigation**

BSF and Finnegan may alternatively argue that ConnectU is a former, rather than current, client. Regardless of whether the Court considers ConnectU a current or former client of BSF and Finnegan, the Court should still disqualify the two firms, as well as GTM from continuing to represent the ConnectU Founders.

The Massachusetts Rules of Professional Conduct prohibit a lawyer from representing or continuing to represent a client in the same or a substantially related matter where the interests of the client are materially adverse to those of a former client. MRPC Rule 1.9(a); *see also* Comment 2 ("The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question."). Like Rule 1.7, MRPC Rule 1.9 permits representation where the former client consents after consultation to the attorney's representation of the new client. *Id.* Yet, ConnectU does not, and will not, consent to BSF, Finnegan, and GTM's representation of the ConnectU Founders.

The impetus behind Rule 1.9(a) is the attorney's continuing fiduciary duty to preserve a

12

client's confidences and secrets that survives well after the termination of the attorney-client relationship. *Erica*, *supra*, 426 Mass. at 60 (citing former Canon 4); *see also National Med. Care v. Home Med. of America, Inc.*, 2002 WL 31068413, 8 (Mass.Super. 2002) ("[T]he spirit of Rule 1.9 is that a law firm retains a limited duty of loyalty to a former client-it may not use a former client's confidential information against that client, and should not represent a new client in any matter where the former client reasonably should fear that its earlier confidences will be misused."). This fiduciary duty of confidentiality, however, is not implicated by every successive representation. *Id.* at 61.

Accordingly, the Supreme Judicial Court of Massachusetts has articulated a two criteria test to determine whether an attorney should be disqualified for a conflict arising between a current and former client. *Erica*, *supra*, 426 Mass. at 61; *see also ebix.com, Inc. v. McCracken*, 312 F.Supp.2d 82, 89 (D.Mass. 2004) (citing Massachusetts law). The court must first resolve whether "the current representation…[is] 'adverse' to the interests of the former client" and then determine whether "the matters of the two representations…[are] 'substantially related.'" *See ebix.com*, *supra*, 312 F.Supp.2d at 89 (quoting *Erica*, *supra*, 426 Mass. at 61).

The "substantially related," or "substantial relationship," test "'turns on whether it is 'reasonable to assume that confidential information would have been given to the attorney in the first matter that would be helpful to the adverse client in the second matter.'" *ebix.com*, *supra*, 312 F.Supp.2d at 89 (quoting *Dee v. Conference Holdings, Inc.*, 1998 WL 1247926, 2 (Mass.Super. 1998)); *see also Slade v. Ormsby*, 69 Mass.App.Ct. 542 (2007). Because the "'primary purpose of the 'substantially related' test is to preserve client confidences by avoiding an 'intolerably strong temptation' to betray them,'" the court "'must focus on whether the overlap or similarity between the two matters would potentially give rise to such a 'temptation.'" *Id.* (quoting *Dee*, 1998 WL 1247926 at 2).

Lastly, an actual breach of confidentiality is not required to compel disqualification under the Massachusetts rules. *See Bays*, *supra*, 418 Mass. at 690. "'The former client need never prove that the attorney actually misused the confidences to the client's disadvantage…[but

rather] must prove only the existence of the tempting situation." *Id.* (quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1318 (1981)).

In the present case, BSF, GTM, and Finnegan cannot dispute that the interests of ConnectU and its Founders are directly adverse or that their representation of the Founders is substantially related to their prior representation of ConnectU. A substantial relationship obviously exists because BSF, Finnegan, and GTM have represented (and BSF and likely Finnegan continue to represent) ConnectU and its Founders in the very same matter -- the present case. Consequently, the "intolerably strong temptation" stressed by the Court in formulating the "substantially related" test is paramount in this case. There is no approach at which BSF, Finnegan and GTM, could avoid breaching their duty of confidentiality to their former client, ConnectU, if allowed to represent the Founders.

