# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, AND THEFACEBOOK LLC,<br><br>Defendants. | CIVIL ACTION No. 1:07-CV-10593 (DPW)<br><br>Related Action No. 1:04-cv-11923 (DPW)<br><br>**JURY TRIAL DEMANDED** |

## CONNECTU FOUNDERS' MEMORANDUM IN OPPOSITION TO CONNECTU, INC.'S MOTION TO DISQUALIFY COUNSEL

In accordance with Local Rule 7.1, the Founders of ConnectU, Inc. ("ConnectU"), Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, hereby submit the following memorandum in opposition to ConnectU's Motion to Disqualify Counsel.

## I. INTRODUCTION

As a result of a forced stock transfer, Plaintiff ConnectU is now a wholly-owned subsidiary of Defendant Facebook, Inc. Its sole director and officer is Facebook's Assistant General Counsel. Thus, Facebook, the moving force behind this motion to disqualify, is attempting to misuse its newly acquired control of ConnectU to disqualify the Founders' lawyers, gain access to the entire contents of their files, and disrupt judicial review of its own misconduct.[1]

---

[1] *See* the Founders' Motion for Sanction of Non-Dismissal, Dkt. 212, pending before this Court.

With this motion, Facebook, through its captive subsidiary ConnectU, attempts to manipulate the ethics rules to seize an unfair tactical advantage. Facebook and ConnectU seek to cripple Facebook's long-time litigation adversaries, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra (the "Founders"), by depriving them of all of their chosen counsel, some of whom have represented the Founders before this Court since this action began almost five years ago. Applicable law strongly condemns such manipulation of the rules. *See Inverness Med. Switz. GMBH v. Acon Labs.*, No. 03-11323-PBS, 2005 WL 1491233 at *4 (D. Mass. June 23, 2005) ("Courts should be 'alert that the Canons of Ethics are not brandished for tactical advantage.'") (citation omitted). Courts "should not lightly interrupt the relationship between a lawyer and her client."[2] *Adoption of Erica*, 426 Mass. 55, 58 (1997). Disqualification "is a drastic measure which courts should hesitate to impose *except when absolutely necessary.*" *Id.* (emphasis added). Massachusetts courts have repeatedly expressed "concern about the high cost to litigants and to the court system occasioned by motions to disqualify attorneys, especially when such motions are used as harassment and dilatory tactics." *See id.* at 65-66 (citation omitted); *see also ebix.com, Inc. v. McCracken*, 312 F. Supp.2d 82, 91 (D. Mass. 2005) ("warn[ing] of the misuse of such motions by parties seeking to harass their opposition") (citation omitted). In this case, not only is disqualification unnecessary, it is unwarranted and would severely prejudice the Founders by depriving them of their counsel.

The Facebook/ConnectU motion elevates form over substance. The Founders' counsel have always represented them against Facebook and Zuckerberg, and the Founders are not adverse to ConnectU. ConnectU is now aligned with Facebook only because the U.S. District Court for the Northern District of California ("Northern District") enforced the alleged settlement, which is now on appeal to the United States Court of Appeals for the Ninth Circuit. As the result of such realignment, ConnectU is now nothing more than an inactive Plaintiff and

---

[2] In deciding motions to disqualify counsel, this Court applies Massachusetts state law, including the Massachusetts Rules of Professional Conduct. *Carta ex. rel. Estate of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp.2d 23, 28 (D. Mass. 2006); Local Rules of the United States District Court for the District of Massachusetts, Rule 83.6(4)(B).

2

the Founders have no claims against it. ConnectU's recent filings in this Court and whatever future steps it may take are at the behest and for the sole benefit of its new parent, Facebook. The Founders' dispute remains solely with Facebook, Zuckerberg, and their co-Defendants.

As shown below, disqualification is unwarranted under the facts and the applicable ethical rules, and would severely prejudice the Founders by depriving them of all of their chosen counsel, who are irreplaceable at this late stage of the litigation. For these reasons, the motion should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Because of this Court's familiarity with the lengthy and complicated history of this action, only the facts and procedural history relevant to this motion are set forth below.

