UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br>            Plaintiffs,<br>    v.<br>FACEBOOK, INC. MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, AND THEFACEBOOK LLC,<br>            Defendants. | CIVIL ACTION NO. 1:07-cv-10593 (DPW)<br><br>Related Action No. 1:04-cv-11923 (DPW)<br><br><br><br><br><br>Leave to file granted on February 23, 2009 |

**CONNECTU, INC.'S REPLY MEMORANDUM IN RESPONSE TO CONNECTU FOUNDERS' MEMORANDUM IN OPPOSITION TO CONNECTU, INC.'S MOTION TO DISQUALIFY COUNSEL**

ConnectU, Inc. ("ConnectU") respectfully submits this memorandum in response to ConnectU Founders' Memorandum in Opposition to ConnectU, Inc.'s Motion to Disqualify Counsel ("Opposition").

**INTRODUCTION**

It is axiomatic that a lawyer owes a duty of loyalty to his or her clients, as well as a duty to maintain the confidences of both former and current clients.  It is also axiomatic that a lawyer may not, in any circumstance, represent two parties on the opposite sides of a dispute.

Despite the Founders' contentions to the contrary, ConnectU and the Founders, though once aligned, are now on opposite sides of this dispute.  Boies, Schiller & Flexner LLP ("BSF"), Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan") and Griesinger, Tighe & Maffei, LLP ("GTM") have each represented both ConnectU and the Founders at some point in this and related litigation.  It is on this basis that ConnectU requests that this Court disqualify the above-referenced firms from continuing to represent ConnectU's adversaries, the Founders.  The legal authority that the Founders cite in support of their Opposition to ConnectU's Motion to

1

Disqualify (much of which is easily distinguishable) does not abrogate these well-settled principles, which serve as the basic and unwavering cornerstones of an attorney's ethical obligations.

The Founders further miss the point. Disqualification of Founders' counsel is appropriate based on well-settled ethics principles and based on the relationships between counsel, the Founders and ConnectU; these principles are not driven by nor impacted by the possible (and speculative) benefit to Facebook (which is not a moving party to this motion), nor by whom "switched sides." Most importantly, despite their certainty that this motion is nothing more than a litigation tactic, the Founders' counsel <u>do not deny</u> that they have: <u>refused</u> to follow their client ConnectU's instructions, <u>refused</u> to withdraw as counsel for ConnectU, <u>refused</u> to provide ConnectU its own litigation files, and taken action <u>directly</u> adverse to (and threatened) their client ConnectU.

Finally, the Founders suggest that because they believe they will win their appeal in the Ninth Circuit, this Court should deny ConnectU the remedy of disqualifying ConnectU's former counsel from representing ConnectU's litigation adversaries, a remedy to which ConnectU is rightfully and legally entitled.[1] They claim that disqualifying the Founders' counsel "would severely prejudice the Founders by depriving them of all of their chosen counsel, who are irreplaceable at this late stage of the litigation." (Founders' Opposition, p. 3).

In short, BSF, Finnegan and GTM want to continue representing their current and/or former client's adversaries despite well-settled authority holding that such representation is

---

[1] In their Response to ConnectU's Motion to Disqualify Counsel, filed in the Court of Appeals for the Ninth Circuit, the Founders also request that the Ninth Circuit consider ConnectU's disqualification motion with the merits of the pending appeal. Essentially, the Founders seek -- for all practical purposes -- the equivalent of a stay on the basis that the Founders hope a victory on the merits is just around the corner; the Ninth Circuit has repeatedly denied the Founders' previous requests for a stay. Yet, the Founders can cite no authority to support their position that the Ninth Circuit should refrain from ruling on ConnectU's meritorious motion simply because the Founders have a good feeling about their appeal. No explicit request has yet been made with regards to ConnectU's Motion to Disqualify Counsel filed in this Court. Nonetheless, any suggestion by the Founders that this Court should stay the instant motion to disqualify likewise would be without merit.

improper. This Court has a more than compelling basis upon which to grant ConnectU's Motion to Disqualify Counsel, and ConnectU respectfully requests that this Court grant ConnectU's motion.

