# EXHIBIT B



ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NEW YORK 10103-0001

tel +1-212-506-5000
fax +1-212-506-5151

WWW.ORRICK.COM

September 10, 2009

Karen D. Thompson
(212) 506-3784
kthompson@orrick.com

*VIA E-MAIL*
*VIA FEDERAL EXPRESS*

The Honorable William Dreier
Norris McLaughlin & Marcus, P.A.
875 Third Avenue, 18th Floor
New York, NY 10022
wadreier@nmmlaw.com

The Honorable Thomas Penfield Jackson
One Lafayette Centre, South Tower
1120 20th Street, NW
Washington, D.C., 20036
tjackson@jackscamp.com

Richard H. Silberberg, Esq.
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177-1500
silberberg.richard@dorsey.com

Re: <u>Quinn Emanuel Urquhart Oliver & Hedges, LLP v. Howard Winklevoss, et al.
Case No. 13 194 Y 995 08</u>

Dear Messrs. Drier, Jackson and Silberberg:

On behalf of non-parties Microsoft Corporation ("Microsoft") and Houlihan Lokey ("Houlihan", together, the "Non-Parties"), I write in response to the August 11, 2009 Subpoenas issued in connection with the above-mentioned action. While the Non-Parties respect the order of the arbitrators, they have grave concerns regarding the true nature of these requests. Specifically, the Non-Parties believe that the information sought for disclosure (which is immaterial to the issues at the heart of the arbitration) is merely an attempt by Respondents-Counterclaimants to collect information denied them in another forum. Accordingly, the Non-Parties will not voluntarily appear or provide the requested documents and materials at the September 11, 2009 hearing. We note that this objection does not constitute a waiver of the Non-Parties' rights to pursue any and all objections in a court of competent jurisdiction, including moving to quash the Subpoenas, and all such rights are expressly reserved.

As outlined below, the subpoenas are unenforceable as to the Non-Parties on three separate grounds: (1) the requested documents are irrelevant to the instant dispute; (2) the Subpoenas are a brazen attempt to obtain private, internal corporate documents and make an end run around discovery barriers imposed in the proceedings giving rise to the present arbitration; and (3) the Subpoenas themselves were improperly served by counsel for Respondents-Counterclaimants.



The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

September 10, 2009
Page 2

**Immateriality and Overbreadth**

The information sought by the Respondents-Counterclaimants from the Non-Parties is entirely immaterial to the issues presented in this arbitration. Although a general power is given to arbitrators to issue subpoenas under NY CPLR § 7505, "[a]n arbitrator's power *over nonparties* derives solely from the Federal Arbitration Act," and not the Commercial Arbitration Rules of the American Arbitration Association, as incorrectly stated in the Subpoenas. Integrity Ins. Co. v. Am. Centennial Ins. Co., 885 F. Supp. 69, 71 (S.D.N.Y. 1995) (emphasis in original); Kennedy v. American Express Travel Related Srvs. Co., Inc., No. 09-61157-MC, ---F.Supp. 2d---, (S.D.Fla. Aug. 12, 2009) ("The only power that an arbitrator has over non-parties is what Congress has provided in the FAA."). To that end, the arbitrators . . . may summon in writing any person to attend before them . . . and in a proper case to bring with him . . . any book, record, document, or paper which *may be deemed material as evidence in the case . . .*"[1] 9 U.S.C. § 7. The Subpoenas' requests are, to the contrary, entirely immaterial.

The documents sought by the Respondents-Counterclaimants include: (a) "[d]ocuments sufficient to show any and all valuations of Facebook stock, individually and/or collectively, of any class, series, or any classification, *at any time*"; (b) "[d]ocuments sufficient to show any and all valuations of any and all equity, debt or other assets owned by Facebook from 2004 to present"; (c) "*[a]ll* 409(A) valuations of Facebook"; (d) "[d]ocuments sufficient to show any and all valuations of Facebook from 2004 to present"; (e) "[d]ocuments sufficient to show all offers transfers, purchases, and sales of Facebook stock from 2004 to present"; and (f) the equity capitalization and investments in Facebook as well as Facebook's financial statements and all of Facebook's business plans. (emphasis added). Given that the instant arbitration is concerned with the payment of attorneys' fees pursuant to a contract, Respondents-Counterclaimants' request for all of Facebook's business plans and valuations of Facebook stock at any time, *inter alia*, have little apparent or likely relevance to the subject matter of the arbitration; indeed, any solution of the contractual dispute requires the actual knowledge of the parties to the arbitration, not the internal documents and plans of Non-Parties. Rather than indicate how the requested materials would illuminate contractual questions regarding payment of attorneys' fees between Claimant-Counterclaim Respondent and Respondents-Counterclaimants, the Respondents-Counterclaimants assert a need to sift through private, internal business documents of non-related parties in hope that some fact validating their

---

[1] Although the AAA rules are inapplicable to the Non-Parties, Rule-31(b) of the Commercial Arbitration Rules for the AAA also make clear that an arbitrator must determine the admissibility, relevance *and materiality* of the evidence offered and may exclude evidence deemed cumulative or irrelevant. The Rules further state that the arbitrator "shall take into account applicable principles of legal privilege . . ." See id. at Rule-31(c).



ORRICK

The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

September 10, 2009
Page 3

claim appears. Such trolling for substantiation is inappropriate. See In re Landegger, 54 N.Y.S.2d 76, 77 (Sup. 1945) ("The subpoena duces tecum may not be used to enable a party or even arbitrators to search the records of another, merely to determine whether or not they disclose the existence of evidence.").

Further, even if such requests were relevant to the arbitration and the issues before the Panel, the burden of compliance with such requests is unjustifiably onerous and the requests themselves are, on their face, overbroad.

