# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------- x

CONNECTU, INC., HOWARD WINKLEVOSS, :
CAMERON WINKLEVOSS, TYLER          Index No. 08-602082
WINKLEVOSS, and DIVYA NARENDRA,    :
                                   Hon. Richard B. Lowe
    Petitioners,                 :

        -against-            :

QUINN EMANUEL URQUHART OLIVER &    :
HEDGES LLP
                                   :
    Respondents.
-------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS PURSUANT TO 9 U.S.C. § 7 AND CPLR § 2308(b) AND TO REMOVE CONNECTU, INC. AS A PARTY TO THIS PROCEEDING PURSUANT TO CPLR § 1003.**

**INTRODUCTION**

    Petitioners Howard Winklevoss, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra ("Petitioners") submit this Memorandum of Law in support of their motion to compel Houlihan, Lokey, Howard & Zukin ("Houlihan") and Microsoft Corporation ("Microsoft") (collectively, "the Subpoenaed Parties") to comply with nonparty subpoenas issued by an arbitrator in the arbitration styled *Quinn Emanuel Urquhart Oliver & Hedges, LLP v. Howard Winklevoss et al.*, Case No. 13 194 Y 995 08 (American Arbitration Association) ("Arbitration"), and to remove ConnectU, Inc. ("ConnectU") as a party to this proceeding. The nonparty subpoenas were properly issued under 9 U.S.C. § 1 *et seq.* and the rules of the American Arbitration Association ("AAA"), and pertain to relevant and material information and documents necessary for adequate inquiry into the parties' defenses and claims in the Arbitration. Houlihan and Microsoft should be compelled to appear before the arbitration panel

1

with ten days of the entry of an order by this Court, and to bring with them, at that time, the documents listed in the arbitrator's subpoenas. Additionally, ConnectU should be removed as a party to this proceeding pursuant to CPLR § 1003 because it is no longer a party to the underlying Arbitration.

## FACTUAL BACKGROUND

A detailed description of the circumstances giving rise to this Motion in contained in the O'Shea Affirmation ("O'Shea Aff."), submitted herewith.

## LEGAL ARGUMENT

### I. THE SUBPOENAED PARTIES SHOULD BE COMPELLED TO COMPLY WITH THE ARBITRATION PANEL'S NONPARTY SUBPOENAS BECAUSE THE SUBPOENAS WERE PROPERLY ISSUED AND SEEK MATERIAL, NON-PRIVILEGED INFORMATION NECESSARY TO THE MATTERS IN DISPUTE IN THE ARBITRATION.

Courts have long recognized "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). The FAA governs the enforcement of subpoenas in the Arbitration. Section 7 of the FAA provides that arbitrators "may summon in writing ***any person*** to attend before them . . . as a witness and in a proper case to bring with him or them any book, record, document, or paper ***which may be deemed material as evidence in the case***." 9 U.S.C. § 7; *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 570, 581 (2d Cir. 2005) ("Section 7 unambiguously authorizes arbitrators to summon non-party witnesses to give testimony and provide material evidence before an arbitration panel.") (emphasis added). It has long been established that state and federal courts have concurrent jurisdiction over the

substantive body of law under the FAA. *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984). Moreover, CPLR § 2308(b) empowers New York state courts to compel subpoenas issued by arbitrators.

### A. The Subpoenas Were Properly Issued Pursuant to 9 U.S.C. § 7 and CPLR § 7505.

Under Section 7 of the FAA, arbitrators may "order 'any person' to produce documents so long as that person is called as a witness at a hearing." *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008) (noting that the "presence requirement" serves to "force[] the party seeking the non-party discovery –and the arbitrators authorizing it— to consider whether production is truly necessary."). CPLR § 7505 provides that arbitrators in arbitration proceedings may issue subpoenas. New York courts have long recognized that arbitrators' power to subpoena witnesses includes nonparties. *See Mineral & Chemicals* 224 N.Y.S.2d at 765 (compelling nonparty corporation to comply with subpoena over objections that information was confidential and protected under trade secret law). The subpoenas issued to Houlihan and Microsoft require them to appear at a hearing before the Arbitration panel and, therefore, are valid and enforceable.

