# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA, <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC, <br><br> Defendants. | Civil Action No. 1:07-CV-10593-DPW <br> (CONSOLIDATED WITH <br> Civil Action No. 1:04-CV-11923-DPW) |

**FACEBOOK'S MOTION FOR LIMITED RELIEF FROM STAY AND TO ENJOIN INDIVIDUAL PLAINTIFFS AND THEIR COUNSEL**

Facebook respectfully seeks relief from the stay for the limited purpose of informing the Court about violations of its Orders. Specifically, pursuant to the All Writs Act and this Court's Inherent Powers, Facebook, Inc. moves to enjoin individual plaintiffs and their counsel from taking any further action which violates this Court's Second Stipulated Protective Order, the Discovery Protocol, and the June 3, 2008 discovery order ("Courts Orders").

This motion is based on the accompanying Memorandum of Points and Authorities, which demonstrates that the individual plaintiffs and their counsel are liable for civil contempt based on clear and convincing evidence that they have willfully violated this Court's Orders and have threatened future violations of the Court's Orders warranting the relief requested.

## REQUEST FOR ORAL ARGUMENT

Because Facebook wishes to be heard and believe that oral argument may assist the Court, pursuant to D. Mass. L.R. 7.1(D), it hereby requests that the Court grant oral argument on this motion.

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I hereby certify that counsel for the parties have conferred regarding this motion and have attempted in good faith to resolve or narrow the issues. We were unable to do so.

OHS West:260755851.1

Dated: November 3, 2009.                    Respectfully submitted,


                                            /s/ Monte M.F. Cooper /s/
                                            _____
                                            I. Neel Chatterjee*
                                            Monte Cooper*
                                            Theresa A. Sutton*
                                            ORRICK, HERRINGTON & SUTCLIFFE LLP
                                            1000 Marsh Road
                                            Menlo Park, California 94025
                                            Telephone:    (650) 614-7400
                                            Facsimile:    (650) 614-7401
                                            nchatterjee@orrick.com
                                            mcooper@orrick.com
                                            tsutton@orrick.com

                                            Steven M. Bauer
                                            Jeremy P. Oczek
                                            PROSKAUER ROSE, LLP
                                            One International Plaza, 14th Floor
                                            Boston, MA 02110-2600
                                            Telephone:    (617) 526-9600
                                            Facsimile:    (617) 526-9899
                                            sbauer@proskauer.com
                                            joczek@proskauer.com

                                            * Admitted Pro Hac Vice

OHS West:260755851.1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC,<br><br>Defendants. | Civil Action No. 1:07-CV-10593-DPW (CONSOLIDATED WITH Civil Action No. 1:04-CV-11923-DPW) |

## <u>REDACTED</u> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TO LIMITED RELIEF FROM STAY AND TO ENJOIN INDIVIDUAL PLAINTIFFS AND THEIR COUNSEL

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND FACTS ...................................................................................... 3

       A.     The Court's Orders Regarding Discovery ............................................. 3

              1.     Protocol Governing Inspection of Facebook Defendants' Hard
                     Drives ......................................................................................... 3

              2.     Stipulated Protective Order ....................................................... 7

       B.     The Fee Arbitration Resurrects the Discovery Issues ......................... 8

III.   LEGAL ARGUMENT ........................................................................................ 10

       A.     This Court has the Authority to Sanction Violations of Its Orders ..... 10

       B.     The Founders and Their Counsel Are Liable for Civil Contempt ....... 11

              1.     Plaintiffs Had Notice That They Were Within the Massachusetts
                     Orders Ambit ............................................................................ 11

              2.     The Court's Orders Are Clear and Unambiguous .................... 12

              3.     The Founders and Their Counsel Had the Ability to Comply ..... 13

              4.     Plaintiffs Intentionally Violated The Court's Orders and Continue
                     to Threaten to Violate Them .................................................... 13

                     a.     Plaintiffs and Parmet Violated the Protocol and Lied ....... 14

                     b.     Plaintiffs Violate the Court's Orders by Serving Subpoenas
                            Related to Protected Information .................................. 15

                     c.     Plaintiffs Violate the Protocol By Providing Their Expert
                            With Documents Without First Seeking Leave of Court to
                            Do So ...................................................................... 17

       C.     This Court Should Sanction Plaintiffs For Violating the Court's Orders by
              Issuing an Injunction ........................................................................ 17

              1.     Plaintiffs repeated violations warrant injunctive relief ............ 17

              2.     Injunctive relief is warranted to ensure the Court's Orders are not
                     undermined .............................................................................. 19

IV.    CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Baldwin-United Corp.,*
   770 F.2d 328, 337 ..................................................................................20

*De Cosme v. Sea Containers, Ltd.,*
   874 F.2d 66 (1st Cir. 1989)........................................................................20

*Dystar Corp. v. Canto,*
   1 F. Supp. 2d 48 (D. Mass. 1997) ................................................................17

*Egri v. Conn. Yankee Atomic Power Co.,*
   68 Fed. Appx. 249, 255-56 (2d Cir. 2003)....................................................18

