**EXHIBIT 4**

in the Massachusetts case, we have sought them in this arbitration. We are bound by the protective order in this case, which is the one that will govern the use of the documents we seek. The fact that the documents we seek may have been produced in some other action is completely irrelevant. Your statement that we are somehow bound to follow the Massachusetts protective order is at odds with common sense and the law.

In an effort, however, to try and move this matter forward, we would be amenable to an agreement that provides that if the documents are produced in this arbitration, their use would be governed by the protective order entered herein.

Please let us know if this is agreeable. If not, we will promptly move to compel.

Very truly yours,

/s/ Sean F. O'Shea

Sean F. O'Shea

cc: Anthony Paduano, Esq. (via e-mail)

via the Massachusetts court. Rather, we have sought them through the arbitration panel in our separate action with Quinn Emanuel under the auspices of New York law. The Panel in our case (and, if necessary, the Supreme Court of the State of New York) will decide whether the documents will be produced in our case and, if so, under what conditions. These are fundamental principles of jurisdiction and federalism that we have no doubt were thoroughly covered in your first year of law school.

Next, you claim that we have violated the Massachusetts protective order by seeking relief from that order from the Massachusetts court. This asinine assertion defeats itself. The documents listed in the chart on pages 2 and 3 of your letter have not been submitted to the Panel, nor have our clients seen those documents.

In short, you have failed to raise even a colorable inference that there have been any violations of the Massachusetts or California protective orders. Absent such a factual basis, you have no right to request the "assurances" you seek.

However, we do have a factual basis to seek certain assurances from you. As you know, your firm represents both Facebook and Microsoft Corporation. Prior to the hearing before Justice Lowe on October 5th, we had reached a compromise agreement on the Microsoft subpoena whereby Microsoft would produce the Stock Purchase Agreement between it and Facebook in satisfaction of our subpoena. The Microsoft subpoena seeks a broader range of documents than that, including certain internal Microsoft records. Accordingly, based on the positions Microsoft has taken, Microsoft clearly viewed the compromise arrangement as beneficial. However, as you are aware, at the eleventh hour, on Sunday, October 4th, your firm conditioned the consummation of the Microsoft arrangement on our agreement to drop the subpoena for the Parmet documents – a demand that clearly leveraged a deal beneficial to Microsoft to secure an arrangement solely beneficial to Facebook. This is a clear conflict of interest. Indeed, because this deal was not consummated, Microsoft is now at risk of having to produce a broader range of documents than the Stock Purchase Agreement with Facebook, including certain internal Microsoft records. Accordingly, please provide us with immediate assurances, as well as a letter from an in-house attorney at Microsoft, confirming that Microsoft is aware that your firm refused to consummate a compromise arrangement beneficial to Microsoft solely because we would not accede to demands made solely for the benefit of Facebook. This will allow us to determine whether additional discussions with Microsoft (represented by independent counsel) would be productive.

Regards,

Michael E. Petrella