# EXHIBIT 19



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NEW YORK 10103-0001

*tel* +1-212-506-5000
*fax* +1-212-506-5151
WWW.ORRICK.COM

October 16, 2009

Karen D. Thompson
(212) 506-3784
kthompson@orrick.com

*VIA E-MAIL*
*VIA FEDERAL EXPRESS*

The Honorable William Dreier
Norris McLaughlin & Marcus, P.A.
875 Third Avenue, 18th Floor
New York, NY 10022
wadreier@nmmlaw.com

The Honorable Thomas Penfield Jackson
One Lafayette Centre, South Tower
1120 20th Street, NW
Washington, D.C., 20036
tjackson@jackscamp.com

Richard H. Silberberg, Esq.
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177-1500
silberberg.richard@dorsey.com

Re:  <u>Quinn Emanuel Urquhart Oliver & Hedges, LLP v. Howard Winklevoss, et al.</u>
     <u>Case No. 13 194 Y 995 08</u>

Dear Messrs. Drier, Jackson and Silberberg:

This firm represents Facebook, Inc. I write in response to the October 8, 2009, Subpoena (the "Subpoena") issued in connection with the above-mentioned action. Since the Subpoena issued without any consultation of Facebook, Facebook believes that the Panel has not been fully advised by Respondents regarding the protective orders in place that govern the use of the subpoenaed information.

Specifically, the Panel cannot require production of the requested materials without violating multiple court orders that govern the use and disclosure of those materials. Those court orders specifically bar Respondents from seeing the precise documents they request in the Subpoena. As such, no confidentiality order in the arbitration can resolve this issue — it is Respondents themselves who are barred from viewing or receiving this information. Indeed, but for a previous violation of one of those orders, Respondents would not know about or be able to seek production of these materials at all. Facebook respectfully requests, therefore, that the Subpoena be withdrawn. Absent such withdrawal, Facebook will be forced to seek relief in the United States District Court for the District of Massachusetts, seeking a protective order from Respondents' violations of that Court's orders and seeking assistance in the enforcement of those orders.



**ORRICK**

The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

October 16, 2009
Page 2

## Background of the Litigation between Respondents and Facebook[1]

Since 2004, Respondents Cameron and Tyler Winklevoss, Divya Narendra, and ConnectU, Inc. have been engaged in litigation with Facebook and Mark Zuckerberg over the founding of facebook.com. That litigation was filed in the U.S. District Court for the District of Massachusetts before the Honorable Judge Woodlock (Case No. 07-10593-DPW). In 2005, while that action was pending, Facebook learned that Respondents sought to retaliate against Mr. Zuckerberg by hiring a third party to develop software designed to hack into Facebook's computer systems and spam its users. As a result, Facebook sued Respondents and the software developers in the Northern District of California (Case No. C 07-01389 JW) for these activities.

In January 2008, the California parties were ordered to mediation, and all agreed to participate in a global mediation to settle all claims between them. The mediation occurred on February 22, 2008, and resulted in a final, binding Settlement Agreement. (*See* Exhibit 1 at 3.) Both the California and Massachusetts actions were dismissed with prejudice. (*Id.*)

Dissatisfied with the deal they struck, Respondents reneged on their obligations and then fired their attorneys, Quinn Emanuel. Respondents resisted enforcement of the Settlement Agreement. After extensive motion practice between the parties, the Honorable Judge Ware in the Northern District of California entered an Order enforcing the Settlement Agreement. (*Id.*)

## The Requested Device 371-01 Is Specifically Governed By Several Protective Orders in the Massachusetts Litigation

The Subpoena appears to be directed to documents and information found on Device 371-01.[2] Access to the contents of this device has been heavily litigated. Before the settlement was executed, as part of the litigation between Respondents and Facebook, Respondents sought

---

[1] While there are many procedural intricacies involved in the litigations between the parties, this is an abbreviated summary to provide general background on the dispute.

