UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br>        Plaintiffs,<br>  v.<br>FACEBOOK, INC. MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, AND THEFACEBOOK LLC,<br>        Defendants. | CIVIL ACTION NO. 1:07-cv-10593 (DPW)<br><br>Related Action No. 1:04-cv-11923 (DPW) |

**CONNECTU, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS REQUEST FOR CLARIFICATION OR MOTION TO LIFT STAY
TO REASSERT ITS MOTION TO DISQUALIFY COUNSEL**

Pursuant to Local Rule 7.1(B)(1), ConnectU, Inc. ("ConnectU") respectfully submits this memorandum of law in support of its Request for Clarification or Motion to Lift Stay to Reassert its Motion to Disqualify Counsel. In support of its Motion, ConnectU states as follows:

**I.     INTRODUCTION**

This Court, in recognizing the multiplicity of proceedings in this matter, described these related actions as "branches" in the overall litigation involving the parties. See Memorandum and Order, dated September 30, 2009, pp. 1 & 2, attached as Exhibit A. In the action in the United States District Court for the Northern District of California (now on appeal to the Ninth Circuit Court of Appeals), Judge James Ware recognized and referenced the on-going litigation between the parties in Massachusetts in reaching his decision to disqualify ConnectU's former counsel, *Finnegan, Henderson, Farabow, Garrett & Dunner, LLP* ("Finnegan"). See Order,

dated September 2, 2009 (Ware, J.), attached as Exhibit B. An arbitration proceeding between the Founders and their former, dismissed counsel (Quinn Emanuel) in New York has dragged ConnectU back into these ongoing legal proceedings.

Because of the unique circumstances of this matter and as a result of ConnectU's December 15, 2008 transfer of ownership as a result of a settlement, ConnectU took the rare step of seeking to disqualify its former counsel from continuing to represent the Founders, on the basis that such representation would be contrary to ConnectU's interests. First, of course, ConnectU drew the issue to the lawyers' attention and made an informal request. Considering the strict code of conduct in the profession and the diligence of attorneys to avoid even the appearance of a conflict, ConnectU unexpectedly faced the even rarer circumstance of needing a court order to resolve an obvious conflict of interest. Even after receiving a court order granting ConnectU's motion for disqualification, events somehow became even more unusual after the issuance of a nineteen-page Order of a United States district judge emphasizing the duty of loyalty and ordering disqualification in the California litigation. ConnectU now finds itself in the position of having to take the almost unfathomable step of actually seeking to have this Court enter an order similar to that of the United States District Court for the Northern District of California.

The crux of the issue is simple. This Court recognized that the Massachusetts actions are "branches" of the litigation with parallel pleadings; Judge Ware has recognized the litigation as parallel; the parties are largely the same; the subject matter and the issues in dispute are inextricably intertwined. Despite this, the disqualified firm, Finnegan, evidently takes the

position that the matters are not "substantially similar" and that Finnegan can continue to not only provide legal advice contrary to ConnectU's interests and demands, but also actively litigate against ConnectU fully aware of the fact that the United States District Court for the Northern District of California has found a conflict requiring disqualification.

This Court's Order of September 30 stays this action pending the resolution of the appeal pending in the Ninth Circuit and appears to defer to Judge Ware's rulings and judgments pending appeal. ConnectU reads this Court's Order of September 30, 2009 as being in accord with Judge Ware's Order of September 2, 2009. Indeed, the September 30 Order mentions the decision by Judge Ware to disqualify Finnegan and acknowledges that the substitution of counsel should lead to an orderly appeals process. There was never an indication from this Court that it might rule differently on the issue of disqualification, or that Judge Ware's rulings and judgments were open to being challenged in this, or any other, jurisdiction. To the contrary, the September 30 Order explicitly sought to avoid the multiplicity of proceedings and the continued efforts of opening a "second front." At present, however, Finnegan is using the stay in this action as a shield to continue Finnegan's representation of the Founders in violation of the spirit of Judge Ware's Order and in violation of Finnegan's duty of loyalty to ConnectU. That position is tenable only because of the entry of the stay.

