IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW McCULLUM, AND THEFACEBOOK LLC,<br><br>Defendants. | CIVIL ACTION NO. 1:07-cv-10593-DPW<br>(CONSOLIDATED WITH CIVIL ACTION NO. 1:04-cv-11923-DPW) |

**STATUS REPORT OF
CAMERON WINKLEVOSS, TYLER WINKLEVOSS AND DIVYA NARENDRA
CONCERNING MATERIAL DEVELOPMENTS**

This Court's September 30, 2009 Order directed the parties to provide the Court with a status report within 10 days of any material developments concerning the continued vitality of the Northern District of California judgment. Dkt. 274, p. 3. On April 12, 2011, Defendants provided this Court with a copy of the Ninth Circuit's decision. Dkt. 332. Plaintiffs further advise the Court that they filed a Petition for Rehearing En Banc on April 18, 2011. A copy of this Petition is attached as Exhibit A. *See* Fed.R.App.P. 41(d)(1) (mandate stayed).

Plaintiffs bring the following additional matters to the Court's attention because the vitality of the California judgment is diminished if a judgment entered here pursuant to the California judgment is vacated due to these developments. Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra ("Founders") also wish to advise the Court of their intentions with respect to future motions. Beginning in mid-2010, the online press exposed many alleged

communications—requested, but apparently never produced in this action—that would have substantially aided the Founders' prosecution of their case. *The New Yorker* magazine reported that Facebook reviewed at least some of these leaked communications in January 2006. If true, this raises a serious issue as to whether or not Plaintiffs were deprived of critical evidence for over two years leading up to the February 2008 mediation.

**Background:** Plaintiffs requested all relevant communications at the outset of the litigation in 2005. *See, e.g.,* Dkt. 213-4[1] [labeled 213-5 on document], pp. 5-6 (Request No. 7); *see also* Dkt. 213, p. 2, ¶5. The Facebook Defendants agreed to produce any they found after a reasonable search. *Id.* Following their initial production, which is now believed to be incomplete, the Facebook Defendants repeatedly represented to Plaintiffs that they would promptly produce any newly found responsive documents, consistent with their obligation under Fed.R.Civ.P. 26(e). *See, e.g.,* Dkt. 213-11 [labeled 213-12 on document]; Dkt. 213-7 [labeled 213-8 on document], p. 1; Dkt. 213-3 [labeled 213-4 on document], p. 1. They also represented to the Court that they had complied with all of their discovery obligations. *See, e.g.,* 1:04-cv-11923 Dkt. 159, p. 1 ("At every opportunity, Facebook Defendants have complied with ConnectU's numerous requests for information from the various recovered electronic devices"); *see also* 1:04-cv-11923 Dkt. 170, p. 8 ("Facebook Has Not Suppressed Evidence"); 7/25/07 Tr. at 46:5-15 (Facebook attorney I. Neel Chatterjee states with respect to discovery: "We haven't slowed a single thing down on discovery"). Subsequent events indicate that the opposite is true.

---

[1] Docket citations are to the docket number that appears on the online docket accessible through PACER. Notations in brackets indicate when the document itself bears a different docket number (due to apparent processing errors). All docket citations are to 1:07-cv-10593 except where another case number is specified. Page citations are based on the document's original pagination, rather than the docket pagination added at the top at the time of filing.

2

**Leaked Instant Messages:** In mid-2010, a series of allegedly *bona fide* instant messages ("IMs") supporting the Founders' claims began appearing in *Business Insider*. The online article is attached as Exhibit B.[2] For example, one alleged IM shows that after meeting with the ConnectU Founders, Mr. Zuckerberg apparently told his friend and business partner to check out their website, and then stated: "But they made a mistake haha. They asked me to make it for them. So I'm like delaying it so it won't be ready until after the facebook thing comes out." Ex. B, p. 4. In other leaked alleged IMs, Mr. Zuckerberg apparently acknowledged his deceptive intent. *See, e.g., id.* ("I feel like the right thing to do is finish the facebook and wait until the last day before I'm supposed to have their thing ready and then be like 'look yours isn't as good as this so if you want to join mine you can…otherwise I can help you with yours later.'") More bluntly, when another friend asked him what he was going to do about the other members of the ConnectU team, Zuckerberg allegedly wrote an instant message saying: "Yeah, I'm going to fuck them . . . probably in the [ear]." *Id.*, p. 6 (bracketed information reflects correction appearing on next line of alleged IM). These leaked alleged IMs were apparently not produced in discovery.[3] Reportedly, there are many more like these. Ex. C, p. 5.

---

[2] N. Carlson, "At Last -- The Full Story Of How Facebook Was Founded," *Business Insider*, Mar. 5, 2010, <http://www.businessinsider.com/how-facebook-was-founded-2010-3> (accessed April 15, 2011).

[3] A First Amended Complaint filed in *Ceglia v. Zuckerberg*, Western District of New York Case No. 1:10-cv-00569, alleges what appears to be yet another email that, if genuine, should have been produced. *Id.* at Dkt. 39, ¶36 ("I have recently met with a couple of upperclassmen here at Harvard [presumably the ConnectU Founders] that are planning to launch a site very similar to ours. If we don't make a move soon, I think we will lose the advantage we would have if we release before them") (bracket information added). It is not presently known whether Defendants challenge the authenticity of this recently revealed email communication; press reports suggest they do. The Founders are not aware of any challenge to the authenticity of the leaked IMs referenced in the text in the year since they were disclosed. To the contrary, Mark Zuckerberg appears to have acknowledged them in *The New Yorker* article discussed below.

