IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA, | Civil Action No. 1:07-CV-10593-DPW |
| Plaintiff, | |
| v. | |
| FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC, | |
| Defendants. | |
| CONNECTU LLC, | Civil Action No. 1:04-CV-11923 (DPW) |
| The CU Founders, | |
| v. | |
| MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC., | |
| Defendants. | |
| MARK ZUCKERBERG, and FACEBOOK, INC., | |
| Counterclaimants, | |
| v. | |
| CONNECTU LLC, Counterdefendant, and CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ACCESS TO PLEADINGS AND DISCOVERY FILE**
**REDACTED**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND .......................................................................... 1

    A.   The Case Was Originally About Code, Not Documents ...................................... 2

    B.   Discovery Commences In The 2007 Action ........................................................ 4

    C.   The Parties Agree To Stay Proceedings In Light Of Global Mediation ............... 7

    D.   The CU Founders Proceed Knowing Instant Messages Had Not Yet Been
Produced ........................................................................................................... 7

    E.   CU Founder Receives Email Regarding Facebook Production ............................ 8

    F.   The CU Founders Settle The Case And Raise The "Discovery Issue"................. 9

    G.   The Protective Order ......................................................................................... 12

III. ARGUMENT ................................................................................................... 13

    A.   Access to Protected Materials Is Unnecessary................................................... 13

    B.   Plaintiffs' Waived Their Claim By Releasing All Claims.................................. 14

    C.   Plaintiffs Are Precluded From Relitigating Their Discovery Dispute In
This Court ........................................................................................................ 15

    D.   Settling A Case During Discovery Does Not Provide Grounds For Rule
60(b) Relief ..................................................................................................... 17

        1.   The CU Founders Cannot Prove Misconduct ......................................... 17

        2.   Facebook's Unfinished Production Did Not Interfere With
Plaintiffs' Ability To Prepare For Mediation.......................................... 19

IV.  CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackermann v. United States*,
340 U.S. 193 (1950).................................................................................15, 16

*Ames True Temper, Inc. v. Myers Industries, Inc.*,
Case No. 05-1694, 2007 WL 4268697 (W.D. Pa. Nov. 30, 2007)....................................17, 18

*Anderson v. Cryovac*,
862 F.2d 910 (1st Cir. 1988)...................................................................17

*Bandai America, Inc. v. Bally Midway Mfg. Co.*,
775 F.2d 70 (3d Cir. 1985)......................................................................18

*Breneman v. United States ex rel. FAA*,
381 F.3d 33 (1st Cir. 2004).................................................................15, 16

*Facebook, Inc. v. Pacific Northwest Software, Inc.*,
640 F.3d 1034 (9th Cir. 2011) ..................................................................... passim

*Gonzalez-Pina v. Guillermo Rodriguez*,
407 F.3d 425 (1st Cir. 2005)................................................................15, 16

*Info-Hold v. Sound Merchandising, Inc.*,
538 F.3d 448 (6th Cir. 2008) ..................................................................18

*Katz v. Township of Westfall*,
Civ. No. 3:CV-03-2377, 2007 WL 1366780 (M.D. Pa May 7, 2007)....................................18

*Kerwit Medical Products, Inc. v. N&H Instruments, Inc.*,
616 F.2d 833 (5th Cir. 1980) ..................................................................18

*Manning v. Trustees of Tufts College*,
613 F.2d 1200 (1st Cir. 1980)..................................................................18

*Marshall v. Board of Ed. Bergenfield*,
N.J., 575 F.3d 417, 424 (3rd Cir. 1978).................................................15, 16

*MCI Telecommunications Corp. v. Matrix Comms. Corp.*,
171 F.R.D. 7 (D.Mass. 1997)..................................................................17

*Pearson v. First NH Mort. Corp.*,
200 F.3d 30 (1st Cir. 1999)..................................................................17

*Petro-Ventures, Inc. v. Takessian*,
   967 F.2d 1337 (9th Cir. 1992) ..........................................................................14, 15

*Piergrossi v. Karcewiski*,
   No. Civ. A. 93-4190, 1995 WL 393804 (E.D. Pa. June 30, 1995) ..........................................18

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*,
   490 F.3d 86 (1st Cir. 2007).................................................................................17

*Roger Edwards, LLC v. Fiddes & Son Ltd.*,
   427 F.3d 129 (1st Cir. 2005)...............................................................................17

*Sampson v. Radio Corp. of America*,
   434 F.2d 315 (2d Cir. 1970).............................................................................17, 18

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984)..........................................................................................13

*Total Containment, Inc. v. Environ Products, Inc.*,
   No. Civ A 91-7911, 1996 WL 239877 (E.D. Pa. May 6, 1996) ............................................18

*Weilbacher v. J. H. Winchester & Co., Inc.*,
   197 F.2d 303 (2d Cir. 1952)...............................................................................17

