IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA, <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, and FACEBOOK, LLC, <br><br> Defendants. | Civil Action No. 1:07-CV-10593-DPW |
| CONNECTU LLC, <br><br> The CU Founders, <br><br> v. <br><br> MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC., <br><br> Defendants. | Civil Action No. 1:04-CV-11923 (DPW) |
| MARK ZUCKERBERG, and FACEBOOK, INC., <br><br> Counterclaimants, <br><br> v. <br><br> CONNECTU LLC, Counterdefendant, and CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY AND MOTION TO PRESERVE INFORMATION <br> <u>REDACTED</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................................. 2

    A.    The CU Founders Acknowledged Discovery—Particularly Production of Instant Messages—Was Incomplete When They Chose to Settle the Cases and Sign a Release ............................................................................................ 2

    B.    The CU Founders Settle the Case And Later Raise the "Discovery Issue" to Try to Avoid the Settlement .............................................................................. 5

III.   ARGUMENT ...................................................................................................... 9

    A.    This Improper Collateral Attack Is Beyond This Court's Jurisdiction and Is Barred By Collateral Estoppel ........................................................................ 9

    B.    The CU Founders Waived Their Claims of Discovery Abuse By Releasing All Claims ............................................................................................................ 12

    C.    The CU Founders' Assertion of Possible "Misconduct" Does Not Entitle Them to Discovery And Is Meritless Anyway .................................................. 14

IV.   CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ackermann v. United States*,
    340 U.S. 193 (1950)...............................................................................................11

*Ames True Temper, Inc. v. Myers Industries, Inc.*,
    Case No. 05-1694, 2007 WL 4268697 (W.D. Pa. Nov. 30, 2007) ...................................15, 17

*Anderson v. Cryovac, Inc.*,
    862 F.2d 910 (1st Cir. 1988) ....................................................................................16

*Bandai America Inc. v. Bally Midway Mfg. Co.*,
    775 F.2d 70 (3rd Cir. 1985) .....................................................................................15

*Breneman v. United States ex rel. FAA*,
    381 F.3d 33 (1st Cir. 2004)......................................................................................11

*ConnectU, Inc., et al. v. Facebook, Inc., et al.*,
    Case No. 1:07-cv-10593-DPW ................................................................................10

*ConnectU, LLC v. Facebook, Inc., et al.*,
    Case No. 1:04-cv-11923-DPW ................................................................................10

*Facebook, Inc. v. Pac. N.W. Software, Inc.*,
    640 F.3d 1034 (9th Cir. 2011) ..................................................................... passim

*Gonzalez-Pina v. Rodriguez*,
    407 F.3d 425 (1st Cir. 2005).....................................................................................11

*In re LaFata*,
    344 B.R. 715 (B.A.P. 1st Cir. 2006) ...................................................................9, 16

*Karak v. Bursaw Oil Corp.*,
    288 F.3d 15 (1st Cir. 2002).................................................................................9, 16

*Kerwit Med. Prods., Inc. v. N&H Instruments, Inc.*,
    616 F.2d 833 (5th Cir. 1980) ....................................................................................16

*Manning v. Trustees of Tufts College*,
    613 F.2d 1200 (1st Cir. 1980)...................................................................................16

*Marshall v. Board of Ed., Bergenfield, N.J.*,
    575 F.2d 417 (3rd Cir. 1978) ...................................................................................11

*Petro-Ventures, Inc. v. Takessian*,
    967 F.2d 1337 (9th Cir. 1992) ..................................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page**

*Philadelphia Welfare Rights Org. v. Shapp,*
    602 F.2d 1114, 1120 (3rd Cir. 1979) ..........................................................................15

*Piergrossi v. Karcewski,*
    No. Civ. A. 93-4190, 1995 WL 393804 (E.D. Pa. June 30, 1995) ..........................................16

*Project Mgmt. Inst., Inc. v. Ireland,*
    144 Fed. Appx. 935, 2005 WL 1953506, at **1 (3rd Cir. 2005) ....................................14, 15

*Sampson v. Radio Corp. of Am.,*
    434 F.2d 315 (2nd Cir. 1970)..................................................................................15

*Tiller v. Baghdady,*
    294 F.3d 277 (1st Cir. 2002)..............................................................................11, 12

*Total Containment, Inc. v. Environ Prods., Inc.,*
    No. Civ. A 91-7911, 1996 WL 239877 (E.D. Pa. May 6, 1996) ...........................................16

*U.S. Fidelity & Guar. Co., v. Baker Material Handling Co.,*
    62 F.3d 24 (1st Cir. 1995)................................................................................16

*Weilbacher v. J. H. Winchester & Co., Inc.,*
    197 F.2d 303 (2nd Cir. 1952).............................................................................15

*Weldon v. United States,*
    70 F.3d 1 (2nd Cir. 1995) ...............................................................................12

