IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>FACEBOOK, INC. MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, AND FACEBOOK LLC,<br><br>　　　　　Defendants. | Civil Action No. 1:07-CV-10593 (DPW)<br><br>Related Action No. 1:04-CV-11923 (DPW) |

**CONNECTU, INC.'S OPPOSITION TO MOTION BY PLAINTIFFS WINKLEVOSS AND NARENDRA FOR DISCOVERY PURSUANT TO FED.R.CIV.P. 60(B)**

I.　　INTRODUCTION

　　　Despite the fact that this case settled over three years ago, despite the fact that this Court's sister court enforced that settlement (again, over three years ago), and despite the fact that this Court recently entered an order of dismissal, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra ("the ConnectU Founders") request that this Court enter an order providing the ConnectU Founders' counsel access to voluminous documents, and allowing depositions, pursuant to Rule 60(B). The ConnectU Founders fail to demonstrate a sound basis for what amounts to a request for an order allowing a massive and unbridled fishing expedition. The Court should deny the ConnectU Founders' motion and finally put an end to this lengthy saga.

## II.   FACTUAL BACKGROUND

### A.   The February 2008 Settlement

Facebook, ConnectU, Inc., and the ConnectU Founders participated in mediation in February 2008 relating to the following three pending actions: *ConnectU LLC v. Zuckerberg*, Appeal No. 07-1796 (1st Cir.); *ConnectU, Inc. v. Facebook, Inc.*, Case No. 1:07-CV-10593-DPW (D. Mass.); and *Facebook, Inc. v. ConnectU, Inc.*, Case No. 5:07-CV-01389-JW (N.D. Cal.)[1].

At the conclusion of the mediation, the parties reached a settlement that called for the transfer of 100% of the outstanding shares of ConnectU, Inc. to Facebook, and for Facebook to transfer cash and certain shares of Facebook stock to the ConnectU Founders. The settlement agreement further provided that "[a]ll parties get mutual releases as broad as possible and all cases are dismissed with prejudice." *Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1037 (9th Cir. 2011). In addition, the agreement provided that the "ConnectU founders represent and warrant (1) they have no further right to assert against Facebook (2) they have no further claims against Facebook & its related parties." *Id.* The settlement agreement provided that the U.S. District Court for the Northern District of California would retain jurisdiction for purposes of enforcing the settlement. Dkt. No. 204 at 2.

### B.   Facebook's Motion to Enforce the Settlement

Shortly after the parties signed the settlement agreement, ConnectU and the ConnectU Founders refused to comply with the settlement agreement. As a result, on April 23, 2008,

---

[1] For purposes of judicial economy, and to avoid duplicative pleadings, ConnectU joins the Opposition filed by Facebook and adopts Facebook's Opposition as if set forth herein in full. ConnectU specifically declines to recite facts relating to this litigation prior to the February 2008 mediation and instead adopts the procedural recitation contained in the Factual Background portion of Facebook's Opposition.

Facebook filed a Motion to Enforce the Settlement Agreement. ConnectU opposed Facebook's Motion to Enforce, claiming, among other things, that Facebook failed to disclose material information prior to and during the settlement negotiations. *Id.* at 1037-8, 1041.

On July 2, 2008, the Northern District of California granted Facebook's Motion to Enforce. *Id.* at 1037; Dkt. No. 208. ConnectU and the ConnectU Founders appealed.

On December 15, 2008, pursuant to the settlement agreement, all of ConnectU's outstanding shares were conveyed to Facebook, making ConnectU a wholly-owned subsidiary of Facebook. ConnectU appointed a new sole officer and director and retained new lead counsel in all matters. ConnectU's former counsel, Boies, Schiller & Flexner LLP ("Boies"), Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan"), and O'Shea Partners LLP ("O'Shea") – still representing the ConnectU Founders – refused to withdraw as counsel for the ConnectU Founders and refused to provide ConnectU's files to ConnectU.

    C.    <u>ConnectU's Motion to Disqualify Its Former Counsel from Representing<br>ConnectU's Adversaries; ConnectU's Request for Files From its Former Counsel</u>

On January 20, 2009, ConnectU moved to disqualify Finnegan, O'Shea and Boies from representing the ConnectU Founders based on the obvious conflict presented by Finnegan, O'Shea and Boies' former joint representation of ConnectU and the ConnectU Founders. Dkt. Nos. 262, 263. ConnectU simultaneously filed a similar Motion to Disqualify in the Northern District of California, Action No. 5:07-CV-01389-JW. As part of both motions to disqualify, ConnectU also sought access to its former counsel's files. Dkt. Nos. 262, 263.

On September 2, 2009, the Northern District of California granted ConnectU's Motion to Disqualify, disqualifying Boies and Finnegan from representing the ConnectU Founders in that matter. Dkt. No. 273. In addition, the Court granted in part and denied in part ConnectU's request for files from its former counsel, Boies and Finnegan. The Court granted ConnectU

access to its general business files, but denied ConnectU's request for access to its litigation

materials. *Id.* at 17, 18.

