IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, INC., CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA,<br><br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>FACEBOOK, INC., MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW McCULLUM, AND THEFACEBOOK LLC,<br><br>　　　　　　　Defendants. | CIVIL ACTION NO. 1:07-cv-10593-DPW<br><br>(CONSOLIDATED WITH CIVIL ACTION NO. 1:04-cv-11923-DPW)<br><br>(LEAVE TO FILE GRANTED 9/9/11) |

**CAMERON WINKLEVOSS, TYLER WINKLEVOSS AND DIVYA NARENDRA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF <u>MOTION FOR DISCOVERY UNDER FED.R.CIV.P. 60(B)</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. FACEBOOK DOES NOT DENY THE FOUNDERS' CORE ALLEGATIONS OF MISCONDUCT ............................................................................................................. 2

III. THERE ARE NO PROCEDURAL BARS TO THIS MOTION FOR DISCOVERY .......... 6

IV. CONCLUSION ............................................................................................................. 11

CERTIFICATE OF SERVICE ................................................................................................ 11

I.  **INTRODUCTION**

Facebook does not deny the core allegations of misconduct: that it knew about the leaked instant messages ("IMs") in January 2006, that senior executives reviewed and discussed these very damaging communications at a January 2006 meeting with counsel, that the company had a duty to disclose the IMs when discovered, and that the company withheld this evidence for more than two years. Facebook's basic defense—that it would have produced these IMs *at some point before trial*—is no defense at all. Fed.R.Civ.P. 26(e) requires prompt supplementation. It does not allow a party to wait until a more strategically advantageous date.

From late 2005 through 2007, Facebook and its counsel, the law firm of Orrick, Herrington & Sutcliffe ("Orrick"), told the Founders and this Court that Facebook had fully complied with all its discovery obligations, that Orrick had not "slowed a single thing down on discovery," that Facebook was not withholding any responsive documents (except two categories not relevant here), that Facebook would promptly produce any new responsive evidence that was found, and that "Facebook Has Not Suppressed Evidence." *See* Dkt. 361 ("Founders' MPA ISO Discovery Motion") at p. 11.

Facebook admits that it did not reveal that there were additional, unproduced communications until early 2008. Apparently, this disclosure was prompted by Jeff Parmet's discovery of critical evidence—presumably the IMs—that had not been produced. But Facebook misses the point by arguing that its pre-mediation acknowledgment of undisclosed IMs negated the prejudice of two years of suppression. By that late date, the damage to the Founder's ability to fully and fairly prepare their case had already been done: Over the course of two years, Facebook and Orrick led the Founders to believe there was no firm evidence in Facebook's or Mr. Zuckerberg's possession supporting their fraud and breach of fiduciary

duty/constructive trust allegations. This prompted them to focus instead primarily on their claim of code theft, which turned out to be a weaker claim. The Founders spent two years and substantial judicial resources on theft-of-code discovery, effectively losing—as a direct result of Facebook's misconduct—the opportunity to develop their best claims. Rule 60(b) exists to remedy this exact type of misconduct that thwarts litigants from fully developing their claims. Under these circumstances, an inquiry is clearly warranted under *Anderson v. Cryovac*, 862 F.2d 910 (1st Cir. 1988).

## II.  FACEBOOK DOES NOT DENY THE FOUNDERS' CORE ALLEGATIONS OF MISCONDUCT

Facebook's opposition is remarkable for what it does not contain—a denial of any of the following allegations:

1) That the IMs reported in *The New Yorker* article are authentic and do exist.

2) That the undisclosed IMs were responsive to the Founders' request(s) for production. Founders' MPA ISO Discovery Motion at 3.

3) That Facebook's litigation team at Orrick had found the IMs at issue more than two years before the mediation. *See id.* at 9-10.

4) That Facebook executives and attorneys discussed the leaked IMs during a January 2006 meeting, but never produced them to the Founders. *See id.* at 9-10.[1]

5) That Facebook directed the Founders' attention away from their best claims by stating—before and after the reported January 2006 meeting—that they had produced all known responsive electronic communications. *See id.* at 7-9, 11.