It matters not whether BSF, Finnegan or GTM have actually breached their duty of confidentiality in order to disqualify counsel. Indeed, BSF may well already have committed such a breach in this action to the detriment of ConnectU. In correspondence directed to ConnectU's successor counsel, BSF attorney Michael Underhill requested that his own client -- ConnectU -- act against its interests by maintaining the Appeal to the 9th Circuit. BSF counsel threatened ConnectU with legal action on behalf of the Founders if ConnectU did not do as requested.[9] (See Exhibit G to the Dec. of James E. Towery.)

This is precisely the kind of conduct that MRPC Rules 1.7 and 1.9 are intended to prohibit. The fact that BSF, Finnegan, and GTM represent or have represented the Founders in

---

[9] Mr. Underhill wrote:

> Finally, on behalf of the Founders, we request that ConnectU not take any action that would interfere with the pending appeal. As you are probably aware, ConnectU owes substantial debts to the Founders, and ConnectU's most significant assets are its claims against Facebook and persons associated with Facebook. Consequently, we believe that any attempt by ConnectU to benefit its current shareholder by extinguishing that claim would be a fraudulent conveyance and legally actionable. (See Exhibit G to the Dec. of James E. Towery.)

14

the same litigation is enough to satisfy the substantial relationship test and compel disqualification. The additional evidence that BSF, in its representation of the Founders, has asserted claims of potential future action against ConnectU further emphasizes the need to disqualify these firms from their representation of the Founders. The Court should grant the present motion.

      i.    **A Lawyer's Duty of Loyalty and Confidentiality Is Not Altered by a Former Joint Client Relationship with Shared Confidences**

BSF, Finnegan and GTM cannot violate their duties of loyalty and confidentiality to ConnectU based on a previous joint client relationship in which ConnectU and the Founders may have waived the privilege with respect to one another's attorney-client communications with the two firms. "[A] corporation, even a corporation wholly-owned by a single person, is a distinct and separate legal entity, so representation of the corporation is distinct and separate from representation of its controlling shareholder." *New England Pro Tour, Inc. v. Hebb*, 2007 WL 1264140, 6 (Mass.Super. 2007) (disqualifying counsel from representing former shareholder where counsel previously represented both shareholder and corporation on matters "substantially related" to lawsuit). Thus, where counsel chooses to represent joint clients, he or she obligates him or herself to "'decline subsequent representations involving positions adverse to the former client arising in substantially related matters.'" *Id.* (quoting MRPC 1.9, Comment 10). As such, BSF, Finnegan and GTM's duty of loyalty to ConnectU, a distinct entity from the Founders, persists. This duty of loyalty cannot be waived by ConnectU unless ConnectU consents.

In *Dee*, the court disqualified counsel for former joint client even though the court recognized that "[t]he attorney-client privilege does not apply to disputes between joint clients." *See*, *supra*, 1998 WL 1247926 at 3-4 ("Viewed solely as a matter of preserving client confidences, there would be no problem" in counsel's representation of the former joint client). The court held that "Rule 1.9(a) [of the MRPC] does not make any exception or carve out a different test in cases where joint clients later become adversaries." *Id.* at 4. Thus, counsel's previous representation of two separate entities foreclosed its representation of one of those

15

clients in a "substantially related" matter even though those clients may have "waived" any right to confidentiality in the previous matter.

Lastly, a Fifth Circuit case applying the ABA Ethical Considerations to disqualify a lawyer in circumstances similar to those found in this case provides further guidance. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168 (5th Cir. 1979). The *Brennan's* court held that the lawyer, who had jointly represented a restaurant corporation and its multiple original shareholders, could not represent that corporation and its remaining shareholders as defendants in a later trademark dispute. *Id*. at 172. The *Brennan's* defendants argued that the duty of confidentiality embodied in Canon 4 (now ABA Rule 1.9) could not apply because as joint clients the parties had waived confidentiality with respect to one another. *Id.*. The Fifth Circuit disagreed. Citing the predecessors to ABA Rules 1.6(a) and 1.9(c), the court held:

> [T]he ethical duty is broader than the evidentiary privilege. . . . The use of the word 'information' in these [ABA] Ethical Considerations as opposed to 'confidence' or 'secret' is particularly revealing of the drafters' intent to protect all knowledge acquired from a client, since the latter two are defined terms. Information so acquired is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may be privy to it.