### A. Factual Background

This action began in 2004 after Mark Zuckerberg broke with his Harvard classmates and business partners – the Founders – and launched a social networking website, TheFacebook.com, to compete with the Founders' planned website, which was initially called Harvardconnection.com and later renamed Connectu.com. Using the Founders' ideas, the Facebook site was an instant and huge commercial and cultural success. In response, ConnectU, then Facebook's adversary, and the Founders, brought suit against Facebook, Zuckerberg, and others in this Court. Finnegan Henderson Farabow Garrett & Dunner LLP ("Finnegan") represented two of the Founders in the Massachusetts action since it was commenced in September 2004 and the third Founder since 2005. Griesinger, Tighe & Maffei, LLP ("Griesinger") became local counsel in October 2006, and Boies, Schiller & Flexner LLP ("Boies") became co-counsel for the Founders in December 2008.

### B. The February 2008 Mediation in California and Subsequent Litigation Over the Resulting Term Sheet

In February 2008, the Founders, ConnectU, Facebook, and Zuckerberg mediated all pending claims in the Massachusetts and California proceedings. The mediation was held in California and concluded with the signing of a "Term Sheet and Settlement Agreement" ("the Term Sheet"). Among other things, the Term Sheet provided for the transfer of all shares of ConnectU to Facebook in exchange for a cash payment and transfer of certain shares of Facebook stock to the Founders.

The Founders and ConnectU (then still controlled by and aligned with the Founders) soon determined that the Term Sheet was procured by fraud and invalid and challenged it before the Northern District. In a series of rulings, the Northern District held that the Term Sheet was binding and enforceable and declined to stay its implementation. Those rulings, along with the ruling dismissing the Founders from that action for lack of personal jurisdiction, are the bases of pending appeals before the Ninth Circuit.

### C. Facebook Forces ConnectU to Switch Sides

On December 15, 2008, pursuant to the Northern District's enforcement of the Term Sheet, and over the Founders' objections, all of the stock of ConnectU was delivered to Facebook. ConnectU became a wholly-owned subsidiary of Facebook, which promptly installed Mark Howitson, Assistant General Counsel for Facebook, as ConnectU's sole officer and director. *See* Exs. F, H, and J to Declaration of James E. Towery in Support of ConnectU, Inc.'s Motion to Disqualify Counsel (Towery Decl., Dkt. 263). Facebook also retained new counsel for ConnectU. ConnectU is now represented by Hoge Fenton Jones & Appel, Inc. ("Hoge") and Cornell & Gollub ("Cornell"), who entered their respective appearances in December 2008. (Dkt. 249, 258). Immediately after Facebook assumed control, ConnectU demanded that Finnegan and Boies deliver all of their files concerning their representation of ConnectU. *See* Exs. J, L, and N to Towery Decl. ConnectU then filed the instant motion, as well as a motion

with the Ninth Circuit seeking disqualification of the Founders' appellate counsel and all of counsel's files.

Finnegan and Griesinger withdrew from representing ConnectU in the Massachusetts action on or about December 23, 2008, when they filed notices of conditional withdrawal, with the caveat that they will likely return as ConnectU's counsel should the Founders regain control of ConnectU from Facebook (Dkt. 244, 246). Boies notified ConnectU's new counsel, Hoge and Cornell, that ConnectU should file a motion to substitute counsel. *See* Exs. G and K to Towery Decl. ConnectU filed such a motion in the Ninth Circuit, and Boies responded, but ConnectU has not filed such a motion before this Court. However, neither Finnegan, Griesinger, nor Boies has taken any action on behalf of ConnectU since ConnectU became a wholly-owned subsidiary of Facebook.

Also pending before this Court are the Founders' motion for sanctions against Zuckerberg and Facebook based on their willful suppression of highly relevant evidence during this litigation, despite contrary representations (Dkt. 212), and the Founders' motion to stay any dismissal of claims pending appeal to the Ninth Circuit. (Dkt. 227). ConnectU has aligned itself with Facebook and Zuckerberg in connection with these motions. (Dkt. 253, 257).