### A. The Applicable Legal Authority Does Not Support BSF, Finnegan, and GTM's Continued Representation of the Founders

The Founders cannot deny the existence of an attorney-client relationship between Founders' counsel and ConnectU in this matter. Nor can the Founders legitimately deny that their interests are now directly adverse to the interests of ConnectU, a wholly-owned subsidiary of Facebook. The applicable legal authority supports disqualification of Founders' counsel, regardless of whether ConnectU were determined by this Court to be a current or former client of BSF, Finnegan and GTM.

Prevailing ethical principles and the Founders' counsels' numerous actions adverse to ConnectU not only justify, but require, disqualification. *See In re Bushkin Associates, Inc.,* 864 F.2d 241, 246 (1st Cir. 1989) (disqualification is an entirely necessary measure to ensure the "integrity of the judicial process, enforce [the court's] rules against transgressors, and maintain public confidence in the legal profession.").

#### i. The Founders' Current Client Analysis Is Incorrect; Applicable Authority Supports Disqualification

Massachusetts Rules of Professional Conduct prohibits attorneys from representing two clients with opposing interests in the same litigation. *See* MRPC 1.7 Comment 7. In such situations, a disinterested attorney could not "reasonably believe" that his or her representation of a client would not have any adverse effect on the other client. *See Hilti, Inc. v. HML Development Corp.*, 2007 WL 809792, 26 (Mass.Super. 2007). Such is the exact situation here, where ConnectU remains a current client of BSF, Finnegan, and GTM.

In this case, the Founders sit on one side of the litigation (that is, wanting this Court to deny Facebook's motion to dismiss the Massachusetts litigation), while Facebook and ConnectU

3

(as a wholly-owned subsidiary of Facebook) sit squarely on the opposite side of the litigation (that is, wanting this Court to dismiss the Massachusetts litigation pursuant to the California district court's ruling to enforce the settlement). To claim, as the Founders have, that ConnectU and the Founders are not on opposite sides of the litigation is incorrect. The adverse nature of the two parties is highlighted by letters from December 18, 2008 and December 22, 2008 from BSF to ConnectU's counsel (Hoge, Fenton), wherein BSF threatens to sue ConnectU on behalf of the Founders and demands that ConnectU not interfere with the Founders' pending appeal. (See Exhibits G and K to the Declaration of James E. Towery in Support of ConnectU's Motion to Disqualify Founders' Counsel)[2].

The Founders contention that ConnectU created this conflict is untrue and ignores the policy behind the ethical rules, in addition to the applicable case law, at issue. For instance, the Founders disregard the policy supporting MRPC 1.7 when they disingenuously insist that disqualification is unwarranted when the client, not the law firm, switches sides. In no manner did the Massachusetts courts stress or even consider relevant this issue in deciding whether to disqualify counsel in *Hilti, Inc.*, *supra*, in *Winter Gardens Condo. Trust v. Winter Garden Development Corp.*, 2005 WL 1131635 (Mass.Super. 2005), and in *Booth Creek Ski Holdings v. Asu International, LLC*, 2003 WL 21246547(Mass.Super. 2003). Rather, the courts held that the attorney's duty of loyalty to all of his or her clients is paramount: "[L]oyalty to a client is considered to be impaired when the lawyer 'cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests.'" *See Hilti, Inc.*, *supra*, 2007 WL 809792 at 26 (quoting MRPC 1.7 Comment 4). As ConnectU and the Founders are clearly on opposite sides of this litigation, BSF, Finnegan, and GTM cannot reasonably argue that they would not be impaired in representing either ConnectU

---

[2] In this correspondence, BSF also references "substantial debts [owed] to the Founders." (Ex. G to the Declaration of James E. Towery). Being deprived of access to its files, ConnectU is unclear on what BSF is referring to here, but it appears to be an assertion derived from the use of confidential ConnectU information to ConnectU's detriment.

or the Founders for the remainder of this litigation.