**The Subpoenas Seek Disclosure of Confidential Commercial Information and Unpaid Expert Opinions**

Even if the requested documents were somehow relevant to the arbitration, the Subpoenas unreasonably seek to provide the Respondents-Complainants with valuable and confidential research, development, and commercial information from non-interested third parties. Such research, to the extent that it exists, was generated in connection with internal, non-public analyses regarding potential merger scenarios.

If Microsoft were to disclose its valuation analyses and any transfers/sales of Facebook stock it would cause significant damage to Microsoft. To the extent that any such valuations or transfers exist, Microsoft would be placed in the untenable position of negotiating against its own internal estimates of the value of Facebook, Inc. ("Facebook") in any further business combinations, including any potential negotiations with the Respondents-Counterclaimants. Such requests for trade secret or other confidential research, development, or commercial information without demonstration of a "substantial need" for these materials will not be responded to. See Fed. R. Civ. Proc. 45(c)(3)(B)(i, iii).

As for disclosure by Houlihan, any subpoena to a third party seeking expert opinions, as opposed to specific facts, must be considered an abuse of the discovery process. Under the Federal Rules—which although not relevant within the arbitration context serve to guide the Non-Parties' opposition to the subpoenas—a subpoena may be quashed or modified if it requires the disclosure of "an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party." Fed. R. Civ. Proc. 45(c)(3)(B)(ii). Allowing such discovery would be to allow the Subpoenas to compel the production of evidence and information in a manner which can be regarded as an uncompensated "taking" of intellectual property. See generally Advisory Committee notes to 1991 amendments to



The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

September 10, 2009
Page 4

Fed. R. Civ. P. 45; see also In re Application of Consumers Union of United States, Inc., 27 F.R.D. 251, 254 (S.D.N.Y. 1961)("[T]he plaintiff seeks in effect to obtain the benefit of an expert's work and conclusions free of cost. If plaintiffs deem[ ] the relative merits of the products which are the subject matter of the litigation a matter of relevancy in its claim against the defendants, it should engage its own experts to make an independent study and analysis."); Statutory Comm. Of Unsecured Creditors v. Motorola, Inc., 218 F.R.D. 325, 326 (D.D.C. 2003)("In a society where knowledge is so valuable, there is something unfair about the courts permitting their processes, such as the issuance of a subpoena, to destroy that market in order to take for free the product of an individual's diligence, research and expertise.") The Respondents-Counterclaimants should not be allowed a free ride at Houlihan's expense. Frates v. Pantry Pride, Inc., No. M8-85, 1985 WL 2752, *1 (S.D.N.Y. Sept. 25, 1985); see also Friedland v. Tic-The Industrial Co., No. 04-cv-01263-PSF-MEH, 2006 WL 2583113, *2 (D.Colo. Sept 5. 2006).

As noted above, these internal documents have no relationship with or to this arbitration. With regard to the Non-Parties, the Respondents-Counterclaimants seek to accrue unrelated internal documents and confidential business records, to the extent that they exist, that were created for internal, private, client consumption and for a business relationship between and among valuator (Houlihan) and client (Microsoft). In issuing their overbroad Subpoenas, Respondents-Counterclaimants do not attempt to collect information central to their arbitral claims. Rather, Respondents-Counterclaimants are attempting a "back door discovery" to procure information that they sought, but were denied access to, in the Settlement Agreement enforcement proceedings between themselves and Facebook. See Exhibits A & B. The August 11 Subpoenas are yet another attempt by Respondents-Counterclaimants to make an end run around the heavily negotiated Settlement Agreement that they now disdain.

**The Subpoenas Were Improperly Served by O'Shea Partners LLP**

Putting to one side the relevance and scope of the requests contained in the subpoenas, the service of the subpoenas by O'Shea Partners LLP ("O'Shea") may itself represent a serious conflict of interest. In Facebook, Inc. v. ConnectU, Inc., No. C 07-01389 (JW), 2009, a motion was made by ConnectU ( a Respondent in this arbitration and now owned by Facebook) to disqualify O'Shea as well as two other firms from any continued representation of ConnectU's founders, who are the same individuals as the Respondents-Counterclaimants in this action. In a September 2, 2009 Order from the United States District Court for the Northern District of California, the Court granted the



The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

September 10, 2009
Page 5

motion as to the two other firms.[2] See id. It is troubling to note that O'Shea certified and requested the subpoenas on behalf of the Respondents-Counterclaimants in this arbitration.

It should also be noted that Respondents-Counterclaimants Subpoenas are adverse to Facebook, which owns ConnectU, and thus the Subpoenas may be adverse to a named party to this arbitration.

\* \* \*

Respondents-Counterclaimants have no basis upon which to draw the Non-Parties into these proceedings through the use of arbitrator ordered Subpoenas. Accordingly, the Non-Parties will not voluntarily participate in the arbitration.

Respectfully,

Karen D. Thompson

Copy (by email) to

    Sean O'Shea, Esq.
    Michael Petrella, Esq.
    Andrew Sockol, Esq.
    Richard Werder, Jr., Esq.

---

[2] O'Shea evaded an overt disqualification in the Northern District because it argued that it had not made an appearance on ConnectU's behalf in the appeal pending in the Ninth Circuit. The implication, of course, is that had O'Shea appeared on behalf of both ConnectU and its Founders (Respondents-Counterclaimants) in the Ninth Circuit, the Court also would have disqualified the O'Shea firm. As the order notes, however, O'Shea has appeared on behalf of both Connect U and the founders in the judgment appealed to the Ninth Circuit and thus is implicated by the disqualification decision regardless. See Exhibit C at p. 3, lns. 1-3.