### B. The Subpoenas Request Information and Documents Material to the Arbitration.

As discussed in the Affirmation, the information and documents called for in the arbitrator's subpoenas are material and essential to the Arbitration. (O'Shea Aff. at ¶¶ 18-23, 26-30.) Central to the dispute between Petitioners and Quinn Emanuel is the issue of the objectivity and accuracy of various § 409A valuations prepared for Facebook, (O'Shea Aff. at ¶¶ 18-22, 26), and the accuracy of statements the parties, particularly Quinn Emanuel, have made about Microsoft's 2007 investment in Facebook. Specifically, Quinn Emanuel claims a 20 percent contingency fee using a "value" (the operative term in its engagement letter, see O'Shea Aff. Ex.

3

A at 6) of $35.90 per share for the stock component of the alleged settlement.  That value is derived from the purported value of the preferred Facebook shares acquired by Microsoft in October 2007, which were materially different from the common shares received by Petitioners. (O'Shea Aff. at ¶ 19 ; O'Shea Aff, Ex. E at 4.)Petitioners' claim, *inter alia*, that, at most, the "value" that should be used to calculate the "value" of the alleged settlement for purposes of Quinn Emanuel's fee is the actual, much lower fair market value reflected in Facebook's contemporaneous valuation pursuant to § 409A and CCC § 25102(o).  (O'Shea Aff. at ¶¶ 27; O'Shea Aff., Ex. E at 12-14.)

Without the information and documents listed in the subpoenas, Petitioners will be not be able to adequately pursue claims and defenses against Quinn Emanuel, which has claimed that the Microsoft stock valuation of $35.90 per share is more accurate than the $7.75 per share value approved by Facebook itself.  Petitioners will also be prejudiced in attempting to rebut Quinn Emanuel's expert, who has indicated that Facebook's § 409A valuations were not accurate or objective. (O'Shea Aff., Ex. I at 11.)  Nor, absent the subpoenaed documents, will the arbitration panel be able to adequately rule on the claims and defenses in the Arbitration regarding Facebook's valuations without the crucial underlying information.

Contrary to the Subpoenaed Parties' assertions in their letter (see O'Shea Aff., Ex. S), Petitioners have clearly indicated how the subpoenaed testimony and documents would serve to illuminate material issues in the Arbitration.  Quinn Emanuel's engagement letter with Petitioners states that Quinn Emanuel's fee will be calculated as "20% of any ***value*** received in any settlement or judgment in the Action." (O'Shea Aff., Ex. A at 2.)  Petitioners claim that the appropriate stock "value" is approximately $7.75 per share, while Quinn Emanuel contends that the proper "value" is the $35.90 Microsoft valuation (O'Shea Aff., ¶ 27.)  Thus, Quinn Emanuel

and Petitioners dispute the value of Facebook stock received by Petitioners, and disagree regarding the veracity of Facebook valuations performed in conjunction with § 409A and state counterpart statutes that explicitly purport to represent the fair market value of Facebook stock. Petitioners also allege that Quinn Emanuel committed legal malpractice by failing to make inquiries or inform Petitioners regarding the value of the Facebook stock they agreed to accept during mediation. (O'Shea Aff. Ex. H at 4-7.) Petitioners have clearly established the relevance, materiality, and extreme necessity of the documents and information listed in the subpoena.