*Fortin v. Comm'r of the Mass. Dep't of Public Welfare,*
   692 F.2d 790 (1st Cir. 1982) ......................................................................10

*In re G.S.F. Corp.,*
   938 F.2d 1467 (1st Cir. 1991) ....................................................................20

*Gilday v. Dubois,*
   124 F.3d 277 (1st Cir. 1997)......................................................................12

*Goya Foods, Inc. v. Wallack Mgmt. Co.,*
   290 F.3d 63 (1st Cir. 2002)............................................10, 12, 14, 17, 18

*Harris v. Wells,*
   764 F. Supp. 743 (D. Conn. 1991) ..........................................................19, 20

*Maness v. Meyers,*
   419 U.S. 449 (1975)..................................................................................10

*Phillips Beverage Co. v. Belvedere, S.A.*
   204 F.3d 805, 806 (8th Cir. 2000) ..............................................................18

*Public Citizen v. Liggett Group, Inc.,*
   858 F.2d 775 (1st Cir. 1988)..................................................................10, 18

*Roadway Express, Inc. v. Piper,*
   447 U.S. 752 (1980)..............................................................................10, 15

*Ex Parte Robinson,*
   19 Wall. 505 (1873)), *aff'd,* 339 F.3d 23 (1st Cir. 2003) ............................11

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Top Enter., Inc. v. Torrejon,*
2008 WL. 2950961 (D.P.R. Jul. 29, 2008) ...........................................................14

*United States v. New York Telephone,*
434 US 159, 172 (1977) .....................................................................................18

*United States Public Interest Research Group v. Atlantic Salmon of Maine, LLC,*
261 F. Supp. 2d 17 (D. Maine 2003) ...................................................................10

*United States v. Saccoccia,*
433 F.3d 19 (1st. Cir. 2005) ................................................................................11

*Winkler v. Eli Lilly & Co.,*
101 F.3d 1196 (7th Cir. 1997) .............................................................................18

*In re Zyprexa Injunction,*
474 F.Supp.2d 385 (E.D.N.Y. 2007) ...................................................................18

## FEDERAL STATUTES

28 U.S.C. § 1651(a) ......................................................................................................19

28 U.S.C. § 2283 ...........................................................................................................21

# I.   __INTRODUCTION__

Plaintiffs Cameron and Tyler Winklevoss and Divya Narendra (and their counsel) (collectively, "Plaintiffs") should be enjoined from taking any further action in their legal fee dispute arbitration with their former attorneys, Quinn Emanuel Urquhart Oliver & Hedges, which violates this Court's Second Stipulated Protective Order, the Discovery Protocol, and the June 3, 2008 discovery order ("Court's Orders" or "Orders").[1]  Despite their prior settlement with Facebook, Plaintiffs contemptuous behavior in the legal fee arbitration proves they cannot be trusted to safeguard information protected by this Court's Orders.  Their willful violations compromise Facebook and the individual defendants' (collectively, "Facebook") sensitive private business information, notwithstanding that Facebook has no stake in the legal fee dispute. When confronted, Plaintiffs refused to explain their actions, tried to hide the truth and answered misleadingly to specific questions.  Plaintiffs' demonstrated lack of candor, past unaccounted for violations of its Orders, and threatened future violations of the Orders requires significant relief.

This high profile case has been fraught with problems involving prior deliberate and inadvertent disclosure of personal and confidential information.[2]  This Court already has found violations of its Orders.[3]  Yet, notwithstanding their settlement with Facebook, Plaintiffs continue to be driven by a desire to litigate this case  in the public domain, even if that means emasculating confidentiality protections designed to protect third parties wholly disinterested in the Plaintiffs' fee dispute with their former attorneys.  For these reasons, Facebook seeks to bring

---

[1] Facebook respectfully requests the stay to be lifted to the extent the Court deems that it is necessary to take the requested action.

[2] *See* Dkt. No. 162 (Facebook Defendants' Emergency Request for A Temporary Restraining Order Against Publication or Dissemination of Confidential Documents and Order to Show Cause Why Preliminary Injunction Should Not Issue).

[3] *See* Dkt. Nos. 195 (ConnectU's Emergency Motion for Expedited Hearing and *In Camera* Examination of Documents and of The Expert Parmet, In Regard to September 13, 2007 Order) and 204 (June 3, 2008 Memorandum and Order regarding ConnectU's Emergency Motion).

to an end Plaintiffs' continued deliberate efforts to expose private and confidential information to third parties who cannot be policed.

In a nutshell, this motion is necessitated by the following specific facts:

1. Plaintiffs' expert report submitted in their arbitration relies upon documents produced in this litigation that are subject to one or more Court Orders. Facebook was never told about this third party access and was never given an opportunity to object. Facebook also never approved the use of such information in the collateral arbitration.

2. Plaintiffs' counsel has stated that it is his firm's policy to share all information with the clients. Unlike this case, the protective order entered in the arbitration does not limit access to outside counsel only, or even the litigants. Presumably, Plaintiffs have been present throughout the arbitration and have had access to the contents of the materials subject to the Court Orders.