[2] Device 371-01 is the hard drive that was used by Mark Zuckerberg, its custodian, when he was a college student. (*See* Exhibit 2 at Exh. A.) The information contained on that hard drive is, in large part, private and sensitive. Disclosure of the information will expose the private thoughts, communications and actions of private persons, including Mr. Zuckerberg's family, friends, and former classmates. For instance, many of the documents contain private and irrelevant detailed discussions of Mr. Zuckerberg's and his college friends' intimate relationships, family concerns, parental advice, and tragedies in a college student's life (*e.g.*, identity of a student who attempted to commit suicide). The hard drive also contains privileged attorney-client communications.



ORRICK

The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

October 16, 2009
Page 3

production of hard drives used by Facebook principals, including Mark Zuckerberg. Rather than ordering production of those devices to Respondents, in September 2007, the Massachusetts Court entered an Order for Discovery of Computer Memory Devices (the "Protocol"), which authorized a limited search for code by a Court-supervised consultant, Jeff Parmet. (*See* Exhibit 2.) The Protocol was heavily litigated and designed primarily to "protect from disclosure . . . attorney-client communications as well as other privileged material contained on the Facebook Hard Drives, including protection for any private or personal information that is outside the scope of discovery." (*See id.* at 2.) In order to protect these concerns, the Protocol was to be carried out by Parmet, who was forbidden from discussing anything but Produced Computer Code (as that term is defined in the Protocol) with Respondents or their counsel. (*Id.* at 3.)("No 'Protected Material' shall be shared in any way with ConnectU or its Counsel at any time."). Device 371-01, which is the subject of the Subpoena, is protected by the Protocol. (*Id.* at Exh. A.)

In violation of the Protocol, however, Parmet notified Respondents' counsel that he had located on Device 371-01 certain non-code documents that he thought should be produced. Respondents were apparently told of these documents prior to the February 2008 mediation and settlement. (*See* Exhs. I and J to Petitioner Quinn Emanuel's Statement of Claim and Response to Counterclaim.)

Nevertheless, after the mediation, in an effort to unravel the settlement, Respondents filed an "emergency motion" in the District of Massachusetts, asking Judge Woodlock to compel production of non-code documents improperly located by Parmet, arguing that they were not aware of them prior to the settlement and that they thus should be allowed access to the documents to undo the settlement. (Exhibit 3 at 6:14-7:11.) Concerned instead about Parmet's violation of the Court's Order, on June 2, 2008, the Court

> **closed the proceedings to all but Mr. Parmet and his counsel
> and Facebook's counsel** in order to develop further information in
> a manner that would not compromise the concern, reflected in the
> September 13, 2007 [Protocol], that information - except for
> Produced Program Code - discovered by Mr. Parmet in his review of
> Facebook hard drives **not be disclosed to ConnectU's counsel** or
> anyone else but Facebook.

(*See* Exhibit 4 at 3.)(emphasis added). After the *in camera* hearing, the Court found that Parmet's communications with Respondents' counsel was a "transgression of the [Court's] order" and



ORRICK

The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

October 16, 2009
Page 4

ordered Parmet not to discuss the information further with Respondents or their counsel. (*See* Exhibit 3 at 92:8-93:2.)

During the public portion of the June 2008 hearing, the Court repeatedly asked Respondents' counsel to explain why Respondents should be given access to the information Parmet disclosed. (*See* Exhibit 3 at 9:6-24:15; 24:24-26:14.) Respondents' counsel was unable to identify a single provision in the Protocol or offer any legal in support for the apparent violation. *Id.* Instead, Respondents' counsel insisted that the District Court either review the materials or compel their production. (*See* Exhibit 4 at 4; *e.g.,* Exhibit 3 at 37:3-38:3.) Judge Woodlock declined and instead transmitted his June 3, 2008 Order and the (public and in camera) transcripts to Judge Ware in the California action to decide what discovery, if any, should be had in the then-ongoing enforcement proceedings commenced by Facebook to enforce the Settlement Agreement. (*Id.*) Quoting from Judge Woodlock's Order, Judge Ware again declined to order production, because

> From all that appears, the parties were prepared to settle their disputes then, despite the fact that aspects of discovery in this case - most pertinently for present purposes, document production - had not been completed and unresolved discovery issues remained outstanding.