The Northern District has declined to hold that its September 2, 2009 order is binding upon this Court. <u>See</u> Order, dated December 18, 2009 (Ware, J.), attached as Exhibit D. The Northern District, in its most recent Order, declined to exercise its jurisdiction to the extent it would impact the Massachusetts litigation. Such judicial deference, while understandable, has

3

created a vacuum in which Finnegan continues to violate its duty of loyalty and avoid the consequences of the Northern District's September 2, 2009 order.

## II. RELEVANT FACTS

On January 20, 2009, ConnectU filed a Motion to Disqualify Counsel with an accompanying memorandum of law, see Docket Document Nos. 262 & 263, which sought the disqualification of its former lawyers from continuing to represent the Founders against the interests of ConnectU. On the same date, ConnectU filed a similar motion to disqualify its former counsel in the United States District Court for the Northern District of California, C.A. No. 5:07-CV-01389-JW. In the California litigation, Judge James Ware, on September 2, 2009, issued a comprehensive opinion granting ConnectU's motion to disqualify and ruling that two law firms (specifically identified as *Finnegan, Henderson, Farabow, Garrett & Dunner, LLP* ("Finnegan") and *Boies, Schiller & Flexner* ("Boies")) were disqualified from further representing the Founders in the matter. See Order, dated September 2, 2009 (Ware, J.), attached as Exhibit B. After a lengthy review of the applicable law and the relevant concerns, Judge Ware articulated the controlling principle of the controversy:

> In the absence of informed consent by both clients, an attorney is disqualified from accepting representation of one joint client against the other in the same or a **substantially related matter**. Although a joint client waives the attorney-client privilege with respect to the attorney's disclosure of information from one joint client to the other, the duty of loyalty persists and precludes the attorney from representing one joint client against the other **with respect to the matter**.

Id., at p. 13 (emphasis added). Judge Ware's discussion of the controlling principles indicates that a "matter" extends to any "substantially related matter." See also id., at p. 7, n. 4 (evidencing the scrutiny and careful consideration of the term "matter" by Judge Ware in rendering his decision). In addition, a careful reading of the decision reveals that the duty of loyalty was a paramount factor in the decision. See, e.g., pp. 8, 10, 12, & 13 (noting that the duty of loyalty is a paramount concern and factor under both California and New York law in deciding that the duty of loyalty would be a "controlling principle" in the Court's decision).

On September 30, 2009, this Court entered a stay in the Massachusetts actions, recognizing that Judge Ware's judgment was to be given preclusive effect during the appeal period. The Court noted that "there is no need to keep these cases active in this Court while the fundamental question of the enforceability of the settlement agreement moves toward resolution elsewhere." See Memorandum and Order, dated September 30, 2009, p.2, attached as Exhibit A; see also Docket Document Nos. 274 & 275. As part of the Court's Order, pending motions were terminated without prejudice subject to a party's motion to reassert a particular motion upon the lifting of the stay. Id. That Order resulted in the termination of ConnectU's Motion to Disqualify Counsel (Docket Document No. 262) after a full opportunity for the submission of briefs in opposition but before hearing or the entry of a formal order.[1] The September 30, 2009 Order also specifically referenced the fact that Judge Ware had entered a disqualification and that successor counsel had already appeared in the California litigation.

---

[1] As a result, the pending motion is ready to be ruled upon by the Court under the Local Rules.

Consistent with the Court's September 30, 2009 Order, ConnectU's expectation was that the stay would serve to protect its interests until the resolution of the "fundamental question" on appeal before the Ninth Circuit. It became evident, however, to ConnectU in mid-November 2009 that Finnegan intended to continue its active representation of the Founders despite Judge Ware's Order and the September 30, 2009 Order of this Court. Accordingly, counsel for ConnectU raised objections by means of correspondence requesting that Finnegan comply with Judge Ware's Order. See Correspondence of James E. Towery, dated November 16, 2009, attached as Exhibit C. In response, Finnegan asserted that this Court had not yet ruled on its disqualification, and took the position that Judge Ware's order only prohibited Finnegan from appearing in California courts but that Finnegan could continue to use its knowledge of ConnectU's business affairs and confidential information to advise, counsel, and strategize with the Founders. That interpretation would strip away the protections afforded by Judge Ware's disqualification order and, in fact, would render the disqualification meaningless in terms of protecting ConnectU's valid expectation that its former counsel would not undertake representation contrary to ConnectU's interests in the same or a substantially related matter.