### Report That Facebook And Its Attorneys Reviewed Leaked IMs Two Years Before

**The Mediation:** *The New Yorker* Magazine reported that Facebook and its attorneys learned of – and indeed openly discussed – these IMs in January 2006. An article in the September 20, 2010 edition, which is attached as Exhibit C,[4] states in pertinent part:

> ***To prepare for litigation against the Winklevosses and Narendra, Facebook's legal team searched Zuckerberg's computer and came across Instant Messages he sent while he was at Harvard.***[5] Although the IMs did not offer any evidence to support the claim of theft,[6] according to sources who have seen many of the messages, the IMs portray Zuckerberg as backstabbing, conniving, and insensitive. ***A small group of lawyers and Facebook executives reviewed the messages, in a two-hour meeting in January, 2006, at the offices of Jim Breyer, the managing partner at the venture-capital firm Accel Partners, Facebook's largest outside investor.***
>
> ...
>
> ***According to two knowledgeable sources, there are more unpublished IMs that are just as embarrassing and damaging to Zuckerberg....***

Ex. C, p. 5 (emphasis added). According to the article, Mr. Breyer, a member of Facebook's board of directors, acknowledged this meeting and Mark Zuckerberg appeared to admit writing the IMs. *Id.*

---

[4]   J. Vargas, "The Face of Facebook," *The New Yorker*, Sept. 20, 2010, <http://www.newyorker.com/reporting/2010/09/20/100920fa_fact_vargas> (accessed April 15, 2011).

[5]   There is reason to believe that this statement is true. By January 2006, Mr. Zuckerberg's computer had been in the Orrick firm's possession for several weeks if not months, and the firm had already examined it. *See* Dkt. 213-7 [labeled 213-8 on document] (in a November 23, 2005 letter, the Facebook Defendants refer to ongoing analysis of resident information on the computer Mr. Zuckerberg used at Harvard and further state it "may have responsive information"), Dkt. 245-3 [labeled 245-4 on document] (Facebook Defendants produce responsive documents from Mr. Zuckerberg's computer on January 7, 2006); Dkt. 148-14, pp. 1-2 (***Facebook Defendants declare in a February 6, 2006 letter that "The hard drive from this laptop was thoroughly forensically examined and all recoverable files were recovered"***) (emphasis added); *see also* 11/18/2005 Tr. at 20:16-22:22 ("we've searched fairly thoroughly of all, all the electronic devices we've been able to find to date, *and we continue to do that*") (emphasis added); Dkt. 213-6 [labeled 213-7 on document] (deposition testimony regarding chain of custody of Mr. Zuckerberg's computer); 6/2/2008 Tr. at 30:22-31:2 (Facebook Defendants used same computer search methodology as Jeff Parmet).

[6]   The prior focus on theft of code is very much related to Defendants' failure to produce evidence supporting Plaintiffs' other claims.

4

The Facebook Defendants' representations to Plaintiffs and this Court cannot be squared with this alleged January 2006 meeting.[7] The Founders respectfully submit that Fed.R.Civ.P. 60(b) and *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928-930 (1st Cir. 1988) warrant an inquiry into whether the Facebook Defendants intentionally or inadvertently suppressed evidence. At the appropriate time,[8] the Founders intend to move for such an inquiry and, depending on the results of that inquiry, for appropriate relief under Rule 60(b) and/or this Court's inherent powers.

Dated: April 20, 2011          Respectfully submitted,

                               CAMERON WINKLEVOSS, TYLER WINKLEVOSS and
                               DIVYA NARENDRA,

                               By their attorneys,

                               /s/ Tyler Meade
                               Tyler Meade, Cal. State Bar No. 160838 (*Pro Hac Vice*)
                               tyler@meadeschrag.com
                               Michael Schrag, Cal. State Bar No. 185832 (*Pro Hac Vice*)
                               michael@meadeschrag.com

---

[7] *The New Yorker* article also raises concerns about the June 2, 2008 hearing in this Court regarding the Parmet dispute, in which Plaintiffs' computer forensic expert uncovered documents that he felt should be produced by Defendants, and Defendants alleged Mr. Parmet had violated the Court-ordered search protocol. The Court asked Facebook's counsel a series of questions about these documents, which documents the Founders have never seen because the protocol prevented Mr. Parmet from communicating directly with them about what he found. Dkt. 103. First, the Court asked whether they were in "the production track" at the time the Parmet dispute arose (which was in December 2007) and Mr. Chatterjee answered affirmatively. 6/2/2008 Tr. at 29:20-30:2. Next, the Court asked "Well, where were these documents that Mr. Parmet referred to in the disclosure queue?" *Id.* at 30:15-16. Mr. Chatterjee responded that they were going to be produced "in mid-to-late February" 2008. *Id.* at 30:17-21. At first blush, there appears to be nothing wrong with Mr. Chatterjee's response, and an inquiry may reveal that it was appropriate. On the other hand, if (a) the leaked IMs are what Mr. Parmet found, and (b) *The New Yorker* article is accurate and Defendants and their litigation team had known about these communications for more than two years and not disclosed them, Mr. Chatterjee's response is incomplete at best. A more candid response would have disclosed that the Facebook Defendants had known about the documents for more than two years but not produced them, at which point the Court would have had the opportunity to inquire further.

[8] *See* Dkt. 274, pp. 2-3 (9/30/2009 Order).

MEADE & SCHRAG, LLP
1816 Fifth Street
Berkeley, CA 94710
(510) 843-3670
(510) 843-3679 (fax)

CERTIFICATE OF SERVICE

I, Tyler Meade, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on or before April 20, 2011.

/s/ Tyler Meade
Tyler Meade