*Weldon v. United States*,
   70 F.3d 1, 3 (2d. Cir. 1995)...............................................................................16

STATUTES

FRCP 60.............................................................................................................11

Rule 26(c)..........................................................................................................13

Rule 56(f)..........................................................................................................19

Rule 60(b) .................................................................................................... passim

## I.    <u>INTRODUCTION</u>

This motion—for access to confidential litigation and discovery files to fish for a Rule 60(b) motion—is the last gasp of the eighth law firm to represent three plaintiffs who chose to settle this case and release all claims.  As the Ninth Circuit recently observed in confirming the breadth and enforceability of that release:  "At some point, litigation must come to an end.  **That point has now been reached**."  *Facebook, Inc. v. Pacific Northwest Software, Inc*., 640 F.3d 1034, 1042 (9th Cir. 2011) (emphasis added).  In the face of that holding, the plaintiffs, referred to here as the "CU Founders," provide no legitimate reason to proceed further, and instead seem to want to keep the settlement money and stock yet disrupt the bargained-for dismissal of this case.  As the Ninth Circuit has held, the settlement agreement is valid and must be honored.  This Court should drop the curtain, end the drama, and confirm this litigation has come to an end.

The CU Founders are unwilling to abide by the instruction of the Ninth Circuit and instead want to revisit six-year-old discovery disputes to try to "investigate" a potential Rule 60(b) motion.  The CU Founders admit they have no proof that any discovery abuse actually occurred.  The law does not allow for "investigation" to support a Rule 60(b) motion for the type of pre-settlement discovery activity the CU Founders identify.  As both this Court and Chief Judge Ware previously found, the CU Founders in February of 2008 knew that document production was not yet complete when they proposed a stay of discovery, engaged in mediation, and entered into a binding Settlement Agreement releasing all claims.  Moreover, the CU Founders' prior counsel were aware of the same supposed discovery delays the CU Founders now allege and raised the same meritless allegations of discovery misconduct in their efforts to back out of the Settlement Agreement.  They lost.  The CU Founders' motion should be denied.

## II.    <u>FACTUAL BACKGROUND</u>

At the heart of the CU Founders' request for access to the confidential litigation files is

their lengthy mischaracterization of the discovery activity between April 2005 and February 2008. See Mot. at 10-17. What the CU Founders do not tell this Court is that they knew, prior to mediating these cases, that the discovery process was not yet complete and that significant documents had yet to be produced by both sides. Indeed, shortly before mediation, the CU Founders asked this Court to refrain from resolving Facebook's then-pending motions for summary judgment because discovery was incomplete. Dkt. No. 182. The record is clear, moreover, that the CU Founders believed *at the time* that ███████████████ ████████████ was in the immediate production queue. Dkt. No. 200, Chatterjee Decl., Exs. 8, 10; Dkt. No. 181 at 8. Armed with this knowledge, the CU Founders asked to stay discovery, to continue hearings, and to mediate the case. They then entered into a Settlement Agreement resolving the case—one that, as the Ninth Circuit emphasized, "appears quite favorable in light of recent market activity," (*Facebook*, 640 F.3d at 1042) and, more importantly for present purposes, released all claims against "Facebook and its related parties." Dkt. No. 206, Ex. A at 3.

A.     **The Case Was Originally About Code, Not Documents**[1]

As this Court may recall, the CU Founders, through their first set of lawyers (Finnegan Henderson),[2] focused their legal theories on meritless assertions of code theft by defendants,

---

[1] All references to Docket Entry Numbers are to those in Case No. 1:07-cv-10593-DPW, unless otherwise indicated. References to Docket Entry Numbers in Case No. 1:04-cv-11923-DPW are in the form "04 Case, Dkt. No. ___."

[2] Finnegan Henderson (1) represented ConnectU and the CU Founders when this case commenced, with Griesinger, Tighe & Maffei (2) acting as local counsel. Quinn Emanuel Urquhart Oliver & Hedges (3) replaced the Finnegan firm as lead counsel in September 2007. Boies Schiller (4) replaced Quinn Emanuel to upset the Settlement Agreement in or around April 2008. The CU Founders engaged O'Shea & Associates (5) to represent them in their arbitration against Quinn Emanuel, and also to challenge the settlement agreement in California with Boies. The CU Founders next engaged Howard Rice (6) in 2009 to handle their appeal to the Ninth Circuit Court of Appeals, and Sally & Fitch (7) the same year to act as local counsel for O'Shea. Meade & Schrag LLP (8) now represent the CU Founders.

particularly Mark Zuckerberg.  Not surprisingly, the initial discovery by the CU Founders

centered on their efforts to obtain code from Facebook and Mr. Zuckerberg.[3]  One of the most

contested discovery issues was whether the CU Founders' expert could image the defendants'

computer hard drives to search for code.  04 Case, Dkt. Nos. 38, 148, 159.  As part of their

efforts to obtain such imaging, the CU Founders disavowed any intent to use the recovered

information to locate any electronic communications, such as emails or instant messages.  See 04

Case, Dkt. No. 38-1, at p. 13-26, fn. 6.