### STATUTES

15 U.S.C. § 78cc(a)..................................................................................13, 14

Fed. R. Civ. P. 60...............................................................................8, 9, 10

Fed. R. Civ. P. 56(f).....................................................................................4

Fed. R. Civ. P. 60(b) ............................................................................ passim

Fed. R. Civ. P. 60(b)(3)...............................................................................14

I.    **INTRODUCTION**

After years of contentious litigation, the Ninth Circuit declared:  "At some point, litigation must come to an end.  That point has now been reached."  *Facebook, Inc. v. Pac. N.W. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2011) (emphasis added).  In keeping with the Ninth Circuit's directive, this Court dismissed this case with prejudice.  Nevertheless, the Winklevoss Brothers and Divya Narendra (collectively, the "CU Founders") now seek to reopen the pre-settlement discovery proceedings in order to re-assert arguments they have repeatedly raised and the courts have definitively rejected.

Armed with a *New Yorker* article and a "tip" they received before they decided to settle, the CU Founders once again say they want to "investigate" whether Facebook should have produced certain instant messages before the settlement discussions.  But the CU Founders released all claims fully aware that discovery was incomplete.  In fact, they settled while discovery was stayed (at their request), even though they knew that both sides had yet to produce "thousands" of instant messages.  The CU Founders have already unsuccessfully raised these very discovery issues multiple times, both before this Court (which referred the controversy to the California Court) and before the California Court.  The CU Founders opted not to appeal that issue to the Ninth Circuit.  Instead, they sought to unravel the Settlement Agreement based upon other, more foundational allegations of fraud.  The Ninth Circuit rejected the fraud arguments and affirmed the California Court's order enforcing the Settlement Agreement, which includes an obligation to end this litigation in Massachusetts once and for all.

Rule 60(b) imposes a very heavy, if not insurmountable, burden in settled cases.  The CU Founders do not come close to meeting such a heavy burden.  The Court should deny the CU Founders' motions because:  (1) it represents a collateral attack on the California Court's

judgment, over which this Court lacks jurisdiction and which is, in any event, barred by

collateral estoppel; (2) the CU Founders have signed a definitive and final release of all claims,

which, as the Ninth Circuit held, demanded litigation peace, even as against claims of fraud and

misconduct, whether recycled or newly minted; and (3) the claims of discovery misconduct are

meritless on their face.[1]

## II.   FACTUAL BACKGROUND

As in the numerous previous motions addressing the same issues, the CU Founders again

mischaracterize the discovery activity between April 2005 and February 2008, when they

globally settled all the lawsuits between the parties.  *See* Mot. at 10-17.  The bottom line is that

when the CU Founders settled, they knew discovery was incomplete and that numerous highly

relevant documents remained to be produced.  Indeed, numerous discovery disputes were

pending between the parties on both coasts when they settled.  Nevertheless, they did not ask

either court to lift the stay of discovery that they themselves had sought, and chose to settle and

released all claims, including those premised on information they did not yet have.

### A.   The CU Founders Acknowledged Discovery—Particularly Production of Instant Messages—Was Incomplete When They Chose to Settle the Cases and Sign a Release.

As Facebook detailed the last time the CU Founders presented these same discovery

allegations to this Court, discovery efforts between late 2005 and mid-2007 focused on certain

jurisdictional questions and the search for computer code.  *See* Dkt. No. 351, at 1-4.[2]  Between

mid-2007 and early-2008, Facebook had begun producing numerous communications pre-dating

---

[1] As the CU Founders' other motions to preserve/modify the protective order for access to materials all rest on whether the CU Founders have any right to investigate a Rule 60(b) motion, those motions should be denied for the same reasons.

[2] Dkt. No. 351 was filed under seal.  A public, redacted version of the pleading was filed as Dkt. No. 345.

May 21, 2004.  Declaration of Monte M. F. Cooper ("Cooper Decl."), Exs. 1, 2, 3.  *See* Dkt. No.

351 at 2-7.  The parties simply were not focusing their attention on other documents.[3]

The document discovery in the case began in earnest in the late summer and early fall of

2007.  Dkt. No. 351 at 4-7.  The production included review of materials from 790 gigabytes of

data on various imaged hard drives.  *Id.* at 5-6; *see also* Dkt. No. 200, Chatterjee Decl. in

Support of Opp. to Emergency Mot., ¶ 10.  In fact, during this time, Facebook produced

documents that included many of the instant messages that the CU Founders now argue were

improperly withheld.  Dkt. No. 200, Opp. to Emergency Motion, at 4.  The rolling production

continued until shortly before the parties' February 2008 mediation.  Dkt. No. 200, Chatterjee

Decl., Exs. 5-7; Dkt. No. 181, Wolfson Decl., ¶ 2.  Discovery stopped only because the CU

Founders requested a stay of discovery.  Dkt. No. 200, Chatterjee Decl., ¶ 21 & Ex. 11.  At that

point, both parties acknowledged discovery was incomplete:  Facebook had filed three motions

to compel discovery from the CU Founders, *see* Dkt. No. 200, Chatterjee Decl., Ex. 7, the CU

Founders had pending a Rule 56(f) Application, Dkt. No. 181, and both parties were skirmishing

over other discovery disputes – including un-produced instant messages - that had not yet

matured into motions to compel.  *See* Cooper Decl., Ex. 11.  Indeed, the CU Founders knew, at

least as early as February 19, 2008, that additional relevant documents would be produced—

which was three days before mediation (and nearly two months prior to the hearing on their

motion to compel discovery).  Dkt. No. 181, Wolfson Decl., ¶¶ 10-12.