> D.   This Court Enters a Stay Pending Finality of the Ninth Circuit Appeal

On September 30, 2009, this Court entered a stay in the Massachusetts actions,

recognizing that the Northern District of California's judgment was to be given preclusive effect:

> In this lawyer-rich environment, the parties have filed parallel proceedings and motions
> in this court attempting to conduct a second front to their conflict, which at this point is
> governed by the judgment of the Northern District of California to which I am obligated
> to give preclusive effect despite the pendency of appeal.

Dkt. No. 274 at 2.  As part of the Court's Order, pending motions were terminated without

prejudice to any party to reassert a particular motion upon the lifting of the stay.  *Id.*

On January 21, 2010, Finnegan filed a Motion to Withdraw as Attorney.  Dkt. No. 324.

It does not appear that this Court ever ruled on Finnegan's Motion and Finnegan attorneys are

still counsel of record in this action.  Nonetheless, new counsel for the ConnectU Founders –

Meade & Schrag – appeared for the ConnectU Founders on April 15, 2011.  Dkt. No. 333.

> E.   The Ninth Circuit Affirms the Northern District of California's Order Enforcing
> the Settlement, Yet the ConnectU Founders Continue Their Efforts to Prolong this
> Litigation

The Ninth Circuit affirmed the Northern District of California's order granting

Facebook's Motion to Enforce on April 11, 2011, denied rehearing en banc on May 16, 2011,

and issued its mandate on June 24, 2011.  Dkt. Nos. 331, 335, See *Facebook, Inc. v. Pacific*

*Northwest Software, Inc.*, *supra*, 640 F.3d at 1042.  As the Ninth Circuit made clear, the

litigation is over:

> The Winklevosses are not the first parties bested by a competitor who then seek to gain
> through litigation what they were unable to achieve in the marketplace. And the courts
> might have obliged, had the Winklevosses not settled their dispute and signed a release of
> all claims against Facebook. With the help of a team of lawyers and a financial advisor,
> they made a deal that appears quite favorable in light of recent market activity. See
> Geoffrey A. Fowler & Liz Rappaport, Facebook Deal Raises $1 Billion, Wall St. J., Jan.

22, 2011, at B4 (reporting that investors valued Facebook at $50 billion—3.33 times the value the Winklevosses claim they thought Facebook's shares were worth at the mediation). For whatever reason, they now want to back out. Like the district court, we see no basis for allowing them to do so. At some point, litigation must come to an end. That point has now been reached.

*Id.*

F.   This Court Entered An Order of Dismissal on July 22, 2011; Yet, Plaintiffs Continue Their Efforts to Prolong this Litigation.

On February 22, 2011, this Court entered an Order of Dismissal, dismissing this litigation in its entirety. Dkt. No. 353.

The ConnectU Founders now ask this Court for an order directing: (1) ConnectU's former counsel to provide the ConnectU Founders' new counsel confidential material that was produced in this matter under protective order; (2) that Defendants provide the ConnectU Founders' current counsel all withheld electronic communications responsive to any discovery requests; (3) that documents found by Mr. Parmet and previously submitted to this Court for *in camera* review be provided to the ConnectU Founders' counsel; (4) that the Parmet protocol be suspended to allow counsel to communicate with Mr. Parmet; (5) that Defendants identify, in a list, the attendees of the January 2006 meeting; (6) that Defendants provide additional documents to this Court for *in camera* review; (7) that the ConnectU Founders may take videotaped depositions of those involved in the forensic examinations of electronic devices; and (8) the scheduling of an evidentiary hearing, "at which the Court questions the Orrick litigation team…and any other knowledgeable individuals identified by the Court regarding their reported failure to timely produce all responsive documents in discovery." Dkt. No. 360 at 22-23.

III.   LEGAL ANALYSIS

    A.   The Protective Order Requires that All Confidential Documents Be Destroyed Within 30 Days of the Completion of this Litigation

As the ConnectU Founders have acknowledged in a recent status report to this Court, this litigation was completed when the Ninth Circuit issued its mandate on June 24, 2011, and indeed the ConnectU Founders specifically requested that "the judgment of dismissal be entered forthwith after the mandate issues." Dkt. No. 337 at 3. The Protective Order requires that the parties "return or destroy" all documents and deposition transcripts marked confidential within 30 days after the completion of this litigation. Dkt. No. 32 at §15. It follows that *all* counsel should destroy or return confidential information, and *no* counsel should be ordered to share confidential information *with anyone*.