6) That the leaked IMs are the same documents that Jeff Parmet located in late 2007, which is significant because it raises questions about Mr. Chatterjee's candor in responding to the Court's questions on June 2, 2008. *See id.* at 12-13.[2]

---

[1] Facebook's statement that "Facebook produced documents that included many of the instant messages that the CU Founders now argue were improperly withheld" is too vague to be a denial, as it does not identify what was and was not produced or when. Dkt. 367 ("Facebook Opp.") at 3. It should be noted that the Founders' claim is not that Facebook produced no electronic communications, but rather that it wrongfully withheld the damaging ones.

[2] Had Mr. Chatterjee told the Court on June 2, 2008 that the documents Jeff Parmet found had been known to Facebook and Orrick since January 2006, the Court would have had an

The Founders first aired these allegations of misconduct stemming from the reported January 2006 meeting in their April 20, 2011 Status Report, Dkt. 334, but Facebook still has not denied them, despite two opportunities to do so. Dkts. 345 & 367. Facebook's silence supports the request for an inquiry. *U.S. v. Miller*, 478 F.3d 48, 51 (1st Cir.2007) ("a party's agreement with a fact stated by another may be inferred from (or 'adopted' by) silence ... when (i) a statement is made in a party's presence, (ii) the nature of the statement is such that it normally would induce the party to respond, and (iii) the party nonetheless fails to take exception"). If not true, Facebook and Orrick should welcome the opportunity to disprove these allegations. *See Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 786 n. 4 (9th Cir. 2003) (dissenting opn. of B. Fletcher) (in another action where Orrick allegedly engaged in discovery misconduct, Judge Fletcher stated "Orrick could be well served by trial of the charges").[3]

Instead of denying that it engaged in misconduct, as one would expect in these circumstances, Facebook makes various procedural arguments (addressed in § III. below) and excuses its apparent failure to produce this evidence on the basis that "there is no duty of immediate production." Facebook Opp. at 17. Facebook, thus, suggests that it is permissible under Fed.R.Civ.P. 26(e)(1)(A) to delay the production of critical evidence for more than two years. That is an audacious claim; the Founders are not aware of any federal court that has ratified so lenient an interpretation of the "in a timely manner" requirement of Rule 26(e).

---

opportunity to address the present issues then, which could have obviated the need for the present proceedings. Instead, Mr. Chatterjee led the Court to believe that the documents that Mr. Parmet found were in the "production track" when the Parmet dispute arose (in December 2007), but did not mention how long they had been in that "track." *See* Founders' MPA ISO Discovery Motion at p. 13, discussing Meade Decl., Ex. 19 (6/2/2008 transcript) at pp. 29-30.

[3] Judge Fletcher also stated: "The majority minimizes the gravity of the plaintiffs' charge and invites similar behavior in the future . . . . 'Misconduct, once tolerated will breed more misconduct . . . .'" *Appling*, 340 F.3d at 786 (dissenting opn. of B. Fletcher) (internal citation omitted).

The supplementation required by Rule 26(e) must be done promptly, and undue delay is measured in months, not years. *See, e.g., Freund v. Fleetwood Enterprises, Inc.*, 956 F.2d 354, 357-358 (1st Cir. 1992) (finding undue delay warranting sanctions where defendant waited two months), criticized on another point by *Diaz v. Shallbetter*, 984 F.2d 850, 852+ (7th Cir. 1993); *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir. 1975) (finding undue delay where defendant waited four months); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1205 (Fed.Cir. 2005) ("Once counsel became aware . . . that highly material documents had not been produced as required, Schreiber and its counsel were under an obligation to *promptly* correct the record") (emphasis added).

The triggering event for the duty to supplement under Rule 26(e) is when the party learns that in some material respect the previously provided information is incomplete or incorrect, not some subsequent, strategically more advantageous date unilaterally selected by that party's counsel. *AVX Corp. v. Cabot Corp.*, 252 F.R.D. 70, 77-79 (D.Mass. 2008) (the duty to supplement in a timely fashion requires supplementation "upon learning that [the prior information] is materially incomplete or incorrect"); 10, *Federal Procedure, Lawyers Edition*, § 26:66 (2007) ("For purposes of determining timeliness of supplementation of responses under this provision, the beginning time is the date when the facts are discovered, not some nebulous date when counsel first realizes that there is some significance to those facts").