*Brennan's, supra,* 590 F.2d at 172, citations omitted.

Both MRPC Rule 1.9 and the current ABA Rules use the word "information," so the *Brennan's* court's reasoning still applies. MRPC Rule 1.9(b) specifically prohibits a lawyer from using confidential information acquired in the course of the prior representation to the disadvantage of the former client, or even from disclosing information relating to the representation. It does not matter that ConnectU and the ConnectU Founders may have waived confidentiality with respect to one another during the time they were joint clients. BSF, Finnegan, and GTM must still exercise their duties of loyalty and client confidentiality to ConnectU. These duties warrant their disqualification as counsel for the Founders.

### ii. A Lawyer's Duty to Preserve Corporate Client Confidences Is Not Altered by a Change in Corporate Control

The fact that there was a change in control of ConnectU on December 15, 2008, does not alter the professional responsibilities of BSF, Finnegan and GTM to ConnectU. A former corporate client is entitled to the same protection of its confidential information as any other former client. *Hebb*, *supra*, 2007 WL 1264140 at 6 ("When an attorney represents a corporation, the attorney retains his obligation of loyalty to that corporation, no matter who may be its current owner.").

In *Hebb*, the Massachusetts Superior Court disqualified counsel from representing a former member of a limited liability company in action between the LLC and member where counsel had represented both in previous matters substantially related to the present action. *Id.* at 6-9. The Court found that Rule 1.9 precluded an attorney from representing a corporation when it was controlled by one party and then representing a party adverse to the corporation when control of the corporation had transferred to another. *Id.* at 6. The attorney's duty of loyalty and confidence to the corporation did not transfer with the transfer of control. *Id.* Such is the case here. BSF, Finnegan and GTM's duties of loyalty and confidences to ConnectU did not dissolve when ConnectU's stock was transferred to Facebook. These firms, consequently, cannot represent the Founders, the prior shareholders of ConnectU, and now a party directly adverse to ConnectU.

Numerous other courts have disqualified former corporate counsel from continuing to represent shareholders following a change in corporate control. "[A] successor corporation succeeds to the prior corporation's rights and liabilities, including the prior corporation's right to protect confidential information transmitted to the prior corporation's counsel." *Waid v. Eighth Judicial Dist. Ct.,* 119 P.3d 1219, 1224 (Nev. 2005).

A leading case in circumstances analogous to the present case is *Tekni-Plex, Inc. v. Meyner and Landis*, 89 N.Y.2d 123, 127 (1996). In *Tekni-Plex,* the New York Court of Appeals affirmed disqualification of counsel for the former owner of a corporation in litigation initiated

by the corporation's buyer to remedy alleged breaches of the agreement relating to the corporation's acquisition. The court affirmed disqualification there because the attorney-client relationship continued with the newly formed entity. See also *Weasler v. Weasler Engineering, Inc.,* 596 N.W.2d 501 (Wis. App. 1999); *Thompson US, Inc. v. Gosnell,* 581 N.Y.S.2d 764 (N.Y. App. 1992); *Exterior Systems, Inc. v. Noble Composites, Inc.,* 175 F.Supp.2d 1112 (N.D. Ind. 2001).[10]

        iii.    **A Corporation's Current Management Controls Its Confidential Information -- Not Counsel, Not Former Management**

When there is a change in corporate control, the corporation's attorney-client privilege also transfers to new management. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 349 (1985). In *Weintraub*, the United States Supreme Court held that the privilege passes to new management and consequently, "[d]isplaced managers may not assert the privilege over the wishes of current managers, <u>even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties</u>." *Id.* (emphasis added).

In accord with *Weintraub*, BSF, Finnegan, and GTM may not use any confidential information learned from the Founders, and the Founders may not waive the privilege with

---

[10] ConnectU anticipates that BSF, Finnegan, and GTM may rely on *Forrest v. Baeza* 58 Cal.App.4th 65, 82 (1997) or similar cases, wherein the court disqualified the lawyer for two family-run corporations and two of those corporation's three shareholder/directors from representing the corporations, but permitted the lawyer to continue representing the shareholders on the basis that "the functioning of the corporation has been so intertwined with the individual defendants that any distinction between them is entirely fictional." Such reliance would be misplaced where *Forrest* is distinguishable from the case at hand.