## III. <u>ARGUMENT</u>

Under the Massachusetts Rules of Professional Conduct ("MRPC"), Finnegan, Griesinger, and Boies have no conflict of interest that prevents them from continuing to represent the Founders. First, ConnectU is not a current client of Finnegan, Griesinger, or Boies; therefore there is no conflict of interest under MRPC 1.7. Neither Finnegan, Griesinger, nor Boies has taken any on behalf of ConnectU since ConnectU terminated them from representing it, switched its allegiance, and aligned itself with Facebook and Zuckerberg. Second, there is no subsequent representation in violation of MRPC 1.9(a), which governs conflicts involving former clients, in this case. The three law firms jointly and continuously represented ConnectU and the Founders in this litigation until Facebook assumed ownership of ConnectU on December 15, 2008. After

ownership of ConnectU changed hands, and ConnectU instructed the firms that they no longer represented it, the firms properly continued to represent the Founders in this case.

ConnectU also seeks to obtain the litigation files of Finnegan, Griesinger, and Boies. It is not entitled to these files. Facebook, the Founders' long-time and current adversary, cannot use ConnectU as its stalking horse to obtain its adversary's privileged and work product materials. Where, as here, the client has involuntarily switched sides, granting such disclosure would have a chilling effect on protected communications at the heart of attorney-client relations.

### A. Disqualification Under MRPC 1.7 Is Improper.

Citing Massachusetts Rule of Professional Conduct 1.7, ConnectU argues that disqualification is mandatory when lawyers or law firms jointly represent clients and an actual conflict arises between the two clients. (Dkt. 263 at 9). Rule 1.7 provides that "a lawyer shall not represent a client if the representation of that client will be directly adverse to another client." MRPC 1.7(a). The principle embodied in MRPC 1.7 does not support disqualification here. Neither Finnegan, Griesinger, nor Boies represents two clients with adverse interests before this, or any other, court. Since ConnectU became a wholly-owed and controlled Facebook subsidiary on December 15, 2008, only Hoge and local counsel Cornell have represented ConnectU and acted on its behalf. Finnegan, Griesinger, and Boies have not done so. Finnegan and Griesinger have both filed notices of withdrawal of representation of ConnectU and are awaiting action by this Court, while Boies has informed Hoge that it should file a motion for substitution of counsel, just as it did in the Ninth Circuit. The conflict that ConnectU asserts exists and that MRPC 1.7 prohibits – a lawyer arguing for opposing sides in the same proceeding – has not, and cannot not, occur here.

Moreover, ConnectU's interests (as opposed to Facebook's) are not adverse to the Founders. Neither ConnectU nor the Founders have any pending claims against the other before this, or any other, court. ConnectU is not seeking any affirmative relief from the Founders for its own benefit nor are the Founders seeking any relief from ConnectU. Instead, all that has

happened is that Facebook has used its control of ConnectU to force ConnectU to join Facebook's positions. Indeed, ConnectU's only evidence that the law firms are actually representing opposite sides in the same case is a pure technicality – the Court's docket sheet still identifies Finnegan, Griesinger, and Boies as counsel for ConnectU. That argument elevates form over substance. ConnectU knows that, upon terminating Finnegan, Griesinger, and Boies they no longer act on its behalf, regardless of the docket sheet or Hoge's failure to file a motion to substitute counsel. Under all of these circumstances, there is no basis to find that Finnegan, Griesinger, or Boies are in violation of MRPC 1.7.

ConnectU has not offered a single case that supports disqualification under these facts, where the client, not the law firm, has switched sides. The cases relied upon by ConnectU (Dkt. 263 at 10-11) are inapposite. *Hilti, Inc. v. HML Dev. Corp.*, No. 9801029B, 2007 WL 809792, *26 (Mass. Super. Feb. 13, 2007), involved a lawyer who sued a corporation under receivership while simultaneously acting as the receiver for the very same corporation in violation of MRPC 1.7. The same attorney also violated MRPC 1.7 by representing multiple creditors of the corporation under receivership who were competing for the corporation's limited assets. Unlike in *Hilti*, Finnegan, Griesinger, and Boies have not and will not act for clients with adverse interests.

*Winter Gardens Condo. Trust v. Winter Gardens Dev. Corp.*, No. 023017F, 2005 WL 1132635 (Mass. Super. Apr. 14, 2005), also has no relevance here. It involved a lawyer who was disqualified from representing a condominium association in a suit over alleged construction defects against the condominium developer. The lawyer owned one of the condos and ended up as a witness called by the developer to provide important testimony to undermine the claim being brought by the lawyer's client. *Booth Creek Ski Holdings, Inc. v. ASU Int'l, LLC*, No. 014919, 2003 WL 21246547 (Mass. Super. May 12, 2003), actually supports the Founders. In that case the court held that the withdrawal of a firm from adverse representations (albeit in unrelated matters) eliminated any basis for disqualification. *Id.* at *1, 4.