The Founders oversimplify the holding in *Booth Creek Ski Holdings*. In that case, the court conditioned counsel's continued representation of a client upon counsel's withdrawal of representation of a potentially adverse party. *See Booth Creek Ski Holdings*, *supra*, 2003 WL 21246547 at 3-4. The court found that counsel would not breach the duty of loyalty to the client because counsel had not yet received any confidential information from the potentially adverse client and the cases giving rise to the conflict were completely unrelated. Id. at 3. In actuality, the reasoning in *Booth Creek Ski Holdings* still requires disqualification of BSF, Finnegan, and GTM.

Lastly, the Ninth Circuit's decision in *Unified Sewerage Agency of Washington County, Or. v. Jelco, Inc*., 646 F.2d 1339 (9th Cir. 1982) supports the principle that counsel jointly representing two clients cannot "drop" or pick one of those clients in order to avoid disqualification based on a conflict of interest (i.e., the "hot potato" doctrine). The Court in *Unified Sewerage, supra*, held that courts should apply the current client analysis in such instances when a lawyer drops one client to keep the other. *Id*. at 1345, fn. 4; see also *Truck Ins. Exchange v. Fireman's Fund Ins. Co*. (1992) 6 Cal.App.4th 1050, 1060,

The Founders' effort to distinguish *Unified Sewerage, supra,* and *Truck Ins. Exchange, supra*, on the basis that the Founders' attorneys claim they are not at fault ignores the undeniable fact that they choose to represent the Founders and not Connect U (indeed they choose to threaten Connect U on behalf of the Founders).

A lawyer's duties to his or her clients include, among others, a duty of confidentiality and a duty of loyalty. By choosing to continue representing the Founders in this and related litigation, and choosing to take positions adverse to ConnectU, BSF, Finnegan, and GTM are in breach of their obligations to ConnectU.

On these grounds, the Court should disqualify BSF, Finnegan and GTM from representing the Founders against ConnectU.

### ii. Disqualification Is Warranted Where, Even Under a Former Client Analysis, Founders' Counsel Are Prohibited From Representing Interests Adverse to ConnectU in This Matter

Should this Court decide to treat ConnectU as a former client of BSF, Finnegan and GTM, rather than a current client, disqualification of Founders' counsel would still be appropriate.

Massachusetts Rules of Professional Conduct Rule 1.9(a) prohibits a lawyer from representing a client whose interests actually conflict with those of a former client in the same or a substantially related matter. As discussed in great detail in ConnectU's original motion, these rules are designed to protect client confidences and are not altered by a change in corporate control. *New England Pro Tour, Inc. v. Hebb*, 2007 WL 1264140, 6 (Mass.Super. 2007); *Dee v. Conference Holdings, Inc.*, 1998 WL 1247926, 3-4 (Mass.Super 1998).

The Founders attempt to circumvent these basic principles by arguing that the substantial relationship test does not apply because ConnectU and the Founders, while jointly represented, had no expectation that their lawyers would keep secrets between the two parties. However, here, the subject matter is not merely substantially related but <u>the exact same matter</u>. There can be no more perfect example of a conflict than this. After representing ConnectU for months (in the case of BSF) or years (in the case of Finnegan and GTM), ConnectU's counsel now represent interests <u>exactly opposite</u> to ConnectU, yet they maintain that they should be allowed to do so because ConnectU should have had no expectation that these law firms would keep its confidences.

Even *New England Pro Tour, Inc. v. Hebb*, *supra*, and *Dee v. Conference Holdings, Inc.*, *supra*, support disqualification, despite the Founders' overly broad reading of both cases. In each case, the court reasoned that "Rule 1.9(a) does not make any exception or carve out a different test in cases where joint clients later become adversaries" because "the attorney-client privilege does not apply to disputes between joint clients." *Dee*, 1998 WL 1247926 at 3-4; *see also New England Pro Tour, Inc.*, 2007 WL 1264140 at 7-9 (adopting court's position in *Dee*). The courts stressed that the analysis should focus simply on the question of whether the current

litigation was "substantially related" to earlier litigation. Such an analysis invokes the strong policy behind enforcing both counsels' duty of loyalty to each client and "preserve[ing] client confidences by avoiding an 'intolerably strong temptation' to betray them."[3] *Id.* at 2, 4; *New England Pro Tour, Inc.*, 2007 WL 1264140 at 4.