In its letter to the arbitration panel, Orrick Herrington & Sutcliffe LLP ("Orrick"), counsel for Facebook in the *Connect U v. Facebook* litigation (and now counsel for Houlihan and Microsoft in the matter of the arbitration subpoenas), asserts that the documents called for in the subpoena, such as all of Facebook's business plans and stock valuations from 2004-2008, are not relevant. Orrick's argument is without merit. Valuations of a company and its stock, especially a company that is not publicly traded, such as Facebook, take into account many factors, and many valuation methods exist. Establishing that Facebook's valuations have been objective and accurate (and refuting Quinn Emanuel's claim to the contrary) necessitates careful examination of both the valuation method, and the variables used in calculating the value of Facebook and its stock at any given point. Moreover, while the $7.75 and $8.88 per share § 409A valuations and any valuations used by Microsoft in its 2007 investment in Facebook are especially relevant to the arbitration, Petitioners require information relevant to any valuations of Facebook because Petitioners allege that Quinn Emanuel possessed at least three other 409A valuations of Facebook at the time of the mediation, including one performed by Houlihan.

Petitioners seek, *inter alia*, to establish that the § 409A valuations possessed by Quinn Emanuel were accurate and objective.

The Subpoenaed Parties' claim that Petitioners are "trolling for substantiation" is without merit. (See O'Shea Aff., Ex. S at 3.) The Subpoenaed Parties cite the case *In re Landegger*, 54 N.Y.S.2d 76. 77 (Sup. 1945), for the proposition that subpoenas may not be issued in order to allow a party or arbitrators to "search the records of another, merely to determine whether or not they disclose the existence of evidence."). The instant case is highly distinguishable from the over sixty-year-old *Landegger* decision, and the Subpoenaed Parties have wildly mischaracterized the nature and content of Petitioners' subpoenas. As stated above and in the O'Shea Affirmation, Petitioners seek information and documents regarding valuations of Facebook conducted by Houlihan, as well as Microsoft's 2007 investment in Facebook, because these are issues of factual dispute in the Arbitration. Every single document listed in the subpoenas is necessary and relevant, and has been determined by the arbitration panel to be discoverable because they will assist in determining whether various valuations of Facebook's stock were accurate and objective. Petitioners do not wish and have not asked to search the records of Houlihan or Microsoft, but rather have requested specific information and documents for which they have demonstrated a substantial need, and which would be impossible to obtain by any other means. *See Mineral & Chemicals Philipp Corp. v. Panamerican Commodities, S.A.*, 224 N.Y.S.2d 763, 765 (1st Dep't 1962) (compelling subpoena of nonparty corporation where party had "sufficiently developed the relevancy of the class of documents sought and the near impossibility of obtaining the information by other means.").

**C. The Information Sought by the Subpoenas is Not Privileged.**

Petitioners have demonstrated to the arbitration panel and, in the O'Shea Affirmation, to this Court, that the information and documents listed in the subpoenas is crucial to the Arbitration; that Petitioners cannot obtain this information by any other means; and that Petitioners' substantial need for these documents outweighs any objections that the Subpoenaed Parties may have regarding purported confidentiality issues. It is well settled that New York law, a subpoenaed person must respond to a subpoena *duces tecum* unless that person can demonstrate that "the materials sought are utterly irrelevant to any proper inquiry." *Velez v. Hunts Point Multi-Service Center, Inc.*, 811 N.Y.S.2d 5, 6 (2006). It is also well-established that a corporation may be subpoenaed regarding a corporate transaction. *Standard Fruit & S.S. Co. v. Waterfront Commission of New York Harbor*, 43 N.Y.2d 11, 15 (1977). Thus, the Subpoenaed Parties' argument that they should not have to produce corporate information is without merit.