3. Documents filed in the arbitration reveal that Jeff Parmet, Plaintiffs, and their counsel ██████████████████████████████████████, as well as during the hearings before this Court regarding ConnectU's June 2008 emergency motion for *in camera* review.

4. In direct violation of the Court's Orders, Plaintiffs have served arbitral subpoenas on Facebook and other third parties seeking confidential information subject to this Court's Orders. These same discovery requests were rejected by this Court and the Northern District of California.

5. Plaintiffs' recent motion to this Court to modify the protective order to assist their legal fee dispute with Quinn Emanuel deliberately omits their current attempts in New York to second guess this Court's rulings regarding Facebook's alleged obligations to produce documents obtained in violation of the Protocol. It also demonstrates the improper use of these materials in the collateral arbitration.

When learning of some of these facts, Facebook attempted to resolve the dispute amicably, to no avail. For example, Facebook made several attempts to gain assurances from Plaintiffs' counsel that they would abide the terms of this Court's Orders. Decl. of Monte M.F. Cooper in Support of Mot. to Enjoin Individual Plaintiffs and Their Counsel ("Cooper Decl."), Exs. 1-3. O'Shea Partners initially provided no assurances. *Id.*, Ex. 4. At one point, however, despite being asked to remedy the documented violation of this Court's Protective Order, Plaintiffs' counsel simply stated that they were "aware of the Massachusetts protective order and have acted appropriately to preserve the confidentiality of any materials produced...We will

-2-

continue to do so." *Id.*, Ex. 5. As discussed more fully below, these proffered assurances were useless and misleading, as the confidentiality provisions of the Protective Order already had been violated. *See infra.*, IIA and B. Simply put, Plaintiffs and their counsel cannot be trusted to safeguard Facebook's sensitive information in their efforts to arbitrate their legal fees with their former attorneys. Without Court intervention, Plaintiffs will continue their effort to frustrate the integrity of the judicial process and the existing settlement.

## II. <u>BACKGROUND FACTS</u>

### A. <u>The Court's Orders Regarding Discovery</u>

Prior to its settlement, this case involved a wealth of highly confidential and private information. As a result, this Court resolved numerous discovery and collateral disputes related to confidentiality, which were among the most substantially litigated and sensitive issues in the case. Two orders are of particular relevance: (1) the Order for Discovery of Computer Memory Devices and (2) the Second Stipulated Protective Order.

#### 1. <u>Protocol Governing Inspection of Facebook Defendants' Hard Drives</u>

The first material protection established by this Court prior to the case's settlement relates to information stored on hard drives. One of the most contentious, if not <u>the</u> most contentious discovery issue, in the case related to the imaging and inspection of private parties' hard drives. As this Court may recall, in order to prove Plaintiffs' primary claim for Copyright infringement of software program code, Plaintiffs sought production of personal hard drives used by Facebook principals while in college, which could have potentially contained the early versions of Facebook code. They contained voluminous amounts of private and personal material that bear no relevance on the issues presented in either the now-settled litigation or in the fee dispute arbitration. Access to the contents of these devices was heavily litigated prior to the Plaintiffs resolving their disputes with Facebook. Disclosure of the information now would

-3-

not merely frustrate the finality of the settlement, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████.[4]   The hard drive also contains privileged

attorney-client communications.

Long before the case settled, this Court recognized the importance of protecting the

parties' privacy rights. Rather than ordering production of those devices to Plaintiffs, in

September 2007, this Court entered an Order for Discovery of Computer Memory Devices (the

"Protocol"), which authorized a strictly limited search for code by a Court-supervised consultant,

Jeff Parmet. Dkt. No. 103. The Protocol was, therefore, designed primarily to "protect from

disclosure . . . attorney-client communications as well as other privileged material contained on

the Facebook Hard Drives, including protection for any private or personal information that is

outside the scope of discovery." *See Id.* at 2.

Pursuant to the Protocol, Facebook Defendants were required to produce several hard

drive images for inspection. Parmet, Plaintiffs' consultant, was then authorized to inspect those

hard drives for computer code only. *Id.* at ¶ 2. The Protocol expressly prohibited Parmet,

however, from discussing or disclosing anything but Produced Program Code (as that term is

defined in the Protocol) with Plaintiffs or their counsel. *Id.* at ¶ 3.

Mr. Parmet did not follow the carefully crafted Court order. This fact came to light in

May 2008 when Plaintiffs filed an emergency motion to compel production of certain documents

that had not been produced prior to the settlement. Dkt. No. 195. Plaintiffs' current counsel,

Sean O'Shea, attended the hearing and appeared as counsel of record to obtain access to

---

[4] ████████████████████████████████████████████

████████████████████████████████████.

materials governed by the Protective Order.