(*See* Exhibit 1 at 10 quoting Exhibit 4 at 3.) The subpoena at issue here seeks production of the same materials at issue before Judge Woodlock and Judge Ware – materials obtained in violation of the Court-ordered Protocol and twice denied to Respondents.

It must also be noted that, in addition to the special Protocol governing the exact documents that Respondents seek, the sought-after documents also are protected by parties' Stipulated Protective Order entered by the Massachusetts Court. (See Exhibit 5.) Pursuant to those Orders, Respondents and Facebook are prohibited from using any confidential materials produced in the litigation for any purpose other than the Massachusetts action and may not disseminate them beyond the extent necessary for that case. (*Id.* at 2.)

Well aware of this restriction, Respondents recently attempted to seek modification of the Protective Order from the District Court to permit them to use other produced materials in this Arbitration, a request the Court has yet to allow Respondents to even file. As a result of Respondents' recent motion, Facebook has asked Respondents' counsel to confirm they have not improperly used produced confidential materials in these arbitration proceedings. (*See* Exhibit 6.)



The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

October 16, 2009
Page 5

The Panel's subpoena power should not be manipulated by Respondents to enable them to use documents here that they were not even permitted to see in the underlying litigation.[3]

## Device 371-01 is Irrelevant to Claims and Defenses

In addition to perpetuating grave violations of applicable and binding court orders, the Subpoena also improperly seeks production of information that is irrelevant to the claims and defenses before this panel. Mr. Zuckerberg's private communications have no conceivable relevance to Respondents' defense of Quinn Emanuel's claim for payment of its fees. Moreover, to the extent Respondents contend the materials are relevant to their malpractice claim or any damages stemming therefrom, such assertions must be rejected by the panel as they have been by two Federal courts.

Respondents have previously insisted in both the Massachusetts and California actions that had they had access to the content on the subject hard drive, they would have either never settled or would have been entitled to a greater settlement. Both courts rejected this argument, finding instead that "the parties elected to proceed with their settlement negotiations knowing they lacked potentially relevant information." (Exhibit 1 at 10-11.) Respondents can make no further showing of relevance here. Their request is really a collateral attack on the judgment entered in the Northern District of California with hopes of obtaining discovery that they can use in future litigation with Facebook. Under such circumstances, discovery is not proper. *See Luscher v. One Beacon Ins. Group*, 23 Misc.3d 637, 874 N.Y.S.2d 783 (2009) (holding that "[t]he appropriate analysis in a legal malpractice case does not include or permit a collateral attack upon the underlying judgment. Thus, though New York's liberal discovery rules require 'disclosure upon request of any facts bearing in the controversy,' . . . the discovery of facts and circumstances whose sole purpose is to launch a collateral attack on the underlying judgment by revealing possible defenses to the predicate action does not fall within this rubric. The information sought to be obtained from this witness with respect to the circumstances attendant at the time of the collision would serve only to undermine the judgment in the predicate action and this is not relevant here." )

---

[3] Even if Facebook were to appear in an effort to bring documents before the Panel, it would be unable to bring and produce Device 371-01, because Mark Zuckerberg is the custodian of that device. (Exhibit 2 at Exh. A.) Further, production of the unredacted email, discussion of its content or other document(s) referenced in that e-mail would further violate the Protocol by disclosing information protected thereby.



ORRICK

The Honorable William Dreier
The Honorable Thomas Penfield Jackson
Richard H. Silberberg, Esq.

October 16, 2009
Page 6

Facebook therefore requests that the Subpoena be withdrawn so as to comply with Judge Woodlock's orders, which preclude Respondents from seeing the very information the seek. Otherwise, Facebook will be forced to seek relief from the Massachusetts court.

Facebook reserves its rights to pursue any and all objections in a court of competent jurisdiction.

Respectfully,

Karen D. Thompson

Copy (by email) to

    Sean O'Shea, Esq.
    Michael Petrella, Esq.
    Andrew Sockol, Esq.
    Richard Werder, Jr., Esq.