Whereas ConnectU anticipated that this Court's stay of September 30, 2009 would serve substantially to protect its interest during the pendency of the appeal, ConnectU did not seek court intervention until it became clear that its interests could only be protected by raising Finnegan's actions with the Court and requesting that this Court confirm or otherwise order that Finnegan is disqualified from representing the Founders. Finnegan continues to harm ConnectU's interests as already recognized by Judge Ware and as discussed at length in ConnectU's Memorandum in Support of its Motion (Docket Document No. 263). The continued

representation by an otherwise disqualified firm under the guise of this Court's assumed disagreement with the Northern District is disingenuous and nothing more than an attempted end-around the disqualification.

On November 23, 2009, ConnectU filed a <u>Civil Local Rule 7-11 Motion for a Telephonic Conference to Schedule a Hearing on an Order to Show Cause re: Contempt Against the Founders and Finnegan</u> in the United States District Court for the Northern District of California, C.A. No. 5:07-CV-01389-JW (Docket Document No. 718). On December 18, 2009, the Northern District (Ware, J.) declined to extend its ruling to the Massachusetts litigation due to a lack of jurisdiction. In particular, the Court noted that the Court's original jurisdiction rested solely upon an agreement between the parties as the result of a settlement agreement, by the terms of which the Court would enforce the agreement. <u>See</u> Order, dated December 18, 2009, p. 2. That agreement, however, did not vest the Northern District, in Judge Ware's view, with the authority "to decide all matters with respect to the Massachusetts litigation." As a result of that jurisdictional issue, the Northern District held that the disqualification Order was made only with respect to the matters pending in the Northern District or before the Ninth Circuit. <u>Id.</u>, p. 2.

That decision coupled with this Court's stay has created a vacuum in which Finnegan continues to operate, representing the Founders despite the clear and previously recognized conflict of interest. The situation can only be remedied by this Court's clarification of the effect that Judge Ware's disqualification Order has in these matters or by considering ConnectU's Motion to Disqualify Counsel on the merits after a limited lifting of the stay.

## III. ARGUMENT

ConnectU seeks only a clarification that the Court in its September 30, 2009 Order intended, or at least expected, Judge Ware's disqualification Order to apply in the Massachusetts actions. In the alternative, this Court, having entered the stay, most certainly has the authority and jurisdiction to remove the stay for the limited purpose of ruling on matters as it deems necessary. Under these circumstances, the interests of justice weigh in favor of lifting the stay in order to protect ConnectU's interests, to maintain the perception of the justice system as a fair system, and to prevent Finnegan's continued representation of the Founders in circumvention of Judge Ware's Order disqualifying counsel.

### A. A lifting of the stay for this limited purpose would not frustrate the Court's goal of avoiding duplicative or unnecessary proceedings.

This Court lifting its stay for the limited purpose of confirming that Finnegan is disqualified from representing the Founders would not result in this Court's consideration of the subject matter of the litigation on its merits, but rather would result in the resolution of a narrow, discrete issue. The stay would otherwise be unaffected and this Court's articulated goal of recognizing the preclusive effect of Judge Ware's Order would not be challenged. Instead, this Court lifting the stay would allow ConnectU to protect those of its interests that, despite already having been recognized by the United States District Court for the Northern District of California as deserving protection, continue to be harmed.

It is important to note that Finnegan is using this Court's entry of the stay to circumvent the protections afforded to ConnectU by Judge Ware's Order, which certainly weighs in favor of lifting the stay for this narrow and discrete purpose.

**B. Consideration of the Motion to Disqualify at this time would serve to protect both ConnectU's and the Court's interests.**

As discussed in ConnectU's Memorandum of Law (Docket Document No. 263), both a litigant and the courts have a valid interest in avoiding a situation where the public confidence in the expectation of an attorney's client loyalty may be compromised. Judge Ware recognizes that principle in his Order. See Order, dated September 2, 2009, at p. 14, attached as Exhibit A (stating that, by disqualifying Finnegan and Boies, "[m]ore importantly, the public would be assured that should they seek joint representation in a matter . . . they could have full trust and confidence that the attorney would never become an advocate for their adversary in the same or substantially related matter"). Historically, Massachusetts courts have recognized that the public perception is a valid factor in considering a motion to disqualify as well as the need to maintain high ethical standards. See, e.g., Wellman v. Wills, 400 Mass 494, 502-03 & n.18, 509 N.E.2d 1185, 1189-90 & n.18 (1987) (recognizing that courts have an interest in maintaining the highest ethical standards and discussing the former Canon 9 that required the avoidance of an appearance of impropriety); Mailer v. Mailer, 390 Mass. 371, 373, 455 N.E.2d 1211, 1212 (1983) (noting that, even where there is consent, the court must reconcile the obligation of maintaining the highest ethical standards and the scrupulous administration of justice); see also Rule 1.7, cmt. 15 of the MASS R. PROF. CONDUCT (noting that a conflict should be raised "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice").