　　At the first hearing on one of plaintiff's five motions to compel (*see* 04 Case, Dkt. Nos.

37, 52, 68, 121, 126), held on November 18, 2005, the CU Founders focused on their request to

image the hard drives to search for code.[4]  At that hearing, Facebook's counsel Neel Chatterjee

represented to the Court that it had imaged the hard drives to locate the code sought by the CU

Founders.[5]  *See* Declaration of Monte Cooper ("Cooper Decl.), Ex. 1, at 18:10-22:22.  The CU

Founders re-emphasized at the hearing that they were interested in imaging the hard drives "to

look only for code."  *Id*. at 26:22-23.  The Court's comments at the hearing also reflect that it

understood that the discussion concerned production of code, and nothing else.  *See* Cooper

Decl. Ex. 1, at 19:23-25 (THE COURT:  "I take it there's no dispute that they're entitled to the

source codes and the only issue is whether they exist or not, is that true or not?").  Over the next

---

[3] The term "Facebook" in this brief refers generally to all defendants.  Individual defendants are
identified by their last name.

[4] At the time, ConnectU LLC was the sole plaintiff in the 04 case, although the CU Founders
were counterclaim defendants.  ConnectU LLC was operated by the CU Founders, all of whom
were members of the company.

[5] The CU Founders misleadingly quote the exchange that occurred between Mr. Chatterjee and
the Court, leaving the impression that discussion covered more than source code.  See Mot. at
11-12.  As reflected by an omitted portion of the November 18, 2005 discussion, the "deleted
items" and "additional material" referenced by Mr. Chatterjee and highlighted by the CU
Founders in their motion unambiguously refers to the search for code.  *See* Cooper Decl. Ex. 1,
at 18:11-20:15.

six months, Facebook's counsel sent extensive correspondence and filed various status reports confirming that the discussion centered on locating code. *See* Mot. at 12-15; 04 Case, Dkt. Nos. 148, 159.

The ongoing efforts to locate code from the imaged devices also was the subject of discussion at a second hearing, held on March 3, 2006. Cooper Decl. Ex. 2. At that hearing, Facebook noted that it had "made a gargantuan effort to recover all source code" because "[a]t the hearing that was held in November the issue was source code." *Id.* at 32:1-6. Facebook also specifically said that the CU Founders had not received "any of the data that exists [on the hard drives] that is not source code." *Id*. at 32:12-24.

At the March 3, 2006 hearing, the Court also addressed the numerous other discovery motions raised by the CU Founders. With respect to those requests, the Court only ruled on one motion related to interrogatory responses. 04 Case, Dkt. No. 164. However, at the hearing, the Court agreed with Facebook that the plaintiff's discovery requests were overbroad, and that the CU Founders were engaged in a "fishing expedition." *See* Cooper Decl. Ex. 2 at 124:7-24; 136:7-14.

Shortly thereafter, discovery was largely stayed until August 2007 in order to resolve Facebook's then pending motion to dismiss. *See* 04 Case, Dkt. Nos. 94, 100. Specifically, the Court limited all discovery to certain jurisdictional issues raised in Facebook's motion through orders dated May 1, 2006, August 24, 2006 and September 25, 2006, respectively. *See* Dkt. Nos. 172, 230, 9/25/06 Elec. Order (Cooper Decl. Ex. 3). On March 28, 2007, this Court dismissed the 04 case on jurisdictional grounds. 04 Case, Dkt. No. 289.

### B.   Discovery Commences In The 2007 Action

The CU Founders filed a new complaint on March 28, 2007 and an amended complaint

on August 8, 2007.  Dkt. Nos. 1, 71.[6]  The CU Founders re-noticed the unresolved motions to

compel from the 04 case.  Dkt. No. 8.  On June 12, 2007, the Court ordered the parties to meet

in-person to attempt to resolve the discovery disputes.  Dkt. No. 61.

On July 6, 2007, the parties met and conferred regarding all pending discovery issues.

The CU Founders entered into many agreements related to document production and hard drive

imaging to search for code.  Dkts Nos. 65, 79.  To resolve the computer imaging dispute,

Facebook agreed to allow the CU Founders' expert forensically to image certain hard drives to

search for code, and nothing else.  Dkts. 65, 79, 94.