---

[3]  The CU Founders argue that they had not moved to compel responses to document requests
because they believed that Facebook had produced all pre-May 21, 2004 communications.  The
record shows that the CU Founders' assertion is false.  *See* Dkt. No. 351 at 4-9, 19. To the
contrary, plaintiffs in March of 2007 re-filed numerous motions to compel, and were fully aware
in February of 2008 they had not received all pre-May 21, 2004 communications.  *See id.* at 4-5
& Dkt. Nos. 8, 61,181.

The very notion that the CU Founders believed production to be complete as of February 2008 is absurd, as the record proves they knew discovery—and specifically production of instant messages—was incomplete, and acknowledged it in writing.   Dkt. No. 351 at 4-7; *see also* Dkt. No. 200, Chatterjee Decl., Exs. 3, 5-7, 9.  For example, on February 13, 2008 (after the discovery stay pending mediation, but before the mediation), the CU Founders filed a Renewed 56(f) Application.  *See* Dkt. No. 181.  In it they stated:  "Facebook has indicated in various communications between the parties since January 25, 2008 that it has an indefinite amount of further documents to produce, including *thousands of pages of instant messages*.  Plaintiffs are currently unaware of when to expect these documents."  Dkt. No. 181, Wolfson Decl., ¶ 10 (emphasis in original).  They continued:  "Defendants have stated since producing the first batch of instant message [sic] on January 25, 2008 that further instant message productions will occur on a rolling basis over the next several weeks and/or months."  *Id.*  ¶ 12.  The CU Founders even recognized that the instant messages might prove to be important, complaining that "[t]he late production of these instant messages—with thousands more to follow—places Plaintiffs at a severe and unfair disadvantage."  Dkt. No. 181, Rule 56(f) Appl., at 7.

The CU Founders also had information beyond Facebook's candid disclosure.  For example, the CU Founders received a mysterious "deep throat" email before their decision to settle the case.  A week before the mediation, Cameron Winklevoss received a conspiratorial email that confided:  "I am afraid your team does not fully understand the hand you hold."  Dkt. No. 292, Ex. 8.  The "deep throat" email further warned them not to settle without further discovery:  "A sudden request for mediation is not a coincidence.  [R]eputation destroying evidence does exist that [Facebook's law firm, Orrick, Herrington & Sutcliffe] does not want to emerge."  *Id.*  The CU Founders were certainly attuned to the potential ramifications of this

email and the instant messages its author discussed.  Prior to the mediation, the CU Founders'

lawyer wrote them a breathless email stating: "If deep throat is right, TFB [The Facebook]

knows it will need to produce whatever it is holding, very soon, at which point CU's numbers

will go up."  *Id.*, Ex. 10.  The CU Founders could have delayed the settlement talks and

demanded the instant messages.  But instead, their lawyer urged them to proceed and

"approach[] the mediation with that potential leverage in mind."  *Id.*, Ex. 9 at 12.[4]

The CU Founders even strategized extensively with their lawyers about whether to

depose Facebook CEO Mark Zuckerberg before the mediation even though they would not yet

have secured the instant messages.  Less than two weeks before the mediation, the CU Founders

and their lawyers exchanged emails about the relative strategic value of "wait[ing] *until we have*

*reviewed all of the documents*" before deposing Mr. Zuckerberg versus "go[ing] ahead with the

first . . .deposition of [Zuckerberg] prior to the mediation" and then conducting "depo #2 after

reading all the docs, etc."   Cooper Decl., Ex. 4. (emphasis added).

### B.   The CU Founders Settle the Case And Later Raise the "Discovery Issue" to Try to Avoid the Settlement

Fully aware of the existence of undisclosed relevant instant messages—and believing

they may have significant ramifications—the CU Founders nonetheless settled all lawsuits

between the parties in February 2008.  Dkt. 206, Ex. A at 3; *see also Facebook*, 640 F.3d at

1036-38.  As part of the Settlement Agreement, the CU Founders agreed that "[a]ll parties get

mutual releases as broad as possible and all cases are dismissed with prejudice…."  Dkt. No.