    B.   The ConnectU Founders' Motion Seeks Access to ConnectU Confidential Files that ConnectU and Its Counsel Have Not Been Permitted to Access

The confidential pleadings and discovery to which the ConnectU Founders' newest lawyers seek access are not just the ConnectU Founders' files; they are also ConnectU's files. Despite ConnectU's various efforts to obtain access to these files, the ConnectU Founders' previous counsel have denied ConnectU access to the majority of these files. The ConnectU Founders do not cite any authority supporting the proposition that disqualified counsel (Finnegan), who has resisted and refused to provide litigation files to its former joint client (ConnectU), can or should violate its ongoing duty of loyalty to that former client (ConnectU) by assisting the other joint client (the ConnectU Founders) in litigation against the first joint client (ConnectU).

The ConnectU Founders affirmatively took the position, both in this matter and in the Northern District of California, that ConnectU's new counsel was not entitled to Finnegan's ConnectU litigation files. Dkt. No. 266 at 12-15. The ConnectU Founders and their former

counsel have vigorously resisting ConnectU's efforts to obtain copies of its own litigation files. See Dkt. No. 266 at 12-15.

It would be fundamentally unfair to now allow the ConnectU Founders access to documents that the ConnectU Founders and their counsel have gone to great lengths to block ConnectU from accessing. The ConnectU Founders' newest counsel should not have access to ConnectU documents that ConnectU and its counsel have likely never seen as a result of the ConnectU Founders' affirmative efforts.

      C.      <u>The ConnectU Founders Cannot Articulate a Substantial Need for Access to Pleadings and Discovery Files</u>

The ConnectU Founders claim that their newest lawyers need access to confidential pleadings and discovery so that counsel can investigate whether Facebook withheld information in discovery and determine whether the ConnectU Founders have a legitimate basis for a Rule 60(B) motion. But, as the ConnectU Founders acknowledge, Rule 60(B) relief is considered "extraordinary" and is generally only reserved for exceptional circumstances. *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009). A party must prove its entitlement to relief under Rule 60(B) by clear and convincing evidence. *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 21 (1st Cir. 2002).

As Facebook explains in more detail, the ConnectU Founders cannot possibly meet that exacting standard. As this Court previously noted in its June 3, 2008 Memorandum and Order:

> [A]lthough discovery had not been concluded and – more specifically – document production had not been completed in this case... the parties agreed among themselves to suspend proceedings in anticipation of mediation. Following that mediation, the parties reported to this Court on February 25, 2008 that they had settled their disputes.

Dkt. No. 204 at 1. In that same Order, this Court specifically acknowledged that the parties were aware of a "simmering discovery dispute" regarding specific documents "at the time the parties agreed to suspend proceedings in anticipation of mediation." *Id.* at 2. As this Court stated, "the

parties were prepared to settle their disputes then, despite the fact that aspects of discovery in this case – most pertinently for present purposes, document product – had not been completed and unresolved discovery issues remained outstanding." Dkt. No. 204 at 4.

With the knowledge that discovery was incomplete, and despite the "simmering [discovery] dispute," the ConnectU Founders settled the case, granted Facebook a "release[] as broad as possible," and "represent[ed] and warrant[ed] (1) they have no further right to assert against Facebook (2) they have no further claims against Facebook & its related parties." *Facebook, Inc. v. Pacific Northwest Software, Inc., supra*, 640 F.3d at 1037.

This Court took the unequivocal position that, "[i]t is for [the Northern District of California] to determine what additional discovery, if any, is necessary to the resolution of any settlement dispute between amply represented parties aware that they had not chosen to complete discovery when executing [the settlement agreement]." Dkt. No. 204 at 4.  When presented with this exact question, the Northern District of California rejected the ConnectU Founders' efforts to void that agreement, and the Ninth Circuit affirmed, relying in particular on the ConnectU Founders' decision, made in the company of a battery of lawyers, to release all claims against Facebook. *Facebook, Inc. v. Pacific Northwest Software, Inc., supra*, 640 F.3d at 1039, 1040-41.

In short, the case is over and there is therefore no need for the ConnectU Founders' newest counsel to access confidential discovery and pleadings or to conduct additional discovery.  On this basis as well, the Court should deny Plaintiffs' motion.

IV.   <u>CONCLUSION</u>

The Court should deny Plaintiffs' Motion for Discovery Under Federal Rule of Civil

Procedure, Rule 60(B).

Dated: September 2, 2011

By   <u>/s/</u>_____
        Alison P. Buchanan (admitted *pro hac vice*)
        California Bar No. 215710
        HOGE, FENTON, JONES & APPEL, INC.
        Sixty South Market Street, Suite 1400
        San Jose, California 95113-2396
        Telephone: (408) 287-9501
        Facsimile:  (408) 287-2583
        apb@hogefenton.com


        -- and --

        Peter M. Durney – Bar No. 139260
        Gregg P. Bailey – Bar No. 648259
        Cornell & Gollub
        75 Federal Street
        Boston, Massachusetts 02110
        Telephone: (617) 482-8100
        Facsimile: (617) 482-3917
        PDurney@CornellGollub.com
        GBailey@CornellGollub.com

        *Attorneys for ConnectU, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the requested participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered recipients on or before September 2, 2011.

September 2, 2011

/s/
Alison P. Buchanan