A decision by Facebook to withhold the IMs for two years is a clear violation, and a grossly unfair litigation tactic. *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D.Ga. 2001) (no right under Rule 26(e) "to produce information in a belated fashion"), disagreed with on another point by *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 370 (E.D. Ark. 2007); *Capitol Fed. Sav. Bank v. E. Bank Corp.*, 2007 WL 7309743, *7 (D.Mass. 2007)

(same); 8A, Wright *et al.*, *Fed. Practice & Procedure* § 2049.1, p. 313 (3d ed. 2010) (Rule 26(e) "is not an invitation to hold back material items and disclose them at the last moment").

It was not until after January 25, 2008 that Facebook revealed to the Founders that there were additional communications that were responsive but not previously produced. Facebook Opp. at 4. While Facebook describes this disclosure as "candid," the Court may disagree if an inquiry reveals that Facebook suppressed the IMs for two years, and acknowledged their existence only because Mr. Parmet discovered them. *Id.* Facebook and Orrick should be compelled to explain why this disclosure was not made two years earlier, in January 2006. *Wilson v. Brandlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) ("the party facing sanctions for belated disclosure" has the obligation "to show that its failure to comply with the Rule was either justified or harmless"), disagreed with on another point by *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297+ (2d Cir. 2006).

Moreover, Facebook's professed intention to comply with its Rule 26(e) disclosure obligation *at some point* is suspect given this record; but even if true, some form of relief is warranted. Facebook and Orrick caused irreversible harm by depriving the Founders of these IMs for the entirety of 2006 and 2007—time they could have used to fully and fairly develop their fraud and breach of fiduciary duty/constructive trust allegations. *See* Founders' MPA ISO Discovery Motion at 17-21 (§ III.C.). Belated production does not cure prejudice. *North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) ("Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts").

Rule 26(e)(1)(A) is part of a system of rules intended to reform the "sporting" theory of trial and allow for a rational and well-balanced search for truth. *See generally Hickman v.*

*Taylor*, 329 U.S. 495 (1947). On this record, it appears that Facebook and Orrick have employed deliberate tactical intransigence to the detriment of these rules, the Founders, and this Court. *See Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 36 (3d Cir. 1979) ("with the increasedly complex and numerous cases that comprise the federal docket, courts can no longer indulge the 'deliberate tactical intransigence . . . responsible for the interminable delays and costs that plague . . . lawsuits' to the detriment of both opponent and nonopponent litigants"), abrogated on other grounds by *Alexander v. Ginos, Inc.*, 621 F.2d 71, 73 (3d Cir. 1980); *Dellums v. Powell*, 566 F.2d 231, 235-236 (D.C.Cir. 1977) ("[i]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery").

The appropriate remedy should be determined after the foundational facts are established. But this much is clear: If the allegations are confirmed by the inquiry, some remedy[4] is critical to deterring similar conduct in the future. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643; *Appling*, 340 F.3d at 786 (dissenting opn.).

### III. THERE ARE NO PROCEDURAL BARS TO THIS MOTION FOR DISCOVERY

Facebook contends that "discovery disputes from the lawsuit underlying the settlement is not a proper basis for a Rule 60(b) motion," but the authorities cited don't support that proposition. Facebook Opp. at 14-15. Indeed, one of the cases Facebook cites, *Project Management Institute, Inc. v. Ireland*, 144 Fed.Appx. 935 (3d Cir. 2005), expressly notes that "Rule 60(b)(3) relief is available for misconduct in discovery" and makes clear that the ultimate issue is not whether there was a settlement but rather whether the moving party was prevented from fully and fairly preparing or presenting its case. *Id.* at 937.

---

[4] *See, e.g., Outley v. City of New York*, 837 F.2d 587 589 (2d Cir. 1988) ("it is within the inherent power of the district court to impose sanctions for a violation of Rule 26(e)"); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (re inherent power to impose fees).