    *Forrest* involved a shareholder's derivative action (and cited only cases involving derivative actions) in which the corporations were closely held. *Id*. at 74. The Founders may argue that ConnectU was a closely-held corporation, and thus, any distinction between the Founders and ConnectU was fictional as in *Forrest*. However, Massachusetts courts have held that where there is a close interaction between the corporation's attorney and the shareholders, as in a closely held corporation, a fiduciary duty arises "concurrently between the attorney and the corporation and between the attorney and the individual shareholders." *Bensetler v. Data Plus, Incorporated*, 2006 WL 392800, 4 (Mass.Super. 2006) (quoting *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich.App. 509, 516 (1981)); *Applebaum v. Verndale Corporation*, 2002 WL 1917262, 2 (Mass.Super. 2002) (disqualifying counsel for closely-held corporation and shareholders in action brought by another shareholder because counsel owed a equal duty of loyalty to each shareholder as well as the corporation). As such, BSF, Finnegan and GTM owe duties of loyalty and confidentiality to both ConnectU and the Founders that require their disqualification as counsel for both ConnectU and the Founders in the instant action.

respect to that information in order to use it on their own behalf.  MRPC Rule 1.9, moreover, serves to preclude the honest practitioner from having to choose between conflicting duties or reconciling conflicting interests. The Court should likewise disqualify BSF, Finnegan, and GTM.

Finally, whoever controls ConnectU is entitled to properly assess the corporation's rights and obligations, including potential litigation.  Thus, it is even more important that BSF, Finnegan, and GTM are not allowed unfettered use of confidential corporate information, particularly where "all corporate power shall be exercised by or under the authority of…its board of directors." M.G.L.A. 156D § 8.01.  Should this Court not disqualify BSF, Finnegan, and GTM, the Court would allow the ConnectU Founders, through BSF, Finnegan, and GTM, to operate the corporation.

### D.      ConnectU is Entitled to Its Entire Client Files

A client is entitled to its files.  MRPC Rule 1.16(d)-(e).  The United States Supreme Court has held that a successor corporation is entitled to its client file. *Weintraub, supra,* 471 U.S. at 353.  This is particularly important where those files are necessary for new management to properly assess the corporation's rights and obligations. *See*, *e.g.*, *Moeller v. Superior Court*, 16 Cal.4th 1124, 117-39 (1997).

ConnectU has an immediate and continuing need to assess its rights and obligations, including any potential litigation.  Delivery of its client files is required and imperative.  This imperative is made more obvious by Mr. Underhill's threat of litigation against ConnectU based on facts unknown to ConnectU's sole officer and director.  Therefore, ConnectU requests the Court compel BSF, Finnegan, and GTM to deliver ConnectU's complete files to ConnectU forthwith.

### RELIEF SOUGHT

For the reasons stated herein, Plaintiff ConnectU requests that this Court disqualify BSF, Finnegan, and GTM from continuing to represent ConnectU and/or the Founders in this action and all related or consolidated actions.

DATED: January 22, 2009

Respectfully submitted,
Plaintiff, ConnectU, Inc.,
By its attorneys,

/s/ James E. Towery
James E. Towery, Esquire
Alison P. Buchanan, Esquire
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113
(408) 287-9501

Peter M.Durney, BBO # 139260
Gregg P. Bailey, BBO# 638270
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110
(617) 482-8100

**CERTIFICATE OF SERVICE**

    I, Peter M. Durney, attorney for ConnectU, Inc. hereby certify that on the 22nd day of January, 2009, a true copy of the foregoing, ConnectU, Inc.'s Memoranda in Support of ConnectU, Inc.'s Motion to Disqualify Counsel, was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. Paper copies will be served upon anyone indicated as a non-registered participant.

/s/ Peter M. Durney
Peter M. Durney