7

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1057 (Cal. Ct. App. 1st Dist. 1992), is similarly unavailing. In *Truck*, a law firm was disqualified because it had commenced a new matter, with full knowledge that it conflicted with several ongoing representations. The firm attempted to cure the conflict by withdrawing. The court held that "a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing." *Id.* The *Truck* court specifically distinguished the present situation, finding that where the conflict was not created by the law firm's conduct, withdrawal precludes application of the concurrent representation rule. *Id.* at 1059. Unlike in *Truck*, where the law firm deliberately entered into a second representation knowing there was a conflict, Finnegan, Griesinger, and Boies did nothing to create any conflict. Like *Truck*, *Unified Sewerage Agency of Washington County, Oregon v. Jelco Inc.*, 646 F.2d 1339 (9th Cir. 1981), which involved a conflict that resulted from an affirmative decision of the law firm to accept a conflicting representation, does not support disqualification. *Unified* did not involve a scenario where a client switched sides, and, moreover the court in *Unified* affirmed the lower court's denial of disqualification.

### B. Counsel Should Not Be Disqualified Under MRPC 1.9(a).

ConnectU argues that even if it is seen as a former rather than current client of Finnegan, Griesinger, and Boies, these firms should still be disqualified from continuing to represent the Founders. Massachusetts Rule of Professional Conduct 1.9(a) states that a lawyer may not represent a person in the "same or a substantially related matter" if that person's interests "are materially adverse to the interests of the former client." This Rule restricts lawyers from knowingly undertaking subsequent representations that are adverse to former clients. *E.g.*, MRPC 1.9(a), Comment [2] ("The underlying question is whether the lawyer was so involved in the matter that the *subsequent representation* can be justly regarded as a changing of sides . . ."); Comment [10] (referring to lawyer's obligation to decline "*subsequent representations*");

8

Comment [12] (discussing waiver of disqualification from *subsequent representation* by former clients) (emphasis added). Rule 1.9 only applies where a lawyer is adverse to a former client.

In this case, there is neither a subsequent representation nor an adverse representation. ConnectU is now simply an inactive plaintiff in this action. The three law firms jointly and continuously represented ConnectU and the Founders in this litigation until Facebook assumed ownership of ConnectU on December 15, 2008. After ownership of ConnectU changed hands, and ConnectU instructed the firms that they no longer represented it, they continued to represent the Founders. The firms have not switched sides to litigate a new case against ConnectU on behalf of the Founders. Instead, they remain counsel to the Founders after a change in circumstance (the acquisition of ConnectU by Facebook), not of the lawyers' making, causing the interests of the Founders and ConnectU no longer to be aligned. Under such circumstances, and in light of the high bar for disqualification, as detailed below, courts have not disqualified lawyers from continuing to represent their long-standing clients.

ConnectU's argument requires the Court to ignore its (and Facebook's) central role in creating the situation of which it now complains and to apply a rule designed to protect confidentiality as a device to separate long-time clients from their lawyers. ConnectU's effort to divorce the ethics rules asserted in its motion from the factual circumstances is contrary to the repeated admonitions of Massachusetts courts. Motions to disqualify are "intensely fact specific" and should be granted only when the representation in question would "taint[ ] the legal system." *Slade v. Ormsby*, 872 N.E.2d 223, 226 (Mass. App. Ct. 2007) (citation omitted); *Inverness Med*, 2005 WL 1491233 at *4 (citation omitted).

Where the client, not the lawyers, changes sides, the cases support the Founders. In *Bass Pub. Ltd. Co. v. The Promus Cos., Inc.*, No. 92-0969, 1994 WL 9680 (S.D.N.Y. Jan. 10, 1994), Holiday Corp. agreed to sell its Holiday Inn business to Bass, while retaining other assets. Under the terms of the deal, Holiday Corp. became a subsidiary of Bass, while the non-Holiday Inn assets were transferred to a new corporation called Promus. Latham & Watkins represented Holiday Corp. in its negotiations with Bass leading up to the sale. After the transaction closed,

Bass sued Promus for breach of contract and other claims, and sought to disqualify Latham. The court recognized that this was not the typical former client situation where the attorney switches sides after the representation of a former client has ended. *Id.* at *6. Instead, the court rejected disqualification because "'it [was] the client, and not the attorney, who has changed position.'" *Id.* at *6-7 (citations omitted).