The Founders contend that *New England Pro Tour, Inc. v. Hebb*, *supra*, and *Dee v. Conference Holdings, Inc.*, *supra*, are distinguishable because these cases involved an attorney, not a party, switching sides. (Founders' Opposition, pp. 10-11). The Founders' position in this regard is incorrect. The *Hebb* and *Dee* courts made no distinction between instances where an attorney or a party switches sides. This Court should decline to consider such a distinction, as well.

In short, it is one thing for a client to understand that the client's former lawyer may know confidential information that the client's new-found opponent also knows; it is quite another for the lawyer to use that information against its former client -- to the benefit of the other client -- in the same litigation. That should be prevented at all costs here.

---

[3] Another case, *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 580 F.2d 168 (5th Cir. 1979), directly on point, provides additional insight. In that case, the Fifth Circuit explained:

> [T]he ethical duty is broader than the evidentiary privilege: "This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." ABA Code of Professional Responsibility, EC 4-4 (1970). "A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client . . . ."*Id.* EC 4-5. The use of the word "information" in these Ethical Considerations as opposed to "confidence" or "secret" is particularly revealing of the drafters' intent to protect all knowledge acquired from a client, since the latter two are defined terms. See id., DR 4-101(A). Information so acquired is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. <u>This is true without regard to whether someone else may be privy to it.</u> *NCK Organization v. Bregman*, 542 F.2d 128, 133 (2d Cir. 1976). The obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys. A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the client in the same matter. As the court recognized in *E. F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 395 (S.D.Tex.1969), this would under-mine public confidence in the legal system as a means for adjudicating disputes. We recognize that this concern implicates the principle embodied in Canon 9 that attorneys "should avoid even the appearance of professional impropriety." ABA Code of Professional Responsibility, Canon 9 (1970).

*Id*. at 172 (emphasis added).

For the reasons discussed above, and for the reasons more fully discussed in ConnectU's original motion papers, there is ample basis to support this Court's disqualification of BSF, Finnegan and GTM from representing the Founders.

### B. The Founders' Claimed Prejudice Is Unsupported by the Facts and Irrelevant; Rather, ConnectU's Former and/or Current Counsel's Ethical Obligations Necessitate Disqualification Here

In the Opposition to ConnectU's Motion to Disqualify Counsel, the Founders claim that ConnectU seeks to "disrupt the litigation and severely prejudice the Founders by disqualifying the Founders' lawyers – some of whom have represented them since these disputes began in 2004." (Founders' Opposition, p. 2). However, this statement is insincere where the Founders fail to mention that the same counsel that represented the Founders since 2004 also represented ConnectU since 2004.

According to the Founders' own Response, Finnegan is the only of the three firms (although the Founders utilize the term "some") that represented either the Founders or ConnectU <u>since 2004</u>. Both GTM and BSF did not appear for either the Founders or ConnectU until 2006 and 2008, respectively. BSF represented Connect U only, until the district court entered its order enforcing the settlement agreement. BSF did not make its first appearance for the Founders until after that -- arguably in anticipation of the day when BSF would no longer be authorized to represent ConnectU. Such a tactical shift is directly contradictory to the Founders' bold characterization that the conflict here is one that the corporation, not counsel, created.

In short, the ethical rules regarding conflicts of interest, concurrent clients, former clients, and duties of loyalty and confidentially are the factors that this Court should consider when deciding whether to grant ConnectU's Motion to Disqualify Founders' Counsel. Conversely, the Court should not consider the self-serving version of facts presented by the Founders.