The Subpoenaed Parties' argument that Petitioners should not be able to compel "expert opinion, as opposed to specific facts," is likewise without merit and inapplicable to the circumstances from which this motion arises. Petitioners are not seeking a paid expert opinion. Petitioners have already paid for and served an independent expert report of their own on this very issue. (See O'Shea Aff., Ex. E.) Rather, Petitioners, seek purely factual information regarding the amount of the valuations themselves, the methodology underlying the valuations, and the details of the Microsoft deal, and so that Petitioners' own paid, independent expert can render an opinion and refute Quinn Emanuel's arguments. Therefore, the Subpoenaed Parties' contention that Petitioners are somehow seeking "free" expert testimony is nonsense.[1]

---

[1] Even if Petitioners were somehow seeking expert testimony (and they plainly are not), it is well-established that New York law permits issuing subpoenas to experts so that they may testify to their personal knowledge of facts. *See Application of American Tobacco Co.*, 880 F.2d

7

### D. The Subpoenaed Parties Will Not be Harmed by Compliance with the Nonparty Subpoenas Because All Information in the Arbitration is Subject to a Stipulation and Protective Order.

The parties to the Arbitration have entered into a Stipulation and Protective Order, which precludes the dissemination of materials produced in the Arbitration to persons other than the essential parties to the Arbitration, the expert witnesses, and the arbitration panel. (See O'Shea Aff., Ex. J.) Petitioners are willing to stipulate that any information or documents provided by the Subpoenaed Parties in connection with the subpoenas at issue here would be protected by that Order. Accordingly, although Petitioners believe that Facebook cannot demonstrate any legally cognizable harm in any event, their voluntary willingness to subject responsive documents to the cloak of the parties' existing confidentiality agreement unquestionably removes any possibility of harm.

### E. The Appropriate Arbiter of any Dispute Regarding the Materials Requested in the Subpoenas is the Arbitration Panel.

Where a nonparty claims that an arbitrator's subpoena requests categories of documents that are overbroad or privileged, the appropriate arbiter of such a dispute is the arbitrator. *Laufman v. Anpol Contracting, Inc.*, No. 94 Civ. 5362 (CSH), 1995 WL 360015, *1 (S.D.N.Y. June 13, 1995) (citing *Local Lodge 1746, Intern. Ass'n of Machinists and Aerospace Workers,*

---

1520, 1528 (2d Cir. 1989) (applying New York law) (noting that New York has not extended an expert privilege to documentary evidence existing in the possession of an expert); *Hessek v. Roman Catholic Church of Our Lady of Lourdes in Queens Village*, 363 N.Y.S.2d 297, 299 (N.Y. City Civ. Ct. 1975) ("An expert may be compelled to testify to 'facts' within his knowledge.") (citing *People ex rel. Kraushaar Bros. & Co., Inc. v. Thorpe*, 296 N.Y. 223 (1947)). Moreover, a subpoena should be enforced over the objections of a nonparty expert where the expert may be asked factual questions. *Waters v. East Nassau Medical Group*, 460 N.Y.S.2d (2d Dep't 1983). The same result obtains under the federal rules, which the Subpoenaed Parties incorrectly cite. *Kaufman v. Edelstein,* 539 F.2d 811, 822 (2d Cir.1976) (quoted in Advisory Committee notes to 1991 amendments of *Fed. R. Civ. P.* 45) (distinguishing between fact and opinion testimony and "the difference between testifying to a previously formed or expressed opinion and forming a new one").

*AFL-CIO v. Pratt & Whitney Division of United Aircraft Co.*, 329 F. Supp. 283, 287 (D. Conn. 1971) (ordering in camera inspection of documents by arbitrator)). Therefore, the Subpoenaed Parties' statements that the subpoenas are overbroad or request confidential information should have no effect on this Court's determination to enter an order compelling Houlihan and Microsoft to comply with the subpoenas.

II. **CONNECTU SHOULD BE REMOVED AS A PARTY TO THIS PROCEEDING PURSUANT TO CPLR § 1003 BECAUSE CONNECTU IS NO LONGER A PARTY TO THE ARBITRATION.**

CPLR § 1003 provides that courts may drop parties "on motion of any party or on its own initiative, at any stage of the action and upon such terms as may be just." CPLR § 1003; *In re Cowles' Will*, 255 N.Y.S.2d 160, 166 (1st Dep't 1965). As ConnectU is no longer a party to the Arbitration, it is just and appropriate for the Court to remove ConnectU from this proceeding.