At the June 3, 2008 hearing, the Court concluded that Parmet's actions were indisputably a violation of the Protocol. At the hearing, the Court:

> closed the proceedings to all but Mr. Parmet and his counsel and Facebook's counsel in order to develop further information in a manner that would not compromise the concern, reflected in the September 13, 2007 [Protocol], that information - except for Produced Program Code - discovered by Mr. Parmet in his review of Facebook hard drives not be disclosed to ConnectU's counsel or anyone else but Facebook.

Cooper Decl., Ex. 6. at 3. After the *in camera* hearing, the Court found that Parmet's communications with Plaintiffs' counsel was a "transgression of the [Court's] order" and ordered Parmet not to discuss the information further with ConnectU or its counsel. *Id.*, Ex. 7 at 92:8-93:2.



*See* Cooper Decl. Ex. 8 (bracketing added).



*Id.* Ex. 9 at 11-12.

*Id.* Ex. 10.

Dkt. No. 195 at 2 and 6-7.

This Court denied ConnectU's Motion by Order dated June 3, 2008, finding as follows:

> ConnectU has requested that I make a preliminary review of the
> documents for purposes of determining whether there was some form of
> discovery abuse in their nondisclosure by Facebook before proceedings
> were suspended. This proposed review is apparently sought in an effort to
> influence the resolution of the question before Judge Ware whether the
> settlement should be enforced. I have declined to conduct that review in
> order to leave matters in the posture they were in when the "Term Sheet
> and Settlement Agreement" was executed. From all that appears, the
> parties were prepared to settle their disputes then, despite the fact that
> aspects of discovery in this case – most pertinently for present purposes,
> document production – had not been completed and unresolved discovery
> issues remained outstanding.

Dkt. 204 at 4. This Court therefore left to "Judge Ware to determine what additional discovery,

if any, is necessary to the resolution of any settlement dispute between amply represented parties

aware that they had not chosen to complete discovery when executing this 'Term Sheet and

Settlement Agreement.'" *Id.* Judge Ware ultimately also rejected any argument that discovery was necessary to determine whether to enforce the settlement agreement. After extensive motion practice between the parties, Judge Ware entered an Order enforcing the Settlement Agreement, and in doing so held no additional discovery was necessary:

> [T]he parties were prepared to settle their disputes then, despite the fact that aspects of discovery in this case - most pertinently for present purposes, document production - had not been completed and unresolved discovery issues remained outstanding.

*Id.* Ex. 11. Plaintiffs subsequently appealed that ruling to the Ninth Circuit.

In light of the ongoing activity in the Ninth Circuit, on September 30, 2009, this Court stayed these consolidated actions pending resolution by the Ninth Circuit of Plaintiffs' appeals. Dkt. Nos. 274 and 275.

### 2. Stipulated Protective Order

The second form of protection for the material at issue in this motion is the Stipulated Protective Order entered by this Court prior to settlement. On July 6, 2005, the Court entered the Second Stipulated Protective Order, which governs the use and disclosure of confidential materials produced in this matter. Dkt. No. 32, Case No. 1:04-CV-11923 (DPW). Pursuant to the Protective Order, parties are permitted to designate as confidential documents "any party in good faith [believes] contains a trade secret or other information considered by such party to be confidential ...." *Id.* ¶ 1. Such "confidential information shall not be used for any purpose other than this Action, shall not be made public, and shall not be disseminated beyond the extent necessary for this Action." *Id.* at 1. In addition, experts who do not meet specified condition of paragraph 8, may not have access to confidential materials. *Id.* at ¶ 6. The Protective Order is expressly incorporated into the Protocol and governs the use and disclosure of Facebook Defendants' hard drives, as well as all materials Facebook Defendants designated as Confidential during production. Dkt. No. 103 ¶ 2.

**B.     The Fee Arbitration Resurrects the Discovery Issues**

These consolidated cases settled in February 2008.  Two months later, Plaintiffs reneged on their obligations pursuant to the Settlement Agreement, forcing Facebook to file a motion to enforce the agreement in the Northern District of California.  Dkt. No. 188.  At the same time,

███████████████████████████████████████████████████████████████████████

████████████████.  In April 2008, Quinn Emanuel initiated arbitration proceedings to recover the fees owed by Plaintiffs.  The arbitration has a protective order.  Cooper Decl., Ex. 12.

██████████████████████████████████████████████████  *Id*. at 6.  Indeed, when asked, Plaintiffs refused to agree to limit access to Counsel's Eyes' only.  Moreover, because the arbitration is confidential, third parties have no ability to seek protection under the arbitral protective order or to police compliance.

███████████████████████████████████████████████

████████████████████████████████████████████  Cooper Decl., Ex. 13.  ████████████████████████████████████████

███████████████████████.  *Id*.

Beginning in August, 2009, Plaintiffs caused several subpoenas to issue for the production of documents, including three to Facebook.  The first two subpoenas were issued to Microsoft Corporation and Houlihan Lokey, and they sought information related to the valuation of Facebook stock. This information was the precise information Plaintiffs previously sought through discovery in the underlying litigation.  Microsoft and Houlihan objected to the subpoenas for a number of reasons, including that the information is highly confidential and sensitive business information.  Plaintiffs then filed a Motion to Compel Compliance in the New York Supreme Court.  Plaintiffs subsequently served Facebook a subpoena seeking the same information sought from Microsoft and Houlihan Lokey.  Facebook objected on the ground that

-8-

information regarding its valuations is competitively sensitive. Those motions remain pending.