The valid concern of public perception takes on added significance where the United States District Court for the Northern District of California, in a substantially related matter, has already ruled that disqualification is necessary.

**C. There is a reasonable likelihood of success that the underlying motion to disqualify would be successful, which suggests that a ruling is necessary to avoid injustice.**

Issues of comity aside, it is unlikely that the Founders and, more specifically, Finnegan, could provide any compelling reason why this Court should not reach the same conclusion as the United States District Court for the Northern District of California did in its September 2, 2009 Order Granting ConnectU's Motion for Disqualification. While the parties have recognized that the codified standards of ethical conduct are slightly different in California and Massachusetts, the core principles and standards are in accord and are easily reconcilable. In particular, the controlling principle articulated by Judge Ware at page 13 of his Order is in perfect harmony with the ethical rules of Massachusetts. Compare Order, dated September 2, 2009, p. 13[3] with Rule 1.9(a)[4] of the MASS. R. PROF. CONDUCT.

Judge Ware's Order demonstrates that, in the parallel litigation, ConnectU's interests were not being protected in the absence of a disqualification order. The same principles and rationale apply to ConnectU's Motion to Disqualify in these actions. Moreover, allowing

---

[3] The most relevant portion of Judge Ware's Order reads as follows: "In the absence of informed consent by both clients, an attorney is disqualified from accepting representation of one joint client against the other in the same or a substantially related matter."

[4] Rule 1.9(a) states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

Finnegan to avoid the implications of Judge Ware's Order under the guise of this Court's authority would encourage exactly what this Court sought to discourage with its stay – the multiplication of proceedings by seeking relief and conflicting orders in multiple jurisdictions.

IV.     **CONCLUSION**

**WHEREFORE,** ConnectU, Inc. respectfully requests that this Court clarify its Order of September 30, 2009 to indicate whether the Court considers the Finnegan law firm to be disqualified in this matter;

**OR**

**IN THE ALTERNATIVE,** ConnectU, Inc. respectfully moves this Court for an Order lifting the stay for the limited purpose of allowing ConnectU, Inc. to reassert its Motion to Disqualify and to obtain a full consideration of that motion on its merits.  ConnectU further moves this Court to enter an Order precluding Finnegan's continued representation of the Founders in these actions pending a lifting of the stay and consideration of the Motion to Disqualify on its merits.

Respectfully submitted,
ConnectU, Inc.,
By its attorneys,


/s/ Gregg P. Bailey
Peter M. Durney, BBO # 139260
Gregg P. Bailey, BBO# 638270
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110
(617) 482-8100

James E. Towery, Esquire
Alison P. Buchanan, Esquire
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113
(408) 287-9501


## CERTIFICATE OF SERVICE

I, Peter M. Durney, attorney for ConnectU, Inc. hereby certify that on the 7th day of January, 2010, a true copy of the foregoing, ConnectU, Inc.'s Motion to Lift Stay and To Reassert its Motion to Disqualify Counsel, was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. Paper copies will be served upon anyone indicated as a non-registered participant.


/s/ Gregg P. Bailey
Gregg P. Bailey

## CERTIFICATION OF CONSULTATION
## PURSUANT TO LOCAL RULE 7.1(A)(2)

I, Gregg P. Bailey, hereby certify that, pursuant to Local Rule 7.1(A)(2), counsel for ConnectU, Inc. has conferred with counsel for the Founders, counsel for Facebook, and counsel for the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner, LLP seeking to narrow the issues in dispute regarding the continued representation of the Founders by the Finnegan law firm. The parties have not reached an acceptable resolution.


/s/ Gregg P. Bailey
Gregg P. Bailey