The parties heavily negotiated this agreement, and the Court held a hearing on it on

September 13, 2007.  At the hearing, the CU Founders' own attorney acknowledged that they

had come to realize that there were more than 790 gigabytes, or 790 billion bytes of information,

on the relevant hard drives, and most of it was not code.  Cooper Decl. Ex. 4 at 5:6-21.  Counsel

compared this to 750,000 Harold Robbins novels.  *Id.* at 6:20-7:5.  Recognizing the sheer volume

of information was overwhelming, the CU Founders' counsel also repeatedly emphasized that,

consistent with his prior representations, the CU Founders only wanted the imaging to locate

code, and not "emails, letters to girlfriends, or anything else" that might also be contained in the

790 gigabytes of data.  *Id.* at 5:25-6:3; 22:6-16; 28:3-11.  The Court issued a ruling on the

Protocol immediately following this hearing, which limited the CU Founders' expert to

searching for the specific missing code that the CU Founders' counsel had identified.  Dkt. No.

103.  The ensuing Court order has generally been referred to as the "Protocol."  The expert began

work under the Protocol within days of its issuance.

After the meet and confer efforts in the summer of 2007, Facebook began a rolling

---

[6] It was through the amended complaint filed August 8, 2007 that the CU Founders became

production of documents at extensive effort and expense, which included review and production

of materials from the 790 gigabytes of data on the imaged hard drives.  *See* Dkt. No. 200,

Chatterjee Decl. in Support of Opp'n to Emergency Mot., ¶ 10 ██████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████ Dkt. 200,

Chatterjee Decl., Exs. 5-7.  ██████████████████████████████████████████

████████████████████████████ *Id.*, Ex. 7.  ███████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████ Dkt. No. 200, Opp. to Emergency

Motion, at 4.

███████████████████████████████████████████████████████████████████

██████████████ Dkt. No. 200, Chatterjee Decl. ¶ 10 & Exs. 3, 5-7, 9.  For example, in December

2007, Facebook's production efforts were stymied because of the inadvertent release by the First

Circuit—and subsequent publication by a third party—of highly sensitive personal documents

that originally were sealed in the Court's files.  See Dkt. No. 162.  As a result of that disclosure,

Facebook needed to re-review documents then pending production and redact additional private

information due to the heightened confidentiality concerns.  ███████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

named plaintiffs in these proceedings.

██████████████████████████████████████████████████████████████████

██████████████████████████████ *See* Dkt. No. 200, Opp. to Emergency Motion, at 3-4. ███████████

████████████████████████████████████████████████ *Id.*, Chatterjee Decl.

¶¶ 9-10.

### C.    <u>The Parties Agree To Stay Proceedings In Light Of Global Mediation</u>

In late January 2008, the Northern District of California court ordered the parties to mediation. Cooper Decl., Ex. 6, at § 1; Ex. 7, at 28:25-30:3. The CU Founders' counsel then agreed to a global mediation covering both the California and Massachusetts actions. Importantly, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████. Dkt. No. 200, Chatterjee Decl., Exs. 10-11. Facebook agreed. *Id.*, Exs. 11, 33. As a result, *both sides*—neither of which had completed production—stopped document production.[7]

### D.    <u>The CU Founders Proceed Knowing Instant Messages Had Not Yet Been Produced</u>

Shortly after staying discovery, the ████████████████████████████████

████████████████████████████████████████████████████ *See* Dkt.

---

[7] The CU Founders' own document production, like Facebook's production, was ongoing at the time of mediation. In the California action, in which discovery was reciprocally exchanged and used with the Massachusetts action, Facebook had three motions to compel discovery from the CU Founders pending as of February 22, 2008, one of which sought to compel compliance with a court order for the production of highly material documents. The parties also had numerous disputes with respect to the CU Founders' own discovery and production in Massachusetts. *See* Dkt. 200, Chatterjee Decl., Ex. 7. For instance, on November 19, 2007, the Court ordered the CU Founders to supplement their interrogatory responses concerning their copyright contentions, and just two days before mediation occurred, on February 20, 2008, this Court also granted Facebook's motion to compel imaging of the ConnectU Founders' own hard drives. *See* Cooper Decl. Exs, 5, 12. None of the imaging or documentation that Facebook sought was produced by

No 200, Chatterjee Decl. ¶¶ 9-10 & Exs. 5-7.  On February 13, 2008 (after the discovery stay

pending mediation, but before the mediation itself took place), the CU Founders filed a Renewed

56(f) Application (Dkt. No. 181) discussing the outstanding discovery, including ███████

███████████████

████████████████████████████████████

████████████████████████████████████

██

████████████████████████████████████

████████████████████████████████████

Dkt. No. 181, Wolfson Decl., ¶¶ 10-12 (emphasis in original).  ███████████████

████████████████████████████████████████████

████████████████████████████████████

████████  Dkt. No. 181 at 7.

**E.      CU Founder Receives Email Regarding Facebook Production**

One week before mediation, plaintiff Cameron Winklevoss received an email which read:



the CU Founders before settlement.

███████████████

Dkt. No. 292, Ex. 8. ████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████ *Id.*, Ex. 9 at 11-12 (bracketing added). ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ *Id.*, Ex.

10. ████████████████████████████████████████████████████████

████████████ *Id.*, Ex. 9 at 12.