206, Ex. A at 3.  The Settlement Agreement has no representation about the status of discovery,

---

[4] Notably, the CU Founders have never suggested that the "deep throat" email was not responsive to Facebook's discovery requests.  But they never produced it, because they understood that discovery was incomplete and that any obligation to continue producing documents was stayed.

much less a mutual agreement that discovery was complete – something later noted by the Ninth Circuit.[5]

After settling, the CU Founders suffered a bout of settlors' remorse.  Facebook filed a motion to enforce the Settlement Agreement in California.  *See* Dkt. No. 191.  In response, the CU Founders sought to avoid enforcement of the Settlement Agreement.  In support of that effort, the CU Founders filed a motion in this Court alleging discovery abuse.  Dkt. No. 195, Emergency Mot.  Before this Court, the CU Founders argued that Facebook had "willfully withheld documents that should have been disclosed."  Cooper Decl., Ex. 5, 6/2/08 Hr'g Tr., at 40:15-20.  Although they did not reveal the "deep throat" email they received prior to settlement, their allegations were otherwise identical to the allegations they are now pressing.  Then, as now, they claimed they were "stunned" to hear that documents existed that were "so damaging to Facebook," because they "didn't know about that" before the mediation.  Dkt. No. 195, Hornick Decl., at ¶¶ 2, 3.  And then, as now, they sought to compel production of documents, claiming that Facebook's purported failure to timely complete document production would void the Settlement Agreement.  Dkt. No. 195, Emergency Mot.

This Court rejected the CU Founders' argument, noting that discovery was "rolling" and Facebook had "not come to the concluding point at which they were obligated to make that disclosure."  Cooper Decl., Ex. 5, 6/2/08 Hr'g Tr., at 40:21-24.  The Court referred the "discovery" matter to the California Court, concluding that "if being aware of the universe of potential disputes between the parties, Judge Ware, nevertheless, chooses to enforce the settlement term agreement, that will be the end of the two cases pending before me."  *Id*. at 93:7-12.  Following the hearing, the Court issued a Memorandum and Order stating that "[f]rom all

---

[5] *See Facebook v. Pacific N.W. Software, Inc.*, 640 F.3d at 1039.

that appears, the parties were prepared to settle their disputes then, despite the fact that aspects of discovery in this case—most pertinently for present purposes, document production—had not been completed and unresolved discovery issues remained outstanding." Dkt. 204 at 4. This Court then forwarded its June 3, 2008 Memorandum and Order, along with the hearing transcript, to the California Court. 6/11/08 Dkt. Entry (Cooper Decl. Ex. 6).

The CU Founders then renewed their discovery grievance to the California Court as part of their opposition to Facebook's motion to enforce the Settlement Agreement. They claimed they were entitled to rescind the Settlement Agreement due to Facebook's failure to produce "highly material documents." Cooper Dec. Ex. 7, Sur-Reply Brief, at 12; *see also id*. at 13 & n.5. The California Court rejected the CU Founders' argument and issued an order enforcing the Settlement Agreement. Dkt. 206, Ex. A. In its order, the California Court acknowledged and echoed this Court's comments about the status of discovery, observing that "the parties elected to proceed with their settlement negotiations knowing they lacked potentially relevant information." Dkt. 206, Ex. A at 10-11 (citing this Court's 6/3/08 Memorandum and Order, 2). Rejecting the CU Founders' other arguments for avoiding the Settlement Agreement as well, the California Court enforced the Settlement Agreement.

The CU Founders appealed the enforcement order to the Ninth Circuit on other grounds. Foremost among them was the argument that Facebook failed to turn over other information—a recent valuation of Facebook stock. Specifically, the CU Founders asserted that the failure to produce that information amounted to fraud in the inducement as well as securities fraud. The CU Founders elected not to pursue the discovery dispute over the instant messages on appeal.

Instead of appealing the discovery dispute, the CU Founders raised their discovery grievance a second time before this Court, only this time it was captioned: "Motion for Sanction

of Non-Dismissal, or In the Alternative to Vacate Final Judgment Pursuant to FRCP 60."  Dkt.

No. 219.   The CU Founders once again alleged that Facebook and its counsel "intentionally

suppressed smoking gun documents for over 2 ½ years."  Dkt. No. 219 at 16.  This Court

terminated the second motion a year later, while the appeal was still pending.  The Court

observed:

> In this lawyer-rich environment, the parties have filed parallel
> proceedings and motions in this court attempting to conduct a
> second front to their conflict, which at this point is governed by the
> judgment of the Northern District of California to which I am
> obligated to give preclusive effect despite the pendency of appeal.
> See generally Wright, Miller & Government, Federal Practice and
> Procedure 2d § 4434 at 78-94 (2002) (noting rule and the
> substantial difficulties which arise from the rule that a final trial-
> court judgment operates as res judicata while an appeal is
> pending).