Ignoring two years of misconduct in 2006 and 2007 in which Facebook made false statements that diverted the Founders' attention away from their best claims, Facebook apparently would have this Court conclude that the Founders' decision to settle in 2008 absolves Facebook of liability for misconduct spanning two years. Facebook Opp. at pp. 2, 15. None of the cases that Facebook cites provide for such easy absolution. None hold a decision to settle before discovery is complete bars a Rule 60(b)(3) motion. Nor do any of these cases hold that a decision to settle is the determinant of whether misconduct deprives a party of a full and fair opportunity to develop its case. It may be a factor in some cases, but not where, as apparently here, there have been so many affirmative misstatements for so long a period and the moving party has been so thoroughly misled.

The critical question upon which entitlement to relief turns is whether the offending conduct was harmful and affected the moving party's rights by interfering with the full and fair preparation or presentation of its case. *Anderson*, 862 F.2d at 923-924. It is apparent that this standard is met, although the analysis and resolution of this issue should not take place until after the Founders and the undersigned counsel obtain access to all relevant information (*i.e.*, the complete pleadings and discovery files and all the IMs that were not produced).

Next, Facebook asserts that the Founders lack a sufficient basis to request an inquiry under *Anderson v. Cryovac*, 862 F.2d 910. But its attempt to distinguish that case underscores the close similarities. Facebook Opp. at 16. As in *Anderson*, this case involves the failure to produce evidence, coupled with (intentionally or unintentionally) false representations about full compliance with discovery obligations. While, *Anderson* went to trial and this case did not, the basic holding that misconduct that prevents a party from fully and fairly *preparing* for trial is a basis to vacate a final judgment/order applies here. *Id.* at 923-924.

Facebook's claim that res judicata bars this motion ignores the essential character of a Rule 60(b) motion: "Rule 60(b) . . . provides an 'exception to finality' . . . that 'allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'" *United Student Aid Funds, Inc. v. Espinosa*, ___ U.S. ___, ___; 130 S.Ct. 1367, 1376 (2010) (internal citation omitted); *Johnson v. Hudson*, 421 Fed.Appx. 568, 572 (6th Cir. 2011) ("res judicata does not bar Rule 60(b) motions. . . . Even after a judgment has become final and even after an appeal has been lost, Civil Rule 60(b) gives losing parties additional, narrow grounds for vacating the judgment") (internal citations and quotation marks omitted).

Facebook's collateral estoppel claim fares no better. It is Facebook's burden to show that the elements of collateral estoppel apply. *Indianapolis Life Ins. Co. v. Herman*, 204 Fed.Appx. 908, 910 (1st Cir. 2006) (res judicata is a non-jurisdictional affirmative defense); *Scherer v. Equitable Life Assurance Society of the U.S.*, 347 F.3d 394, 398 (2d Cir. 2003) (re collateral estoppel). Yet Facebook has failed to meet its burden, including the requirement that the issue (supposedly) decided previously is the same as the issue presented here. *See Plumley v. Southern Container, Inc.*, 303 F.3d 364, 373 (1st Cir. 2002) (elements of collateral estoppel).

Indeed, the critical fact that Facebook conveniently ignores is that this motion is grounded on the leaking of undisclosed IMs *in mid-2010* and *The New Yorker* article *in late-2010*. Stated another way, the core facts upon which this motion is based were unknown to the Founders until well after the issues in the Ninth Circuit appeal were fixed. "[R]es judicata and collateral estoppel are inapplicable where, between the first and second suits, an intervening change in the law or modification of significant facts create new legal conditions." *Spradling v. City of Tulsa*, 198 F.3d 1219, 1222 (10th Cir. 2000); *Minarik Elec. Co. v. Electro Sales Co., Inc.*, 223 F.Supp.2d 334, 340 (D.Mass. 2002) (citing *Spradling* with approval).

Facebook argues that this Court rejected the Founders' prior argument that Facebook willfully withheld documents that should have been disclosed on the grounds that the production was "rolling" and Facebook was not yet obligated to produce the IM's. Facebook Opp. at 6. That is wrong for two reasons. First, this Court didn't rule upon the motion. Second, when the Court commented on the rolling production, it was not known that Facebook had this evidence since January 2006. If Facebook and its counsel in fact reviewed the IMs in a January 2006 meeting, their production was not "rolling" at all but suppressed; and under Rule 26(e)(1)(A) Facebook did in fact have a legal obligation to produce them. This presents an entirely new basis for discovery misconduct that the Founders have never raised, and could not have raised.