Similarly, in *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303 (S.D.N.Y. 2006), the court denied disqualification in a lawsuit between (i) the former owner of a corporation and (ii) the corporation sold by the former owner and the buyers. The lawyer had represented both the former owner and the corporation prior to the sale. Like ConnectU, the corporation that had changed hands asserted that it was a former client of the lawyer and that the current lawsuit was related to the lawyer's work for the corporation. The court denied the disqualification motion because it "would not serve the purpose of protecting a former client's expectation of loyalty and confidentiality. It is [the clients], rather than [the lawyer], that have changed positions from alignment with [the seller and former owner] to alignment with [the buyers]." *Id.* at 311. As in the present case, the lawyer, unlike the client, had "consistently represented" the same interests. *Id.*

The two decisions relied on by ConnectU, *New England Pro Tour, Inc. v. Hebb*, No. 06-4901-BLS2, 2007 WL 1264140 (Mass. Super. Apr. 18, 2007), and *Dee v. Conference Holdings, Inc.*, No. 976608, 1998 WL 1247926 (Mass. Super. July 14, 1998), are distinguishable. Both involve subsequent new representations where the lawyer, not the client, switched sides and became indisputably adverse to a former client. In *New England Pro Tour*, the lawyer represented a corporation and its main shareholder in negotiating the sale of the corporation and then later represented the shareholder in a subsequent action brought by the corporation against the shareholder for fraudulent conveyance. The court concluded that the lawyer's representation in the subsequent lawsuit "can be justly regarded as a changing of sides in the matter in question." *Hebb*, 2007 WL 1264140 at *5. In *Dee*, a lawyer represented an employee and his new employer in a case brought by the employee's former employer alleging breach of a non-

10

compete agreement. After that case was resolved, the employee was terminated by his new employer, and the employee sued. In this second matter, the employee's former lawyer chose to represent the corporation against his former client. *Dee*, 1998 WL 1247926 at *1. In both *New England Pro Tour* and *Dee*, after the initial joint representation had concluded, the law firm chose sides and elected to represent one of its former clients in a new lawsuit against the other. Nothing of the sort has occurred here.

Several federal courts of appeals have concluded that where one client out of a group of former jointly represented clients retains a different attorney and asserts a different interest, disqualification is not appropriate under the "substantial relationship" test contained in MRPC 1.9 and also in its counterparts in other jurisdictions. In *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977), the Court denied a disqualification motion brought by one of a group of former joint clients. As with ConnectU and the Founders when they were jointly represented, the party seeking disqualification knew that any information provided during the joint representation "would certainly be conveyed" to the other clients. *Id.* Under those circumstances, the Court held that "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Id.*

Even more pertinent is *Christensen v. United States District Court for the Central District of California*, 844 F.2d 694, 698-99 (9th Cir. 1988) where the Court similarly denied a motion for disqualification advanced in the same context: one formerly jointly represented client seeking to disqualify the lawyers that formerly represented it and others. Like *Allegaert*, the court held that "the substantial relationship test [contained in the California equivalent to MRPC 1.9] is inapplicable when the former client has no reason to believe that information given to counsel will not be disclosed to the firm's current client." *Id.* at 699.

In deciding whether to grant a motion to disqualify, the Court "should attempt 'to reconcile an individual's right to counsel of his choice with the obligation of maintaining the highest standards of professional conduct and the scrupulous administration of justice.'"

11

*Inverness Med.*, 2005 WL 1491233 at *4 (citation omitted). Finnegan, Griesinger, and Boies have long served as counsel to the Founders and, as explained above, there is no risk to the integrity of the judicial system by having them continue as counsel. Because the law firms did not undertake a subsequent representation that is adverse to ConnectU, and ask only to continue as counsel on behalf of the Founders in the original representation, to disqualify them and deprive the Founders of their chosen counsel would inflict needless hardship on the Founders with no demonstrable benefit to the integrity of the judicial system. Any new counsel would be forced to learn the case and its long and complex history from scratch. The Founders' counsel cannot be replaced without severe prejudice to the Founders.