### C. The Founders and Their Counsel Do Not Deny That Founders' Counsel Have Already Violated Their Obligations to Their Client ConnectU

The Founders do not address fundamental concerns raised in ConnectU's Motion, that

since the transfer of ConnectU to Facebook, the Founders' counsel have:

>   (1) refused to follow their client ConnectU's instructions by refusing to execute substitutions;

>   (2) refused to withdraw as counsel for ConnectU;

>   (3) refused to provide ConnectU its own files; and

>   (4) taken action directly adverse to (and threatening) their client ConnectU.

The Founders and their counsel have not denied the above.

### D. The Court Should Order Counsel to Provide ConnectU Its Files; The Founders Fail to Cite Any Authority Disproving ConnectU's Contention That It Is Entitled to Its Files From Former and/or Current Counsel

Pursuant to MRPC Rules 1.16(d)-(e), a client is entitled to its files. This entitlement exists regardless of whether the client is a current one or a former one.

Here, ConnectU transferred to Facebook in December 2008 and is under new management. This does not mean that ConnectU is any less entitled to its files. In fact, ConnectU's right to its files is even more important where ConnectU's new management lacks information regarding ConnectU's existing rights and obligations, including potential litigation. To require that it also defend itself against threats from its own lawyers would be to ignore a blatant conflict.

As ConnectU anticipated, the Founders rely on New York authority, *Tekni-Plex, Inc. v. Meyner and Landis*, 674 N.E.2d 633, 668 (N.Y. 1996) to support their position that ConnectU should not receive its files. But the Founders' reliance on *Tekni-Plex* is misplaced where a thorough reading of the entire *Tekni-Plex* decision reveals that -- at the bare minimum -- ConnectU is at the very least entitled to ConnectU's pre-transfer general business communications. *Id.* at 666, 670; *see also Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1137-9 (considering *Tekni-Plex* in its analysis, the California Supreme Court decided that the post-transfer corporation is entitled to all of its pre-transfer files).

The Founders characterize ConnectU's repeated requests for its files as a tactic. However, as demonstrated by BSF's December 18, 2008 letter to ConnectU's counsel, Hoge, Fenton, (Ex. G to the Towery Declaration in Support of ConnectU's Motion to Disqualify), ConnectU's own counsel is referencing rights and obligations of which ConnectU is totally ignorant. Given the apparent existence of actual (and potentially imminent) rights and obligations, ConnectU *must* have access to its files.

Finally, the Founders claim that there were no secrets between the Founders and ConnectU, so the Founders cannot ever expect that anything communicated to their joint counsel would be confidential as between them. If the Founders had wanted to protect their confidentiality, they should have had ConnectU retain its own counsel; they did not.

## **CONCLUSION**

The Court should disqualify BSF, Finnegan and GTM from representing the Founders where such representation would breach the lawyers' duties of loyalty and confidentiality to ConnectU. Furthermore, ConnectU is entitled to its files from these lawyers, and requests that this Court order BSF, Finnegan and GTM to promptly turn over ConnectU's files to its new management to allow ConnectU to operate with full knowledge of all its rights and obligations.

DATED: February 26, 2009

Respectfully submitted,
Plaintiff, ConnectU, Inc.,
By its attorneys,

/s/ Peter M. Durney
Peter M. Durney, BBO # 139260
Gregg P. Bailey, BBO# 638270
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110
(617) 482-8100

James E. Towery, Esquire, *Pro Hac Vice*
Alison P. Buchanan, Esquire, *Pro Hac Vice*
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113
(408) 287-9501

## CERTIFICATE OF SERVICE

I, Peter M. Durney, attorney for ConnectU, Inc. hereby certify that on the 26th day of February, 2009, a true copy of the foregoing, ConnectU, Inc.'s Reply Memorandum in Response to ConnectU Founders' Memorandum in Opposition to ConnectU, Inc.'s Motion to Disqualify Counsel, was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. Paper copies will be served upon anyone indicated as a non-registered participant.

/s/ Peter M. Durney  
Peter M. Durney