## CONCLUSION

Based on the foregoing, the Court should compel the Subpoenaed Parties Houlihan and Microsoft to appear before the arbitration panel and produce the requested documents, and should remove ConnectU as a party to this proceeding.

Dated: New York, New York
September 21, 2009

Respectfully Submitted,

_____
Sean F. O'Shea
Michael E. Petrella
O'SHEA PARTNERS LLP
521 Fifth Avenue, 25th Floor
New York, New York 10175
Tel.: (212) 682-4426
Fax: (212) 682-4437

9

*Attorneys for Petitioners Howard Winklevoss, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------ x

CONNECTU, INC., HOWARD WINKLEVOSS, :
CAMERON WINKLEVOSS, TYLER : Index No. 08-602082
WINKLEVOSS, and DIVYA NARENDRA, :
: Hon. Richard B. Lowe
      Petitioners, :

               -against- :

QUINN EMANUEL URQUHART OLIVER & :
HEDGES, LLP
                                           :
      Respondents.
------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA PURSUANT TO 9 U.S.C. § 7 AND CPLR § 2308(b)
### INTRODUCTION

Petitioners Howard Winklevoss, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra (collectively, "Petitioners") submit this Memorandum of Law in support of their motion to compel Facebook, Inc. ("Facebook") to comply with a nonparty subpoena issued by the arbitration panel in the arbitration styled *Quinn Emanuel Urquhart Oliver & Hedges, LLP v. Howard Winklevoss et al.*, Case No. 13 194 Y 995 08 (American Arbitration Association) ("Arbitration") on September 14, 2009. The subpoena was properly issued under 9 U.S.C. § 1 *et seq.* and the rules of the American Arbitration Association ("AAA"), and pertains to relevant and material information and documents necessary for adequate inquiry into the parties' defenses and claims in the Arbitration. Facebook should be compelled to appear before the arbitration panel within ten days of the entry of an order by this Court, and to bring with it, at that time, the documents listed in the arbitrator panel's subpoena.

### FACTUAL BACKGROUND

A detailed description of the circumstances giving rise to this Motion is contained in the O'Shea Affirmation ("O'Shea Aff."), submitted herewith.

## LEGAL ARGUMENT

I. **FACEBOOK SHOULD BE COMPELLED TO COMPLY WITH THE ARBITRATION PANEL'S NONPARTY SUBPOENA BECAUSE THE SUBPOENA WAS PROPERLY ISSUED AND SEEKS MATERIAL, NON-PRIVILEGED INFORMATION NECESSARY TO THE MATTERS IN DISPUTE IN THE ARBITRATION.**

Courts have long recognized "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). The FAA governs the enforcement of subpoenas in the Arbitration. Section 7 of the FAA provides that arbitrators "may summon in writing *any person* to attend before them . . . as a witness and in a proper case to bring with him or them any book, record, document, or paper *which may be deemed material as evidence in the case.*" 9 U.S.C. § 7; *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 570, 581 (2d Cir. 2005) ("Section 7 unambiguously authorizes arbitrators to summon non-party witnesses to give testimony and provide material evidence before an arbitration panel.") (emphasis added). It has long been established that state and federal courts have concurrent jurisdiction over the substantive body of law under the FAA. *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984). Moreover, CPLR § 2308(b) empowers New York state courts to compel subpoenas issued by arbitrators.

### A. The Subpoenas Were Properly Issued Pursuant to 9 U.S.C. § 7 and CPLR § 7505.

Under Section 7 of the FAA, arbitrators may "order 'any person' to produce documents so long as that person is called as a witness at a hearing." *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008) (noting that the "presence requirement"

2

serves to "force[] the party seeking the non-party discovery –and the arbitrators authorizing it— to consider whether production is truly necessary."). CPLR § 7505 provides that arbitrators in arbitration proceedings may issue subpoenas. New York courts have long recognized that arbitrators' power to subpoena witnesses includes nonparties. *See Minerals & Chemicals Philipp Corp. v. Panamerican Commodities, S.A.*, 224 N.Y.S.2d 763, 765 (1st Dep't 1962) (compelling nonparty corporation to comply with subpoena over objections that information was confidential and protected under trade secret law). The subpoena issued to Facebook requires it to appear at a hearing before the Arbitration panel and, therefore, is valid and enforceable.