The arbitrators issued a subpoena to Facebook, to appear, bring and produce documents

before them:

> All documents concerning or reflecting any use or plan to use any information or concept of any kind derived from or in conjunction with Cameron Winklevoss, Tyler Winklevoss, or Divya Narendra, or any actual or potential appropriation or theft of any such information or concept.
> Limitations:
>
> - This Request is limited to messages to or from Mark Zuckerberg.
> - This Request is further limited to responsive documents concerning any actual or potential social networking website.
> - This Request is further limited in that the responsive documents sought were/are contained and/or located on the hard drive designated by Facebook as device 371-01 in connection with the matter of *ConnectU, Inc. v. Facebook, Inc.*, 1:07-cv-10593 (DPW) and 1:04-Cv-11923 (DPW) (D.Mass.).

Cooper Decl., Ex. 14 (the "September Device Subpoena"). Facebook served Objections and

Responses to the September Device Subpoena on September 18, 2009 indicating that it had no

responsive documents. *Id.*, Ex. 15. ████████████████████████████████████████████

████████████████████ :

████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Cooper Decl., Ex 16 at 1. ██████████████████████████████████████████

██████████████████████████████████████ *Id.* Ex. 17.

O'Shea then demanded that the Arbitration Panel broaden the scope of the September

Device Subpoena to seek from Facebook: (1) an unredacted version of an email from Parmet to

Facebook's counsel; (2) a copy of Device 371-01 or, if not the Device, all documents contained

on the Device at the time it was reviewed by Jeff Parmet, and (3) appoint an independent

computer forensic specialist to retrieve the documents from the device. *Id.*, Ex. 16 at 3. The

OHS West:260755851.1

Arbitration Panel complied with O'Shea's demand and issued a subpoena on October 8, 2009

(the "October Device Subpoena"). *Id.*, Ex. 18. Facebook objected and appealed to the Panel to

withdraw the October Device Subpoena on the ground, among other things, that Plaintiffs are

precluded from accessing these materials under the express terms of the Protocol. Cooper Decl.,

Ex. 19. Plaintiffs recently notified Facebook that the Panel refused to withdraw the October

Subpoena. *Id.*, Ex. 20. This motion ensued.

## III.    LEGAL ARGUMENT

### A.    This Court has the Authority to Sanction Violations of Its Orders

Notwithstanding this Court's order staying proceedings, this Court should exercise its

discretion to enforce its orders and sanction any contempt of them. "A protective order issued by

a court, either state or federal, which on its face survives the underlying litigation, continues to

have full force and effect on the parties subject to it even after final resolution of underlying

case…" *See Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 783 (1st Cir. 1988). All court

orders must be obeyed, even if they are later found to be improper or unconstitutional, until they

are vacated or amended pursuant to the proper judicial process. *Maness v. Meyers*, 419 U.S. 449,

458-49 (1975). Moreover, "good faith is not a defense to civil contempt" for a violation of such

Orders. *Fortin v. Comm'r of the Mass. Dep't of Public Welfare*, 692 F.2d 790, 796 (1st Cir.

1982).

Where contempt of a court order is found, federal courts are empowered to issue civil

contempt sanctions to protect the orderly administration of justice and maintain the authority and

dignity of the Court. *Goya Foods, Inc. v. Wallack Mgmt. Co.,* 290 F.3d 63, 78 (1st Cir. 2002)

(quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980)). Such relief includes

injunctive relief and other sanctions, including monetary sanctions. *Id.* at 78-79; *see also United*

*States Public Interest Research Group v. Atlantic Salmon of Maine, LLC*, 261 F. Supp. 2d 17, 23

OHS West:260755851.1

& n.4 (D. Maine 2003) (entering injunctive relief in support of finding of civil contempt, and noting "[t]he power to punish civilly for contempt is essential to the enforcement of the judgments and writs of the courts 'and consequent to the due administration of justice'") quoting *Ex Parte Robinson*, 19 Wall. 505, 86 US 505, 22 L.Ed. 205 (1873)), *aff'd*, 339 F.3d 23 (1st Cir. 2003).

A party is liable for civil contempt where there is clear and convincing evidence that (1) the party had notice it was within the order's ambit; (2) the order was clear and unambiguous; (3) the party had the ability to comply; and (4) the order was indeed violated. *United States v. Saccoccia,* 433 F.3d 19, 27 (1st. Cir. 2005). As detailed herein, Plaintiffs are in clear contempt of this Court's Orders.