F.      **The CU Founders Settle The Case And Raise The "Discovery Issue"**

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████ the CU Founders mediated the cases.  The CU

Founders were represented by six attorneys from two prominent law firms, all of whom also

knew about these facts.  The parties ultimately reached a resolution and settled all disputes

between the parties.  Dkt. 200, Chatterjee Decl., Ex. 1, ¶¶ 1, 2.  *See also Facebook*, 640 F.3d at

1036-38.  The CU Founders also agreed that "[a]ll parties get mutual releases as broad as

possible and all cases are dismissed with prejudice."  Dkt. No. 206, Ex. A at 3.

        The CU Founders then had a bout of buyer's remorse.  Facebook was forced to file a

motion to enforce the Settlement Agreement in California.  See Dkt. 191.  In response, plaintiff

ConnectU (powered by the CU Founders) fired Quinn Emanuel, engaged its fourth law firm

(Boies Schiller), and filed an "emergency motion" in this Court ████████████████████

███████████████████████████████████████████████████████████



██████████████████████████████████ Dkt. 195.

In its Emergency Motion, █████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████ Cooper Decl. Ex. 8 at 7:18-19, 59:3-11. ██████████

████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████ Dkt. No. 195, Hornick Decl., at ¶¶ 2, 3. █████████████

████████████████████████████████████████

████████████████████████

The Court declined to entertain plaintiff's motion but did find the forensic expert's actions to be a transgression of the Protocol. Cooper Decl. Ex. 8 at 92:8-11. At the hearing, the CU Founders' counsel urged the Court to find that the Facebook Defendants had "willfully withheld documents that should have been disclosed." *Id.* at 40:15-20. The Court rejected the CU Founders' claim and noted that discovery was "rolling" and Facebook had "not come to the concluding point at which they were obligated to make that disclosure." *Id.* at 40:21-24. The Court referred the "discovery" matter to the Northern District of California, concluding that ". . . if being aware of the universe of potential disputes between the parties, Judge Ware, nevertheless, chooses to enforce the settlement term agreement, that will be the end of the two cases pending before me." *Id.* at 93:7-12. Following the hearing, the Court issued a Memorandum and Order in which it found:

> From all that appears, the parties were prepared to settle their
> disputes then, despite the fact that aspects of discovery in this case
> - most pertinently for present purposes, document production - had
> not been completed and unresolved discovery issues remained
> outstanding.

Dkt. 204 at 4.  The Court then forwarded its June 3, 2008 Memorandum and Order, along with

the hearing transcript, to Judge Ware.  6/11/08 Dkt. Entry (Cooper Decl. Ex. 9).

The CU Founders then presented their "discovery" grievance to Judge Ware as part of

their opposition to Facebook's motion to enforce the Settlement Agreement, ███████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████    *See* Cooper Dec. Ex. 10, Sur-Reply Brief, at 12.  *See*

*also id.* at 13 & n.5.  On June 25, 2008, Judge Ware rejected the CU Founders' argument and

issued an order enforcing the Settlement Agreement.  Dkt. 206, Ex. A.  In that Order,

Judge Ware noted that "the parties elected to proceed with their settlement negotiations knowing

they lacked potentially relevant information."  Dkt. 206, Ex. A at 10-11 (citing this Court's

6/3/08 Memorandum and Order, 2).  The CU Founders, using their sixth law firm (Howard

Rice), later appealed other aspects of the June 25, 2008 Order to the Ninth Circuit, but elected

not to pursue any argument related to so-called "discovery abuse."

Instead of appealing, on November 21, 2008, the CU Founders re-raised in a motion in

this Court the same arguments contained in their prior "emergency" motion.  Dkt. No. 219.  The

November motion, titled Motion for Sanction of Non-Dismissal, or In the Alternative to Vacate

Final Judgment Pursuant to FRCP 60, raised the same issue the CU Founders appear to raise

now:  Facebook and its counsel "intentionally suppressed smoking gun documents for over 2 ½

years."  Dkt. No. 219 at 16.  That motion was terminated a year later in an Order finding:

> In this lawyer-rich environment, the parties have filed parallel

> proceedings and motions in this court attempting to conduct a
> second front to their conflict, which at this point is governed by the
> judgment of the Northern District of California to which I am
> obligated to give preclusive effect despite the pendency of appeal.
> *See generally* Wright, Miller & Government, *Federal Practice and
> Procedure* 2d § 4434 at 78-94 (2002) (noting rule and the
> substantial difficulties which arise from the rule that a final trial-
> court judgment operates as res judicata while an appeal is
> pending).