Dkt. No. 274 at 2.[6]

Eventually, the Ninth Circuit affirmed the California Court's enforcement order.  In

rejecting the allegations of fraud, the Ninth Circuit reasoned that "[t]he parties . . . agreed to

grant each other 'mutual releases as broad as possible,' and the Winklevosses represented and

warranted that '[t]hey have no further right to assert against Facebook' and 'no further claims

against Facebook & its related parties.'"  *Facebook*, 640 F.3d at 1037.  The Ninth Circuit

reached this conclusion despite the CU Founders' assertion that the failure to produce the

missing information was a fraud in the inducement of the Settlement Agreement.

After the appeal, the CU Founders raised the same discovery grievances in a third

motion.  The CU Founders again sought access to files to raise a Rule 60(b) motion.  Dkt. No.

194.  This third motion was, again, almost a carbon copy of the other previous two.  The Court

---

[6] The CU Founders also attempted to obtain these same materials in a separate collateral fee
dispute with its former counsel.  That request was also denied.  Cooper Decl., Ex. 9 (1/6/2010
Order).

terminated the third motion as moot when it dismissed this case with prejudice.  7/22/11 Elec.

Order, Cooper Decl. Ex. 8.  Undeterred, the CU Founders have now filed the present motions in

a fourth attempt to revisit closed and over-litigated issues.

## III.   ARGUMENT

Under the guise of Rule 60, the CU Founders seek permission to engage in an

"investigation" to determine whether they can file a Rule 60(b) motion to disrupt the dismissal

entered incident to the enforced settlement agreement.  "'[R]elief under Rule 60(b) is

extraordinary in nature and [ ] motions invoking that rule should be granted sparingly.'" *In re*

*LaFata*, 344 B.R. 715, 723 (B.A.P. 1st Cir. 2006) (*quoting Karak v. Bursaw Oil Corp.*, 288 F.3d

15, 19 (1st Cir. 2002)).  This Court should deny this motion along with the several ancillary

motions the CU Founders have filed for three reasons:  (A) this motion represents an improper

collateral attack on the California Court's judgment enforcing the global settlement; (B) the CU

Founders have signed a definitive and final release of all claims; and (C) the claims of discovery

misconduct are meritless on their face.

### A.   This Improper Collateral Attack Is Beyond This Court's Jurisdiction and Is Barred By Collateral Estoppel.

As this Court has previously recognized, this is not the proper forum in which to seek the

relief the CU Founders seek.  They say they want to "investigate" whether they will be able to

file a motion seeking "relief from . . . judgment."  But the "judgment" that they want to wipe

away is not the judgment of this Court, but the judgment of the California Court—affirmed by

the Ninth Circuit—enforcing the Settlement Agreement.  This Court did enter a judgment of

dismissal.  But that dismissal was but a ministerial act, which this Court executed in furtherance

of the California Court's enforcement order.  There has never been any dispute about this.  The

parties agreed to a Settlement Agreement settling both actions and specifying that any action to

enforce the Settlement Agreement shall be in the "San Jose Federal Court."  Dkt. No. 206, Ex. A

at 3.  In keeping with that Agreement, Facebook brought the enforcement action in the California

Court, which proceeded to enter a "Judgment Enforcing Settlement Agreement."  Part of that

judgment required the CU Founders to dismiss this action in Massachusetts.  Cooper Decl. Ex.

10.[7]  On December 12, 2008, the CU Founders moved to dismiss this case.  Dkt. No. 232.  They

did so "in compliance with the [Northern District of California's] Judgment Enforcing

Settlement Agreement."  *Id*.  After the Ninth Circuit affirmed the district court judgment,

Facebook moved to reassert the CU Founders' motion.  Dkt. No. 340.  The CU Founders, in

response, "acknowledge[d] that the settlement requires that a judgment of dismissal be entered in

these consolidated actions."  Dkt. No. 352.

      This course of events has two legal consequences.  First, any challenge to the Judgment

Enforcing Settlement Agreement, including whether any aspect of the judgment should be

vacated under Rule 60(b), falls within the exclusive jurisdiction of the California Court that

entered that judgment.  A motion pursuant to Rule 60 should "always be brought 'in the court

and in the action in which the judgment was rendered.'"  Fed. R. Civ. P. 60, 1946 Adv. Comm.

Notes.  This Court has no jurisdiction to vacate the Judgment Enforcing Settlement Agreement

and cannot undermine that judgment under the guise of reopening the case that was dismissed

solely because of that judgment.  As this Court previously noted, "[t]he parties agreed that the

[San Jose] federal court shall have jurisdiction to enforce this agreement" and "if Judge Ware

---

[7] The July 2, 2008 Judgment Enforcing Settlement Agreement ordered "Pursuant to Paragraphs 2 and 4 of the Agreement, unless otherwise ordered by the Court, on or before August 4, 2008, a legally sufficient dismissal with prejudice of all cases by and between the parties pending as of the date of the Agreement. . . . [fn] The other two cases are *ConnectU, LLC v. Facebook, Inc., et al*., Case No. 1:04-cv-11923-DPW, currently on appeal to the First Circuit Court of Appeals; and *ConnectU, Inc., et al. v. Facebook, Inc., et al*., Case No. 1:07-cv-10593-DPW, currently pending in the District of Massachusetts."

says that this is an enforceable agreement . . . these cases were dead on the day that [the

Settlement Agreement] was entered into or the day after."  Cooper Decl., Ex. 5, 6/2/08 Hr'g Tr.

at 65:1-5.