Neither res judicata nor collateral estoppel should apply where, as here, a party has not had a full and fair opportunity to litigate an issue due to the wrongful acts of its opponents. *See generally Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). A district court may ignore preclusive principles in cases of unfairness or wrongdoing. *Practiv v. Dow Chemical Co.*, 449 F.3d 1227, 1233 (2d Cir. 2006) ("preclusive effect may be refused when there is a compelling showing of unfairness or inadequacy in the prior proceeding"); 18, *Federal Practice and Procedure*, § 4415, p. 367 (2d ed. 2002) ("Flagrant improprieties by . . . adversary also may defeat preclusion"); *see also In re Boston Regional Medical Center, Inc.*, 2004 WL 1778881, *5 (D.Mass. 2004).

All settlements contain releases; yet the Court's authority under Rule 60(b) to vacate a settlement is well established. Founders' MPA ISO Discovery Motion at p. 14 (citing authority); *see also Stridiron v. Stridiron*, 698 F.2d 204 (3d Cir. 1983) (judgment entered upon a settlement regarding division of property in divorce action vacated under Rule 60(b)(3) motion alleging discovery abuse). Facebook does not cite a single cause holding that a release abrogates the

powers vested by Rule 60(b), the Court's inherent authority over the conduct of counsel, or the Court's power to conduct an inquiry. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

*Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011), relied upon by Facebook, held that the Founders released securities fraud claims that arose during settlement negotiations, but does not hold that a release divests the court of its Rule 60(b) or inherent powers to conduct post-judgment inquiries where credible claims of discovery abuse arise. Indeed, Facebook's citation to the Ninth Circuit's observation that in settling cases a party "can use discovery to ferret out a great deal of information before even commencing settlement negotiations" highlights the need for the requested inquiry. Facebook Opp. at 14 (citing *Facebook*, 640 F.3d at 1039). The protections that the Ninth Circuit notes are illusory if the adversary does not abide by discovery law. In short, Facebook's release argument is not supported by the law, and would deprive the Court of a critical tool to remedy discovery abuse.

Finally, the Founders brought this motion in this Court, rather than the California court, because it is here that the apparent discovery misconduct took place, and because it was this Court's Order that dismissed their claims. *See* Dkt. 353. As such, it is proper for this Court to decide whether to order an inquiry regarding the strong suspicions of discovery abuse, and to decide, depending on the results of the inquiry, whether it should vacate its dismissal Order, or impose some alternative sanction. If this Court were to vacate its dismissal Order, Facebook would presumably have a legitimate basis to move to set aside the judgment entered by Judge Ware in the California action pursuant to Rule 60(b)(6). Assuming for purposes of argument only that only Judge Ware could decide whether to reopen litigation in Massachusetts, this Court should still preside over the requested inquiry since it was this Court that supervised discovery and since potentially false statements to this Court are at issue.

## IV. CONCLUSION

For the reasons stated, the Founders respectfully request discovery or an inquiry to permit full and complete analysis under the *Anderson v. Cryovac* framework.[5]

Dated: September 9, 2011

Respectfully submitted,

CAMERON WINKLEVOSS, TYLER WINKLEVOSS and DIVYA NARENDRA,

By their attorneys,

*/s/ Tyler Meade*
Tyler Meade, Cal. State Bar No. 160838 (*Pro Hac Vice*)
 tyler@meadeschrag.com
Michael Schrag, Cal. State Bar No. 185832 (*Pro Hac Vice*)
 michael@meadeschrag.com
MEADE & SCHRAG, LLP
1816 Fifth Street
Berkeley, CA 94710
(510) 843-3670
(510) 843-3679 (fax)

### CERTIFICATE OF SERVICE

I, Tyler Meade, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on or before September 9, 2011.

*/s/ Tyler Meade*
Tyler Meade

---

[5] By referring to "this Court" as the appropriate court for these proceedings, the Founders do not mean to imply that a referral to Magistrate Judge Collings would be inappropriate. The Founders would not object to Magistrate Judge Collings overseeing any discovery/inquiry Ordered by this Court, and making proposed findings and recommendations to this Court in the manner provided in 28 U.S.C. § 636(b)(1)(C).