### C.     ConnectU Is Not Entitled to Counsel's Files.

Stripped to its essence, Facebook, through its captive subsidiary ConnectU, is asking this Court to order that its adversaries' counsel produce to Facebook their entire files relating to this action.[3] The guise that these files somehow belong to ConnectU is a smokescreen to cripple Facebook's adversaries by peering into their counsel's attorney-client and work product materials. Granting ConnectU's request for the delivery of its client files would eviscerate fundamental considerations underpinning the attorney-client privilege, work product protections, and applicable Rules of Professional Conduct.

The attorney-client privilege permits a client to confide freely in an attorney with the expectation that the communications will remain private and undisclosed to adversaries. *See, e.g., In re John Doe Grand Jury Investigation*, 562 N.E. 2d 69, 70 (Mass. 1990). Courts commonly reject arguments premised on countervailing policy considerations, or technical applications of rules that, if adopted, would threaten this privilege. *Id.* (in the interest of justice, legal assistance "can only be safely and readily availed of when free from the consequences or the apprehension of disclosure"), *quoting Hunt v. Blackburn*, 128 U.S. 464, 470 (1888), *citing*

---

[3] ConnectU has filed a separate motion with the Ninth Circuit also seeking counsel's files.

*Hatton v. Robinson*, 14 Pick. 416, 421 (1833). Similar policies support protection of attorney work product. *See* RESTATEMENT 3D OF LAW GOVERNING LAWYERS, § 46, cmt. c (2000) (the "need [of attorneys] to be able to set down their thoughts privately in order to assure effective and appropriate representation warrants keeping such documents secret").

Ordering disclosure of attorney files in this case is the equivalent of giving them to Facebook. ConnectU's sole director and officer is Mark Howitson, Facebook's Assistant General Counsel. Disclosure would destroy all of the various protections of confidentiality inherent in attorney-client relationships. For instance, if these files are reviewed by attorney Howitson or anyone else connected to Facebook, it would thereafter be impossible to "unscramble the eggs" if the Term Sheet is invalidated and ConnectU is returned to the Founders. *Cf. Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (staying production of documents pending outcome of appeal because "[o]nce the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time. The status quo could never be restored."). The Founders and Facebook remain adverse to each other in this case, and the Court should not force the Founders to proceed with their cards revealed to their adversaries.[4]

The transfer of ConnectU's stock to Facebook was a hotly disputed matter before the Northern District, which the Founders' unsuccessfully sought to stay pending appeal to the Ninth Circuit. During this period, Facebook never made an attempt to obtain ConnectU's legal files related to this action, notwithstanding its stated belief that it was ConnectU's beneficial owner. *See Facebook, Inc. v. ConnectU, Inc.*, Case No. 5:07-CV-01389 (JW) (N.D. Cal.) (Dkt. 591, Facebook's opposition to motion to stay, at 5, n.7). Yet while Facebook remained silent, counsel for ConnectU and the Founders continued to generate advice and work product related to this

---

[4] Virtually all ConnectU litigation files also relate to the Founders' litigation positions due to the parties' joint representation by counsel described above, and because ConnectU was a closely-held corporation consisting of the Founders and Howard Winklevoss, the father of two of the Founders.

action. Facebook's failure to object is tantamount to waiver of any rights to litigation counsel's files. *Cf. Bass*, 1994 WL 9680 at *4, 7 (denying motion to disqualify).

The leading case in this area is *Tekni-Plex, Inc. v. Meyner and Landis*, 674 N.E.2d 663, 668 (N.Y. 1996). There, the New York Court of Appeals rejected arguments by the buyer of a corporation that it had unfettered rights to obtain attorney files pre-dating the merger. Like ConnectU, the buyer demanded all files of the corporation's pre-merger attorneys who had counseled the corporation on various legal matters for many years. The buyer also requested material relating to a disputed merger transaction, based on a claim that it inherited the attorney-client relationship by acquiring the corporation.