### B. Documents Regarding Facebook's Valuation are Material to the Arbitration

As discussed in the Affirmation, the information and documents called for in the Arbitration panel's September 14th subpoena are material and essential to the Arbitration. (O'Shea Aff. at ¶¶ 17, 20-22.) Central to the dispute between Petitioners and Quinn Emanuel is the issue of the objectivity and accuracy of various § 409A valuations prepared for Facebook, (O'Shea Aff. at ¶¶ 17, 21-22). In the Arbitration Quinn Emanuel claims a 20 percent contingency fee using a "value" (the operative term in its engagement letter, *see* O'Shea Aff., Ex. A at 2) of $35.90 per share for the stock component of the alleged settlement. That value is derived from the purported value of the preferred Facebook shares acquired by Microsoft in October 2007, which were materially different from the common shares received by Petitioners. (O'Shea Aff. at ¶ 17; O'Shea Aff, Ex. E at 4.) Petitioners claim, *inter alia*, that, at most, the "value" that should be used to calculate the "value" of the alleged settlement for purposes of Quinn Emanuel's fee is the actual, much lower fair market value reflected in Facebook's contemporaneous valuation pursuant to § 409A and CCC § 25102(o). (O'Shea Aff. at ¶¶ 17; O'Shea Aff., Ex. E at 12-14.)

Without the information and documents regarding valuations of Facebook requested in the September 14th subpoena, Petitioners will be not be able to adequately pursue claims and defenses against Quinn Emanuel, which has claimed that the Microsoft stock valuation of $35.90 per share is more accurate than the $7.75 per share value approved by Facebook itself. Petitioners will also be prejudiced in attempting to rebut Quinn Emanuel's expert, who has indicated that Facebook's § 409A valuations were not accurate or objective. (O'Shea Aff., Ex. H at 11.) Nor, absent the subpoenaed documents, will the arbitration panel be able to adequately rule on the claims and defenses in the Arbitration regarding Facebook's valuations without the crucial underlying information.

Petitioners claim that the appropriate stock "value" is approximately $7.75 per share, while Quinn Emanuel contends that the proper "value" is the $35.90 Microsoft valuation (O'Shea Aff., ¶ 17, Ex. D at 23.) Thus, Quinn Emanuel and Petitioners dispute the value of the Facebook stock received by Petitioners, and disagree regarding the veracity of Facebook valuations performed in conjunction with § 409A and state counterpart statutes that explicitly purport to represent the fair market value of Facebook stock. Petitioners also allege that Quinn Emanuel committed legal malpractice by failing to make inquiries or inform Petitioners regarding the value of the Facebook stock they agreed to accept during mediation. (O'Shea Aff., Ex. G at 4-7.) Petitioners have clearly established the relevance, materiality, and extreme necessity of the documents and information related to valuations of Facebook requested in the September 14th subpoena.

### C. The Information Sought by the Subpoena is Not Privileged.

Petitioners have demonstrated to the Arbitration panel and, in the O'Shea Affirmation, to this Court, that the information and documents listed in the subpoenas is crucial to the

4

Arbitration; that Petitioners cannot obtain this information by any other means; and that Petitioners' substantial need for these documents outweighs any objections that Facebook may have regarding purported confidentiality issues. It is well settled that under New York law, a subpoenaed person must respond to a subpoena *duces tecum* unless that person can demonstrate that "the materials sought are utterly irrelevant to any proper inquiry." *Velez v. Hunts Point Multi-Service Center, Inc.*, 811 N.Y.S.2d 5, 6 (1st Dep't 2006). Any arguments by Facebook that it should not have to produce corporate information are without merit. *See, e.g., Standard Fruit & S.S. Co. v. Waterfront Commission of New York Harbor*, 43 N.Y.2d 11, 15 (1977) (corporation may be subpoenaed regarding a corporate transaction).