## B. The Founders and Their Counsel Are Liable for Civil Contempt

### 1. Plaintiffs Had Notice That They Were Within the Massachusetts Orders Ambit

Relief for civil contempt is necessary. Plaintiffs and their counsel had notice and a clear understanding of the Court's Orders, both before and after they violated their terms, and yet took no remedial action. Plaintiffs were principals of ConnectU, Inc., parties to this case and actively participated in the litigation in both district courts as well as attended hearings, including ConnectU's "emergency motion" for *in camera* review.

Plaintiffs are aware that they are subject to the Court's Orders. Significantly, Sean O'Shea, counsel for Plaintiffs in the arbitration, was present for the emergency motion hearing in Massachusetts and is undoubtedly well aware of the June 3, 2008 Order. Dkt. No. 204. █

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ *See* Cooper Decl., Ex., 13.

OHS West:260755851.1

Despite full knowledge of the restrictions, Plaintiffs and their counsel chose to use the information anyway. Even after Plaintiffs were apprised of the documented violations,

██████████████████████████████████████████████████████

████████████████████████████, Plaintiffs' steadfastly refused to take corrective measures. *Id.*, Exs. 1-5. ██████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

Plaintiffs' knowledge of the Court Orders reflects that they are culpable for contempt for their unilateral actions violating them in the legal fee arbitration. "When a legitimate question exists at to the scope and effectiveness of a court's order, those who know the decree, yet act unilaterally, assume the risk of mistaken judgments." *Goya Foods v. Wallack Mngt. Co.*, 290 F.3d at 75.

## 2. The Court's Orders Are Clear and Unambiguous

The test for whether an Order is sufficiently definite to support civil contempt is whether the alleged contemnor is "able to ascertain from the four corners of the order precisely what acts are forbidden." *Gilday v. Dubois*, 124 F.3d 277, 282 (1st Cir. 1997). Here, the Court's Orders clearly meet this condition and set forth the parameters to protect the confidentiality concerns of this case. The Second Stipulated Protective Order governs the use and disclosure of confidential materials produced in this matter. Parties are permitted to designate as confidential documents "any party in good faith [believes] contains a trade secret or other information considered by such party to be confidential ... ." Dkt. No. 32, Case No. 1:04-cv-11923 (DPW). Such "confidential information shall not be used for any purpose other than this Action, shall not be made public, and shall not be disseminated beyond the extent necessary for this Action." *Id.* at

-12-

1. In addition, experts who do not meet specified condition of paragraph 8, may not have access to confidential materials. *Id.* ¶ 7. The Protective Order is expressly incorporated into the Protocol and governs the use and disclosure of Facebook Defendants' hard drives, as well as all materials Facebook Defendants designated as Confidential during production. Dkt. No. 103 at 2.

The parameters of the Discovery Protocol and the June 3 2008 order also are unambiguous. Indeed, the Court held contempt proceedings with regard to the parameters. As this Court recalls, it focused on Parmet's violation of this Court's Order and on June 3, 2008, the Court held a contempt proceeding. After the *in camera* hearing, the Court found that Parmet's communications with Founders' counsel was a "transgression of the [Court's] order" and ordered Parmet not to discuss the information further with Plaintiffs or their counsel. *Id.*, Ex. 7 at 92:8-93:2. It is clear from the June 3 Order and the existing Protective Orders, that this Court has held that Plaintiffs simply are not entitled to view this information. O'Shea was present at that hearing, as was at least one of the individual plaintiffs.

### 3. The Founders and Their Counsel Had the Ability to Comply

Plaintiffs could easily have complied with the Court's Orders. This point cannot easily be disputed. They knew the orders. Plaintiffs could have refrained from taking actions violating these orders. ███████████████████████████████████████ ████████████████████████, giving notice to Facebook, and giving Facebook the opportunity to object. Instead, they chose to violate the Court Orders. Such self-help is inappropriate, and warrants a finding of civil contempt. *Top Enter., Inc. v. Torrejon*, 2008 WL 2950961, at * 2 (D.P.R. Jul. 29, 2008).

### 4. Plaintiffs Intentionally Violated The Court's Orders and Continue to Threaten to Violate Them.

There is little question that ███████████████████████████████

-13-

███████████████████████████████████████████████████████
██████████████████████████████████████████ None of this
knowledge would exist but for having access to protected information.  Perhaps more
disconcerting, ████████████████████████████████████████████
████████████████████.  It puts information in the hands of the plaintiffs directly, something
they never would have had previously.

As set forth in the opposition filed concurrently, plaintiffs have had a history of living
this case in the press.  They have already demonstrated an inability to comply with
confidentiality protections set forth by the Court.  The only thing that may stop them is the force
of a Court order with substantial consequences.  A trial court "has wide discretion in its choice of
sanctions." *Goya Foods, Inc.,* 290 F.3d at 77.  Here, the Court should employ its injunctive
powers to enjoin further violations of its Court Orders.

a.     <strong><u>Plaintiffs and Parmet Violated the Protocol and Lied.</u></strong>

One reason injunctive relief is necessary is because previous violations of the Court
Orders were hidden from the Court.  Specifically, Facebook has just learned through filings from
the arbitration that █████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
██████████████████████████
██████████████████████████████████
███████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████

OHS West:260755851.1

[REDACTED]

[REDACTED]

As this Court may recall, ConnectU resisted settlement of the case by filing an "Emergency Motion" in this Court alleging that [REDACTED] [REDACTED] Dkt. No. 195 .

[REDACTED]

[REDACTED] *Id.* [REDACTED]

[REDACTED]

[REDACTED]

Cooper Decl., Ex. 9 at 11-12.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Cooper Decl., Exs. 8 and 10; *see also Id.*, Ex. 7 at 6:14-7:11.

Under these circumstances, the Court's exercise of injunctive relief to enforce its civil contempt powers to ensure such undisclosed violations are properly remedied is necessary to "protect[] the due and orderly administration of justice and ... maintain[] the authority and dignity of the court." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

**b.** **Plaintiffs Violate the Court's Orders by Serving Subpoenas Related to Protected Information**

Another reason injunctive relief as part of a civil contempt order is necessary is to ensure

---

[5] Facebook disagrees with the characterizations of the documents.

OHS West:260755851.1

the privacy and confidentiality protections of the Protocol are honored. The legal fee dispute arbitration subpoenas to Facebook regarding Mr. Zuckerberg's hard drive, issued at Plaintiffs' request, seek the files that Parmet located on it in violation of this Court's heavily litigated Protocol. Despite the fact that this Court and the Northern District of California have twice ruled that Plaintiffs are not entitled to these documents, they are attempting to now pursue the documents in their private arbitration. Plaintiffs' conduct in the arbitration is a serious threat to this Court's jurisdiction and another violation of the Court's Protocol. Plaintiffs should be precluded from using the illegally obtained "documents" to support any contentions presented in the arbitration. But for the Protocol violation, Plaintiffs would not be entitled to use any purported relevant evidence derived from Parmet's searches.

Nevertheless, Plaintiffs and their counsel, aware of the restrictions of the Court Orders having been involved and present at the hearing before this Court at ConnectU's "emergency motion" sought issuance of the subpoenas to Facebook. Frustrated by Facebook's objections and responses that it did not have any documents responsive, O'Shea proceeded to use even more information protected by this Court's order and demanded that the Arbitration Panel broaden the scope of the September Device Subpoena. The Arbitration Panel complied with O'Shea's demand to broaden the discovery request and issued the October Device Subpoena.

Notably, the October Device Subpoena issued the same day as the Plaintiffs filed a motion in this Court seeking limited relief from the stay and a modification to the Second Stipulated Protective Order to use confidential materials produced by Facebook in this case yet failed to attach the Facebook subpoenas seeking the hard drive. Plaintiffs are threatening Court intervention with respect to this request over Facebook's warnings that such conduct violates the Court's Orders.

-16-

c.    **Plaintiffs Violate the Protocol By Providing Their Expert With Documents Without First Seeking Leave of Court to Do So**

Plaintiffs also have egregiously shared information subject to the Court Orders ████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████ Cooper Decl., Ex. 21. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████ Cooper Decl., Ex. 21. ███████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████. In addition, despite

repeated requests by Facebook that Plaintiffs' counsel provide assurances that they have abided

by the Protective Order, or that they take immediate remedial action if they have not acted in

compliance, Plaintiffs instead indicated that they have and will continue to comply. *See* Cooper

Decl., Exs. 1-5.

C.    **This Court Should Sanction Plaintiffs For Violating the Court's Orders by Issuing an Injunction**

1.    **Plaintiffs repeated violations warrant injunctive relief**

As noted, injunctive relief is an appropriate sanction for contempt of a Court's order. *See*

*Dystar Corp. v. Canto*, 1 F. Supp. 2d 48, 58 (D. Mass. 1997). Sanctions for civil contempt are

-17-

permitted to coerce the defendant into compliance with the Court's Orders. *Id.* Courts are permitted to employ their civil contempt powers as part of their inherent powers. *Goya Foods, Inc. v. Wallack Mgmt. Co.,* 290 F.3d at 77.

Moreover, in addition to the Court's inherent powers, the All Writs Act also provides broad authority for this Court to issue orders "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). In particular, the All Writs Act permits the Court to support its jurisdiction, by "issu[ing] such commands ....as may be necessary or appropriate to effectuate and prevent frustration of orders it previously issued in exercise of jurisdiction otherwise obtained." *United States v. New York Telephone*, 434 US 159, 172 (1977). Not surprisingly, the All Writs Act permits a district court, under certain circumstances, to issue an injunction to safeguard a pretrial ruling, such as a discovery order. *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1997). *See also Egri v. Conn. Yankee Atomic Power Co.*, 68 Fed. Appx. 249, 255-56 (2d Cir. 2003) (unpublished opinion finding injunction enforcing protective order permissible under the All Writs Act); *In re Zyprexa Injunction*, 474 F.Supp.2d 385 (E.D.N.Y. 2007). When a district court has properly exercised its jurisdiction in entering an order, it is empowered to issue writs in aid of its jurisdiction to persons in position to frustrate the order. *See, e.g., Phillips Beverage Co. v. Belvedere, S.A.* 204 F.3d 805, 806 (8th Cir. 2000) (when district court has denied litigant's request for temporary restraining order, court may enjoin that litigant from seeking same preliminary relief from an administrative agency).

Plaintiffs have violated the Court's orders and, unless an injunction issues, will continue to do so. They have used extensive information from the underlying litigation to seek an end run around the enforced settlement, and to engage in public discourse about what is otherwise private

information. They have sought discovery using protected information. They have even given experts Facebook's confidential information. All this information will likely be (if it has not already) shared with Plaintiffs, despite express prohibitions in this Court's protective order.

### 2. Injunctive relief is warranted to ensure the Court's Orders are not undermined

Because Plaintiffs and their counsel in the Arbitration have clearly and explicitly set themselves on a course to relitigate this Court's June 3, 2008 Order and to seek documents that the courts have specifically found they may not see without violating privacy and confidentiality concerns, in violation of the Stipulated Protective Order and the Discovery Protocol, a preliminary injunction is authorized by the All Writs Act (in addition to the Court's civil contempt powers) to prevent Plaintiffs and their counsel from taking any further action to enforce the October 8, 2009 Subpoena. *See, e.g., Harris v. Wells,* 764 F. Supp. 743, 745-46 (D. Conn. 1991) (corporation was entitled to injunction under the All-Writs Act to prevent a shareholder and a director from *commencing* separate proceeding to compel documents pursuant to non-judicial request). When a court believes that suit is being brought elsewhere to undermine a decision already made by the court, an injunction is proper. *Harris,* 764 F. Supp. at 745-46.

The record here presents the strong and unequivocal showing of a proceeding that could interfere with this Court's prior discovery orders and frustrate proceedings in a federal action where the Court has "issued carefully crafted rulings on countless discovery motions, including an order requiring the coordination of discovery in these consolidated actions with the discovery in a related action pending in the District Court for the Central District of California." *Harris,* 764 F. Supp. at 745-46. Plaintiffs' effort to relitigate this Court's discovery rulings brings this case squarely within this Court's discretion to control the disposition of the cases on its docket in any manner which will promote economy of time and effort for itself, for counsel, and for

-19-

litigants, and to prevent groundless encroachment on the resources of the court and other parties. *Id.*

The undermining nature of Plaintiffs' conduct in the Arbitration is abundantly clear – they have sought to use the discovery process in the Arbitration to end-run the judgments and orders of two federal district courts as well as to get access to information they would not be permitted to access in the underlying litigation. To avoid this Court's Orders, they asked an Arbitration Panel and the state court in New York, both of which have no connection with the proceedings in the Massachusetts and California courts that have considered these matters in detail, to decide these issues – all the while evading this Court and not including Facebook. Such actions are precisely the sort of actions warranting an injunction. *See, e.g., Harris,* 764 F. Supp. at 746 (*quoting Baldwin-United Corp.,* 770 F.2d 328, 337) (granting injunction and noting that "[A state court] proceeding could interfere with this Court's prior discovery orders, and 'could frustrate proceedings in a federal action of substantial scope, which has already consumed vast amounts of judicial time . . .'").[6]

## IV.   **CONCLUSION**

For the reasons stated above, the Court should issue an order enjoining the Plaintiffs and their counsel from further use of any information covered by an order of this Court in any proceeding other than this Court, the Northern District of California, and the Ninth Circuit Court of Appeals.

---

[6] Should an Order To Show Cause be issued by the Supreme Court of New York regarding the October Device Subpoena, this Court also has authority to issue an injunction based on the exceptions to the Anti-Injunction Act. 28 U.S.C. § 2283; *see also, In re G.S.F. Corp.,* 938 F.2d 1467, 1478-1479 (1st Cir. 1991); *De Cosme v. Sea Containers, Ltd.,* 874 F.2d 66, 68 (1st Cir. 1989).

OHS West:260755851.1

Dated: November 3, 2009.                 Respectfully submitted,


                                          /s/ Monte M.F. Cooper /s/
                                          I. Neel Chatterjee*
                                          Monte Cooper*
                                          Theresa A. Sutton*
                                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                          1000 Marsh Road
                                          Menlo Park, California 94025
                                          Telephone:    (650) 614-7400
                                          Facsimile:    (650) 614-7401
                                          nchatterjee@orrick.com
                                          mcooper@orrick.com
                                          tsutton@orrick.com

                                          Steven M. Bauer
                                          Jeremy P. Oczek
                                          PROSKAUER ROSE, LLP
                                          One International Plaza, 14th Floor
                                          Boston, MA 02110-2600
                                          Telephone:    (617) 526-9600
                                          Facsimile:    (617) 526-9899
                                          sbauer@proskauer.com
                                          joczek@proskauer.com

                                          * Admitted Pro Hac Vice

-21-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 3, 2009.

Dated: November 3, 2009.     Respectfully submitted,

/s/ Monte M.F. Cooper /s/

Monte M.F. Cooper