Dkt. No. 274 at 2.[8]

G.    **The Protective Order**

The Ninth Circuit issued an opinion affirming Judge Ware's order enforcing the

Settlement Agreement on April 11, 2011, amended it in denying rehearing en banc on May 16,

2011, and issued its mandate on June 24, 2011.  See Dkt. Nos. 335, 04 case 335.  As part of their

agreement, the Court emphasized, "[t]he parties [ ] agreed to grant each other 'mutual releases as

broad as possible,' and the Winklevosses represented and warranted that '[t]hey have no further

right to assert against Facebook' and 'no further claims against Facebook & its related parties.'"

*Facebook*, 640 F.3d 1037.  In enforcing that release and holding the CU Founders to their

representation, the Ninth Circuit observed that, "[a]t some point, litigation must come to an end.

That point has now been reached."  *Facebook,* 640 F.3d at 1042.

Because appeals are now exhausted, pursuant to paragraph 15 of the Second Stipulated

Protective Order (04 Case Dkt. No. 35), the parties are required to "return or destroy" all

documents and deposition transcripts marked confidential within 30 days of completion of the

litigation, which occurred as of the date the mandate from the Ninth Circuit issued.  To date,

although the CU Founders themselves acknowledge that "judgment of dismissal [should] be

entered forthwith . . . ."  (Dkt. No. 337 at 3), Facebook has received no notice that the CU

---

[8] Even after this order, the CU Founders unsuccessfully tried to get these same materials when
they sued their form counsel, Quinn Emanuel.  Cooper Decl. Ex. 11.

Founders or any of their numerous attorneys intend to comply with their post-litigation obligations under the Protective Order.

## III.   ARGUMENT

### A.   Access to Protected Materials Is Unnecessary

The CU Founders do not set forth any legitimate reasons for why access to confidential materials is warranted by their eighth set of lawyers.  According to the Protective Order, the parties are required to "return or destroy" all documents and deposition transcripts marked confidential.  Dkt. No. 32 at §15.  Litigation of this matter ended once the Ninth Circuit issued its mandate.  The CU Founders have not sought to modify the protective order, they are not seeking further review of the Ninth Circuit's decision, they concede this matter should be dismissed with prejudice, and no good cause exists to modify the protective order.  As this litigation is over, no further access by the CU Founders should be allowed.

The only vehicle that would arguably allow for access to protected material is Rule 26(c), which generally only applies to pre-judgment activities.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984) (finding that litigants do not have "an unrestrained right to disseminate information that has been obtained though pretrial discovery").  The risk of harm, particularly given the CU Founders' insatiable desire for media attention, and the history of leaks in this matter, provides Facebook with a very strong interest in protecting its confidential materials from further dissemination and possible disclosure.  *See* Arthur R. Miller *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.L.Rev. 427, 434 (Dec. 1991) ("When the risk of harm to the owner of the . . .  confidential information outweighs the need for discovery, disclosure cannot be compelled…").

Facebook has had repeated problems with opposing counsel refusing to file protected information under seal despite the Protective Order's express admonitions. ████████

████████████████████████████████████████████████

████████████████████████████████████████ *See* Dkt. No. 291, at 2, 17. Indeed, even material in this Court under seal has nonetheless been disclosed publicly. Cooper Decl. Ex. 13. Without a particularly compelling showing, the CU Founders should not be permitted to invade the province of protected documents. The CU Founders are nowhere near meeting such a burden.

### B.      Plaintiffs' Waived Their Claim By Releasing All Claims

The CU Founders' request to access pre-settlement files so as to pursue their discovery claim also fails because the claim itself has been released.

Under the Settlement Agreement:

> The parties [ ] agreed to grant each other "mutual releases as broad as possible," and the Winklevosses represented and warranted that "[t]hey have no further right to assert against Facebook" and "no further claims against Facebook & its related parties."

*Facebook*, 640 F.3d at 1037. As the Ninth Circuit held, "[w]hen adversaries 'in a roughly equivalent bargaining position and with ready access to counsel' sign an agreement to 'establish [ ] a general peace,' we enforce the clear terms of the agreement." *Id.* at 1039 quoting *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1342 (9th Cir. 1992). That ruling is binding here.

The Settlement Agreement contained no representation as to discovery compliance or stock price. Because the waiver was broad and the Settlement Agreement contained no representations as to the disputed issues, the Ninth Circuit found that the CU Founders had released their claim for securities fraud. On appeal, the CU Founders argued "that Facebook's alleged securities law violations took place in connection with the settlement itself, whereas the

unknown securities claim in *Petro-Ventures* arose out of facts that occurred prior to the settlement," and thus is not governed by the broad release in the Settlement Agreement. *Facebook*, 640 F.3d 1040.  The CU Founders reverse direction here and suggest that even claims that arose before settlement cannot be waived.  As the Ninth Circuit found, "[b]oth here and in *Petro-Ventures* the parties gave up [ ] claims they didn't know they had.  If the release is effective in the one case, there's no principled reason it shouldn't be effective in the other." *Facebook*, 640 F.3d at 1040.

Moreover, the CU Founders chose not to appeal the District Court's rulings related to the Court's finding that the CU Founders released their other allegations of fraud and misconduct, such as the issues the CU Founders now seek to investigate.  *See Ackermann v. United States*, 340 U.S. 193, 197-200 (1950) ("By no stretch of imagination can the voluntary, deliberate, free, untrammeled choice of petitioner not to appeal" bring him within Rule 60(b)); *see also Marshall v. Board of Ed. Bergenfield*, N.J., 575 F.3d 417, 424 (3rd Cir. 1978).  In fact, the Ninth Circuit and the District Court found that the CU Founders were fully prepared to settle with incomplete information.  Those rulings are binding upon the CU Founders in this case and should not be disturbed.

C.     **Plaintiffs Are Precluded From Relitigating Their Discovery Dispute In This Court**

The CU Founders' latest counsel also are not entitled to confidential material in order to pursue their discovery claim because the claim is precluded, pursuant to principles of *res judicata* and collateral estoppel.  *Breneman v. United States ex rel. FAA*, 381 F.3d 33, 38 (1st Cir. 2004)[9];  *Gonzalez-Pina v. Guillermo Rodriguez*, 407 F.3d 425, 430 (1st Cir. 2005).[10]  The

_____

[9] *Res judicata* applies where the following are present: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions."  *Breneman*,

CU Founders raised the present dispute through the June 2008 Emergency Motion and the subsequent California enforcement proceedings. Dkt. 195; Dkt 206, Ex. A at 10-11.  The parties presented argument in both forums.  At the end of each hearing, the dispute was submitted to the court for determination.  *See* Dkt. No. 274 at 3; Dkt. 206, Ex. A at 10-11.  This Court noted that the CU Founders' "second front to their conflict, . . . is governed by the judgment of the Northern District of California to which I am obligated to give preclusive effect despite the pendency of appeal."  Dkt. No. 274 at 2 citing, generally, WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE 2d § 4433 at 78-94 (2002).  On June 26, 2008, Judge Ware then rejected the arguments raised in both courts, and found no basis to decline enforcement.  Dkt. No. 206, Ex. A at 10-11.  The CU Founders chose not to appeal Judge Ware's ruling.  *See Ackermann*, 340 U.S. at 197-200; *Marshall*, 575 F.3d at 424.

The courts' rulings foreclose the CU Founders from relitigating their discovery claims in this Court, whether through Rule 60(b) or otherwise.  *Res judicata* applies to Rule 60(b) motions just as it does to any effort to relitigate a dispute—*i.e.*, when the issues in dispute could have been raised or were raised in earlier proceedings.  *Weldon v. United* States, 70 F.3d 1, 3 (2d. Cir. 1995) (applying *res judicata* because grounds upon which plaintiff claimed fraud in a Rule 60(b) motion were precluded because they could have been raised in an earlier proceeding).  The present dispute has been "actually litigated" and judgment has been reached on the merits.  The Ninth Circuit affirmed the judgment of the Northern District.  *Facebook*, 640 F.3d at 1042.  This Court is bound by that decision.  *Breneman*, 381 F.3d at 38; *Gonzalez-Pina*, 407 F.3d at 430;

---

381 F.3d at 38.
[10]  Collateral estoppel prohibits relitigation where: (1) the issue to be precluded is the same as that disputed in a prior proceeding, (2) the issue was actually litigated in the earlier proceeding, (3) the issue was determined by a valid and binding final judgment or order, and (4) the determination of the issue in the prior proceeding was essential to the final judgment or order.

*Ramallo Bros*, 490 F.3d at 90-91.

**D.      Settling A Case During Discovery Does Not Provide Grounds For Rule 60(b) Relief**

Finally, and in all events, the CU Founders also are not entitled to obtain confidential files in order to pursue their discovery claim under Rule 60(b), because they cannot possibly meet the showing necessary to support a motion under that Rule.  The CU Founders *chose* to settle in the middle of discovery—indeed, they *asked* to stay discovery so that mediation could proceed.  ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████  They also admit they have no basis to assert any "misconduct" but instead want to "investigate."  "A motion under Rule 60(b) cannot be used to avoid the consequences of a party's decision to settle the litigation or to forego an appeal from an adverse ruling." *Sampson v. Radio Corp. of America*, 434 F.2d 315, 317 (2d Cir. 1970); *Weilbacher v. J. H. Winchester & Co., Inc.*, 197 F.2d 303 (2d Cir. 1952); *see also MCI Telecommunications Corp. v. Matrix Comms. Corp.*, 171 F.R.D. 7, 9 (D.Mass. 1997) ("in order to prevail under Fed.R.Civ.P. 60(b)(3), [plaintiff] must demonstrate 'misconduct-like fraud or misrepresentation-by clear and convincing evidence, and must then show that the misconduct foreclosed full and fair preparation or presentation of its case'") *quoting Anderson v. Cryovac*, 862 F.2d 910, 923 (1st Cir. 1988); *Pearson v. First NH Mort. Corp.*, 200 F.3d 30 (1st Cir. 1999); *Ames True Temper, Inc. v. Myers Industries, Inc.*, Case No. 05-1694, 2007 WL 4268697, at *5 (W.D. Pa. Nov. 30, 2007);  *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 137 (1st Cir. 2005).

**1.      The CU Founders Cannot Prove Misconduct**

The fact that a party suffers "buyer's remorse" because it settled at a time when it knew

---

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 90 (1st Cir. 2007).

that document production was not yet complete is not grounds for a "misconduct" assertion as a matter of law.  A motion to vacate on grounds that a party did not produce documents should be denied if the party voluntarily elected not to seek such production, and where there is no court order requiring production.  *Manning v. Trustees of Tufts College,* 613 F.2d 1200, 1204 (1st Cir. 1980).  *See also Info-Hold v. Sound Merchandising, Inc.*, 538 F.3d 448, 457-458 (6th Cir. 2008).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ Dkt. No. 181, Wolfson Decl., ¶¶ 10-12.

As numerous courts have recognized, when a party settles prior to the close of discovery, a judgment should not be set aside based on a claim that important documents have not been produced.  *Sampson*, 434 F.2d at 317; *see also Ames True Temper*, 2007 WL 4268697, at *3 (". . . there was nothing to prevent plaintiff from allowing the litigation to proceed to discovery before it agreed to settle the case, which is was apparently content to do based on the information available to it at the time.  It cannot now claim that the defendants should somehow be held responsible for failing to disclose information that plaintiff consciously decided to forego obtaining.");  *Kerwit Medical Products, Inc. v. N&H Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980);  *Bandai America, Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 74 (3d Cir. 1985)("In settling [Bandai] surrendered the right to pursue additional discovery, and . . . [t]he record does not support the inference that Bandai's decision to relinquish further discovery related to any misrepresentation by counsel for Midway");  *Piergrossi v. Karcewiski*, No. Civ. A. 93-4190, 1995 WL 393804 (E.D. Pa. June 30, 1995);  *Katz v. Township of Westfall*, Civ. No. 3:CV-03-2377, 2007 WL 1366780 (M.D. Pa May 7, 2007);  *Total Containment, Inc. v. Environ Products, Inc.*, No. Civ. A 91-7911, 1996 WL 239877, at *2 (E.D. Pa. May 6, 1996).  That rule applies

doubly here, where, as explained, the 

### 2.     Facebook's Unfinished Production Did Not Interfere With Plaintiffs' Ability To Prepare For Mediation

The CU Founders also cannot conceivably show that incomplete discovery interfered with their ability to prepare for mediation or prejudiced their rights. ███████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████████████ Dkt. No. 292, Ex. 8. ████████████████████████████████████

███████████████████████████████ two of the CU Founders interrupted their training for the Summer Olympics, traveled 3000 miles with father and former classmate, negotiated with Facebook into the early morning hours, settled this lawsuit, and released all claims.  The CU Founders cannot possibly demonstrate, under these facts, that Facebook interfered with their full and fair preparation for mediation such that they can undo the settlement pursuant to Rule 60(b).

As this Court has already observed, "[f]rom all that appears, the parties were prepared to settle their disputes then, despite the fact that aspects of discovery in this case - most pertinently for present purposes, document production - had not been completed and unresolved discovery issues remained outstanding."  Dkt. No. 274 at 2.  There is no need for the CU Founders' eighth set of lawyers to obtain access to materials solely to investigate a discovery claim that this Court has already made clear is without merit.

IV.     **CONCLUSION**

As the CU Founders have released all claims and are precluded from re-litigating the issue of whether they were entitled to production of instant messages that they knew in February 2008 had not yet been produced, there is no reason why their latest counsel should obtain access to confidential files, which cannot yield any basis for relief pursuant to Rule 60(b).  For these reasons, Facebook respectfully requests that the Court deny the CU Founders' Motion for Access to Pleadings and Discovery Files.

Dated:  July 15, 2011                          Respectfully submitted,


 /s/ *I. Neel Chatterjee* /s/
I. Neel Chatterjee (admitted *pro hac vice*)
Monte Cooper (admitted *pro hac vice*)
Theresa A. Sutton (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:    (650) 614-7400
Facsimile:     (650) 614-7401
nchatterjee@orrick.com
mcooper@orrick.com
tsutton@orrick.com

Steven M. Bauer (BBO# 542531)
Sharada Devarasetty (BBO# 672514)
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone:    (617) 526-9600
Facsimile:     (617) 526-9899
sbauer@proskauer.com
sdevarasetty@proskauer.com

***Attorneys for Mark Zuckerberg, Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and Facebook, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 15, 2011.

Dated:  July 15, 2011                      Respectfully submitted,

                                           */s/ I. Neel Chatterjee /s/*
                                           I. Neel Chatterjee