Second, principles of *res judicata* and collateral estoppel bar this motion.  As this Court

also recognized, there was a time and a place for asserting a challenge to the Settlement

Agreement—and that was during the enforcement proceeding.  If the CU Founders wanted to

press their discovery grievance, the time to do it was when they opposed the motion to enforce.

And that is exactly what they did when they argued that the Settlement Agreement should not be

enforced because Facebook had "willfully withheld documents that should have been disclosed."

Dkt. 195 at 40:15-20.  The California Court rejected that argument on the merits, and the CU

Founders did not appeal that ruling.  As this Court has acknowledged, it was "obligated to give

preclusive effect" to that conclusion "despite the pendency of appeal."  Dkt. No. 274 at 2 (citing

Wright, Miller & Government, Federal Practice and Procedure 2d § 4434 at 78-94 (2002)).

All that has happened since then is that the Ninth Circuit affirmed the California Court's

judgment.  *See Facebook v. Pacific N.W. Software, Inc.*, 640 F.3d at 1042..  That affirmance only

enhanced the judgment's preclusive effect.  The preclusive effect is, of course, not diminished

just because the CU Founders made the strategic decision not to raise their discovery grievance

to the Ninth Circuit.  They had the opportunity to appeal the issue, and that is all that matters.  As

the Supreme Court has observed, "By no stretch of imagination can the voluntary, deliberate,

free, untrammeled choice of petitioner not to appeal" bring him within Rule 60(b).  *Ackermann v.*

*United States*, 340 U.S. 193, 197-200 (1950); *see also Marshall v. Board of Ed., Bergenfield,*

*N.J.*, 575 F.2d 417, 424 (3rd Cir. 1978);  *Breneman v. United States ex rel. FAA*, 381 F.3d 33, 38

(1st Cir. 2004); *Gonzalez-Pina v. Rodriguez*, 407 F.3d 425, 430 (1st Cir. 2005); *Tiller v.*

*Baghdady*, 294 F.3d 277, 281 (1st Cir. 2002)("Rule 60(b) cannot be used as a 'substitute for a timely appeal….'"); *Weldon v. United States*, 70 F.3d 1, 3 (2nd Cir. 1995) (applying *res judicata* because grounds upon which plaintiff claimed fraud in a Rule 60(b) motion were precluded because they could have been raised in an earlier proceeding).

The CU Founders contend that the *New Yorker* article somehow provided new information about what Facebook knew and when it knew it.  It is doubtful that a reporter's report of hearsay could ever be a basis for overturning a judgment, particularly where, as here, the article only purports to flesh out details of alleged statements in instant messages the CU Founders were already alerted to prior to settling.  Either way, the article certainly does not change either the jurisdictional bar or the preclusive effect of the California Court's judgment. Most any party would love to overcome a judgment by pointing to new evidence they have gathered over the years, but preclusion principles were adopted precisely because it is wasteful and improper to give the same party multiple opportunities to prove the same point every time they receive more evidence or, in this case, more scurrilous tips from equally anonymous sources.

**B.    The CU Founders Waived Their Claims of Discovery Abuse By Releasing All Claims.**

The CU Founders' motions fail also for the independent reason that they released any right to bring a Rule 60(b) motion and, therefore, cannot seek to "investigate" such a claim.  The CU Founders' motion, like so many of their previously rejected motions, seeks to investigate whether they can make a claim of "fraud," "misconduct," or "misrepresentation."  The Ninth Circuit expressly found the CU Founders waived all such claims.  It did so because the CU Founders released those claims when they "agreed" at a time they knew discovery was incomplete  "to grant . . . mutual releases as broad as possible," and further represented and

warranted that "[t]hey have no further right to assert against Facebook" and "no further claims

against Facebook & its related parties."  Dkt. No. 206, Ex. A at 3.  That release was effective

whether or not the CU Founders were already on notice of the existence of instant messages.

The Ninth Circuit's opinion enforcing the Settlement Agreement was explicit on this

point.  At issue there was a similar, albeit weightier, allegation of securities fraud based upon the

failure to produce information.  Specifically, the CU Founders complained that Facebook

fraudulently induced the Settlement Agreement by not producing a recent internal valuation that

found the Facebook stock to have a value that was just a fraction of what the CU Founders

claimed to have believed the stock was worth.  This, the CU Founders contended, was securities

fraud.  The Ninth Circuit held that the CU Founders could not press the fraud argument because

they released it:  "When adversaries 'in a roughly equivalent bargaining position and with ready

access to counsel' sign an agreement to 'establish…a general peace,' we enforce the clear terms

of the agreement." *Facebook*, 640 F.3d at 1039 (quoting *Petro-Ventures, Inc. v. Takessian*, 967

F.2d 1337, 1342 (9th Cir. 1992)).  The Ninth Circuit enforced the Settlement Agreement even

though the CU Founders claimed that there was no way for them to have known about the fraud,

and even though (unlike here) they could invoke a federal statute that prohibits parties from

waiving compliance with securities laws. *Id*. at 1040 (rejecting argument under 15 U.S.C.

§ 78cc(a)).  In short the Ninth Circuit expressly interpreted the waiver that was signed in this

case as applying to (among other things) claims of fraud in the inducements of the settlement

agreement.  Because the CU Founders' claim precisely such a claim, that ruling is dispositive

here.

The Ninth Circuit did not stop there, however.  It found that discovery grievances are not

properly aired to challenge a settlement absent an express representation.  Specifically, the Ninth

Circuit held:

> Parties involved in litigation know that they are locked in combat with an adversary and thus have every reason to be skeptical of each other's claims and representations.  They can use discovery to ferret out a great deal of information before even commencing settlement negotiations.  *They can further protect themselves by requiring that the adverse party supply the needed information, or provide specific representations and warranties as a condition of signing the settlement agreement.*

*Id*., 640 F.3d at 1039 (emphasis added) (citations omitted). No such representation existed in the Settlement Agreement.

The Ninth Circuit's logic, which is binding on the CU Founders, applies with even greater force here, where the CU Founders' assertions of misconduct relate to nothing but the speed with which Facebook produced documents in the middle of an ongoing litigation and where they actually believed there were potentially significant documents that they did not yet have.  The CU Founders offer no reason to depart from this ruling now.

**C.      The CU Founders' Assertion of Possible "Misconduct" Does Not Entitle Them to Discovery And Is Meritless Anyway.**

The CU Founders do not claim that they have proof of "fraud" or "misconduct" within the meaning of Rule 60(b)(3).  As they tacitly admit, a magazine article does not entitle them to reopen a judgment.  Thus, the best they can say about their current stance is that they do not have access to all relevant information, Mot. 17, and they are trying to build a claim for relief out of nothing but speculation.  However, the judgment was not procured because of discovery grievances in an underlying lawsuit.  It was procured by enforcing a settlement agreement. Nothing in Rule 60(b) entitles the CU Founders to seek discovery from an underlying case in order to "investigate" whether or not they have a basis for vacating a judgment procured by enforcing a settlement.  The law is clear that discovery disputes from the lawsuit underlying the settlement is not a proper basis for a Rule 60(b) motion. *See Project Mgmt. Inst., Inc. v. Ireland*,

144 Fed. Appx. 935, 937, 2005 WL 1953506, at **1 (3rd Cir. 2005), *quoting Philadelphia Welfare Rights Org. v. Shapp,* 602 F.2d 1114, 1120 (3rd Cir. 1979) ("[W]hen, as here, the 'defendants made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost' "). *See also Ames True Temper, Inc. v. Myers Industries, Inc*., Case No. 05-1694, 2007 WL 4268697, at *5 (W.D. Pa. Nov. 30, 2007). The CU Founders identify no misconduct in procuring the judgment enforcing the settlement and no misconduct in the seeking dismissal pursuant to the California Court's order.  Accordingly, the CU Founders cannot properly invoke Rule 60(b) for their requested investigation.

The CU Founders have not cited a single case where a court relieved any party of a judgment entered pursuant to a settlement agreement due to discovery issues in the underlying litigation, particularly in a circumstance in which the parties were aware discovery was incomplete.  In fact, courts routinely reject such efforts.  As the Second Circuit has observed, "[a] motion under Rule 60(b) cannot be used to avoid the consequences of a party's decision to settle the litigation or to forego an appeal from an adverse ruling." *Sampson v. Radio Corp. of Am.*, 434 F.2d 315, 317 (2nd Cir. 1970); *see Weilbacher v. J. H. Winchester & Co., Inc*., 197 F.2d 303, 305 (2nd Cir. 1952).  "[T]here was nothing to prevent [the CU Founders] from allowing the litigation to proceed to discovery before [they] agreed to settle the case, which [they were] apparently content to do based on the information available to [them] at the time.  [They] cannot now claim that the defendants should somehow be held responsible for failing to disclose information that plaintiff consciously decided to forego obtaining." *Ames True Temper*, 2007 WL 4268697, at *3; *Bandai America Inc. v. Bally Midway Mfg. Co*., 775 F.2d 70, 74 (3rd Cir. 1985) ("In settling [Bandai] surrendered the right to pursue additional discovery, and . . . [t]he

record does not support the inference that Bandai's decision to relinquish further

discovery . . . related to any . . . misrepresentation by counsel for Midway"); *Piergrossi v.*

*Karcewski*, No. Civ. A. 93-4190, 1995 WL 393804 at *3 (E.D. Pa. June 30, 1995); *Total*

*Containment, Inc. v. Environ Prods., Inc.*, No. Civ. A 91-7911, 1996 WL 239877, at *2 (E.D. Pa.

May 6, 1996); *Kerwit Med. Prods., Inc. v. N&H Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir.

1980); *see also In re LaFata*, 344 B.R. at 725-726 (denying 60(b) relief where party "could have

ascertained [accurate information] during the course of the bankruptcy proceedings"); *Karak*,

288 F.3d at 22; *U.S. Fidelity & Guar. Co.*, *v. Baker Material Handling Co.,* 62 F.3d 24, 29 (1st

Cir. 1995); *Manning v. Trustees of Tufts College*, 613 F.2d 1200, 1204 (1st Cir. 1980).

        That is the key feature that distinguishes this case from *Anderson v. Cryovac, Inc.*, 862

F.2d 910 (1st Cir. 1988), and every other case the CU Founders invoke.   In *Anderson*, unlike

here, the parties went to trial and the resulting verdict was the result of that trial, but the trial was

tainted by the discovery abuse.  Specifically, one party concealed relevant materials, despite

having been ordered to produce them, and then repeatedly represented that it had satisfied its

discovery obligations.  The point of *Anderson* is that courts have an obligation to make a "trial

less a game of blindman's buff [sic] and more a fair contest."  862 F.2d at 929.

        Even if, contrary to all the authorities cited above, *Anderson* could ever apply to a

situation where the parties settled, it could never apply to this case.  *Anderson* "require[s]

complainants to demonstrate convincingly that they have been victimized by an adversary's

misconduct."  862 F.2d at 924.  *See also Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 21 (1st Cir.

2002) (holding that a Rule 60(b) motion requires clear and convincing evidence).  The CU

Founders could never make themselves out to be blameless victims of deceit where (1) Facebook

"indicated in various communications between the parties since January 25, 2008 that it ha[d] an

indefinite amount of further documents to produce," Dkt. No. 181, Wolfson Decl., ¶¶ 10-12; (2) the CU Founders were fully aware that Facebook had yet to produce thousands of documents, including instant messages, *id.*; (3) they believed that the instant messages contained some scurrilous information; (4) they discussed with their lawyers how best to capitalize on that information; and (5) the Court had never ordered Facebook to produce instant messages or any other pending discovery, and the CU Founders had not sought such an order.  In short, the CU Founders knew what they did not know and made an informed decision not to pursue the very information they now think would undermine the judgment.

The only remaining argument is the CU Founders' complaint that production may not have occurred within a particular time frame.  As this Court previously pointed out, there is no duty of immediate production, much less a duty to speed things along to a party in anticipation of a mediation, "in the Federal Rules of Civil Procedure, or anywhere else."  Cooper Decl., Ex. 5 6/2/08 Hr'g Tr. at 45:16-46:23; *see also Ames True Temper*, 2007 WL 4268697, at *6 (holding that defendant "had no obligation to divulge its production and sales figures" during settlement negotiations).  A timing dispute about production cannot be a basis for setting aside the judgment because they chose to settle this case knowing what they did not know, and that settlement was enforced by the Ninth Circuit Court of Appeals.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Facebook respectfully requests that the Court deny the CU Founders' Motion for Discovery and Motion to Preserve Information.

/ / /

/ / /

Dated:  September 2, 2011                    Respectfully submitted,


                                             */s/ I. Neel Chatterjee /s/*
                                             I. Neel Chatterjee (admitted *pro hac vice*)
                                             Monte Cooper (admitted *pro hac vice*)
                                             Theresa A. Sutton (admitted *pro hac vice*)
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
                                             1000 Marsh Road
                                             Menlo Park, California  94025
                                             Telephone:    (650) 614-7400
                                             Facsimile:     (650) 614-7401
                                             nchatterjee@orrick.com
                                             mcooper@orrick.com
                                             tsutton@orrick.com

                                             Steven M. Bauer (BBO# 542531)
                                             Sharada Devarasetty (BBO# 672514)
                                             PROSKAUER ROSE, LLP
                                             One International Place
                                             Boston, MA 02110-2600
                                             Telephone:     (617) 526-9600
                                             Facsimile:     (617) 526-9899
                                             sbauer@proskauer.com
                                             sdevarasetty@proskauer.com

                                             ***Attorneys for Mark Zuckerberg,
                                             Dustin Moskovitz, Andrew McCollum,
                                             Eduardo Saverin, Facebook, Inc., and
                                             Facebook LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 2, 2011.

Dated:  September 2, 2011.                    Respectfully submitted,

<em>/s/ I. Neel Chatterjee /s/</em>

I. Neel Chatterjee