Although the court required counsel to turn over files pertaining to "general business communications" (such as environmental compliance), it denied disclosure of any files relating to representation of the corporation with regard to the merger. *Id.* at 666, 670. The court recognized that "disputes arising from the merger transaction remain independent from – and, indeed, adverse to – the rights of the buyer." *Id.* at 671. "[T]o grant [the buyer] control over the attorney-client privilege as to communications concerning the merger transaction would thwart, rather than promote, the purposes underlying the privilege," *id.*, "and would significantly chill attorney-client communication." *Id.* at 672.

As in *Tekni-Plex*, granting ConnectU (and therefore, Facebook) access to these files "would thwart, rather than promote, the purposes underlying the privilege." *Id.* at 671; *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, Nos. 08-0905-LAK-JCF, 08-6233-LAK-JCF, 2008 WL 4778133, *4-5 (S.D.N.Y. Oct. 31, 2008) (successor entity had no right to attorneys' files relating to the matter that led to the change in control); *Int'l Elect. Corp. v. Flanzer*, 527 F.2d 1288, 1292 (2d Cir. 1975) (rejecting claim that counsel representing predecessor company during merger negotiations had any duty to successor company because companies were "on opposite sides of the negotiations" during the course of counsel's representation). Indeed, the facts here are even more compelling than in *Tekni-Plex*, because Finnegan, Griesinger, and Boies have *only* represented the Founders and ConnectU in the litigation that ultimately led to Facebook's

contested acquisition of ConnectU. Moreover, although there is no expectation of confidentiality among clients who jointly agree at the outset of a matter to common representation, *Tekni-Plex*, *Orbit One*, and *Flanzer* all teach that a former client who changes sides in mid-stream cannot vitiate the confidentiality rights of the other clients.

In addition, the transfer to ConnectU of counsel's files related to this action would significantly undermine each counsel's relationship with the Founders. *See generally* RESTATEMENT 3D OF LAW GOVERNING LAWYERS, Section 46, cmt. c (2000) ("A lawyer may deny a client's request to retrieve, inspect, or copy documents when compliance would violate the lawyer's duty to another....").

The cases cited by ConnectU (Dkt. 263 at 19) are inapposite. Neither case involved a client "switching sides" and then seeking access to communications regarding litigations or communications about a contested corporate transaction. *Moeller* was premised on considerations specific to equitable trusts. *See Moeller v. Superior Court*, 947 P.2d 279, 285-286 (Cal. 1997) (disclosure "is...not unfair in light of the nature of a trust and the trustee's duties" to "manage the property for the benefit of another"). *Weintraub* was premised on considerations specific to bankruptcy. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 355 n.7 (1985) ("[t]he powers and duties of a bankruptcy trustee are extensive," involving fiduciary duties to both shareholders and creditors, which can challenge "[t]he propriety of the trustee's waiver of the attorney-client privilege"). Here, different policy considerations require that ConnectU be denied access to litigation counsel's files. To the extent the Founders' counsel have general business documents, they were gathered from ConnectU in response to discovery requests and have already been produced to Facebook in this action.

## IV. <u>CONCLUSION</u>

This Court should not allow ConnectU, as Facebook's stalking horse, to misuse ethics rules in an attempt to deprive its former allies of their chosen counsel for tactical gain. *See ebix.com*, 312 F. Supp. 2d at 91; *Adoption of Erica*, 426 Mass. at 65-66. Having failed to make a

showing that even remotely approaches "absolute[] necess[ity]," *Adoption of Erica*, 426 Mass. at 58, ConnectU's motion to disqualify and request for files should be denied.

Respectfully submitted,

DATED: February 19, 2009

By: /s/ John F. Hornick
John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
john.hornick@finnegan.com
margaret.esquenet@finnegan.com

Michael Underhill (*pro hac vice*)
Evan A. Parke (*pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone: (202) 274-1120
Facsimile: (202) 237-6131
munderhill@bsfllp.com
eparke@bsfllp.com

Daniel P. Tighe (BBO# 556583)
Scott McConchie (BBO# 634127)
GRIESINGER, TIGHE, and
MAFFEI, LLP.
176 Federal St.
Boston, MA 02110
Telephone: (617) 452-9900
Facsimile: (617) 452-0900
dtighe@gtmllp.com
smcconchie@gtmllp.com

Attorneys for Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra

# CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 19, 2009.

/s/ John F. Hornick
John F. Hornick