Petitioners seek purely factual information regarding the amount of the valuations themselves, the methodology underlying the valuations, and the details of the Microsoft deal, so that Petitioners' own paid, independent expert can render an opinion and refute Quinn Emanuel's arguments. Petitioners have already paid for and served an independent expert report of their own on this very issue. (*See* O'Shea Aff., Ex. E.) The information that Petitioners seek is not privileged or expert opinion testimony and, therefore, must be produced.[1]

### D. Facebook Will Not be Harmed by Compliance with the Subpoena Because All Information in the Arbitration is Subject to a Stipulation and Protective Order.

---

[1] Even if Petitioners were somehow seeking expert testimony (and they plainly are not), it is well-established that New York law permits issuing subpoenas to experts so that they may testify to their personal knowledge of facts. *See Application of American Tobacco Co.*, 880 F.2d 1520, 1528 (2d Cir. 1989) (applying New York law) (noting that New York has not extended an expert privilege to documentary evidence existing in the possession of an expert); *Hessek v. Roman Catholic Church of Our Lady of Lourdes in Queens Village*, 363 N.Y.S.2d 297, 299 (N.Y. City Civ. Ct. 1975) ("An expert may be compelled to testify to 'facts' within his knowledge.") (citing *People ex rel. Kraushaar Bros. & Co., Inc. v. Thorpe*, 296 N.Y. 223 (1947)). Moreover, a subpoena should be enforced over the objections of a nonparty expert where the expert may be asked factual questions. *Waters v. East Nassau Medical Group*, 460 N.Y.S.2d (2d Dep't 1983).

The parties to the Arbitration have entered into a Stipulation and Protective Order ("Order"), which precludes the dissemination of materials produced in the Arbitration to persons other than the essential parties to the Arbitration, the expert witnesses, and the Arbitration panel. (*See* O'Shea Aff., Ex. F.) Petitioners are willing to stipulate that any information or documents provided by Facebook in connection with the subpoena at issue here would be protected by that Order. Accordingly, although Petitioners believe that Facebook cannot demonstrate any legally cognizable harm in any event, their voluntary willingness to subject responsive documents to the cloak of the parties' existing confidentiality agreement unquestionably removes any possibility of harm.

### E. The Appropriate Arbiter of any Dispute Regarding the Materials Requested in the Subpoena is the Arbitration Panel.

Where a nonparty claims that an arbitrator's subpoena requests categories of documents that are overbroad or privileged, the appropriate arbiter of such a dispute is the arbitrator. *Laufman v. Anpol Contracting, Inc.*, No. 94 Civ. 5362 (CSH), 1995 WL 360015, *1 (S.D.N.Y. June 13, 1995) (citing *Local Lodge 1746, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Pratt & Whitney Division of United Aircraft Co.*, 329 F. Supp. 283, 287 (D. Conn. 1971) (ordering in camera inspection of documents by arbitrator)). Therefore, any statements by Facebook that the subpoena is overbroad or requests confidential information should have no effect on this Court's determination to enter an order compelling Facebook to comply with the subpoena.

## CONCLUSION

Based on the foregoing, the Court should compel Facebook to appear before the Arbitration panel and produce the requested documents.

Dated: New York, New York
      October 1, 2009

Respectfully Submitted,

_____
Sean F. O'Shea
Michael E. Petrella
**O'SHEA PARTNERS LLP**
521 Fifth Avenue, 25th Floor
New York, New York 10175
Tel.: (212) 682-4426
Fax: (212) 682-4437

*Attorneys for Petitioners Howard Winklevoss, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra*